UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AARON RICH<br><br>　　　　　　　　　Plaintiff,<br><br>　v.<br><br>EDWARD BUTOWSKY,<br>MATTHEW COUCH,<br>AMERICA FIRST MEDIA,<br>and<br>THE WASHINGTON TIMES,<br>　　　　　　　　　Defendants. | Civil Action No. 1:18-cv-00681-RJL<br><br>Hon. Richard J. Leon |

**OPPOSITION TO TY CLEVENGER'S MOTION
FOR PERMISSION TO APPEAR PRO HAC VICE**

BOIES SCHILLER FLEXNER LLP
MICHAEL J. GOTTLIEB (D.C. Bar No. 974960)
JOSHUA RILEY (D.C. Bar No. 1026900)
MERYL C. GOVERNSKI (D.C. Bar No. 1023549)
ANDREA R. FLORES (*Admission Pending*)
1401 New York Ave NW
Washington, DC  20005
Tel: (202) 237-2727
Fax: (202) 237-6131
mgottlieb@bsfllp.com
jriley@bsfllp.com
mgovernski@bsfllp.com
aflores@bsfllp.com

RANDALL W. JACKSON (D.C. Bar No. 490798)
575 Lexington Ave
7th Floor
New York, NY 10022
Tel: (212) 303-3650
Fax: (212) 446-2350
rjackson@bsfllp.com

*Attorneys for Plaintiff Aaron Rich*

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

BACKGROUND .............................................................................................................. 2

    A.    Mr. Rich Files This Lawsuit In Response To Defendants' Defamatory Statements About Him. ............................................................................. 2

    B.    Mr. Clevenger Seeks Consent To Appear Pro Hac Vice On Behalf Of Defendant Butowsky Without Disclosing His Extensive Disciplinary Record. ............................................................................................... 2

    C.    Mr. Clevenger Demands That Mr. Rich Sign A "Waiver" Of Liability With Respect To Third Parties That Mr. Clevenger Does Not Represent, And Mr. Clevenger Threatens To Take His Demands Public In The Media Unless Plaintiff Agrees. ................................................ 6

    D.    Mr. Clevenger Follows Through On His Threat By Publishing False Statements About Mr. Rich. ............................................................... 9

ARGUMENT ................................................................................................................... 11

    I.    The Court Should Deny The Pro Hac Vice Motion Because Mr. Clevenger Failed To Disclose Fully His Disciplinary History As Required By Local Rules. ............................................................... 12

    II.    The Court Should Deny The Pro Hac Vice Motion Because Mr. Clevenger Has Published False And Prejudicial Extrajudical Statements. ............................................................................................... 14

    III.    The Court Should Deny The Pro Hac Vice Motion Because Mr. Clevenger Publicly Disclosed Inaccurate And Inadmissible Information About Settlement Negotiations Between Plaintiff And The Washington Times. ......................................................................... 15

    IV.    The Court Should Deny The Pro Hac Vice Motion Because Mr. Clevenger Demanded That Plaintiff Sign A Frivolous Release, As To Parties For Whom He Is Not Authorized To Speak, Under Threat Of Making His Demand Public. ............................................................... 16

CONCLUSION ............................................................................................................... 16

Plaintiff Aaron Rich ("Mr. Rich"), by undersigned counsel, hereby withdraws his consent to Ty Clevenger's Unopposed Motion For Permission To Appear Pro Hac Vice, Dkt. 21 ("Pro Hac Vice Motion"), and submits this opposition ("Opposition") to the Pro Hac Vice Motion.

## INTRODUCTION

To oppose an attorney's motion to appear pro hac vice is an unusual act, and one that undersigned counsel do not take lightly. However, this Opposition is compelled by the circumstances of recent weeks.[1] In the month since he has surfaced in this litigation as counsel for Defendant Edward Butowsky, Mr. Clevenger has flouted applicable ethical and procedural rules—of this District and his own—and he has revealed a disregard for common standards of decency. Most recently, Mr. Clevenger published a false and inflammatory blog post that disparaged Mr. Rich, purported to reveal information (though the information was false) about the existence and substance of confidential settlement negotiations, and resorted to hyperbolic ad hominem attacks on undersigned counsel. The blog post made good on Mr. Clevenger's threat to go public if Mr. Rich refused to sign a frivolous "waiver" that Mr. Clevenger presented to Mr. Rich for the benefit of various third parties that Mr. Clevenger does not represent.

Unfortunately, as undersigned counsel learned only after providing consent to the Pro Hac Vice Motion, Mr. Clevenger's conduct is part of a long pattern of similar behavior. He has been sanctioned by four judges in this Circuit, faced disciplinary action in Texas and California,

---

[1] *See* LCvR 83.15 (requiring that each attorney subject to the local rules of this Court notify the Court of "any disbarment, suspension or other public discipline imposed by any federal, state or local court"—because here Mr. Clevenger has failed to provide this Court with the full extent of his professional misconduct in multiple jurisdictions (including this one); *see also* D.C. R. Prof. Cond. 8.3 ("A lawyer who knows that another lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial question as to that lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects, shall inform the appropriate professional authority.").

and been recommended for disbarment by this Court's Committee on Grievances ("COG") because of his "egregious conduct that establishes a concerted pattern and effort to add expense and to harass litigants and to abuse and delay the judicial process." He has already engaged in similar conduct here, even before this Court has ruled on his Pro Hac Vice Motion. For these reasons and others, the Pro Hac Vice Motion should be denied.

## BACKGROUND

**A.   Mr. Rich Files This Lawsuit In Response To Defendants' Defamatory Statements About Him.**

This case arises from Defendants' defamatory campaign against Mr. Rich, whose only brother, Seth Rich, was murdered in Washington, D.C. in July 2016 in what law enforcement has described as an armed robbery. Dkt. 3 at ¶ 2. Defendants have falsely accused Mr. Rich of helping his brother steal emails from the Democratic National Committee ("DNC") and selling those emails to Julian Assange and WikiLeaks—and of knowing in advance that Seth was going to be assassinated by DNC-affiliates as a result. *Id.* at ¶¶ 2, 7, 9, 34-53. Defendants also have accused Mr. Rich of obstructing the investigation into his brother's murder when, in fact, Mr. Rich has sought to assist that investigation at every opportunity, including by testifying before a grand jury. *Id.* at ¶¶ 2, 7, 9, 44, 54. After attempting for months to resolve this matter privately with Defendants without any meaningful response, Mr. Rich initiated this action for defamation and other tortious conduct on March 26, 2018.

**B.   Mr. Clevenger Seeks Consent To Appear Pro Hac Vice On Behalf Of Defendant Butowsky Without Disclosing His Extensive Disciplinary Record.**

On May 17, 2018, Mr. Clevenger sought consent for his application to appear pro hac vice on behalf of Defendant Butowsky. Exh. 1.[2] In seeking consent, Mr. Clevenger neither

---

[2] All exhibits referenced herein are attached to the accompanying counsel declaration of Meryl Governski.

provided a copy of the affidavit accompanying his application nor disclosed his prior disciplinary record. As a professional courtesy, and as is undersigned counsel's general practice, we did not object to Mr. Clevenger's request. *Id.* On May 18, 2018, Mr. Butowsky's local counsel, Kenneth A. Martin of The Martin Law Firm, sponsored and filed Mr. Clevenger's Pro Hac Vice Motion, Dkt. 21, and his supporting declaration, Dkt. 21-1 ("Declaration"). The Court has not yet ruled on the Pro Hac Vice Motion.[3]

The Declaration disclosed that Mr. Clevenger is an active member of the Texas State Bar, an inactive member of the California State Bar, and a former member of the District of Columbia Bar and that he was "fined by this Court and suspended for 120 Days in Attorney Grievance Docket No. 15-19, after which I resigned." Dkt. 21-1 at ¶¶ 3-4. Mr. Clevenger stated that "No other jurisdiction reciprocated except for California" and that the California State Bar Court "recently abated that disciplinary proceeding" while Mr. Clevenger pursues "constitutional claims against the California Bar in federal court." *Id.*

In his Declaration, however, Mr. Clevenger omitted critical information regarding his disciplinary history. Subsequent to providing consent, undersigned counsel discovered that Mr. Clevenger has been sanctioned by four different judges in this Circuit for engaging in professional misconduct. Exh. 2 at 16.[4] In November 2016, this Court's COG recommended that Mr. Clevenger "be disbarred from the practice of law in the United States District Court for the District of Columbia" for violating three separate D.C. Rules of Professional Conduct,

---

[3] This opposition is filed more than 14 days after the filing of the Pro Hac Vice Motion because it arises from conduct that occurred or was discovered in the last week. Mr. Rich therefore respectfully requests the Court exercise its discretion under LCvR 7(b) to consider this Opposition.

[4] Page citations for Exhibit 2 refer to the PDF pagination because the collection of documents assembled by the State Bar of California is not consecutively paginated.

explaining that "three judicial officers of this Court, in addition to the D.C. Circuit, have sanctioned [Mr. Clevenger] based on egregious conduct that establishes a concerted pattern and effort to add expense and to harass litigants and to abuse and delay the judicial process." *Id.* at 26-27. The multiple sanctions arose out of Mr. Clevenger's role in *Wade A. Robertson v. William C. Cartinhour*, in which various judges of this Court and of the D.C. Circuit said, among other things, the following about Mr. Clevenger's conduct:

- On April 2, 2012, then-Chief Judge Royce C. Lamberth of this Court sanctioned Mr. Clevenger and explained that the "complete lack of merit to these claims convinces the Court that they could have been brought for no 'purpose other than to harass and delay.'" Exh. 3 at 5-6.

- In May 2012, Judge S. Martin Teel sanctioned Mr. Clevenger for "knowingly and in bad faith advancing frivolous arguments in this bankruptcy case," noting that Mr. Clevenger's "later filings were made in bad faith, and were intended to harass and cause Cartinhour additional expense." Exh. 4 at 4; 54 fn.23.

- In August 2012, Judge Ellen Segal Huvelle sanctioned Mr. Clevenger, citing his "complete disregard for the facts and law in advancing . . . frivolous argument[s] [which] generated a staggering amount of work for the court, and has put Cartinhour and his attorney to the unnecessary burden of defending against frivolous arguments in this and other courts." Judge Huvelle described Mr. Clevenger's "vexatious and abusive litigation tactics in this case" and stated that "the Court is unwilling to subject Cartinhour to any further harassment by either Clevenger or Robertson. Enough is enough." Exh. 5. At 1-2; 15-16.

- In January 2013, the D.C. Circuit ordered Mr. Clevenger to pay sanctions in the amount of double costs and reasonable attorneys' fees, stating that Mr. Clevenger was "hereby advised that any further frivolous filings in this case may result in both of them being enjoined from filing in this case or from filing any civil appeals or originals actions in this court." Exh. 6.

- In June 2013, the D.C. Circuit ordered Clevenger "to pay imposed sanctions" and kept pending a motion before the Court to hold Clevenger in contempt for failing to pay sanctions. Exh. 7.

- In May 2014, the D.C. Circuit ordered that "respondent Ty Odell Clevenger be publicly censured for violating District of Columbia Rules of Professional Conduct 3.1 and 8.4(d) by presenting frivolous arguments to this court in case No. 12-7010." Exh. 8.

- In November 2014, Judge Lamberth ruled that Clevenger was "enjoined from further filings in the instant case" and found that the "multitude of frivolous and harassing filings, both in number and in content, made by appellants goes far beyond 'mere litigiousness.'" Exh. 9 at 10.

- As noted above, in November 2016, the COG recommended Mr. Clevenger's disbarment from this Court because of his "egregious conduct that establishes a concerted pattern and effort to add expense and to harass litigants and to abuse and delay the judicial process." Exh. 2 at 26.

Mr. Clevenger also has a disciplinary record in Texas, yet he failed to disclose any aspect of that record in the Declaration accompanying his Pro Hac Vice Motion.  *Compare* Exh. 2 at 6-14, *with* Dkt. 21-1.  In Texas, Mr. Clevenger has been sanctioned by a District Court, *see Erwin v. Russ*, No. 2011 WL 13175544 (W.D. Tex. Mar. 9, 2011), *aff'd,* 481 F. App'x 128 (5th Cir. 2012), and in August 2014, the District Court of Collin County, Texas publicly reprimanded Mr. Clevenger at the request of the Texas Commission for Lawyer Discipline for having "committed professional misconduct,"  Exh. 2 at 6-14.  The Texas Bar Journal published a notice that "Ty Odell Clevenger [#24034380], 45, of Lavon, agreed to a public reprimand" and had been ordered to pay attorneys' fees and direct expenses after having been found to have "committed professional misconduct by violating Rule 3.02," which prohibits a lawyer from taking a position that unreasonably increases the costs or other burdens of the case or that unreasonably delays resolution of the matter, and that Mr. Clevenger.[5]  In agreeing to a public remand, Mr. Clevenger agreed that "all matters of fact and things in controversy" between himself and the Texas

---

[5] *Disciplinary Actions*, 77 TEXAS BAR JOURNAL 922, 926 (Nov. 2014), *available at* https://www.law.uh.edu/libraries/ethics/attydiscipline/2014/November2014.pdf.

Commission for Lawyer Discipline were "fully and finally compromised and settled." Exh  2 at 6.

The California State Bar also has levied disciplinary charges against Mr. Clevenger both for his actions in this District and in Texas.  Exh. 2 at 1-5.  Those charges appear to remain pending—the docket shows a status conference scheduled for next week, June 18, 2018.[6]

C. **Mr. Clevenger Demands That Mr. Rich Sign A "Waiver" Of Liability With Respect To Third Parties That Mr. Clevenger Does Not Represent, And Mr. Clevenger Threatens To Take His Demands Public In The Media Unless Plaintiff Agrees.**

On May 30, 2018, Mr. Clevenger sent a demand, Exh. 10, that Mr. Rich sign a proposed affidavit that Mr. Clevenger had drafted in Mr. Rich's name, pursuant to which Mr. Rich would "authorize" Julian Assange, Kim Dotcom, and WikiLeaks "to freely discuss" certain information, including conversations and payments between Mr. Rich or his brother and the listed third parties.  Exh. 11.  The affidavit would have required Mr. Rich to "waive any claim for damages" against the third parties resulting from any disclosures.  *Id*.  The release would also have extended to additional third parties, including eBay, Inc. and PayPal Holdings, Inc.

There is no reason why Mr. Rich was obliged to agree to Mr. Clevenger's proposed release, and very good reasons not to do so.  WikiLeaks has been labeled a "hostile foreign intelligence" service by former CIA Director Mike Pompeo, and Kim Dotcom, according to the Justice Department, is a "fugitive" who remains under indictment in the United States for crimes including wire fraud.  In seeking releases on behalf of this hostile foreign intelligence service and indicted fugitive, Mr. Clevenger did not disclose whether he was authorized to seek such releases, nor did he represent whether such third parties had in fact requested the relief Mr.

---

[6]   *See* The State Bar of California, *Clevenger, Ty Odell*, http://apps.statebarcourt.ca.gov/detailview.aspx?y=17&id=5989 (listing a status conference scheduled for Monday, June 18, 2018 for Case No. 16-J-17320).

Clevenger had demanded. Mr. Clevenger has admitted that he does not represent any of these parties, and has never suggested that he was authorized, in any respect, to seek legal releases on their behalf. No responsible attorney would counsel his or her client to sign an advance legal waiver on behalf of unrepresented third parties, let alone to do so in a context that would invite a hostile foreign intelligence service or indicted fugitive to defame the client with immunity.

As is laid out in the Complaint in this matter, and as we have repeatedly explained to Mr. Clevenger, *see infra*, Mr. Rich has denied having contact with, or receiving any kind of payment from, WikiLeaks or Julian Assange, and Defendants' accusations to the contrary are false and defamatory—hence this lawsuit. And as we further explained to Mr. Clevenger, if Defendants wish to issue a subpoena to WikiLeaks, Julian Assange, eBay, or anyone else for documents that do not exist, we would support such subpoenas if issued under the procedures contemplated by the federal rules. Indeed, Mr. Rich intends to subpoena those very third parties through appropriate procedures in this litigation at an appropriate time. But Mr. Clevenger's demanded release is entirely unnecessary and inappropriate. As we stated to Mr. Clevenger in our May 30 response to his demand:

> "We believe the appropriate mechanism for obtaining information from third parties is to serve subpoenas to those third parties as contemplated under the Federal Rules of Civil Procedure. Those rules do not require any advance waiver from any party in order to serve or enforce such a subpoena. If any third party has a request to make of our client as a result of a subpoena, we will address those requests directly with those third parties rather than through opposing counsel."

Exh. 12.

In response, Mr. Clevenger that same day revealed his true purpose in sending his demand. Namely, Mr. Clevenger responded, "If you are saying your client is unwilling to [sign

the release], I think the media (and the public) will find that very interesting." *Id.* In other words, if Mr. Rich did not sign the release, Mr. Clevenger would make a media spectacle of it.

Without awaiting a response, Mr. Clevenger emailed and faxed a letter on June 1, 2018, referring twice to Federal Rule of Civil Procedure 11 and to Mr. Rich's "unwillingness" to sign the "waiver," writing *inter alia*:

> "This is very telling. On the one hand, Mr. Rich boldly denies that he and/or his brother leaked DNC emails to Wikileaks. On the other, he refuses to authorize disclosures from the witnesses who are in the best position to know who leaked those emails. That begs a question: if your client has nothing to hide, why is he hiding it?
>
> Under Rule 11(b), you have a duty to answer that question. Furthermore, you should ask your client some pointed questions about what funds may have been transferred to him or his brother through eBay accounts. And you should remind him that every trip to a safe deposit box is recorded on video and preserved.
>
> If the evidence leads where we expect it to lead, my client will aggressively seek sanctions against Mr. Rich and everyone else responsible for bringing meritless claims."

Exh. 13.

The next day, Saturday, June 2, 2018, we responded to Mr. Clevenger by asking among other things, whether he actually represents or had received authorization from any of the third parties (e.g., Julian Assange, Kimdotcom, WikiLeaks, PayPal, eBay) on whose behalf he purported to seek a waiver from Mr. Rich. Exh. 14. Mr. Clevenger subsequently acknowledged that he "never had any direct or indirect communications with Julian Assange, Wiki Leaks, or Kim Dotcom, nor do I represent any of them in any capacity. Likewise, I did not consult with eBay or PayPal about the contents of the proposed waiver." Exh. 15.

In the same June 2 letter, we also explained that "our client has already publicly stated that he has had no communications of any kind with WikiLeaks or Assange" and that "there is

no privilege that he can or should consent to waive." Exh. 14.  We also told Mr. Clevenger that it was "false and inflammatory to suggest that our client would be hiding something by refusing to sign the waiver you have demanded" and, to the contrary, we would "prove that our client has never served as a 'source' to any of the third parties mentioned in your waiver letter, including by issuing subpoenas to them." *Id*.  We explained:

> "Because your waiver letter is devoid of legal merit, and seeks to negotiate on behalf of parties on whose behalf you have not entered an appearance, it leaves no conclusion other than that you are attempting to engineer a publicity stunt. Our client either signs your waiver, which can then be used to suggest that he had some relationship with these third parties necessitating him providing consent, or he does not, in which case you go to the press to generate a story that our client is trying to conceal information. To the extent that is your aim, we decline to engage in the exercise. Your client has already caused Mr. Rich severe emotional and reputational damage, and we will not stand by while you seek to deepen that damage."

*Id*.  We reminded Mr. Clevenger that disclosing to the media that our client was "unwilling" to execute the waiver authored by Mr. Clevenger would be unethical under the Rules of Professional Conduct both in Texas and in this Court.  *Id*.  Yet that is exactly what Mr. Clevenger has now done.

**D.    Mr. Clevenger Follows Through On His Threat By Publishing False Statements About Mr. Rich.**

On June 10, 2018, we served the Defendants' counsel, via email, a Notice of Withdrawal of a Subpoena that we previously had served on Twitter on June 1.[7]  Exh. 16.  On Monday, June 11, 2018, Mr. Clevenger responded to our email by sending a link to a blog post he had authored, titled "Why Won't Seth Rich's Brother Authorize Wikileaks To Tell What It Knows?"

---

[7] We withdrew the subpoena we had previously served promptly after considering legitimate legal arguments that were brought to our attention about the subpoena's breadth.  We did so prior to receiving any requests from any party to this case that we withdraw the subpoena.

("Clevenger Blog Post"), the central (and false) premise of which is that Mr. Rich is hiding evidence by not signing the Proposed Affidavit that Mr. Clevenger wrote in Mr. Rich's name. Exhs. 16, 17.  The blog post:

- falsely states that Mr. Clevenger asked us to "reveal what [we] know about payments to Mr. Rich or his brother" and that we "have been stonewalling ever since," when in fact we repeatedly have made clear, as detailed in Mr. Rich's Complaint, that no such payments exist;

- falsely implies that Mr. Rich communicated with WikiLeaks using encrypted messaging applications, like Protonmail or Signal, and that Mr. Rich refuses to authorize WikiLeaks to release those communications, when Mr. Rich has denied having any such communications and explicitly stated that he has no privilege that he could plausibly claim as to WikiLeaks;

- falsely imputes a nefarious reason as to why Seth Rich's probate case is sealed asking why Aaron would "seal the entire record of a childless, unmarried 26-year-old decedent with minimal assets";

- purports to disclose that Mr. Rich and The Washington Times have engaged in settlement discussions, states he encouraged counsel for The Washington Times to "stay strong", and provides false information about the contents of those discussions (which would in all events be inadmissible in any proceeding under Rule 408 of the Federal Rules of Evidence);

- publishes parts of the correspondence exchanged between counsel to falsely imply the existence of communications between Mr. Rich and WikiLeaks and that Mr. Rich refuses to release them;

- falsely implies that Mr. Rich's "litigation campaign is being bankrolled by third parties," because "the Democratic establishment is trying to muddy the waters";

- falsely states that that Mr. Rich is "trying to intimidate anyone who asks inconvenient questions" and "gaslight anyone who questions the official narrative," when Mr. Rich's lawsuit is limited to false statements made about him, and we have conceded that Mr. Rich has no claim as to statements (whether true or false) made against his deceased brother under black letter principles of defamation law;

- advances ad hominem attacks against undersigned counsel, including calling us "creeps" and "oily shysters" who are "well-versed in the dark art of spinning a story."[8]

Exh. 17.

## ARGUMENT

Mr. Clevenger's conduct in this litigation is sufficient to deny Mr. Clevenger's Pro Hac Vice Motion. We would not have provided consent to that Motion had Mr. Clevenger provided his full disciplinary history as required under the Local Rules. Unfortunately, Mr. Clevenger's conduct in this litigation is not an isolated incident, but is rather in line with his lengthy history of unprofessional conduct, which has led to a host of disciplinary actions being taken against him. Mr. Clevenger failed to disclose any of that conduct to Mr. Rich in seeking consent to his Pro Hac Vice Motion, and even in his required disclosure to this Court, Mr. Clevenger only disclosed a fraction of his relevant record. For the reasons stated herein, we hereby withdraw our prior consent to Mr. Clevenger's Pro Hac Vice Motion, and we ask the Court to deny that Motion.

Appearing pro hac vice is a privilege, not a right, and the Court would be well within its broad discretion to deny the Pro Hac Vice Motion here. *See In re Belli*, 371 F. Supp. 111, 112 (D.D.C. 1974) ("It is well settled that permission to a nonresident attorney, who has not been admitted to practice in a court, to appear pro hac vice in a case there pending is not a right but a privilege, the granting of which is a matter of grace resting in the sound discretion of the

---

[8] In addition to meaning a "person, especially a lawyer, who uses unscrupulous, fraudulent, or deceptive methods in business," Shyster, Oxford Dictionary, https://en.oxforddictionaries.com/definition/shyster, the term "shyster" is considered "a deplorable and demeaning word which has traditionally been loaded with anti-Semitism," NYO Staff, Observer (Apr. 21, 2003), http://observer.com/2003/04/national-review-and-shyster-heaven/.

presiding judge." (internal citations and quotation marks omitted)).  An attorney is not entitled to the privilege of appearing pro hac vice if he engages in "unlawyerlike conduct in connection with the case in which he wished to appear." *Thomas v. Cassidy*, 249 F.2d 91, 92 (4th Cir. 1957) (per curiam) (cited approvingly in *In re Belli*, 371 F. Supp. at 112); *see also Kohlmayer v. Amtrak*, 124 F. Supp. 2d 877, 882–83 (D.N.J. 2000) ("this Court can, and must, consider the character of an applicant and his or her record of civility when determining whether to grant pro hac vice status").  Here, Mr. Clevenger has plainly engaged in unprofessional and unlawyerlike conduct.

I.  **The Court Should Deny The Pro Hac Vice Motion Because Mr. Clevenger Failed To Disclose Fully His Disciplinary History As Required By Local Rules.**

This Court should deny Mr. Clevenger's Pro Hac Vice Motion because he altogether failed to disclose to the Court his history of discipline by the State Bar of Texas, and further obfuscated material details relating to his disciplinary history in this Circuit and in California, in conflict with this Court's rules.  *See* Local Civil Rule ("LCvR") 83.2(d) (pro hac applicant must provide the "circumstances and details of the discipline"); LCvR 83.15 (obligation to report "any disbarment, suspension or other public discipline imposed by any federal, state or local court," and related details).[9]

*Texas*.  Mr. Clevenger stated that he is an "active member of the State Bar of Texas" and refers to "practicing actively in Texas."  Dkt. 21-1 at ¶¶ 4-5.  But Mr. Clevenger failed to report to the Court that he was subject to a public reprimand by the Texas Commission for Lawyer

---

[9] *See also* Exh. 18 at 2 (D.C. bar finding attorney violated Rule 8.4(c) by filing a pro hac vice motion that included "a misrepresentation by omission" relating to the circumstances of his suspension from a bar); *In re Samad*, 51 A.3d 486, 499 n.8 (D.C. 2012) ("there may be circumstances where failure to make a disclosure is the equivalent of an affirmative misrepresentation").

Discipline, Exh. 2 at 6-14, and subjected to Rule 11 sanctions by a Texas District Court for filing frivolous claims.

*District of Columbia.*  Mr. Clevenger referred to his disciplinary history in this Circuit with a single sentence—"I was fined by this Court and suspended for 120 days in Attorney Grievance Docket No. 15-19, after which I resigned," Dkt. 21-1 at ¶ 4—without disclosing that Mr. Clevenger resigned only after this Court's COG recommended disbarment upon finding that Mr. Clevenger engaged in a "concerted pattern and effort to add expense and to harass litigants and to abuse and delay the judicial process" for which he was sanctioned by at least four different judges, Exh. 2 at 26.  The fact that this Court has recommended Mr. Clevenger's disbarment to prevent him from practicing law here is grounds enough to deny him the privilege of appearing pro hac vice.[10]  *See, e.g., In re Rappaport*, 558 F.2d 87, 88–90 (2d Cir. 1977) (affirming denial for admission pro hac vice because attorney had "minimized" to the court his prior misconduct, which included a suspension in a different state).

*California.*  Mr. Clevenger makes only a passing reference to California, stating that California reciprocated D.C.'s disciplinary action against him but "abated that disciplinary proceeding at my request"—but that action appears to remain pending, including a status conference that is scheduled for *next week*.  *See infra*.

---

[10] D.C. state courts require attorneys attempting to appear pro hac vice to submit an Application for Admission Pro Hac Vice in which they declare, under penalty of perjury, that they "have not been suspended or disbarred for disciplinary reasons from practice in any court." *See Form 8, Application for Admission Pro Hac Vice*, District of Columbia Courts, at 1, https://www.dccourts.gov/sites/default/files/matters-docs/dcca_form8.pdf.

## II. The Court Should Deny The Pro Hac Vice Motion Because Mr. Clevenger Has Published False And Prejudicial Extrajudical Statements.

The Clevenger Blog Post disqualifies Mr. Clevenger from the privilege of pro hac vice admission in this Court. The Post includes statements that "are without factual foundation" and "were recklessly made" and were "calculated to prejudice the standing of this Court and to cast a shadow upon" the integrity of these proceedings. *In re Belli*, 371 F. Supp. at 113–14 (emphasis added).[11] The Court should not permit Mr. Clevenger the privilege of appearing in this case pro hac vice after he has taken to his blog to falsely disparage Mr. Rich and use ad hominem attacks, including a disparaging anti-Semitic slur, against opposing counsel.

The Clevenger Blog Post also may violate the Rules of Professional Conduct (although this Court need not find such a violation to deny the Pro Hac Vice Motion). Rule 3.6 of the D.C. Rules of Professional Conduct states that a "lawyer engaged in a case being tried to a judge or jury shall not make an extrajudicial statement that the lawyer knows or reasonably should know will be disseminated by means of mass public communication and will create a serious and imminent threat of material prejudice to the proceeding." The Clevenger Blog Post is an extrajudicial statement disseminated by means of mass public communication. *See* Opinion 371 of the D.C. Ethics Board (applying Rule 3.6 to a lawyer's own social media postings). The Clevenger Blog Post also creates a "serious and imminent threat of material prejudice," as it falsely and publicly accused Mr. Rich of colluding with WikiLeaks and trying to cover it up, and

---

[11] *See also Ross v. Reda*, 510 F.2d 1172, 1173 (6th Cir. 1975) (affirming a state trial court's denial of "the application of the out-of-state attorney for admission pro hac vice on the ground that he affirmatively refused to limit his out-of-court statements about the case during its pendency"); *In re Admission Pro Hac Vice of Chokwe Lumumba*, 526 F. Supp. 163, 165 (S.D.N.Y. 1981) (denying admission pro hac vice because "one of the clear purposes of [the attorney's] application is to enable him, if authorized to represent the defendant here, to carry on a propaganda campaign much beyond the limits of proper representation of a client").

cites as evidence of this cover up Mr. Rich's refusal to sign Mr. Clevenger's concocted waiver on behalf of third parties for whom Mr. Clevenger has no authority to speak. *See, cf, In re Gansler*, 889 A.2d 285, 289 n.4 (D.C. 2005) (finding reciprocal censure in D.C. after the Maryland Board of Professional Responsibility disciplined a prosecutor for making "statements of opinions as to a defendant's guilt and comments on a defendant's confession would tend to heighten condemnation of the accused" (quotation marks omitted)).[12]

### III. The Court Should Deny The Pro Hac Vice Motion Because Mr. Clevenger Publicly Disclosed Inaccurate And Inadmissible Information About Settlement Negotiations Between Plaintiff And The Washington Times.

Mr. Clevenger's public (and inaccurate) disclosure of the purported content of ongoing, confidential settlement negotiations between Mr. Rich and the Washington Times constitutes unprofessional conduct, and it also violates the Texas Rules of Professional Conduct to which Mr. Clevenger is subject. *See* Texas R. Prof. Con. 3.07 (a lawyer "ordinarily will violate" the prohibition on extrajudicial statements where the statement refers to information the lawyer knows or should know is likely to be inadmissible as evidence); Fed. R. Evid. 408 (settlement communications are inadmissible). Mr. Clevenger either believed that the information he published was true, in which case he deliberately revealed information that he believed counsel in this matter had intended to be confidential and inadmissible under Rule 408, or he falsely

---

[12] The Clevenger Blog Post may violate additional rules as well. *See, e.g.*, D.C. R. of Prof. Cond. 4.1 (prohibiting a lawyer from knowingly making "a false statement of material fact or law to a third person"); D.C. R. of Prof. Cond. 4.4(a) ("a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person"); D.C. R. of Prof. Cond. 8.4(c) (professional misconduct includes engaging "in conduct involving dishonesty, fraud, deceit, or misrepresentation"); Rule 8.4(d) (prohibits engaging in "conduct that seriously interferes with the administration of justice," which the Rule's comments explain "may include words or actions that manifest bias or prejudice based upon" a person's religion).

represented the information's veracity, in which case he made false statements. Either way, Mr. Clevenger's conduct was unprofessional.

**IV.     The Court Should Deny The Pro Hac Vice Motion Because Mr. Clevenger Demanded That Plaintiff Sign A Frivolous Release, As To Parties For Whom He Is Not Authorized To Speak, Under Threat Of Making His Demand Public.**

Mr. Clevenger demanded that Mr. Rich sign the Proposed Affidavit under threat that Mr. Clevenger otherwise would publicly disclose the matter, even though: Mr. Clevenger admitted that he did not represent and lacked authorization from the third parties on whose behalf he sought a release of liability from Mr. Rich; that the third parties for whom he purported to speak had never made the demand Mr. Clevenger asserted; that the Proposed Affidavit was not a necessary precondition for Mr. Clevenger to propound discovery on the third-parties listed in the Proposed Affidavit; all of which leads to the conclusion that Mr. Clevenger's tactic served no purpose but to harass and prejudice Mr. Rich. This Court should not condone it. *See* D.C. R. of Prof. Cond. 4(4)(a) ("a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or knowingly use methods of obtaining evidence that violate the legal rights of such a person."); D.C. R. of Prof. Cond. 3.1 (lawyer "shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous"); *see also* D.C. R. of Prof. Cond. 3.4(d) (prohibits lawyers making a "frivolous discovery request" in pre-trial procedure).

## **CONCLUSION**

For the forgoing reasons, Mr. Rich respectfully withdraws his consent to the Pro Hac Vice Motion and requests that the Court deny the Pro Hac Vice Motion.

DATED:  June 13, 2018                    Respectfully submitted,

By: /s/ Michael J. Gottlieb

MICHAEL J. GOTTLIEB (D.C. Bar No. 974960)
JOSHUA RILEY (D.C. Bar No. 1026900)
MERYL C. GOVERNSKI (D.C. Bar No. 1023549)
ANDREA R. FLORES (Admission Pending)
1401 New York Ave NW
Washington, DC  20005
Tel: (202) 237-2727
Fax: (202) 237-6131
mgottlieb@bsfllp.com
jriley@bsfllp.com
mgovernski@bsfllp.com
aflores@bsfllp.com

RANDALL JACKSON (D.C. Bar No. 490798)
575 Lexington Ave
7th Floor
New York, NY 10022
Tel: (212) 303-3650
Fax: (323) 446-2350
rrjackson@bsfllp.com

*Attorneys for Plaintiff Aaron Rich*

## CERTIFICATE OF SERVICE

I hereby certify that on June 13, 2018, this document was filed with the Clerk of the Court of the U.S. District Court of the District of Columbia by using the CM/ECF system, which will automatically generate and serve notices of this filing to all counsel of record.

Additionally, a copy of the foregoing document was emailed to Defendants Couch and AFM via Defendant Couch at mattcouch@af-mg.com (pending appointment of counsel).  These Defendants consented in writing to receive filings via email pending registration to receive electronic notification of filings.

Dated: June 13, 2018

/s/ *Michael J. Gottlieb*

MICHAEL J. GOTTLIEB (D.C. Bar No. 974960)
1401 New York Ave NW
Washington, DC  20005
Tel: (202) 237-2727
Fax: (202) 237-6131
mgottlieb@bsfllp.com