# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

AARON RICH,

       Plaintiff,

vs.

**EDWARD BUTOWSKY, MATTHEW COUCH, AMERICA FIRST MEDIA and THE WASHINGTON TIMES,**

      Defendants

**Case No. 1:18-cv-000681**

---

## DEFENDANT EDWARD BUTOWSKYS REPLY IN SUPPORT OF MOTION FOR PERMISSION TO APPEAR *PRO HAC VICE*

NOW COMES Defendant Edward Butowsky, replying in support of his UNOPPOSED MOTION FOR PERMISSION TO APPEAR PRO HAC VICE ("MOTION") (Doc. No. 21):

### Introduction

The Plaintiff's OPPOSITION TO TY CLEVENGER'S MOTION FOR PERMISSION TO APPEAR PRO HAC VICE ("OPPOSITION") (Doc. No. 24) is dishonest and malicious, and Defendant Butowsky will address its inaccuracies in short order. First, however, the Court should know the real reason that the Plaintiff's Attorneys filed their OPPOSITION, and it has nothing to do with a sudden awareness of Mr. Clevenger's disciplinary history. Instead, the Plaintiff's Attorneys got caught doing something egregiously unethical, and

- 1 -

they filed the OPPOSITION in an an attempt to divert attention from their own misconduct. In particular, the Plaintiff's Attorneys served a facially-unlawful subpoena on a third-party electronic services provider seeking the private communications of various other third-parties, including the private communications of Mr. Clevenger *about the subject matter of this lawsuit*. *See* June 1, 2018 Subpoena to Twitter, Inc. ("Twitter Subpoena 1")(Exhibit 1).  In other words, the Plaintiff's Attorneys attempted to illegally obtain the privileged communications of an opposing party's attorney. When that scheme was exposed, they tried to change the subject by attacking Mr. Butwosky's choice of counsel.

The Court should also know that all of the sanctions and disciplinary issues raised by the Plaintiff are based on events that occurred at least six years ago. *See* June 22, 2018 Declaration of Ty Clevenger (Exhibit 2) and sworn REPLY IN SUPPORT OF MOTION FOR PERMISSION TO APPEAR PRO HAC VICE, *Scottie Nell Hughes v. Twenty-First Century Fox, Inc., et al.*, Case No. 1:17-cv-07093-WHP (S.D.N.Y.)(Exhibit 3). Mr. Clevenger has now been prosecuted three times by three different jurisdictions based on the same events. *Id*. He has not been sanctioned or disciplined for anything that occurred after 2012, *id.*, and as noted in his declaration in support of the MOTION (Doc. No. 21-1). he is practicing successfully in the state and federal courts of Texas, as well as in federal courts elsewhere.  Finally, as detailed below, Mr. Clevenger did not hide nor attempt to hide anything from this Court regarding his disciplinary history.

**Background**

Rather than rely on the Plaintiff's self-serving description of the "Clevenger Blog Post," the Court should read the actual blog post, *i.e.*, "Why won't Seth Rich's brother authorize Wikileaks to tell what it knows?" June 11, 2018 *LawFlog*, http://lawflog.com/?p=1937.  As the Court knows, the Plaintiff sued Mr. Butowsky and the other Defendants on the theory that he was defamed by allegations that he and/or his deceased brother had leaked emails from the Democratic National Committee to Wikileaks.  In order to resolve the dispute expeditiously, Mr. Clevenger proposed that the Plaintiff voluntarily waive any objection to Wikileaks and its affiliates revealing what they know about the email leak.  Mr. Clevenger proposed the waiver because Wikileaks and its affilates are beyond U.S. jurisdiction, and it is widely reported that Wikileaks goes to great lengths to protect the anonymity of its sources. *See, e.g.*, "Julian Assange Claims Russia Isn't Behind WikiLeaks' Hacked Clinton Emails," FORTUNE, November 3, 2016 (Wikileaks founder Julian Assange "says WikiLeaks will not reveal the identity of its sources") http://fortune.com/2016/11/03/julian-assange-wikileaks-russia-podesta-emails/. In response to that request for a waiver, Plaintiff's Attorney Meryl Governski wrote as follows:

> We believe the appropriate mechanism for obtaining information from third parties is to serve subpoenas to those third parties as contemplated under the Federal Rules of Civil Procedure. Those rules do not require any advance waiver from any party in order to serve or enforce such a subpoena. If any third party has a request to make of our client as a result of a subpoena, we will address those requests directly with those third parties rather than through opposing counsel.

*See* May 30, 2018 Email string between Ty Clevenger and Meryl Governski (Exhibit 4).

Mr. Clevenger responded a few hours later as follows.

> Yes, but as a practical matter, Julian Assange, Kim Dotcom, and Wikileaks are beyond U.S. jurisdiction. Furthermore, Assange and Wikileaks have shown that they will not be coerced into revealing the identity of their sources. It is for that reason that I am asking your client to voluntarily waive any objections to the release of such information. If you are saying your client is unwilling to do that, I think the media (and the public) will find that very interesting.

*Id*. Ms. Governski did not reply, so Mr. Clevenger sent a letter to her and her colleagues

at 7:51 a.m. on June 1, 2018.

> ...As you know, Ms. Governski and I have exchanged emails about whether your client, Aaron Rich, is willing to voluntarily authorize Wikileaks, Julian Assange, and/or Kim Dotcom to discuss any relationship that they may have had with Mr. Rich or his brother, Seth Rich. Thus far, it appears that your client is unwilling to authorize such disclosures.
>
> This is very telling. On the one hand, Mr. Rich boldly denies that he and/or his brother leaked DNC emails to Wikileaks. On the other, he refuses to authorize disclosures from the witnesses who are in the best position to know who leaked those emails. That begs a question: if your client has nothing to hide, why is he hiding it?

June 1, 2018 Letter from Ty Clevenger to Plaintiff's Attorneys ("Clevenger Letter

1")(Exhibit 5). Later that same day, in an apparent attempt to "send a message" to Mr.

Clevenger, the Plaintiff's Attorneys issued a facially-unlawful subpoena to Twitter, Inc.

seeking his public and private communications (as well as the public and private

communications of various others) regarding the subject matter of this lawsuit. *See*

Twitter Subpoena 1 (Exhibit 1).

At 9:32 a.m. on the following morning (a Saturday morning), Plaintiff's Attorney

Michael Gottlieb sent a five-page letter full of breathless hyperbole, defending himself

and his colleagues against the purported allegation that they had perpetrated a fraud on

the Court. *See* June 2, 2018 Letter from Michael Gottlieb to Ty Clevenger ("Gottlieb

Letter") (Exhibit 6).  Mr. Clevenger replied with a letter on June 5, 2018 explaining that

he had never accused the Plaintiff's Attorneys of perpetrating a fraud on the Court:

> At most, I assumed that you might not be aware of certain background
> information, and all of my correspondence reflects that. Your overreaction to my
> letter might lead reasonable people to wonder if you have a guilty conscience.

> ...We both know that it will be nigh impossible to serve a subpoena on Wikileaks
> or Mr. Assange, who was granted asylum in the Ecuadorian embassy in London. I
> would hope that Wikileaks would construe any such subpoena as an implied
> waiver of confidentiality with respect to your client, but it would be far simpler
> and more straightforward to authorize Wikileaks to release that information
> directly.

> With regard to Seth Rich, I am well aware that a dead person cannot assert
> defamation claims. His estate, on the other hand, might, have standing to enforce
> any confidentiality agreements that he made with Wikileaks, and therein lies my
> concern. Your client is the legal representative of Seth's estate, which is why I
> have asked him to waive any such confidentiality agreements. Relatedly, I request
> that your client consent to unsealing the probate court records for his brother's
> estate.  At some point we will need to determine whether funds from Wikileaks
> were routed through that estate.

June 5, 2018 Letter from Ty Clevenger to Michael Gottlieb ("Clevenger Letter")(Exhibit

7). Neither the Plaintiff nor his attorneys responded. On Friday, June 8, 2018, Twitter,

Inc. sent an email to Mr. Clevenger and other non-parties giving notice that their public

and private communications had been subpoenaed. *See* June 8, 2018 Email from Twitter,

Inc. (Exhibit 8).  Later that evening, various media outlets wrote about the subpoena. *See,*

*e.g.*, Matt Naham, "Twitter Receives Subpoena For Info on Several Right-Leaning

Accounts," *Law & Crime*, June 8, 2018, https://lawandcrime.com/lawsuit/seth-richs-brother-subpoenas-twitter-over-direct-messages-of-many-right-wing-accounts/.

## Argument

In their OPPOSITION, the Plaintiff's Attorneys self-servingly write, "We withdrew the subpoena we had previously served promptly after considering legitimate legal arguments that were brought to our attention about the subpoena's breadth," adding, "We did so prior to receiving any requests from any party to this case that we withdraw the subpoena." OPPOSITION 9, n.7. What they fail to mention is that they withdrew the subpoena on a weekend after they were publicly ridiculed for issuing and serving a subpoena that was facially unlawful.  The *Law & Crime* article above features a Tweet from columnist and attorney Robert Barnes, who noted that federal law prohibits civil subpoenas on third-party electronic communications services providers. A link in that Tweet takes the reader to *In re Subpoena Duces Tecum to AOL, LLC*, 550 F. Supp. 2d 606  (E.D. Va. 2008), where the court explained that such subpoenas are prohibited. It's not even a close question:

> The Stored Communications Act ("SCA") unambiguously states that the contents of electronically stored communications shall not be disclosed to parties unless an enumerated exception applies. 18 U.S.C. § 2702. A civil subpoena is not an exception. *See In re Facebook, Inc.*, 923 F.Supp.2d 1204, 1206 (N.D.Cal.2012) ("The case law confirms that civil subpoenas may not compel production of records from providers like Facebook."); *Viacom Intern. Inc. v. Youtube Inc.*, 253 F.R.D. 256, 264 (S.D.N.Y.2008) ("[SCA] § 2702 contains no exception for disclosure of [private videos and the data which reveal their contents] pursuant to civil discovery requests."); *In re Subpoena Duces Tecum to AOL, LLC*, 550 F.Supp.2d 606, 611 (E.D.Va.2008) ("... the statutory language of the [SCA] does

not include an exception for the disclosure of electronic communications pursuant to civil discovery subpoenas.").

*Finkle v. Howard Cty., Md.*, No. CIV. SAG-13-3236, 2014 WL 6835628, at *2 (D. Md. Dec. 2, 2014), aff'd sub nom. *Finkle v. Howard Cty.*, 640 F. App'x 245 (4th Cir. 2016). The Plaintiff's Attorneys might argue that they did not know about the Stored Communications Act, or that it prohibited the use of civil subpoenas on third-party electronic service providers. That's plausible enough, but no competent attorney would think that he or she could serve a subpoena for the private communications of an opposing party's attorney *regarding the subject matter of the lawsuit*. The subpoena was a garden-variety abuse of process, an attempted breach of attorney-client privilege, and a deliberate attempt to retaliate and intimidate.

In furtherance of their attempts to create a distraction, the Plaintiff's Attorneys write that they "reminded Mr. Clevenger that disclosing to the media that [their] client was 'unwilling' to execute the waiver authored by Mr. Clevenger would be unethical under the Rules of Professional Conduct both in Texas and in this Court." They do not bother citing any applicable rules, but instead refer the Court to Mr. Gottlieb's June 2, 2018 letter, where he wrote as follows:

> As you know, public disclosure of information that would be inadmissible in court in order to influence public opinion (in this case, by perpetuating your clients' false claim that our client has something to hide with respect to WikiLeaks, which he has already directly denied in his Complaint), violates both the Texas Rules of Professional Conduct (Rules 3.07; 4.01) and the D.C. Rules of Professional Conduct (Rules 3.1; 3.6; 8.4), the latter of which you have agreed to follow as a pro hac vice applicant (LCvR 83.12; LCvR 83.15). There is no principle of

> evidence, under federal or D.C. law, under which our client's failure to agree to
> your demand that our client sign a prospective waiver as to
> third parties would be admissible.

Gottlieb Letter (Exhibit 6). Just because the Plaintiff has "directly denied" something in

his unsworn complaint does not mean, in our adversarial system of justice, that the

inquiry is over. As explained in Mr. Clevenger's June 5, 2018 letter, he was not

publicizing "information that would be inadmissible in court," nor was he insisting that

the Plaintiff sign his particular version of the proposed waiver:

> If your client wishes to suggest changes to the proposed waiver, we are certainly
> open to that. We are not attempting to initiate discovery in violation of the
> scheduling order. Instead, we are simply preparing for future discovery should it
> occur. And it probably will occur, because my client likely will file claims against
> your client even if the present case is dismissed.

> Finally, these requests are not an attempt to taint a jury pool with information that
> would be inadmissible in court. If your client refuses to cooperate with reasonable
> efforts to obtain relevant information, that fact would almost certainly be
> admissible.

Clevenger Letter 2 (Exhibit 7). As set forth below, none of Mr. Clevenger's comments

violated the professional rules of either Texas or D.C.

I.  <u>Mr. Clevenger fully disclosed his disciplinary history to the Court.</u>

The Plaintiff's Attorneys repeatedly accuse others of making false accusations, yet

they make false accusations themselves.  Contrary to the allegations found on pages 12-

13 of the OPPOSITION,  Mr. Clevenger hid nothing from the Court.  Every single sanction

or disciplinary event identified by the Plaintiff's Attorneys can be found in Attorney

Grievance Docket No. 15-9, which Mr. Clevenger disclosed in his sworn declaration

(Doc. No. 21-1). As the Court can see from its attorney grievance docket, nothing was hidden.  In his declaration, Mr. Clevenger also disclosed the California disciplinary matters, and he directed the Court to hyperlinks of his principal brief, the appellees' principal brief, and his reply brief in *Clevenger v. Moawad*, Case No. 17-17136 (9th Circuit), further noting that those documents provide "the history of the underlying disciplinary proceedings..." Those documents also identify some of the very proceedings that the Plaintiff's attorneys claim were not disclosed.

Particularly disingenuous is the following sentence from the OPPOSITION:  "The fact that this Court has recommended Mr. Clevenger's disbarment to prevent him from practicing law here is grounds enough to deny him the privilege of appearing pro hac vice." OPPOSITION 13.  For starters, the Court never recommended anything – the grievance committee did. And the Court's records show that the grievance committee backed down from its initial recommendation after Mr. Clevenger defended himself before the Court.  After disclosing this Court's discipline to the Southern District of Texas, Mr. Clevenger was permitted to renew his membership in that Court:

> Your membership renewal to the Southern District of Texas, which included disciplinary action, has been received and reviewed.  Due to the fact that the State Bar of Texas saw fit to reprimand and not suspend you, the Southern District of Texas will not take reciprocal action against you as a result of this disciplinary matter.  Your membership has been renewed for another 5 years.

April 14, 2017 Email from Claire Cassady to Ty Clevenger (Exhibit 9).  Likewise, the U.S. Court of Appeals for the Fifth Circuit expressly refused to reciprocate the discipline imposed by this Court. *See* October 31, 2017 Email from Shelley Saltzman to Ty

Clevenger (Exhibit 10). In fact, no other federal court has reciprocated the discipline imposed by this Court.  Mr. Clevenger continues to practice in multiple federal courts, and he recently won a consequential case in the Texas Supreme Court on behalf of one of his clients. *Youngkin v. Hines*, No. 16-0935, 2018 WL 1973661 (Tex. Apr. 27, 2018).

II.  Mr. Clevenger did not publish false or prejudicial statements.

It seems the Plaintiff's Attorneys are unable to distinguish a statement of fact from a rhetorical *question* about a fact, nor can they distinguish a statement of fact from an *opinion* about the likelihood of certain facts.  For that reason, Mr. Butowsky implores the Court to read what Mr. Clevenger actually wrote on his blog (http://lawflog.com/?p=1937) versus what the Plaintiff's Attorneys *claim* he wrote. According to Plaintiff's Counsel, Mr. Clevenger "falsely and publicly accused Mr. Rich of colluding with WikiLeaks and trying to cover it up," OPPOSITION 14, but where *exactly* in Mr. Clevenger's blog post did he make such an accusation?  The correct answer is "nowhere," as the Plaintiff's Attorneys are well aware. If the Plaintiff's Attorneys truly think Mr. Clevenger made false and defamatory statements about Mr. Rich in a blog post, then they should file defamation claims against Mr. Clevenger instead of trying to prevent Mr. Butowsky from choosing his own attorneys.

Nothing about Mr. Clevenger's blog post created a "serious and imminent threat of material prejudice to the proceeding" per D.C. Rule 3.6. Furthermore, "litigants have a right to present their side of a dispute to the public, and the public has an interest in

- 10 -

receiving information about matters that are in litigation." *Id.*, Comment 1. "Often a lawyer involved in the litigation is in the best position to assist in furthering these legitimate objectives." *Id.*

A comment to the relevant Texas rule states that "an otherwise objectionable statement may be excusable if reasonably calculated to counter the unfair prejudicial effect of another public statement." Tex. Rule 3.07, Comment 3. In the present matter, Mr. Rich and his family have pursued a scorched-earth strategy to impugn and discredit Mr. Butowsky in national media such as CNN, and they have done so with the assistance of their very own public-relations consultant and spokesman. *See, e.g.*, Aaron Smith, "Seth Rich family just wants murder conspiracy 'to go away'," CNN.com, August 2, 2017, http://money.cnn.com/2017/08/02/media/seth-rich-brad-bauman/index.html; *see also Brad Bauman v. Edward Butowsky, et al.*, currently pending before this Court as Case No. 1:18-cv-01191.  Under such circumstances, it is only fair that Mr. Butowsky (or his attorney) be permitted to rebut the Plaintiff's false allegations in an equally public forum.

As part of their distraction and diversion campaign, the Plaintiff's attorneys allege that Mr. Clevenger used a "disparaging anti-Semitic slur" against them.  That accusation is as malicious and vile as it is false, and Mr. Clevenger invites the Plaintiff's Attorneys to ask his Jewish client (*i.e.*, Mr. Butowsky), his Jewish cousins, and his Jewish ex-roommates whether he is anti-Semitic.  For the record, the term "shyster" is not anti-Semitic, it never has been, and until last week Mr. Clevenger had never heard any

suggestion that it was. *See* Declaration of Ty Clevenger (Exhibit 2). The Plaintiff's

Attorneys themselves could not find anything anti-Semitic about "shyster" in a

dictionary, so they cited a thoroughly-discredited article in the April 21, 2003 *New York*

*Observer*.  The fact that the Plaintiff's Attorneys relied on that article is revealing. When

one Googles the term "shyster," the *Observer* article shows up on the first page, but then

so do the articles that unequivocally debunk the *Observer*'s thesis. True to form, the

Plaintiff's Attorneys did not cite any of the latter, so Mr. Butowsky will quote some of

them here. Daniel J. Kornstein, responding to the *Observer* article in the *New York Law*

*Journal*, explained as follows:

> I looked up shyster in the best reference work I could find. I turned to A
> Dictionary of Modern Legal Usage published in 1995 by leading legal wordsmith
> Bryan Garner. I was not disappointed. There, on page 806, Garner defines shyster
> as "a rascally" lawyer; one that is "shrewdly dishonest," "an unscrupulous
> lawyer." So far, no prejudice, except the welcome and healthy prejudice against
> crookedness.
>
> As Garner points out, however, the word shyster "has long been an enigma to
> English-language etymologists." But the enigma was "conclusively" solved in
> 1982 when one Gerald Cohen wrote Origin of the Term "Shyster." Shyster, it
> turns out, was born, of all places, here in New York City. Perhaps that should
> come as no surprise given the number of lawyers in this town.
>
> Cohen found no anti-Semitism in the derivation of shyster. It was coined by a
> Manhattan newspaper editor in 1843-1844. Cohen described how the newspaper
> was on a crusade against legal and political corruption then in the city. During this
> crusade, the editor formed the word "shyster" from the vulgar German word
> Scheisse (= excrement), hence "scheisser" became "shyster." This, says respected
> lexicologist Garner, is the correct etymology of shyster.

"Is 'Shyster' Anti-Semitic?" *New York Law Journal*,

https://www.law.com/newyorklawjournal/almID/900005387204/.  Jonah Goldberg, a

(Jewish) writer for *National Review*, further demolished the *Observer*'s flawed and bad-

faith article.

> The *New York Times*, by my quick (and limited) Lexis-Nexis search, has used the word "shyster" no fewer than 107 times in the last few decades. The *Washington Post*, 128 times. Among those who use this execrable slur have been noted anti-Semites Charles Krauthammer, Mary McGrory, and Richard Cohen, who declared "The president cannot persist in acting like some shyster who mines the fine print for the gold no one else can see." The *Jerusalem Post* has used the word more than 20 times over the last decade or so, and from what I can tell never once mentioned the pernicious roots of the slur. Other publications railing against perfidious shysters include *The New Republic*, *The Weekly Standard*, *Commentary*, and similarly notorious Jew-hating rags. And, I even found three mentions of the word in previous issues of that Protocols of the Elder of Zion in tan broadsheet — the *New York Observer*!

> So am I making a big deal out of this? Yes and no. Yes, because well, who cares? No, because this nonsense on the *Observer*'s part is typical of a certain breed of liberals who refuse to debate facts when they can demean motives — as when Charles Rangel said of Republicans who favor limited government, "It's not 'spic' or 'nigger' anymore. They say, 'Let's cut taxes.'" The *Observer* assumes bigotry or — shriek! — insensitivity only from conservatives and therefore feels it needn't address the issues.

"Shyster, Shyster, Shyster," *National Review*, April 16, 2003,

https://www.nationalreview.com/2003/04/shyster-shyster-shyster-jonah-goldberg/.  Even

Wikipedia notes that suggestions of an anti-Semitic origin for "shyster" are based on

"false etymologies." *See* June 21, 2018 copy of Wikipedia page for "shyster" (Exhibit

11). Given all of this readily-available evidence, Mr. Butowsky defies the Plaintiff's

Attorneys to explain how they could make their accusation against Mr. Clevenger in good

faith.  Mr. Butowsky should also note that Mr. Clevenger called the Plaintiff's Attorneys

"creeps" and "oily shysters" in a blog post, not a court document, and he did so in

response to the fact that the Plaintiff's attorneys tried to unlawfully obtain his private communications about the subject matter of this lawsuit. Most attorneys probably would not respond well to an unlawful attempt by opposing counsel to obtain privileged communications.

III.  Mr. Clevenger did not disclose inaccurate information about settlement negotiations, nor did he disclose information improperly.

Even though the Plaintiff's Attorneys concede that proceedings in this Court are governed by the D.C. Rules of Professional Conduct, they cite a Texas rule in support of their argument that Mr. Clevenger violated professional standards and therefore should be excluded from this case. Why do they rely on the Texas rule? Because there is no D.C. rule that prohibits what Mr. Clevenger wrote about in his blog post. Accordingly, Mr. Clevenger did not violate the rules of either jurisdiction, because Texas defers to the rules of other jurisdictions when its lawyers are practicing elsewhere. *See* Tex. Disc. R. Prof. Conduct 8.05, Comment 3.  Furthermore, Mr. Clevenger would not have violated Texas Rule 3.07 even if this case was pending in Texas.  In their OPPOSITION, the Plaintiff's Attorneys omitted the part of Rule 3.07 that eviscerates their argument, and that does not appear to be an accident.  The relevant sentence from Rule 3.07(b)(5) states *in its entirety* that a lawyer ordinarily violates the rules governing trial publicity when he or she reveals "information the lawyer knows or reasonably should know is likely to be inadmissible as evidence in a trial *and would if disclosed create a substantial risk of prejudicing an impartial trial*."  Tex. Disc. R. Prof. Conduct 3.07(b)(5)(emphasis added).

- 14 -

The fact that settlement discussions are ongoing between the Plaintiff and *The Washington Times* is barely even newsworthy, particularly given the fact that settlement discussions among litigants are reported every day in professional and public media. If the *The Washington Times* was considering a $100,000 settlement with the Plaintiff, Mr. Clevenger reported it, and the Texas rule somehow applied to this case, that disclosure still would not "create a substantial risk of prejudicing an impartial trial."  Mr. Clevenger did not disclose settlement negotiations between the Plaintiff and his client, where confidentiality could reasonably be expected.  And as a matter of professional courtesy, he would not have disclosed the existence of settlement negotiations that he learned about from counsel for *The Washington Times* but for the fact that he had already learned about the settlement negotiations indirectly from someone else, namely a non-party witness. *See* Declaration of Ty Clevenger (Exhibit 2).

It is ironic that the Plaintiff's Attorneys accuse Mr. Clevenger of disclosing "inaccurate" information about settlement discussions with *The Washington Times*. To put that issue to rest, Mr. Butowsky is submitting a copy of the draft declaration that the Plaintiff's Attorneys sent to Admiral James A. Lyons, the non-party witness referenced above. *See* June 22, 2018 Declaration of Edward Butowsky and attached Draft Declaration (Exhibit 12). The draft declaration is chock full of false statements about Mr. Butowsky, leading Mr. Butowsky to wonder whether the Plaintiff's Attorneys were trying to procure false testimony in order to win a lawsuit.

IV.   <u>The waiver requested by Mr. Clevenger was not frivolous.</u>

The Plaintiff's Attorneys appear to misapprehend the nature of an adversarial

proceeding. They make railing accusations against Mr. Butowsky, then expect Mr.

Butowsky to accept Mr. Rich's unsworn assurances in his COMPLAINT that he did not leak

emails to Wikileaks. As Mr. Clevenger has explained repeatedly, discovery in this case is

far from typical. Wikileaks and its affiliates are beyond U.S. jurisdiction, and they

consider themselves duty-bound to protect the anonymity of their sources.  Their public

track record shows that they will not release any information about Mr. Rich or his

brother without some sort of voluntary authorization from Mr. Rich. *See, e.g.*, "Julian

Assange Claims Russia Isn't Behind WikiLeaks' Hacked Clinton Emails," FORTUNE,

November 3, 2016 (Wikileaks founder Julian Assange "says WikiLeaks will not reveal

the identity of its sources") http://fortune.com/2016/11/03/julian-assange-wikileaks-

russia-podesta-emails/. Meanwhile, the endless evasions, overreactions, and histrionics of

the Plaintiff's Attorneys are equally revealing. They make generic allegations that Mr.

Clevenger's request for a waiver is improper, but they never give any *specific* explanation

of *how* it is improper.  The question thus remains: what *exactly* is improper about asking

Mr. Rich to voluntarily authorize Wikileaks to reveal relevant information?  What rule or

statute prohibits such a request?

In his June 2, 2018 letter, Mr. Gottlieb suggested that Mr. Rich would not sign a

waiver because "the mere act of granting a waiver to disclose communications to these

third parties could create an impression that there exist communications that could or

should be disclosed...” Gottlieb Letter (Exhibit 6). That's ridiculous. Mr. Rich could just as easily announce that he was granting a waiver in order to *prove once and for all* that there are no such communications.  Since June 2, 2018, the Plaintiff's Attorneys had repeatedly said they would issue their own subpoenas for Wikileaks, but thus far that has not happened.[1]  Recall that the Plaintiff's attorneys generated a subpoena for Twitter in a matter of hours when they wanted to send a message to Mr. Clevenger.

V.  Mr. Clevenger made accurate representations to the Southern District of New York.

In a June 19, 2018 supplement to the OPPOSITION, the Plaintiff's Attorneys attached a memorandum of law in opposition to Mr. Clevenger's appearance *pro hac vice* in the Southern District of New York.  True to form, they did not attach Mr. Clevenger's response, which highlights the misrepresentations and inaccuracies in that memorandum. That response is attached as Exhibit 13, and Mr. Butowsky incorporates it herein by reference.

As the Court can see for itself, there are no "material differences" between Mr. Clevenger's declaration to this Court and his declaration to the Southern District.  In his declaration to this Court, Mr. Clevenger referred the Court to Attorney Grievance Docket No. 15-19, where <u>all</u> of the same sanctions and disciplinary matters are listed. Furthermore, as noted above, Mr. Clevenger's declaration to this Court provided links to

---

[1]   At 5:23 p.m. this evening, as this document was being finalized, Ms. Governski sent an email indicating that her client would ask this Court to issue letters rogatory for the purpose of gaining evidence from Wikileaks, Julian Assange, and Kim Dotcom.

the briefing in *Clevenger v. Moawad*, where the Texas disciplinary matter and the D.C. disciplinary matter are also disclosed.

VI.   <u>Mr. Clevenger did not make "false statements" to a blogger.</u>

As the Court has seen by now, the Plaintiff's Attorneys use the term "false statements" rather loosely, failing to distinguish statements of opinion that they do not like from statements of fact that are objectively untrue.  In their June 19, 2018 SUPPLEMENT TO PLAINTIFF'S OPPOSITION TO TY CLEVENGER'S MOTION FOR PERMISSION TO APPEAR PRO HAC VICE ("SUPPLEMENT"), they claim that Mr. Clevenger made "false statements" to a blogger.  He did not.  Mr. Butowsky has attached a string of messages (Exhibit 14) between Mr. Clevenger and blogger Alicia Powe wherein he sought correction of some of the statements attributed to him, but even in their original form none of those statements were false.

As examples of  "false statements," the Plaintiff's Attorneys point to Mr. Clevenger's statement that the Plaintiff will not "authorize Wikileaks to reveal what it knows," will not allow Wikileaks to "reveal what emails [it has] regarding to [sic] Rich," and is "going out at desperate lengths to change the subject from the fact that they don't want WikiLeaks to reveal what it knows. SUPPLEMENT 3-4.  The latter statement is an expression of opinion, but what exactly is "false" about the first two statements? According to the Plaintiff's Attorneys, the foregoing statements "are directly contradicted by representations counsel for Mr. Rich has repeatedly made to Mr. Clevenger, including

that Mr. Rich intends to issue third-party subpoenas to Wikileaks and other third parties at an appropriate time in this litigation." Here we go again. In our adversarial system of justice, neither Mr. Butowsky nor Mr. Clevenger are obligated to defer to "representations" made by opposing counsel. And when exactly is "an appropriate time in this litigation" to resolve the most fundamental factual issue in dispute?

At the Fed. R. Civ. P. 26 conference, the Plaintiff's Attorneys pushed to initiate discovery immediately, *i.e.*, before the jurisdictional questions were resolved. See Declaration of Ty Clevenger (Exhibit 2). When the Plaintiff's Attorneys wanted to send a message to Mr. Clevenger, they cranked out a subpoena to Twitter, Inc. in a matter of hours. Yet the Plaintiff's Attorneys did not take steps to subpoena Wikileaks until after they had received adverse media attention.

VII.  <u>Mr. Clevenger already represents Mr. Butowsky in matters related to this case.</u>

Mr. Butowsky is a Texas resident, Mr. Clevenger is a Texas-licensed attorney, and Mr. Clevenger serves as Mr. Butowsky's personal attorney. *See* Declaration of Ty Clevenger (Exhibit 2). Mr. Clevenger's duties include representing Mr. Butowsky in pending cases that are directly or indirectly related to this lawsuit, *see, e.g.*, *Ed Butowsky v. David Folkenflik, et al.*, Case 4:18-cv-00442 (E.D. Tex.) and *Chapwood Capital Investment Management, LLC, et al. v. Charles Schwab Corporation, et al.*, Case No. 4:18-cv-00287 (E.D. Tex.), and he is the lawyer most knowledgeable of the facts surrounding the allegations and claims the Plaintiff asserts against Mr. Butowsky. Mr.

Clevenger sought admission *pro hac vice* in this Court because he is coordinating Mr. Butowsky's representation in various courts in matters pertaining to the murder of Seth Rich. Mr. Butowsky has a substantial investment in Mr. Clevenger, and he should not suffer the penalty of having to invest in bringing another lawyer up to speed. By permitting Mr. Clevenger to appear *pro hac vice*, the Court would be granting Mr. Butowsky access to his counsel of choice.  On the other hand, to preclude Mr. Clevenger from appearing in the case would unduly prejudice Mr. Butowsky, while at the same time unfairly advantage the Plaintiff.  The Court is well equipped to police the conduct of all lawyers that appear.  Should Mr. Clevenger act inappropriately, the court is empowered to disqualify him at any time.  However, the Court should not penalize Mr. Butowsky by pre-determining that his lawyer will somehow misbehave; particularly based on the unfounded and inaccurate statements of opposing counsel.

## Conclusion

The Plaintiff's Opposition is a diversionary tactic. The Plaintiff's Attorneys did something egregiously unethical, then attempted to change the subject by attacking Mr. Clevenger.  The Court should reject the Opposition and authorize Mr. Clevenger to appear in this case *pro hac vice*.

Respectfully submitted,

/s/     Kenneth A. Martin
Kenneth A. Martin
The Martin Law Firm
6718 Whittier Avenue, Suite 200
McLean, Virginia 22101

- 20 -

Telephone (703) 918-0350
Email: Ken@martin-lawfirm.com
Bar #420600
**Attorney for Defendant Edward Butowsky**

## CERTIFICATE OF SERVICE

I certify that I filed the foregoing document on June 23, 2018 using the Court's ECF system, which automatically provides notice to Plaintiff's Counsel and counsel for *The Washington Times*. I further certify that a copy of the foregoing document was provided to Defendants Matt Couch and America First Media via email to mattcouch@af-mg.com on June 23, 2018.

**/s/ Kenneth A. Martin**
Kenneth A. Martin