

June 2, 2018

Ty Clevenger
P.O. Box 20753
Brooklyn, New York 11202-0753
Telephone: (979) 985-5289
Facsimile: (979) 530-9523
Email: tyclevenger@yahoo.com

**Re:** ***Aaron Rich v. Butowsky, et al.*** **(United States District Court for the District of Columbia)**

Dear Mr. Clevenger,

This letter responds to two emails you sent to us on May 30, 2018, as well as a follow-up letter you sent to us on June 1, 2018.

In your May 30, 2018 email, you demanded that our client, Aaron Rich, consent to a "waiver" that you drafted (hereinafter, "waiver letter"), which asks our client to release all future potential claims against third parties on the asserted basis that "Julian Assange / Wikileaks likely will not cooperate unless your client consents to the release of information." In response to that demand, we replied that the appropriate mechanism for obtaining information from third parties was to make use of the subpoena powers available under the Federal Rules of Civil Procedure, and that we intended to rely upon those authorities both to send and respond to requests for information in this case. In response that same day, you emailed back with the following:

> "Yes, but as a practical matter, Julian Assange, Kim Dotcom, and Wikileaks are beyond U.S. jurisdiction. Furthermore, Assange and Wikileaks have shown that they will not be coerced into revealing the identity of their sources. It is for that reason that I am asking your client to voluntarily waive any objections to the release of such information. If you are saying your client is unwilling to do that, I think the media (and the public) will find that very interesting."

On June 1, 2018, you followed up on your emails with a letter, citing the provisions of Federal Rule 11, in which you suggested that both we and our client have engaged in fraud upon the court, and further that you find it "very telling" that Mr. Rich "refuses to authorize disclosures from the witnesses who are in the best position to know who leaked those emails. That begs a question: if your client has nothing to hide, why is he hiding it?" Your letter further claims that "Under Rule 11(b), you have a duty to answer that question," and advised us that we should ask our client various factual questions and provide other instructions.





To begin, your correspondence to date does not reveal what relationship, if any, you have to the third parties on whose behalf you have made factual representations and sought releases from our client. Nor does your letter disclose whether you are authorized to make such representations on those parties' behalf, or whether the third parties have actually sought such assurances or releases. Instead, you have demanded that our client execute a legal waiver as to third parties—including WikiLeaks, which has been labeled by the Trump Administration's Director of the CIA as a "hostile intelligence service"; and Kim Dotcom, who has been declared a fugitive by the Justice Department and remains under indictment in the United States for wire fraud, copyright infringement, racketeering, and money laundering—solely on your say-so.

Before we can properly consider and advise our client on your demand, we will need to first understand your position and what role you are playing with respect to the third parties you mention. Towards that end, we ask that you answer the following questions, after which we will confer with our client regarding the waiver you have requested:

1. Do you currently represent in this matter any of the third parties referenced in your waiver letter? If so, which ones?

2. Do you currently represent in *any* matter any of the third parties referenced in your waiver letter? If so, which ones and in what matters?

3. Have you had any communications with the third parties referenced in your waiver letter relating in any way to the waiver you have requested from our client? If so, please provide those communications to us unless you claim that such communications were exchanged under an attorney-client relationship, and if so, please explain when your attorney-client relationship arose.

4. Have the third parties referenced in your waiver letter communicated to you that this waiver is a necessary condition to responding to subpoena issued by the court in this matter? If so, what is the legal basis for this position? Please provide citations to relevant authorities.

5. Specifically with respect to eBay, Inc. and PayPal Holdings, Inc., did you confer with either entity and seek their consent prior to seeking a waiver of liability as to those entities from our client? If so, please provide us with a point of contact at each institution with whom we may confer as to whether those institutions believe a waiver is required to allow them to comply with a subpoena issued under the federal rules.

As far as the merits of your argument—that unless our client provides an advance waiver to these third parties on your demand, he must be hiding something—your objectives are transparent and improper. As you know given the allegations in our client's Complaint, our client has already publicly stated that he has had no communications of any kind with WikiLeaks or Assange. Thus, our client has already declared that he was not a source for those entities, and we would be estopped from raising any claim of "source privilege" in the counterfactual world in which such a privilege existed. Further, KimDotcom does not appear to be a "journalist," so it is unclear how he could claim a need for a waiver of a so-called "source privilege." Any waiver or permission to





these entities would therefore be utterly superfluous. In sum, there is no potential claim of source privilege, or any other privilege with respect to these third parties, that our client claims, and therefore there is no privilege that he can or should consent to waive.

Worse, providing such a waiver would create precisely the impression you claim we are seeking to avoid. Namely, the mere act of granting a waiver to disclose communications to these third parties could create an impression that there exist communications that could or should be disclosed, and that is especially so if you were to follow through on your threat of disclosing such information to the media.

It is false and inflammatory to suggest that our client would be hiding something by refusing to sign the waiver you have demanded. To the contrary, our client will demand that these third parties produce whatever relevant documents and materials are in their possession, and we will serve subpoenas towards that end. That is the proper way to obtain such information in litigation under the federal rules. What is not proper, or responsible, is to demand prospective legal waivers on behalf of persons or entities without disclosing your relationship to those persons or entities, or their objectives and intent. Here, we have been provided with nothing more than the say-so of a lawyer (and, it would seem, a potential fact witness) whose relationship with these third parties is at best unclear.

Your allegation that our client would be hiding something by not executing your waiver is obviously frivolous in light of the scrutiny to which our client has voluntarily subjected himself by filing a federal lawsuit. Your client possesses broad discovery powers. We expect your client to demand our client's communications, bank and phone records, and the like, and your client has further rights to demand similar information from third parties including the parties referenced in your letter. Our client will comply with such demands so long as they are in compliance with the limitations imposed by the federal rules. Thus, the record will be clear that our client has no desire or intent to hide anything—only a desire that this litigation should proceed the way it is supposed to under the federal rules, and an intent to refuse false choices that are plainly designed to fan the flames of your client's conspiracy theories.

We will prove that our client has never served as a "source" to any of the third parties mentioned in your waiver letter, including by issuing subpoenas to them. It will be their choice if they want to refuse to comply with our subpoenas or our efforts to compel them to do so by hiding behind legal technicalities, specious theories of jurisdiction, or meritless claims of reporter shield. We do not believe it is necessary or appropriate to provide *you* with prospective waivers as to third parties you may or may not represent in order to entice those entities to comply with the federal rules. We are unaware of any authority suggesting it would be appropriate, let alone necessary, for our client to agree to your demand.

To the extent your demand asks us to provide a legal waiver on behalf of Seth Rich, that request is misdirected. Seth Rich is deceased, and his estate is not a party to this lawsuit. We do not represent the estate of Seth Rich; we represent Aaron Rich. Under longstanding principles of U.S. law, a deceased individual cannot be defamed, so it is unclear why any of the third parties you





mention would fear liability relating to information regarding Seth Rich. But in any event, whatever claims the third parties in your letter may have regarding Seth Rich, our client has no legal right to stop those third parties from complying with legal process directed to them. More importantly, we have no interest in seeking to prevent these third parties from complying with legal process in this case—to the contrary, as mentioned, we will serve subpoenas on these third parties demanding that they produce any and all relevant documents and information in their possession. It will be up to the third parties to decide whether they want to hide behind fabricated privileges. Perhaps instead of threatening our client, you should direct your attention to convincing these third parties to cooperate with the subpoenas they will soon receive.

Even if we were inclined to agree to your curious demands on behalf of a hostile foreign intelligence service and an indicted "fugitive," we would be obliged to ask whether your client intends to provide reciprocal waivers. Therefore, in any response, we expect you to state your position as to whether Mr. Butowsky intends to release all third parties with whom he has spoken from any possible claim of "source privilege," including but not limited to Defendants Matt Couch and AFM, and non-parties Admiral Lyons, Cassandra Fairbanks (and any employee of the publication for which she writes), Sean Hannity (and any member of his production staff), Julian Assange (and any affiliate or associate of Mr. Assange), and Malia Zimmerman (and any producer or editor with whom she has worked).

Separately, your sudden demand for urgency is interesting. You previously represented to the Court that Defendant Butowsky "ought not have to participate in discovery" until after the motions to dismiss have been adjudicated. Given your invocation of Rule 11, we will await your prompt notification to the Court that Defendant Butowsky now believes that discovery should begin immediately, including a disclosure to the Court that you and your client have now issued discovery demands upon our client notwithstanding your prior position.

Because your waiver letter is devoid of legal merit, and seeks to negotiate on behalf of parties on whose behalf you have not entered an appearance, it leaves no conclusion other than that you are attempting to engineer a publicity stunt. Our client either signs your waiver, which can then be used to suggest that he had some relationship with these third parties necessitating him providing consent, or he does not, in which case you go to the press to generate a story that our client is trying to conceal information. To the extent that is your aim, we decline to engage in the exercise. Your client has already caused Mr. Rich severe emotional and reputational damage, and we will not stand by while you seek to deepen that damage.

It is regrettable that I must also address your threat to disclose to the media and "public" that our client is "unwilling" to sign your waiver letter. As you know, public disclosure of information that would be inadmissible in court in order to influence public opinion (in this case, by perpetuating your clients' false claim that our client has something to hide with respect to WikiLeaks, which he has already directly denied in his Complaint), violates both the Texas Rules of Professional Conduct (Rules 3.07; 4.01) and the D.C. Rules of Professional Conduct (Rules 3.1; 3.6; 8.4), the latter of which you have agreed to follow as a *pro hac vice* applicant (LCvR 83.12; LCvR 83.15). There is no principle of evidence, under federal or D.C. law, under





which our client's failure to agree to your demand that our client sign a prospective waiver as to third parties would be admissible.[1]

Finally, Mr. Clevenger, understand that our duty is not to you, your client, or the answers you are demanding on the metastasizing conspiracy theory you and your client have embraced. Our duty is to our client, the Court, and to the laws of the United States and the District of Columbia. We will continue to insist that all parties comply with the established judicial procedures and mechanisms designed to accommodate discovery among parties and third parties. You would be well advised to do the same.

Respectfully,

/s/ Michael J. Gottlieb

Michael J. Gottlieb
mgottlieb@bsfllp.com
BOIES SCHILLER FLEXNER LLP

[1] *See, e.g.*, *Keys v. Washington Metro. Area Transit Auth.*, 577 F. Supp. 2d 283, 286 (D.D.C. 2008) (Leon, J) ("Evidence is relevant if it has a 'tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'"); *Mokhiber v. Davis*, 537 A.2d 1100, 1108 (D.C. 1988) ("Pretrial documents are not critical to promoting trial understanding and may contain prejudicial and sensitive material that would be inadmissible at the trial itself.").