**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

AARON RICH,

                 Plaintiff,

    v.

EDWARD BUTOWSKY,
MATTHEW COUCH, and
AMERICA FIRST MEDIA

                 Defendants.

Civil Action No. 1:18-cv-00681-RJL

Hon. Richard J. Leon

**ORAL ARGUMENT REQUESTED**

**<u>PLAINTIFF'S MEMORANDUM IN SUPPORT OF
PLAINTIFF'S MOTION FOR ANTI-SUIT INJUNCTION</u>**

BOIES SCHILLER FLEXNER LLP
JOSHUA RILEY (D.C. Bar No. 1026900)
MERYL C. GOVERNSKI (D.C. Bar No. 1023549)
1401 New York Ave. NW
Washington, DC  20005
Tel: (202) 237-2727
Fax: (202) 237-6131
jriley@bsfllp.com
mgovernski@bsfllp.com

WILLKIE FARR & GALLAGHER LLP
MICHAEL J. GOTTLIEB (D.C. Bar No. 974960)
1875 K Street NW
Washington, DC 20006
Tel: (202) 303-1000
Fax: (202) 303-2000
mgottlieb@willkie.com

*Attorneys for Plaintiff Aaron Rich*

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS...................................................................................................... i

TABLE OF AUTHORITES ................................................................................................. ii

PRELIMINARY STATEMENT ......................................................................................... 1

FACTUAL BACKGROUND.............................................................................................. 2

ARGUMENT ...................................................................................................................... 5

I.  THE ANTI-SUIT INJUNCTION FACTORS FAVOR ENJOINING
    DEFENDANT BUTOWSKY................................................................................... 7

    A.  The Anti-Suit Injunction Factors Favor Enjoining Defendant Butowsky
        From Suing Mr. Rich's Lawyers In Texas............................................................ 8

        1.  Identity Of The Parties........................................................................... 8

        2.  Risk Of Inconsistent Adjudications ....................................................... 8

        3.  Conservation Of Judicial Resources ..................................................... 11

        4.  Stage Of Litigation............................................................................... 11

        5.  Forum Shopping.................................................................................... 12

        6.  Location And Participation Of Counsel................................................. 12

    B.  The Anti-Suit Injunction Factors Favor Enjoining Defendant Butowsky
        From Pursuing Litigation Claims Against Mr. Rich As A Non-Party Co-
        Conspirator........................................................................................................ 14

II.  MR. RICH WILL BE IRREPARABLY HARMED IF THIS COURT DOES
     NOT ENJOIN THE TEXAS LITIGATION................................................................ 15

III. AN ANTI-SUIT INJUNCTION WILL NOT SUBSTANTIALLY HARM
     OTHER INTERESTED PARTIES............................................................................. 16

IV.  THE PUBLIC INTEREST FAVORS ENTERING AN ANTI-SUIT
     INJUNCTION IN THIS CASE. ................................................................................ 16

CONCLUSION.................................................................................................................. 17

# TABLE OF AUTHORITES

## CASES                                                                  Page(s)

*Am. Horse Prot. Ass'n v. Lyng*,
   690 F. Supp. 40 (D.D.C. 1988) ....................................................................... *passim*

*Am. Petroleum Inst. v. Technomedia Int'l, Inc.*,
   699 F. Supp. 2d 258 (D.D.C. 2010) ......................................................................... 5

*Bridgeport Hosp. v. Sebelius*,
   2011 WL 862250 (D.D.C. Mar. 10, 2011).............................................................. 9

*Colorado River Water Conservation Dist. v. United States*,
   424 U.S. 800 (1976)................................................................................................. 5

*Columbia Plaza Corp. v. Security National Bank*,
   525 F.2d 620 (D.C. Cir. 1975) ................................................................... 7, 10, 14

*Gharb v. Mitsubishi Electric Corp.*,
   148 F. Supp. 3d 44 (D.D.C. 2015) ....................................................................... 13

*Hopeman Bros., Inc. v. Cont'l Cas. Co.*,
   2017 WL 1381665 (E.D. Va. Apr. 17, 2017) ........................................................ 7

*Int'l Equity Investments, Inc. v. Opportunity Equity Partners Ltd.*,
   441 F. Supp. 2d 552 (S.D.N.Y. 2006).............................................................. 8, 14

*Laker Airways Ltd. v. Sabena, Belgian World Airlines*,
   731 F.2d 909 (D.C. Cir. 1984) .............................................................. 6, 9, 16, 17

*Messina v. Krakower*,
   439 F.3d 755 (D.C. Cir. 2006) ............................................................................. 17

*Microsoft Corp. v. Motorola, Inc.*,
   696 F.3d 872 (9th Cir. 2012) ............................................................................ 8, 14

*Microsoft Corp. v. Motorola, Inc.*,
   871 F. Supp. 2d 1089 (W.D. Wash. 2012)..................................................... 6, 8, 14

*Milkovich v. Lorain Journal Co.*,
   497 U.S. 1 (1990)................................................................................................... 9

*Moore v. New York Cotton Exchange*,
   270 U.S. 593 (1926).............................................................................................. 10

*Powell v. Davis*,
   2018 IER Cases 400447, 2018 WL 5621491 (D.D.C. Oct. 30, 2018).................... 7

*RSM Prod. Corp. v. Freshfields Bruckhaus Deringer U.S. LLP*,
    800 F. Supp. 2d 182 (D.D.C. 2011) ...................................................................................... 14

*Sea Containers Ltd. v. Stena AB*,
    890 F.2d 1205 (D.C. Cir. 1989) ................................................................................. 6, 11, 14

*Southern Constr. Co. v. United States ex rel. Pickard*,
    371 U.S. 57 (1962) .................................................................................................................. 10

*Washington Metro. Area Transit Auth. v. Ragonese*,
    617 F.2d 828 (D.C. Cir. 1980) .............................................................................................. 5, 7

## OTHER AUTHORITIES

Council of the District of Columbia, Report of the Committee on Public Safety and the
    Judiciary on Bill 18-893 (Nov. 18, 2010) ............................................................................. 17

## RULES

Fed. R. Civ. P. 13(a) .................................................................................................. 9, 10, 14

Plaintiff Aaron Rich submits this memorandum of law in support of his motion for an anti-suit injunction against Defendant Edward Butowsky.

## PRELIMINARY STATEMENT

On March 12, 2019—nearly one year after Mr. Rich filed this lawsuit—Defendant Mr. Butowsky initiated a lawsuit in Texas (the "Texas Litigation") that names certain of Mr. Rich's attorneys as defendants and Mr. Rich as a non-party co-conspirator for claims arising from the very allegations at issue in this case.[1]  Mr. Butowsky has alleged in the Texas Litigation that Mr. Rich's counsel in this case defamed him by making statements verbatim, or almost verbatim, to the allegations in Mr. Rich's complaint against Mr. Butowsky that remains pending before this Court.  The Texas Litigation also accuses Mr. Rich of conspiring with his parents' lawyers and others to file a "false" lawsuit against Mr. Butowsky for orchestrating a Fox News article that named Seth Rich, Mr. Rich's brother, as the DNC leaker because, as the Texas Litigation alleges, they were aware that the Mr. Rich and his brother were in fact the DNC leakers—which is the same false and defamatory narrative central to this suit.  To the extent that Mr. Butowsky believes he has such claims, he is required to assert those allegations as counterclaims or defenses before this Court, in this case; he is not permitted to circumvent this Court's jurisdiction by filing duplicative litigation addressing the same underlying grievances in a forum in which he

---

[1]  Complaint, *Butowsky v. Gottlieb et al*, 4:19-cv-00180, Mar. 12, 2019 (Dkt. 1) ("Texas Litigation Compl.").  The Texas Litigation Complaint is attached to this Motion as Exhibit A. Mr. Rich's counsel have not been served and do not waive any defenses, including lack of personal jurisdiction, by filing this Motion.

would prefer to litigate and to which he has already requested this Court transfer the case.[2]  This Court should grant an anti-suit injunction as to Mr. Butowsky's claims against Mr. Rich's counsel and, separately, as to the claims that implicate Mr. Rich as a non-party co-conspirator in order to avoid the substantial risk of inconsistent adjudications and inefficient use of scarce judicial resources that would result if two courts were to adjudicate two cases about the same factual and legal claims.

### **FACTUAL BACKGROUND**

On March 26, 2018, Mr. Rich filed this lawsuit against Defendants Butowsky, Matt Couch, America First Media ("AFM"), and The Washington Times, alleging *inter alia* that Defendants defamed Mr. Rich and caused him emotional distress by publishing or causing the publication of various false statements about Mr. Rich, including that he: conspired with his brother, Seth Rich, to download emails from the Democratic National Committee ("DNC"); received money from WikiLeaks into his account; knew in advance that his brother was going to be murdered but did nothing to stop it, and even warned Seth's girlfriend to break up with him and leave D.C.; and participated in meetings with his brother and Donna Brazile at the DNC where he threw a chair.  Dkt. 3.[3]  Mr. Rich's lawsuit alleges that Mr. Butowsky conspired with the other Defendants to publish lies about Aaron and to convince the public that Seth and Aaron Rich stole the DNC documents that WikiLeaks published in the summer of 2016, in the run-up to that year's presidential election.  *See, e.g.,* Dkt. 3 ¶¶ 6–7.  Mr. Rich alleges that Mr. Butowsky

---

[2] Mr. Rich filed an opposition to Mr. Butowsky's motion to transfer the case to Texas on November 6, 2018, and Mr. Butowsky did not file a reply.  Dkt. 45.  The motion awaits the Court's resolution.

[3] Docket references relate to the docket in this litigation.

and others promoted this false conspiracy as a counter-narrative to the Intelligence Community's

conclusion that Russia had interfered with the 2016 presidential election.  *Id.* ¶¶ 1, 6, 45, 50, 65.

About a year later, on March 12, 2019, Mr. Butowsky filed the Texas Litigation,

asserting claims that arise directly from this lawsuit.  *See* Exh. A.[4]  In the Texas Litigation, Mr.

Butowsky alleges that Mr. Rich's counsel in this case defamed Mr. Butowsky by making

statements in connection with this lawsuit that are verbatim or nearly verbatim those pled in Mr.

Rich's complaint.[5]  The table attached as an Appendix to this brief provides a side-by-side

comparison, with emphasis added, of (1) the statements in Mr. Rich's complaint in this action

and (2) the statements that Defendant Butowsky alleges to be defamatory in the Texas

---

[4] The Texas Litigation names 19 other defendants besides Mr. Rich's counsel.  Twelve of the defendants are plaintiffs or plaintiffs' counsel in existing actions in other federal courts against Defendant Butowsky: (1) Brad Bauman, the plaintiff in *Bauman v. Butowsky et al*, No. 18-cv-1191 (D.D.C), and (2) Mr. Bauman's company, The Pastorum Group; counsel for Mr. Rich's parents, Joel and Mary Rich in *Rich v. Fox News et al*, No. 18-cv-2223 (S.D.N.Y), including (3) Massey & Gail LLP and its attorneys (4) Leonard A. Gail, (5) Eli J. Kay-Oliphant, (6) Suyash Agrawal, and Susman Godfrey attorneys (7) Arun Subramanian, (8) Elisha Barron, and (9) Gloria Park.  Despite naming Susman Godfrey attorneys who are based in non-Texas offices, the Texas Litigation does not name the Susman Godfrey firm itself, which has a principal place of business in Texas.  The Texas Litigation also names journalists who reported on the various lawsuits: (10) Turner Broadcasting System, Inc., (11) Anderson Cooper, (12) Gary Tuchman, (13) Oliver Darcy, (14) Tom Kludt, (15) The New York Times Company, (16) Alan Feuer, (17) Vox Media, Inc., and (18) Jane Coaston.  The final defendant is (19) The Democratic National Committee.

[5] A number of entities and individuals have already retracted the precise statements that Defendant Butowsky has sued in Texas to defend, including former Defendant The Washington Times and Infowars along with Dr. Jerome Corsi.  The Washington Times, *Retraction: Aaron Rich and the murder of Seth Rich*, Sept. 30, 2018), *available at* https://www.washingtontimes.com/news/2018/sep/30/retraction-aaron-rich-and-murder-seth-rich; Fox News, Statement on Coverage of Seth Rich Murder Investigation, Fox News, May 23, 2017, http://www.foxnews.com/politics/2017/05/23/statement-on-coverage-seth-rich-murder-investigation.html; Dr. Jerome Corsi, *Retraction of Dr. Jerome Corsi Regarding The Murder of Seth Rich,* Infowars, Mar. 4, 2019, https://www.infowars.com/retraction-of-dr-jerome-corsi-regarding-the-murder-of-seth-rich/.

Litigation.[6]  As seen in the Appendix, the essence of the Texas Litigation, as it applies to Mr. Rich's attorneys, is nothing more than the claim that Mr. Rich's allegations in this action are defamatory as to Mr. Butowsky.

The Texas Litigation also names Mr. Rich as a non-party co-conspirator for claims related to the lawsuit filed by his parents against Mr. Butowsky and others for, *inter alia*, causing them emotional distress by causing the publication of a false Fox News story that accused Seth of leaking DNC emails to WikiLeaks.  *See* Complaint, *Rich v. Fox News*, No. 18-cv-0223, Mar. 13, 2018, Dkt. 1 (S.D.N.Y.) ("Rich Parents' Lawsuit").  The Texas Litigation accuses the filing attorneys and Bauman defendants of "colluding" with Mr. Rich and his parents to file the "false" Rich Parents' Lawsuit while being "aware" that Mr. Butowsky did not "propagate or develop a fictitious story" because Seth and Aaron Rich were, in fact, "responsible for leaking emails from the DNC."  Texas Litigation Compl. ¶¶ 56–60; 89–92; 95–96.  Just as with the claims against Mr. Rich's counsel, such a claim is nothing more than a re-formulation of Mr. Butowsky's defenses to this lawsuit.

The complaint in the Texas Litigation is little more than a vehicle by which Mr. Butowsky hopes to prove the falsity of Mr. Rich's allegations in this case.  *See, e.g.* Texas Litigation Compl. ¶ 5 (alleging that Mr. Butowsky's "statements about the stolen emails were accurate"); *id.* ¶ 54 ("Aaron Rich and Seth Rich were both responsible for leaking the DNC emails"); *id.* ¶ 61 ("the Boies Schiller Defendants knew that Aaron Rich actually had assisted his brother in leaking DNC emails to Wikileaks"); *id.* ¶ 62 (Mr. Butowsky "never told any lies about

---

[6] The Texas Complaint does not quote the full statements and removes requisite context.  The quotes in the table are pulled directly from the CNN Interview Transcript (relevant excerpt attached as Exh. B) and the Vox News Article (attached as Exh. C).

Seth Rich or Aaron Rich"), *id.* ¶ 66 (Mr. Butowsky "is not a conspiracy theorist, and he has not spread any lies—unconscionable or otherwise—nor has he done so for personal or political gain").[7]   While Counsel for Mr. Rich will move to dismiss the Texas Litigation under the litigation privilege,[8] *inter alia*, Mr. Rich respectfully requests that this Court enter an anti-suit injunction to prevent Mr. Butowsky from using the Texas Litigation to circumvent the jurisdiction of this Court while this litigation remains pending.

## ARGUMENT

This Court should enter an anti-suit injunction to prevent Mr. Butowsky from circumventing this Court's jurisdiction by raising his defenses here as affirmative claims in the Texas Litigation.   Where, as here, "two cases between the same parties on the same cause of action are commenced in two different Federal courts, the one which is commenced first is to be allowed to proceed to its conclusion first." *Washington Metro. Area Transit Auth. v. Ragonese*, 617 F.2d 828, 830 (D.C. Cir. 1980) (quotation marks and alterations omitted); *see Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976) ("As between federal district courts, however, though no precise rule has evolved, the general principle is to avoid

---

[7] In addition to defamation, the Texas Litigation accuses Mr. Rich's counsel of business disparagement, Texas Litigation Compl. ¶¶ 87–88, and conspiring with the Bauman-related defendants, counsel for Mary and Joel Rich, and The Democratic National Committee, *id.* ¶¶ 93–94.   Each of these additional claims relate to and arise out of the same allegedly defamatory statements.   *See id.* ¶ 88 (business disparagement because "they or their agents published or conspired with others to publish false and defamatory statements…"); *id.* ¶ 94 ("conspired either directly or through their agents to defame Mr. Butowsky and disparage his business").

[8] *Am. Petroleum Inst. v. Technomedia Int'l, Inc.*, 699 F. Supp. 2d 258, 268 (D.D.C. 2010) (Leon, J) ("The District of Columbia, 'like the majority of other jurisdictions, has long recognized an absolute privilege for statements made preliminary to, or in the course of, a judicial proceeding, so long as the statements bear some relationship to the proceeding.'" (internal citation omitted)).

duplicative litigation."); *see also Sea Containers Ltd. v. Stena AB*, 890 F.2d 1205, 1213 (D.C. Cir. 1989) (holding that an anti-suit injunction is appropriate where "two federal courts entertain[] jurisdiction over claims arising out of essentially the same facts"). "Courts have a duty to protect their legitimately conferred jurisdiction to the extent necessary to provide full justice to its litigants" including to issue a non-suit injunction "when the action of a litigant in another forum threatens to paralyze the jurisdiction of the court." *Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 927 (D.C. Cir. 1984).

When moving for injunctive relief, a moving party must show: (1) a strong likelihood of success on the merits (or, as applied here, the anti-suit injunction factors); (2) it will be irreparably harmed without an injunction; (3) that the issuance of the injunction will not substantially harm other interested parties; and (4) that the public interest favors injunction. *Am. Horse Prot. Ass'n v. Lyng*, 690 F. Supp. 40, 42 (D.D.C. 1988); *see also Sea Containers Ltd.*, 890 F.2d at 1213 (adopting the *Am. Horse* test).[9]   The anti-suit injunction factors relevant to addressing the first prong of the preliminary injunction analysis are as follows:

> "In this Circuit, the factors central to the issue of enjoining the prosecution of a later-filed action in another district relate to the

---

[9] It is unclear whether this Circuit has entirely replaced the traditional four-factor test for obtaining preliminary injunction relief with the factors unique to anti-suit injunction cases, or has simply modified it by replacing the "likelihood of success on the merits" prong with those factors. *Compare Laker Airways*, 731 F.2d at 927 (applying anti-suit injunction standard in place of the four-factor test), *with Am. Horse Prot. Ass'n*, 690 F. Supp. at 42–45 (replacing "likelihood of success on the merits" prong with the anti-suit injunction analysis, and applying the other parts of the traditional test), *and Microsoft Corp. v. Motorola, Inc.*, 871 F. Supp. 2d 1089, 1097 (W.D. Wash. 2012), *aff'd,* 696 F.3d 872 (9th Cir. 2012) (standard for the first prong is "different" in an anti-suit injunction and moving party "need only demonstrate that the factors specific to an anti-suit injunction weigh in its favor"). This Motion follows the lead of the Court in *American Horse Protection Association*, which replaced the "likelihood of success on the merits" prong with specific anti-suit injunction factors. *See* 690 F. Supp. at 42–45.

> conservation of judicial resources and comprehensive disposition of litigation. *Columbia Plaza Corp. v. Security National Bank*, 525 F.2d 620, 627–28 (D.C. Cir. 1975). These factors include: the identity of the parties; the risk of inconsistent adjudications; the location of counsel familiar with the litigation; how far advanced each action is; and, in general, 'equitable considerations genuinely relevant to the ends of justice,' relating to the expeditious determination of the case without 'unnecessary multiplication of litigation.'"

690 F. Supp. at 42–43. For the reasons laid out below, all of the factors relevant to an injunction, including the *American Horse* factors, are satisfied here.

## I. THE ANTI-SUIT INJUNCTION FACTORS FAVOR ENJOINING DEFENDANT BUTOWSKY.

The anti-suit injunction factors overwhelmingly support this Court remaining the forum to address Mr. Rich's claims and Mr. Butowsky's defenses.[10]

---

[10] Mr. Rich does not request that this Court enter an anti-suit injunction as to Mr. Butowsky's claims against all defendants in his Texas Litigation, but rather requests that such injunction only preclude Mr. Butowsky from suing Mr. Rich's counsel and, separately, from litigating claims against Mr. Rich as a non-party co-conspirator for claims that are essentially identical to the defenses that Mr. Butowsky would raise on the merits in this suit. *See Washington Metro. Area Transit Auth.*, 617 F.2d at 830–31 (upholding decision to enjoin lawsuit in Washington, D.C., which was filed after a pending suit in another federal court, even though a defendant in the second suit was not a party in the first because that party's "participation in a later action would not require a fresh judicial construction of the contract" in question); *Hopeman Bros., Inc. v. Cont'l Cas. Co.*, 2017 WL 1381665, at *8 (E.D. Va. Apr. 17, 2017) ("The Court may enjoin the New York action in its entirety if it finds that 'the parties, issues and available relief do not significantly differ between both cases,' or alternatively, may enjoin only the Virginia defendants, Continental and Lexington, from prosecuting their case against Hopeman…" (internal citations and alterations omitted)); *cf. Powell v. Davis,* 2018 IER Cases 400447, 2018 WL 5621491, at *4 (D.D.C. Oct. 30, 2018) (enjoining plaintiff from filing additional lawsuits, even ones naming new defendants, because "he is not entitled to as many bites at the apple as there are different defendants he can somehow include in the case caption").

A.    **The Anti-Suit Injunction Factors Favor Enjoining Defendant Butowsky From Suing Mr. Rich's Lawyers In Texas.**

1.    Identity Of The Parties

With respect to Mr. Rich's claims, the parties in the two relevant suits are essentially identical.  Mr. Rich's interest coincides with those of his Counsel, whom he appointed to serve as his representatives in connection with his claims against Mr. Butowsky and who have spoken on Mr. Rich's behalf in this case.  *See Microsoft Corp. v. Motorola, Inc.*, 871 F. Supp. 2d 1089, 1098 (W.D. Wash. 2012), *aff'd,* 696 F.3d 872 (9th Cir. 2012) ("it suffices that the parties be affiliated in such a way that their interests coincide"); *Int'l Equity Investments, Inc. v. Opportunity Equity Partners Ltd.*, 441 F. Supp. 2d 552, 562 (S.D.N.Y. 2006), *aff'd,* 246 F. App'x 73 (2d Cir. 2007) ("Where parties to the two actions are affiliated or substantially similar, such that their interests are represented by one another, courts have found the first requirement is met.").  Here, there is no question that Mr. Rich's counsel represent his interests; further, the interests of the parties coincide entirely given the essence of Mr. Butowsky's claims in the Texas Litigation is that Mr. Rich's allegations are false.  Although Mr. Rich is not personally named in the Texas Litigation, he likely would be a necessary party to that lawsuit should it be permitted to proceed, as Mr. Butowsky names Mr. Rich as a non-party co-conspirator (Texas Litigation Compl. ¶¶ 95–96), and also accuses him (falsely) of committing federal crimes by working with and admitting to working with a hostile foreign intelligence agency (*id.* ¶¶ 36, 39, 61, 65, 79), and filing a fraudulent lawsuit  (*id.* ¶ 61).

2.    Risk Of Inconsistent Adjudications

The issues in this action and the Texas Litigation are virtually identical, inexorably intertwined, and derive from a "common origin" that weighs in favor of a "comprehensive

resolution of this case in one forum." *Am. Horse Prot. Ass'n,* 690 F. Supp. at 43; *see also Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872, 882–83 (9th Cir. 2012) ("We ask 'whether the issues are the same' not in a technical or formal sense, but 'in the sense that all the issues in the foreign action ... can be resolved in the local action.'" (ellipses in original)).[11]   The complaint against Mr. Rich's counsel in the Texas Litigation, including each of the three legal claims against them, is devoted almost singularly to proving the veracity of statements about which Mr. Rich has sued Mr. Butowsky in this Court.   *See* Factual Background; Appendix.   The truth of such statements is, by definition, Mr. Butowsky's primary defense to this lawsuit.   *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 13 (1990) (holding that truth is a "complete defense to a suit for defamation").   This Court should not permit Mr. Butowsky to undermine this Court's jurisdiction by engaging in forum shopping—instead, Mr. Butowsky's defenses and counterclaims that arise out of Mr. Rich's claims against him, if any, should be raised here.   *Cf. Laker Airways*, 731 F.2d at 914–915 (entering foreign anti-suit injunction where defendants filed suit abroad "instead of actively raising all defensive claims in the federal court").   There is considerable risk of inconsistent adjudications if Mr. Butowsky is permitted to raise his affirmative defenses as claims in the Texas Litigation, especially given the potential that two courts could apply divergent legal tests to precisely the same underlying statements.

In fact, the Federal Rules require Mr. Butowsky to file his claim as compulsory counterclaims in *this* Court.   Fed. R. Civ. P. 13(a) (compulsory counterclaims where the pleader has a claim against an opposing party that "arises out of the transaction or occurrence that is the

---

[11] Courts in this Circuit have stayed a later-filed case "even where the parallel proceedings 'may not settle every question of fact and law,' but would settle some outstanding issues and simplify others." *Bridgeport Hosp. v. Sebelius*, 2011 WL 862250, at *1 (D.D.C. Mar. 10, 2011).

subject matter of the opposing party's claim").[12]   The purpose of Rule 13 is "to prevent multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters," which the Supreme Court has defined "generously":  the facts or causes of action need not be "precisely identical" and can include "additional allegations" because "the facts relied upon by the plaintiff rarely, if ever, are, in all particulars, the same as those constituting the defendant's counterclaim." *Columbia Plaza Corp.*, 525 F.2d at 625 (quoting *Southern Constr. Co. v. United States ex rel. Pickard*, 371 U.S. 57, 60 (1962) and *Moore v. New York Cotton Exchange*, 270 U.S. 593, 610 (1926)).  In *Columbia Plaza*, the D.C. Circuit reversed the trial court's decision to deny an injunction restraining a defendant from prosecuting a separate action in another federal court on the grounds that the claim in that subsequent suit should have been raised, if at all, as a mandatory counterclaim in the first case pursuant to Rule 13(a).  *Id*.  The D.C. Circuit reasoned that the second case implicated the same issues, the same evidence, and the same discovery:

> An adjudication pursuant to Rule 13(a) that two actions are parts of a single controversy should lead to resolution of both in a single forum.  Sound judicial administration counsels against separate proceedings, and the wasteful expenditure of energy and money incidental to separate litigation of identical issues should be avoided.

*Columbia Plaza Corp.*, 525 F.2d at 626.

---

[12] Even as to the Texas Litigation's business disparagement and conspiracy claims, Mr. Butowsky can find no justification pursuant to Rule 13(a)(1)(B) for filing those claims in Texas rather  than as counterclaims in this Court because this Court has jurisdiction over many, if not all, of the ten alleged co-conspirators, many of whom (including Mr. Rich's counsel) likely will challenge jurisdiction in Texas.

3.      Conservation Of Judicial Resources

Allowing the Texas Litigation to proceed on the same exact issues as those before this Court would plainly waste judicial resources with no discernible benefit.  When "two federal courts entertain[] jurisdiction over claims arising out of essentially the same facts," it is "certain that the resources of the federal judicial system would be wasted unless one of the courts required one of the parties to withdraw one of the actions: otherwise whichever court reached a decision first would bind the parties, and the other federal court would have expanded its time for nothing."  *Sea Containers*, 890 F.2d at 1213.  Here, it would be an utter waste of judicial resources to have two intertwined cases proceed in two different courts on the same set of facts and issues.

4.      Stage Of Litigation

Mr. Rich has been litigating his case for nearly a year, since he filed the complaint on March 26, 2018.  Dkt. 3.  Mr. Rich initiated meet-and-confer conferences with the parties and submitted a Rule 26(f) Conference Report and Discovery Plan ten months ago, on May 16, 2018. Dkt. 18.  Motions to Dismiss and Transfer have been fully briefed and await this Court's resolution.  Dkt. 19, 23, 25, 44–47.  In the meantime, Mr. Rich has reached a settlement agreement with The Washington Times, pursuant to which Mr. Rich and the Washington Times filed a joint motion to voluntarily dismiss the Washington Times from the litigation, *see* Dkt. 38, which this Court granted on October 11, 2018, Dkt. 40.  Mr. Rich has begun to serve third-party discovery (*e.g.* Dkt. 39), and has requested the court's permission to serve party discovery to end what has become a de facto stay of discovery.  Dkt. 41, 51.  In sum, Mr. Rich has been persistent in litigating his claims—in spite of resistance from Mr. Butowsky—and it would be unjust to

require Mr. Rich to defend his claims by participating in litigation filed against his chosen Counsel in another jurisdiction a year after he filed his claims.

### 5. Forum Shopping

It is obvious that Mr. Butowsky's Texas Litigation is an effort to select his preferred forum for litigating his dispute with Mr. Rich. As an initial matter, Mr. Butowsky has already asked this Court to transfer this litigation to the Eastern District of Texas—a request upon which this Court has not yet ruled—notwithstanding the lack of any nexus to that jurisdiction for any of the relevant conduct in Mr. Rich's case. Dkt. 44 (motion); Dkt. 45 (opposition). Mr. Butowsky's Texas Litigation seeks to accomplish by fiat the transfer he previously asked this Court to grant. Not content to wait for this Court's decision on his motion to transfer, Mr. Butowsky seeks instead to sidestep this Court's jurisdiction over the case by filing a brand new lawsuit in his backyard. That maneuver "has more than a faint semblance of forum shopping aimed at evading" the adjudication of Mr. Rich's claims by this Court. *Am. Horse Prot. Ass'n,* 690 F. Supp. at 43. Mr. Butowsky's overt effort to select a preferable forum is precisely the type of scenario that anti-suit injunctions are designed to prevent, and it weighs in favor of enjoining such an attempt.

### 6. Location And Participation Of Counsel

All of Mr. Rich's lawyers are located in Washington, D.C. As laid out in the Complaint in this case, most of the relevant conduct relating to the defamation of Mr. Rich took place in or around D.C. Dkt. 3 ¶¶ 18–23; *see also* Dkt. 23. Not only does Mr. Butowsky's Texas Litigation seek to eliminate Mr. Rich's chosen Counsel, who are not licensed to practice law in Texas, but it also presumably seeks to disqualify Mr. Rich's counsel from representing Mr. Rich by alleging direct claims against them.

Importantly, the Texas Litigation was filed by Ty Clevenger, the same attorney who withdrew his *pro hac vice* application in this matter after Mr. Rich filed an opposition detailing Mr. Clevenger's lengthy disciplinary history, as well as immediately after the Southern District of New York denied his *pro hac vice* application in an unrelated case.  *See* Dkt. 21, 24, 27, 28, 31, 32.  Whatever the merits may have been of Mr. Clevenger's decision to withdraw his request to participate in this litigation *pro hac vice,* that strategic maneuver and Mr. Butowsky's considered refusal to engage suitable local counsel in his absence weigh against allowing the Texas Litigation to proceed.  Even were that not the case, Mr. Butowsky's counsel is *not even located in Texas*—while Mr. Clevenger appears to remain licensed to practice in Texas, he lists his place of work as being in Brooklyn, New York.  *See, e.g.,* Dkt 21-1 ("My office address is P.O. Box 20753, Brooklyn, New York 11202-0753").

Separately, given his lengthy history before the courts in this District, including in this very case, this Court owes no deference to Mr. Clevenger's efforts to steer this case away from this District to what he perceives to be a friendlier jurisdiction.  Mr. Clevenger has a long history of filing frivolous, duplicative, and harassing lawsuits, which are described at length in Mr. Rich's opposition and supplemental opposition to Mr. Clevenger's *pro hac vice* application. Dkt. 24; Dkt. 27.  Specifically, Mr. Clevenger has been sanctioned by four judges in this Circuit, faced disciplinary action in Texas and California, and been recommended for disbarment by this Court's Committee on Grievances ("COG") because of his "egregious conduct that establishes a concerted pattern and effort to add expense and to harass litigants and to abuse and delay the judicial process."  Dkt. 24.  Under such circumstances, this Court can and should act to prevent Mr. Rich from being harassed with duplicative and frivolous litigation.  *See Gharb v. Mitsubishi Electric Corp.*, 148 F. Supp. 3d 44, 55–56 (D.D.C. 2015) (if a party abuses "the judicial process by filing frivolous, duplicative, and harassing lawsuits, a Court may employ injunctive remedies to protect

13

the integrity of the courts and the orderly and expeditious administration of justice.' (internal

quotations and citations omitted)).

    **B.**    **The Anti-Suit Injunction Factors Favor Enjoining Defendant Butowsky From Pursuing Litigation Claims Against Mr. Rich As A Non-Party Co-Conspirator.**

The anti-suit injunction factors support this Court enjoining Mr. Butowsky from pursuing

claims against Mr. Rich as a non-party co-conspirator.  *See* Factual Background.  Mr. Rich and

the Texas Litigation defendants with whom he is accused of conspiring are essentially the same

party because they are affiliated in such a way that their interests are represented by one another.

*See* Texas Litigation ¶¶ 95–96; *RSM Prod. Corp. v. Freshfields Bruckhaus Deringer U.S. LLP*,

800 F. Supp. 2d 182, 193 (D.D.C. 2011) ("Members of a conspiracy are deemed under the law to

be in privity with each other."); *see also Am. Horse Prot. Ass'n,* 690 F. Supp. at 43; *Microsoft*

*Corp.*, 871 F. Supp. 2d at 1098; *Int'l Equity Investments, Inc.*, 441 F. Supp. 2d at 562.  Any

claims that Mr. Butowsky believes he has against Mr. Rich for "colluding" to file the Rich

Parents' Lawsuit should have been raised, if at all, as a mandatory counterclaim in the first case

pursuant to Rule 13(a) because they share "essential facts" and bear a "logical relationship" to

this litigation.  *Columbia Plaza Corp.*, 525 F.2d at 625.  Mr. Butowsky's accusation that Mr.

Rich "conspired" to file the Rich Parents' Lawsuit relies directly upon the (false) premise at the

heart of this case: that Mr. Rich and his brother were the DNC hackers.  Texas Litigation Compl.

¶ 56.  Because this lawsuit and the Texas Litigation claims relating to Mr. Rich as a non-party

co-conspirator derive from a "common origin," both the conservation of judicial resources and

comprehensive disposition of litigation warrant this Court maintaining jurisdiction over Mr.

Rich's claims and Mr. Butowsky's defenses.  *Am. Horse Prot. Ass'n,* 690 F. Supp. at 43; *see also*

*Microsoft Corp. v. Motorola, Inc.*, 696 F.3d at 882–83; *Sea Containers*, 890 F.2d at 1213.  The

14

other anti-suit injunction factors—stage of litigation, forum shopping, and location and participation of counsel—favor enjoining the Texas Litigation's claims as they relate to Mr. Rich as a non-party co-conspirator for the same reasons as described *supra*. *See* Argument at Section I(A)(4)–(6).

## II.     MR. RICH WILL BE IRREPARABLY HARMED IF THIS COURT DOES NOT ENJOIN THE TEXAS LITIGATION.

If this Court permits the Texas Litigation to proceed, and regardless of whether he is named as a party, Mr. Rich will be irreparably harmed if forced to litigate his claims in Texas. *See* Dkt. 45. *First*, Mr. Rich's counsel will be forced to devote resources to litigating a second suit on the very same issues as those before this Court. *Second*, Mr. Rich, a Colorado resident, will have to personally travel to and expend resources in Texas, a state to which he is not subject to personal jurisdiction and where he does not travel personally or professionally. *Third*, Mr. Rich likely will have to intervene in the Texas Litigation as a necessary party, which will consume his own time and resources as well as those of his counsel. *Fourth*, as discussed *supra,* there is a risk that Mr. Rich will have to retain new counsel if his current counsel must personally defend themselves in the Texas Litigation. In sum, Mr. Rich and his counsel will "face an expensive, time-consuming action" by defending a "vexatious" lawsuit designed to harass and intimidate Mr. Rich and his family and anyone seeking to help them hold accountable the individuals who have perpetuated lies about them and prevented them from grieving Seth's murder in private. *Am. Horse Prot. Ass'n,* 690 F. Supp. at 44. The Court should not permit Mr. Butowsky and Mr. Clevenger to re-victimize Mr. Rich by creating a perverse scenario under which Mr. Rich—the victim of a lengthy campaign of defamation—is forced to litigate his own lawsuit as a *defendant* in the home forum of an individual responsible for victimizing him in the first place.

## III.    AN ANTI-SUIT INJUNCTION WILL NOT SUBSTANTIALLY HARM OTHER INTERESTED PARTIES.

The injunction Mr. Rich seeks here is narrow, and it will cause no harm to Mr. Butowsky. Mr. Rich seeks only an order from this Court enjoining the Texas Litigation against Mr. Rich's Counsel, and any claims against Mr. Rich as a co-conspirator, which theoretically could allow Mr. Butowsky's claims against remaining defendants to move forward to the extent they do not charge Mr. Rich or his counsel with conduct that arises out of the same transactions or occurrences in this matter.  Mr. Butowsky is the only plaintiff in the Texas Litigation, and he will suffer no harm as a result of the injunction because he will remain legally able to litigate the (frivolous) claims he has asserted in the Texas litigation as counterclaims here, while he can litigate remaining claims against other defendants in the Texas Litigation.  *Am. Horse Prot. Ass'n,* 690 F. Supp. at 44 (requiring defendants to litigate their "claim here, rather than in Tennessee, cannot be construed as injury").

## IV.    THE PUBLIC INTEREST FAVORS ENTERING AN ANTI-SUIT INJUNCTION IN THIS CASE.

As discussed *supra*, the "public interest in 'the conservation of judicial resources and comprehensive disposition of litigation' will be served" by enjoining Mr. Butowsky from bringing a suit on identical issues in another federal court, including by "avoiding inconsistent results and conflicting decisions" and rewarding blatant forum shopping.  *Am. Horse Prot. Ass'n,* 690 F. Supp. at 43, 45; *see also Laker Airways*, 731 F.2d at 927 (anti-suit injunctions "are most often necessary" in order "to prevent the litigant's evasion of the important public policies of the forum").  There also is a strong public interest in discouraging defamation defendants, like Mr. Butowsky, from using litigation as a sword to file lawsuits in their preferred jurisdiction against any attorney who represents their victims.  The essence of the litigation privilege, as well as anti-

SLAPP statutes and anti-suit injunctions, is to protect against the very type of legal maneuvering in which Mr. Butowsky and Mr. Clevenger are attempting to engage. *See, e.g., id.* at 933 (anti-suit injunction meets public policy aims where it "preserves free access" of plaintiff to legal remedy); *Messina v. Krakower*, 439 F.3d 755, 760 (D.C. Cir. 2006) (absolute judicial proceedings privilege is "based upon a public policy of securing to attorneys as officers of the court the utmost freedom in their efforts to secure justice for their clients." (internal citations and quotation marks omitted)); Council of the District of Columbia, Report of the Committee on Public Safety and the Judiciary on Bill 18-893, at 1 (Nov. 18, 2010) (D.C.'s anti-SLAPP law "ensures that District residents are not intimidated or prevented, because of abusive lawsuits, from engaging in political or public policy debates").  If Mr. Butowsky is allowed to sue Mr. Rich's attorneys and Mr. Rich as a non-party co-conspirator in another federal court, every defamation defendant would have an incentive to file against the plaintiff's lawyers in his preferred jurisdiction.

## CONCLUSION

Mr. Rich respectfully requests that the Court enjoin Mr. Butowsky for filing or continuing litigation in another court against Mr. Rich, directly or indirectly, including by suing his legal representatives.


Dated: March 26, 2019                     /s/ *Joshua P. Riley*
                                          JOSHUA P. RILEY (D.C. Bar No. 1026900)
                                          MERYL C. GOVERNSKI (D.C. Bar No. 1023549)
                                          BOIES SCHILLER FLEXNER LLP
                                          1401 New York Ave. NW
                                          Washington, DC  20005
                                          Tel: (202) 237-2727
                                          Fax: (202) 237-6131
                                          jriley@bsfllp.com
                                          mgovernski@bsfllp.com

17

MICHAEL J. GOTTLIEB (D.C. Bar No. 974960)
WILLKIE FARR & GALLAGHER LLP
1875 K Street NW
Washington, DC 20006
Tel: (202) 303-1000
Fax: (202) 303-2000
mgottlieb@willkie.com

*Attorneys for Plaintiff Aaron Rich*