1

1                                    (Corrected Transcript -
                                      Page 21, Lines 19-23,
2                                     Speaker changed to "The Court")

3                          UNITED STATES DISTRICT COURT
                          FOR THE DISTRICT OF COLUMBIA
4
        AARON RICH,                    )
5                                      )
                 Plaintiff,            )    Civil No. 18-681
6                                      )
           v.                          )
7                                      )
        EDWARD BUTOWSKY, et al.,       )    Washington, D.C.
8                                      )
                 Defendants.           )
9       _____        )    Wednesday, July 31, 2019

10                   TRANSCRIPT OF STATUS CONFERENCE
                    BEFORE THE HONORABLE RICHARD J. LEON
11                    UNITED STATES DISTRICT JUDGE

12                   APPEARANCES:

13      For the Plaintiff:        Joshua P. Riley, Esq.
                                  BOIES, SCHILLER & FLEXNER LLP
14                                1401 New York Avenue, NW
                                  Washington, DC 20005
15                                   -and-
                                  Michael J. Gottlieb, Esq.
16                                WILLKIE FARR & GALLAGHER, LLP
                                  1875 K Street, NW
17                                Washington, DC 20006

18      For Defendant            Philip John Harvey, Esq.
        Butowsky:                HARVEY & BINNALL, PLLC
19                                717 King Street
                                  Suite 300
20                                Alexandria, VA 22314

21      For Defendant Couch:     Matthew Couch (By telephone)

22      Court Reporter:     PATRICIA A. KANESHIRO-MILLER, RMR, CRR
                            U.S. Courthouse, Room 4700A
23                          333 Constitution Avenue, NW
                            Washington, DC 20001
24                          (202) 354-3243
        Proceedings reported by stenotype shorthand.
25      Transcript produced by computer-aided transcription.

2

1                    P R O C E E D I N G S

2                        (4:28 P.M.)

3              THE DEPUTY CLERK:  Good afternoon, Your Honor.

4              This afternoon we have Civil Case Number 18-681,

5     Aaron Rich versus Edward Butowsky, et al.

6              We have one person, Defendant Mr. Couch,

7     participating by telephone.

8              Will counsel in the courtroom please approach the

9     lectern and identify yourselves for the record and name the

10    party or parties that you represent.

11             MR. GOTTLIEB:  Good afternoon, Your Honor.  Mike

12    Gottlieb from Willkie Farr & Gallagher on behalf of the

13    plaintiff.

14             THE COURT:  Welcome.

15             MR. RILEY:  Good afternoon, Your Honor.  Josh Riley

16    from Boies Schiller Flexner, also on behalf of the plaintiff.

17             THE COURT:  Welcome.

18             MR. HARVEY:  Good morning, Your Honor.  Philip Harvey

19    for the Defendant Edward Butowsky.

20             THE COURT:  Welcome.

21             THE DEPUTY CLERK:  Would the defendant who is

22    appearing telephonically please identify himself for the

23    record and name the party or parties that he represents.

24             MR. COUCH:  Good afternoon, Your Honor.  Mike Couch,

25    representing myself, as well as America First Media.

1          THE COURT:  Mr. Couch, for the record, would you

2     please state why it is you're not here today.

3          MR. COUCH:  Yes, sir, Your Honor.  I'm in Arkansas.

4          THE COURT:  That's not the point.  When we handle

5     lawsuits in Federal Court, the parties are expected to be

6     present or they will be held in contempt.  Why aren't you

7     here today?

8          MR. COUCH:  I do not have the financial means to be

9     there, sir.

10         THE COURT:  We're going to send you a form to fill

11    out where you have to lay out under oath your financial

12    situation so that I have verification of what you just said

13    is true.  Do you understand me?

14         MR. COUCH:  Yes, sir.

15         THE COURT:  I'm going to need to know your income,

16    I'm going to need to know what you have in your bank

17    accounts, etc., so that I have a basis to assess your failure

18    to appear.

19         MR. COUCH:  Yes, sir.

20         THE COURT:  Do you see any likelihood of a change in

21    your financial condition in the near future?

22         MR. COUCH:  No, sir.  I'm an independent journalist.

23    Not getting any better, no, sir.

24         THE COURT:  Are you currently unemployed?

25         MR. COUCH:  No, sir.  I write articles.  I write

4

1    articles for a living.  I make ad revenue, but it is enough

2    to keep the lights on and keep my kids fed.  That's about it,

3    sir.

4            THE COURT:  I see.  So your stream of income depends

5    upon your writing articles every now and then, you don't have

6    an actual employer?

7            MR. COUCH:  No, sir.  I'm self-employed, yes, sir.

8    Just an independent journalist.

9            THE COURT:  I see.  All right.  So we'll arrange to

10   send you some forms to fill out so that we can verify your

11   financial situation.  Otherwise, you're going to be expected

12   to be here.

13           MR. COUCH:  Okay.  Thank you.

14           THE COURT:  Unless the Court is satisfied otherwise.

15   All right?

16           MR. COUCH:  Yes, sir.

17           THE COURT:  All right.  Let's start with

18   Mr. Gottlieb.  Mr. Gottlieb, what is the status of your

19   efforts to begin the discovery process here, sir?

20           MR. GOTTELIEB:  Your Honor, if I could have Mr. Riley

21   address the discovery issues?

22           THE COURT:  Uh-huh.

23           MR. GOTTLIEB:  Thank you, Your Honor.

24           MR. RILEY:  Good afternoon, Your Honor.

25           We have served party discovery, consisting of

1    interrogatories and requests for production of documents, on

2    each of the defendants.  We have received responses to

3    interrogatories from Mr. Couch and AFM.  We have not received

4    any documents from any of the defendants.  So we have pending

5    before the Court currently I believe three motions to compel;

6    a motion to compel with respect to documents from

7    Mr. Butowsky, a motion to compel with respect to

8    interrogatory responses from Mr. Butowsky, a motion to compel

9    with respect to documents from Mr. Couch and American First

10   Media.

11          THE COURT:  All right.  I'm going to grant all three

12   motions to compel.  The parties will have 21 days to respond.

13          MR. RILEY:  Thank you, Your Honor.

14          THE COURT:  All right.  Mr. Harvey, what's the status

15   with your client's willingness to respond here?  If you know.

16   He's not present today; is he?

17          MR. HARVEY:  He is not present, Your Honor.

18          THE COURT:  All right.

19          MR. HARVEY:  The Court has just ordered my client to

20   respond within 21 days.  So my client will respond within

21   21 days.

22          THE COURT:  All right.  What discovery do you plan on

23   conducting?

24          MR. HARVEY:  I intend to serve interrogatories and

25   document requests on the plaintiff, inquiring largely about

1   his damages, his allegations of damages, including problems

2   with his security clearance, if he has any, problems with his

3   mental health condition, both of which are alleged in the

4   complaint.  Beyond that, I will serve discovery to try to

5   find out if there's a basis for concerns that he might have

6   received or been involved with hacking of the e-mails from

7   the Democratic National Committee, and there will be certain

8   depositions, I'm sure, that we will want to take, including

9   that of the plaintiff, probably of the mental healthcare

10  provider, an expert witness, if he is going to have one to

11  testify about that.  I can't think of any other expert

12  witnesses, although maybe some would be involved in the

13  technical issues of the facility with which one could access

14  the DNC accounts.

15          THE COURT:  If you have to estimate, how many

16  depositions do you think you'll ultimately have to take?

17          MR. HARVEY:  I would say probably five but certainly

18  no more than ten.

19          THE COURT:  Okay.

20          MR. HARVEY:  Ten, I believe, is the rule absent leave

21  of the court, and I don't anticipate seeking leave of the

22  court.

23          THE COURT:  Mr. Riley, how many depositions do you

24  expect to conduct?

25          MR. RILEY:  Your Honor, we do not anticipate needing

1    to seek leave beyond the ten depositions allowed under the

2    rules.

3            THE COURT:  You have ten you need to do?  That seems

4    an awful lot.  I understand how you might want to depose

5    Mr. Butowsky and Mr. Couch.  Who else besides them do you

6    want?

7            MR. RILEY:  I would anticipate that we would seek a

8    Rule 30(b)(6) deposition of American First Media.  There are

9    some witnesses who have been identified --

10           THE COURT:  Isn't that a one-man operation,

11   Mr. Couch's operation?

12           MR. RILEY:  Our understanding, based on the social

13   media posts and publications from America First Media, there

14   is a, quote/unquote, team of people who are involved.  And so

15   to the extent that AFM is responsible for publishing

16   defamatory content about our client, we would seek a

17   Rule 30(b)(6) deposition of them, I would anticipate.

18           THE COURT:  All right.  That's three.

19           MR. RILEY:  Washington Times was a defendant.

20           THE COURT:  They're out.

21           MR. RILEY:  There may be discoverable information

22   with them in terms of the publication of the defamatory

23   article that was a centerpiece of this case.  That

24   potentially would be a deposition.

25           We've taken one third-party deposition to date of

1        Mr. Schoenberger, and he identified several witnesses who

2        participated in a meeting in Texas, at which Mr. Butowsky,

3        Mr. Couch, and others discussed efforts to essentially defame

4        our client.  So some of those witnesses might also be subject

5        to depositions.

6                THE COURT:  You're going to have to file a motion for

7        leave to conduct a deposition of anyone from the Washington

8        Times whatsoever.

9                MR. RILEY:  Okay.

10               THE COURT:  I'm not letting you muck around in that.

11       They're out of this case.  They're not a defendant.  I'm not

12       going to let you go over and conduct depositions there.

13               MR. RILEY:  Understood, Your Honor.

14               We will make all best efforts to conduct any

15       discovery in writing that we need from them, and we have no

16       intention, of course, of taking depositions that we don't

17       have a good basis to take.  So I understand that we would

18       seek leave to take that deposition.

19               THE COURT:  I will tell you what, for the moment

20       anyway, each side can have five at the most.  And I'm not

21       letting you have any more than that unless there is good

22       cause shown.  If you need more than five, you'll have to file

23       a motion with the Court seeking leave to take additional

24       depositions and why.  You'll probably be in a better position

25       to know if there are any others you need to do after you get

1    your answers to interrogatories and see whatever documents

2    you get.

3                MR. RILEY:  Your Honor, one point of clarification on

4    that.  We have taken one third-party deposition to date.

5    Does your order allow us to take five additional depositions

6    or five total?

7                THE COURT:  Five total.  You have four bullets left

8    in your gun.  All right?  So use them wisely.

9                MR. RILEY:  Yes, Your Honor.

10               THE COURT:  Same for you.  Five for you, as well.  Do

11   you understand?

12               MR. HARVEY:  Yes, sir.

13               THE COURT:  All right.  Mr. Couch, are you planning

14   on doing depositions?

15               MR. COUCH:  Yes, Your Honor, I would like to.

16               THE COURT:  Are you an attorney?

17               MR. COUCH:  No, sir.

18               THE COURT:  Have you ever been in a deposition?

19               MR. COUCH:  I'm sorry?

20               THE COURT:  Have you ever been in a deposition?

21               MR. COUCH:  No, sir, I have not.

22               THE COURT:  So you have no experience conducting or

23   even participating in one; is that right?

24               MR. COUCH:  No.  No, sir.  No, sir.

25               THE COURT:  All right.  Well, look, I'm not going to

1    allow you to muck around in the deposition world either

2    without leave of the Court.  You're not a member of the bar.

3    You don't know how to conduct them, and I'm not looking to

4    create any kind of an unnecessary unfair mess here.  You

5    think it through, and unless you're able to get yourself

6    settled out of this case, you're going to have to seek

7    permission of the Court to conduct any depositions with

8    anyone at any time, and you're going to have to express in

9    writing why it is you need to do it, and there will probably

10   be some guidance from the Court as to what you can and can't

11   do.

12            MR. COUCH:  Yes, sir.

13            THE COURT:  Don't just start sending notices to

14   people that you want to depose them because that is not going

15   to work.  You're not going to be able to do that until Court

16   grants you leave to do it.  You understand?

17            MR. COUCH:  Yes, sir.

18            THE COURT:  All right any questions for the

19   plaintiffs?

20            MR. GOTTLIEB:  No questions, Your Honor.  I did

21   neglect to mention before on the record that -- I wanted to

22   say our client, Mr. Rich, is here today in the court.

23            THE COURT:  Where is he?

24            MR. RICH:  Here.

25            THE COURT:  Welcome.

1          Do you have any questions from the defense?

2          MR. HARVEY:  I have one question, Your Honor.

3          THE COURT:  Yes, sir.  Go ahead.

4          MR. HARVEY:  The Court ordered the responses within

5   21 days.  One of the requests deal with documents concerning

6   what I would say is unrelated but nonetheless third-party

7   litigation:  *Chapwood Capital v. Charles Schwab*, *Butowsky v.*

8   *FINRA*, and an arbitration involving Morgan Stanley and my

9   client.  Those documents have been requested, and the Court

10  has just ordered me to produce them.  I'm not sure where

11  we're going with that, but if I'm ordered to produce them --

12         THE COURT:  Well, you can't produce what you don't

13  have.

14         MR. HARVEY:  Right.

15         THE COURT:  If you don't have those documents, you

16  can obviously indicate to the counsel for the plaintiff that

17  you don't have any of those documents.  They're going to have

18  to go to the companies that have them in their possession.

19         MR. HARVEY:  I understand.  My request was, while I

20  respond to the discovery within 21 days, if I can have an

21  additional ten days to produce that stuff, I would much

22  appreciate it, and I don't think it would harm anybody since

23  the relevance of that is tangential, and I don't think it is

24  going to result in depositions from somebody from Charles

25  Schwab to find out if my client was alleged to have defrauded

1    them.  If I can have an additional ten days, that's all I'm

2    asking for.

3              THE COURT:  That's fine.

4              MR. HARVEY:  Thank you.

5              THE COURT:  You're welcome, sir.

6              Counsel, I encourage you to keep an open channel of

7    communications about document requests of the kind that he

8    just alluded to.  It may very well be that his client has

9    nothing of that kind in his possession and he has nothing of

10   that kind in his possession, so it's basically a big waste of

11   time.  Please discuss these things in advance.

12             MR. GOTTLIEB:  Your Honor, we will do that.  I regret

13   I have two additional questions I forgot to ask the Court

14   when you gave me the opportunity.

15             One is that the Court had denied our motion for a

16   discovery order.  Will the Court be issuing a discovery order

17   following this hearing?

18             THE COURT:  A discovery order needs to be filed.  If

19   you want a discovery order, you can submit a joint proposed

20   discovery order if you need to.

21             MR. GOTTLIEB:  Okay.

22             THE COURT:  Actually, a joint proposed scheduling

23   order.  That is what you should be submitting.

24             MR. GOTTLIEB:  We had submitted one, but we will

25   confer with counsel on that.

1          And then the other question that I had, we do have

2     pending one additional motion that is fully briefed in the

3     anti-suit injunction motion, and we would respectfully

4     request the Court rule on that expeditiously, or if the Court

5     feels argument would be helpful or suitable, that argument be

6     scheduled on that.

7          THE COURT:  What is the status of that case in the

8     Eastern District of Texas?

9          MR. GOTTLIEB:  The case is moving forward.  There is

10    actually a status conference that is occurring in that case

11    at exactly the same time that this conference is being held.

12         THE COURT:  Today?

13         MR. GOTTLIEB:  Today.

14         THE COURT:  Who is down there representing the

15    parties?

16         MR. GOTTLIEB:  I am an individual defendant in that

17    case, Your Honor.  I am being represented by local counsel in

18    Texas.  I believe Mr. Butowsky is being represented by his

19    Texas lawyer, but there is a hearing happening in that case

20    as we speak.

21          Third-party discovery has been served, all witnesses

22    in that case.  By agreement of the parties, party discovery

23    has been stayed pending resolution of the Rule 12 motions,

24    but third-party discovery is moving forward in that case.  As

25    I mentioned, there is a status conference that is being held

1    right now as we speak.

2         THE COURT:  Are you familiar with that case,

3    Mr. Harvey?

4         MR. HARVEY:  I am, Your Honor, to some extent.  I'm

5    familiar enough to deal with the motion pending here, which

6    is a motion, as I understand it, to order Mr. Butowsky -- to

7    enjoin him from suing the Boies Schiller firm and its two

8    attorneys there and also somehow to limit the nature of the

9    factual issues that can be decided in that case because

10   Mr. Rich is not a party to that case.  But anything that

11   involves these same allegations, which those do, necessarily

12   involves factual allegations concerning the Rich family.  And

13   yeah, as I understand it, there is the Boies Schiller

14   defendants, if I can call them that.  They filed a motion to

15   dismiss, arguing that what they had said -- the alleged

16   defamatory statements were absolutely privileged, among other

17   defenses, and that motion has not yet been ruled on, so I

18   don't know where it is going.

19        THE COURT:  Was the motion ripe for ruling yet in

20   that court?

21        MR. HARVEY:  No, I don't believe it is.  I think the

22   motion to dismiss, what I pulled off PACER, was filed at the

23   end of June, and I don't know that an opposition has been

24   filed yet.  I was, frankly, more interested in what the Boies

25   Schiller defendants had to say and the opposition thereto.  I

1     don't know that that is ripe.

2              THE COURT:  If it was filed at the end of June,

3     generally you don't even get that much time to respond.  So

4     I'm a little --

5              MR. HARVEY:  I just don't know the answer to that

6     question.  Perhaps Mr. Gottlieb does.

7              MR. GOTTLIEB:  I do, Your Honor.

8              That motion was briefed, the motion to dismiss on the

9     first complaint was briefed.  It was not responded to.

10             Then, after the time that the response was due, the

11    plaintiff in Texas filed leave to file an amended complaint

12    and permission to file an opposition belatedly.

13             The position that we took was that that should be

14    denied and that the motion should be decided because the

15    amended complaint, as proposed, didn't change any of the

16    legal issues.

17             The Court granted the filing of the amended complaint

18    but did not yet decide whether it was going to require a new

19    round of motions to dismiss and briefing.  I believe that may

20    be what the magistrate is addressing today.

21             THE COURT:  Magistrate?

22             MR. GOTTLIEB:  Magistrate.

23             THE COURT:  It is not before a district judge?

24             MR. GOTTLIEB:  It is, but today's hearing was

25    scheduled before the magistrate.

1      THE COURT:  That is a different kettle of fish.  What

2  is the magistrate judge supposed to be doing today?

3      MR. GOTTLIEB:  I don't know, Your Honor.  This is

4  part of the problem with the two proceedings happening

5  simultaneously.

6      The factual issues in the two cases are identical, it

7  is whether Mr. Butowsky made false statements about our

8  client with respect to his role, alleged role, in leaking

9  documents to WikiLeaks.  That is the core factual allegation

10  in the case both here and in Texas.  The only difference is,

11  in Texas, Mr. Butowsky alleges that I lied by saying that he

12  lied, and here we have alleged that Mr. Butowsky lied.  The

13  factual issues are identical with respect to Mr. Rich and his

14  role or alleged role in the hacking of the DNC.

15      THE COURT:  Who is the district judge down in Texas?

16      MR. GOTTLIEB:  Judge Mazzant.  I believe that is the

17  judge's name.

18      THE COURT:  Why wouldn't they just dismiss that case

19  down there and let the issues play out here?

20      MR. GOTTLIEB:  They may well do that, Your Honor.

21  One of the arguments that was made in the motion to dismiss

22  briefing was a first-to-file argument.  We think that the law

23  requires the Court there to stay the proceedings pending

24  issues in this case, but at the same time we believe that it

25  is appropriate for this Court to enjoin Mr. Butowsky from

1    proceeding with things like issuing discovery because you

2    could have the same people being asked to produce documents

3    in that case and this one, the same people being asked to

4    show up for depositions in that one and this one.  And if

5    Mr. Butowsky's legal arguments prevail on a Rule 12 motion,

6    that's exactly the position we will be in in relatively short

7    order.

8             MR. HARVEY:  Your Honor, if I could --

9             THE COURT:  Yes.

10            MR. HARVEY:  One of the issues is that other than

11   Mr. Butowsky, there is no one in this case who is a party in

12   that case and no one in that case who is a party in this

13   case.  That case involved a suit against CNN and Anderson

14   Cooper and New York Times and some other law firms.

15            What the plaintiff, Mr. Rich, has asked in this case

16   is that you enjoin Mr. Butowsky from suing his lawyers in

17   that case.  I get that.  He also wants an injunction from you

18   telling Mr. Butowsky that in the claims he has against the

19   remaining defendants, which have no connection with this

20   Court, he can't raise any factual issues involving Mr. Rich

21   because of the issues of duplicative discovery.  I don't know

22   that there is any precedent for that.  But the problem is

23   that the cases, other than the commonality of Mr. Butowsky

24   being a defendant here and a plaintiff there, there are no

25   other parties in both cases, which makes the first-to-file

1     rule and an injunction a little more difficult to deal with.

2          THE COURT:  So Mr. Couch is not a party --

3          MR. HARVEY:  He is not.  He is not.  That case

4     largely involves Mr. Butowsky's claims that people who said

5     on the air, on television, on the internet, whatever, that

6     his claims were fallacious and defamatory, that's a lie, his

7     claims are true.  Mr. Gottlieb was correct that in this

8     court, in these pleadings, the plaintiff says Mr. Butowsky

9     lied.  And in that court, Mr. Butowsky says, whenever you say

10    I lie, you're lying.  But the "you're lying" defendants in

11    that case are completely different other than the connection

12    with the lawyers.

13         THE COURT:  Is Mr. Butowsky, in the case in Texas,

14    claiming that the lies he alleges occurred defamed him?

15         MR. HARVEY:  Yes.

16         THE COURT:  He is?

17         MR. HARVEY:  Yes.

18         MR. GOTTLIEB:  Your Honor, just a couple of points,

19    if I may.

20         The defamation isn't the sole claim.  There is an

21    additional claim for business disparagement.  But all of the

22    claims in that case are either conspiracy to defame or

23    defamation or business disparagement.  It is true that

24    Mr. Rich is not a party in the action in Texas, but he is an

25    unnamed co-conspirator.  And the legal argument that

1     Mr. Butowsky made in his brief to this Court and has made

2     down in Texas is that co-conspirators are liable for the

3     torts of their co-conspirators and they stand in privity with

4     each other.  And it is black letter law that an attorney

5     stands in privity with his client for purposes of the

6     statements made on my client's behalf relating to litigation.

7     When I was asked to go on TV and talk about the filing of the

8     complaint in this case, I was doing so to advance my client's

9     interest in the same way that lawyers advance their clients'

10    interests when they file a document on PACER.  So it is

11    impossible to separate the two.

12            With respect to the other defendants in the case, we

13    have no objection to Mr. Butowsky's case proceeding in Texas

14    against CNN or Anderson Cooper or the New York Times or

15    anyone else he has sued.  Our objection is Mr. Butowsky

16    should not be able to take the core factual allegations in

17    this case that have been made by Mr. Rich and sue Mr. Rich's

18    lawyers in Texas and create essentially warring processes

19    over discovery over the same set of documents.  The only

20    allegations in the Texas case with respect to the Boies

21    Schiller defendants -- the only allegations are literal

22    recitations, or nearly literal recitations of the allegations

23    in the complaint in this matter.  There are no other

24    allegations.  There is an appendix that we filed to our

25    initial motion for an anti-suit injunction in this case that

1   lays out side by side the allegations in Mr. Butowsky's

2   complaint in Texas and the allegations in the complaint in

3   this case.  And I think if you look at them side by side, you

4   will see they are either literal or nearly verbatim

5   recitations --

6           THE COURT:  Who is representing Boies Schiller in

7   Texas?

8           MR. GOTTLIEB:  Boies Schiller and myself personally

9   are being represented by Paul Skiermont.

10           THE COURT:  So he is before the magistrate judge

11   today?

12           MR. GOTTLIEB:  He is.

13           THE COURT:  And he knows the answer to the question

14   whether the motion to dismiss the case as it relates to Boies

15   Schiller is ripe?

16           MR. GOTTLIEB:  Our argument before the Court is that

17   it is ripe.

18           THE COURT:  I mean in Texas.  Is it ripe in Texas?

19           MR. GOTTLIEB:  We believe it is -- it depends on how

20   the Court --

21           THE COURT:  The simplest solution to this problem is

22   for the judge in Texas to grant the motion to dismiss as to

23   Boies Schiller.  Then you don't have a court in this

24   jurisdiction issuing an injunction that affects a live

25   lawsuit in another jurisdiction, which could create some,

1    let's say, novel appellate issues that might not be in

2    anyone's interests.  I think the practical reality is, if the

3    judge in Texas were to grant the motion to dismiss down

4    there, it would be a much cleaner resolution of the problem.

5    So what I would suggest is, after today's hearing, you get on

6    the horn with your counsel down there, Skiermont or whatever

7    his name was --

8              MR. GOTTLIEB:  Skiermont, Your Honor.

9              THE COURT:  Skiermont.  And get the answers to the

10   questions:  What happened before the magistrate judge today?

11   Is the motion to dismiss ripe?  Has the district judge set an

12   oral argument before it?  Have you requested an oral argument

13   on the motion to dismiss --

14             MR. GOTTLIEB:  We have.

15             THE COURT:  And see what the status of that is, and

16   then send a letter with a copy to Mr. Harvey, to the Court,

17   giving me an update on what the heck is going on.

18             MR. GOTTLIEB:  Yes, sir, we will do that.

19             THE COURT:  Frankly, in the meantime, Mr. Harvey, I

20   would strongly recommend that you talk to your client, while

21   proceeding on this track here, the wisdom of agreeing to the

22   motion to dismiss the suit against the lawyers for Boies

23   Schiller down there.  It might buy some goodwill.

24             MR. HARVEY:  Yes, sir.

25             THE COURT:  Prudence sometimes dictates that kind of

1      course of action.

2               MR. HARVEY:  I understand.

3               THE COURT:  Use your counseling skills.

4               Any others questions?

5               MR. HARVEY:  None for me.

6               MR. GOTTLIEB:  No further questions, Your Honor.

7               THE COURT:  We stand in recess.

8                    (Proceedings adjourned at 4:53 p.m.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1      CERTIFICATE OF OFFICIAL COURT REPORTER

2

3          I, Patricia A. Kaneshiro-Miller, certify that the

4      foregoing is a correct transcript from the record of

5      proceedings in the above-entitled matter.

6

7

8      /s/ Patricia A. Kaneshiro-Miller          August 2, 2019
       -----------------------------------      --------------------
9      PATRICIA A. KANESHIRO-MILLER                    DATE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25