UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AARON RICH,

    Plaintiff,

v.

EDWARD BUTOWSKY,
MATTHEW COUCH
AMERICA FIRST MEDIA,
    Defendants.

Case No. 1:18-cv-00681-RJL
Honorable Richard J. Leon

### MEMORANDUM IN REPLY TO OPPOSITION TO MOTION UNDER RULE 60(b)

    MATTHEW COUCH, *pro se*[1]
    4000 S Dixieland A-201
    Rogers, AR 72758



RECEIVED
SEP 03 2019
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

---

[1] I was assisted in preparing this memorandum by Eden P. Quainton, a New York attorney whose application for admission to the District Court for the District of Columbia is pending. Subject to his admission, Mr. Quainton intends to enter an appearance to represent me in this matter. For convenience of the Court, I refer to myself in the third person in this memorandum as Matthew Couch or "Couch."

## PRELIMINARY STATEMENT

Plaintiff's opposition to the Rule 60(b) motion filed by Defendant Matthew Couch ("Couch") misses the mark on every key issue. Couch was not given a fair opportunity to be heard on Plaintiff's Motion to Compel. The Local Rules provide an opposing party 14 days to respond to a motion and Couch was formally given fewer than eight days. In fact, Couch never received any adequate notice at all, as the Court's notice arrived in Arkansas the day after a status conference had been scheduled for discovery matters. Moreover, the circumstances under which the status conference was conducted – with the confusing pendency of a separate motion, on a separate timetable, involving a separate defendant, and the Court's *ex parte* "pre-conference" with counsel – materially prejudiced Couch's ability to present any arguments in opposition to Plaintiff's Motion.

On the merits, Couch has highly relevant arguments that must be considered before there is a ruling on the Motion to Compel. First, this Court <u>cannot</u> exercise diversity jurisdiction over America First Media, as these words are simply a name and not a legal entity that could possibly be deemed a "citizen." The Motion to Compel as it relates to America First Media has no legitimate object and must be denied. Second, the existing protective order should provide both greater clarity with respect to the treatment of audio recordings and greater protection for sources whose lives may be at risk. Couch has serious arguments relating to privacy, safety and national security that should be considered before a definitive order is entered. Finally, even as he embarks on a third-party subpoena spree, Plaintiff completely ignores Couch's request for equal treatment with respect to depositions and his right to take the same number of depositions as

those afforded Plaintiff in this matter. For all these reasons, Couch's motion should be granted in its entirety.[2]

## LEGAL ARGUMENT

### I. The Court has the Power to Reconsider its Discovery Order.

Plaintiff contends that Rule 60(b) may not be used for discovery orders. Plaintiff's Memorandum in Opposition, dated August 26, 2019 ("Pl.'s Mem.") at 4. Contrary to Plaintiff's contention, courts have used Rule 60(b) in the context of challenges to discovery orders. *See, e.g., K.S. ex rel. Isserlis v. Ambassador Programs, Inc.*, No. CV-08-243-RMP, 2010 WL 1415997, at *2 (E.D. Wash. Apr. 5, 2010)(using Rule 60(b) to rule on motion seeking to vacate discovery order).

However, even if Plaintiff is correct as to the technical application of Rule 60(b), the Court still has the power to reverse its discovery order, either pursuant to its own inherent authority, in application of the law of the case doctrine, or under Rule 54(b). *See* Note to 1946 Amendment to Rule 60(b)(orders not subject to Rule 60(b) are still left subject to the complete power of the court rendering them to afford such relief from them as justice requires); *see also* Wright & Miller, Federal Practice and Procedure § 4478 (courts retain the right to reconsider issues); *BEG Investments, LLC v. Alberti*, 85 F. Supp. 3d 54, 58 (D.D.C. 2015)(court may reconsider an interlocutory decision when the movant establishes "a clear error in the first order"). Justice surely requires correction of the fundamental deprivation of due process that occurred in this case, as discussed below. In addition, ruling on a motion to compel without

---

[2] Notwithstanding the pending motion, and subject to his objections, Couch has produced 517 pages of responsive documents. Affidavit of Matthew Couch, dated September 3, 2019 ("Couch Aff.") at ¶ 12.

3

affording a party an opportunity to respond following an *ex parte* conference with opposing counsel constitutes a "clear error" that must be corrected.[3]

### II. Couch Was Deprived of His Due Process Rights to Be Heard on Plaintiff's Motion to Compel.

Plaintiff filed his Motion to Compel responses to its Request for Production from Couch on July 23, 2019. ECF Doc. No. 71. On July 25, 2019, the Court scheduled a status conference for July 31. July 25, 2019 Minute Order. However, under the Local Rules of the District Court for the District of Columbia (the "Local Rules"), Rule 7(b), "within 14 days of the date of service or at such other time as the Court may direct, an opposing party shall serve and file a memorandum of points and authorities in opposition to the motion." Couch was not given 14 days to file an opposition memorandum and the Court did not direct the filing of an opposition

---

[3] Alternatively, the Court could deem Couch's motion to be a timely Rule 54(b) motion. The motion was mailed to the Court on August 9, 2019 and was electronically served on opposing counsel on August 12, 2019. Couch Aff. at ¶ 12. The Court may grant relief under Rule 54(b) "as justice requires." *Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.*, 630 F.3d 217, 227 (D.C. Cir. 2011). The "as justice requires" standard under Rule 54(b) involves concrete considerations of whether the court "has patently misunderstood a party, has made a decision outside the adversarial issues presented to the [c]ourt by the parties, has made an error not of reasoning, but of apprehension, or where a controlling or significant change in the law or facts [has occurred] since the submission of the issue to the [c]ourt." *Cobell v. Norton*, 224 F.R.D. 266, 272 (D.D.C. 2004) (internal citations omitted). Other courts have read the standard to require that the court grant a motion for reconsideration "only when the movant demonstrates: (1) an intervening change in the law; (2) the discovery of new evidence not previously available; or (3) a clear error in the first order." *Anatolie Stati v. Republic of Kazakhstan*, 302 F. Supp. 3d 187, 197 (D.D.C. 2018), *aff'd sub nom. Stati v. Republic of Kazakhstan*, 773 F. App'x 627 (D.C. Cir. 2019)(internal citations omitted). Justice plainly requires reversal of the Court's order where Couch had no opportunity to present a written opposition to Plaintiff's motion and no meaningful opportunity to provide any response. As discussed above, it was also clear error for the Court to take its decision in the manner and under the circumstances described.

memorandum at an earlier time. As a result, Couch was clearly deprived of his right to prepare a written opposition to the Motion to Compel.

Plaintiff's argument that Couch could otherwise have objected to his mistreatment before the status conference or during the conference itself rings hollow. *See* Plaintiff's Memorandum in Opposition, dated August 26, 2019 ("Pl.'s Mem.") at 5-6. Couch did not even formal receive notice of the Status Conference until <u>after</u> the conference itself, on August 1, 2019. Couch Aff. at ¶ 6. Couch only learned of the conference when the attorney who is currently seeking admission to enter an appearance in this matter notified him of the pendency of the conference. *Id.* at ¶ 7.[4] Based on the short time period between the filing of the motion and the conference it was unforeseeable that the court would rule on the Motion at the conference. To the extent the Court intended to take any action on pending motions, it appeared that the Court would rule on the <u>separate</u> motion filed by Plaintiff against Edward Butowsky ("Butowsky") over a month earlier, on June 13, 2019, ECF Doc. No. 63. As to <u>this</u> motion, it was evident that Mr. Butowsky had waived his objections by failing to file an opposition within the time specified by Local Rule 7(b). Given that the time had not expired for the filing of an opposition brief as to the motion directed at Couch, the only reasonably foreseeable action was the establishment of a briefing schedule for the Couch Motion to Compel. That the Court would rule on a motion eight days after it was filed without permitting the defendant to file a written opposition was inconceivable.

At the status conference itself, Couch had no meaningful opportunity to raise any objections. He was excoriated by the Court for appearing telephonically even though he had expressly requested and had received permission to so appear. Couch Aff. at ¶ 10. The Court

---

[4] Because Couch had been told that he was ineligible to use the ECF system as a *pro se* litigant, he reasonably relies on received written notification from the Court if his physical presence if required. *Id.*

5

then immediately moved on to announce its decision in peremptory fashion. *Id.* Under the circumstances, particularly as a *pro se* litigant unfamiliar with his right to speak (and after having just been told he was proceeding in the wrong way), Couch did not have any reasonable opportunity to express his opposition to the Motion to Compel. *Id.* Perhaps even more importantly, Couch subsequently learned that the Court had already taken its decision on the motion in an *ex parte* hearing with other counsel. *Id.* at ¶ 11.

As noted, Plaintiff maintains that Couch was not prejudiced by this *ex parte* conference, but such a position cannot be seriously maintained. Pl.'s Mem. at 6-7. Even aside from the procedural impropriety of the *ex parte* conference, it is evident that the Court must have believed that both motions to compel (the one directed at Butowsky and the one directed at Couch) were on the same schedule and that Couch had waived his rights with respect to the motion directed at him. This was of course not the case, as the time for Couch to file his memorandum in opposition had not passed. See supra at 6-7. Opposing counsel should have alerted the Court to the different timetable for the two motions and to the impropriety of ruling on a motion without providing an adverse *pro se* party an opportunity to respond. Be that as it may, the *ex parte* conference was highly prejudicial and the Court's decision taken during the conference and announced during the plenary conference left Couch with the belief that the decision was definitive and there was nothing further he could say. *Id.* at ¶ 10. Couch's due process rights were clearly violated and the Court's order granting the Motion to Compel against him must be reconsidered and reversed. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)(the fundamental

requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner").[5]

### III. The Court's *Ex Parte* Conference With Opposing Counsel Was Substantively Prejudicial.

Plaintiff attempts to minimize the import of the Court's *ex parte* conference with opposing counsel before the status conference in which Couch participated. Pl.'s Mem. at 6-7 (suggesting absence of harm because conference was only attended by one counsel for Plaintiff and one counsel for the co-Defendant). However, the prejudice of the *ex-parte* "pre-conference" is palpable. Neither counsel brought to the Court's attention that the Motion to Compel filed against Couch had been filed nearly six weeks <u>after</u> the motion filed against Butowsky and that any waiver issues applicable to Butowsky did <u>not</u> apply to Couch.

It is understandable that the Court would have thought the two motions were on the same schedule as there is little logic behind Plaintiff's choice to bring them separately. Nonetheless, when the Court announced in the pre-conference, without having heard Couch, that he would grant the two motions, this constituted clear and prejudicial error. Plaintiff concedes that the *ex parte* conference "raises concerns." Pl.'s Mem. at 8. Plaintiff is right to be troubled. When the Court took its decision in the absence of Couch and then peremptorily announced the decision to a *pro se* litigant already reeling from the Court's suggestion that he had acted improperly in seeking Court approval for a telephonic appearance granted without objection, it defies logic to

---

[5] Plaintiff also makes the irrelevant argument that over the previous two years Couch allegedly raised $70,000. Pl.'s Mem at 7. Plaintiff even highlights this amount as though it represented some colossal figure. *Id.* Plaintiff and his counsel, who likely bill out at $1,000/hr for their services, well know $35,000 a year is not a substantial sum. More importantly, Couch received such little warning for the conference that last minute travel from Arkansas was impracticable. Couch Aff. at ¶ 8.

think that Couch would have been able to assert his rights in any meaningful manner when he was so definitively put in the wrong simply for his method of appearance. No fair-minded objective observer would conclude that the *ex parte* pre-conference was harmless. Its effects should be undone by a reversal of the Court's decision granting the Motion to Compel.[6]

### IV. There Are Compelling Substantive Reasons to Deny the Motion to Compel.

#### A. The Court Lacks Subject Matter Jurisdiction Over America First Media.

Plaintiff's Motion to Compel is directed at Matthew Couch in his individual capacity and at America First Media. ECF Doc. No. 71. But the Court lacks subject matter jurisdiction over America First Media, which is a mere name and not a legal entity of any kind. Couch Aff. at ¶ 3. A mere name has no legal capacity to sue or be sued and cannot be considered a "citizen" for purposes of federal diversity jurisdiction.

Under Federal Rule of Civil Procedure, Rule 12(h)(3), "if the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Rule 12(h)(3) is mandatory and not subject to waiver. Because there is no basis to exercise diversity jurisdiction over a legal non-entity, Plaintiff's claims against America First Media must be dismissed and the Motion to Compel with respect to America First Media must be denied.[7]

---

[6] Contrary to Plaintiff's invitation, Couch does not waive his rights with respect to the harm caused by *ex parte* conference, even if he declines, at present, to seek further relief beyond the reversal of the improperly entered order. It is not clear whether the *ex parte* contact, standing alone, would warrant other relief, but there is no reason Couch should waive any of his rights.

[7] Couch has prepared a motion for dismissal of the claims against America First Media under FRCP Rule 12(h)(3) and is in the process of meeting and conferring with opposing counsel with respect to this motion pursuant to Local Rule 7(m).

B. <u>The Existing Protective Order Should Be Modified</u>.

Good cause exists to modify the previously entered order. First, while Couch signed the proposed order, he did not have the benefit of counsel at the time and was unable to fully appreciate its consequences. The Protective Order is silent as to whether transcripts of audio recordings are permissible and, if so, who should bear the burden of transcribing audio and how transcripts are to be marked if only portions are confidential or "Attorneys Eyes Only."

In addition, Plaintiff is taking a "scorched earth" approach to this litigation that warrants greater protections than currently exist. Plaintiff appears to be using his defamation lawsuit as a vehicle to embark on a fishing expedition for information relating to Seth Rich and to silence any discussion of Seth's unsolved murder. Couch Aff. at ¶ 18-20. Plaintiff has issued third-party subpoenas to a broad range of individuals and entities, including Jack Burkman, Jerome Corsi, Randi Credico and Roger Stone, well-known in this context for their interest in Seth Rich. *See* Couch Aff., Exs. D-G. These third-party subpoenas are clearly taking Plaintiff on a discovery journey far afield from his burden of proving the falsity of Couch's statements. *See Liberty Lobby, Inc. v. Anderson*, No. CIV.A. 81-2240, 1991 WL 186998, at *3 (D.D.C. May 1, 1991)(burden of proving falsity of matters of public interest rests on plaintiff).

Plaintiff's approach underscores the genuine dangers involved in this litigation. As noted in the accompanying memorandum, Mr. Burkman was shot and nearly killed by a party with whom he was working on his investigation into the murder of Seth Rich. Motion for Modification of Protective Order, at 2 and Note 2. Other targets of Plaintiff's subpoenas have been the subjects of death threats. *Id.* at Note 3. For his part, Couch has received highly sensitive information that could put numerous lives at risk if disclosed. Couch Aff. at ¶ 15. Couch has a duty to protect the safety of his sources. *Id.* Consistent with his duty as a patriotic

American, Couch has also provided information to the House Intelligence Committee. *Id.* The Protective Order must be modified to permit appropriate redactions before any further disclosures are made.[8]

### C. Plaintiff's Document Requests Are Impermissibly Overbroad and Unduly Burdensome.

#### 1. Couch's phone records.

Plaintiff is demanding all of Couch's phone records from January 1, 2016 to the present and an identification of all cell phone calls over this period that may have had something to do with Plaintiff's allegations. Couch Aff. at ¶ 22. Such a request is absurdly overbroad and impossible to comply with. *Id.* No-one could possibly remember the content of phone calls going back nearly four years. *Id.* Plaintiff's request goes far beyond any issues of possible relevance to Plaintiff's case and intrudes impermissibly into Plaintiff's privacy. *See e.g.*, *Ademiluyi v. Phillips*, No. 2:14-CV-00507-MMD, 2014 WL 7012493, at *4 (D. Nev. Dec. 12, 2014)(finding production of cell phone records would be unduly burdensome and a manifest injustice and ordering plaintiff to destroy all records in its possession obtained from third-party telephone operator); *Gallagher v. Anthony*, No. 16-CV-00284, 2016 WL 2997599, at *1 (N.D. Ohio May 24, 2016)(production of phone records would be unduly burdensome); *Carlson v. Lapuszynski*, No. A-10-CA-130-AWA, 2011 WL 613513, at *2 (W.D. Tex. Feb. 15, 2011)(concluding that requiring production of phone records would be unreasonable and unduly burdensome and potentially harassing); *Encompass Ins. Co. of Massachusetts v. Kramer*, No.

---

[8] Couch has prepared a motion for modification of the Protective Order under FRCP 26(c) and is in the process of meeting and conferring with opposing counsel with respect to this motion pursuant to Local Rule 7(m).

CV 07-11333-JLA, 2008 WL 11389221, at *4 (D. Mass. Sept. 23, 2008)(production of all phone records held overly broad and unduly burdensome).

Plaintiff has not articulated any reason why the production of all Couch's telephone records over a nearly four-year period and the Herculean task of attempting to reconstruct phone conversations from years ago can possibly be relevant or constitute anything other than an attempt to harass and browbeat Couch in a war of attrition the deep-pocketed Plaintiff believes he can easily win.

    2.    <u>Couch's Twitter Feed</u>. Plaintiff claims it is Couch's burden to download, save, print, Bates stamp and transmit tens of thousands of pages of tweets over the past years. Couch Aff. Ex. C. This is absurd. Couch is not arguing that he has a right to withhold publicly available information, contrary to Plaintiff's argument attacking this straw man. *Id.* Couch is simply arguing that the burden of downloading and sifting through the tweets appropriately falls on Plaintiff, who is assisted by two of the largest and most profitable law firms in the country. Plaintiff is free at any time to go to Couch's Twitter feed and download any tweets and attachments he desires, as Couch has made a point of not deleting any of his Tweets, independently of the present litigation. Couch Aff. at ¶ 23. Several thousands of dollars of printing costs and secretarial time amounts to a rounding error in the weekly bills of Plaintiff's counsel, but constitute an unjustifiable burden for a small-time defendant such as Couch, even assuming Plaintiff is accurate that Couch has raised the modest sum of $70,000 over a two year period. Pl.'s Mem. at 7.

In appropriate circumstances, Courts do not hesitate to require the requesting party to bear the burden of obtaining the relevant documents. *McLaughlin v. Bayer Essure Inc.*, No. 14-7316, 2019 WL 3483177, at *2 (E.D. Pa. July 24, 2019), *report and recommendation*

*adopted*, No. 14-7316, 2019 WL 3811907 (E.D. Pa. Aug. 13, 2019)(providing for requesting party to conduct social media searches if disclosing party provides any necessary access and "keys to the castle"); *Jewell v. Aaron's, Inc.*, No. 1:12-CV-0563-AT, 2013 WL 3770837, at *5 (N.D. Ga. July 19, 2013)(denying motion requesting production of social media postings); *Silva v. Dick's Sporting Goods, Inc.*, No. 3:14CV580 WWEWIG, 2015 WL 1275840, at *3 (D. Conn. Mar. 19, 2015)(denying motion to compel production of social media posts as overly broad).

With respect to social media, courts are generally pragmatic: while recognizing that the requesting party has a right to relevant social media posts, courts require requests to be narrowly tailored and production burdens to be commensurate with the relative resources of the parties. Here, Couch is willing to permit Plaintiff to download and search through his entire Twitter feed. Couch Aff. at ¶ 23. Plaintiff has far greater resources than Plaintiff and should bear the burden and expense of downloading, printing and/or saving Couch's tweets. As to Couch's other social media accounts, Couch has already produced responsive documents and is willing to work with Plaintiff to determine appropriate search terms and the least burdensome methodology.[9]

### V.    COUCH'S MOTION FOR RELIEF FROM THE COURT'S DEPOSITION ORDER IS UNOPPOSED AND SHOULD BE GRANTED.

In his Opposition to Couch's Motion, Plaintiff does not address Couch's request that the Court revisit its order denying Couch the right to take any depositions absent Court order. Couch's Motion should be considered unopposed on this point. Moreover, there are no valid reasons to deny Couch the right to take an equal number of depositions as Plaintiff. The Federal Rules of Civil Procedure do not permit a blanket prohibition on depositions by a party absent court leave. *See* FRCP 30(a)(1) and (2). The circumstances in which deposition require leave

---

[9] Plaintiff has asserted that he is willing to meet and confer with Couch to determine appropriate search terms. *See* Ex. C. Couch does not oppose this approach. Couch Aff. at ¶¶ 16, 24.

of courts are carefully circumscribed and none apply in the present case. FRCP 30(a)(2). While the Court does have the authority under FRCP 26(b) to limit discovery, Couch is not aware of any cases in which a *pro se* litigant has been subject to a blanket ban on deposition absent court approval. The most restrictive cases of which Couch is aware have involved incarcerated persons, where there are obvious pragmatic reasons for restricting a party's rights to take deposition testimony. *Ajaj v. Fed. Bureau of Prisons*, No. 08-CV-02006-MSK-MJW, 2011 WL 2791275, at *2 (D. Colo. July 15, 2011)(granting incarcerated person's request to take telephonic or videoconference depositions); *Espinal v. Coughlin*, No. 98CIV2579(RPP), 1999 WL 1063186, at *1 (S.D.N.Y. Nov. 23, 1999)( taking of deposition by prisoner would disrupt the order and effective functioning of the correctional facility); *LaBounty v. Coombe*, No. 95 CIV. 2617 DLC AJP, 1996 WL 30291, at *1 (S.D.N.Y. Jan. 24, 1996)(where plaintiff is an incarcerated prisoner proceeding in forma pauperis, the service of interrogatories by plaintiff is a more practical means of discovery). None of these concerns are relevant to a *pro se* public commentator such as Couch seeking to defend himself against wrongful charges of defamation on a matter of public interest.[10]

## CONCLUSION

For the reasons set forth above, the Court should reverse its prior decision granting Plaintiff's Motion to Compel and either grant Couch the opportunity to provide a written response or, on reconsideration, rule that the Motion to Compel should be denied. The Court

---

[10] Although Couch has not taken depositions in court, he has conducted deposition-like interviews in the course of his investigations and thus has the experience to ask relevant questions of witnesses. Couch Aff. at ¶ 10.

should also reconsider its prior decision and enter an order permitting Couch to take the same number of depositions as Plaintiff and Butowsky.

*Matthew Couch*
MATTHEW COUCH, *pro se*
4000 S Dixieland A-201
Rogers, AR 72758

## CERTIFICATE OF SERVICE

I hereby certify that on September 3, 2019, a copy of the foregoing was served by agreement by electronic mail on the foregoing:

Joshua Riley
Meryl C. Governski
BOIES SCHILLER FLEXNER LLP
1401 New York Ave, N.C
Washington, DC 2005
jriley@fsflip.com
mgovernski@bsflip.com

Micahel J. Gottlieb
WILLKIE FARR & GALLAGHER LLP
1875 K. Street, N.W.
Washington, D.C. 20006
mgottlieb@willkie.com

Philip Harvey
Harvey & Binnalli, PLLC
717 King Street, Suite 300
Alexandria VA 22314
United States of America
pharvey@harveybinnal.com

*Matthew Couch*
MATTHEW COUCH, *pro se*
4000 S Dixieland A-201
Rogers, AR 72758