## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

AARON RICH

                Plaintiff,

    v.

EDWARD BUTOWSKY,
MATTHEW COUCH, and
AMERICA FIRST MEDIA,

                Defendants.

Civil Action No. 1:18-cv-00681-RJL

Hon. Richard J. Leon

## PLAINTIFF'S UNOPPOSED MOTION FOR PERMISSION TO SERVE THIRD-PARTY WIKILEAKS VIA TWITTER

MICHAEL J. GOTTLIEB
WILLKIE FARR GALLAGHER LLP
1875 K Street NW, Washington, DC 20006

JOSHUA P. RILEY
MERYL C. GOVERNSKI
BOIES SCHILLER FLEXNER LLP
1401 New York Ave NW, Washington DC 20005

*Attorneys for Plaintiff Aaron Rich*

Plaintiff Aaron Rich alleges that Defendants Ed Butowsky and Matt Couch defamed Mr. Rich by falsely stating that Mr. Rich and his brother, Seth Rich, stole documents from the Democratic National Committee ("DNC") and provided those documents to WikiLeaks in exchange for money. WikiLeaks and its founder, Julian Assange, are uniquely positioned to confirm the truth: that neither Mr. Rich nor his brother has ever provided any documents to or received any payments from WikiLeaks or its agents. However, despite multiple attempts through various channels over more than a year, Mr. Rich to date has been unable to serve a subpoena on WikiLeaks or Mr. Assange—or even confirm an address or agent on whom to serve a subpoena on them—as the former does not have a known physical location for service of process and the latter had been under the protection of the Ecuadorian Embassy prior to his more recent incarceration in the United Kingdom.

Given Mr. Rich's repeated failed efforts to serve a Rule 45 subpoena on WikiLeaks through traditional channels, Mr. Rich hereby requests the Court's permission to serve a subpoena on third-party WikiLeaks via Twitter, where it maintains its most meaningful presence and the functional equivalent of its principal place of business, and where it has published content relevant to this action. Mr. Rich's proposed subpoena to WikiLeaks accompanies this motion. *See* Declaration of Meryl C. Governski in Support of Mr. Rich's Motion for Permission to Serve Third-Party WikiLeaks Via Twitter (hereinafter "Governski Decl.") Ex. 1. Defendants consent to this motion.[1] Mr. Assange's individual testimony is also critical to the expeditious resolution of this action; accordingly, Plaintiff is separately submitting a motion for the issuance of a letter of request

---

[1] As Local Rule 7(m) requires, Plaintiff met and conferred with counsel for Defendants. Mr. Butowsky and Mr. Couch both consent to the filing of this motion. However, Mr. Couch has asked for this motion to reflect his position that he disputes that he asserted that Mr. Rich "stole" any documents. Mr. Couch's position is that "[w]histleblowers receive compensation all the time and that does not make them 'thiefs'."

1

requesting judicial assistance from the court system in the United Kingdom in requiring Mr. Assange to appear for a deposition.

## **BACKGROUND**

Seth Rich is a former DNC staffer who was murdered in Washington, D.C. in July 2016 in what law enforcement has described as a botched armed robbery. *See* Dkt. 3 ¶¶ 25–26. Exploiting the circumstances of Seth Rich's death, Defendants have promoted a false conspiracy theory that he and his brother, Plaintiff Aaron Rich, stole emails from the DNC and sold those emails to WikiLeaks, and that Seth Rich was assassinated as a result. *Id.* ¶¶ 6–7.

Defendants have seized upon statements that WikiLeaks' founder, Julian Assange, made on a Dutch television program approximately one month after Seth Rich's murder. In that interview, Mr. Assange made comments that Defendants have interpreted as an insinuation that Seth Rich was a WikiLeaks source.[2] Although WikiLeaks subsequently released a statement on Twitter that its policy of neither confirming nor denying "whether any person has ever been a source for WikiLeaks" should "not be taken to imply that Seth Rich was a source to WikiLeaks or to imply that his murder is connected to our publications,"[3] WikiLeaks nonetheless continued to publish tweets about Seth Rich that provided fodder for Defendants' conspiracy theories.[4] Special

---

[2] *See* Interview by Eelco Boschvan Rosenthal with Julian Assange, Founder, WikiLeaks, Nieuwsuur (Aug. 9, 2016), clip available at https://www.youtube.com/watch?v=Kp7FkLBRpKg (Assange: "Whistleblowers go to significant efforts to get us material and often very significant risks. There's a 27-year-old who works for the DNC who was shot in the back, murdered, just a few weeks ago, for unknown reasons as he was walking down the streets in Washington.").

[3] WikiLeaks (@wikileaks), Twitter (Aug. 10, 2016, 7:41 PM), https://twitter.com/wikileaks/status/763565863861616640.

[4] These tweets included a link to the now-retracted May 17, 2017 Fox News story alleging that Seth Rich was involved in stealing the DNC emails, and excerpts of audio recordings of private phone conversations Defendant Butowsky had with Rod Wheeler, and separately with Seymour Hersh. *See* WikiLeaks (@wikileaks), Twitter (May 16, 2017, 3:15 PM), https://twitter.com/wikileaks/status/864605358488256514; WikiLeaks (@wikileaks), Twitter

Counsel Robert Mueller concluded that Assange's and WikiLeaks' "statements about Rich implied falsely that he had been the source of the stolen DNC emails," noting that "information uncovered during the investigation discredit WikiLeaks' claims about the source of material that it posted."[5]

Mr. Rich seeks to subpoena WikiLeaks to confirm what Mr. Rich knows to be true: that they have no evidence that Mr. Rich or Seth Rich were involved in stealing the DNC emails (because they were not). Through counsel, Mr. Rich repeatedly has endeavored to serve subpoenas on WikiLeaks and Mr. Assange through numerous channels, but those efforts have been unsuccessful. WikiLeaks does not maintain a traditional physical address,[6] or an agent on whom service is authorized,[7] and Mr. Assange until his recent incarceration in the United Kingdom was in seclusion in the Ecuadorian Embassy.[8]

---

(Aug. 1, 2017, 2:18 PM), https://twitter.com/wikileaks/status/892494677823434753; WikiLeaks (@wikileaks), Twitter (Aug. 1, 2017, 3:22 PM), https://twitter.com/wikileaks/status/892510925244203008.

[5] Special Counsel Robert S. Mueller, III, *Report On The Investigation Into Russian Interference In The 2016 Presidential Election* (Mar. 2019), at 48, https://www.justice.gov/storage/report.pdf (last visited Oct. 28, 2019).

[6] *WikiLeaks:Contact*, WikiLeaks, https://wikileaks.org/wiki/WikiLeaks:Contact (last visited Oct. 28, 2019) (providing post office box at the University of Melbourne as only address and indicating sender should "Pick any name likely to evade postal censorship in [his or her] country"); "Democrats serve Australia-based WikiLeaks with lawsuit via Twitter," *The Sydney Morning Herald* (Aug. 11, 2018, 10:09 AM), https://www.smh.com.au/world/north-america/us-democrats-serve-australia-based-wikileaks-with-lawsuit-via-twitter-20180811-p4zww0.html ("While WikiLeaks' physical presence is difficult to discern, it has a robust online presence, including an active presence on Twitter." (internal citation and quotation marks omitted)).

[7] *WikiLeaks:Legal*, WikiLeaks, https://wikileaks.org/wiki/WikiLeaks:Legal (last visited Oct. 28, 2019) (although the website states "Send all USA legal correspondence to our lawyers" at wl-legal@sunsinepress.org, and "To contact Wikileaks (USA)'s Designated Agent to receive notification of alleged infringement under the DMCA, please email this address listed below. You will then be provided with contact details for the Wikileaks Agent: wl-legal@sunshinepress.org," as explained below, emails sent to that address get bounced back to the sender).

[8] David Welna, "12 Years Of Disruption: A WikiLeaks TimeLine," *NPR* (April 11, 2019, 2:11 PM), https://www.npr.org/2019/04/11/712306713/12-years-of-disruption-a-wikileaks-timeline;

Mr. Rich first attempted to serve subpoenas on Mr. Assange in July 2018 by executing letters rogatory pursuant to the Inter-American Convention on Letters Rogatory and Additional Protocol ("IACAP").  Mr. Rich submitted materials to the Department of Justice regarding that request, *see* Governski Decl. Ex. 2, but on July 19, 2018, the Department of Justice Office of International Judicial Assistance ("OIJA") rejected those attempts, stating it was "unable to assist" in serving a Rule 45 subpoena on Mr. Assange because "[t]he proper route for obtaining evidence located abroad is pursuant to an international judicial assistance request." *Id.* Ex. 3.

In April 2019, Mr. Rich's counsel emailed Barry Pollack, who is Mr. Assange's criminal defense counsel, to request Mr. Pollack's assistance in serving a subpoena on Mr. Assange and/or WikiLeaks, *see id.* Ex. 4, but Mr. Pollack responded that he was "NOT authorized to accept service" of a subpoena to Mr. Assange, and that he does not represent WikiLeaks.  *Id.* Ex. 5 at 2, 4.  In August 2019, Mr. Rich's counsel again contacted Mr. Pollack, explaining:

> It has been near[l]y three months since this email exchange. While those three months have gone by, my client and his family have been defamed by individuals who continue to claim that Mr. Assange has relevant evidence regarding Seth and Aaron Rich that the Rich family is blocking him from releasing. As you know, that is false - as our letter clearly lays out, Mr. Rich has disclaimed any privilege and asked your client to provide whatever information he or WikiLeaks may have.
>
> It is time to end this pointless harassment of the Rich family. Please advise whether you have communicated with your client regarding our message, which as you know contains more than a request to serve a subpoena.
>
> If you are unwilling to help, we ask that you direct us promptly to a legal representative of either Mr. Assange or WikiLeaks with whom we may speak so that we may address this injustice.

---

"Julian Assange: Wikileaks co-founder jailed over bail breach," *BBC News* (May 1, 2019), https://www.bbc.com/news/uk-48118908.

*Id.* at 1.  To date, counsel for Mr. Rich has received no response.

On September 10, 2019, Mr. Rich's counsel sent an email to "wl-legal@sunshinepress.org," which the WikiLeaks:Legal webpage provides as the address to which "all USA legal correspondence" should be sent, explaining that the sender "will then be provided with a postal address and contact details."[9]  *See* Governski Decl. Ex. 6.  In its correspondence, Mr. Rich's counsel asked whether WikiLeaks:Legal "would be willing to discuss conditions under which you could participate in our litigation, including but not limited to your agreement to accept service of a subpoena."  *Id.*  Alternatively, Mr. Rich's counsel requested a point of contact for outside counsel.  *Id.*  After receiving a notice that the email to wl-legal@sunshinepress.org was not delivered due to an "unavailable or busy" server, *id.* Ex. 7, Mr. Rich's counsel attempted to send the same email to wl-lawyers@sunshinepress.org, *id.* Ex. 8, but Mr. Rich's counsel again received notice that the email was undeliverable due to an "unavailable or busy" server, *id.* Ex. 9. On September 14, 2019, Mr. Rich's counsel received notification that neither email was delivered despite 30 attempts made to deliver each email over a period of 93 hours.  *See id.* Exs. 10, 11.  On September 20, Mr. Rich's counsel made yet another attempt to resend the email to both wl-legal@sunshinepress.org  and  wl-lawyers@sunshinepress.org.  *See id.* Ex. 12.  However, Mr. Rich's counsel again received notifications that its email was not delivered to either recipient email address, notwithstanding six attempts made to deliver the email over a period of one hour and 30 attempts made to deliver the email over a period of 93 hours.  *See id.* Exs. 13, 14, 15, 16.

---

[9] *WikiLeaks:Legal*, WikiLeaks, https://wikileaks.org/wiki/WikiLeaks:Legal (last visited Oct. 28, 2019).

## ARGUMENT

The Court should permit Mr. Rich to serve WikiLeaks via Twitter.  Defendants Couch and Butowsky both name the founder of WikiLeaks, Julian Assange, in their respective initial disclosures as an individual with discoverable information, thereby representing their view that WikiLeaks possesses evidence critical to their defenses.  *See* Governski Decl. Exs. 17, 18. Defendant Couch goes one step further, repeatedly referencing the "leaking of the DNC emails to Wikileaks" in his descriptions of likely discoverable information possessed by the individuals on whom he intends to rely for his defense, illustrating the significance of the alleged fact that Mr. Rich and his brothers leaked DNC emails to WikiLeaks.  *See id.* Ex. 17 ¶¶ I(2), (4), (11), (12), (13), (15), (22), (23).  As the entity to which the emails were allegedly leaked, a subpoena to WikiLeaks is necessary to allow Mr. Rich to confirm what his Complaint alleges—namely, that there is no evidence that Mr. Rich and his brother provided DNC emails to WikiLeaks in exchange for payment.

Mr. Rich has been unable to effectuate service on WikiLeaks through traditionally contemplated channels despite repeated efforts to determine how to do so.  *See supra* at 4–5; Exs. 2–16. The only address at which WikiLeaks is capable of being reached, and the most significant address for purposes of WikiLeaks' presence, is its address on Twitter.  Courts have permitted service via Twitter in analogous situations.

For example, the United States District court for the Southern District of New York permitted the DNC to serve a complaint and summons on WikiLeaks via Twitter after the DNC (1) attempted to request an address and contact details for service by sending an email to the address provided on the WikiLeaks:Legal webpage and receiving multiple notifications that the email had been rejected; (2) made diligent attempts to contact counsel who had represented

WikiLeaks in other matters; and (3) had "searched diligently for a more conventional means of serving WikiLeaks, but was unable to identify one." Order, *Democratic Nat'l Comm. v. Russian Fed'n*, No. 1:18-cv-03501-JGK (S.D.N.Y. Aug. 6, 2018), Dkt. 156; Motion, *Democratic Nat'l Comm.*, No. 1:18-cv-03501-JGK (S.D.N.Y. July 20, 2018), Dkt. 149, at 7, 9. The DNC's rationale, which the S.D.N.Y. implicitly adopted by granting its motion, was that service via Twitter was proper because "WikiLeaks has a strong and continued Twitter presence." Motion, *Democratic Nat'l Comm.*, Dkt. 149 at 9.

Similarly, in *St. Francis Assisi v. Kuwait Fin. House*, the United States District Court for the Northern District of California authorized service via Twitter where the plaintiff was "unable to determine [the defendant's] whereabouts" and service by social media would be "reasonably calculated to give notice and [was] the method of service most likely to reach" the defendant because he had "an active Twitter account and continue[d] to use it to communicate with his audience." No. 3:16-CV-3240-LB, 2016 WL 5725002, at *1–*2 (N.D. Cal. Sept. 30, 2016) (citation and internal quotations omitted).[10]

The same rationale applied by the courts in *Democratic National Committee* and *St. Francis Assisi* applies here. A party should be permitted to serve a Rule 45 subpoena in any manner reasonably calculated to give the non-party actual notice of the proceedings and an opportunity to be heard, and as such should be permitted to serve a Rule 45 subpoena in any

---

[10] *See also Kipu Sys., LLC v. ZenCharts, LLC*, No. 17-24733-Civ-WILLIAMS/TORRES, 2018 WL 8264634, at *3 (S.D. Fla. Mar. 29, 2018); *WhosHere, Inc. v. Gokhan Orun*, No. 1:13–cv–00526–AJT–TRJ, 2014 WL 670817, at *4 (E.D. Va. Feb. 20, 2014) (permitting service via social media where Defendant did not respond to process served and service through via social media was "highly likely to provide defendant notice" and the social media accounts were "regularly viewed and maintained by defendant"); *FTC v. PCCare247 Inc.*, No. 12 Civ. 7189(PAE), 2013 WL 841037, at *6 (S.D.N.Y. Mar. 7, 2013) (permitting service via Facebook).

manner permitted for service of a summons and complaint under Rule 4. *See In re Shur*, 184 B.R. 640, 644 (Bankr. E.D.N.Y. 1995) (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)); *E.A. Renfroe & Co., Inc. v. Moran*, No. 08–cv–00733–REB–MJW, 2008 WL 1806200, at *5 (D. Colo. Apr. 21, 2008) ("[I]t is clear from the protections provided in Rule 45 that when a non-party receives actual notice . . . that party can protect itself . . . simply by filing a motion to quash . . . . [W]hat is mandated is that service be made in a manner which reasonably insures actual receipt of the subpoena by the witness."); *OceanFirst Bank v. Hartford Fire Ins. Co.*, 794 F. Supp. 2d 752, 754 (E.D. Mich. 2011) (adopting "the reasoning of the courts that interpret Rule 45 to allow service of a subpoena by alternate means once the party seeking evidence demonstrates an inability to effectuate service after a diligent effort"); *Performance Credit Corp. v. EMC Mortg. Corp.*, No. SACV07–383 DOC (RNBx), 2009 WL 10675694, at *3 (C.D. Cal. Apr. 16, 2009); *In re MTS Bank*, No. 17-21545-MC-WILLIAMS/TORRES, 2018 WL 1718685, at *4 (S.D. Fla. Mar. 16, 2018).[11]

---

[11] Plaintiff acknowledges that the D.C. Circuit indicated in dicta over 35 years ago that Rule 45 requires personal service and that there are policy reasons for distinguishing between permissible modes of service under Rules 4 and 45. *FTC v. Compagnie De Saint-Gobain-Pont-a-Mousson*, 636 F.2d 1300, 1312-13 (D.C. Cir. 1980). Apart from the fact that the D.C. Circuit's pronouncement was made in dicta, several courts have called it into question, and "a strong, and well reasoned minority now accepts that some other form of personal service, should the circumstances support it, is acceptable." *Performance Credit Corp.*, 2009 WL 10675694, at *2; *see* 9A Fed. Prac. & Proc. Civ. § 2454 (3d ed.); *see, e.g.*, *In re Shur*, 184 B.R. at 643 ("We are not persuaded that between Rules 4 and 45 there exists a policy distinction such that service other than personal service should be sufficient for the former but not the latter. . . . Rather, the policy underlying *both* rules is that the method of service guarantee due process of law."); *Green v. Baca*, No. CV 02-204744MMMMANX, 2005 WL 283361, at *1 n.1 (C.D. Cal. Jan. 31, 2005) ("[T]he court sees no policy distinction between Rules 4, 5 and 45, such that service other than personal service should be sufficient under the first two but not the third."); *Ultradent Prods., Inc. v. Hayman*, No. M8–85 RPP, 2002 WL 31119425, at *3 n.4 (S.D.N.Y. Sept. 24, 2002) ("The D.C. Circuit's suggestion that Rule 4 exclusively advances the objective of providing notice to a party, while Rule 45 exclusively aims to compel a third party to comply with the subpoena is a distinction without substance. Service of a summons and complaint on a party, governed by Rule 4, both

A construction of Rule 45 that prohibits service by a mode permitted under Rule 4, and requires personal service instead, is nonsensical where, as here, service is to be effectuated on a location-less entity rather than an individual. *See In re Shur*, 184 B.R. at 642 ("[T]he drafters [of the Federal Rules] knew how to indicate a personal service requirement where it was intended" (citation and internal quotations omitted)). First, the plain language of Rule 45 does not require personal service. Instead, the rule requires that the subpoena be served by "*delivering* a copy" to the named entity. Fed. R. Civ. P. 45(b)(1) (emphasis added); *see In re Shur*, 184 B.R. at 642 ("Nothing in the everyday meaning of any of these words expresses or suggests a requirement that 'delivery' be effected exclusively by the hand of one human being to the hand of another."); *Moran*, 2008 WL 1806200, at *4. Second, construing Rule 45 to require personal service would render superfluous Rule 45(b)(4), which states proof of service is accomplished by "filing with the issuing court a statement showing the date *and manner* of service," as well as Rule 4(e)(2)(a), which explicitly specifies that delivery must be done "personally." Third, the notion of "personal service" is a misnomer as applied to an international entity (such as WikiLeaks) whose only known physical address is a post office box at the University of Melbourne. WikiLeaks' only true

---

notifies the party of a pending action and compels that party to comply by filing responsive papers or suffering a default judgment to be entered against it. Similarly, service of a subpoena on a third party witness to a litigation notifies the witness that his appearance is required, and compels compliance with the order therein. The elements of notice and compulsion exist under both Rules."); *Doe v. Hersemann*, 155 F.R.D. 630, 631 (N.D. Ind. 1994) ("This court fails to see the power of this distinction: a subpoena to a non-party deponent is designed to notify the party that the court requires his or her presence at a particular time and place just as surely as a summons and complaint notifies a person that he or she has been sued."); *Bland v. Fairfax Cty., Va.*, 275 F.R.D. 466, 471-72 (E.D. Va. 2011). Moreover, the dicta in *Compagnie De Saint-Gobain-Pont-a-Mousson*—released more than 35 years ago—could not have envisioned a location-less entity such as WikiLeaks that exists solely through its online presence, which it uses to reach a massive audience, including in the United States. Thus, the general principles outlined in that dicta need not be applied to the novel circumstances presented by this motion.

disclosed existence is its online persona; service on such an entity necessitates an approach that acknowledges the realities of the entity.

"In accordance with the interpretive principle that the Federal Rules of Civil Procedure 'should be construed and administered to secure the just, speedy, and inexpensive determination of every action,' and given the textual ambiguity of Rule 45[,] . . . . effective service under Rule 45" should permit service via modes endorsed for service under Rule 4. *Moran*, 2008 WL 1806200, at *6 (quoting Fed. R. Civ. P. 1). "The Federal Rules of Civil Procedure should not be construed as a shield for a witness who is purposefully attempting to evade service." *Id.* (permitting service of a subpoena by a method other than personal service where the witness "cannot be readily or easily located to effect hand-to-hand personal service"); *see also Performance Credit Corp.*, 2009 WL 10675694, at *2 (finding "some form of service other than hand-to-hand personal service should be authorized" for service of Rule 45 subpoena where third party was "attempting to avoid and evade service of process" but was "one of, if not the most important witness" in the action); *Western Res., Inc. v. Union Pac. R.R. Co.*, No. 00-2043-CM, 2002 WL 1822432, at *2 (D. Kan. July 23, 2002); *Cordius Trust v. Kummerfeld*, No. 99 CIV. 3200(DLC), 2000 WL 10268, at *1–*2 (S.D.N.Y. Jan. 3, 2000).

WikiLeaks should not be permitted to evade service—and Mr. Rich should not be prejudiced—simply because WikiLeaks has organized itself to lack a definitive physical location at which personal service might be possible.  WikiLeaks uses Twitter as a mass publishing platform to reach a global audience, including a massive audience in the United States, and WikiLeaks both sends and receives communications directly on that platform.  Mr. Rich has taken reasonable steps to effectuate service here through alternate means, just as the DNC did with respect to WikiLeaks in *Democratic National Committee*.  Mr. Rich's counsel has tried to contact counsel for WikiLeaks

at the address provided on its Legal webpage and has attempted to determine WikiLeaks' agent via Mr. Assange's counsel in other cases.  Because those efforts have proven futile, this Court should permit Mr. Rich to serve WikiLeaks with a subpoena via Twitter given its role as "one of, if not the most important witness" in this action.  *Western Resources*, 2002 WL 1822432, at *2.[12]

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests authorization to serve WikiLeaks by Twitter.

Dated: October 31, 2019

/s/ _Michael J. Gottlieb_____
MICHAEL J. GOTTLIEB (D.C. Bar No. 974960)
WILLKIE FARR GALLAGHER LLP
1875 K Street NW, Washington, DC 20006
Tel: (202) 303-1442 / Fax: (202) 303-2000
mgottlieb@willkie.com

JOSHUA P. RILEY (D.C. Bar No. 1026900)
MERYL C. GOVERNSKI (D.C. Bar No. 1023549)
BOIES SCHILLER FLEXNER LLP
1401 New York Ave NW, Washington DC 20005
Tel: (202) 237-2727 / Fax: (202) 237-6131
jriley@bsfllp.com
mgovernski@bsfllp.com

*Attorneys for Plaintiff Aaron Rich*

---

[12] Mr. Rich recognizes that there may be obstacles to enforcing the subpoena in question, but that should not bear on the question of service.  Mr. Rich hopes that WikiLeaks will voluntarily comply if served in the spirit of its professed goals of transparency and accountability.  As such, this Court need not decide now how it might evaluate the remedies available in the event that WikiLeaks declines to respond to the subpoena.  Mr. Rich requests only that the Court permit service of the subpoena via Twitter in light of the fact that the purpose of service is to ensure notice, and with respect to WikiLeaks, service via Twitter is the most practical and equitable way to ensure notice.

## **CERTIFICATE OF SERVICE**

The undersigned counsel certifies that on October 31, 2019, the foregoing document was (1) filed through the CM/ECF system and thereby served electronically on counsel and parties who receive notice through CM/ECF and (2) emailed to Philip Harvey at pharvey@harveybinnall.com, Edward Butowsky at ebutowsky@gmail.com, Eden Quainton at equainton@gmail.com, and Matthew Couch and America First Media at mattcouch@af-mg.com.

Dated: October 31, 2019

/s/ _Michael J. Gottlieb_____
MICHAEL J. GOTTLIEB (D.C. Bar No. 974960)
WILLKIE FARR GALLAGHER LLP
1875 K Street NW, Washington, DC 20006
Tel: (202) 303-1442 / Fax: (202) 303-2000
mgottlieb@willkie.com