# EXHIBIT 16
# REDACTED



October 8, 2019

**VIA EMAIL**
Eden P. Quainton
Quainton Law, PLLC
1001 Avenue of the Americas, 11th Floor
New York, NY 10018
Tel: 212.813.8389
Fax: 212.813.8390
Cell: 202.360.6296
www.quaintonlaw.com

   Re: *Aaron Rich v. Butowsky, et al.* **(United States District Court for the District of Columbia)**

Mr. Quainton:

   I am writing as a follow up to the July 8, 2019 letter ("July 8 letter") in which I detailed Defendant Couch's failure to produce a single document in response to Plaintiff Aaron Rich's First Set of Requests for Production of Documents ("First RFP"), and the deficiencies in his initial answers to Mr. Rich's First Set of Interrogatories ("First Interrogatories").[1]  Since those initial responses, Mr. Couch made a production (hereinafter "Production") on August 26, 2019, and served new answers to the First Interrogatories ("Supplemental Answers") on September 27, 2019.  This letter responds to the deficiencies in the Production and Supplemental Answers.[2]  In sum, Mr. Couch has asserted no basis to withhold production of any of the materials or answers responsive to the First RFP and, yet, Mr. Couch's Production and Supplemental Answers are blatantly deficient.  *See* Fed. R. Civ. P. 37.

## I. WAIVER OF OBJECTIONS

   As an initial matter, Mr. Couch long ago waived his right to object to both the First RFP and the First Interrogatories.

   As to the First RFP, as explained in the July 8 letter, Mr. Couch was obligated but failed to respond or assert objections to the First RFP by May 22, 2019.  July 8 letter at 1.  On June 23,

---

[1] I will send a separate letter regarding America First Media.

[2] This letter does not seek to repeat the substance of the July 8 letter, and reserves all rights to challenge the discovery sufficiency and to seek remedies available under the law, including pursuant to Rule 37 and the terms of the parties' ESI stipulation.  Dkt. 36.  Mr. Rich also reserves the right to raise additional disputes concerning deficiencies not discussed herein.



2019—one month after the due date, and instead of producing a single document—Mr. Couch provided narrative responses to each RFP, which in some cases included non-responsive, generalized, frivolous, and insufficient "objections." *See id.* at 2–10.[3]  Because Mr. Couch did not timely respond, he waived his right to object. *See Embassy of the Fed. Republic of Nigeria v. Ugwuonye*, No. 10-CV-1929 (BJR), 2012 WL 13047525, at *3 (D.D.C. Oct. 17, 2012); *English v. Wash. Metro. Area Transit Auth.*, 323 F.R.D. 1, 8 (D.D.C. 2017) ("A party served with Rule 34 requests for production must produce or allow inspection of the requested records unless it has asserted a viable objection." (citing Fed. R. Civ. P. 34(b)(2))); *cf. Shvartser v. Lekser*, 321 F.R.D. 23, 24 (D.D.C. 2017) (*pro se* status does not excuse missing discovery deadlines).[4]

As to the First Interrogatories, Mr. Couch waived his right to object by serving his initial answers without asserting any objections. *See* Fed. R. Civ. P. 33(b)(4) ("Any ground not stated in a timely objection is waived[.]"); *Byrd v. Reno*, No. CIV.A.96-2375CKK JMF, 1998 WL 429676, at *8 (D.D.C. Feb. 12, 1998) ("[O]bjections as to burdensomeness, attorney-client or attorney work-product privilege, vagueness or overbreadth are waived" where "not timely asserted."); *see also Escamilla v. Nuyen*, No. 14-CV-00852-AK, 2015 WL 4245868, at *5 (D.D.C. July 14, 2015); *Fonville v. D.C.*, 230 F.R.D. 38, 42 (D.D.C. 2005).  On September 27, 2019, when Mr. Couch served his Supplemental Answers, he cited general and specific objections.  Despite the fact that Mr. Couch waived his right to object to the First Interrogatories, Mr. Rich addresses those Objections *infra*.

Irrespective of waiver, Mr. Couch has produced a privilege log that solely withholds documents (1) between you and Mr. Couch and (2) based on attorney-client or work-product privilege grounds.  Based on this log, it is our understanding that Mr. Couch has not asserted privilege over any other document or conversation, with any individual other than with you, and on any grounds other than attorney-client and work-product.[5]  If that is not correct, Mr. Couch must produce a more accurate privilege log consistent with the parties' joint stipulation and the federal rules, which includes the level of specificity required to permit accurate assessment of any withheld materials.  Fed. R. Civ. P. 26(b)(5) (privilege log must describe "the nature of the

---

[3] On July 31, 2019, the Court ordered Mr. Couch to produce documents responsive to the First RFP.  *See* Dkt. 75 at 5:11-12; 7/31/19 Minute Order.  Despite having waived the right to object to the First RFP, Mr. Couch and AFM filed a Rule 60(b) Motion on August 14, 2019, to which Mr. Rich filed an opposition and Mr. Couch a reply. *See* Dkt. 76; 78; 79.  Because Mr. Couch began to produce documents in the interim, Mr. Rich and Mr. Couch agreed to file a two-way stipulation requesting that the Court stay judgement pending conferral, Dkt. 81, while reserving all rights.

[4] Despite waiver, the July 8 letter addressed the general "objections" Mr. Couch included in the June 23, 2019 narrative response.

[5] As discussed below, Mr. Couch has alluded to some sort of a source privilege to which we do not believe he is entitled.  But to the extent he is withholding documents or answers based on that assertion, he must include that in a privilege log.  *Byrd*, 1998 WL 429676, at *10.



documents . . . not produced . . . in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim" of privilege.); *see also* Dkt. 36 ¶ 11(a) (privilege log will include "a brief description of the document, where necessary"); *Walker v. Ctr. for Food Safety*, 667 F. Supp. 2d 133, 138 (D.D.C. 2009).

## II.   RFP

For the reasons articulated below, it is patently clear that Mr. Couch either did not use accurate or comprehensive search terms, did not search all of the required repositories of information, selectively produced materials, or some combination of all of the above.[6] Fed. R. Civ. P. 37(a)(4) ("incomplete" discovery responses "must be treated as a failure to . . . answer[ ] or respond"); *English*, 323 F.R.D. at 8 (same); *Finkelstein v. D.C.*, No. 85-2616, 1987 WL 14976, at *6 (D.D.C. July 22, 1987) (Rule 34 contemplates "the diligent search through all likely repositories of records"); *U.S. Commodity Futures Trading Comm'n v. Trade Exch. Network Ltd.*, 61 F. Supp. 3d 1, 7 (D.D.C. 2014) ("It is not up to the party from whom documents are requested to pick and choose how to present relevant information . . . .").

As we have discussed, we are amenable to considering subsidizing the costs of hiring a discovery vendor (subject to approval by your client and ours) to collect Mr. Couch's ESI, which we might be willing to do in certain circumstances to ensure a complete and prompt production. Again, ***we respectfully request a prompt decision on how you plan to ensure Mr. Couch fulfills his discovery obligations to search for and produce all responsive materials in his custody and control***. His search appears wholly insufficient and if he plans to stand on his current approach, we request that Mr. Couch provide us a detailed accounting of his process, including but not limited to: (1) the search terms he used; (2) the accounts and platforms he searched (e.g., email addresses; Social Media accounts; cell phones; applications); and (3) the specific way he performed each search.

## III.   GENERAL PRODUCTION DEFICIENCIES

Mr. Couch produced less than 50 documents, only *ten* of which are private communications. *Compare* MC000001–MC000165, *with* MC000166–MC000514. The Production is comprised, in its entirety, of: (1) *seven* emails to/from matthewcouch@gmail.com from/to ebutowsky@gmail.com, four of which are from August 2017 and three of which are from January 2018 (MC000001–MC000008); (2) text messages from an AT&T device between Mr. Couch and Mr. Butowsky from October 2017 to what appears to be October 2018, (MC000010); (3) text messages from an AT&T device between Mr. Couch and Mr. Wheeler from August 2018 (MC000138) and on December 21, 2018 (MC000165); (3) 24 copies of articles from The DC Patriot, many of which are illegible (MC000166–MC000485); (4) 11

---

[6] We are available to meet and confer on search methodology, which the parties are obligated to do pursuant to the terms of the Stipulated ESI Agreement. *See* Dkt 36 ¶ 8 (parties "shall meet and confer to reach agreement . . . on the search methodology").



Matthew Couch
October 8, 2019

untethered standalone documents, including public social media postings, background checks, and what appears to be summaries of Mr. Wheeler's "work"  (MC000497–MC000514).

Defendant Couch's Production is deficient because it is facially incomplete—it leaves out broad categories of materials clearly responsive to the First RFP and which Mr. Rich has reason to believe exist.  Fed. R. Civ. P. 37(a)(4).  As discussed at length in the July 8 letter (at 2–3), and in Mr. Rich's Motion to Compel (Dkt. 71 at 6–9), Mr. Couch repeatedly and publicly has boasted about having "so many recordings" and "so many text messages, so many voicemails, so many emails" and "phone logs" and "hard factual evidence" and the list goes on, yet as discussed below, he has produced: no recordings; only two text message chains; no voice mails; only seven emails; and no "hard factual evidence" supporting his public statements.

The RFPs define Documents and Communications broadly (as is consistent with the federal rules) and specifically request, *inter alia*, *all* Documents and Communications relating to any allegations in the Complaint  and *all* Documents and Communications supporting or refuting or otherwise referring to the facts upon which Mr. Couch relied for any Statement attributed to him in the Complaint.   Consistent with the Federal Rules, the instructions to the First RFP required that Mr. Couch "fully respond, search for, and *produce all Documents and Communication* responsive to these Requests," RFP ¶ A (emphasis added), and defined those terms broadly and explicitly:

- "'Communication' means, in addition to its customary and usual meaning, every contact of any nature, whether documentary, electronic, written or oral, formal or informal, at any time or place and under any circumstances whatsoever whereby information of any nature is transmitted or transferred by any means, including, but not limited to **letters, memoranda, reports, emails, text messages, instant messages, social media, telegrams, invoices, telephone conversations, voicemail messages, audio recordings, face-to-face meetings and conversations, or any other form of communication, and any Document relating to such contact, including but not limited to correspondence, memoranda, notes or logs of telephone conversations, e-mail, electronic chats, text messages, instant messages, direct or private messages, correspondence in 'meet ups' or chat rooms, and all other correspondence on Social Media**. Without limiting the foregoing in any manner, commenting as well as any act of expression that is not directed at a specific person, or otherwise may not be intended to provoke a response (such as a social media posting, 'likes,' 'shares,' or any other form of reacting to another's use of Social Media), are forms of communication."

- "'Document' or 'Documents' means documents broadly defined in Rule 34 of the Federal Rules of Civil Procedure and includes (i) papers of all kinds, including but not limited to, originals and copies, however made, of **letters, memoranda, hand-written notes, notebooks, work-pads, messages, agreements, rough drafts, drawings, sketches, pictures, posters, pamphlets, publications, news articles, advertisements, sales literature, brochures, announcements, bills, receipts, credit card statements**, and (ii) non-paper information of all ki~~nds, including but not~~ limited to, any



Matthew Couch
October 8, 2019

computer generated or electronic data such as **digital videos, digital photographs, audio recordings, podcasts, Internet files (including 'bookmarks' and browser history), online articles and publications, website content, electronic mail (e-mail), electronic chats, instant messages, text messages, uploads, posts, status updates, comments, 'likes', 'shares', direct messages, all Social Media activity, or any other use of ephemeral communications services or Social Media**, and (iii) any other **writings, records, or tangible objects produced or reproduced mechanically, electrically, electronically, photographically, or chemically**. Without limiting the foregoing in any way, every Communication is also a Document."

- "'Social Media' means any forum, website, application, or other platform on which persons can create, transmit, share, communicate, or comment upon any information, ideas, or opinions, or otherwise engage in social networking, including but not limited to: **Twitter, Gab, MeWe, Periscope, Facebook, Discord, Reddit, Imgur, SnapChat, Instagram, Google+, 4chan, 8chan, Tumblr, Youtube, LinkedIn, Flikr, Reddit, Quora, Disquis, Slack, Whisper, Yik Yak, Medium, WordPress, and instant messaging services such as Signal, WhatsApp, Facebook Messenger, Hangouts, Skype, Line, KakaoTalk, Telegram, CyberDust**. Without limiting the foregoing in any manner, and by way of example only, the following are Social Media activity: uploading, posting, commenting, reacting (e.g., 'liking' a post), sharing, and communicating on comment sections of Social Media."

Yet, the production does not include any of the following:

- **Social Media**:  Couch's Production does not include *any* Communication from Social Media, despite evidence that he received responsive Communication via Social Media platforms.  *See, e.g.*, Butowsky0000712–717 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮; Nov. 21, 2017 Twitter notification to M. Chavez ("Matt Couch (@RealMattCouch) has sent you a Direct Message on Twitter!"); Sept. 21, 2017 Twitter notification to M. Chavez (same); Sept. 24, 2017 Twitter notification to M. Chavez (same); Sept. 20, 2017 Twitter notification to M. Chavez (same).  Even if we reach agreement as to publicly posted Social Media, Mr. Couch remains obligated to produce any materials that are not publicly available, including private messages and communications such as those referenced above, and content that he posted but has removed (e.g., July 15, 2019 from @realmattcouch: "Cassandra asked me to pull the audio down and I have out of respect for her"). *See* July 8 letter at 6; Aug. 28, 2019 email from M. Governski to E. Quainton, M. Couch, cc'ing M. Gottlieb, J. Riley, *Document Production*.[7]

---

[7] We appreciate that we are working mutually towards a joint stipulation to address Mr. Couch's public (non-private) Social Media content, but reserve the right to compel such production if we do not reach an amicable solution.



Matthew Couch
October 8, 2019

- **Messaging and Emailing Applications:** Couch's Production does not include any messages from other messaging and emailing applications that he appears to use, such as Signal (MC000051 (Jan. 20, 2018: ▮▮▮▮▮ MC000025 (Dec. 18, 2018: ▮▮▮▮▮)), and Wickr (MC000024 (Dec. 17, 2017: ▮▮▮▮▮); Butowsky Answer to Rog. No. 1 (▮▮▮▮▮")).   Furthermore, it appears that Couch produced emails only from his Gmail account (matthewcouch@gmail.com), even though he appears to also discuss subjects responsive to the RFPs from his AF-MG account (mattcouch@af-mg.com) (e.g., Butowsky 0000415 (email from ebutowsky@gmail.com to mattcouch@af-mg.com); Dec. 24, 2017 email from T. Schoenberger to Ed Butowsky, M. Couch ([mattcouch@af-mg.com](mailto:mattcouch@af-mg.com)), ▮▮▮ , *Ed, you were not kidding !!!*))



- **Audio or Video Recordings**: The Production does not include a single audio or video recording despite the admission that Mr. Couch possesses such responsive recordings.[8]   It is our understanding that the bases for Mr. Couch withholding these recordings is (1) the perception that the Protective Order does not cover recordings; (2) the representation that the recordings include some non-responsive information; and (3) the assertions of some sort of source privilege.   For the reasons discussed below, none of these bases justifies withholding responsive audio or video recordings.

  o *First*, as we have repeatedly explained, the PO defines "Discovery Material" to include "documents, tangible things, **discovery responses**, deposition testimony and information, including testimony (hereinafter 'Discovery Material')."   In addition to the fact that any audio files you produce would be part of your discovery responses, they also would qualify as "documents" defined in the First RFP.   *See* RFP Definitions ("Document" "means documents broadly defined in Rule 34 of the Federal Rules of Civil Procedure and includes . . . (ii) non-paper information of all kinds, including but not limited to, any computer generated or electronic data such as digital videos, digital photographs, *audio recordings*, podcasts, Internet files . . . ."); *see also* Fed. R. Civ. P. 34(1)(1)(A) (defining documents to include "sound recordings").

  o *Second*, it is Couch's obligation to produce responsive materials, irrespective of whether they are contained within nonresponsive materials.   It is not appropriate for Mr. Couch to, in any way, edit or remove content from audio and video recordings.   *In re Vitamins Antitrust Litig.*, No. 99-197TFH, 2001 WL 1049433, at *13 (D.D.C. June 20, 2001) ("The Court does not welcome unilateral editing of documents by the producing party. Even when implemented with restraint and in good faith, the practice frequently gives rise to suspicion that relevant material harmful to the producing party has been obscured. It also tends to make

---

[8] The Production itself refers to recordings that are not produced (e.g., MC000002 (sends m4a file); MC000026 (m4a voicemail), MC000108 ("▮▮▮▮▮")).



documents confusing or difficult to use." (quoting *In re Medeva Sec. Litig.*, No. 93–4376–KN, 1995 WL 943468, at *3 (C.D. Cal. May 30, 1995))).[9]   As we have discussed, we would accept the full materials with a list of the time stamps of portions that contain non-responsive material.

o   *Third*, as discussed above, Mr. Couch has waived his right to assert any privilege objections, including whatever sort of source privilege to which he believes he is entitled.   Mr. Couch has not provided a privilege log that asserts any sort of source privilege.   Irrespective of whether Mr. Couch has preserved the ability to assert a source privilege, he bears the burden of establishing that he is entitled to it, including that he qualifies as a member of the news media and that the information sought has not been communicated in the news media.   *See Estate of Klieman v. Palestinian Auth.*, 293 F.R.D. 235, 241 (D.D.C. 2013) ("The party asserting the reporter's privilege bears the burden of showing that the privilege applies in the particular case."); D.C. Code § 16-4701 (defining "news media"); D.C. Code § 16-4702 (providing source privilege to "any person who is or has been employed by the news media in a news gathering or news disseminating capacity").   And even if Mr. Couch succeeded in arguing that he is a bona fide member of the news media (which he is not), any attempt to assert a privilege on First Amendment grounds or pursuant to D.C. law would be futile.   Mr. Couch is a defendant in a defamation case and the basis and source of his statements about

---

[9] *See also United States v. McGraw-Hill Cos., Inc.*, No. CV 13-0779-DOC (JCGx), 2014 WL 8662657, at *4 (C.D. Cal. Sept. 25, 2014) ("[U]nilateral redactions are inappropriate if they seek not to protect sensitive or protected information, but merely to keep non-responsive information out of an adversary's hands."); *Bartholomew v. Avalon Capital Grp., Inc.*, 278 F.R.D. 441, 451–52 (D. Minn. 2011) ("Redaction is an inappropriate tool for excluding alleged irrelevant information from documents that are otherwise responsive to a discovery request. It is a rare document that contains only relevant information. And irrelevant information within a document that contains relevant information may be highly useful to providing context for the relevant information."); *Evon v. Law Offices of Sidney Mickell*, No. S-09-0760 JAM GGH, 2010 WL 455476, at *2 n.1 (E.D. Cal. Feb. 3, 2010) ("[A] party should not take it upon him, her or itself to decide unilaterally what context is necessary for the non-redacted part disclosed, and what might be useless to the case. . . . Thus, unless a particular section unmistakably has no relevance *whatsoever* to the allegations in a complaint or denials/defenses in an answer, it should be produced along with the other relevant sections." (emphasis in original)); *Beverage Distribs., Inc. v. Miller Brewing Co.*, No. 2:08-CV-1112, 2010 WL 1727640, at *4 (S.D. Ohio Apr. 28, 2010) ("[R]edaction of otherwise discoverable documents is the exception rather than the rule[.]"); *Orion Power Midwest, L.P. v. Am. Coal Sales Co.*, No. 2:05-cv-555, 2008 WL 4462301, *2 (W.D. Pa. Sept. 30, 2008) (Rule 34 requires parties to produce documents as they are kept in the ordinary course of business and "[t]here is no express or implied support" in the Rules of Civil Procedure for a procedure allowing "a party [to] scrub responsive documents of non-responsive information.") .



Mr. Rich and his family are "central to the plaintiff's proof in his libel action." *Zerilli v. Smith*, 656 F.2d 705, 713–14 (D.C. Cir. 1981) (Where "successful assertion of the privilege will effectively shield him from liability, the equities weigh somewhat more heavily in favor of disclosure."); *Carey v. Hume*, 492 F.2d 631, 632, 637 (D.C. Cir. 1974) ("civil litigation has its entitlements on proper occasion to the pursuit of truth wherever it may be found" especially in a defamation case where "the identity of the alleged sources" on which the defendant relied "would logically be an initial element in the proof" of the plaintiff's claim); *Lee v. U.S. Dep't of Justice*, 287 F. Supp. 2d 15, 18, 24 (D.D.C. 2003), *aff'd sub nom. Lee v. Dep't of Justice*, 413 F.3d 53 (D.C. Cir. 2005) (no protection where "the information sought is 'of central importance'" to Plaintiff's case and any reasons  for concealing the basis of the "private, personal, and acutely hurtful information" published "do not outweigh [the plaintiff's] interest in having the evidence available for his use at trial"); D.C. Code § 16-4703 (three-prong test overriding shield).

Mr. Couch is obligated to search and produce any responsive information "stored in any medium" in his custody and control, including but not limited to those articulated above.  *See* Fed. R. Civ. P. 34(a)(1)(A).

The Production also fails to include communications that we know and/or believe exist. For example, the Production does not include a single email with: members of the AFM "team" (except as incidentally part of emails with Butowsky); Jack Burkman; Manuel Chavez (a.k.a., Defango); Detective Joseph Della Camera; Cassandra Fairbanks; Thomas Shoenberger; the individual who goes by Thin Blue Line; Malia Zimmerman; any individuals at the U.S. House or Senate; or current or former law enforcement or FBI investigators.  *Compare* Production, *with, e.g.*, MC000002 (email to E. Butowsky that includes communication from M. Couch to F. ████████████████████████████████████████████████); MC000004 (email to E. Butowsky that includes communication to Hannibal Moot and Truth In Government); MC000106 ("████████████████████████████████"); America First, YouTube, *Breaking Seth Rich Information Live with Matt Couch Bill Pierce and The Graham Cracker of AFMG* (Aug. 12, 2018), https://www.youtube.com/watch?v=u4ryiVb92x8&feature =youtu.be ("We met with people in the Rayburn building.  I personally met with them with an attorney named Ty Clevenger in April of 2018."); Dec. 24, 2017 email from T. Schoenberger to Ed Butowsky, M. Couch (mattcouch@af-mg.com), [Redacted for Personal Information - FRCP 5.2], *Ed, you were not kidding!!!*; August 2, 2018 email from M. Couch to J. Burkman (forwarding Mr. Rich's December 21, 2017 letter); Nov. 21, 2017 Twitter notification to M. Chavez; email from D.C. Medical examiner, *Rich inquiry* (posted on Twitter on Nov. 10, 2018 by M. Couch, https://twitter.com/RealMattCouch/status /1061496834357690369); MC000025 ████████████████████████ ██████████████████).



## IV.   DEFICIENCIES TO SPECIFIC RFPS

### REQUEST FOR PRODUCTION NO. 1

All Documents and Communications relating to any allegations in the Complaint in the above-captioned matter, including but not limited to (a) all Communications You have had with any person or entity named in the Complaint, including but not limited to all Defendants, The Washington Times, Admiral James A. Lyons, Cassandra Fairbanks, The Gateway Pundit, and Rod Wheeler and (b) all Communications relating to the Rich Family that You have had with any person or entity.

**PLAINTIFF'S RESPONSE:**

As addressed in the July 8 letter, RFP No. 1 requests "*all* Communications" Mr. Couch had with "*any* person or entity named in the Complaint" and "*all* Communications relating to the Rich Family" Mr. Couch had with "*any* person or entity." Yet Mr. Couch has produced only seven emails and two text messages chains, all with only Mr. Butowksy and Mr. Wheeler. His production is clearly deficient because, as discussed above, evidence from third parties proves that Mr. Couch has withheld Communications and Documents, including audio recordings, with other individuals which are responsive to this request. *See, e.g.,* MC000002 (email to E. Butowsky that includes communication from M. Couch to F. Whalen: ███████████████████████ ████████████████████████████████); MC000106 (██████████ ██████████); America First, YouTube, *Breaking Seth Rich Information Live with Matt Couch Bill Pierce and The Graham Cracker of AFMG* (Aug. 12, 2018), https://www.youtube.com/watch?v=u4ryiVb92x8&feature =youtu.be ("We met with people in the Rayburn building. I personally met with them with an attorney named Ty Clevenger in April of 2018."); Dec. 24, 2017 email from T. Schoenberger to Ed Butowsky, M. Couch (mattcouch@af-mg.com), ███████ [Redacted for Personal Information - FRCP 5.2] *Ed, you were not kidding!!!*; August 2, 2018 email from M. Couch to J. Burkman (forwarding Mr. Rich's December 21, 2017 letter); Nov. 21, 2017 Twitter notification to M. Chavez; email from D.C. Medical examiner, *Rich inquiry* (posted on Twitter on Nov. 10, 2018 by M. Couch, twitter.com/RealMattCouch /status/1061496834357690369); MC000025 (██████████████████████████ ███████████████████████). Furthermore, Mr. Couch's own Production indicates that it is incomplete even as to his communications with Mr. Butowsky. *See, e.g.,* MC000053 (Butowsky to Couch: ██████████████████████████████████████████████████; MC000134 (█████████████████████████████); MC000002 (███████████████████ █████████████████████████████████████████████)

### REQUEST FOR PRODUCTION NO. 2

All Documents and Communications supporting or refuting or otherwise referring to the facts upon which you relied for any Statement attributed to You in the Complaint, including but not limited to all Documents and Communications relating to any investigation into the truth or falsity of the Statements.

**PLAINTIFF'S RESPONSE:**

As discussed above, the Production includes only seven emails (all with Butowsky), two text messages (with Butowsky and Wheeler), and 11 standalone documents, including public social media postings, background checks, and what appears to be summaries of Mr. Wheeler's



"work." (MC000497–MC000514). In contrast, Mr. Couch has repeatedly boasted about having "hard factual evidence," including, as discussed, emails, text messages, recordings, voicemails, and other "documentation." July 8 letter at 2–3. Mr. Couch is obligated to produce that information, and Mr. Rich reserves all rights, including to preclude Mr. Couch from relying on any other information that he does not produce. *See* Fed. R. Civ. P. 37(b)(2)(A), (c)(1); *McNair v. D.C.*, 325 F.R.D. 20, 22 (D.D.C. 2018) (barring party from using documents not disclosed during discovery).

### REQUEST FOR PRODUCTION NO. 3

A complete copy of all Documents relating to Seth Rich and/or Aaron Rich that have at any time been posted to any websites or Social Media account under Your ownership, custody, or control, including but not limited to https://af-mg.com/ and https://www.americafirstmg.com/.

**PLAINTIFF'S RESPONSE:**

As discussed above, the Production is wholly deficient in that it does not include any, let alone a "complete copy," of Mr. Couch's Social Media. As far as the websites under his control, the Production includes 24 copies of articles from The DC Patriot. (MC000166–MC000485). Many of those documents are illegible and/or do not appear to be a "complete copy" of the content. It also does not appear to include all responsive articles: a simple search of "Seth Rich" on The DC Patriot indicates 8 pages (with on average 10 articles each). Likewise, the production does not include *any* articles about Mr. Rich, even though we know that such content did at one time exist and that RFP No. 3 requests all Documents that "have at any time been posted." *See, e.g.*, Matt Couch, *President Trump is inquiring about Seth Rich's Investigation*, America First Media Group, Oct. 27, 2017, af-mg.com/2017/10/27/president-trump-is-inquiring-aboutseth-richs-investigation/; Matt Couch, *Another Holiday Without a Son*, America First Media Group, Dec. 14, 2017, af-mg.com/2017/12/14/another-holiday-without-a-son/; *see also* Complaint ¶ 52. We recognize that Mr. Couch claims to have voluntarily removed some information about Mr. Rich from his Social Media and websites, but, as we repeatedly explained, that does not absolve him of the obligation to preserve and produce responsive materials. Mr. Rich remains willing to confer about withdrawing or limiting this request pending a mutually-agreeable stipulation, including as to the specific websites.

### REQUEST FOR PRODUCTION NO. 4

Mobile phone records sufficient to show all phone numbers and providers You used at any time since January 1, 2016 and all Documents, including mobile phone billing records, showing the calls You made or received since January 1, 2016 relating to the allegations in the Complaint.

**PLAINTIFF'S RESPONSE:**

The Production is facially deficient. It does not provide a single mobile phone record, let alone records sufficient to show all numbers Mr. Couch used since January 2016. Mr. Rich is entitled to know all phone numbers and providers that Mr. Couch used during the relevant time period in order to conduct adequate discovery. *Alexander v. F.B.I.*, 194 F.R.D. 305, 315 (D.D.C. 2000) (compelling production of certain individuals' telephone logs because plaintiff sought "Telephone records to determine who these key individuals contacted and worked with so they can discover all the facts").



**REQUEST FOR PRODUCTION NO. 5**

> All Documents and Communications concerning the steps You have taken to preserve Documents and Communications relevant to the lawsuit, including the Documents and Communications responsive to these Requests.

**PLAINTIFF'S RESPONSE:**

The Production is facially deficient. It does not provide a single document or communication regarding steps he has taken to preserve relevant information in this lawsuit. If there are no responsive documents, Mr. Couch must say so. *See* Fed. R. Civ. P. 37.

**REQUEST FOR PRODUCTION NO. 6**

> All Documents and Communications relating to any of Your responses to any discovery served or that will be served upon You in the above-captioned matter.

**PLAINTIFF'S RESPONSE:**

Mr. Rich addresses the deficiency of the Production in response to this Request in the response to Mr. Couch's interrogatory responses.

## V.   DEFICIENCIES TO SPECIFIC INTERROGATORIES

As explained in the July 8 letter, Mr. Couch violated the federal rules by not verifying his initial answers ("initial answers"). July 8 letter at 2. Mr. Rich's motion to compel, which the Court granted on July 31, 2019, stated:

> "In addition to requiring Couch and AFM to produce documents in response to the First RFP, Plaintiff asks the Court to require Couch and AFM to verify their interrogatory responses. *See* Fed. R. Civ. P. 33(b)(5) ('Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath.'); *Walls v. Paulson*, 250 F.R.D. 48, 52, 2008 WL 2175248 (D.D.C. 2008) (applying sanctions for failure to sign interrogatories because party 'apparently misinterprets the Federal Rules as optional. They are not. Rule 33(b)(5) could not be more clear . . .')."

*See* Dkt.71 at 9 n.10; *see also* Dkt. 75 at 5:11-12, 7/31/19 Minute Order. Instead of "verify[ing] [his] interrogatory responses," Mr. Couch provided an entirely new set of answers (the Supplemental Answers). Mr. Couch is not entitled to be rewarded with a "do over" for his own flouting of the federal rules (or his decision not to seek legal counsel until long after his answers were due). Accordingly, Mr. Rich will treat the Supplemental Answers for what they are: supplements to the initial answers. *Aird v. Ford Motor Co.*, 86 F.3d 216, 219, 224 (D.C. Cir. 1996) ("supplemental responses" as remedy to cure "inadequate" responses to interrogatories); Fed. R. Civ. P. 26(e) (party who "has responded to an interrogatory . . . must supplement or correct its disclosure or response" after learning "that in some material respect the disclosure or response is incomplete or incorrect").

———————————



Despite having waived objections (as discussed above), Mr. Couch provides objections in his Supplemental Answers that lack both merit and the specificity to which Mr. Rich is entitled as a matter of law.  Fed. R. Civ. P. 33(b)(4); *Equal Rights Ctr. v. Post Props., Inc.*, 246 F.R.D. 29, 35 (D.D.C. 2007).   Mr. Couch makes three general objections.   He asserts that the interrogatories: (1) are "vague, ambiguous, overbroad, unduly burdensome and oppressive" and seek information "not relevant or reasonably calculated to lead to the discovery of admissible evidence" or that is "beyond that permitted by" the rules; (2) "contain words or phrases that are confusing or lacking in sufficient certainty"; and (3) seek privileged information.   It is impossible for Mr. Rich to address these threadbare objections.  As a general matter, the difference between the second category of objections and the "vague or ambiguous" objection is unclear.   Furthermore, the Interrogatories instruct: "Unless words or terms have been given a specific definition herein, each word or term used herein shall be given its usual and customary dictionary definition."  Interrogatories ¶ 9.  Mr. Couch must explain specifically what is "vague or ambiguous" or what "words or phrases" are "confusing or lacking" in order for Mr. Rich to assess whether he has made a good faith attempt to answer.  *See* Interrogatories ¶¶ 7–8.  Mr. Couch also has failed to explain what about the interrogatories is "burdensome and oppressive" in any way that would permit Mr. Rich to substantively reply.  Finally, Mr. Couch has "never described with any specificity what conversations [he] is not disclosing and why they are privileged," as he must.  *Byrd*, 1998 WL 429676, at *8.

Substantively, Mr. Couch's Supplemental Answers are universally deficient.  None of Mr. Couch's Supplemental Answers "fully" answer the Interrogatories despite the fact that he is legally required to do so.   *See*; *Antoine v. J.P. Morgan Chase Bank*, No. 1:08-cv-00615 (HHK)(AK), 2009 WL 10694779, at *3; *Byrd*, 1998 WL 429676, at *16; *cf. Houlahan v. World Wide Ass'n of Speciality Programs & Sch.*, No. 04-01161 (HHK)(AK), 2006 WL 8433976, at *3 (D.D.C. Oct. 27, 2006).  His Supplemental Answers are incomplete and evasive.  Mr. Rich reserves the right to recover fees and seek sanctions, including to preclude Mr. Couch from using any evidence not disclosed.  *See* Fed. R. Civ. P. 37(a)(4), (b)(2)(A) ("an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond" and court "may issue further just orders"); *Aird*, 86 F.3d at 224; *McNair*, 325 F.R.D. at 22 (barring plaintiff from using documents not disclosed during discovery because she "provided incomplete interrogatory answers and no records"); *Escamilla*, 2015 WL 4245868, at *5 ("Responses must be 'true, explicit, responsive, complete, and candid'" (citation omitted)); *Lebron v. Powell*, 217 F.R.D. 72, 76 (D.D.C. 2003) (party and counsel have a duty to examine documents and make sure they do not make any "discovery responses to interrogatories . . . incomplete or incorrect"); *Bradshaw v. Vilsack*, 286 F.R.D. 133, 137 (D.D.C. 2012) (sanctions in part based on "interrogatory responses were blank, incomplete, or non-responsive"); *Equal Rights Ctr*, 246 F.R.D. at 33 (answer that is "inadequate, vague, cryptic, evasive, and completely lacking in the candid disclosure required of the parties" fails to "completely and fully address the question asked of it").

Relatedly, and as referenced below and generally in Mr. Rich's July 8 letter, Mr. Rich's Request for Production No. 6 asks for: "All Documents and Communications relating to any of Your responses to any discovery," including interrogatories and requests for admission, "served or that will be served upon You in the above-captioned matter."  Mr. Couch's Production does



not appear to include materials that relate to a number of the responses to interrogatories.  Mr. Couch must either specifically confirm that no such material exists on a response-by-response basis, supplement his Production to include those materials, or be prohibited from relying on that material for his defense.  *See Payne v. D.C.*, 741 F. Supp. 2d 196, 222 (D.D.C. 2010), *aff'd sub nom. Payne v. D.C. Gov't*, 722 F.3d 345 (D.C. Cir. 2013) ("[F]ailure to produce evidence in discovery generally requires exclusion of that evidence from the Court's consideration."); *Covad Commc'ns Co. v. Revonet, Inc.*, 258 F.R.D. 17, 20 (D.D.C. 2009) (requesting party has the "right to hear" what opposing party "intends to use" and if the latter "does not have any such information" then the former "is entitled to know that as well"); *Fonville*, 230 F.R.D. at 45 ("If defendant has, in fact, produced all available communications, defendant should supplement its responses to reflect this fact.").

### INTERROGATORY NO. 1

Describe in detail all Communications You have had with Butowsky, including but not limited to: when each such Communication occurred; if in person, where each such Communication occurred; if not in person, by what methods each such Communication occurred; how and by whom each such Communication was initiated; and what was said by whom during each such Communication. For avoidance of doubt, Your answer to this interrogatory shall include details with respect to: the first conversation You had with Mr. Butowsky; any Communications You had with Mr. Butowsky prior to the August 15, 2017 Periscope as described in the Complaint in paragraphs 39-43; discussions related to the publication and/or retraction of The Washington Times article as described in the Complaint in paragraphs 70-75; conversations about the letter Mr. Rich sent to You personally ("Mr. Rich's Letter") that you read aloud during a January 17, 2018 Periscope (as described in the Complaint in paragraph 69), and during which You stated "that was Ed trying to call"; and any meeting(s) You attended at Defendant Butowsky's residence in Texas at which Thomas Shoenberger, Manuel Chavez, and perhaps others were present.

**Supplemental Answer**

Defendant hereby incorporates the General Objections stated above as if set forth in full herein. Defendant objects to this Interrogatory as overbroad and seeking irrelevant information. Subject to the foregoing objection, Defendant first spoke to Ed Butowsky in August of 2017 and spoke to him twice before the August 15, 2017 periscope. Defendant does not recall all the details of those two conservations. Defendant remembers that Ed informed him: that Ed knew Seth and Aaron had leaked DNC emails to Wikileaks; that Ed had had discussions with Mary & Joel Rich who had informed him they knew what Seth and Aaron had done but wanted Seth's murder solved; that Aaron had received money from Wikileaks; that Ed had offered to cover the costs of a private investigator to research Seth's murder and was surprised when parents the parents accepted his offer; that the parents had interviewed a number of potential investigators and then chose Rod Wheeler; that Ed and Rod were at odds, but that Ed thought Rod had done a good job in his investigation.

Defendant has never had any communications with anyone at The Washington Times.  Defendant does not recall the details of any specific communication about the publication of the Washington Times article. Defendant does not remember the specifics of any conversations about the article after it was published, except that conveyed to various people that he was upset he had not received credit for his work on the Seth Rich murder investigation. Defendant does not recall the specifics of any conversation regarding the retraction of the article, other than that he may have used a profanity to describe the decision taken by the Washington Times. The only communication Defendant recalls with Ed about the letter Aaron sent him was Ed saying to him over the phone that Ed did not feel that the letter was written by Aaron himself, but had been drafted by Brad Bauman.

Defendant attended one meeting in September of 2017 at Ed Butowsky's house in Plano, Texas. Defendant took Josh Flippo with him. Defendant did not know Thomas's last name until the third-party subpoenas were issued. Defendant knew Manny as Defango and had heard of him from his online postings. Defendant did not know either of these two until the meeting at Ed's home. Defendant went to Ed's home because Ed said he had information on Seth Rich. Defendant gave an update on his investigation of Seth Rich. Ed discussed



> unrelated investigations he had worked on in the past. The only things Defendant remembers Ed saying about Aaron Rich is that Ed was adamant that Aaron was involved in the leak of emails with his brother, that Aaron had received money from Wikileaks and that the parents knew what their boys had done.
>
> After the meeting in September, Defendant had a phone conversation with Ed in December of 2017 at which Ed told Defendant that he had first heard of Aaron and Seth's involvement in the leak of the DNC emails from Ellen Ratner, whose brother was Julian Assange's attorney.
>
> After Aaron's lawsuit was filed, Defendant did not know whether he should communicate with Ed, who tried to reach him a number of times, but Defendant did not return his call. Defendant has recently discussed the possibility of joint representation with Ed.
>
> In addition, Defendant and Ed have exchanged a number of emails and text messages that have been separately produced.

### a.   Plaintiff's Response To Supplemental Answer To Interrogatory No. 1

Mr. Couch's Supplemental Answer to Interrogatory No. 1 is deficient and contrary to the local rules, including because it incomplete and non-responsive.  To the extent Mr. Couch plans to rely on any conversations with Mr. Butowsky in his defense, Mr. Rich is entitled to know that now, or seek to available remedies related to any statements not included in Mr. Couch's Answer. *See Payne*, 741 F. Supp. 2d at 222 ("[F]ailure to produce evidence in discovery generally requires exclusion of that evidence from the Court's consideration.").

*First*, the Supplemental Answer to Interrogatory No. 1 does not describe in any detail or even address the most fundamental parts of the request, namely "where each such Communication occurred; if not in person, by what methods each such Communication occurred; how and by whom each such Communication was initiated; and what was said by whom during each such Communication." *See Lowe v. D.C.*, 250 F.R.D. 36, 41 (D.D.C. 2008) (responding to interrogatory asking to "identify" and "describe in detail" is insufficient if it "does not provide the details requested" and instead offers only generalities).  Nowhere in his Supplemental Answer does Mr. Couch state who initiated the Communications or, for the most part, what anyone *other than Mr. Butowsky* said.  Mr. Couch claims to "not recall" or "not remember" at least four separate conversations, and it is unclear whether he has even attempted to refresh his recollection.  For example, he does not specify the date on which he first spoke with Mr. Butowsky (or state where that communication occurred, the method of communication, or who initiated the communication), but a simple review of the very limited Production shows that ████████████████████████████████████████████████████████ MC000008.

Beyond even a failure to provide foundational details, Mr. Couch's response does not remotely "describe" the communications.  *See* Oxford Dictionary, https://www.lexico.com/en/definition/describe ("Give a detailed account in words of.").  For example, Mr. Couch alludes to conversations about the publishing of the Washington Times article and its retraction, but does not provide *any* information about those conversations, including the dates, method of communication, participants, or who said what.  He says that he "conveyed to various people that he was upset he had not received credit for his work on the Seth Rich murder investigation" and that "he may have used a profanity to describe the decision taken by the Washington Times."  Instead of describing the alleged conversations in any sort of detail, Mr. Couch provides an Answer that is "inadequate, vague, cryptic, evasive, and completely lacking in the candid disclosure required of the parties." *Equal Rights Ctr.*, 246 F.R.D. at 33.  Mr. Rich is entitled all



details related to the conversations between Mr. Couch and Mr. Butowsky. *Caudle v. D.C.*, 263 F.R.D. 29, 37 (D.D.C. 2009) (insufficient to refer to "unnamed" individual but not "identify these persons"); *Pearce v. E.F. Hutton Grp., Inc.*, 117 F.R.D. 480, 481 (D.D.C. 1987) ("The purpose of requiring a listing of persons with knowledge, even early on during the discovery phase in response to interrogatories, is to allow the opposing party to interview or depose them, if desired, or to conduct other investigation, and to learn the facts before discovery closes."); *see also Covad Commc'ns Co.*, 258 F.R.D. at 22; *Antoine*, 2009 WL 10694779, at *3. If Mr. Couch cannot provide a full response, including by reviewing his own Production or materials in his possession or speaking with his own "team" members, then he must "specify the efforts made" to do so. *O'Rourke v. Audio Stats Educ. Servs., Inc.*, No. 85-2768, 1987 WL 11998, at *1 (D.D.C. May 26, 1987).

*Second*, it is *necessary* but not *sufficient* to detail the conversations that the interrogatory specifically references, yet those are the *only* Communications that Mr. Couch addresses. In sum, Mr. Couch claims that the *only* times he spoke with Mr. Butowsky were: (1) twice in August 2017; (2) in September 2017 at Butowsky's house; (3) one time in December 2017 about Ellen Ratner; (4) maybe one conversation in December 2017 or January 2018 when Mr. Rich sent him a letter; (5) maybe at some point around the time of the Washington Times article (March 2018); and (6) maybe some time after the retraction of the Washington Times article (October 2018). The Answer to Interrogatory No. 1 does not describe any other Communications with Mr. Butowsky, even though documents show, including in Mr. Couch's own Production, that the two had additional conversations besides those addressed in the Supplemental Answer. *Compare Lebron*, 217 F.R.D. at 76 (party and counsel have a duty to examine documents and make sure they do not make any "discovery responses to interrogatories . . . incomplete or incorrect"), *with e.g.*, MC000011-12 (Nov. 21, 2017: ███████████ MC000012 (Nov. 26, 2017: ███████████); MC000021 (Dec. 12, 2017: ███████████); MC000026 (Dec. 22, 2017: ███████████ MC000031 (Dec. 23, 2017: ███████████ MC000049 (Jan. 17, 2018: ███████████ MC000054 (Jan 27, 2018: "███████████; MC000073 (Feb. 20, 2018: ███████████ MC000104–05 (March 20, 2018: ███████████; ███████████; MC000125 (Apr. 14, 2019: "███████████).

*Third*, Mr. Couch does not appear to have complied with Mr. Rich's Request for Production No. 6, which asks for all Documents and Communications related to the Supplemental Answers. Mr. Couch references a number of conversations, some he claims occurred on the phone and others with an unspecified method of communication (which is deficient for reasons discussed above). To the extent that he has any written Communications or Documents related to any conversations with Mr. Butowsky, including those he mentions in his Supplemental Answer, he is obligated to produce them. His Production also does not include a



single Document or Communication that references, in any way, communications about the September 2017 meeting or its participants even though, as discussed above, that material appears to exist and it defies credulity that Mr. Couch traveled to Dallas, Texas for a meeting with nearly a dozen individuals and never produced a single related written Communication or Document.

### b. Plaintiff's Response To Untimely Objections To Interrogatory No. 1

Mr. Couch's objections lack the specificity required to assert proper objections.  Fed. R. Civ. P. 33(b)(4); *Equal Rights Ctr.*, 246 F.R.D. at 35.  It is unclear what is "overbroad" or "irrelevant" about the interrogatory, especially given that the sole basis for the relationship between Mr. Couch and Mr. Butowsky appears to be the conspiracy at issue in this litigation. Furthermore, even if Mr. Couch's relevance objection was valid (which it is not), that would not justify silence as to the requested information. *See Summers v. Howard Univ.*, 374 F.3d 1188, 1193 (D.C. Cir. 2004).

### INTERROGATORY NO. 2

Identify and describe in detail all evidence on which You relied to support any and all Statements attributed to You in the Complaint, including that Mr. Rich was involved in the theft of DNC emails and the transmittal of said emails to WikiLeaks in exchange for money, and provide all details regarding the attempts, if any, You took to examine or independently confirm the veracity of such evidence.

**Supplemental Answer**
Defendant hereby incorporates the General Objections stated above as if set forth in full herein. Defendant further objects to this Interrogatory as overbroad and seeking irrelevant information. Defendant further objects that many statements in the Complaint speak for themselves. Subject to the foregoing objections, relevant statements in the complaint were based on communications with Ed Butowsky discussed above; an audio recording of Seymour Hirsch; communications with a former navy intelligence officer who has requested anonymity; Rod Wheeler; and publicly available information.

Ed Butowsky is a respected wealth manager with a history of breaking important news stories. Seymour Hersh is one of the great investigative journalists in American history who has won two National Magazine Awards and five George Polk Awards, and was awarded the Pulitzer Prize for his reporting on the My Lai massacre in Vietnam. Rod Wheeler is a career Washington D.C. police officer ideally placed to assist in the investigation of Seth Rich's murder who was also chosen by the family. Defendant subsequently learned that Ellen Ratner and Kim Dotcom possess additional information corroborating his reporting. Defendant has also learned that Adam Carter confirms the leaked DNC emails were locally downloaded and not remotely hacked. Defendant is also aware that Christopher Steele's "dossier" asserts that DNC insiders were involved in the leak of Wikileaks emails.

### a. Plaintiff's Response To Supplemental Answer To Interrogatory No. 2

Mr. Couch's Supplemental Answer to Interrogatory No. 2 does not fully answer the interrogatory and is non-responsive.  Fully responding to Interrogatory No. 2 means providing, in detail, every single basis for Mr. Couch's statements.  Instead, Mr. Couch provides a Supplemental Answer that is "inadequate, vague, cryptic, evasive, and completely lacking in the candid disclosure required of the parties" and "fails to completely and fully address the question asked of it."  *Equal Rights Ctr.*, 246 F.R.D. at 33.  It is facially obvious that Mr. Couch does not fully respond to Interrogatory No. 2 because he neither identifies nor even attempts to "describe in all detail all evidence" on which he relied.  *See* Oxford Dictionary at https://www.lexico.com /en/definition/identify (defining identify: "Establish or indicate who or what (someone or something) is"); Oxford Dictionary at https://www.lexico.com/en/definition/describe (defining



describe: "Give a detailed account in words of"). Mr. Couch generally lists five categories of "evidence" without indicating what that evidence actually is: "an audio recording of Seymour Hirsch" [*sic*], "communications" with an unnamed source, Rod Wheeler, and "publicly available information."  None of these vague and generalized terms "[e]stablish or indicate who or what [ ]someone or something[ ] is" and make it impossible for Mr. Rich to test the reasonableness of Mr. Couch's reliance on these statements, which is at the heart of his claims and Mr. Couch's defenses.  Simply naming these buckets of "evidence" does not remotely provide "a detailed account in words of" the actual "evidence" on which Mr. Couch relied when he repeatedly and incessantly spread statements about Mr. Rich and his family.  In sum, Mr. Couch's Supplemental Answer to Interrogatory No. 2 is wholly deficient because it does not identify the who, when, or where, or provide any sort of detail that would come close to being "fully" responsive to the interrogatory.

Mr. Rich is entitled details of all of Mr. Couch's so-called "evidence", including the identity of the "former navy intelligence officer who has requested anonymity." *Caudle*, 263 F.R.D. at 37–38 (insufficient to refer to "unnamed" individual but not "identify these persons"); *Pearce*, 117 F.R.D. at 481 ("The purpose of requiring a listing of persons with knowledge, even early on during the discovery phase in response to interrogatories, is to allow the opposing party to interview or depose them, if desired, or to conduct other investigation, and to learn the facts before discovery closes."); *see also Covad Commc'ns Co.*, 258 F.R.D. at 22; *Antoine*, 2009 WL 10694779, at *3.  For the reasons discussed above with respect to any attempt to claim source privilege, Mr. Couch cannot withhold the identity just because of one source's "requested anonymity," especially when Mr. Couch is attempting to use that as one of the scant pieces of "evidence" on which he claims to have relied for his statements about Mr. Rich and his family.

As discussed at length in the July 8 letter (at 2–3), and in Mr. Rich's Motion to Compel (Dkt. 71 at 6–9), Mr. Couch has boasted about having "hard factual evidence" and "documentation," including "so many recordings" and "so many text messages, so many voicemails, so many emails" and "phone logs," that support the statements he has made about Mr. Rich and his family.  Mr. Couch must either detail all of that evidence here, as the Interrogatory asks for and the rules require, or state that he does not, in fact, have any actual "evidence" besides conversations with three individuals (Mr. Butowsky, Mr. Wheeler, and an unnamed person) and publicly available information.

Mr. Couch's Supplemental Answer to Interrogatory No. 2 also is non-responsive. It does not identify nor describe the steps Mr. Couch "took to examine or independently confirm the veracity of such evidence."  Instead, it provides banalities about the biographies of certain individuals on whom Mr. Couch relies.  If Mr. Couch's answer is that he did not examine or independently confirm the veracity of what he heard, he must say so. *Fonville*, 230 F.R.D. at 45 ("If defendant has, in fact, produced all available communications, defendant should supplement its responses to reflect this fact.").

Finally, Mr. Couch does not appear to have complied with Mr. Rich's Request for Production No. 6, which asks for all Documents and Communications related to the



Supplemental Answers.  Mr. Couch references communications and audio recordings that his Production does not appear to include.

### b.  Plaintiff's Response To Untimely Objections To Interrogatory No. 2

Mr. Couch's objections lack the specificity required to assert proper objections.  Fed. R. Civ. P. 33(b)(4); *Equal Rights Ctr.*, 246 F.R.D. at 35.  It is unclear what is "overbroad" or "irrelevant" about the interrogatory, since the basis for Mr. Couch's statements about Mr. Rich are central to Mr. Rich's claims and Mr. Couch's defenses.  Furthermore, even if Mr. Couch's relevance objection was valid (which it is not), that would not justify silence as to the requested information.  *See Summers*, 374 F.3d at 1193.  The objection that the "statements in the Complaint speak for themselves" is not a proper legal objection and, even if it were, it is inapposite to Interrogatory No. 2, which asks for *all* evidence relied on for making the statements.  *Sigmund v. Starwood Urban Retail VI, LLC*, 236 F.R.D. 43, 46 (D.D.C. 2006) ("'[O]bjections that documents . . . "speak for themselves" . . . are improper[.]'" (citation omitted)).  If any statement encapsulates the entire basis on which Mr. Couch relied for making it, he must say so.

### INTERROGATORY NO. 3

| |
|---|
| Explain whether, and if so when and why, You began to doubt the evidence described in the foregoing Interrogatory. Your answer to this Interrogatory shall address any information provided to You by Butowsky and shall specifically address whether and how You took into account Butowsky's role in the publication of the now-retracted May 17, 2017 Fox News article about Seth Rich and the now-retracted article in The Washington Times as described in the Complaint in paragraphs 70-75. |
| **Supplemental Answer** |
| Defendant hereby incorporates the General Objections stated above as if set forth in full herein. Defendant further objects to this Interrogatory as seeking a legal conclusion. |
| Defendant further object to this Interrogatory as vague and ambiguous. Subject to the foregoing objections, Defendant refers to his response to Interrogatory No. 2. |

### a.  Plaintiff's Response To Supplemental Answer To Interrogatory No. 3

Mr. Couch's Supplemental Answer to Interrogatory No. 3 is a non-answer: it does not attempt to answer the interrogatory, and instead refers to an inapposite interrogatory and answer. Interrogatory No. 2 requests a detailed accounting of the "evidence" on which Mr. Couch relied; Interrogatory No 3 asks "whether, and if so when and why," Mr. Couch began to doubt any of that evidence.  Not only does Interrogatory No. 2 not ask the same question as Interrogatory No. 3, Mr. Couch's Supplemental Answer to No. 2 does not remotely answer (let alone "fully" answer) what is asked in Interrogatory No. 3.   Mr. Couch must answer the questions Interrogatory No. 3 asks, rather than provide an evasive response pointing to another, non-responsive answer.

### b.  Plaintiff's Response To Untimely Objections To Interrogatory No. 3

Interrogatory No. 3 does not ask for a legal conclusion.  It asks for whether and when Mr. Couch—who represents that he is an "investigator"—subjectively began to "doubt" the "evidence" he has boasted about having.  An interrogatory is not objectionable when it asks for information that "relates to a fact or the application of law to fact."  *See* Fed. R. Civ. P. 33(a)(2).

———————————



**INTERROGATORY NO. 4**

Identify and describe in detail all evidence of which You are or have been aware that contradicted and/or discredited the Statements attributed to You in the Complaint, and provide details regarding the attempts, if any, You took to examine such evidence. Your answer to this interrogatory shall specifically address whether and how You considered: Mr. Rich's Letter denying the Statements; Mr. Rich's decision to file a lawsuit contesting the truth of Your Statements; various retractions of statements similar to Your Statements including but not limited to those by The Washington Times, InfoWars, and Jerome Corsi; the conclusions of the Intelligence Community regarding Russia's responsibility for the theft and hack of DNC emails; and the finding by Special Counsel Robert Mueller that WikiLeaks and Julian Assange "implied falsely" that Mr. Rich's brother, Seth, had been the "source of the stolen DNC emails."

**Supplemental Answer**

Defendant hereby incorporates the General Objections stated above as if set forth in full herein. Defendant further objects to this Interrogatory as improperly attempting to shift Plaintiff's burden of proof to him. Defendant further objects to this Interrogatory as overbroad and unduly burdensome. There are vast amounts of unreliable and incorrect information purporting to contradict the statements he has made. Defendant does not believe this information discredits the statements he has made.

### a. Plaintiff's Response To Supplemental Answer To Interrogatory No. 4

Mr. Couch's Supplemental Answer to Interrogatory No. 4 is a non-responsive non-answer: it does not attempt to answer the interrogatory. Instead of identifying and describing in detail *any* evidence of which Mr. Couch is aware that discredited or contradicted the statements he has made about Mr. Rich (which is what the interrogatory asks him to answer), Mr. Couch responds that there are "vast amounts of unreliable and incorrect information" and "does not believe this information discredits the statements he has made." That is not what Interrogatory No. 3 asks. Mr. Couch is obligated to "establish or indicate" (i.e., "identify") and "give a detailed account in words of" (i.e., "describe") the "evidence" of which he is aware that contradicts his statement. Mr. Couch also does not explain "when and how" he considered *any* of the specific information that Interrogatory No. 4 specifically states his answer "shall address." He further must "provide details regarding" his own attempts to "examine such evidence." If Mr. Couch's answer is that he did not "examine" any evidence that contradicted and/or discredited the statements he made about Mr. Rich, he must say so. *Fonville*, 230 F.R.D. at 45.

### b. Plaintiff's Response To Untimely Objections To Interrogatory No. 4

The law requires Mr. Couch to produce all of the bases on which he plans to defend his actions, including the affirmative defense of truth. Fed. R. Civ. P. 37(c)(1); *Payne*, 741 F. Supp. 2d at 222; *Byrd*, 1998 WL 429676, at *8 ("[P]robing the factual basis for an opponent's defenses is an appropriate use of discovery."); *see also Houlahan v. Freeman Wall Aiello*, 15 F. Supp. 3d 77, 87 (D.D.C. 2014) (defensive summary judgment burden in defamation case falls on defendant); *World Wide Ass'n of Speciality Programs & Sch.*, , 2006 WL 8433976, at *3 ("information regarding Defendants' knowledge and state of mind" is relevant to Defendant's truth defense); *Weyrich v. New Republic, Inc.*, 235 F.3d 617, 628 (D.C. Cir. 2001) ("state of mind" requisite for false light); *Pearce*, 1988 WL 57259, at *1 ("[N]egligent defamation" may "include, among other elements, a failure to pursue further investigation; unreasonable reliance on sources; unreasonable formulation of conclusions, inferences, or interpretation; or unreasonable screening or checking procedures."). If Mr. Couch does explain why he chose to ignore evidence directly contradicting his own statements—including from the Intelligence Community—Mr. Rich reserves the right to preclude Mr. Couch from relying on any such



Matthew Couch
October 8, 2019

testimony or evidence including at summary judgment.  *See* Fed. R. Civ. P. 37(c)(1); *McNair*, 325 F.R.D. at 22.

### INTERROGATORY NO. 5

| |
|---|
| State whether You continue to believe, and if so the basis for Your belief, that Plaintiff Aaron Rich 1) was involved in the theft of the DNC emails and 2) transmitted said emails to WikiLeaks in exchange for money from WikiLeaks. |
| **Supplemental Answer** |
| Defendant hereby incorporates the General Objections stated above as if set forth in full herein. Defendant further objects to this Interrogatory as cumulative and duplicative of Interrogatory No. 4. Subject to the foregoing objections, Defendant continues to believe that Plaintiff was involved in the leak of DNC emails to Wikileaks and received compensation for said emails. The basis for Defendant's belief is set forth in his response to Interrogatory No. 2. |

    **a.  Plaintiff's Response To Supplemental Answer To Interrogatory No. 5**

Mr. Couch's Supplemental Answer to Interrogatory No. 5 is deficient because it refers to two other Supplemental Answers (Interrogatory No. 4 and Interrogatory No 5.), both of which are deficient for the reasons previously discussed.

    **b.  Plaintiff's Response To Untimely Objections  To Interrogatory No. 5**

Interrogatory No. 5 is not "cumulative and duplicative of Interrogatory No. 4." Interrogatory No. 4 asks Mr. Couch to "identify and describe in detail all evidence" of which he is "aware that contradicted and/or discredited" the Statements he has made about Mr. Rich and his brother and provide attempts to examine the evidence.  By contrast, Interrogatory No. 5 asks for whether Mr. Couch continues to believe that his statements about Mr. Rich are accurate. Even if the interrogatories were duplicative (which they are not), Mr. Couch would be obligated to "fully" answer the Interrogatory, which he has not done.

### INTERROGATORY NO. 6

| |
|---|
| Quantify and explain viewing metrics for all Your Statements on Social Media from the date of original publication through today, including reach, count, page visits, posts, shares, time spent, and impressions. |
| **Supplemental Answer** |
| Defendant hereby incorporates the General Objections stated above as if set forth in full herein. Defendant further objects object to this Interrogatory as irrelevant. |

    **a.  Plaintiff's Response To Supplemental Answer To Interrogatory No. 6**

Mr. Couch's Supplemental Answer to Interrogatory No. 6 is facially deficient because it does not even attempt to answer the interrogatory—the Supplemental Answer in fact does not include any statement beyond objections and, as discussed immediately below, he has provided no objection that would justify silence.

—————————————



Matthew Couch
October 8, 2019

### b.  Plaintiff's Response To Untimely Objections  To Interrogatory No. 6

Publication to third parties and the extent of harm (including as measured by the number of views) could not be more relevant in a defamation action—they are, in fact, elements of proof in a defamation action. *Zimmerman v. Al Jazeera Am., LLC*, 246 F. Supp. 3d 257, 273 (D.D.C. 2017). Furthermore, even if Mr. Couch's relevance objection was valid (which it is not), that would not justify silence as to the requested information. *See Summers*, 374 F.3d at 1193.

## VI.     Failure To Comply With Terms of ESI Stipulation

The Production fails to comply with the terms to which the parties agreed in the ESI stipulation, and Mr. Rich reserves the right to move to recover fees associated with the resulting increased costs.  Mr. Couch produced materials as a single PDF without any document breaks or metadata, despite having agreed to produce all materials in TIFF or native format. Dkt. 36 ¶¶ 6, 9–10; *id.* Ex. A at 1–5.  As a result, Mr. Rich was required to bear the expense of processing and converting the PDFs into the agreed-upon production format and add the missing metadata.  The Production also does not preserve or in any way cross-reference the parent-child relationship, which is exacerbated by the lack of metadata.  *Compare* Dkt. 36 Ex. A 5–6 ("Parent/Child"), *with, e.g.*, MC000497–MC000514.  As discussed previously and above, we believe it would be beneficial for the parties to reach agreement on a proper, professional collection of Mr. Couch's materials, including to ensure compliance with the ESI Stipulation.

## VII.    Unexplained Confidentiality Designations

Mr. Couch does not designate any specific materials in the Production or any of the answers.  But Mr. Couch sent a separate, follow-up email stating: "Just to be clear: some of the documents in the production may need to be designated as confidential, not the documents identified on the privilege log."  Aug. 26, 2019 email from M. Couch to M. Gottlieb, M. Governski, J. Riley, P. Harvey, cc'ing E. Quainton, *Document Production*.  Mr. Couch must specify which, if any, of the actual documents in his production he is designating and, if any, what designation he is applying.  Mr. Rich respectfully requests Mr. Couch do so promptly so as to ensure proper handling and marking of the documents, especially in anticipation of court filings and depositions.

BOIES SCHILLER FLEXNER LLP


/s/ Meryl C. Governski
Meryl C. Governski