# EXHIBIT 17
# REDACTED

**Eden P. Quainton**

# Quainton Law, PLLC

**1001 Avenue of the Americas, 11ᵗʰ Floor**
**New York, NY 10018**

**33 Tyson Lane**
**Princeton, NJ 08540**
_____

**Telephone (212) 813-8389; (609) 921-0529**
**Fax (212) 813-8390**
**Cell: (202) 360-6296**
**Email equainton@gmail.com**

October 25, 2019

Meryl C. Governski, Esq.
Boies, Schiller & Flexner, LLP
1401 New York Avenue N.W.
Washington DC, 20005

Ms. Governski:

This letter responds to your letters dated October 8, October 11 and October 16, 2019, and your email dated October 21, 2019.  I will take each of these in turn.

I.      October 8 Letter.

    A.     General points.

        1.      Waiver of Objections.   While the cases you cite are accurate as far as they go, you ignore the fact that Mr. Couch has been *pro se* until a short while ago.  Courts are indulgent towards *pro se* litigants, and even have a duty to relax procedural requirements for *pro se* parties. *Hilska v. Jones*, 217 F.R.D. 16, 22 (D.D.C. 2003); *see also Ortiz v. Cornetta*, 867 F.2d 146, 148 (2d Cir.1989).  Here, where many of your requests are vague, ambiguous, irrelevant, unduly burdensome and disproportionate to the needs of the case, no interest of justice would be served by barring Mr. Couch from raising valid objections.

        2.      Burden of proof.  Running throughout your comments is a fundamental misapprehension of Mr. Rich's burden.  Mr. Rich must prove the falsity of Mr. Couch's allegedly defamatory statements, even if, which we contest, Mr. Rich is a private figure, because

of the issues of obvious public concern in this case. *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 776 (1986)(U.S. constitution requires private plaintiff to prove falsity of defendant's statements on a matter of public interest).  None of the vast amount of discovery Mr. Rich is seeking in this case can overcome his threshold burden of proving the falsity of any of Mr. Couch's statements, when Mr. Rich's only "proof" are his own self-serving statements.  Mr. Rich's compliance with his own discovery obligations will of course weigh in whether his statements have any credibility.

       3.   <u>Privilege Log</u>.  Mr. Couch will be updating his privilege log to assert his journalist's source privilege with respect to various items in his possession.  Mr. Couch is a legitimate independent media voice, as entitled to source privilege to protect the identity and safety of his sources and confidential material communicated to him as are "established" news outlets.  Particularly in today's media world, in which independent voices provide a vital counterweight to the "groupthink" of corporate media, permitting Internet and other independent media personalities to assert source privilege is critical to the healthy functioning of the marketplace of ideas.  *See Protecting the New Media: Application of the Journalist's Privilege to Bloggers*, 120 Harv. L. Rev. 996, 997 (2007)(noting successful application of constitutional privilege to independent media); *see also Branzburg v. Hayes*, 408 U.S. 665, 725–26 (1972)(Stewart, J., dissenting)("reporter's constitutional right to a confidential relationship with his source stems from the broad societal interest in a full and free flow of information to the public. It is this basic concern that underlies the Constitution's protection of a free press, because the guarantee is not for the benefit of the press so much as for the benefit of all of us.")(citations omitted).

Nor would any assertion of a source privilege by Mr. Couch be futile.  You cite *Zerilli v. Smith*, 656 F.2d 705, 713−14 (D.C. Cir. 1981) for the proposition that where the assertion of the privilege would shield a defendant from liability, the equities weigh somewhat more heavily in favor of disclosure.   But this proposition has no application to the threshold issue in the present case—which is whether any allegedly defamatory statements made by Mr. Couch were false. That is for Mr. Rich, not Mr. Couch to establish.  Another case you cite, *Carey v. Hume*, 492 F.2d 631 (D.C. Cir. 1974), in fact illustrates why the balancing of competing societal interests favors Mr. Couch.  At issue in *Carey* was whether union headquarters had been burgled.  *Carey*, 492 F. 2d at 632.   Hume, the appellant, claimed to have eyewitness testimony that the headquarters had been burgled.  *Id.* at 633.   The Court held that Hume had to divulge his eyewitness sources because "it would be exceedingly difficult for appellee to introduce evidence beyond his own testimony to prove that he did not, at any time of day or night over an indefinite period of several weeks, remove boxfuls of documents from the UMW offices."  *Id.* at 636-637.

But here, Mr. Rich himself has relevant evidence bearing on the alleged falsity of Mr. Couch's claims: Seth Rich's laptop, cell phones, other devices and email accounts can be subjected to review and/or forensic analysis to determine whether they were used for communications with Wikileaks or any known intermediary of Wikileaks; Mr. Rich's bank records, credit card statements, electronic payment records and other financial information can be submitted to prove whether Mr. Rich received money from Wikileaks or Julian Assange; Mr. Rich's phone records and communications with other parties, such as Seth Rich's girlfriend, Kelsey Mulka, can establish whether Mr. Rich feared for Seth Rich's life; and the best evidence of whether Mr. Rich sought to restrict the private investigation into his brother's murder is the testimony of the allegedly pressured investigators themselves, not anything in the possession of

Mr. Couch's sources.  Other critical evidence, such as the FBI report or reports referencing Seth

Rich's communications with Wikileaks and identified by two different sources, Malia

Zimmerman and Seymour Hersh, are plainly not in Mr. Couch's possession or uniquely subject

to his knowledge.   In sum, the underlying rationale of *Carey* is inapposite in the present case.

        4.    AFM "team".  You repeatedly use the term AFM "team" but it is not clear

what your basis for seeking this information is.  You appear to believe that America First Media

Group, Inc. ("AFMG, Inc.") is a proper defendant in this case, despite your failure to name

AFMG, Inc. in the official caption to this case.  You have been informed that AFMG, Inc.is an

inactive corporation that does not have an EIN or a bank account and has never taken any

corporate action whatsoever.  It has one shareholder, Mr. Couch, and two officers, Mr. Josh

Filippo and Eddie Graham.  If this is what you mean by the AFM "team," that is one thing, but if

you are trying to impose liability on some unincorporated association, that is improper and no

such entity is – or can be – before the Court.

        Moreover, your request for information on the AFM "team" is a thinly veiled fishing

expedition.   You state:

> The Production also fails to include communications that we know and/or believe exist.
> For example, the Production does not include a single email with: members of the AFM
> "team" (except as incidentally part of emails with Butowsky); Jack Burkman; Manuel
> Chavez (a.k.a., Defango); Detective Joseph Della Camera; Cassandra Fairbanks; Thomas
> Shoenberger; the individual who goes by Thin Blue Line; Malia Zimmerman; any
> individuals at the U.S. House or Senate; or current or former law enforcement or FBI
> investigators.  Compare Production, with, e.g., MC000002 (email to E. Butowsky that
> includes communication from M. Couch to F. Whalen: "███████████████████████
> ████████████████████████████████████████
> ██████████████████████████████); MC000004 (email to E. Butowsky that includes
> communication to Hannibal Moot and Truth In Government); MC000106 (███████████
> ███████████████████████); America First, YouTube, Breaking Seth Rich
> Information Live with Matt Couch Bill Pierce and The Graham Cracker of AFMG (Aug.
> 12, 2018), https://www.youtube.com/watch?v=u4ryiVb92x8&feature =youtu.be ("We
> met with people in the Rayburn building.  I personally met with them with an attorney
> named Ty Clevenger in April of 2018."); Dec. 24, 2017 email from T. Schoenberger to

Ed Butowsky, M. Couch (mattcouch@af-mg.com), ███████████ Ed, you were not kidding!!!; August 2, 2018 email from M. Couch to J. Burkman (forwarding Mr. Rich's December 21, 2017 letter); Nov. 21, 2017 Twitter notification to M. Chavez; email from D.C. Medical examiner, Rich inquiry (posted on Twitter on Nov. 10, 2018 by M. Couch, https://twitter.com/RealMattCouch/status /1061496834357690369); MC000025 (████████ ████████████████████████████████████████████████████████).

It is totally unclear what any of this has to do with your claim that Mr. Couch defamed Mr. Rich by stating that Mr. Rich was involved in the leak of emails to Wikileaks, that Mr. Rich received compensation for his actions, that Mr. Rich knew his brother was in danger, and that Mr. Rich sought to prevent private investigators from inquiring into any links between Seth Rich's death and the DNC, Seth's employment, or Wikileaks.

This raises a separate issue as to whether you have any good faith basis to persist in attempting to sue AFMG, Inc.  While I do not represent AFMG, Inc., I have researched the issue and I have found no precedent for imposing intentional tort liability on an inactive corporation; indeed, a corporation's inactive status precludes it doing anything "intentional" at all.  Mr. Couch was not acting as the spokesperson of AFMG, Inc. because the company had no corporate activities to represent.  There was a separate loose grouping of individuals who sometimes used the term America First Media and even America First Media Group, but these individuals were never officers, employees or agents of the corporation.  To the extent you are operating on some implied agency theory, an inactive corporation cannot have implied agents, since by definition it cannot take the action necessary to authorize the conduct of putative agents. *See H. G. Smithy Co. v. Washington Med. Ctr., Inc.*, 374 A.2d 891, 893 (D.C. 1977).   If you wish to persist in your quixotic attack on AFMG, Inc. you must file a motion for permission to amend the caption and Mr. Couch reserves all his rights to oppose any such motion.

Notwithstanding the foregoing, Mr. Couch takes seriously your repeated threats of sanctions and has begun considering retaining counsel to defend AFMG, Inc.  The potential

liability of sanctions, legal fees and an ultimate judgment may force AFMG, Inc. to file a bankruptcy petition.

5.    ESI Search/Third-Party Vendor.    You have also suggested that we consider engaging a third-party vendor for discovery.  We have contacted a firm with which we have worked in the past, called On-Line Security.  *See* onlinesecurity.com/esi-consulting.  The best way forward may be to set up a conference call with them so that we can discuss the parameters of their work.  I concur with you that using a professional vendor is a sensible approach, although beyond Mr. Couch's resources.   Assuming we can agree on a professional vendor and appropriate cost-shifting, your objections with respect to social media, messaging and emailing applications should be addressed.

B.    Response to discovery obligations.

1.    Request for Production No. 1.  Your long dissertation on Mr. Couch's deficiencies is beside the point, since we have agreed we will provide discovery on a rolling basis.   I have provided you additional messages with Cassandra Fairbanks and, to my knowledge, there are no communications with The Washington times, The Gateway Pundit and Admiral Lyons.  Communications with Mr. Wheeler will be provided.  To the extent we engage a third-party vendor to assist with electronic discovery, you can be assured that Mr. Couch will cooperate.

2.    Request for Production No. 2.   As you know Mr. Couch's statements were based on recordings of Mr. Butowsky, Mr. Hersh, Mr. Wheeler, a confidential naval intelligence officer and other confidential sources.  Subject to the applicable source privilege, these will be provided to you.  But, again, the relevant inquiry is how Mr. Rich intends to prove the falsity of the allegedly defamatory statements and how any of these documents bear on his burden of

proof.  When Mr. Rich begins responding to Mr. Couch's discovery demands, it will be apparent whether he has a case or not.

       3.   <u>Request for Production No. 3</u>.  We have already agreed to execute a stipulation that largely renders this request moot.

       4.   <u>Request for Production No. 4</u>.  Mr. Couch's phone records are totally irrelevant to Plaintiff's case.  Unlike Mr. Rich's and Seth Rich's phone records – which are highly relevant to the core issues in this case – Mr. Couch's records have nothing to do with the truth or falsity of the allegedly defamatory statements about Mr. Rich's conduct and activities.  If Plaintiff's agenda is simply to go on a fishing expedition to hunt down everyone Mr. Couch may have ever spoken in order to attempt to pressure or silence them, this goes well beyond any permissible scope of discovery and is plainly objectionable.

       5.   <u>Interrogatories</u>.

          a.   <u>General</u>.

    First, Mr. Couch's verified interrogatory responses are not a "do over" of anything. They are the first verified responses he provided.  Unverified responses, as you yourself insisted, are without legal force.  The only verified responses at issue in this action are Mr. Couch's Interrogatory Responses provided to you on September 27, 2019 and his Supplemental Responses provided to you on October 9, 2019.

    Second, the Court's decision with respect to the Motion to Compel, which you reference on page 11 of your letter, was entered in total violation of the most basic due process rights of Mr. Couch.  The purpose of the stipulation that we entered was not was not to make any concessions with respect to the order, but to attempt to work out discovery issues without burdening the Court.  Despite the differences between us, I do believe we are making some

progress, although constant references to sanctions, such as the one you make on page 12 of your letter, are not constructive.  Mr. Couch has responded to your interrogatories to the best of his ability, both in his initial responses and his supplemental responses.  To the extent he can provide further clarification, he reserves the right to further supplement his responses.   But to dismiss his responses with threats and hyperbole (such labeling the responses "evasive. . . cryptic . . . blank") serves no useful purpose.

    b. <u>Response to Interrogatory No. 1</u>.  We have repeatedly made clear our position with respect to information sought in this Interrogatory. Mr. Couch will produce his recording of his conversations and communications with Mr. Butowsky and Mr. Wheeler; he has produced his communications with Ms. Fairbanks; Mr. Hersh's audio is publicly available; Ms. Zimmerman's article was also publicly available; and other sources are covered by an applicable journalist's privilege.  He has also truthfully described what he remembers of discrete conversations.  He cannot be expected to remember every detail of every conversation he had going back several years now.  In particular, it is not reasonable to expect him to remember the exact date of any particular conversation, who initiated the conversation, or exactly where the conversation occurred.  Mr. Couch was living a full life as a father and husband as well as an investigator and journalist working on multiple different matters, and you are seeking an unreasonable level of detail.  With respect to any communications relating to the publication of the article in the Washington Times, Mr. Couch has responded truthfully.  Your reliance on *Equal Rights Ctr. v. Post Properties, Inc*., 246 F.R.D. 29, 32 (D.D.C. 2007), where the responding party failed to even identify the individuals who had served as testers or investigators, is misplaced.  Mr. Couch has not failed to identify any fact witnesses, and the only identities he is protecting are those of confidential sources.  Moreover, the Court in *Equal Rights*

rejected the argument that answers were incomplete where, as here, the responding party has agreed to provide document production on a rolling basis and supplement the information provided. *Id.* at 33 ("Because a party has an ongoing duty to supplement its disclosures, *see* Fed.R.Civ.P. 26(e)(2), it is sufficient for a party to answer an interrogatory by stating that it is presently unable to provide the information.").

Separately, you reference messages between Mr. Couch and Mr. Butowsky that appear to indicate further communication between the two individuals. Mr. Couch will review these messages again and see if they jog his memory about other communications. To the extent he does recall further instances of communications, he will supplement his interrogatory response. However, can do no more than this. As you know, parties' recollections are sometimes not refreshed by reviewing a particular document. This is simply human nature, not a scheme to evade disclosure obligations.

      c.   <u>Response to Interrogatory No. 2</u>. Mr. Rich has already supplemented his response to this Interrogatory, which should address the bulk of your issues. To the extent Mr. Rich would like a more detailed statement, Mr. Couch will supplement his response to this Interrogatory.

      d.   <u>Response to Interrogatory No. 3</u>. Mr. Couch will supplement his response.

      e.   <u>Response to Interrogatory No. 4</u>. Mr. Couch maintains his objection. There are literally thousands of falsely predicated newspaper articles and thousands of pages of documents purporting to contradict the facts in this case. Even though it is not his burden, Mr. Couch will also present evidence supporting the truth of his statements, including the relevant testimony of Kim DotCom, Seymour Hersh, Bill Binney, Adam Carter, Ellen Ratner, Cassandra

Fairbanks, Ed Butowsky, Rod Wheeler and others.  Mr. Couch has already supplemented his responses to this effect.

You still appear dissatisfied and state:

If Mr. Couch does [sic] explain why he chose to ignore evidence directly contradicting his own statements-including from the Intelligence Community-Mr. Rich reserves the right to preclude Mr. Couch from relying on any such testimony or evidence including at summary judgment.

Mr. Couch has already supplemented his interrogatory responses to state that his experts will testify that the metadata on the emails leaked to Wikleaks proves the emails could not have been remotely hacked by Russian military intelligence but were locally downloaded.  This fact alone precludes reliance on the narrative concocted by Mr. Brennan. In addition, discovery is not yet complete, and the ongoing investigations by the Attorney General and Mr. Durham (and the recent criminal referrals) will likely provide further evidence of the flaws in the "official" Brennan/Clapper narrative on which Mr. Rich relies.

f.   <u>Interrogatory No. 5</u>.  To the extent he has not already done so, Mr. Couch will supplement his response to state that he believes his statements to be true.  Separately, your question assumes that Mr. Couch believes Mr. Rich was involve in the "theft" of DNC emails.  What is the basis for your question?  Can you point to any statements of Mr. Couch in which he claims Mr. Rich was involved in "theft"?

g.   <u>Interrogatory No. 6</u>.  Mr. Couch does not have, and is not required to keep, records of the reach of his social media campaign.  He has no objection to your seeking such information from Twitter.

h.   <u>ESI</u>.  Mr. Couch provided documents in PDF form for ease of reference and Bates stamping, not to evade ESI obligations.  If the parties can agree upon a third-party vendor, that may resolve any production issues.

      i.   <u>Confidentiality</u>.  You reference my comment in an email that I reserved the right to designate materials as confidential if they were inadvertently not so designated.  That reservation is entirely consistent with the Protective Order in this matter.

II.   <u>October 10 Letter</u>

I do not represent AFMG, Inc. nor, to my knowledge, does anyone else.  Further, the Company is an inactive corporation.  Mr. Couch provided you with all the AFMG, Inc. corporate information in his possession.  Therefore, there is relatively little I can meaningfully say in response to your letter.  However, a few points bear repeating.

First, contrary to what you state in your letter, AFMC, Inc. is not under a court order to produce anything.  A motion for reconsideration of the Court's order was timely filed and, with your consent, the parties stipulated that they would attempt to resolve their discovery differences and keep the motion in abeyance. ECF Doc. No. 81.  The parties' stipulation provides:

> **IT IS HEREBY STIPULATED AND AGREED**, subject to approval of the Court, that the Court defer judgement on the Couch 60(b) Motion pending counsels' ongoing attempt to resolve the issues addressed in the 60(b) Motion.
> **IT IS FURTHER STIPULATED AND AGREED**, subject to approval of the Court, that the parties agree that any deadlines to respond to the pending motions are tolled as of the date of this filing.

Second, it is inappropriate to threaten Mr. Couch or AFMG, Inc., whether with sanctions or otherwise, when we are meant to be engaging in good faith efforts to resolve disputes.  Your remedy, if you believe that we are not making progress in resolving issues, is to withdraw your consent to the stipulation and have our motion for reconsideration be heard.

Third, AFMG, Inc. is inactive.  We believe you knew this when the litigation was commenced, but you certain have knowledge of AFMG's status now, with Mr. Couch's affidavit unambiguously stating:

11

> I am also the sole shareholder of America First Media Group, Inc., which is
> a dormant entity that does not have a bank account or a Federal EIN number
> and has never taken corporate action of any kind.

Affidavit of Matthew Couch, dated September 3, 2019, at ¶ 4.

There is no support for the proposition that a dormant or inactive corporation can be found liable

for an intentional tort.  I have searched the Westlaw database for all federal and all state cases

and have found no support for such liability.  As a result, there is no good faith basis for

proceeding against AFMG, Inc.

Fourth, you appear to argue that AFMG, Inc. is an <u>active</u> entity because Mr. Couch

accepted service of process as its registered agent and because Mr. Couch has used terms such as

America First Media and America First Media Group to describe what he calls his "team"— a

loose collection of individuals who share the same interest in investigating issues the mainstream

corporate press has declared "off limits," such as Seth Rich's murder.  It may be an obvious

point, but Mr. Couch did not "accept" service of process in any substantive sense.  He has never

been sued before; his only contact with the judicial system has been with family court in

Arkansas; and he certainly had no idea that when an individual in Washington D.C. thrust a

package of documents in his hands, he was somehow accepting service of process.  In addition,

as noted, an agency theory of liability does not work for an inactive corporation.  You cannot

make a corporation "active" by the unauthorized acts of third parties.  Mr. Couch never took any

action on behalf of the corporation: there are no shareholder or director resolutions, no contracts,

no claims, no accountants, no trademark or trade name registrations, no bank accounts, no tax

identification numbers, no litigation—nothing.  Loose reference to a "moniker" that existed

previously to and independently of a corporate entity does not magically bring a corporation to

life.

Be all that as it may, by pointlessly ratcheting up the pressure on AFMG, Inc., threatening it with sanctions and forcing it to consider retaining counsel, AFMG, Inc. may have no choice but to file for bankruptcy and obtain an automatic stay of further proceedings.

III. <u>October 16, 2019 Letter</u>

 A. <u>Supplemental Responses to Interrogatories</u>

As an initial matter, we disagree with your characterization of these responses as Mr. Couch's "second" Supplemental Responses.  As I indicated above, Mr. Couch's initial attempt at responding was made without counsel and was unverified.  As a result, this effort does not legally constitute an initial response.  Once counsel was retained, Mr. Couch worked with us to provide the responses that were called for.  Mr. Couch then supplemented the responses and he is consenting to revise his responses further to the extent indicated in this letter.

Second, we disagree that Supplemental Responses are "vague, cryptic, evasive and completely lacking in the candid disclosure required of the parties."  This is more of the same boilerplate hyperbole employed in responding to Mr. Couch's initial responses.  These objections are not only improper on their face, but they leave us guessing as to what it is you really object to and prevent us from meaningfully meeting and conferring with you.  If there are specific points you would like to address, you must specifically identify these points so that we can have a meaningful discussion.

 B. <u>Request for Production</u>.

You have raised a number of additional issues with Mr. Couch's production.  These are addressed separately below.

 1. <u>Ms. Fairbanks</u>.  Mr. Couch does not have any texts with Ms. Fairbanks on his phone and, other than the DM's that have been provided to you, there are no other communications

with Ms. Fairbanks to provide.   Mr.  Couch is supplementing his response Interrogatory response on this point.

2.   Mr. Butowsky.   Again, you seem trigger happy on the use of sanctions.   Mr. Couch has not intentionally failed to preserve any evidence.  He is not a sophisticated commercial party and has been operating *pro se* for most of this litigation, unlike Mr. Rich, who is represented by an army of lawyers, when his case essentially boils down to his own self-serving statements. Mr. Couch has uncovered a few more messages to and from Mr. Butowsky that will be produced, but there is no secret trove of emails, texts or DM communications.

3.   Social media.  I am providing you with the signed stipulation that will enable you to get – in authenticated form – the vast majority of what might interest you in this litigation, although it is hard to understand what exactly your fishing expedition seeks to accomplish.  If Mr. Rich cannot prove he did not participate in downloading and transmitting DNC emails and documents directly or indirectly to Wikileaks, Mr. Couch's subjective state of mind or other statements will be irrelevant.

IV.   October 21 Email

A.   Flock Search Terms.

You have suggested that Mr. Rich should select the initial search parameters.  That is not appropriate. You should provide us with the terms you propose and, to the extent those terms are not objectionable, we will cull an initial set of documents to be reviewed by counsel.

B.   Third party vendor.

You have also suggested that we consider engaging a third-party vendor for discovery. As noted, we have contacted a firm with which we have worked in the past, called On-Line Security.  Their focus is e-discovery, but, as their name implies, they also do computer forensics,

14

and are highly experienced.  The best way forward may be to set up a conference call with them so that we can discuss the parameters of their work.  I concur with you that using a professional vendor is a sensible approach, although beyond Mr. Couch's resources.

      C.    <u>Depositions</u>.

You state that "we would consider not opposing Mr. Couch moving for permission to take specific depositions once you have entered an appearance."  This is an outrageous statement.  Once I have entered an appearance, I do not need your permission to take depositions and will notice the depositions that we deem necessary.  The Court has currently limited you to five depositions, so I would anticipate that you would object if we noticed more than five depositions, but you have moved for permission to take up to 15 depositions.  We have not opposed your motion and would not expect there would be any valid objection to our taking the same number of objections.

At your request, we have conferred with Mr. Butowsky.  Mr. Couch and Mr. Butowsky would be amenable to a deposition of Aaron Rich in Washington D.C. on any days from December 9-11.  Because there are two separate defendants, each defendant would have the right to a full day's deposition of Mr. Rich and Mr. Rich should be prepared for two days of depositions.   The date for a deposition may also depend on your production of responsive documents to Mr. Couch's discovery demands and those to be made by Mr. Butowsky.

Sincerely,

*/s/ Eden P. Quainton*
EDEN P. QUAINTON