UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AARON RICH,                                          Case No. 1:18-cv-00681-RJL
                                                     Honorable Richard J. Leon
Plaintiff,

v.

EDWARD BUTOWSKY,
MATTHEW COUCH
AMERICA FIRST MEDIA,
Defendants.


## DEFENDANTS' MOTION TO EXTEND OR STAY DISCOVERY


EDEN P. QUAINTON, ESQ. (D.C. Bar No. NY0318)
QUAINTON LAW, PLLC
1001 Avenue of the Americas, 11th Floor
New York, New York 10018
Telephone: (212) 813-8389
*Attorneys for Defendants Edward Butowsky and Matthew Couch*

## INTRODUCTION

Although Plaintiff filed his complaint (the "Complaint") in this lawsuit on March 26, 2018, discovery is still far from complete and Defendants would be severely prejudiced absent a significant adjustment of the current scheduling order.  Accordingly, Defendants are respectfully filing this motion for a 120-day extension of the discovery deadline or a stay of discovery (the "Motion").

There are four principal reasons for Defendants' Motion.  First, Defendant Edward Butowsky ("Mr. Butowsky") has been battling a severe and debilitating medical condition that has sharply interfered with his ability to participate in the lawsuit: Mr. Butowsky has undergone six major surgeries since the lawsuit began, has been hospitalized for a total of 72 days, has spent at least twice that amount of time recovering from hospitalization and has only returned to something approaching health in last six weeks, although his health has recently taken a new and sharp turn for the worse.

Second, Plaintiff's lawsuit poses intrinsic challenges as it is inexplicably intertwined not only with the  FBI and Mueller Russia investigations into the Trump campaign, but, more importantly, with the Horowitz investigation into abuses of the FISA court by the FBI and the ongoing criminal inquiry by the Attorney General of the United States, William Barr ("Barr"), and the U.S. Attorney for Connecticut, John Durham ("Durham")  into the origins of the Russia investigation.  At the origin of the Russia saga are claims that Russian military intelligence hacked into the servers of the Democratic National Committee (the "DNC") and, through a shadowy figure known as Guccifer 2.0, transmitted embarrassing DNC emails to Wikileaks.  Almost since the beginning of the Russia investigation, however, there has been a second theory for the Wikileaks publication of the DNC emails: Seth Rich, an idealistic DNC staffer and Bernie Sanders supporter, downloaded the DNC emails and communicated them to Wikileaks.  This

theory is dismissed by Plaintiff as a "conspiracy theory" and part of the "sensational lies"

promoted by Defendants in this lawsuit. Yet, as will be discussed in more detail below, there is

substantial evidence that the FBI and the NSA were aware of communications between Seth

Rich and Wikileaks and the Barr/Durham team are currently reviewing additional evidence and

witnesses that may well establish that the Russian hacking story was politically motivated or

that, at a minimum, the FBI and the Mueller team ignored and/or refused to investigate

competing explanations for the release of the DNC emails. In this connection, since it is

Plaintiff's burden to prove the falsity of Defendants' contentions, he should also want to wait for

the conclusion of the Barr/Durham investigation, or at least to wait for its conclusions as to the

validity of alternative theories for the leaking of DNC emails. ██████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████ Plaintiff would obviously need to revise his theory of the case if additional

evidence of Seth/Wikileaks emails is made public, as it will then be difficult, if not impossible,

for Plaintiff to deny his own role.

Third, "critical, necessary and relevant" evidence (in Plaintiff's words) remains

outstanding. *See* Dkt. 91, Attach. 1, Ex. 1 at 6. At issue is the deposition of Julian Assange,

whose testimony both parties agree is critical, necessary and relevant, to confirm or deny the

parties' allegations and defenses. Defendants are filing their own motion for a Letter Request to

assist in taking Mr. Assange's deposition, which concurs with Plaintiff's motion on the

importance of Mr. Assange testimony. Moreover, the testimony of Assange does not exist in a

vacuum. It is likely that Seth or Aaron communicated at least a portion of the time with Mr.

Assange via intermediaries and the use of usernames/handles masking their actual identity. Mr.

Assange's testimony is also critical and necessary to obtain further discovery from intermediaries

who may also have had direct contact with Plaintiff or his brother.  It is not realistic to believe the deposition of Mr. Assange and additional intermediaries whose identities cannot be definitively known in the absence of Mr. Assange's testimony will be conducted with a short extension of the discovery deadline.

Finally, one of the two Defendants in this case, Mr. Matthew Couch ("Mr. Couch") was unrepresented until November 7, 2019 and has been forced to play "catch-up" and has had little time to prepare his own defense.  Mr. Couch is not the typical *pro se* litigant who has chosen to burden the judicial system with allegations of misconduct, but rather a small-time independent blogger/investigator with limited funds dragged into a huge legal battle by two of the largest and most resource-rich law firms in the country, if not the world.  From the beginning, Mr. Couch has been, quite simply, overwhelmed by Plaintiff's legal juggernaut, that has not hesitated to use all its firepower against him.  Indeed, the process has been marred with violations of Mr. Couch's due process rights and third-party witnesses' successful efforts to evade service of subpoenas.  Moreover, Mr. Couch has been unable even to notice depositions in light of the Court's prior order barring him from so doing without a specific Court order, which presupposes a familiarity with the Court's practices Mr. Couch does not have.  Basic considerations of fairness argue for providing Mr. Couch with additional time to ensure that subpoenas are responded to, depositions conducted, and all relevant evidence can be taken into consideration.

Accordingly, for the foregoing reasons, Defendants are respectfully filing this Motion for a 120-day extension of the discovery deadline or, in the alternative, for a stay of discovery until

the conclusion of the Barr/Durham inquiry into the origins of the Russian investigation and the

Julian Assange deposition has been definitively scheduled.[1]

## **LEGAL ARGUMENT**

I.      GOOD CAUSE EXISTS FOR AN EXTENSION OF THE DISCOVERY DEADLINE

      A. <u>APPLICABLE LEGAL STANDARD.</u>

Federal Rule of Civil Procedure 16(b)(4) provides for modification of a scheduling order

upon a showing of "good cause" and the consent of the court. To determine whether a litigant

has established a sufficient showing of "good cause," the court must consider: "(1) whether trial

is imminent; (2) whether the request is opposed; (3) whether the non-moving party would be

prejudiced; (4) whether the moving party was diligent in obtaining discovery within the

guidelines established by the court; (5) the foreseeability of the need for additional discovery in

light of the time allotted by the district court; and (6) the likelihood that discovery will lead to

relevant evidence.  *Rae v. Children's Nat'l Med. Ctr.*, No. CV 15-736, 2017 WL 1750255, at *2

(D.D.C. May 4, 2017).   As to a stay of discovery, "the decision whether to stay discovery is

committed to the sound discretion of the district court judge. *See* Fed.R.Civ.P. 26(c) ("the court

... may make any order which justice requires"); Fed.R.Civ.P. 56(f) ("the court ... may order a

continuance to permit ... discovery ... or may make such order as is just"). *White v. Fraternal*

*Order of Police*, 909 F.2d 512, 517 (D.C. Cir. 1990)

For reasons articulated in more detail below, these factors weigh in favor of an extension

of the discovery cut-off or, in the alternative, for a stay of discovery. First, trial is not

"imminent."  As of the filing of this motion, the scheduled trial date is more than six months

---

[1] Defendants have met and conferred with Plaintiff in accordance with Rule 7(m) and Plaintiff
opposes this Motion.

away, and, in addition to the many depositions that remain to be taken by both Plaintiff and

Defendants, possibly the most important deposition in the case, that of Julian Assange, has not

been scheduled and, indeed, assistance from the UK Courts has not yet been sought.

Second, while Plaintiff's request is opposed, the prejudice to Plaintiff from the relief

sought would be minimal.   Plaintiff waited many months after the initial allegedly defamatory

tweets were published before initiating legal action ████████████████████████████████

████████████████.   More importantly, Plaintiff himself agrees that evidence critical and

necessary for his case remains outstanding.   It is hard to see how there could be prejudice to

Plaintiff in this circumstance.

Third, Defendants have been diligent under the circumstances.   Mr. Butowsky's serious

medical issues – involving six separate surgeries since the filing of the lawsuit and many months

of hospitalization and recuperation – have clearly hampered both his ability to respond to

discovery requests and prepare his own defense.   Despite these severe health issues, Mr.

Butowsky has produced over a thousand pages of documents and has retained an expert ESI

vendor who has applied 61 search terms chosen by Plaintiff to generate 60,000 additional pages

of documents, most of which are immaterial, but all of which are being reviewed by counsel.

Quainton Decl. ¶ 16.   Mr. Couch's *pro se* status in the face of vastly more sophisticated lawyers

not pulling any punches has, until recently, seriously restricted his ability to participate in the

litigation.   Since his counsel has entered an appearance, he has been as diligent as possible,

submitting multiple document productions and sitting for his deposition.   But much work

remains to be done that it was not realistic to think he could accomplish in such an unequal

battle.

Fourth, when the prior scheduling order was entered it was not foreseeable (a) a separate

district judge would conclude that, as will be detailed below, the FBI has not conducted a

thorough search of its records for material evidence, (b) the report of the Inspector General of the

Department of Justice would conclude that the FBI has been guilty of intentionally withholding

key evidence and mischaracterizing other evidence, or (c) the Attorney General of the United

States would conduct a criminal inquiry into the origins of the Russia investigation, all of which

indicate additional discovery is warranted.

Finally, there is a high likelihood that developments in the ongoing criminal inquiry into

the origins of the Russia investigation will reveal additional material evidence and that the

critical deposition of Mr. Assange sought by both parties will lead to relevant evidence

concerning, at a minimum, the existence and contents of an FBI report discussed below and NSA

data captures confirming communications between Seth Rich and Wikileaks, the identities of any

intermediaries Seth or Aaron may have been in contact with in communicating emails to

Wikileaks, and the pseudonyms, "handles" or usernames they may have used.

While Defendants' preferred approach would be a significant extension of the discovery

deadline so that the above issues can be addressed, Defendants understand that the Court may

prefer to stay discovery until Mr. Assange's deposition is scheduled and the Barr/Durham

criminal inquiry has concluded.   In either case, it would not further the interests of justice to

adhere to a schedule that fails to take into account the actual circumstances of the case.

### B. MR. BUTOWSKY'S MEDICAL CONDITION HAS SUBSTANTIALLY INTERFERED WITH HIS ABILITY TO PREPARE A DEFENSE AND WARRANTS AN EXTENSION OF THE DISCOVERY DEADLINE.

On March 22, 2017, Mr. Butowsky underwent a total left-hip replacement.  Declaration

of Edward Butowsky, dated January 3, 2019 (the "Butowsky Decl.") at ¶ 3.   Over the course of

the following year, Mr. Butowsky suffered debilitating back, groin, thigh and hip pain that

required two additional surgeries, including back surgery.  *Id.* at ¶¶ 4-9.  At the time the instant

lawsuit was filed, Mr. Butowsky faced excruciating pain.  *Id.* at ¶ 10.  Mr. Butowsky was unable

to focus on the allegations, beyond noting that they appeared absurd, since he had made virtually no statements of any kind about Plaintiff. *Id.* For the next ten months, Mr. Butowsky condition continued to worsen and he received a series of injections and treatments, and underwent further surgeries, including decortication surgery and triple-fusion revision surgery that required repeated hospitalizations. *Id.* at ¶¶ 11-28. Throughout this period, Mr. Butowsky suffered extreme pain and was placed on various powerful medications, including Oxycontin and Gabentin. *Id.* at ¶¶ 15, 20. Any relief Mr. Butowsky received from the pain medication led to increased lethargy and disorientation that interfered with his ability to attend to his professional life and Plaintiff's claims. *Id.* at ¶¶ 20, 23. Among the complications from surgery were a pinched nerve and a Staph infection, which resulted in a dangerously elevated white blood cell count of over 100,000, ten times the upper "safe" limit. *Id.* at ¶¶ 21, 28, 37. For much of 2019, Mr. Butowsky continued to face severe medical challenges, including additional surgeries, the administration of a Prevena incision management system to avoid post-operative fluid build-up and an intravenous antibiotic line. *Id.* at ¶¶ 32-36. In all, since the beginning Plaintiff's lawsuit, Mr. Butowsky has spent a total of 71 days in the hospital and at least twice as long at home recuperating from surgery, has undergone six major surgeries, has been evaluated and treated by a total of nine separate doctors, and has suffered pain so excruciating he has been unable to move, let alone work, for many months in addition to my hospitalizations. *Id.* at ¶ 37. The infection that followed Mr. Butowsky's surgery caused a dangerous spike in his white blood cell count and resulted in over 30 different shots and treatments. *Id.* The potent medications Mr. Butowsky has needed have seriously affected his mental capacities even on days when the pain subsided and he was able to work. *Id.* Mr. Butowsky's medical issues have severely limited his ability to participate in discovery, respond to Plaintiff's demands and mount his own defense. *Id.* Under the circumstances, a substantial extension of the discovery deadline is warranted. *See*

7

*Burns v. Georgetown Univ. Med. Ctr.*, 106 F. Supp. 3d 238, 242 (D.D.C. 2015)(medical issues warranted six-month extension of discovery deadline); *Handwerker v. AT & T Corp.*, S.D.N.Y.2002, 285 F.Supp.2d 331, *affirmed* 93 Fed.Appx. 328, 2004 WL 693414 (multiple extensions of discovery deadline warranted for medical reasons). *Cf. Pardo-Kronemann v. Donovan*, 601 F.3d 599, 611 (D.C. Cir. 2010)(illness of counsel warrants extension of discovery deadline).[2]

C. EVIDENCE ESSENTIAL TO DEFENDANTS' DEFENSE IS CURRENTLY UNDER REVIEW BY THE ATTORNEY GENERAL OF THE UNITED STATES AND THE U.S. ATTORNEY FOR CONNECTICUT.

One of the central inquiries for the Court in assessing whether good cause exists for an extension of the discovery deadline is whether additional discovery will lead to relevant evidence. *Rae v. Children's Nat'l Med. Ctr.,* 2017 WL 1750255, at *2. In the present case, Mr. Butowsky has brought to the attention of Barr and Durham, through John Eckenrode, the principal investigator for the ongoing investigation into the DOJ's inquiry into the origins of the Russia investigation, facts suggesting that the FBI and the NSA have relevant evidence as to Seth Rich's involvement in the leaking of DNC emails to Wikileaks. Declaration of Eden P. Quainton, dated January 6, 2020 (the "Quainton Decl."), Exhibit 1.

The first important issue raised with Mr. Eckenrode relates to the existence of an FBI report purportedly documenting an email exchange between Seth Rich and Julian Assange in which Mr. Rich offered to transmit emails to Mr. Assange and requested payment for the emails. The alleged existence of this report is a matter of public record and is referenced in Plaintiff's own lawsuit. Complaint ¶ 32 and n. 7. The last article cited in the foregoing footnote includes

---

[2] Shortly before filing this Motion, counsel spoke to Mr. Butowsky, who had been readmitted to the hospital and whose temperature had spiked to 107 degrees, an extremely serious level. *See* Quainton Decl. ¶ 15.

an audio between Mr. Butowsky and Seymour Hersh, a Pulitzer prize winning journalist, who states he had personal contact with a well-placed FBI source who read him the contents of an FBI report establishing the Rich-Assange connection. ████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████    ██████████████████████████

████████████████████████████████████████████████████

██████████   ████████████████████████████ More importantly for present purposes, after a long-period of denying that any such report existed, a Federal District Judge has recently determined that the FBI has failed to search in the most obvious place for the FBI report, namely its Computer Analysis and Response Team (or "CART").   Quainton Decl., Ex. 5, at 29 ("However, a review of Mr. Hardy's Declaration indicates the FBI did not search for records regarding Seth Conrad Rich in CART or in the FBI's email system in its WFO [Washington Field Office]."   Mr. Hardy is the Section Chief of the Record/Information Dissemination System, Information Management Division of the FBI.  Quainton Decl. Ex. 6.  Mr. Hardy's failure to conduct a proper search of FBI records is not an isolated incident.  The FBI's conduct throughout the "CrossFire Hurricane Investigation" into alleged Russian government coordination with the Trump campaign has been riddled with a serious lack of candor and care, as detailed in the scathing report of the Inspector General of the Department of Justice, Michael E. Horowitz, in his Review of Four FISA Applications and Other Aspects of the FBI's Crossfire Hurricane Investigation, Quainton Decl. Ex. 7 (FBI agents found guilty of "intentionally withholding information", p. 399, failing to provide "satisfactory explanations for. . .missing information," p. xiii, making "factual misstatements," 377, committing "errors, omissions. . .mischaracterizations, id. and "providing inaccurate and incomplete information," id.).  In this context, the FBI's failure

9

to search its records thoroughly for the Seth Rich/Wikileaks reports cannot be rationalized away as excusable neglect.  It is imperative that Barr and Durham demand access to the FBI report to determine whether the FBI or the subsequent Mueller investigation may have omitted or mischaracterized key information surrounding the alleged hack of the DNC by the Russian military.  Quainton Decl., Ex. 1, p. 2.

These issues are not theoretical but go to the heart of the present litigation.  First, Plaintiff specifically alleges that Mr. Butowsky's reference to the FBI report at CART is defamatory. Complaint at ¶ 65.  Plaintiff may attempt to argue that even if the FBI report establishes that Seth Rich did leak emails to Wikileaks, this does not mean that Aaron participated in the leak with his brother.   But this argument is unconvincing because Aaron has consistently maintained that the entire Seth Rich leaking theory is a "conspiracy theory" and part of the pattern of "lies about me and my family," Complaint at ¶ 68.  ███████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████   ███████████████████████████

███████   ██  In addition, **Plaintiff himself has represented to this Court that is critical, necessary and relevant to determine whether he or his brother was involved in leaking emails to Wikileaks** by taking the deposition of Julian Assange. *See* 3 *supra*.  The Complaint stresses how "close" Aaron and Seth were, underscoring that Aaron was Seth's best man at his wedding. Complaint ¶ 24.  ████████████████████████████████████

████████████████████████████████████████████████████████████

---

[3] Mr. Butowsky has noticed Mr. Wheeler for a follow-up deposition on February 7, 2020. Plaintiff has consented to the taking of this deposition outside the discovery cut-off deadline provided Mr. Butowsky agree to permit Plaintiff to take one deposition outside of the discovery cut-off period.  Mr. Butowsky has agreed to this request.

■ If Barr and Durham confirm the existence of the FBI report documenting Seth's communications with Wikileaks, Aaron's position that Defendants **must** be lying about him crumbles.

But the FBI report, as important as it is, is not the only piece of evidence in the government's possession that supports the view that Seth Rich leaked emails to Wikileaks. In response to a FOIA request, the National Security Agency admitted it had a certain number of responsive documents to requests that encompassed Seth Rich. Quainton Decl. Ex. 8. Letter from National Security Administration, p.2 (admitting possession of 15 responsive documents comprising 32 pages). Because of the drafting of the request to the NSA, it is not clear whether these 15 documents relate specifically to Seth Rich. However, Mr. Butowsky has learned of the existence of a high-level NSA source with knowledge who is willing to state to the Barr/Durham team that the NSA possesses a substantially greater number of documents relating specifically to Seth Rich. *See* Quainton Decl., Ex. 1, p.2.[4]

Finally, Mr. Butowsky has learned of the existence of another high-level source with knowledge of information classified at the SAP (special access program) level – a classification level above top-secret – confirming the existence of communications between Seth Rich and Wikileaks. Mr. Butowsky has also offered to put the Durham team in contact with this source.

---

[4] Because of the importance to national security and the integrity of the operations of the FBI, NSA and CIA, Mr. Butowsky has brought this information to the attention of the Attorney General promptly. He intends to supplement his interrogatory responses to communicate his discussions, to the extent permitted by the Attorney General, to Plaintiff.

*Id.*[5]  All of the foregoing information is central to Defendants' defenses (and also to Plaintiff's affirmative burden of proving falsity).  Taking depositions of Plaintiff and key witnesses now while critical and necessary evidence remain outstanding would lead to an inconclusive and wasteful process.

### D. BOTH PARTIES AGREE THAT CRITICAL, NECESSARY AND RELEVANT EVIDENCE REMAINS OUTSTANDING

Both Plaintiff has filed a motion for taking the deposition of Julian Assange.  *See* Dkt. 91. Defendants agree with Plaintiff's representation that the deposition is "critical, necessary and relevant."  Dkt. 91, Attach. 1, Ex. 1 at 6.  Indeed, Defendants intend to file their own motion concurrently with the filing of this Motion.  Plaintiff may feel that Mr. Assange's testimony, "critical" and "necessary" as they know it is, can be viewed in isolation—a final "nail in the coffin" of what Plaintiff considers an already "debunked" "conspiracy theory."  However, Defendants are mistaken.  Based on publicly available information, Mr. Assange may well confirm that he received the DNC emails from an intermediary who was not himself or herself the source of the locally downloaded emails and/or that he had communications relating to the emails and payment for the emails with an individual who had a username, handle or pseudonym known to be used by Plaintiff or his brother, but may not have explicitly identified himself as Seth or Aaron Rich.[6]  ███████████████████████████████████████

██████████████████████████████████████████ confirmation that the person

---

[5] As noted, to the extent permitted by law, Mr. Butowsky also intends to supplement his interrogatories with respect to this individual, who would likely be entitled to whistleblower protection.

[6] The FBI report may reveal communications that are known to be from Seth Rich because of their presence on his computer and other investigative work, even if Seth had adopted a username that did not explicitly include his first or last name.

who communicated with Wikileaks used any of these usernames, handles or pseudonyms would provide powerful confirmation that Seth Rich did in fact communicate with, and leak DNC emails to, Wikileaks.  Other individuals also claim to have direct personal knowledge that Seth Rich communicated directly with Wikileaks, including an Internet entrepreneur and free speech advocate, Kim Dotcom, who has recently publicly stated that he communicated with Seth Rich about the Wikileaks emails and put Seth in touch with an intermediary for the transmission of emails to Wikileaks.  *See* Quainton Decl. ¶ 3.[7]  If Mr. Assange's testimony can be compared to Mr. Dotcom's, it would be possible to confirm Seth or Aaron's role in transmitting the DNC emails to Wikileaks, even if Mr. Assange maintains his policy of not explicitly disclosing source information.   Most importantly, closing discovery with such a fundamental deposition still outstanding – a deposition important not only in its own right, but also in light of the additional discoverable evidence it is likely to yield – would not advance the interests of justice or assist in preparing for trial on the basis of all relevant and material evidence.

E. FUNDAMENTAL FAIRNESS REQUIRES AN EXTENSION OF TIME SO THAT A FORMERLY *PRO SE* LITIGANT FACING TWO OF THE LARGEST LAW FIRMS IN THE WORLD CAN ADEQUATELY PREPARE HIS DEFENSE.

One of the procedural particularities of this case is that of the two remaining Defendants, one, Mr. Couch, has been unable to afford legal representation and has proceeded *pro se* until recently.  *See* Declaration of Matthew Couch dated January 6, 2020 (the "Couch Decl.") at ¶¶ 1-3.  In its scheduling order dated July 31, 2019, the Court denied Mr. Couch the right to take any depositions without Court permission.  Dkt. 72 9:25-10:1-16.  Mr. Couch is separately filing a motion for permission to take depositions that are necessary for him to prepare his defense and it would be fundamentally unfair not to permit him to take depositions of witnesses he may have an

---

[7] The relevant interview can also be found at https://consortiumnews.com/2019/08/02/watch-cn-live-kim-dotcom-bill-binney-mike-gravel-on-episode-4/

interest in deposing Mr. Butowsky may not share.  Mr. Couch was unable to notice any

depositions without counsel, and, given the Court's order, it is unclear whether Mr. Couch can

notice any depositions even <u>with</u> counsel.  *Id.*

As a result, Mr. Couch has not yet noticed the depositions of any witnesses.  One of the

most important witnesses for Mr. Couch would be Kelsey Mulka, Seth Rich's girlfriend, whose

alleged communications with Aaron Rich have given rise to an allegation of defamation against

Mr. Couch.   Complaint ¶ 53.   Mr. Couch anticipates that it will be difficult to schedule this

critical deposition as efforts to serve Ms. Mulka with a *subpoena duces tecum* have failed.

Quainton Decl. at ¶ 5 (home in D.C. padlocked; multiple attempts at service in Michigan

unsuccessful).

In addition, because Mr. Couch is perhaps best known for his investigation into the Seth

Rich murder, Complaint ¶ 63, and because he allegedly defamed Aaron Rich with comments that

Aaron Rich interfered with the investigation and failed to cooperate with investigators,

Complaint at ¶¶ 37, 69, Mr. Couch has a particular interest in taking the deposition of Cathy

Lanier, the former D.C. Chief of Police with personal knowledge about the Seth Rich

investigation.   However, Defendants have been unable to serve a supboena on Ms. Lanier

because she was reportedly out of the country on an extended vacation and it is unknown when

she will return.  Quainton Decl. at ¶ 3.

Moreover, as noted, one of the central figures in the case is Kim Dotcom, who has

recently been quoted as stating that he was in personal contact with Seth Rich, that Seth Rich

reached out to him for advice on transmitting emails to Wikileaks, that Mr. Dotcom placed Seth

Rich in touch with a Wikileaks intermediary and that, in Mr. Dotcom's opinion, Seth Rich would

have needed to work with someone "close" to him he could trust because of the technical

difficulties involved in downloading and transmitting emails to Wikileaks.  *See* supra at 13.  Mr.

Couch is connected to Mr. Dotcom on Twitter and is the most logical Defendant to seek Mr.

Dotcom's deposition.  Couch Decl. at ¶ 4.  Of course, as Plaintiff has the burden of proving

falsity, Plaintiff also has an interest in securing Mr. Dotcom's deposition, but to date has taken

no steps in this direction.  Because Mr. Dotcom is currently in New Zealand, which is not a party

to the Hague Convention of March 18 1970 On the Taking of Evidence Abroad in Civil or

Commercial Matters, Plaintiff and Mr. Couch will need to work collaboratively to find a solution

for obtaining Mr. Dotcom's critical testimony, an approach that was not possible (or at least not

sought by Plaintiff) when Mr. Couch was unrepresented.

  Finally, Mr. Couch has also been unable to serve a subpoena on Brad Bauman██████████

████████████████████████████████████████████████████████████████████████████

████████████████████████ despite efforts at his residences in Washington D.C. and Florida.

Quainton Decl. at ¶ 4.  It is therefore unlikely his deposition can be scheduled rapidly.[8]

  As Plaintiff struggles to comply with discovery demands and prepare his own defense, it

is important to keep in mind that Plaintiff is represented by two of the largest, most successful

law firms in the country, with two separate teams of partners, associates and paralegals devoted

to this case, who have been able to mobilize all the substantial resources at their disposal.[9]  This

fight has been fundamentally unfair.  Most notably, Plaintiff recently obtained an order form this

---

[8] Mr. Butowsky is currently limited to five depositions.  With the necessary depositions of Aaron Rich, Joel Rich, Seymour Hersh and Rod Wheeler, Mr. Butowsky is almost out of what the Court referred to as "bullets."  Dkt.75 9:7-8.

[9] This case is unlike the typical defamation case involving matters of public concern, in which the media defendant generally has substantial resources at its disposal, as in David Boies' representation of CBS in the high-profile libel suit brought by William Westmoreland or Cravath's representation of Time in the equally prominent action brought by Ariel Sharon. Here, Mr. Boies' firm and all its firepower are trained on a small-time Arkansas Twitter personality, with virtually no resources.

Court to compel compliance with discovery when Plaintiff had not provided Mr. Couch with an opportunity to respond to the motion.  *See* Dkt. 76.  Counsel failed to inform the Court that there were two separate motions to compel, one directed at Mr. Butowsky, who had elected not to file an opposition, and one directed at Mr. Couch, who had not been provided with an opportunity to respond, in flagrant denial of his due process rights.  This issue was brought to the Court's attention in a motion that the Court subsequently denied without prejudice.  Dkt 76 and Minute Order Dated November 4, 2019.   It is unclear whether the Court's denial order was based on a procedural flaw in Mr. Couch's motion or a decision on the merits.  However, it is difficult to believe the Court affirmatively concluded that Mr. Couch's due process rights were not violated.

It is axiomatic that a defendant should have an opportunity to be heard before an order is taken against him.  *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)(the fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner")(internal citation omitted).  It is also not disputed that the July 31, 2019 status conference occurred before the fourteen-day period required under Rule for filing a written opposition had passed.  *See* Local Rule 7(b); Dkt. 71 (filing Motion to Compel against Mr. Couch and AFM on July 23, 2019, only eight days before the status conference).  A review of the transcript of the hearing shows that no effort was made to provide Mr. Couch with an opportunity to be heard.  Dkt. 75.  In all likelihood, the Court believed that Mr. Couch had failed to respond like Mr. Butowsky and was on a similar timetable to that applicable to Mr. Butowsky, as to whom a motion had been filed over a month earlier.  Dkt. 63.  Mr. Couch subsequently learned that counsel for Plaintiff and counsel for Mr. Butowsky had participated in an *ex parte* hearing in the Court's chambers during which the Court reached its decision on the discovery

motions.  Couch Decl. at ¶ 5.   It appears no effort was made to inform the Court that Mr. Couch had not yet had an opportunity to respond to the motion concerning him.  *Id.*[10]

In any event, it is clear Mr. Couch has been at a very substantial disadvantage throughout this litigation, which has severely affected his ability to prepare his defense.  Now that he has secured counsel, he should be afforded every opportunity to prepare his defense properly and should be given sufficient time to secure the testimony and follow-up information needed from material witnesses his co-defendant may not want or be able to depose.  Given the lack of cooperation from key witnesses to date, this process is likely to take a substantial period of time.

### F.  PLAINTIFF WOULD NOT FACE PREJUDICE FROM AN EXTENSION OF THE DISCOVERY DEADLINE

Plaintiff's principal argument in opposition to Defendants' motion is likely to be that Plaintiff would be prejudiced by the delay in a trial of the merits, because of the pain and suffering allegedly caused by the existence of purportedly false allegations against him.  Yet, Plaintiff's conduct with respect to these very allegations undermines any argument that time is of the essence in allegedly "correcting" the record.   The proximate cause of the present lawsuit appears to have been the publication of an allegedly defamatory article in the Washington Times on March 1, 2018.  Complaint at ¶ 9.  But the statements in the article that had been allegedly previously made by Defendants Couch and Butowsky date from August and September 2017.  Complaint ¶¶ 49, 50.  Plaintiff did not even address any of the allegedly hurtful statements until December, 2017 and January, 2018 and even then waited until the end of March before initiating

---

[10]  While Mr. Couch does not believe that the *ex parte* hearing necessarily taints the entire proceeding and requires the drastic remedy of recusal or disqualification, *see United States v. Microsoft*, 253 F. 3d 34, 46 (D.C. Cir. 2001), the taking of a decision on an *ex parte* basis without the Defendant having an opportunity to be heard does raise a sufficient concern as to the fairness of the process while Mr. Couch was unrepresented that the Court should take every effort to ensure Mr. Couch can now properly prepare his defense.

legal action.  Complaint, 64, 68.  An extension of time so that a trial can be had on a full record before the end of the year would not significantly delay Plaintiff's day in Court.

More importantly, key evidence necessary for Plaintiff's own case – as Plaintiff himself admits – remains outstanding.  It is unreasonable to believe that Mr. Assange's deposition can be quickly scheduled and conducted and that additional matters requiring further discovery will not emerge from the deposition.  Similarly, the ongoing criminal inquiry into the origins of the Russia investigation is highly likely to reveal additional evidence necessary for Plaintiff to evaluate in considering how or whether to pursue his case.  It would be highly prejudicial for **Plaintiff** to prepare for trial on the theory that there cannot possibly be an FBI report or NSA-captured communications between Seth Rich and Wikleaks only to discover that the factual predicate for the trial is false.  Plaintiff should be as willing as Defendants to secure access to the additional facts being developed by Barr and Durham.  To the extent Plaintiff opposes a substantial extension or stay of discovery under the circumstances, he only confirms what Defendants have long suspected, that the true motive behind his lawsuit is not to clear his name, but to silence voices raising uncomfortable truths he would rather have buried.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court extend discovery to July 27, 2020, with the remainder of schedule in the present matter accordingly adjusted, and a trial date set before the end of the current year, or in the alternative that discovery be stayed until the Barr/Durham criminal probe into the origins of the Russia investigation has concluded and the Julian Assange deposition has been definitively scheduled.

Dated January 6, 2020

*/s/ Eden Quainton*
EDEN P. QUAINTON, ESQ. (D.C. Bar No. NY0318)
QUAINTON LAW, PLLC

1001 Avenue of the Americas, 11th Floor
New York, New York 10018
Telephone: (212) 813-8389
E-mail: equainton@gmail.com
*Attorneys for Defendants Edward Butowsky and*
*Matthew Couch*

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that on January 6, 2020, the foregoing document was filed through the CM/ECF system and thereby served electronically on counsel for Plaintiff Aaron Rich.

**QUAINTON LAW, PLLC**

*/s/ Eden Quainton*
EDEN P. QUAINTON, ESQ.
1001 Avenue of the Americas, 11th Floor
New York, New York 10018
Telephone: (212) 813-8389
E-mail: equainton@gmail.com
*Attorneys for Defendants Edward Butowsky and Matthew Couch*