UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AARON RICH,

Plaintiff,

v.

EDWARD BUTOWSKY,
MATTHEW COUCH
AMERICA FIRST MEDIA,
Defendants.

Case No. 1:18-cv-00681-RJL
Honorable Richard J. Leon

**OPPOSITION TO MOTION FOR SANCTIONS**

EDEN P. QUAINTON, ESQ.
QUAINTON LAW, PLLC
1001 Avenue of the Americas, 11th Floor
New York, New York 10018
*Attorneys for Defendants Edward Butowsky*

## INTRODUCTION

Plaintiff's Motion for Sanction against Defendant Edward Butowsky ("Mr. Butowsky") is of a piece with its overly aggressive approach to litigation. Plaintiff's counsel has previously participated in an *ex parte* hearing and failed to inform the Court of important timing differences between its motions to compel Mr. Butowsky and one of Mr. Butowsky's co-defendants, Matthew Couch ("Mr. Couch.") As a result, an order was entered compelling production of documents when Mr. Couch had not had an opportunity to prepare an opposition or plead his cause. But Plaintiff's tactics have been equally aggressive with Mr. Butowsky. After Mr. Butowsky filed a declaration detailing his extremely serious medical issues, and Defendants counsel informed Plaintiff's counsel that Mr. Butowsky had been in the intensive care unit, Plaintiff's counsel still insisted that rescheduling an imminent deposition would depend on receipt of appropriate verification. Declaration of Eden P. Quainton, dated January 13, 2020 (the "Quainton Decl.") , Ex. 1, January 6 Quainton-Riley ICU email; Ex. 2 January 10 Riley-Quainton email; Ex. 3 January 10 Quainton-Riley email. At a time of such a serious medical situation, for counsel to stand on ceremony with respect to what was a potentially life-threatening situation represented a serious error of judgment. Obviously, once available, Mr. Butowsky will provide all necessary documentation, but it reflects an over-emphasis on the importance of "winning a point" to insist on legal formalities when a party's life is at stake.

## STANDARD OF REVIEW

Where a court has entered an order granting a motion to compel discovery, Rule 37(a) provides that "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees" unless "(i) the movant filed the motion before attempting in good faith to obtain

1

the disclosure or discovery without court action; (ii) **the opposing party's nondisclosure, response, or objection was substantially justified**; or (iii) other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A) (emphasis added).

## LEGAL ARGUMENT

I.  MR. BUTOWSKY'S DIFFICULTIES IN MEETING DISCOVERY DEADLINES WAS SUBSTANTIALLY JUSTIFIED BY HIS EXTREMELY SERIOUS MEDICAL CONDITION THAT RECENTLY PUT HIM IN THE ICU AND REQUIRED NEW SURGERY.

Here, the central reason for Mr. Butowsky's difficulties in meeting discovery deadlines has been his extremely serious health issues.  The first time Mr. Butowsky's current counsel met Mr. Butowsky, Defendant was walking with difficulty and needed help with his bags.  Quainton Decl. at ¶ 2.  However, counsel did not know how serious Mr. Butowsky's condition was until December 20, 2019 when he received a detailed description of Mr. Butowsky's surgeries, infections, hospitalizations, difficulties of recovery and extreme pain.  *Id.* at ¶ 3; Declaration of Edward Butowsky, dated January 6, 2020 (the "Butowsky Decl.").

Although the Butowsky's Declaration makes clear how serious his condition has been, its radically disruptive nature was not completely apparent.

But on January 5, 2020, Mr. Butowsky was admitted to the emergency room with an extremely high fever.  Quainton Decl. at ¶ 5; Butowsky Decl. at ¶ 35. The fever appeared to be related to a full-body infection and **spiked to 107 degrees**.  Quainton Decl. at ¶5.  The Court can take judicial notice of the fact that a 107-degree temperature, known as hyperpyrexia, is life-threatening.  https://www.medicalnewstoday.com/articles/318856.php#4 (hyperpyrexia is a medical emergency).  This extremely elevated fever is generally related to a very serious underlying infection.  *Id.*  Mr. Butowsky has been suffering from a post-operative infection that has debilitated him for much of the pending litigation.  Butowsky Decl. at ¶ 37.  Indeed, his

condition only began to genuinely stabilize at the time Mr. Quainton entered an appearance in this case. *Id.* at ¶ 36. The sharp downward turn in Mr. Butowsky's health in recent days is, sadly, a return to the pain and suffering Mr. Butowsky believed he had put behind him.

On January 9, the decision was made to remove Mr. Butowsky's hip surgically so that the hip area could be completely cleaned out, with an artificial prosthesis inserted that would make limited mobility possible. Quainton Decl. at ¶ 8. Treatment of the hip area is set to continue over a six-week period so that the underlying infection can be eliminated, enabling a complete hip replacement. *Id.*

Despite these difficulties, and notwithstanding Plaintiff's characterization of his efforts, Mr. Butowsky has been attempting as best he can to meet Plaintiff's demands, many of which have an "over-the-top" fishing expedition quality unrelated to Plaintiff's core burden of proof: establishing that he was not involved in leaking DNC emails with his brother, that he did not receive payment for the emails and that he did not interfere with the investigation in his brother's death.

Rather than focusing on these issues, Mr. Rich has pursued fanciful conspiracy theories that have nothing to do with the case, such as the idea that Mr. Butowsky was organizing a supposed "sting" operation, the only evidence for which is hearsay testimony that Mr. Couch "was in" Omaha. Dkt 83-4, 113:5-6, 11-12. Still, Mr. Butowsky has taken his obligations seriously. His former counsel produced 1429 documents in response to Plaintiff's discovery demands. Quainton Decl. at ¶ 9. Unhappy with this production, Plaintiff demanded that Mr. Butowsky conduct a more thorough search. Once Mr. Quainton had entered an appearance he advised that a professional ESI vendor be retained to perform a search based on criteria established by Plaintiff. *Id.* at ¶ 11. Mr. Quainton had worked with a e-discovery firm named OnLine Security, and he recommended that this firm be used. *Id.* Plaintiff's counsel agreed with

this approach.  *Id.* at ¶ 12.  Online Security was retained by Defendant on November 19, 2019. Declaration of Richard Gralnik, dated December 26 (the "Gralnik Decl.") at ¶ 7.  Online Security staffed Richard Gralnik, an e-discovery expert with 30 years of experience, to oversee the project.  Gralnik, Ex. A.  If Mr. Butowsky were truly seeking to evade his discovery obligations, retaining a professional e-discovery vendor would have been non-sensical.

On December 1, 2019 Plaintiff provided a list of 61 search terms that Mr. Butowsky was to use in searching for responsive documents.  Quainton Decl. at ¶ 13, Ex. 5, Ex. 6.  This list was absurdly over-reaching in its pursuit of a theory that Mr. Butowsky was operating as an agent of President Trump, a theory wholly unrelated to the present case, but the theory of the case in Plaintiff's parents' separate lawsuit, against Mr. Butowsky and Fox News.  *See* Joel and Mary Rich v. Fox News et al., 18-cv-02223 (GBL).   Plaintiff's search terms included "Sessions" (presumably seeking imaginary conversations with Jeff Sessions), "White House," "debunking," "donaldtrump.com" among others.  Quainton Decl. at ¶ 14.

In any event, rather than fight with Plaintiff over these search terms, which would only have delayed the production further, Mr. Butowsky's counsel instructed online security to perform a search of these terms.  Quainton Decl. at ¶ 15.  Plainitff's counsel and Defendant's counsel agreed that the production would be complete before Christmas.  Quainton Decl. Ex 4, p.2.  However, even though Plaintiff and Defendant had agreed on an approach, work on the production was delayed nearly three weeks because of a bureaucratic hold up by Mr. Butowsky's carrier in making payment of Online Security's retainer.  Gralnik Decl. at ¶ 8.  In addition, there were administrative issues of coordinating with Mr. Butowsky's assistant that further delayed matters.  *Id.* at ¶¶ 9-10.  It was not until December 20 that Online Security was in a position to commence the search requested by Plaintiff.  *Id.* at ¶ 10.  Obviously, performing the search, conducting a privilege review, and dicussing the production with Mr. Butowsky by Christmas

would be impossible. Quainton Decl. at ¶ 18. Plaintiff's counsel contacted Defendants' counsel on December 23, 2020 and informed him that in light of the foregoing it would not be possible to meet the previously agreed deadline. Quainton Decl. at ¶ 19, Ex.7. Mr. Quainton informed Mr. Riley that Plaintiff's 61 search terms had generated 6,452 documents represent at total of 29,920 pages. *Id.* Mr. Quainton noted that based on his preliminary review of several hundred documents it would likely take 60 man-hours to perform the initial review. *Id.* at ¶ 20. Despite the huge volume of material, Mr. Quainton instructed an associate to begin working immediately and to treat this as a priority matter. *Id.* at ¶ 21. The initial review was complete on January 8, 2020. *Id.* at ¶ 22. While work on a privilege log has continued, counsel has been unable to make further progress on the production because he needs to confer with Mr. Butowsky first. *Id.* Based on Mr. Butowsky's health, it is not clear when this review can occur, although the initial results of Mr. Butowsky's surgery suggest that the review can be performed in the weeks ahead. *Id.* Given that Mr. Butowsky's deposition will likely be delayed at least several months, it is difficult to see how there could be any prejudice to Plaintiff under the circumstances. Mr. Quainton continues to work with OnLine Securiy to conduct a search of physical devices, but this will necessarily be deferred until Mr. Butowsky is out of the hospital and able to focus his attention on issues of discovery.

In sum, Mr. Butowsky has attempted in good faith to engage in discovery in this matter. His efforts have been hampered by a serious illness that has caused him debilitating pain for much of the last two years. The seriousness of the post-operative infection that has plagued Mr. Butowsky since his initial surgery was recently driven home in the most dramatic way imaginable, with Mr. Butowsky rushed to the emergency room and placed in the intensive care unit as his fever spiked to a potentially life-threatening level of 107 degrees and new surgery was eventually recommended. Despite Mr. Butowsky's condition, his counsel remains committed to

working in good faith with Plaintiff to complete discovery and provide Plaintiff with the material evidence in his possession. Under these circumstances, sanctions are completely uncalled for. *CapitalKeys, LLC v. CIBER, Inc.,* No. CIV.A. 11-00975 JDB, 2012 WL 2879022, at *2 (D.D.C. July 13, 2012)(conduct not so unreasonable as to require sanctions); *Edmond v. Am. Educ. Servs.*, 823 F.Supp.2d 28 (D.D.C.2011) (no discovery sanctions issued where party is inconvenienced by delays in production but not prejudiced); *Klayman v. Judicial Watch, Inc.*, 256 F.R.D. 258, 262 (D.D.C.), *aff'd,* 628 F. Supp. 2d 84 (D.D.C. 2009)( "willfulness or at least gross negligence" is required to justify the most severe discovery sanctions). Moreover, the present motion was entirely unnecessary. While Mr. Butowsky was unable to meet the Christmas deadline the parties had agreed to, this was not for lack of trying and it was evident he, his counsel and their expert were doing their utmost to provide documents in a timely fashion. There is no evidence that the parties could not have worked out their differences by the time of Mr. Butowsky's deposition had he not been hospitalized ten days before the deposition (which had itself been scheduled 11 days before the current discovery cut off, which Plaintiff knew Mr. Butowsky was seeking to extend). Plaintiff should not be able to recover fees for bringing an unnecessary motion. *Covad Commc'ns Co. v. Revonet, Inc.*, 267 F.R.D. 14, 30 (D.D.C. 2010)( "A near 'but for' relationship must exist between the [Federal Rules of Civil Procedure] Rule 37 violation and the activity for which fees and expenses are awarded").

Rather, Mr. Butowsky respectfully submits that the Court should work with the parties to set a new schedule for completing discovery that is realistic based on Mr. Butowsky's medical condition and the time remaining until his deposition.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's Motion for Sanction should be denied.

Dated January 13, 2020

        */s/ Eden Quainton*_____
        EDEN P. QUAINTON, ESQ. (D.C. Bar No. NY0318)
        QUAINTON LAW, PLLC
        1001 Avenue of the Americas, 11th Floor
        New York, New York 10018
        Telephone: (212) 813-8389
        E-mail: equainton@gmail.com
        *Attorneys for Defendant Edward Butowsky*

## **CERTIFICATE OF SERVICE**

The undersigned counsel certifies that on January 13, 2020, the foregoing document was filed through the CM/ECF system and thereby served electronically on counsel for Plaintiff Aaron Rich.

**QUAINTON LAW, PLLC**

*/s/ Eden Quainton*_____
EDEN P. QUAINTON, ESQ.
1001 Avenue of the Americas, 11th Floor
New York, New York 10018
Telephone: (212) 813-8389
E-mail: equainton@gmail.com
*Attorneys for Defendants Edward Butowsky and Matthew Couch*