# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AARON RICH<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>EDWARD BUTOWSKY,<br>MATTHEW COUCH, and<br>AMERICA FIRST MEDIA<br><br>　　　　　　　　Defendants. | Civil Action No. 1:18-cv-00681-RJL<br>Hon. Richard J. Leon |

## PLAINTIFF'S OPPOSITION TO
## DEFENDANTS' MOTION TO EXTEND OR STAY DISCOVERY

JOSHUA P. RILEY
MERYL C. GOVERNSKI
BOIES SCHILLER FLEXNER LLP
1401 New York Ave NW, Washington DC 20005

MICHAEL J. GOTTLIEB
WILLKIE FARR GALLAGHER LLP
1875 K Street NW, Washington, DC 20006

*Attorneys for Plaintiff Aaron Rich*

Plaintiff Aaron Rich respectfully submits this Opposition ("Opposition") to Defendants' Motion to Extend or Stay Discovery ("Motion" or "Def. Mot."), Dkt. 106 (public); Dkt. 103-2 (sealed).

## INTRODUCTION

Plaintiff filed this lawsuit in March 2018—22 months ago—to seek accountability for false statements that Defendants Edward Butowsky, Matthew Couch, and America First Media ("AFM") published about Plaintiff and his brother, Seth Rich, who was murdered in 2016. Among other things, Defendant Butowsky orchestrated the publication of two widely-circulated articles, one by Fox News in May 2017 and one by The Washington Times in March 2018, falsely stating that Plaintiff and/or his brother transferred DNC documents to WikiLeaks before the 2016 election. Defendant Butowsky enlisted Defendants Couch and AFM as mouthpieces for his false statements about the Plaintiff, including by providing Defendants Couch and AFM with financial support and "information" for their "investigations" into Seth Rich's murder.[1]  Defendants Couch and AFM, who have more than 200,000 social media followers, have published false statements accusing Plaintiff of receiving money from WikiLeaks in exchange for the DNC documents and of knowing in advance that his brother was going to be murdered.[2]

---

[1] *See, e.g.*, Ex. 1 at …104 (Butowsky: ███████████████████████████████████████████████████████████████████████████████████ ); Dkt. 95-10 at 10 of 13 ("All information reported on Aaron Rich, WikiLeaks, Money, and Emails came from defendant Butowsky.").  All exhibits refer to those attached to the Declaration of Meryl Governski ("Governski Decl.").

[2] *See, e.g.*, Dkt 3 ¶¶ 40-43, 49-65.

When Plaintiff filed this lawsuit, Defendants Couch and Butowsky boasted that they would use civil discovery to prove their publicly discredited theories about Plaintiff and his brother.[3] Now, having sat on their rights for more than a year-and-a-half, and having failed to identify a *shred* of evidence supporting their false statements, Defendants demand more time just weeks before the close of discovery.  They assert that they require additional time to obtain supposed "evidence" that there is no reason to believe exists and/or which they have made no meaningful efforts to obtain.

Defendant Butowsky separately claims that health issues have rendered him unable to participate in this litigation.  That representation lacks credibility.  During the same time period in which he claims disability, Defendant Butowsky actively has pursued numerous personal and professional endeavors, and he has continued to make false statements about Plaintiff and his brother.  Those endeavors include the *six* cases Defendant Butowsky has filed as a plaintiff *since April 2018*, including some that overlap substantially with this litigation.  Defendant Butowsky's declaration does not disclose that litigation blitz, nor does he mention that in his lawsuit against NPR, he *opposed* a stay of discovery on the following basis: "Delay prejudices victims – evidence is lost, memories fade, costs increase.  Delay clogs up the Courts and negatively impacts the public's perception of Judges, Lawyers and the quality of Justice."[4]

Mr. Butowsky's argument in the NPR Lawsuit applies with greater force here.  Plaintiff has been waiting for nearly two years to clear his name and hold the Defendants accountable.

---

[3] *See, e.g.*, Ex. 2 ("We cannot fight the legal battles, and everything else we're fighting without the help of so many Patriots.  Thanks to those of you who've joined the Fight for the Truth and Justice. The Storm is Coming! #AmericaFirstMedia #Seth Rich (linking to AFM funding platforms)); Ex. 3 (Butowsky: "when I go full throttle on discovery, if I do, I will expose everything."); *see also* Ex. 4 (Butowsky to Plaintiff: "discovery is going to be interesting").

[4] Ex. 5 at 2 ("NPR Lawsuit").

Having worked diligently to meet the deadlines in the Court's Scheduling Order, Plaintiff should not be forced to wait longer after he has done everything, and Defendants have done nearly nothing, to meet the deadlines to which all parties stipulated in the Scheduling Order.  Plaintiff is entitled to have this matter brought to trial without further delays, so that he and his family may finally obtain some measure of closure as to the nightmare that has enveloped them since Seth Rich was murdered some three-and-a-half years ago.

## ARGUMENT

"A Scheduling Order is intended to serve as the unalterable road map (absent good cause) for the remainder of the case" and "is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril" because doing so "would undermine the court's ability to control its docket, disrupt the agreed-upon course of litigation, and reward the indolent and the cavalier."  *Dag Enters., Inc. v. Exxon Mobil Corp.*, 226 F.R.D. 95, 104 (D.D.C. 2005) (internal citations and quotations omitted).  "Once the schedule is set at the scheduling conference, the presumption should be firmly against the granting of continuances." *Olgyay v. Soc'y for Envtl. Graphic Design, Inc.*, 169 F.R.D. 219, 220 (D.D.C. 1996).

In determining whether good cause exists to modify a discovery schedule, the relevant questions are whether the moving party was diligent in obtaining discovery, whether trial is imminent, whether the request is opposed, whether the non-moving party would be prejudiced, the foreseeability of the need for additional discovery, and the likelihood that discovery will lead to relevant evidence.  *See In re Rail Freight Fuel Surcharge Antitrust Litig.*, 281 F.R.D. 12, 14 (D.D.C. 2011).  The moving party has the burden to establish good cause for a modification of a scheduling order.  *See Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.*, 630 F.3d 217, 226 (D.C. Cir. 2011).  Here, Defendants have not carried their burden of establishing good cause to

4

modify the Scheduling Order, to which Defendants and their counsel stipulated, and which sets January 27, 2020, as the close of fact discovery.

Defendants have no credible claim to have exercised diligence in obtaining discovery.  *See infra* § I.  Plaintiff began serving third-party subpoenas on June 8, 2018,[5] and party discovery began on April 22, 2019, yet Defendants inexplicably waited until mid-October 2019 (nearly six months later) to serve party discovery, and they waited until December 2019 (just last month) to issue their first subpoena notice.  *See id.*  As of the date of their Motion, Defendants had issued just *one* deposition notice in this case—and that deposition did not go forward because Defendants' counsel neglected to serve the witness with a subpoena for his appearance.  *See id.* Defendants repeatedly have missed deadlines, and they have failed to produce documents and discovery responses, even when faced with motions from Plaintiff or orders from the Court.  *See id.*  Instead, they have dedicated their attention to litigating their cases via social media accounts and interviews, and in the case of Defendant Butowsky, through sprawling parallel litigation brought in other federal and state courts.  *See id*.  By contrast, Plaintiff has responded timely and thoroughly to all of Defendants' requests for documents and written discovery, not once seeking an extension of time from Defendants or this Court, and Defendants do not contend otherwise.  *See id*.

Instead of engaging diligently in discovery, Defendants each offer inadequate excuses as to why they have failed to do so.  Defendant Couch claims that he has been precluded from taking discovery, but the record shows otherwise.  Defendant Couch has been represented by counsel since *before* the Scheduling Order was entered; he has served written discovery requests to

---

[5] *See* Dkt. 39.

Plaintiff (to which Plaintiff thoroughly and timely responded); nothing has prevented him from taking depositions (and Plaintiff long ago told him he would not oppose a request for the Court to give him express permission to do so); and the reason he has not taken any depositions is because he has made no effort to do so.  *Infra* at § I.A.

Defendant Butowsky claims that medical issues have rendered him unable to focus on or participate in this case.  *See infra* § I.B.  Plaintiff's counsel takes an opposing party's claims of disability very seriously and has made every effort to accommodate Defendant Butowsky's most recent medical issue (which was not reported to Plaintiff until the first week of January 2020) by agreeing to delay his deposition beyond the close of discovery.  *See id.*  That said, Defendant Butowsky's claims of disability to do not warrant a modification to the Scheduling Order.  There is no explanation or justification as to why Defendant Butowsky chose to wait until just three weeks before the close of discovery to raise a claim of medical disability; he did not, for example, raise these claims in response to Plaintiff's prior motions to compel discovery, even though Defendant Butowsky was represented by counsel at the time.  *See id.*  Moreover, the record shows that during the same time periods in which Defendant Butowsky claims to have been unable to participate in this litigation, he actively has: pursued litigation as a *plaintiff* in *six separate lawsuits* (and *opposed* a stay of discovery in at least one of those cases); orchestrated the publication of defamatory statements against Plaintiff; and pursued personal and professional endeavors, from trips abroad to media appearances.  *See id.*

Defendants also argue that they require more time to obtain "new" evidence, but that argument does not withstand scrutiny.  *See infra* § II.  First, Defendants claim that they need more time to obtain a "purported" FBI report, but this is the same alleged report that Defendant Butowsky has tried unsuccessfully to uncover and reveal since at least January 2017.  *See id.* §

6

II.A.  After three years of failed efforts to do so, it is irrational to presume, as Defendants' Motion asks this Court to do, that the reason this supposed FBI report has not surfaced is because of a shadowy government conspiracy to conceal it.  *See id*.  The obvious explanation as to why Defendant Butowsky's considerable efforts to uncover this alleged report have failed is that the report does not exist, and Defendants have pointed to no evidence, of any kind, to suggest (let alone prove) otherwise.  *See id*.  Second, Defendants claim that they need more time to find supposed NSA documents that were brought to their attention by mysterious, unidentified—even unknown—"sources," but they simultaneously admit that "it is not clear whether" the purported NSA documents even "relate to Seth Rich."  *See infra* § II.B.  Third, Defendants claim (for the first time) that they need more time to depose WikiLeaks' founder, Julian Assange— notwithstanding that they did not even bother *trying* to secure that deposition until *after* they filed the present Motion, despite having relied for years on alleged statements about Plaintiff and his brother that Defendants have attributed to Mr. Assange.  *See infra* § II.C.  In sum, none of this supposed "new evidence" constitutes good cause for modifying the Scheduling Order; it is, rather, more of the same baseless innuendo and tin-hat speculation that led to this litigation in the first place.

Plaintiff opposes an extension of the discovery deadline, and he would suffer substantial prejudice if Defendants' Motion were granted.  *Infra* § III.  Since this case began in March 2018, Defendants have *continued* to publish false statements about Plaintiff and his brother.[6]  Plaintiff is

---

[6] *See, e.g.*, Ex. 6 at 7:17-20 (Butowsky on June 26, 2018: "Aaron and Seth – were the ones who downloaded the e-mails from the DNC server."); Ex. 7 at 24 (Defendant Couch on Dec. 29, 2019: "Ed Butowsky also told America First Media Group that money went into Aaron Rich's bank account via Wikileaks.  He was our source on this back in August of 2017.  He also said that Aaron ad Seth were involved and worked together on the leaking of documents to Wikileaks."); Ex. 8 at 12:24-13:1 (Defendant Butowsky on July 30, 2019: Plaintiff is "involved to some degree" with

entitled to have this matter brought to trial without further delays, so that he and his family may finally obtain some measure of closure as to the nightmare that has enveloped them since Seth Rich was murdered some three-and-a-half years ago. *See id*. In addition, Plaintiff has made strategic litigation decisions in reliance on this Court's Scheduling Order, including decisions about what depositions to notice, document requests and third-party subpoenas to serve, and motions to file, and in what order. *See id*. Those decisions cannot be walked back. If Defendants are successful, they will have achieved a substantial strategic advantage over Plaintiff by having sat idly for many months, only to obtain a new discovery period of their own *after* Plaintiff went to great effort to complete discovery under the schedule to which Defendants agreed and the Court ordered. *See id*. Finally, all of Plaintiff's efforts to comply with this Court's Scheduling Order have been in good faith, including a substantial amount of time and resources devoted by Plaintiff's counsel, who represent Plaintiff pro bono and whose schedules throughout discovery and for the coming six months have been constructed in reliance on the agreed-upon Scheduling Order. *See id*. It would be inequitable and prejudicial to reward Defendants for their lackadaisical approach to this case, and this Court should reject their request to do so.

## I.     Defendants Have Not Been Diligent In Obtaining Discovery.

If the moving party "was not diligent, the inquiry should end." *St. Paul Mercury Ins. Co. v. Capitol Sprinkler Inspection, Inc.*, No. 05–2115 (CKK), 2007 WL 1589495, at *6 (D.D.C. June 1, 2007) (citation and internal quotation omitted); *see also Dunning v. Ware*, 253 F. Supp. 3d 290, 294 n.1 (D.D.C. 2017) (Leon, J.) (denying motion where moving party "offered no valid justification for his failure to take these depositions during the discovery period in this

---

DNC emails); *see also, e.g.*, Dkt. 78 at 2 n.2 (citing post-complaint tweets by Defendants Couch and AFM).

case"), *aff'd*, No. 17-5146, 2018 WL 1052765 (D.C. Cir. Feb. 1, 2018). This is not a close question on the record before this Court. Defendants have not diligently conducted discovery, and they have no valid excuse for their delays.

Plaintiff filed this lawsuit on March 26, 2018.[7]  Two days later, Defendant Butowsky called Plaintiff's counsel and declared, in a voicemail, that "I'm probably not even gonna hire a lawyer. This is a stupid lawsuit," and "I'm not gonna waste any money on – on this."[8] Defendant Butowsky is insured, and appears to have financial means to afford counsel in this case, and he in fact has been represented by counsel for nearly all of the period of discovery in this litigation.[9]

Throughout the duration of this case, Defendants repeatedly have missed or ignored deadlines, necessitating motions to compel Defendants' compliance with basic discovery obligations.[10]  As explained in Plaintiff's recent motion to enforce the Court's prior discovery order, Defendant Butowsky still has not produced what appears to be thousands of responsive documents that should have been produced months ago, and Defendant Butowsky's counsel still

---

[7] *See* Dkt. 3.

[8] *See* Ex. 9 at 2:4-20.

[9] Defendant Butowsky was represented by Ty Clevenger between April 11, 2018 and June 26, 2018, and by Kenneth A. Martin from May 15, 2018 until August 27, 2018. *See* Ex. 10; Dkt. 31; Dkt. 37. Phillip Harvey entered an appearance on July 9, 2019, Dkt. 66, but then filed a motion to withdraw as Defendant Butowsky's attorney on October 11, 2019, Dkt. 82. Eden Quainton entered an appearance on behalf of Defendant Butowsky on November 13, 2019. Dkt. 92. Defendant Butowsky has been represented by Mr. Clevenger, as well as Steven S. Biss, in related litigation in Texas since at least June 2018. *See* Ex. 11. *See also* Dkt. 83-3 at 4 ("Mr. Butowsky has a State Farm insurance policy . . . inclusive of litigation expenses.").

[10] *See, e.g.*, Dkt. 14 (stipulation for extension of time); Dkt. 15 (same); Dkt. 30 (missed deadline); Dkt. 55 (same); Dkt. 63 (Plaintiff motion to compel because Defendant did not respond to discovery); Dkt. 64 (missed deadline); Dkt. 68 (Plaintiff motion to compel because Defendant did not respond to discovery); Dkt. 71 (same); Dkt. 87 (missed deadline); Dkt. 93 (Plaintiff motion to enforce Court's discovery order); Dkt. 95 (Plaintiff motion to compel improperly withheld documents); Dkt. 104 (Plaintiff motion to compel filed because Defendant did not respond to discovery).

has not explained when Plaintiff will receive those documents.[11]   Plaintiff has been left to learn about responsive evidence in Defendant Butowsky's control through his Twitter feed, where he has published information that he has not produced,[12] or more recently through his Motion, which for the first time disclosed information about "sources" on whom Defendant Butowsky purportedly relies—even though he does not know their identity.   *See infra* § II.B.

Defendants' disregard for their discovery obligations in this case stands in contrast with Plaintiff's diligence in responding to Defendants' discovery requests.   Since mid-October 2019, Defendants served on Plaintiff 46 interrogatories, 78 requests for admissions, and 49 document requests.[13]   Plaintiff timely responded to all of those requests, not once seeking an extension from Defendants or this Court, and as of the date of this filing, Defendants have not presented Plaintiff with a proposed discovery motion as to any specific deficiency in Plaintiff's discovery responses.[14] With respect to document productions, Plaintiff has produced nearly 2,000 documents on a rolling basis from November 15 to January 13.[15]   Plaintiff notified Defendants in November 2019 that Plaintiff would be available to sit for a deposition in January, but Defendants' counsel did not

---

[11] *See* Dkt. 95; *see also* Dkt. 109.

[12] As one example, on December 16, 2019, Defendant Butowsky published a tweet stating: "Ellen Ratner was my source from Assange who asked her, who then, asked me to share info with Seth Rich's parents about Seth selling the emails to Wikileaks.  I've resisted sharing recordings proving that she is lying. She keeps lying, I keep proving it."   Ex. 12.  Defendant Butowsky had not produced the audio in the course of discovery (even though he was under a Court order to do so), and he did so only after Plaintiff's counsel saw the tweet and demanded the production.  *See id.*; *see also* Ex. 13.

[13] Exs. 14-17; *see also* Governski Decl. ¶ 2.

[14] *See* Governski Decl. ¶¶ 3-4.

[15] *See id.* ¶ 5.   Defendants began serving party discovery in mid-October 2019.  Plaintiff produced 273 documents on November 15, 2019; 492 documents on November 27, 2019; 512 documents on December 24, 2019; 353 documents on January 2, 2020; 358 documents and a privilege log on January 10, 2020, and 5 documents on January 13, 2020.  *Id.* ¶¶ 2, 5.

notice a deposition for Plaintiff until January 8, 2020, at which time they issued a subpoena to depose Plaintiff in his capacity as administrator of his brother's estate—even still, Plaintiff has offered multiple dates and locations for his deposition to take place before the close of discovery, and preparations now are underway for Plaintiff to be deposed on Sunday, January 26, 2020.[16]

Defendants did not notice a third-party subpoena in this case until December 5, 2019, and they did not notice a deposition in this case until December 19, 2019—despite having had the better part of a year to do so following this Court's denial of Defendants' motions to dismiss. The one deposition that Defendants noticed before filing their Motion has not yet occurred because Defendants' counsel did not make arrangements for it to occur, such as serving the witness with a subpoena for his appearance.[17] While Defendants' Motion makes reference to difficulties serving certain witnesses,[18] that claim is unsubstantiated—Defendants have offered no declaration detailing what efforts Defendants have made to serve any of these witnesses, and it is unclear whether Defendants did *any* work to locate them, or whether Defendants considered possible methods of service through counsel or otherwise, prior to last month. To date, Defendants have

---

[16] *See id.* ¶ 6. Two days after filing their Motion, Defendants noticed Plaintiff's deposition in his capacity as administrator of Seth Rich's estate. Defendants *still* have not noticed Plaintiff's deposition in his capacity as a party to this litigation. Plaintiff has either taken or has noticed and served subpoenas for nine out of his 10 available depositions (reserving the last for Julian Assange). Pursuant to an agreement with Defendants, Plaintiff will take one deposition on January 28, 2020, and will take the deposition of Defendant Butowsky on a date be determined. The remaining depositions are subject to a pending motion before this Court, Dkt. 114, and on-going negotiations with counsel (who happens to be the same attorney representing the Defendants).

[17] *See* Exs. 18-19. Within days of filing their Motion, in an apparent rush to notice depositions before the close of discovery, Defendants issued notices to depose Seth Rich's girlfriend in Michigan on January 22, 2020; the estate of Aaron Rich in D.C. on January 23, 2020; Brad Bauman in D.C. on January 24, 2020; the former bartender at Lou's City Bar, Joe Capone, in D.C. on January 27, 2020; and D.C. Metropolitan Police Department Detective Joseph Della Camera in D.C. on January 27, 2020. *See* Exs. 20-21.

[18] *See* Def. Mot. at 3.

wasted months of discovery without taking any reasonable steps to obtain the "evidence" they now claim to be critical for this case.

Each Defendant has offered separate excuses for why he failed to pursue discovery diligently in this case. As discussed below, none of those excuses has any merit.

## A. Defendant Couch

Defendant Couch claims that he "was unrepresented until November 7, 2019 and has been forced to play 'catch-up' and has had little time to prepare his own defense."[19] That is misleading. In fact, as Defendant Couch previously represented to this Court in writing, Defendant Couch engaged and received assistance from his current counsel no later than August 2019.[20] Thus, Defendant Couch has had the benefit of counsel advising him for *the entire period* since the Scheduling Order was entered. In addition, Defendant Couch claims to have received legal advice from one of Defendant Butowsky's former attorneys prior to that time.[21] Regardless, it was Defendant Couch's decision to proceed without legal representation in this case. He has never filed with this Court any documentation that would support a claim to being indigent, and the record shows that he raised at least $80,000 from his followers to support his efforts.[22] He is not entitled to special treatment as a result of his choice to proceed *pro so* for a portion of this litigation.

---

[19] *Id.*

[20] S*ee* Dkt. 76 at 1 n.1.

[21] Dkt. 95-12.

[22] *See, e.g.*, Dkt. 96 at Exhibit 7 at 394:16-23; Ex. 2 ("We cannot fight the legal battles, and everything else we're fighting without the help of so many Patriots. (linking to AFM funding platforms)); Ex. 22 ("Help me fight back and keep investigating for the truth in our Investigations. Can we raise $100 this hour?" (linking to AFM funding platforms)); Ex. 23 ("Hey Patriots, We're trying to raise $1500 this week as we need to pay for Airfare and Hotel for our Attorneys for a deposition I have coming up with those suing us in two weeks. Anything helps, we can't fight this battle without you. Thank You!" (linking to AFM funding platforms"))).

*See MacLeod v. Georgetown Univ. Med. Ctr.*, 736 A.2d 977, 979 (D.C. 1999) (pro se litigants "can expect no special treatment from the court" and "must not expect or seek concessions because of . . . inexperience and lack of trial knowledge and training" (citations and internal quotations omitted)).

Defendants also argue that "Mr. Couch has been unable even to notice depositions in light of the Court's prior order barring him from doing so."[23] However, on October 14, 2019, and again on October 21, 2019, Plaintiff's counsel indicated to Defendants' counsel that Plaintiff had no objection to Defendant Couch seeking formal permission to take depositions in light of Defendant Couch having retained qualified counsel.[24] Inexplicably, Defendant Couch waited for more than two months, until January 6, 2020, to file a motion seeking permission to take depositions.[25] There is no excuse for this delay, and Defendant Couch should not benefit from it.[26] Regardless, even if Defendant Couch *had* been precluded from taking depositions (which he was not), it still would not explain why Defendants together have taken *zero* depositions in this case to date, as Defendants are jointly represented by counsel who appears to believe that his clients share a common interest,

---

[23] Def. Mot. at 3.

[24] *See* Dkt. 83 at 1 n.1; Ex. 24.

[25] *See* Dkt. 102.

[26] Defendant Couch also claims that he has been unable to serve discovery because of "third party witnesses' successful efforts to evade service of subpoenas." Def. Mot. at 3. While Defendants casually accuse third parties of evading service, they have not provided evidence of their efforts, if any, to effectuate service, and the declaration their counsel submitted indicates that Defendants have been unsuccessful in serving subpoenas because they attempted service during the holidays or at incorrect addresses. *Compare* Def. Mot. at 3 ("process has been marred with . . . third-party witnesses' successful efforts to evade service of subpoenas"), *with* Quainton Decl., Dkt. 106-1 ¶ 3 (unable to serve former D.C. police chief Cathy Lanier because she was "on vacation out of the country"); *id.* ¶ 4 (unable to serve Brad Bauman in D.C. on December 5, 2019 and attempting, instead, to serve him in Florida on December 19, 2019); *id.* ¶ 5 (unable to serve Kelsey Mulka in D.C. on December 5, 2019 because of a "padlocked" residence and attempted to serve her instead on December 24, 2019 in Michigan).

and there is no dispute that Defendant Butowsky has been authorized to take depositions since the Court's July 31 order.[27]

The balance of Defendant Couch's argument amounts to re-litigating the Court's July 31 Order granting Plaintiff's motions to compel Defendants to participate in discovery.[28]  However, as Defendants acknowledge, they already asked the Court to reconsider that Order, and the Court has denied that motion.[29]  Defendant Couch again accuses Plaintiff of engaging in wrongdoing by participating in an *ex parte* hearing—yet sidesteps the fact that his co-defendant, with whom he now shares counsel, actively participated in the same conference through counsel.[30]  Defendants further claim that, during the hearing on the motions to compel, Plaintiff's "Counsel failed to inform the Court that there were two separate motions to compel, one directed at Mr. Butowsky, who had elected not to file an opposition, and one directed at Mr. Couch, who had not been provided an opportunity to respond."[31]  The transcript of the hearing shows that claim to be misleading at best and inaccurate at worst.[32]

### B.    Defendant Butowsky

Defendant Butowsky's central claim is that he should be excused from his obvious neglect because he has been suffering from longstanding medical issues, but two separate issues must be

---

[27] *See* 7/31/2019 Minute Order; Dkt. 75 at 8:19-22.

[28] Motion at 15-16.

[29] *See id.* at 16; Dkt. 76; Dkt. 79.

[30] Motion at 16-17.

[31] *Id.* at 16.

[32] *See* Dkt. 75 at 5:4-10 (Plaintiff's Counsel: "So we have pending before the Court currently I believe three motions to compel; a motion to compel with respect to documents from Mr. Butowsky, a motion to compel with respect to interrogatory responses from Mr. Butowsky, a motion to compel with respect to documents from Mr. Couch and American First Media."); *see also id.* at 5:11-12 ("I'm going to grant ***all three*** motions to compel." (emphasis added)).

addressed with respect to that claim.  The first issue is what reasonable accommodations should be made in light of Defendant Butowsky's representations as to his most recent medical condition, a surgery that he underwent last week; the second is whether Defendant Butowsky should be excused for his lack of diligence in the 22 months leading up to those representations.  As to the first issue, Plaintiff already has reached agreement with Defendants' counsel on delaying Defendant Butowsky's deposition, which had been long scheduled for January 16, 2020.[33]  As to the second issue—Defendant Butowsky's claim of lengthy medical disability that has rendered him unable to attend to this litigation—that  claim was raised for the first time in Defendants' Motion, is belied by the record, and does not amount to good cause to delay this litigation.  *See Koch v. White*, 251 F. Supp. 3d 162, 180 (D.D.C. 2017), *aff'd sub nom. Koch v. Clayton*, No. 17-5180, 2018 WL 4871160 (D.C. Cir. Sept. 19, 2018) (denial of extension because moving party "has demonstrated an ability to file lengthy, substantive pleadings during this very time period, as well as simultaneously pursue FOIA requests, severely undermining [his] assertion that his physical limitations prevent him from" filing a timely response).

From April 2018 (the month after Plaintiff filed this lawsuit) to August 2019 (the month after the Court held its first status conference and ordered Defendant Butowsky to participate in discovery), a period during which Defendant Butowsky claims disability, Defendant Butowsky filed *six* lawsuits against nearly *fifty* defendants—including some of Plaintiff's counsel in this case—seeking millions of dollars based on claims that the defendants in those cases defamed Defendant Butowsky by reporting on Defendant Butowsky's role in peddling conspiracy theories

---

[33] Counsel for Defendant Butowsky has not yet provided Plaintiff with a date certain for the rescheduled deposition.  *See* Dkt. 109 at 5.

or by alleging that Defendant Butowsky had defamed them (or their clients).[34]  In those lawsuits, Defendant Butowsky consistently has been represented by counsel.  During the course of those cases, Defendant Butowsky has filed at least four amended complaints, more than a dozen motions (including motions to compel) and opposition briefs, and, to Plaintiff's counsel's knowledge, has not raised his medical condition as an issue that would prevent him from engaging in litigation.[35] In fact, in one of those cases, Defendant Butowsky *opposed* a motion for a stay, stating: "Delay prejudices victims – evidence is lost, memories fade, costs increase.  Delay clogs up the Courts and negatively impacts the public's perception of Judges, Lawyers and the quality of Justice."[36] Defendant Butowsky offers no explanation as to why he has been capable of pursuing active litigation elsewhere as a plaintiff but somehow was rendered unable to focus on his discovery obligations as a defendant in this matter during the same time period.

The following are among just some of the actions Defendant Butowsky has taken as a plaintiff in other litigation during the same period for which he claims disability with respect to this case:

- On April 23, 2018, Defendant Butowsky filed suit against 11 defendants including Charles Schwab.[37]

---

[34] *See* Ex. 25 (April 23, 2018 lawsuit against 11 defendants including Charles Schwab); Ex. 11 (June 21, 2018 lawsuit against 12 defendants relating to NPR's reporting on the Rich Family's lawsuits) ("NPR lawsuit"); Ex. 26 (March 6, 2019 lawsuit against law firm representing Plaintiff's parents); Ex. 27 (March 12, 2019 lawsuit against 22 defendants, including certain of undersigned counsel); Ex. 28 (July 31, 2019 lawsuit against Rod Wheeler and law firm representing him); Ex. 29 (August 1, 2019 lawsuit against the DNC, Crowdstrike, and DNC law firm).  Defendant Butowsky has not dismissed the lawsuit against certain of Plaintiff's counsel despite this Court suggesting that his former counsel "strongly recommend" he do so.  Dkt. 75 at 21:19-23.  Some of his other lawsuits have been dismissed.

[35] *See* Governski Decl. ¶ 7.

[36] Ex. 5 at 2.

[37] *See* Ex. 25.

- On June 21, 2018, Defendant Butowsky filed the NPR Lawsuit.[38]

- On December 14, 2018, Defendant Butowsky opposed a stay in the NPR Lawsuit.[39]

- On March 6, 2019, Defendant Butowsky filed suit against certain counsel representing Plaintiff's parents in state court, and on March 12, 2019, he filed suit against more than two dozen media and attorney defendants including certain of Plaintiff's counsel.[40]  He amended the NPR Lawsuit on March 5, 2019.[41]

- On July 15, 2019, Defendant Butowsky amended the Complaint against certain of Plaintiff's counsel, including to add an allegation that Ellen Ratner told Defendant Butowsky information about Plaintiff *and* his brother, and on July 31, 2019 filed a second amended complaint to admit that Ms. Ratner did not, in fact, make any representations about Plaintiff.[42]

- On July 31, 2019, Defendant Butowsky filed suit against *inter alia* Mr. Wheeler and his attorneys.[43]

- On August 1, 2019, Defendant Butowsky filed suit against the DNC, the law firm that represents the DNC, and Crowdstrike.[44]

---

[38] Ex. 11.

[39] Ex. 5.

[40] Exs. 26-27.

[41] NPR Lawsuit, Dkt. 54.

[42] *See Butowsky v. Gottlieb et al.*, 4:19-cv-00180-ALM-KPJ (E.D. Tex. July 15, 2019), Dkt. 62 (first amended complaint); *id.* Dkt. 101 (second amended complaint).  Plaintiff's counsel has filed a Rule 11 motion against Defendant Butowsky and his counsel, which is fully briefed and remains pending.  *See id.* Dkts. 156, 172, 176.  Defendant Butowsky has agreed to stay discovery as to Plaintiff's counsel in that lawsuit, but not as to other defendants or third parties.  *See id.* Dkt. 175.

[43] Ex. 28.

[44] Ex. 29.

- On October 10, 2019 and October 11, 2019, Defendant Butowsky filed motions to compel the FBI to comply with the subpoenas he served in his lawsuit against Plaintiff's counsel and the NPR Lawsuit, respectively.[45]

Defendant Butowsky's claims of disability also are belied by his continued and ongoing actions to promote false conspiracy theories about Plaintiff and Plaintiff's brother during the same periods when he says that he has been unable to focus on the issues in this case.  Even without the benefit of potentially thousands of responsive documents that Defendant Butowsky still has not produced, the record nonetheless shows, for example:

- On the day Plaintiff filed this lawsuit, when Defendant Butowsky claims to have been suffering from "debilitating pain" that had prevented him from air travel for "months," Defendant Butowsky simultaneously ███████████████████████████
  ████████████████████████[46]

- Between October 2017 and July 2018, including on December 5, 2017 (two days after Defendant Butowsky claims to have been in the emergency room and the day he says his pain "worsened" and he was referred to tests and surgery), Defendant Butowsky ████████████████████████████████████████████████
  ████████████████████████████████████████████████
  ████████████████████████████████████████████████
  ████████████████████████████████████████████████
  ███[47]

---

[45] *Butowsky v. Gottlieb et al.*, 4:19-cv-00180-ALM-KPJ (E.D. Tex. Oct. 10, 2019), Dkt. 160; NPR Lawsuit, Dkt. 75.

[46] *Compare* Butowsky Decl. ¶¶10-11, *with* Ex. 1 at …106-07.  During the same time period, ███████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
██████████████████.  Ex. 30.  Defendant Butowsky has previously represented to this Court that he does not "conduct any business in the District of Columbia."  Dkt. 19-1 ¶3.

[47] *Compare* Butowsky Decl. ¶¶4-5, *with* Ex. 1 at …018

- On June 2, 2018, Defendant Butowsky ████████████████████████████████████████████████████████████████ [48]

- On June 26, 2018, Defendant Butowsky conducted an interview with Newsmax in which Defendant Butowsky stated "Aaron and Seth – were the ones who downloaded the e-mails from the DNC server."[49]

- On June 26 and June 27, 2018, Defendant Butowsky left voice messages for Rod Wheeler's attorney, demanding meetings in New York for which Defendant Butowsky would ██████████████ [50]

- Throughout October 2018, Defendant Butowsky ████████████████████████████████.[51]

- On April 17, 2019, Defendant Butowsky ████████████████████████████████████████████████████████████████[52]

- On July 26, 2019, Defendant Butowsky gave an interview to Consortium News in which he discussed what he falsely accused Plaintiff's father of having admitted to Defendant Butowsky that Plaintiff's father knew that the Rich brothers were involved in the DNC document leak.[53]

- On July 30, 2019, Defendant Butowsky gave an interview to America, Can We Talk?, in which he (in his own words) provided a "very detailed account of what really happened with me and the Seth Rich story," including by stating that Plaintiff "is involved to some degree" in leaking the DNC emails.[54]

---

[48] Ex. 31.

[49] Ex 6 at 7:17-20.

[50] Exs. 32-33.

[51] Ex. 34 ████ Ex. 35 ████████ ; Ex. 36 ████ ; Ex. 37 ████ ; Ex. 38 ████ ; Ex. 39 ████████.

[52] Ex. 40.

[53] Ex. 41 at 8:9-24.

[54] Ex. 42; Ex. 8 at 12:24-13:1.

- On September 14, 2019, Defendant Butowsky gave an interview to Ark Midnight in which he discussed his communications with the Rich Family and stated (falsely) that Joel Rich had admitted to Defendant Butowsky that his children were involved in leaking the DNC emails.[55]

- Since March 2017, Defendant Butowsky has published more than 240 tweets, including dozens that pertain to issues in this litigation.[56] For example, in a February 18, 2019 tweet, he posted a Big League Politics story that accused Plaintiff of having "[b]locked WikiLeaks Inquiries," and in a July 21, 2019, tweet, he published a video he described as evidence "that Seth Rich and friends sold emails to WikiLeaks."[57] Just four days before filing the Motion, Defendant Butowsky took to Twitter to write about his "telephone discussion" with Mr. Hersh "in regards to Seth Rich."[58]

- In October, November, and December 2019, Defendant Butowsky published a book, attended related book signings and promotional events, and conducted multiple media interviews about a variety of topics including the economy and Boeing.[59]

- Photographs posted on Defendant Butowsky's social media reflect his ability to attend movie premiers, participate in book signings, and travel to cities in the U.S. and abroad, including to what appears to be Venice, Italy, as recently as late November.[60]

Even if the history recounted above were less clear as to Defendant Butowsky's active pursuit of his interests, it nonetheless remains unclear why Defendant Butowsky's health problems from August 2019 to January 6, 2020, prevented his *counsel* from pursuing discovery diligently. The vast majority of civil discovery tasks (such as the production of documents, taking or

---

[55] Ex. 43 at 15:1-17:7.

[56] *See* Governski Decl. ¶ 8; *see also, e.g.*, Ex. 44.

[57] Exs. 45-46.

[58] Ex. 47.

[59] *See, e.g.*, Ex. 48.

[60] Ex. 49.

defending depositions, issuing subpoenas, and engaging in motions practice), can (and generally are) performed primarily by counsel.  It bears repeating that during this period of time, Defendant Butowsky's counsel have litigated his claims in federal and state courts elsewhere.  Only in this case, and only now, does Defendant Butowsky allege that he has been unable to bring sufficient focus to his claims and legal obligations.

One factual statement in Defendant Butowsky's declaration perhaps illustrates why Defendant Butowsky's representations do not deserve the benefit of the doubt—specifically, Defendant Butowsky falsely claims that Plaintiff's allegations against him are "absurd" because he has "said virtually nothing in connection with Aaron Rich."[61]  The record shows that assertion to be plainly false.[62]  To take just one example, Defendant Butowsky drafted the article that was published in The Washington Times in March 2018 under James Lyons's name, which falsely accused Plaintiff and his brother of leaking the DNC emails to, and receiving money from, WikiLeaks.[63]

---

[61] Butowsky Decl. ¶ 10.

[62] *See, e.g.*, Dkt. 3 ¶ 40 (Defendant Butowsky: "Aaron Rich needs to come out and admit money is in his account."); *id.* ¶ 65 (Defendant Butowsky: ". . . files from DNC were downloaded by Arron [*sic*] and Seth Rich."); *id.* ¶ 80 (same); Ex. 50 (Defendant Butowsky "has told the Gateway Pundit that during a December 2016 conversation with the father of the slain staffer he confirmed that he 'knew what his sons did.'"); Ex. 51 (Butowsky: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮); Ex 52 (The Washington Times: "According to Ed Butowsky, . . . in his discussions with Joel and Mary Rich, they confirmed that their son transmitted the DNC emails to Wikileaks."); Ex. 53 at …686 (Defendant Butowsky: "Sure looks like Aaron had a roll [*sic*] him [*sic*] his death or possibly in selling the wiki leaks."); Ex. 54 at 29:2-5 ("[M]aybe Aaron's life is at risk because of the relationship between what they did together.") Ex. 55 (Defendant Butowsky: "Lets discuss [Plaintiff's] email address"); *see also* Governski Decl. ¶ 8.

[63] While Defendants assert that "Plaintiff waited many months after the initial allegedly defamatory tweets were published before initiating legal action likely in order to put in place his politically-driven media strategy," Def. Mot. at 5, the fact is that Plaintiff filed his 60-page complaint just 25 days after the publication of the Washington Times article, *see* Dkt. 3.

On February 24, 2018, 

The next day,

.[69] The Washington Times ultimately published the article on March 1, 2018, perhaps unaware of Defendant Butowsky's role in drafting it.[70]  The day after the Washington Times article was published, Defendant Couch posted a video online in which he stated that he had "talked to Ed Butowsky three times th[at] morning" and explained that the Washington Times "article was put out to help

---

[64] Ex. 56.

[65] *Id.*

[66] *Id.*

[67] Ex. 51.

[68] *Id.*

[69] *Id.*

[70] Ex. 52.

vindicate our team."[71]   On September 30, 2018, The Washington Times retracted the article and apologized to the Rich Family.[72]

Defendant Butowsky's central role in the drafting and publication of The Washington Times Article came about ten months after Fox News retracted a similar article[73] in which Defendant Butowsky played a similar role—including during the time period when Defendant Butowsky reports having undergone and been in recovery from his first surgery.   In early 2017, Defendant Butowsky, holding himself out as a Good Samaritan, approached the Rich Family and offered to hire for them a private investigator named Rod Wheeler, who had never before conducted a private investigation, did not have a private investigator's license, and "consider[ed] [him]self more of a consultant than an investigator."[74]   Defendant Butowsky did not disclose to the Rich Family that he simultaneously was working with Fox News reporter Malia Zimmerman to draft a story—including by coordinating meetings in D.C. and via video among himself, Ms. Zimmerman, and Mr. Wheeler—that would allege a connection between Seth Rich and WikiLeaks

---

[71] Matt Couch, *America First Media LIVE #SethRich #Mueller #KimDotcom #EdButowsky*, Periscope at 21:30-21:50, 49:30-50:04 (Mar. 3, 2018), www.pscp.tv/RealMattCouch/1mrGmRDaYXDJy.

[72] The Washington Times eventually retracted the article and issued an apology to the Rich family, stating that "we now believe" the statements about Plaintiff in the article are "false" and that there is not "any basis to believe" that the statements about Plaintiff are true.   Ex. 57.   When asked in written discovery to describe his involvement with the Washington Times article, Defendant Butowsky ███████████████████████████████████████████████████████.   *See* Ex. 58 at 7.

[73] On May 23, 2017, Fox News retracted the story, issuing a statement that the article "was not initially subjected to the high degree of editorial scrutiny we require for all our reporting" and that "[u]pon appropriate review, the article was found not to meet those standards and has since been removed."   Ex. 59.

[74] Ex. 60 at 18:8-14.

Case 1:18-cv-00681-RJL   Document 116   Filed 01/16/20   Page 24 of 37

and would use Mr. Wheeler as the only named source for the article.[75] Defendant Butowsky

instructed Mr. Wheeler to conceal his involvement with Fox News from the Rich family.[76]  In the

course of his conversations with Mr. Wheeler, Defendant Butowsky made a number of derogatory

claims about Plaintiff to Mr. Wheeler.[77]  While Defendant Butowsky has denied involvement with

the Fox News article, his contemporaneous correspondence proves the opposite:

> "The story is or will be up very early tomorrow morning.  Rod
> Wheeler is up and ready to give interviews.  There's more to come
> on the story but for now this is a massive story there's going to be
> talked about for a long time.  If you have any questions about the
> story or more information needed, call me at [###].  *I'm actually
> the one who's been putting this together but as you know I keep
> my name out of things because I have no credibility.*  One of the
> big conclusions we need to draw from this is that the Russians did

---

[75] Ex. 61 (Zoom meeting); Ex. 62 (███████); Ex. 63 at 9 (admitting to having lunch with Mr. Wheeler and Ms. Zimmerman in February 2017); Ex. 64 (Zoom meeting); Ex. 65 (text messages among Defendant Butowsky, Mr. Wheeler, and Ms. Zimmerman); Ex. 66 (email from M. Zimmerman to Mr. Wheeler); Ex. 67 (Defendant Butowsky arranging "four-way zoom video conference" with Mr. Wheeler, Ms. Zimmerman, and Fox News producer Adam Housley because "We are on the 1 yard line and we need to take it over the goal line"); Ex. 68 (April 27, 2017, email from Defendant Butowsky to Mr. Wheeler, stating that Defendant Butowsky had "an idea" and providing a draft of what would become the Fox News article); Ex. 69 (April 29, 2017, email from Ms. Zimmerman to Defendant Butowsky, providing draft of article and stating that she needed to "confirm the bold sections," which were statements falsely alleging a link between Seth Rich and WikiLeaks); Ex. 70 (email from Ms. Zimmerman asking Defendant Butowsky and Mr. Wheeler to confirm information with his "sources"); Ex. 71 ("from the dark web search nothing turned up on Seth Rich's murder or his connection to WikiLeaks"); Ex. 53 at …682 ("Not to add any more pressure but the president just read the article.  He wants the article out immediately."); Ex. 72 (voice message from Defendant Butowsky: "[A] couple of minutes ago I got on a note that we have the full attention of the White House on this.  And, tomorrow, let's close this deal.  Whatever you gotta do."); *see also* Ex. 60 at 99:1-7 ("Throughout the entire saga here with the Seth Rich case, Butowsky appeared to me to be the guy that was – you know, kind of coordinating between myself and Malia."); *id.* at 77:2-7, 105:13-106:22; Ex. 73 (Defendant Butowsky text to Mr. Wheeler on March 26, 2017 that he would be in the hospital but that it did not "mean I'm not able to talk nor does it mean I won't be of good mind and body"); Ex. 58 at 4.

[76] Ex. 53 at …646 ("Expect a direct call from Joel rich.  Please call me prior to give you a few data points.  Make sure to downplay Fox News, don't mention you know Malia" Zimmerman.).

[77] *See*, *e.g.*, Ex. 53 at …684 ("He's a dangerous guy"); *id.* at …686 ("Sure looks like Aaron had a roll [*sic*] him [*sic*] in his death or possibly in selling the wiki leaks.").

24

not hack into our computer systems and steel [sic] emails and there was no collusion like trump with the Russians."[78]

Whatever health issues Defendant Butowsky has had, they have not prevented him from litigating as a plaintiff in other cases about the same issues in this litigation, from pursuing professional and personal endeavors, or from aggressively pursuing the development and publication of false statements targeting Plaintiff and his brother. Nor should they allow him to bring this litigation to a halt and avoid accountability for his actions.

## II.   Defendants Have Not Cited Any New Evidence That Would Justify An Extension Of The Fact Discovery Deadline.

Defendants' Motion is the latest in a long series of empty promises that at some indeterminate point in the future, they will reveal evidence proving that the Rich brothers were involved in leaking the DNC emails.[79]  Defendants have been peddling their conspiracy theory for years, representing that it is backed by such "evidence," but now that they finally have been pressed to prove their claims, they have resorted to blaming a government-run conspiracy to suppress evidence, and they have asked this Court to delay this case based on pipe dreams of future revelations.

Defendants' extension request is based on unfounded claims relating to three pieces of supposed evidence, each of which is discussed below, and none of which warrant an extension of

---

[78] Dkt. 95-4 (emphasis added).

[79] *See, e.g.*, Dkt. 71-9 at 8 ("We have recordings that we will be releasing very soon"); Ex. 74 at …655 (Defendant Butowsky in January 2017: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮"); *id.* at …669 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮); Ex. 75 at 17:6-9 (Defendant Butowsky on May 16, 2017: "we're gonna break this thing open real soon."); Ex. 4 (Butowsky to Plaintiff: "discovery is going to be interesting"); Ex. 41 at 34:13-15 (Defendant Butowsky to July 26, 2019: "everyone is going to see that every word I'm saying is completely accurate.").

discovery.  *See Washburn v. Lavoie*, 437 F.3d 84, 93 (D.C. Cir. 2006) (upholding denial of motion

for extension filed two weeks prior to the discovery deadline because moving party had more than

ten months from the filing of the complaint and almost two years from learning of the supposed

"new" evidence);  *Corrinet v. Burke*, No. 12-CV-01092 (CRC), 2014 WL 2208781, at *1 (D.D.C.

May 28, 2014) (no good cause where the request was "not based on new evidence at all" because

the moving party had the information prior to litigation and has "had ample time, and made

multiple attempts, to request records from the FBI").

### A.      Purported FBI Report

Defendants assert, as though rumors of such a report were newly discovered on their part,

that there "purportedly" exists an FBI report "documenting an email exchange between Seth Rich

and Julian Assange."[80]  This "purported[]" report has been the heart of Defendant Butowsky's

narrative about Seth Rich since early 2017.   From the start, Defendant Butowsky's basis for

alleging the existence of an FBI report has been a January 2017 telephone call that Defendant

Butowsky had with journalist Seymour Hersh, whom Defendant Butowsky alleges detailed the

existence of the FBI report.[81]  Notably, Defendants concede that even the "purported" FBI report

says nothing about Plaintiff.[82]

Defendant Butowsky has had more than *three years* to obtain the FBI report he purports

exists.  Apart from nods to a conspiracy being perpetrated, apparently by the entire FBI (and, by

extension, the Justice Department that oversees the Bureau), he fails to explain any theory as to

---

[80] Def. Mot. at 8.

[81] *Id*. at 9; *see also* Ex. 74 at …655 (Defendant Butowsky in January 2017: ███████████
████████████████████████).

[82] Def. Mot. at 10.

why this supposed FBI report will be forthcoming imminently when it has failed to materialize over the past three years. The reality is that Defendant Butowsky actively has pursued this purported FBI report throughout 2017, and he has continued to do so during the course of separate litigation, including his lawsuit as a plaintiff against NPR where Magistrate Judge Caroline Craven *denied* Defendant Butowsky's motion to compel the FBI to respond to a subpoena for the purported report because she was "not convinced" as to the relevance of the purported FBI report with regards to the allegations and she had concluded that the FBI had conducted an "adequate search" for the records during the FOIA search.[83] Tellingly, Defendants at this point do not even argue that *they* could obtain this report with additional time, but instead suggest that the Attorney General should "demand access" to it.[84] If the report existed, it seems safe to assume that the Attorney General would follow that suggestion. In any event, there is no reason why the close of discovery in this case would prevent Defendants from continuing to pursue discussions via political channels.

All of the above leaves aside that Defendant Butowsky has concealed, for the past three years, that Mr. Hersh repeatedly has disputed Defendant Butowsky's characterization of their January 2017 conversation.[85] Mr. Hersh has explained that, at the time, he was investigating

---

[83] Def. Mot. Ex. 5 at 32.

[84] Def. Mot. at 10.

[85] Defendant Butowsky has released to the public a version of this call, but that version of the recording was edited to conceal an admission by Defendant Butowsky that foretold much of his conduct toward the Rich family in the years that followed: "I have a – a great history in getting things in the – getting things out there where nobody knows that I'm the one who did it. . . . I'm just trying to get something in my hands that I can get public about." *Compare, e.g.*, full audio, YouTube (July 21, 2019), youtube.com/watch?time_continue=1&v=_VaQcglmZvY&feature=emb_logo, *with* Dkt. 95-9 at 34:12-36:23; *see also* Ex. 54 at 13:19-24 ("Now, I did cut out a lot of things in that recording where he goes on tangents and says some terrible things about people, but everything else there is exactly his words."); Ex. 80 at 38:11-16 (Matt Couch: "Ed Butowsky on the – on the Sy Hersh audio. He edited the audio because Sy Hersh said a lot of embarrassing

rumors that Seth Rich had been in contact with WikiLeaks, or, as Mr. Hersh put it in an email to

Defendant Butowsky: ██████████████████████████████████████████

████████████████████████████████████████████████████████"[86]  Mr.

Hersh had stated that he called Defendant Butowsky to probe Defendant Butowsky for any

information he might have had about the rumors.[87]  During that conversation, Mr. Hersh presented

Defendant Butowsky with a hypothetical "narrative" based on rumors Mr. Hersh had heard about

an FBI report that linked Seth Rich to WikiLeaks.[88]  Mr. Hersh made clear to Defendant Butowsky

that just because Mr. Hersh was sharing the "narrative" with Defendant Butowsky, "*doesn't make

it true,*" to which Defendant Butowsky replied, "*I understand.*"[89]  Mr. Hersh has told Defendant

Butowsky that Mr. Hersh had never seen any FBI report,[90] that Mr. Hersh could not get any such

report,[91] and that Mr. Hersh did not have ████████████████████.[92]

---

things and Ed did not want to [doxx] him.  That, my friends, is called a class act.  On the Sy Hersh
audio, Ed actually edited that so that he would not bury Sy Hersh.").

[86] Ex. 76.

[87] *See* Dkt. 95-9 at 2:2-5 (". . . about the kid, and I'll tell you what I know. What I know comes off
an FBI report."); *id.* at 28:23-24 ("so what do you – do you know anything more?"); *see also* David
Folkenflik, *The Man Behind The Scenes In Fox News' Discredited Seth Rich Story*, NPR (Aug. 16,
2017),   www.npr.org/2017/08/16/543830392/the-role-of-ed-butowsky-in-advancing-retracted-
seth-rich-story ("Hersh now says he was fishing for information from Butowsky. 'I did not talk to
anybody at the FBI — not about this,' Hersh tells NPR.  'Nothing is certain until it's proved.  And
I didn't publish any story on this.'").

[88] Dkt. 95-9 at 11:4-11:5 (Hersh: "[L]et me go back to my narrative.").

[89] Dkt. 95-9 at 39:13-15 (emphasis added).

[90] Dkt. 95-9 at 20:20-21:1 (Butowsky: "You—you saw a report?"  Hersh: "No."  Butowsky: "the
FBI report?"  Hersh: "No.").

[91] Dkt. 95-9 at 22:18-19 ("I don't—I can't get the report.").

[92] Ex. 76.

Nonetheless, in the years since that January 2017 telephone call, Defendant Butowsky has touted the call (and his selectively edited recording of it) as purported evidence of a link between Seth Rich and WikiLeaks, and now he is doing the same before this Court.[93]  To no avail, Mr. Hersh has pleaded with Defendant Butowsky to stop mischaracterizing their telephone call:

> "you have a lousy memory…I was not read anything by my fbi friend..i have no firsthand information and i really wish you would stop telling others information that you think I have…*please stop relaying information that you do not have right…and that i have no reason to believe is accurate*."[94]

Seperately, Mr. Hersh communicated the same message to Larry Johnson—an individual who Defendant Butowsky listed on his Initial Disclosures as having relevant "communications" regarding an investigation into Seth Rich's murder.[95]  On May 16, 2017, the date on which the Fox News article was published, Mr. Hersh wrote to Mr. Johnson that Defendant Butowsky had "called me a few weeks to ask if i still believed what i had told him and i said i could find no evidence for what i said.  what a jerk."  Mr. Johnson replied: "It is his quest.  He's not a buddy.  I met him in December and learned, belatedly, that he is a bit of a flake."  Mr. Hersh responded: "but i told him i had no proof.  and i do not have such."[96]

---

[93] *See, e.g.*, Ex. 77 ("This is a rarely heard audio from famed writer Sy Hersh admitting to that Seth Rich downloaded the DNC emails and sold to Wikileaks.and [sic] that the FBI covered it up.").

[94] Ex. 78 (emphasis added) (ellipses in original); Ex. 31; *see also* David Folkenflik, *Behind Fox News' Baseless Seth Rich Story: The Untold Tale*, NPR (Aug. 1, 2017, 7:23 am), https://www.npr.org/2017/08/01/540783715/lawsuit-alleges-fox-news-and-trump-supporter-created-fake-news-story (Hersh explaining that Defendant Butowsky "took two and two and made 45 out of it.").

[95] Dkt. 83-3.

[96] Ex. 79.

## B.      Purported NSA Documents

Defendants also argue that the NSA *might* have documents relevant to this litigation—although Defendants have not offered any meaningful or persuasive explanation as to what exactly those documents could be, what if anything they have done to try to obtain them, or even their basis for believing they exist.[97]  Instead, they offer an unsworn assertion that Defendant Butowsky "learned" about the supposed documents from an unnamed "high-level NSA source" and that Defendant Butowsky has "learned of the existence of another high-level source" with "knowledge" of classified information "confirming the existence of communications between Seth Rich and Wikileaks."[98]

Defendants' Motion was the first time Defendants disclosed to Plaintiff any of these supposed "sources" or "information," even though that information, if accurate, would have been responsive to Plaintiff's discovery requests.  In the absence of any sworn testimony about these supposed "sources," Defendants' counsel has represented his understanding that ***neither he nor Defendants even know the name of the source on which they now purport to rely***.[99]  Aside from unnamed—and indeed unknown—"sources," Defendants' only other basis for asserting that relevant NSA documents exist is a FOIA request form which, by Defendants' own admission, "it is not clear whether [any of the documents] relate specifically to Seth Rich."[100]

---

[97] *See* Def. Mot. at 11-12.

[98] *Id*. at 11.

[99] Ex. 81.

[100] Def. Mot. at 11.

### C.    Julian Assange's Deposition

Defendants argue that this lawsuit should be stayed until both parties have had the opportunity to depose WikiLeaks' founder, Julian Assange, who currently is incarcerated in the United Kingdom awaiting possible extradition to the United States.[101]   To the extent that Defendants had any interest in pursuing a deposition of Mr. Assange, it is reasonable to ask why Defendants did not make any effort to do so in the 22 months since Plaintiff filed this litigation. Defendants' lack of diligence with respect to Mr. Assange is especially noteworthy given the public campaign Defendants' prior counsel launched over 18 months ago criticizing Plaintiff for purportedly seeking to prevent Mr. Assange and WikiLeaks from providing information in this case.[102]   Building on that campaign, Defendant Butowsky baselessly alleged (as part of his federal lawsuit against Plaintiff's counsel in Texas) that Plaintiff and his counsel attempted to prevent Mr. Assange from providing testimony in this litigation[103]—despite the fact that until the last two

---

[101] *See* Def. Mot at 12.

[102] *See* Dkt. 24-18 (Ty Clevenger on June 11, 2018: "Why won't Seth Rich's brother authorized Wikileaks to tell what it knows?"); Dkt. 27-4 (Mr. Clevenger on June 14, 2018: "if the Rich family came out and said 'tell the world what you know, reveal what emails you have regarding to Rich' then, Assange would be willing to do it"); Ty Clevenger, *Correction: Ellen Ratner only relayed information about Seth Rich, according to Butowsky*, LawFlog (July 29, 2019), http://lawflog.com/?p=2248 ("That's why we asked Aaron Rich more than a year ago to authorize Wikileaks to reveal whether he was involved in leaking emails from the Democratic National Committee.   Thus far, he and his lawyers have refused to do so."); Ty Clevenger (@Ty_Clevenger),    Twitter    (Aug.    13,    2019,    6:12    pm), twitter.com/Ty_Clevenger/status/1161445521627779072 ("Meanwhile, we're still waiting on Seth's brother to authorize #JulianAssange to reveal what he knows.   And for his brother's attorneys to serve subpoenas on Assange and @wikileaks like they promised MORE THAN A YEAR AGO.   What's to hide?"); Ex. 82 ("Per the article below, the Democratic National Committee served its lawsuit on Wikileaks via Twitter.   I'm wondering why your client has not tried to subpoena Wikileaks via Twitter. . . . Mr. Butowsky would have issued his own subpoenas by now, but he does not wish to consent to the jurisdiction of the D.C. court.").

[103] Ex. 27 ¶¶ 61-66.

weeks, Plaintiff was the only party in this litigation or in Texas who had made any effort to obtain discovery from either WikiLeaks or Mr. Assange.[104]  Indeed, up until the day that Defendants filed their Motion to extend discovery in this case, Defendants took no steps to serve discovery on WikiLeaks, or secure a deposition from Mr. Assange.  Instead, with days remaining before the close of discovery in this case, Defendants essentially cut and paste Plaintiff's Motion for a Letter Rogatory, changed the requested deposition questions to suit their interests, and filed it as their own motion.[105]

Plaintiff's diligent efforts to secure Mr. Assange's deposition, and documents from WikiLeaks, should not now be weaponized against him as a basis to delay the close of discovery in this case.  Plaintiff's motion to depose Mr. Assange makes clear that "WikiLeaks and its founder, Julian Assange, are uniquely positioned to confirm the truth: that neither Mr. Rich nor his brother ever provided any documents to, or received any payments from, WikiLeaks or its agents."[106]  While that is true, the burden of proof in this matter is on Plaintiff, not Defendant, and Plaintiff is prepared to carry his burden of proof with or without Mr. Assange's testimony.[107]  In any event, this Court need not upend the existing expert and trial schedule in order to grant Plaintiff's pending motions relating to Mr. Assange and WikiLeaks.

---

[104] *See* Dkt. 89 at 5-6; Dkt. 91 at 4-5 (describing efforts in July 2018 to submit materials to the Department of Justice for assistance on serving letters rogatory pursuant to the Inter-American Convention on Letters Rogatory and Additional Protocol; in April and August 2019, requesting Mr. Assange's counsel accept service or provide a way to serve Mr. Assange; and in September 2019, attempting to reach WikiLeaks' legal representatives via email nearly 100 times).

[105] *Compare* Dkt. 91-2, *with* Dkt 100-5.

[106] Dkt. 91 at 1.

[107] Plaintiff would not object to the Court permitting both sides to depose Mr. Assange after the close of discovery.

### D.      Barr/Durham Investigation

Defendants also argue that this entire case should be stayed pending the results of the "Barr/Durham investigation" "into the origins of the Russia investigation."[108]  Defendants' only basis for that suggestion is that the Barr/Durham investigation "*may*" show that "the Russian hacking story was politically motivated" and might reveal "alternative theories for the leaking of DNC emails."[109]  This is not "good cause" to modify the Scheduling Order but is rather another demonstration of Defendants' hope that someday it will be revealed that the Intelligence Community, Homeland Security Department, Senate Intelligence Committee, and Justice Department all were engaged in an effort to mislead the public when they each concluded that Russia hacked the DNC in 2016.[110]

## III.    Plaintiff Would Be Prejudiced By A Delay In This Litigation.

Plaintiff has been awaiting his day in court for 22 months.  During that period, Defendants have continued to publish defamatory statements about him, and they have continued to allege

---

[108] Def. Mot. at 1-2.

[109] *Id*. at 2.

[110] *Compare* Def. Mot. at 2 (emphasis added), *with* Justin Wise, *Ex-Trump Homeland Security adviser rips Giuliani, calls claim Ukraine hacked DNC a 'conspiracy theory'*, The Hill (Sept. 29, 2019, 10:46 am), https://thehill.com/homenews/administration/463541-ex-trump-homeland-security-adviser-calls-claim-russia-did-not-hack (Tom Bossert: "The United States government reached its conclusion on attributing to Russia the DNC hack in 2016 before it even communicated it to the FBI, long before the FBI ever knocked on the door at the DNC"); Marshall Cohen, *Graham: Russia, not Ukraine, hacked the Democrats in 2016*, CNN (Dec. 11, 2019, 11:08 am), https://www.cnn.com/politics/live-news/justice-inspector-general-testifies-russia-report/h_d4d9074452931c8862bcc1ec604d7362 (Sen. Lindsay Graham: "And it was the Russians, ladies and gentlemen, who stole the Democratic National Committee emails, Podesta's emails and screwed around with Hillary Clinton. It wasn't the Ukrainians. It was the Russians."); Matthew Choi, *Sen. Kennedy takes back Sunday Comments on alleged Ukrainian intervention in 2016*, Politico (Nov. 25, 2019, 10:59 pm), https://www.politico.com/news/2019/11/25/john-kennedy-ukraine-2016-elections-073864 (Sen. John Kennedy: "The only evidence I have, and I think it's overwhelming, is that it was Russia who tried to hack the DNC computer.").

falsely that he or his brother was WikiLeaks' source for the DNC emails.[111]  Meanwhile, in reliance

on this Court's Scheduling Order, Plaintiff has engaged in discovery actively and diligently—

including but not limited to undertaking a substantial process to produce documents, making

arrangements to travel to D.C. for court appearances, and preparing to sit for his deposition on an

upcoming Sunday.  Plaintiff would face substantial prejudice if he were forced to endure another

four months of discovery with an indeterminate trial date after he has done everything, and

Defendants have done nearly nothing, to advance this case and meet the deadlines in the

Scheduling Order.  *See Koch*, 251 F. Supp. 3d at 180-81 ("[D]ragging this litigation out for months

on end prejudices Defendant and needlessly extends these proceedings" where it "was well within

Plaintiff's control to seek during discovery the additional information he now wants extra time to

obtain."); *cf. Dag Enterprises*, 226 F.R.D. at 110 (D.D.C. 2005) ("Compelling a party with 'clean

hands' to incur significant additional expense and spend a large amount of additional time in

discovery when the opposing side has not acted with diligence and has not shown 'good cause' is

simply unwarranted."); *Thomas v. Snow*, No. CV 03-0187 (RBW), 2005 WL 8168303, at *3

(D.D.C. June 29, 2005) ("[D]ilatory behavior must not be condoned, as it would be unfair to the

defendant to allow the plaintiff to further extend the life of this already more than two year

litigation.").

Plaintiff already has been prejudiced by delays in this case.  As Defendant Butowsky

argued in opposing a stay in one of his other cases where he is a plaintiff, "Delay prejudices

victims—evidence is lost, memories fade, costs increase.  Delay clogs up the Courts and negatively

---

[111] *Supra* at 8 n.6.

impacts the public's perception of Judges, Lawyers and the quality of Justice."[112]  For example, during the pendency of this litigation, James Lyons, under whose name Defendant Butowsky penned the later retracted Washington Times article, has passed away.[113]  Other witnesses have moved from their homes, changed jobs, or generally become more difficult to reach, and the passage of time risks memory loss for all.  Defendant Butowsky himself appears to be arguing that at least one critical witness now suffers from dementia.[114]  These problems will only compound if the discovery and trial schedule in this case are pushed back.

Modifying the Scheduling Order also would prejudice Plaintiff because he has relied on that Scheduling Order in making strategic decisions about his approach to discovery.  For example, in order to be able to follow the existing Scheduling Order, Plaintiff took depositions of critical witnesses (such as the depositions of Defendant Couch, Rod Wheeler) notwithstanding substantial document production deficiencies, and additional depositions remain scheduled in the coming weeks for which preparation has already required considerable time and expense.  Plaintiff also made decisions regarding the issuance of third-party subpoenas and motions practice—including what motions to file, and when—that would be upended by a belated extension.  Those decisions, and the investment of finite time and resources, cannot now be unwound, and it would be manifestly unfair to do so.  Defendants' proposal would effectively sequence discovery in two phases—forcing Plaintiff to conduct discovery under the Scheduling Order in phase one, followed

---

[112] Ex. 5 at 2; *cf.* Ex. 83 at 29:7-30:4 (Defendant Couch ███████████████████████ ███████████████████████████████████).

[113] *Obituary, James "Ace" Lyons Jr.*, The Washington Post (Dec. 23, 2018), legacy.com/obituaries/washingtonpost/obituary.aspx?n=james-lyons-ace&pid=191065269.

[114] Ex. 63 at 11.

by an additional four month discovery period for Defendants, relying upon the decisions Plaintiff have already made, in a second phase.

Finally, Defendants inaccurately present this litigation as a David versus Goliath contest, but that representation is backwards.  Plaintiff lacks his own resources to litigate this matter. Notwithstanding grossly false representations to the contrary by Defendants at times during the course of this litigation, Plaintiff's counsel are litigating this case pro bono, at significant expense in terms of time and resources.  Defendant Butowsky, by contrast, has sufficient means to engage in sprawling litigation against dozens of defendants, and in this case has insurance coverage. Defendant Couch is now drafting off of that same legal representation.  Requiring Plaintiff and his counsel to shoulder the expense of Defendants' decision to treat this litigation as a joke is unwarranted, and it would be manifestly unjust.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion to Extend or Stay Discovery and enter the Proposed Order accompanying this Opposition.

Dated: January 16, 2020

/s/   *Michael J. Gottlieb*
MICHAEL J. GOTTLIEB (D.C. Bar No. 974960)
WILLKIE FARR GALLAGHER LLP
1875 K Street NW, Washington, DC 20006
Tel: (202) 303-1442 / Fax: (202) 303-2000
mgottlieb@willkie.com

JOSHUA P. RILEY (D.C. Bar No. 1026900)
MERYL C. GOVERNSKI (D.C. Bar No. 1023549)
BOIES SCHILLER FLEXNER LLP
1401 New York Ave NW, Washington DC 20005
Tel: (202) 237-2727 / Fax: (202) 237-6131
jriley@bsfllp.com
mgovernski@bsfllp.com

***Attorneys for Plaintiff Aaron Rich***

36

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that on January 16, 2020, the foregoing document was filed through the CM/ECF system and thereby served electronically on counsel for Defendant Edward Butowsky and Matthew Couch. A courtesy copy of the foregoing document also was emailed to their counsel, Eden Quainton, at equainton@gmail.com. Mr. Quainton has agreed to convey served and filed documents to Defendant America First Media through Defendant Couch as necessary.

Dated: January 16, 2020

/s/  *Michael J. Gottlieb*
MICHAEL J. GOTTLIEB (D.C. Bar No. 974960)
WILLKIE FARR GALLAGHER LLP
1875 K Street NW, Washington, DC 20006
Tel: (202) 303-1442 / Fax: (202) 303-2000
mgottlieb@willkie.com