# EXHIBIT 10

| | |
|---|---|
| **From:** | Ty Clevenger |
| **To:** | Michael Gottlieb; Meryl Governski |
| **Cc:** | Andrea Flores |
| **Subject:** | Re: RE: RE: Aaron Rich v. Edward Butowsky, et al., Case No. 1:18-cv-00681 (DDC) |
| **Date:** | Thursday, April 12, 2018 11:06:23 AM |

It looks good. I added my signature block in the attached version, so please file at your convenience. Thanks!

On Thursday, April 12, 2018, 10:19:11 AM EDT, Meryl Governski <MGovernski@BSFLLP.com> wrote:


Dear Mr. Clevenger,


Attached is a draft joint stipulation between Mr. Rich and Mr. Butowsky.  Please make any edits in redline and add your signature block.   We are happy to file this with the Court once we reach agreement.


I also am attaching the joint stipulation with Mr. Couch that we filed yesterday in hopes that you will accept service of filings for Mr. Butowsky via email until you enter your appearance.


Respectfully,

Meryl Governski




**Meryl Conant Governski**
Associate

_____


BOIES SCHILLER FLEXNER LLP

1401 New York Avenue, N.W.

Washington, DC 20005

(t)   202 895 7565

mgovernski@bsfllp.com

www.bsfllp.com

**From:** Ty Clevenger [mailto:tyclevenger@yahoo.com]
**Sent:** Wednesday, April 11, 2018 1:13 PM
**To:** Michael Gottlieb
**Cc:** Meryl Governski; Andrea Flores
**Subject:** Re: RE: Aaron Rich v. Edward Butowsky, et al., Case No. 1:18-cv-00681 (DDC)


That would be great -- thank you!



On Wednesday, April 11, 2018, 1:11:44 PM EDT, Michael Gottlieb <MGottlieb@BSFLLP.com> wrote:



Dear Mr. Clevenger,


Thank you for reaching out. We are agreeable to a stipulation for Mr. Butowsky. If you would like, we can send you a draft stipulation for your review that we've used with the other parties.


Respectfully,


Mike


**Michael J. Gottlieb**
Partner

_____


BOIES SCHILLER FLEXNER LLP

1401 New York Avenue, N.W.

Washington, DC 20005

(t) +1 202 237 9617

(m) +1 202 744 0858

mgottlieb@bsfllp.com

www.bsfllp.com

**From:** Ty Clevenger [mailto:tyclevenger@yahoo.com]
**Sent:** Wednesday, April 11, 2018 12:24 PM
**To:** Michael Gottlieb
**Cc:** Meryl Governski; Andrea Flores
**Subject:** Aaron Rich v. Edward Butowsky, et al., Case No. 1:18-cv-00681 (DDC)


Mr. Gottlieb,


I am one of Ed Butowsky's attorneys, and I noticed that you stipulated to 30-day extensions for the other defendants. I am arranging local counsel in DC, and I was wondering if you would stipulate to a 30-day extension for Mr. Butowsky as well. Thank you for your consideration.


Ty Clevenger

The information contained in this electronic message is confidential information intended only for the use of the named recipient(s) and may contain information that, among other protections, is the subject of attorney-client privilege, attorney work product or exempt from disclosure under applicable law. If the reader of this electronic message is not the named recipient, or the employee or agent responsible to deliver it to the named recipient, you are hereby notified that any dissemination, distribution, copying or other use of this communication is strictly prohibited and no privilege is waived. If you have received this communication in error, please immediately notify the sender by replying to this electronic message and then deleting this electronic message from your computer. [v.1]

The information contained in this electronic message is confidential information intended only for the use of the named recipient(s) and may contain information that, among other protections, is the subject of attorney-client privilege, attorney work product or exempt from disclosure under applicable law. If the reader of this electronic message is not the named recipient, or the employee or agent responsible to deliver it to the named recipient, you are hereby notified that any dissemination, distribution, copying or other use of this communication is strictly prohibited and no privilege is waived. If you have received this communication in error, please immediately notify the sender by replying to this electronic message and then deleting this electronic message from your computer. [v.1]

# EXHIBIT 11

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| ED BUTOWSKY, in his Individual And Professional Capacities | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. _____ |
| | ) ) | **TRIAL BY JURY** |
| DAVID FOLKENFLIK | ) | **IS DEMANDED** |
| NPR, INC. | ) | |
| NPR.ORG | ) | |
| JARL MOHN | ) | |
| STACEY FOXWELL | ) | |
| MICHAEL ORESKES | ) | |
| CHRISTOPHER TURPIN | ) | |
| EDITH CHAPIN | ) | |
| LESLIE COOK | ) | |
| HUGH DELLIOS | ) | |
| PALLAVI GOGOI | ) | |
| | ) | |
| -and- | ) | |
| | ) | |
| SARAH GILBERT | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

# COMPLAINT

Plaintiff, Ed Butowsky, in his personal and professional capacities, by counsel,

files the following Complaint against Defendants, David Folkenflik ("Folkenflik"), NPR,

Inc. and NPR.org ("collectively, "NPR"), Jarl Mohn ("Mohn"), Stacey Foxwell

("Foxwell"), Michael Oreskes ("Oreskes"), Christopher Turpin ("Turpin"), Edith Chapin

("Chapin"), Leslie Cook ("Cook"), Hugh Dellios ("Dellios"), Pallavi Gogoi ("Gogoi")

and Sarah Gilbert ("Gilbert"), jointly and severally.

Plaintiff seeks (a) compensatory damages and punitive damages in a sum not less than **$57,000,000.00**, (b) prejudgment interest on the principal sum awarded by the Jury from August 1, 2017 to the date of Judgment at the rate of five percent (5%) per year, and (c) costs – arising out of the Defendants' defamation *per se*, business disparagement, civil conspiracy, and intentional infliction of emotional distress.

## I. INTRODUCTION



This is a case about an unethical and reckless journalist, who was spoon-fed a false narrative about President Trump and Fox News with instructions to leak the fake story online and in social media in the early morning hours of August 1, 2017.

The four (4) foundational principles of ethical journalism are:

- Seek Truth and Report It;

- Minimize Harm;

2

- Act Independently; and

- Be Accountable and Transparent.

[https://www.spj.org/pdf/spj-code-of-ethics.pdf; *see id.*, http://asne.org/resources-ethics-wapo; http://asne.org/resources-ethics-wsj; http://asne.org/resources-ethics-nyinteg; http://asne.org/resources-ethics-sananton; http://asne.org/resources-ethics-dallas].

NPR keeps and maintains an "ethics handbook", which states that NPR's "purpose is to pursue the truth. Diligent verification is critical." NPR publicly represents that its goal is to "tell the truest story possible". The NPR ethics handbook emphasizes:



NPR admits that "errors of omission and partial truths can inflict great damage". [http://ethics.npr.org/].

The evidence in this case demonstrates that Folkenflik – a journalist renowned for his bias against the Fox News Network ("Fox") – knowingly, intentionally and recklessly violated every principle of ethical journalism when, acting in concert and conspiracy with Douglas H. Wigdor ("Wigdor"), he published and republished false and defamatory statements that harmed an innocent citizen, Plaintiff, Ed Butowsky.

Between August 1, 2017 and September 19, 2017, Folkenflik and NPR published no less than six (6) articles in which they made and repeated false and defamatory statements, including the following statements:

● Fox News' May 16, 2017 story, "*Seth Rich, slain DNC staffer, had contact with WikiLeaks, say multiple sources*" was "baseless";

● Fox and Butowsky "worked in concert under the watchful eye of the White House to concoct a story" about the death of Seth Rich;

● The Fox News story was a "fake news story";

● The Fox News story was a "deceptive story";

● "Despite his misgivings, Wheeler plays along" with the fake news promoted by Butowsky and Zimmerman;

● "Revelations about Fox News' role in concocting a baseless story on the death of a young Democratic staffer has problematic echoes for the network's controlling owner, Rupert Murdoch";

● Ed Butowsky was the "Man Behind The Scenes In Fox News' Discredited Seth Rich Story";

● "Butowsky displays no curiosity about the way Fox's reporting and his activities affected the very people [the Rich Family] he says he sought to help."

- "Fox News was compelled to retract the story, which involved presidential politics, international intrigue and a man's murder. When a story of this scale crumbles, most news organizations feel obligated to explain what happened and why. Not so far at Fox … In the four months since its retraction, Fox News has not apologized for what it reported. Nor has it explained what went wrong";

- "**Lesson No. 1: Investigative reports should be ironclad**" – the Fox story was "groundless";

- "**Lesson No. 2: Make sure your sources are saying what you think they're saying**" – "Before the story ran, Zimmerman sent Wheeler a draft with quotes she intended to attribute to him. NPR has seen a transcript of the texts from Zimmerman calling his attention to that email. But there's zero evidence Wheeler ever said those words or gave permission for her to use them. And if Zimmerman did invent the quotes, that's a big problem – regardless of whether Wheeler gave her the green light";

- "**Lesson No. 3: Make sure each of your sources can stand on its own**" – "Butowsky fed tips to Wheeler and Zimmerman, the Fox reporter, as he sought to link the dead man to the leaked emails instead of hackers working on behalf of the Russians";

- "**And that leads us to lesson No. 4**" – Transparency and Trust - "Fox withheld Butowsky's various roles in the story from its audiences — he blurred lines between benefactor, source, player and, possibly, even reporter".

Folkenflik and NPR acted with actual malice and reckless disregard for the truth. Hungry to publish a scandalous story about the President of the United States and Fox and to aid and abet Wigdor's effort to extort money from Fox, Folkenflik failed to verify the information Wigdor secretly provided before releasing it on NPR.org, to NPR's radio

listeners via *Morning Edition*, and to millions upon millions via Twitter.  In spite of serious doubts as to the veracity of his source, Folkenflik blindly accepted Wigdor's false statements without ever once questioning Wigdor's (and his client, Rod Wheeler's), motive to lie.  Folkenflik disregarded known sources of information that flatly contradicted the false narrative peddled by Wigdor.  In promoting Wigdor's story, Folkenflik misrepresented, distorted and oversimplified facts and issues.  Folkenflik failed to gather, update and correct information throughout the life of his story, allowing the false narrative to build momentum and take on a life of its own.  Folkenflik engaged in baseless stereotyping and allowed his (and Wigdor's) extreme bias to shape his reporting.  Folkenflik published and republished the story in such a way and to such audiences and extremes as to *maximize* the insult, pain, humiliation and embarrassment to Ed Butowsky.  Folkenflik pandered to lurid curiosity about the President and fake news about "Russian collusion", rather than tell the truth.

The United States Supreme Court recognizes that "The right of a man to the protection of his own reputation from unjustified invasion and wrongful hurt reflects no more than our basic concept of the essential dignity and worth of every human being—a concept at the root of any decent system of ordered liberty". *Rosenblatt v. Baer*, 383 U.S. 75, 92-93 (1966).

This is not a case about the First Amendment or "freedom" of the press – for no man has the right to defame and disparage another.[1]

---

[1]    The Supreme Court of the United States has recognized "[t]ime and again" that "false factual statements possess no First Amendment value." *United States v. Alvarez*, 132 S.Ct. 2537, 2560 (2012).  Thus, any attempt by Folkenflik and NPR to hide behind the "First Amendment" is unavailing.

This is a case about Folkenflik and NPR's actual malice and reckless disregard for the truth.

## II. PARTIES

1.      Plaintiff, Ed Butowsky ("Butowsky"), is a citizen of Texas.  Butowsky is 55 years-old.  He resides with his family in Plano, Texas.  He has a long history of generously helping people in need.  Butowsky is an internationally recognized expert in the investment wealth management industry.  He has been in the financial services industry for over twenty-nine (29) years.  He started his career with Morgan Stanley, where he was a Senior Vice President in private wealth management.  In his eighteen (18) years with Morgan Stanley, Butowsky was the firm's top producer nationally as well as the first advisor to surpass one billion dollars in assets under management.  He was recognized as a member of both the Chairman's Club and the Equity Club at Morgan Stanley, a distinction reserved for only the firm's top advisors.  In 2005, Butowsky launched Chapwood Investments, LLC, an Addison, Texas-based, private wealth management advisory firm focused on providing comprehensive financial counseling and investment advice to wealthy families and individuals.  He was nominated as Top Financial Advisor in the World by Reuters in 2007.  Through his work with professional athletes, Butowsky was prominently featured in both the ESPN Movie, *Broke* [https://www.youtube.com/watch?v=1IhmiE_Hs0I], and the blockbuster Sports Illustrated article, "*How (and Why) Athletes Go Broke*". [https://www.si.com/vault/2009/03/23/105789480/how-and-why-athletes-go-broke].

2.      Prior to Folkenflik and Wigdor's publications and republications, Butowsky was a frequent guest on CNN, ABC, CBS, NBC, CNBC, Fox Business News,

FOX News Channel, Bloomberg TV, and China TV. Butowsky had made hundreds of appearances on national television, and was often seen on "Varney and Co", "Closing Bell", "Street Signs", "Your World w/ Cavuto", "America Live" with Megyn Kelly, "Willis Report", "America's News HQ", "Taking Stock" with Pimm Fox, TheBlaze TV with Glenn Beck, and "Wilkow!" with Andrew Wilkow. He was also regularly heard on radio shows around the country such as "Mad Dog Radio" and "Bloomberg Radio", discussing wealth management, and other subjects that are of interest and timely related to the finance/investments world.

3.        Prior to Folkenflik and Wigdor's global smear campaign, Butowsky enjoyed an untarnished personal and professional reputation in the community in which he lived and worked, with clients, with colleagues in business, and with his many friends. As was known and intended, Folkenflik's defamation spread like wildfire throughout mass media, social media and over the Internet, causing Butowsky to be ostracized, causing enormous loss of business (including, without limitation, the termination and loss of Chapwood's Investment Manager Service Agreement with Charles Schwab),[2] and

---

[2]        The loss and damage caused to Butowsky by Folkenflik's defamation is evidenced by the following email from one of Butowsky's clients:

On 8/3/17, 5:29 PM, "Sally Davis" <sallyhi-d@comcast.net> wrote:

Hello Ed and Kim,

I'm really sad to write this email.

I have to let you know I asked Schwab to remove Chapwood Investments as the advisor on my Schwab Account. I will follow up with a phone call tomorrow, August 4.

I made this decision after reading news articles about Ed's involvement with a false news story. For me, this is not a question of politics. It's a question of ethics.

I very much appreciate all your help and guidance through the past twenty-five years or so. I'm heartbroken to end our relationship.

causing Butowsky substantial personal injury, fear, and mental and physical pain and suffering. Butowsky has received death threats to his family, damage to his home in Plano, and thousands of *ad hominem* attacks.

4. Defendant, Folkenflik, is a citizen of New York, who lives in New York City. Folkenflik is a media correspondent on NPR's Business Desk. The vast majority of Folkenflik's reporting involves Fox and stories about sexual harassment, sexual misconduct and related issues. At all times relevant to this action, Folkenflik was an employee of Defendant, NPR, Inc., acting within the scope of his employment. [https://www.npr.org/people/4459112/david-folkenflik].

5. Defendant, NPR, Inc., is a District of Columbia non-stock corporation with headquarters and principal places of business in Washington, D.C., California and New York. NPR describes itself as a "mission-driven, multimedia news organization and radio program producer." NPR produces news, talk, music and entertainment programs. NPR also distributes programs produced by member stations and independent producers under the NPR brand. NPR claims that it "sets the standard for trusted editorial content". NPR transacts substantial business in Texas. It maintains and operates multiple domestic bureaus in Texas and at least thirty-five-member stations in Texas. Defendant, NPR.org, is one of NPR's digital properties. NPR.org is an online publication that is owned and operated, upon information and belief, by NPR. [https://www.npr.org/about-npr/192827079/overview-and-history; https://www.npr.org/stations/pdf/nprstations.pdf; https://www.npr.org/about/press/NPR_Fact_Sheet.pdf].

6. Defendants, Mohn, Foxwell, Oreskes, Turpin, Chapin, Cook, Dellios, Gogoi and Sarah Gilbert, are individual officers, editors, producers and publishers

employed by NPR who, together with Folkenflik, created, contributed, edited, published, instigated, directed and ratified the defamation at issue in this action. A general description of each individual Defendant's position at NPR is published online [*see* https://www.npr.org/series/6000/people-at-npr?typeId=1] and on their respective public profiles published on LinkedIn.com. [*See, e.g.* https://www.linkedin.com/in/jarlmohn/]. Mohn is President, CEO and a Director of NPR. Foxwell is Vice President of Operations at NPR. She oversees an administrative team of executive assistants and operations managers that support NPR's senior leadership team, its shows, its hosts, and its offices in NY, where Folkenflik works. Oreskes was Senior Vice President of News and Editorial Director at NPR. Oreskes quit NPR in November 2017 amid sexual harrassment and misconduct allegations. [https://www.nytimes.com/2017/11/01/business/media/mike-oreskes-npr-sexual-harassment.html]. At all times relevant to this action, Turpin was Vice President of News Programming and Operations, where he oversaw all news programs, newscasts, news operations, collaborative coverage, innovation in news storytelling and training, "ensuring NPR's continued excellence across a range of journalistic skills." Chapin is the Executive Editor of NPR News, charged with overseeing all desks and reporters and setting the agenda for the entire News division. Cook is a senior business editor on NPR's Business Desk. In this role, he assigns and edits NPR business reporters, including Folkenflik, and collaborates with show producers and editors on host interviews. Dellios is NPR's deputy national editor. He fashions NPR's coverage of national issues, overseeing a staff of 13 correspondents, reporters, and editors and coordinating with editors and producers on NPR desks and shows such as *Morning Edition*. Gogoi is the Senior Business Editor for NPR's Business Desk. At all

times relevant to this action, Gilbert was the Executive Producer for NPR's *Morning Edition*. The individual NPR officers, editors, producers and publishers are citizens of the District of Columbia, New York and California, respectively. None of the individual NPR Defendants is a citizen of Texas.

7. NPR's reach and engagement is extensive: On air, NPR reaches 30.2 million weekly listeners through more than 1,000 public radio stations. Online, NPR.org attracts a growing audience of 36.9 million unique monthly users. [http://nationalpublicmedia.com/npr/audience/].

8. Wigdor lives in New York. He is a partner of Wigdor, LLP. Wigdor, LLP is a public relations firm that masquerades as a law firm. Although Wigdor is an attorney, the clear majority of his time is spent in front of cameras or giving interviews to MSNBC, CNBC, CNN, the New York Times, Bloomberg Businessweek, and many other main stream media outlets, in which Wigdor promotes himself and his causes, especially his "crusade" against Fox. Wigdor's war against Fox is featured front and center on Wigdor's website and on his YouTube channel – "Wigdor LLP – Employment Lawyer NYC" – where he collects and publishes sound bites and personal praise. [https://www.youtube.com/channel/UCeogDStcI35nkzCJYNatVBQ].

9. Wigdor claims to be a specialist in sexual harassment and assault cases. His website, *inter alia*, notes that he has represented "over 20 employees at Fox News in their claims of gender discrimination, race discrimination, retaliation and defamation against the network". [https://www.wigdorlaw.com/portfolio/douglas-h-wigdor/]. As part of the "Publicity" he has created for himself, Wigdor's website represents that:

"Mr. Wigdor currently represents thirteen clients who have alleged racial discrimination against Fox. Mr. Wigdor also represents Rod Wheeler, a Fox contributor in an 'explosive' lawsuit alleging defamation in connection with a story published about murdered DNC staffer Seth Rich, Scottie Nell Hughes, a former Fox contributor in a lawsuit alleging retaliation after she complained of sexual assault by Fox Business host Charles Payne, and Lydia Curanaj, a Fox5 reporter in a lawsuit alleging gender and pregnancy discrimination against Fox News. The lawsuits join a succession of sexual harassment allegations made against Fox, and have been extensively reported on by both national and international media and referred to as a 'Normandy like' legal assault."

[*Id.*].

10.    Wigdor uses the press and social media as weapons. He brazenly litigates his causes outside the courtroom in the "court of public opinion" as part of a "press strategy" to intimidate and coerce settlements. Wigdor often grants in-depth access to a single reporter from a prominent news outlet, on the condition that the story be embargoed until the day a suit is filed, when it can be set off like a firecracker.

11.    This action involves a conspiracy between Folkenflik and Wigdor to publish and republish false and defamatory statements about Butowsky as part of Wigdor's effort to extort Fox. Wigdor selected Folkenflik and deliberately leaked a false narrative to Folkenflik because Wigdor knew that Folkenflik harbored bias and animus towards Fox and its Chairman, Rupert Murdoch. Widgor correctly surmised that Folkenflik would never question or doubt Wigdor's veracity.[3] Folkenflik gladly accepted the "scoop" from Wigdor and published fake news with reckless indifference to the consequences of his actions as a "journalist".

---

[3]    The selection of Folkenflik for leaking the false and defamatory statements was no coincidence. Wigdor knew that Folkenflik had been a vocal critic of Fox News for years, even writing a book about the network and its Chairman, Rupert Murdoch, entitled, "Murdoch's World: The Last of the Old Media Empires." [https://www.npr.org/2013/10/21/238899506/inside-murdochs-world-a-peek-into-a-media-empire].

### III.   JURISDICTION AND VENUE

12.     The United States District Court for the Eastern District of Texas has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 (Diversity Jurisdiction) and 28 U.S.C. § 1367 (Supplemental Jurisdiction).  The parties are citizens of different States and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest, costs and fees.

13.     The Defendants are subject to general and specific personal jurisdiction in Texas.  They transact substantial business in Texas and committed multiple acts of defamation and intentional torts, in whole or part, in Texas.  They have minimum contacts with Texas such that the exercise of personal jurisdiction over them comports with traditional notions of fair play and substantial justice and is consistent with the Due Process clause of the United States Constitution.  Defendants' defamation was purposefully directed at Texas and was continuous and systematic.  Butowsky's claims directly arise from and relate to Defendants' publication of false and defamatory statements in Texas. *TV Azteca v. Ruiz*, 490 S.W.3d 29 (Tex. 2016) (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984) and *Calder v. Jones*, 465 U.S. 783 (1984)).

14.     Venue is proper in the Sherman Division of the United States District Court for the Eastern District of Texas because Folkenflik and NPR and their agents published and republished defamatory statements to a wide audience that includes persons who reside within the Sherman Division.  Folkenflik and NPR's defamation caused substantial harm to Butowsky's personal and professional reputations in Texas.  A substantial part of the events giving rise to the claims stated in this action occurred in the Eastern District of Texas.

## IV.  STATEMENT OF MATERIAL FACTS

15.     At all times relevant to this action, Folkenflik had actual knowledge that his written and oral statements about Butowsky were false.  He knew Butowsky did not collude with the President of the United States or with Fox to publish "fake news".  Indeed, at the time he published his false statements, Folkenflik had not seen any evidence that the President even knew Butowsky.

16.     Folkenflik also knew that Butowsky did not support any effort by Fox (because there was none) to fabricate and falsely attribute quotations to Wheeler – indeed, Folkenflik knew – ***actually knew*** – that Wheeler had been accurately quoted by Fox.  In his reporting, Folkenflik deliberately misrepresented and concealed known facts, including the fact (a) that Fox reporter, Malia Zimmerman ("Zimmerman") had shared drafts of her article with Rod Wheeler ("Wheeler") on May 15, 2017, and (b) Wheeler had approved the exact quotations that appeared in Zimmerman's article.

17.     Before he published his first online article on August 1, 2017 at 7:23 a.m., Folkenflik possessed information that should have caused him to disbelieve the preconceived false narrative supplied to him by Wigdor.

18.     The truth was well-known to Folkenflik – not only from Wheeler's text messages and emails (described in detail below) in Folkenflik's possession, but from public records (videos in which Wheeler and others, including Seymour Hersh,[4]

---

[4]     Seymour Hersh ("Hersh") is a well-known journalist.  Hersh first came to national prominence in 1969, when he helped expose the massacre of Vietnamese civilians in the village of My Lai.  More recently, Hersh revealed the U.S. military's torture of Iraqi prisoners at Abu Ghraib prison in 2004.  In 2014, Hersh debunked Western propaganda that sought to justify a major U.S. military attack on Syria.  [http://samadamsaward.ch/seymour-hersh/].  In 2017, Hersh supplied key information to Zimmerman concerning Seth Rich and WikiLeaks. [*See below*].

appeared) and from other information and recordings available to Folkenflik on the Internet (all described in detail below). The true facts were also available to Folkenflik on and through the website, http://www.debunkingrodwheelersclaims.com/. Although Wigdor told Folkenflik that Fox and Butowsky had fabricated quotations that Fox and Butowsky then falsely attributed to Wheeler, Folkenflik knew (a) that Wheeler had made the statements publicly on camera on May 15, 2017 to Fox 5 DC correspondent, Marina Marraco ("Marraco"), (b) that Wheeler had actually confirmed the quotations three (3) times to Zimmerman on May 15, 2017 in emails and text messages, (c) that Wheeler had affirmed the substance of the quotations in interviews with Sean Hannity and Lou Dobbs on May 16, 2017, and (d) that Wheeler had actually told FetchYourNews on May 22, 2017 that Zimmerman's story was "**essentially correct**". (Emphasis added). Based upon information in his possession, Folkenflik knew that his statements about Butowsky were categorically false.

19.    Instead of reporting the truth, Folkenflik abandoned his ethics and went with a preconceived story – a story manufactured and supplied to him by his source – Wigdor – a source that was admittedly on a "crusade" to get Fox. Folkenflik abandoned all journalistic integrity. He failed to investigate the true facts. He relied on inherently unreliable and debunked sources, such as Wigdor's client and source, Wheeler. Folkenflik departed from journalistic standards and repeated words and phrases that he knew were false or inherently improbable – phrases such as "Russian collusion". Folkenflik abandoned common sense. The suggestion that the President of the United States and/or the "Russians" (Vladimir Putin) would have colluded with Butowsky – a

person unknown to either the President or Putin and with whom neither the President nor

Putin has ever communicated – is preposterous.

20.     Folkenflik knew that Wigdor's preconceived narrative was false.

Folkenflik, who hated Fox and craved the notoriety of salacious "breaking news", had a

motive to publish a false narrative about Fox.  In spite of known and obvious reasons to

doubt the veracity of Wigdor and Wheeler, Folkenflik and NPR proceeded with the

preconceived story without verification and without hesitation.

A.     ***THE PRECONCEIVED FALSE NARRATIVE***

21.     As of June 2017, Wigdor had filed and/or had threatened to file numerous

lawsuits against Fox, including, without limitation,

- *Ujkic v. Twenty-First Century Fox, Inc. et al.*, Case 1:16-cv-09608
  (filed 12/13/2016);

- *Brown et al. v. Twenty-First Century Fox, Inc. et al.*, Case 22446/2017E
  (filed 03/28/2017);

- *Blanco v. Twenty-First Century Fox, Inc. et al.*, Case 1:17-cv-03017
  (filed 04/25/-2017);

- *Lee v. Twenty-First Century Fox, Inc. et al.*, Case 1:17-cv-03835
  (filed 05/22/2017)

- *Farrow v. Twenty-First Century Fox, Inc. et al.*, Case 1:17-cv-03836
  (filed 05/22/2017)

- *Hughes v. Twenty-First Century Fox, Inc. et al.*, Case 1:17-cv-07093
  (filed 09/18/2017)

- *Gollohor v. Twenty-First Century Fox, Inc. et al.*, Case 1:17-cv-08232
  (filed 10/25/2017)

(the "Wigdor Discrimination Suits").

22. Prior to June 23, 2017, in anticipation of a mediation of the Wigdor Discrimination Lawsuits, Wigdor prepared a draft of a complaint against Fox, Zimmerman and Butowsky.

23. Wigdor intentionally included in the draft document salacious, scandalous and impertinent allegations about the President, "fake news", and Russian collusion. Wigdor drafted the pleading solely for its shock effect. Wigdor intended to use the draft document to extort a global settlement of the Wigdor Discrimination Suits from Fox at the mediation.

24. The draft document included the false statement stated that Zimmerman, "with knowledge and support of Butowsky, fabricated two quotations and attributed them to Mr. Wheeler:

- 'My investigation up to this point shows there was some degree of email exchange between Seth Rich and Wikileaks,' said Wheeler.'

- 'My investigation shows someone within the DC government, Democratic National Committee or Clinton team is blocking the murder investigation from going forward,' Wheeler said. 'That is unfortunate. Seth Rich's murder is unsolved as a result of that.'"

25. The draft document made multiple additional false and defamatory statements of fact of and concerning Butowsky, including:

- Butowsky said the statements were falsely attributed to Wheeler because "***that is the way the President wanted the article***".

- Zimmerman, Butowsky and Fox had created fake news to advance President Trump's agenda.

- Butowsky and Zimmerman were not simply Good Samaritans attempting to solve a murder.[5]  Rather, they were interested in advancing a political agenda for the Trump Administration.

- Specifically, it was Butowsky and Zimmerman's aim to have Wheeler confirm that: (i) Seth Rich was responsible for the leak of DNC emails to WikiLeaks; and (ii) Seth Rich was murdered by a Democrat operative because he leaked the emails to WikiLeaks.

- Butowsky and Zimmerman were not in this alone.  Rather, they colluded with Sean Spicer, Steve Bannon[6] and Sarah Flores to shift the blame for the DNC hacks from the Russians to Seth Rich in order to undermine reports of collusion between Russia and the Trump Administration.

- President Trump wanted Zimmerman's article published to help lift the cloud of the Russia investigation.

- Simultaneous with baseless claims of nonpartisanship to British regulators, Fox was contriving with Butowsky and members of the Trump Administration to publish and disseminate fake news to affect politics in America.

- Because of Fox and Butowsky's "devious scheming" British regulators have yet to provide a green light to Fox for the Sky takeover bid, and many U.K. politicians question whether Fox is capable of news dissemination in a fair and neutral manner.

- In falsely quoting Wheeler, Butowsky and Zimmerman attempted – through the publication of fake news – to accomplish what they had set out to do from the start: "solve the problem about Russians are the ones that gave the emails" and establish that "there was no collusion like trump with the Russians."

---

[5]    Butowsky was not trying to solve the murder of Seth Rich.  The Rich family engaged Wheeler – not Butowsky or Fox – to help solve the murder.  Wheeler is the one who investigated the matter and came up with the theory that Seth Rich's murder was **not the result of a botched robbery**.  In one of his texts to Zimmerman, Wheeler stated that "**I'm ready to say that Seths Death was not a botched robbery and there appears to be a coverup within the D.C. Govt related to his death**".  These are Wheeler's words.  Wheeler is the one who told Fox 5 DC reporter, Marina Marraco, on camera on May 15, 2017 that **he** had sources at the FBI who said there is information that could link Seth Rich to WikiLeaks.  "**Absolutely, yeah, and that's confirmed**".  These are Wheeler's own words.

[6]    Butowsky has not spoken with Steve Bannon in three (3) years.  Wigdor and Wheeler simply made this up to further their false narrative that the White House and the President were involved.  **Folkenflik never bothered to interview Bannon**.

- Butowsky planned to extort Seymour Hersh in an effort to save the May 16, 2017 Seth Rich story.

- Wheeler had to backtrack on his statements to Zimmerman because he never made the statements to begin with.

26. During the last week of July 2017 – after Fox refused to accede to Wigdor's outrageous demands and the mediation failed – Wigdor secretly met with Folkenflik to discuss publication of the scandalous false narrative.

27. Wigdor did the unimaginable:  he leaked a false narrative to a media correspondent ***prior to commencement of a judicial proceeding*** with the intent that that correspondent publish the false story as fact.  Folkenflik was Wigdor's firecracker.

**B.** ***FOLKENFLIK PUBLISHED THE PRECONCEIVED FALSE NARRATIVE***

28. At 7:23 a.m. on August 1, 2017 – before any courts were open – Folkenflik published an online article entitled, "Behind Fox News' Baseless Seth Rich Story: The Untold Tale". [https://www.npr.org/2017/08/01/540783715/lawsuit-alleges-fox-news-and-trump-supporter-created-fake-news-story (the "Folkenflik Article")].  The Folkenflik Article appears on NPR.org as follows:



29. Folkenflik's August 1, 2017 Article makes and republishes a number of false and defamatory statements about Butowsky, including:

- Fox News' May 16, 2017 story, entitled "*Seth Rich, slain DNC staffer, had contact with WikiLeaks, say multiple sources*", was "baseless";

- Fox and Butowsky "worked in concert under the watchful eye of the White House to concoct a story" about the death of Seth Rich;

- The Fox News story was a "fake news story";

- The Fox News story was a "deceptive story";

- Wheeler did "not make great headway" in his investigation of the murder of Seth Rich.[7] "The FBI informs Butowsky,[8] Wheeler and Zimmerman that the agency is not assisting the Washington, D.C., police on the investigation – undercutting claims about an FBI report."

- On May 11, 2017, Fox News reporter, Malia Zimmerman, "sends Wheeler a draft of her story … It includes no quotes from Wheeler";[9]

---

[7] In making this statement, Folkenflik intentional and recklessly disregarded Wheeler's texts to Butowsky and Zimmerman. Folkenflik knew that Wheeler claimed he had, in fact, made great headway in his murder investigation. Wheeler expressly represented that it was ***not*** a botched robbery, that there was a "cover-up" in the DC Government, and that the Democratic National Committee (the "DNC") and Aaron Rich, in fact, were blocking the investigation.

[8] Folkenflik knew that the FBI did not inform Butowsky that the agency was not assisting the DC police. Folkenflik also knew from an audio recording published on July 11, 2017 that there ***was*** an FBI Report and that the FBI Report confirmed that Seth Rich made contact with WikiLeaks in the "late spring", "early summer" of 2016, offered an extensive sample of emails from the DNC, and said "I want money". [https://twitter.com/wikileaks/status/892510925244203008?lang=en (Audio-tape of statement from Seymour Hersh); https://www.youtube.com/watch?v=giuZdBAXVh0 (Audio at 4:02)].

[9] This is a half-truth – a fraudulent misrepresentation of the facts. Folkenflik intentionally omitted the fact that Zimmerman sent Wheeler ***three (3)*** drafts of her story on May 15, 2017 – the day before the Fox News story ran – that contained the exact same quotations that Widgor and Wheeler would claim that Fox and Butowsky had made up out of whole cloth. In support of his preconceived storyline, Folkenflik chose to publish an Article that was laden with half-truths and intentionally misleading.

●　　　"Zimmerman's online story … cites Wheeler, incorporating two key quotations from Wheeler that do not appear on video.  In each, the private investigator seemingly takes ownership of the accusations";

●　　　"Zimmerman issues instructions for Wheeler's appearance on Sean Hannity's show later that evening. 'Reread the story we sent you last night [that contained the invented quotes] and stick to the script,' she texts Wheeler."

●　　　"Despite his misgivings,[10] Wheeler plays along" with the fake news promoted by Butowsky and Zimmerman.

30.　　In support of the preconceived storyline, Folkenflik's article quotes Wigdor as follows:

> "Rod Wheeler unfortunately was used as a pawn by Ed Butowsky, Fox News and the Trump administration to try and steer away the attention that was being given about the Russian hacking of the DNC emails," says Douglas Wigdor, Wheeler's lawyer.

31.　　Folkenflik's Article misrepresents that Wigdor had "filed" the lawsuit.  In truth, Wigdor filed the complaint **_after_** leaking and publishing it to Folkenflik and **_after_** Folkenflik and NPR had already dropped the "bombshell NPR report" on the entire world.

---

[10]　　Prior to and through publication of Zimmerman's article on May 16, 2017, Wheeler expressed no "misgivings" at all and he did not "play along" with anything.  In fact, he voluntarily offered Zimmerman quotations.  Wheeler approved the quotations in writing.   As was fully disclosed in and by public record available to Folkenflik, and, upon information and belief, reviewed by Folkenflik and/or his editors and publishers, Wheeler only back-tracked on his quotations **_after being threatened with litigation_** by the Rich family.  Folkenflik intentionally misrepresented and distorted the truth in order to support the scandalous preconceived story about the President, Fox and Butowsky.

C.    **THE BREADTH OF PUBLICATION AND REPUBLICATION OF THE FALSE NARRATIVE IS LIKE NOTHING EVER SEEN BEFORE**

32.    The Folkenflik Article was viewed by millions of subscribers to NPR.org. [*See* https://www.npr.org/about/press/NPR_Fact_Sheet.pdf (The total number of monthly unique visitors to NPR.org is 36.8 million. Monthly visits to NPR Digital Properties, including NPR.org and NPR apps exceeds 114.4 million)].

33.    Folkenflik's Article, including the false narrative and preconceived defamatory statements fed to Folkenflik by Wigdor, was republished over and over, hundreds of times, with no fact-checking whatsoever, by other main stream and alternative media outlets and online newspaper publishers. [*See, e.g.*,

https://www.mediaite.com/online/fox-news-published-fabricated-quotes-in-seth-rich-conspiracy-according-to-lawsuit/;

http://kut.org/post/behind-fox-news-baseless-seth-rich-story-untold-tale;

http://www.wbur.org/npr/540783715/lawsuit-alleges-fox-news-and-trump-supporter-created-fake-news-story;

http://keranews.org/post/behind-fox-news-baseless-seth-rich-story-untold-tale;

https://ww2.kqed.org/forum/2017/08/02/lawsuit-claims-white-house-involvement-in-discredited-fox-news-story/;

http://boisestatepublicradio.org/post/lawsuit-alleges-fox-news-and-trump-supporter-created-fake-news-story#stream/0;

https://www.opb.org/news/article/npr-behind-fox-news-baseless-seth-rich-story-the-untold-tale/;

http://kzyx.org/post/behind-fox-news-baseless-seth-rich-story-untold-tale#stream/0;

http://www.wvia.org/blogs/npr-news/lawsuit-alleges-fox-news-and-trump-supporter-created-fake-news-story/;

http://www.cpr.org/news/npr-story/behind-fox-news-baseless-seth-rich-story-the-untold-tale;

http://wglt.org/post/lawsuit-alleges-fox-news-and-trump-supporter-created-fake-news-story#stream/0;

https://wfpl.org/behind-fox-news-baseless-seth-rich-story-the-untold-tale/;

https://www.wmfe.org/behind-fox-news-baseless-seth-rich-story-the-untold-tale/76249;

https://news.wbhm.org/npr_story_post/2017/behind-fox-news-baseless-seth-rich-story-the-untold-tale/;

https://www.hollywoodreporter.com/thr-esq/fox-accused-lawsuit-publishing-fake-news-at-donald-trumps-behest-1025708;

https://www.reddit.com/r/washingtondc/comments/6qw5z6/from_npr_behind_fox_news_baseless_seth_rich_story/?st=jc3nc6qp&sh=f8c35be4;

https://newrepublic.com/article/144200/meet-reporter-driving-fox-newss-biggest-craziest-stories;

https://www.memeorandum.com/170801/p30#a170801p30;

https://www.si.com/tech-media/2017/12/10/best-journalism-writing-reporting-2017-media-circus;

http://es.redskins.com/topic/414681-npr-behind-fox-news-baseless-seth-rich-story-the-untold-tale/;

https://thinklab.com/content/510254;

https://muckrack.com/davidfolkenflik/articles;

https://www.huffingtonpost.com/entry/fox-news-white-house-seth-rich_us_59809958e4b0d6e28a10cb6e;

https://mediaequalizer.com/brian-maloney/2017/08/cnn-gleefully-exploits-bizarre-lawsuit-filed-against-fox-news;

https://www.mediamatters.org/video/2017/08/01/CNNs-Brian-Stelter-explains-how-new-Seth-Rich-report-shows-the-connections-between-Fox-and/217471].   Mediaite

called the Folkenflik article a "bombshell NPR report":



126

**Fox News Published Fabricated Quotes in Seth Rich Conspiracy According to Lawsuit**

by Joe DePaolo | 11:17 am, August 1st, 2017

Earlier, we posted about a bombshell NPR report on allegations made by longtime Fox News contributor **Rod Wheeler** that the network coordinated with the White House on coverage of the **Seth Rich** story.

34.     In addition to the online Article, NPR simultaneously broadcast and republished Folkenflik and Wigdor's false and defamatory statements in a different format – to its radio audience on *Morning Edition*.

35.   The NPR radio broadcast was heard by millions of people across the Country. [*See* https://www.npr.org/about/press/NPR_Fact_Sheet.pdf (Weekly Listeners for all NPR Stations is 37.7 million.   Weekly Listeners for NPR Programming and Newscasts is 30.2 million)].

**D.     *FOLKENFLIK USED TWITTER TO AMPLIFY THE DEFAMATION***

36.   At the same time Folkenflik's Article was published online at NPR.org and broadcast live on NPR Radio, Folkenflik republished the false and defamatory statements to a new target audience – **his *75,100* followers on Twitter**.

37.   Folkenflik's August 1, 2017 tweet states:



38.     Folkenflik's tweet, with the attached Article, was retweeted 5,220 times and was liked 7,124 times on August 1, 2017 alone.

39.     Folkenflik's Article was republished on Twitter millions of times to Butowsky's detriment.  On August 1, 2017, ***prior to 12:00 p.m. Noon (EST) alone***, the Article was tweeted (*i.e.* published) by the following persons and many others:

- _NPR Politics_ – **2,930,748 followers**



- _audie cornish_ (*Host of NPR's All Things Considered*) – **120,241 followers**

- _Donna Brazile_ – **657,492 followers**

- _Muckmaker_ – **67,438 followers**

26

- *Puppymnkey* – **142,686 followers**

- *Michael Weiss (Senior Editor for the Daily Beast)* – **103,206 followers**

- *Andy Kroll (Reporter for Mother Jones)* – **16,921 followers**

- *Zeke Miller (AP, BuzzFeed, Etc.)* – **206,497 followers**

- *Caroline O (Shareblue Media)* – **311,000 followers**.  "Caroline O",

writer/editor for anti-Trump "media" outlet, Shareblue Media,[11] like most others,

believed and repeated the false narrative peddled by Folkenflik and Wigdor:



---

[11]     Shareblue Media is a progressive news website owned by political activist, David Brock ("Brock").  Brock also operates Media Matters for America, an organization that publishes misinformation for the DNC.

40.     One of the persons who republished (*i.e.,* retweeted) Folkenflik's tweet was Brian Stelter ("Stelter"), host of CNN's @ReliableSources and senior media correspondent for CNN.  Stelter had **552,000 followers on Twitter** as of August 1, 2017. Stelter retweeted Folkenflik's Article to his 552,000 followers, stating:



41.     Donna Brazile – former Chair of the DNC – had **657,500 Twitter followers** on August 1, 2017:



**Donna Brazile** ✔
@donnabrazile

Fellow, Shorenstein Center, Harvard's Kennedy School. Former Chair, Democratic National Committee (DNC).

📍 Washington, DC   🔗 donnabrazile.com

**3,662** Following    **657,502** Followers

Ms. Brazile republished Folkenflik's Article to her 657,500 followers, adding the following comments:



**Donna Brazile** ✔
@donnabrazile

Behind Fox News' Baseless Seth Rich Story: The Untold Tale n.pr/2uUawhq. Seth was a good soul and look at this shameful act.

Behind Fox News' Baseless Seth Rich Story: The Untold Tale
npr.org

9:20 AM · Aug 1, 2017

42.     Brad Bauman ("Bauman") – a consultant and spokesperson assigned to the Rich family by the DNC – republished Folkenflik's Article to his **3,127 Twitter followers**, feigning that the Article left him "speechless":



43.     One of the broadest republications of the Folkenflik Article occurred when "Muckmaker" tweeted the Article to his **67,000 followers**:



Muckmaker republished the Folkenflik Article multiple times on August 1, 2017, including the following:



44. One of Muckmaker's followers is Soledad O'Brien ("O'Brien"), the CEO of Starfish Media Group ("SMG"). SMG claims to be a multi-platform media production and distribution company, dedicated to uncovering and investigating empowering stories that look at the often-divisive issues of race, class, wealth, poverty, and opportunity through personal narratives. [https://www.starfishmediagroup.com/. O'Brien had **796,570 Twitter followers** on August 1, 2017:



Within minutes of receiving Muckmaker's tweet at 5:29 p.m., and without conducting

any due diligence or fact-checking, O'Brien republished Muckmaker's tweet:



O'Brien blindly accepted Folkenflik's representations as if they were true. O'Brien's reaction to Folkenflik's false statements typifies the impact the false statements about Butowsky had on most readers.

45.     On August 1, 2017, Widgor retweeted (republished) Folkenflik's tweet and Stelter's tweet to Wigdor's 400 followers. Wigdor's retweets were then retweeted and liked thousands of times, *e.g.*:



46.     In addition to Twitter, Wigdor republished the Folkenflik article to his 112 public Facebook followers. [https://www.facebook.com/WigdorLaw/].  Publication of the article made it accessible by all 2 Billion+ Facebook users.   Wigdor's Facebook posts were "liked" and "shared" by multiple third-parties.   Wigdor even thanked "Super Lawyers" for highlighting his cause and republishing his false and defamatory statements on Super Lawyers' Facebook page:



47.     After August 1, 2017, Folkenflik gave further interviews in which he continued to push the false narrative created by Wigdor and Wheeler.  Folkenflik told *Mediaite* columnist John Ziegler that "Butowsky's narrative is 'inconsistent'".  Without a shred of evidence, Folkenflik also falsely stated that "collaboration" between Butowsky and the President "is still a plausible assumption with the current evidence." [https://www.mediaite.com/online/david-folkenflik-very-hard-to-rule-out-white-house-involvement-in-seth-rich-conspiracy/].

## E.     *FOLKENFLIK AND NPR PUBLISHED MORE FALSE STATEMENTS*

48.     On August 7, 2017, Folkenflik and NPR published additional false and defamatory statements about Butowsky in an article/broadcast entitled:



[https://www.npr.org/2017/08/07/542087047/fox-news-seth-rich-story-echoes-previous-problems-for-owner-rupert-murdoch (the "August 7 Article")].

49.     Folkenflik's August 7, 2017 Article/broadcast contained the following false statements:

●     "Revelations about Fox News' role in concocting a baseless story on the death of a young Democratic staffer has problematic echoes for the network's controlling owner, Rupert Murdoch";

●     Fox was involved in a "journalistic scandal" over the Seth Rich story;

35

●      Fox "concocted" the story "in order to help President Trump".[12]

50.     On August 16, 2017, Folkenflik and NPR published a photograph of Butowsky beneath the caption:



https://www.npr.org/2017/08/16/543830392/the-role-of-ed-butowsky-in-advancing-retracted-seth-rich-story (the "August 16 Article").

51.     The August 16 Article contains the following false statements:

---

[12]     Read together with the Folkenflik Article, the overall tenor and context of Folkenflik's messages was that Butowsky lied, was dishonest and aided, abetted and actively participated in a fraudulent journalistic scandal.

● Ed Butowsky was the "Man Behind The Scenes In Fox News' Discredited[13] Seth Rich Story";

● "Butowsky displays no curiosity about the way Fox's reporting and his activities affected the very people [the Rich Family] he says he sought to help."

52. On September 15, 2017, Folkenflik and NPR published an article, entitled:



ANALYSIS

## No Apology, No Explanation: Fox News And The Seth Rich Story

September 15, 2017 · 5:06 AM ET
Heard on Morning Edition

DAVID FOLKENFLIK

5:41

+ Queue

Download

Embed

https://www.npr.org/2017/09/15/551163406/fox-news-has-yet-to-explain-what-what-wrong-in-seth-rich-story (the "September 15 Article")].

53. Folkenflik's September 15 Article makes the following false statements:

● "Fox News was compelled to retract the story,[14] which involved presidential politics, international intrigue and a man's murder. When a story of this scale crumbles, most news organizations feel obligated to explain what happened and why. Not so far at Fox … In the four months since its retraction, Fox News has not apologized for what it reported. Nor has it explained what went wrong".

---

[13] In truth, the Fox News story has never been discredited, except because of Folkenflik's false reporting and Wigdor and Wheeler's baseless claims on television. Folkenflik's August 16 Article creates the false impression that Butowsky has no compassion, sympathy or understanding, indeed Folkenflik implies that Butowsky does not care whether his "activities" affected the Rich family. This imputes to Butowsky an ill-will and spite towards the Rich family that is patently false.

[14] Fox was not "compelled" to retract the story. The story never "crumble[d]". Nothing "went wrong". These intentionally false statements typify Folkenflik's unethical and misleading reports.

- "**Lesson No. 1: Investigative reports should be ironclad**" – the Fox story was "groundless";

- "**Lesson No. 2: Make sure your sources are saying what you think they're saying**" – "Before the story ran, Zimmerman sent Wheeler a draft with quotes she intended to attribute to him. NPR has seen a transcript of the texts from Zimmerman calling his attention to that email. But there's zero evidence Wheeler ever said those words or gave permission[15] for her to use them. And if Zimmerman did invent the quotes, that's a big problem – regardless of whether Wheeler gave her the green light. 'It's very easy to lead a witness,' Bettag says. 'It's a dirty rotten thing to do'";

- **Lesson No. 3: Make sure each of your sources can stand on its own**" – "Butowsky fed tips[16] to Wheeler and Zimmerman, the Fox reporter, as he sought to link the dead man to the leaked emails instead of hackers working on behalf of the Russians";

- "**And that leads us to lesson No. 4**" – Transparency and Trust - "Fox withheld Butowsky's various roles in the story from its audiences — he blurred lines between benefactor, source, player and, possibly, even reporter".

54. Folkenflik's false and defamatory statements – in articles and via Twitter and on Facebook – published to millions and millions of people, caused substantial harm and injury to Butowsky. Butowsky's name and reputation have been globally impugned because of Folkenflik and NPR's reckless conduct.

---

[15] The truth is that Wheeler read each of the ***three (3)*** drafts of Zimmerman's articles that were emailed to him on May 15, 2017, and, in fact, he did approve the quotes. Zimmerman did not "invent" anything and did not "lead" Wheeler in any way. Folkenflik lied.

[16] These are categorically false statements for which Folkenflik had no evidentiary support.

55.     Through millions upon millions upon millions of publications and republications, tweets and retweets, posts, likes and shares, Butowsky has suffered egregious insult, shame, humiliation and embarrassment.

**F.      _FOLKENFLIK AND NPR KNEW THEIR STATEMENTS WERE FALSE_**

56.     This case involves the lowest form of "fake news" and the laziest and most unscrupulous and unethical journalistic practices exhibited in the new social media era.

**1.      _Folkenflik Misrepresented Butowsky's Involvement_**

57.     Before he wrote his first Article, Folkenflik knew that Butowsky's role and involvement in the investigation of Seth Rich's murder was limited.

58.     In early 2017, Butowsky contacted the family of Seth Rich to help the family investigate their son's unsolved murder.  Butowsky graciously offered to pay for a private investigator.  [https://soundcloud.com/siriusxm-news-issues/ed-butowsky-seth-richs-death].[17]

59.     On February 23, 2017, Butowsky contacted Wheeler via text message to see if Wheeler would be interested in investigating the murder.  Butowsky did not know Wheeler, but had seen him on television.   Wheeler appeared to be a competent investigator.

60.     Wheeler entered into a contract with the Rich family (specifically, with Aaron Rich, Joel Rich and Mary Rich) to investigate the murder of Seth Rich.   As Wheeler stated to FetchYourNews on May 22, 2017:

---

[17]     Butowsky also donated $250 to Aaron Rich's GoFundMe campaign to raise money, _inter alia_, to maintain and increase the reward for information leading to an arrest and conviction of Seth Rich's killer. [https://www.gofundme.com/SethRich].

> The Rich's were aware of my background as a criminal investigator, specifically as a former police homicide investigator. They indicated that they had seen my many appearances on the Fox News Channel commenting and analyzing dozens of criminal cases and have always been impressed by my knowledge and experience.
>
> The Rich's engaged my services to assist with gathering information and evidence, in an effort to try to assist the Metropolitan Police Department identify the person(s) responsible for the murder of Seth.

[https://fannin.fetchyournews.com/2017/05/22/detective-rod-wheeler-releases-statement-concerning-the-death-of-dnc-staffer-seth-rich/].

61.     Butowsky was not a party to the contract between Wheeler and the Rich family.  He has never seen the contract.

62.     Although Folkenflik made it appear that Butowsky orchestrated and directed Wheeler's murder investigation, in truth Butowsky did not participate in Wheeler's investigation and had very little communication with Wheeler.  Folkenflik knew that Butowsky's involvement was limited.

63.     Wheeler publicly confirmed Butowsky's limited involvement in the investigation.  On May 16, 2017, Wheeler represented to Sean Hannity that "I was hired by the family, Joel and Mary Rich.  They signed the contract.  Now, the financial benefit, if there were any financial benefit and by the way there wasn't much, that was actually paid for by **a third party [Butowsky] that I have had <u>very little communication</u> with at all, Sean**". [https://www.youtube.com/watch?v=CuRJDKEVxHY (emphasis added)].

64.     Folkenflik misrepresented Butowsky's actual involvement in Wheeler's investigation.   Folkenflik made it appear as of Butowsky was at the center of the investigation, directing Wheeler and telling him what to do.  Folkenflik falsely portrayed Butowsky as a puppet master, feeding "tips" to Wheeler and telling Fox what to do.  Far from the truth.

65.     On March 1, 2017, Wheeler told Butowsky that he (Wheeler) had independently acquired some "dynamic information" from one of his sources, the "lead detective" on the Seth Rich murder case.  Wheeler also claimed that he had learned and knew who was "blocking the [murder] investigation".  Wheeler texted Butowsky as follows:



Wheeler told Butowsky that he was meeting with "2 inside contacts" on March 2, 2017.

66.     On or before July 28, 2017, Wheeler's texts were available to Folkenflik on the Internet and via Twitter.  [http://www.debunkingrodwheelersclaims.com/; https://twitter.com/debunkrwheeler?lang=en].  The Twitter account, **@debunkrwheeler**, published the following tweet on July 28, 2017:



67.     On March 31, 2017, Wheeler appeared on Fox 5 DC.  Wheeler uploaded and published the interview to his YouTube channel – "Rod Wheeler" [https://www.youtube.com/user/4apryl].  Wheeler called the video "Fox 5 DC Seth Rich Death Rod Interview". [https://www.youtube.com/watch?v=D_nsLuFyb60].

68.     Butowsky did not arrange the interview with Fox 5 DC.  Butowsky did not provide a script or prompt Wheeler in any way.

69.     In the interview, Wheeler claimed that he had been investigating the murder of Seth Rich over the "past three weeks".

> "[T]here has been a lot of reward money that's been offered for any information. No one has come forward.  So here is the thing that is so important to realize whenever you have a lot of reward money, in this case it is over $125,000, and you don't have anyone coming forward with information.  Then what that tells you as an investigator is that maybe you need to start looking at another cause or another reason as to why this guy was killed and that's what we're doing now. We're looking at uh possibly of course a street robbery, but it could, and I underline the word could, it could have been related, his death to his job, it could have been related to something else.  **what I don't think it was related to though Allison is this Russian hacking thing**."

(Emphasis added).   After the interviewer pointed out to Wheeler that people were "hinting at the fact that perhaps Seth Rich may have given some documents [to Wikileaks]", Wheeler, voluntarily and of his own free will, stated as follows:

> "Well a lot of people have made that same observation and you have to ask yourself what is the motivation behind a person wanting to get involved and offer reward money, maybe he's just a good guy and he has a lot of money laying around so this how he wants to spend his money, but you have to be careful though when you start throwing out these conspiracy theories, they actually don't help the investigation at all … **I haven't found one shred of evidence at all that indicates that Seth's death is the result of any Russian hacking or anything like that.**  I do think it's possible and I underline the word possible that it could have been related to his job to some degree or relationships with the job, don't know that for sure but for investigators we have to go down every path until we can determine who was responsible for his death".

(Emphasis added).

70.     Wheeler made the representations he did to Fox 5 DC because of his own independent investigation into the Seth Rich murder.

**2.     _Folkenflik Misrepresented Wheeler's Contacts With Zimmerman_**

71.     Zimmerman is an award-winning investigative reporter employed by FoxNews.com.  Her reports for Fox largely deal with crime, terrorism in the U.S. and overseas, homeland security, illegal immigration, and political corruption. [http://www.foxnews.com/person/z/malia-zimmerman.html].

72.     After he appeared on Fox 5 DC, Wheeler updated Zimmerman concerning his investigation.

73.     In his reporting, Folkenflik downplayed and downright misrepresented the extent of the contact between Wheeler and Zimmerman.  Folkenflik concealed the fact that Wheeler was actively and extensively in contact with Zimmerman.

74.     Wheeler advised Zimmerman that he (Wheeler) was prepared to say that Rich's murder was **_not_** the result of a "botched street robbery".  Wheeler further offered to Zimmerman that his investigation revealed a "coverup within the D.C. Govt" related to Rich's death.[18]

75.     Zimmerman, who knew Wheeler worked for the Rich family, asked Wheeler if the family was letting him talk.  If Wheeler was "up to it", Zimmerman expressed interest in doing a story on the murder investigation.  Wheeler and Zimmerman exchanged the following text messages:

---

[18]     On May 16, 2017, District of Columbia Mayor Muriel Bowser called allegations that the city's police department is involved in a cover-up in the Seth Rich murder investigation "preposterous." [http://dailycaller.com/2017/05/16/dc-mayor-says-allegations-of-cover-up-of-seth-rich-murder-are-preposterous/].



**3.** *Folkenflik Knew The President Was Not Involved In Any Way*

76.     On April 18, 2017, Butowsky sent Wheeler a text message, inquiring whether Wheeler would be in DC on Thursday, April 20.

77.     Butowsky planned to meet with White House Press Secretary, Sean Spicer ("Spicer").

78.     Wheeler had been asking Butowsky nonstop to get him an interview, so he (Wheeler) could get a job in the White House.[19]  Butowsky asked Wheeler to put together a summary of his findings to date, and to bring the report with him to the meeting. Butowsky emailed Spicer, and asked for a 10-minute meeting, with no specified topic, to catch up.  Butowsky informed Spicer that he would be bringing a Fox News contributor to the meeting.

79.     The meeting with Spicer lasted 10-15 minutes.  Most of the time was spent talking about shirts.  Butowsky and Spicer bought their shirts from the same source: Jacomo Hakim's Bookatailor.  At the meeting, Butowsky and Wheeler, *inter alia*, told Spicer that they were working on a story about Seth Rich and wanted Spicer to be aware of it – that was it.

80.     The President of the United States was not at the meeting and Spicer did not inform the President about the meeting.

81.     Folkenflik had no evidence of any connection between Butowsky and the President because there was no connection.

82.     On July 31, 2017, Folkenflik interviewed Spicer.  Spicer **_denied_** the claims that the President colluded with Butowsky and/or Fox.  Spicer told Folkenflik the following:

---

[19]     *See, e.g.,* https://www.youtube.com/watch?v=NaNhtlS2GxE (recording of phone call in which Wheeler expresses a desire to be employed by the White House) ("the President can appoint me as an administrator to the President … to specifically report to him and start taking a look at all of these cases.  He can do it.  Because someone needs to reign this stuff in and Trump is the person to do it … Whether you like Obama or not, for eight years I think this corruption has been allowed to manifest.  Now we got a new President in there and they can't be as corrupt as they used to be, and that's messing with people's minds.").

- "Ed's been a longtime supporter of the president and asked to meet to catch up:";

- "I didn't know who Rod Wheeler was. Once we got into my office, [Butowsky] said, 'I'm sure you recognize Rod Wheeler from Fox News'";

- Butowsky laid out what had been found about the case. "It had nothing to do with advancing the president's domestic agenda — and there was no agenda. They were just informing me of the [Fox] story";

- Spicer was not aware of any contact, direct or not, between Butowsky and Trump.

### 4. *Folkenflik Knew Wheeler Had Interviewed Detective Dellacamera*

83.      Folkenflik knew that as part of the murder investigation, Wheeler was in direct contact with the "lead detective" – Joseph Dellacamera ("Detective Dellacamera"). Again, the fact of Wheeler's contact with Dellacamera and the information divulged to Wheeler by Dellacamera were both available on the Internet and well-known to Folkenflik.

84.      Information that Wheeler obtained from Detective Dellacamera supported Wheeler's belief and his public statements to Zimmerman and others that Seth Rich had been in contact with WikiLeaks and had sent emails to WikiLeaks.

85.      On April 25, 2017, Wheeler interviewed Detective Dellacamera.

86.      Wheeler's notes of the interview, published on the website www.debunkingrodwheelersclaims.com, state:

> When asked specifically was there any information located on any of Seth's computers that would indicate that he did in fact send emails to WikiLeaks, DellaCamera replied, "there is certain information that I can't provide regarding the case itself, and I hope you understand, like I said, I can't reveal detailed information about the case itself." "I have strict, strict rules by my bosses, because of what this case is, that says don't provide information out, other than what is already publicly out there. I just can't go into detail with what I know." At this time DellaCamera was asked is it a possibility that emails were found on Seth's computer related to the DNC and this could be a motivation for his being killed? DellaCamera replied, "anything's possible; I can't say one way or the other....."

DellaCamera was told that the family were told by me (Wheeler) that regardless of whatever direction the investigation goes, we need to solve the murder, identify the bad guy and get him off the street. So, in keeping with that spirit, I need to "rule out" the possibility that Seth's death could have been related to his job at the DNC. I (wheeler) haven't been able to rule out that someone from the DNC could have been responsible for Seth's death. DellaCamera was asked, "were you aware that Seth was having problems with two supervisors at his job (DNC) and he was very emotionally upset because of his problems at the DNC? DellaCamera replied, "I was aware that there were problems, but I don't know who the supervisors were that he was having problems with." Next, DellaCamera was asked if he was aware that Seth received money from WikiLeaks in exchange for the emails? Did you look into his (Seth's) financial records? DellaCamera replied, "again, I can't go into details with specifics about the case such as that…I really can't. Nothing against you, Rod but I'm just not trying to get myself jammed up." DellaCamera was asked, "so the higher-ups in the department are very aware of this case?" He replied, "Oh yeah, for sure."

I asked once again about the email records. I informed DellaCamera that we need to "disprove" the theory that Seth was killed because of this job at the DNC. DellaCamera stated, "honestly, put it this way, if Seth worked anywhere else other than the DNC, nobody would give a shit about his death. The only reason there is such interest is because of where he worked." DellaCamera was asked, "so why is that?" He replied, "again, it goes back to the DNC…a political organization and it all started stemming from around the time of the election..and it sounds like someone was trying to ruffle feathers…I mean that's what I think."

Anything's possible." "Look, look Rod, please, please do not quote me on anything…..I don't need that shit coming back on me..if I'm quoted, I will probably be reassigned to CCB somewhere…..moving property around. There's certain details of the case that we just can't renewal to anybody, just for the integrity of the case. But, do what you got to do for your business and the news story, but please don't, don't throw me under the bus Rod."

Then Wheeler asked, "did your review of Seth's computer reveal that any emails went out to WikiLeaks?" DellaCamera replied, (after a long pause), well, well…there's stuff on there that, it's its, emails are sent everyday….um…the context of the emails I can't get into the details, um, again, I don't have anything pointing the finger at the DNC other than the conspiracy theories. Nobody has come to me with direct information and provided detailed information about the DNC being involved somehow.

**5.** _Folkenflik Disregarded Wheeler's Public Statements to Marraco_

87.    Prior to publishing anything about Fox, Zimmerman or Butowsky, Folkenflik knew that Wheeler had publicly stated to Fox 5 DC that Seth Rich had been in email contact with WikiLeaks. Folkenflik knew that Fox 5 DC published an online story confirming the following facts obtained from Wheeler:



[http://www.fox5dc.com/news/local-news/private-investigator-there-is-evidence-seth-rich-contacted-wikileaks-prior-to-death].

88.     Wheeler had a crush on Fox 5 DC correspondent, Marina Marraco. Wheeler called Marraco.

89.     On May 15, 2017, Marraco interviewed Wheeler concerning his investigation of Seth Rich's murder and his findings to date as part of a Fox 5 DC "exclusive". [https://www.youtube.com/watch?v=x48PeHvTddc].

90.     Butowsky had absolutely nothing to do with Wheeler's decision to be interviewed by Marraco or the statements that Wheeler voluntarily made to Marraco based on Wheeler's first-hand knowledge and investigation of the murder of Seth Rich.

91.     On May 15, 2017, Wheeler made the following unqualified statements on camera to Marraco:

> "MARINA MARROCO:     Today Fox 5 has learned there is new information that could prove these theorists right.  New information from the family's private investigator suggests there is tangible evidence on Seth Rich's laptop that confirms he was communicating with Wikileaks prior to his death. Now the question is why has DC police as the lead agency on the investigation for the past 10 months insisted this was a botched robbery when until this day there is no evidence to suggest that.  The Rich family hired Rod Wheeler a former MPD homicide detective to run a parallel investigation into their son's death.  Wheeler says he believes there is a cover up and the police department has been told to back down from the investigation."

> WHEELER:          Neither the police department nor the FBI have been forthcoming.  They haven't been cooperating at all.  I believe that the answer to solving his death lies on that computer, which I believe is either at the police department or at the FBI.  I've been told both.[20]

> **MARINA MARRACO:          But <u>you</u> have sources at the FBI saying that there is information …**

---

[20]     Actually, Wheeler had been told that Aaron Rich had the computer. [https://twitter.com/wikileaks/status/892494677823434753?lang=en].

WHEELER:            For sure …

MARINA MARRACO:        That could link Seth Rich to Wikileaks?

WHEELER:            **Absolutely, yeah, and that's confirmed.**  Actually, I have a source in the police department that has looked at me straight in the eye and said 'Rod we were told to stand down in this case and I can't share any information with you'.  Now that is highly unusual for a murder investigation, especially from a police department.  Again, I don't think it comes from the Chief's office, but I do believe there is a correlation between the Mayor's office and the DNC, and **that's the information that is going to come out tomorrow**."

(Emphasis added).  When asked by a Fox 5 DC anchor whether there would be "evidence" to prove the statements made by Wheeler, Marraco stated as follows:

"MARINA MARRACO:      … Rod Wheeler, the investigator, assures us Fox 5 and assures Fox News that there's a full report that contains information that will show how many times Seth Rich made contact with Wikileaks and will show exactly when this communication took place."[21]

92.     In his rush to publish a scandalous story, Folkenflik intentionally ignored Wheeler's statements to Fox 5 DC and Marraco.  Folkenflik never interviewed Marraco.  In spite of evidence to the contrary, Folkenflik never doubted Wheeler and his handler, Wigdor.

**6.     _Folkenflik Actually Knew That Fox Accurately Quoted Wheeler_**

93.     Despite his actual knowledge that Fox accurately quoted Wheeler, Folkenflik intentionally misrepresented that Fox, in concert and with the support of Butowsky, had "concocted" a "fake news story" about the Seth Rich murder to support the President.

---

[21]      In an audio recording published on YouTube on July 12, 2017, Wheeler claimed that Marraco had tricked him, that she took things out of context, that she did not "play" the whole tape of the interview, that he (Wheeler) did not know he was being recorded. [https://www.youtube.com/watch?v=2p8at6PD4L8].

94.     On May 15, 2017, Wheeler was in contact with Zimmerman multiple times about the article Zimmerman was writing.

95.     Folkenflik had copies of all the email and text message communications between Wheeler and Zimmerman, which he obtained from Wigdor and which were also published and available on the Internet. [http://www.debunkingrodwheelersclaims.com/].

a.     ***The First Email***

96.     At 1:20 p.m. on May 15, 2017, Zimmerman emailed Wheeler a "current draft" of her article:

From: **Malia Zimmerman** <maliamzimmerman@gmail.com>
Date: Mon, May 15, 2017 at 1:20 PM
Subject: small changes included - current draft
To: Rod Wheeler <rod@rodwheeler.com>

97.     Wheeler received Zimmerman's email.

98.     Zimmerman's May 15 "current draft" contained the following words:

Rod Wheeler, a former DC Homicide police detective who now runs a private detective firm and was hired to investigate Rich's murder, said he too uncovered substantial evidence and information that led him to believe the connection between Rich and Wikileaks.

99.     Zimmerman's May 15 "current draft" attributed the following quotes to Wheeler:

"My investigation up to this point shows there was some degree of email exchange between Seth Rich and Wikileaks," said Wheeler, who also is a Fox News contributor.

"My investigation shows someone within the DC government, Democratic National Committee or Clinton team, is blocking the murder investigation from going forward," Wheeler said. "That is unfortunately. Seth Rich's murder is unsolved as a result of that."

100.    Far from denying ***anything*** in the May 15 "current draft", Wheeler offered

Zimmerman ***further* quotes**, including the following:

> Here is another quote you may want to consider using "I sincerely believe that there is an underground culture of corruption that exist within the confines of the nations capital that includes quite possibly the crime of murder. It's time that the FBI immediately conduct a full and thorough investigation  to not only the death and who caused the
>
> death of Seth rich but those that he was involved with and others regarding the Democratic national committee."

101.    The quotes attributed to Wheeler in Zimmerman's "current draft" were identical in substance to statements Wheeler had made in March to Butowsky; to statements Wheeler made in text messages to Zimmerman; and to statements made by Wheeler to Marraco and Fox 5 DC in May.

102.    The quotes were also completely consistent with Wheeler's notes of his interview with Detective Dellacamera.

103.    Wheeler did not deny the quotes or object to anything Zimmerman had written in the "current draft".

104.    Wheeler did not inform Zimmerman that ___any___ of his quotes were inaccurate in any way.

105.    If he had objected to anything Zimmerman wrote, Wheeler had a duty to be truthful.  In good conscience, Wheeler should have informed Zimmerman of any inaccuracies.

106.    Wheeler knew Zimmerman and Fox were relying on Wheeler to be truthful and honest.

107.    As an experienced journalist, Folkenflik knew that Wigdor and Wheeler were lying when they told Folkenflik that Fox fabricated the Wheeler quotes.  Folkenflik chose to act out a lie and published Wigdor's false narrative.  After all, Wigdor had given Folkenflik and NPR the "exclusive".

    b.    ___The Second Email___

108.    At 3:59 p.m. on May 15, 2017, Zimmerman emailed Wheeler a revised draft of the article.

109.    The subject line of Zimmerman's 3:59 p.m. email expressly advised and instructed Wheeler to "**please read carefully**" (emphasis added):

| | |
|---|---|
| **From:** | Malia Zimmerman <maliamzimmerman@gmail.com> |
| **Sent:** | Monday, May 15, 2017 3:59 PM |
| **To:** | Ed Butowsky; Rod Wheeler |
| **Subject:** | please read carefully |

110.    The revised 3:59 p.m. draft of Zimmerman's article made the following statement about Wheeler:

Rod Wheeler, a retired DC Homicide police detective who now runs a private detective firm and was hired to investigate Rich's murder, said he too uncovered evidence that confirms the connection between Rich and Wikileaks.

111.    The revised 3:59 p.m. draft of Zimmerman's article contained the following quotes attributed to Wheeler:

"My investigation up to this point shows there was some degree of email exchange between Seth Rich and Wikileaks," said Wheeler, who also is a Fox News contributor.

"My investigation also shows someone within the DC government, Democratic National Committee or Clinton team, is blocking the murder investigation from going forward," Wheeler said. "That is unfortunately. Seth Rich's murder is unsolved as a result of that."

112.    After sending her email with the revised article, Zimmerman texted Wheeler via iMessage to confirm that he had received the revised article and that he could read it.

113.    Wheeler confirmed that he had received Zimmerman's email and that he had read the revised article.

114.   Far from denying ***any*** quotes attributed to him in the revised article,

***WHEELER OFFERED ZIMMERMAN FURTHER QUOTATIONS!!!***:



115.   At no point in time did Wheeler ever deny making the statements quoted by Zimmerman.   In fact, when Zimmerman asked Wheeler if she could use the quotes, Wheeler responded as follows:



116.   Wheeler never hesitated, never equivocated, never prevaricated, and never denied the quotes.

117.   Wheeler never attempted to correct, amend, clarify, or retract the quotes.

118.    Before he published his August 1, 2017 article on NPR.org, Folkenflik had irrefutable evidence that Wigdor was peddling a false narrative.

119.    Acting in concert with Wigdor, Folkenflik disregarded serious doubts as to the veracity of Wheeler and republished a story that Folkenflik knew to be false. Folkenflik knew the fake news would immediately create massive publicity that would cast aspersion upon Butowsky and portray him in a false light.  Folkenflik republished the false narrative because he had a deal with Wigdor.

### c.    *The Third Email*

120.    At 4:47 p.m. on May 15, 2017, Zimmerman sent Wheeler a *third* email that included the final draft of the article.  Zimmerman's email specifically advised Wheeler that the draft had been "turned in" to her editors:

| | |
|---|---|
| **From:** | Malia Zimmerman <maliamzimmerman@gmail.com> |
| **Sent:** | Monday, May 15, 2017 4:47 PM |
| **To:** | Rod Wheeler; Ed Butowsky |
| **Subject:** | draft turned in |

121.    As Folkenflik well knew, this was Wheeler's third and final chance to deny the quotes.

122.    Wheeler made no attempt to stop the presses.

123.    The final draft of Zimmerman's article, emailed to Wheeler at 4:47 p.m. on May 15, 2017, contained the following quotes attributed to Wheeler:

"My investigation up to this point shows there was some degree of email exchange between Seth Rich and Wikileaks," said Wheeler, who was hired to investigate Rich's murder. "I do believe that the answers to who murdered Seth Rich sits on his computer on a shelf at the DC police or FBI headquarters."

> "My investigation shows someone within the DC government, Democratic National Committee or Clinton team is blocking the murder investigation from going forward," Wheeler said. "That is unfortunately. Seth Rich's murder is unsolved as a result of that."

124. Wheeler's own text messages and emails (quoted verbatim above and available to Folkenflik prior to August 1, 2017), the notes of his interview with Detective Dellacamera, and Wheeler's statements to Marraco on May 15, 2017 confirm that Fox accurately quoted Wheeler. Wheeler's statements to Marraco bear repeating:

"**I believe that the answer to solving his death lies on that computer, which I believe is either at the police department or at the FBI.**"

125. In addition to the emails and text message exchanges, Wheeler confirmed verbally to Zimmerman that the article accurately depicted his statements, and Wheeler expressed his support for the story. These statements occurred on conference calls several days leading up to publication of Zimmerman's story, including telephone conversations on May 10, 2017 (10:30 am), May 11, 2017 (9:52 am and 10:12 am), and May 15, 2017 (11:22 am and 1:13 am).

126. Wheeler also confirmed verbally to Butowsky that he had independently formed the belief, before publication of Zimmerman's article, that there were email communications between Seth Rich and Wikileaks.

127. In his blind desire to publish a story disparaging of Fox, Folkenflik intentionally and maliciously disregarded the very record before him.

**7.** *Folkenflik Disregarded Seymour Hersh's Recorded Statement*

128. In an audio recording published on July 11, 2017, Hersh provided the following statement:

"What I know comes off an FBI Report ... The kid [Seth Rich was] ... a nice boy, twenty-seven. He was not an IT expert, but he learned stuff. He was a data programmer ... Here's what nobody knows ... when you have a death like that, DC cops ... have to get to the kid's apartment and see what you can find ... so they get a warrant ... They go in the house and they can't do much with his computer ... They have a cyber unit in DC, and they're more sophisticated. They come and look at it. The idea is that maybe he's had a series of exchanges with somebody who's said 'I'm going to kill you, you motherfucker' ... and they can't get in ... So, they call the FBI cyber unit. The DC ... Washington Field Office is a hot shit unit ... There's a cyber unit there that's excellent ... The Feds get through and here's what they find. This is according to the FBI Report ... What the Report says is that sometime in late Spring ... early Summer, he [Seth Rich] makes contact with WikiLeaks. That's in his computer ... They found what he had done. He had submitted a series of documents ... juicy emails from the DNC ... He [Seth Rich] offered a sample, an extensive sample ... of emails, and said I want money. Later, WikiLeaks did get the password. He had a ... protected dropbox ... He also, and this is in the FBI Report, he also let people know with whom he was dealing ... The word was passed, according to the FBI Report, 'I also shared this box with a couple of friends, so if anything happens to me, it's not going to solve your problems' ... WikiLeaks got access before he was killed."

[https://www.youtube.com/watch?v=giuZdBAXVh0].

129.    In his reporting, Folkenflik completely disregarded Hersh's recorded statement.

130.    Instead, Folkenflik peddled a preconceived narrative that the Fox News story, directed and supported by Butowsky, was "baseless". Folkenflik knew his statements were false.

**8.**    *Folkenflik Knew About Wheeler's Appearances On Hannity and Dobbs*

131.    On May 16, 2017, in the early morning, Fox published Zimmerman's story entitled, "*Seth Rich, slain DNC staffer, had contact with WikiLeaks, say multiple sources*". The article included the statements that Wheeler had made and approved.

[http://web.archive.org/web/20170516133954/http://www.foxnews.com/politics/2017/05/16/slain-dnc-staffer-had-contact-with-wikileaks-investigator-says.html].

132.    Fox News also tweeted Zimmerman's story to its 16 Million followers:



133. Folkenflik knew that on May 16, 2017 – **after publication of Zimmerman's article** – Wheeler appeared on Fox News where he was interviewed by Sean Hannity ("Hannity"). [https://www.youtube.com/watch?v=CuRJDKEVxHY].

134. When he spoke with Hannity, Wheeler knew the Zimmerman article had been published with his approved quotations included.

135. Wheeler ***once again*** expressly confirmed that Seth Rich had communicated with WikiLeaks.

136.    The transcript of Wheeler's interview with Hannity is clear and
unambiguous:

> "HANNITY:        The timeline is fascinating here.  As I played in the
> last segment, Julian Assange I asked him repeatedly on radio and television if
> Russia was involved, absolutely not.  Now believe him or not, he's the guy at
> WikiLeaks who has an 11 year history of never being proven wrong … I guess
> my question is when you look at the timeline of this, and 12 days after he was
> killed it shows up on WikiLeaks, **what did you discover in terms of the
> contacts with WikiLeaks?**
>
> WHEELER:        Right, well that is an excellent question and let me
> clear that up right now exactly what it was that I found.  Now I have never seen
> the emails myself directly.  I haven't even seen the computer that Seth Rich used.
> Here is the problem with all of this: I don't even know where the computer is.  I
> checked with the police department.   They said they don't know where the
> computer is and the FBI they say they don't have the computer.  Now, where did
> this information come from in terms of knowing or believing, I should say, that
> Seth Rich could have been in communications with WikiLeaks.  There was a
> federal investigator that was involved on the inside of the case, a person that is
> very credible.  And I'll tell you, let me just say this Sean, I don't like to suggest
> things without saying the person's name, but I can't say that person's name
> because that person would be thrown under the bus.  And I can't do that, but **this
> person we checked him out, we had to check him out, very credible.   He said
> he laid eyes on the computer, and he laid eyes on the case file, and he came
> across very credible.   When you look at that with the totality of everything
> else I've found in this case, it's very consistent for a person with my
> experience to begin   to   think   well   perhaps   there   were   some   email
> communications between Seth and WikiLeaks.  Everytime I talk to the police
> department though Sean, everytime I talk to the police department about the
> WikiLeaks or the emails, it's automatically shut down.   That discussion is
> automatically shut down**.
> …

(Emphasis added).  *Wheeler never once informed Hannity that Zimmerman or Fox or*

*Butowsky had misquoted him.  Wheeler never claimed that Fox, with Butowsky's support,*

*had "fabricated" quotes or that the Zimmerman article was "fake news".  Wheeler never*

*said that Butowsky had "fed" him "tips".*  Wheeler went on to tell Hannity that:

> "[i]f this is just a murder investigation, first of all why would the FBI be involved? The only reason the FBI would be involved just so that the viewers understand is if this has some degree of national exposure, meaning because maybe it is related to the DNC. We don't know that. We don't know that for sure. It could have been a botched robbery, but my point is this Sean and I've been investigating murders for a while you have to look at every possibility you can't just look at one thing say well that has to be it … But here is the thing, and this is so important, there has been a $125,000 reward out for information pertaining to the death of Seth Rich. Not one person has come forward. Here is one other thing that is going to be startling and I'm just going to say this right now. I reached out to the police department way back in March when the family first hired me right to get involved. I didn't hear anything from the police department for 2-3 days. Guess what I leaned yesterday [May 15, 2017] from the family of Seth Rich? The police department did not call me back because someone, a high-ranking official at the DNC, check this out, a high-ranking official at the DNC, when I called the police department. They got that information and called the Rich family wanting to know why was I snooping around?
>
> …
>
> I don't know for sure. **I don't know as a matter of fact if the emails went out to the WikiLeaks or anybody else, but <u>it sure appears that way</u>.**"

(Emphasis added).

137. Folkenflik knew all about the Hannity interview, just like he knew about Wheeler's extensive text and email communications with Zimmerman and Butowsky. Folkenflik knew that Wheeler – who was held out by Wigdor as a seasoned DC homicide investigator – opined that it "sure appears" there were email communications between Seth Rich and WikiLeaks.

138. Folkenflik also knew that Wheeler had disclosed to Zimmerman what the Rich family had said. In text messages on May 15, 2017, published on the Internet and available to Folkenflik, Wheeler expressly advised Zimmerman as follows:

"Joel [Rich] said that when I called the police department, right after that Donna Brazile called him and was asking him why I was snooping around asking questions about death of Seth and his working relationships at the DNC. **I was startled to learn that Donna Brazile even knew that I reached out to the police department**. So basically when I called the police department that information was automatically given to Donna Brazile and she caught [sic] Joel wanting to know why I was inquiring about Seth relationships at the DNC. **As a police investigator that automatically makes me think that Donna Brazile is in a category of persons of interest as it relates to the death of Seth Rich.** I also spoke with another source who informed me that not only was Donna Brazile snooping around wanting to know what I was learning with regards to the DNC and Seth Rich but also **I was told that Debbie Wasserman Schultz was snooping around wanting to know how much it was I [sic] learning**."

"I just read the email you sent. **Joel [Rich] informed me that Donna Brazile called him not the police department asking why I was snooping around**. My question is how did she know I called the detective so quick."

(Emphasis added).

139.    In addition to Hannity, on May 16, 2017 Wheeler appeared on Fox Business with Lou Dobbs ("Dobbs") to discuss the Seth Rich murder investigation. [https://www.youtube.com/watch?v=2tqckO7bBjk].  Dobbs asked Wheeler about "this federal investigator, we're in an unusual situation, an FBI forensic report showing 44,000 emails 18,000 attachments, that approximates just about what was released by WikiLeaks … do you think that is a coincidence?"  Wheeler replied without hesitation,

"WHEELER:        No, I actually don't think it's a coincidence… his information that he shared with Fox News is pretty consistent with everything else I've been learning[22] including the fact that right now no one seems to know where the computers are that belonged to Seth Rich, the computers obviously were confiscated at some point."

When Dobbs asked about the claim that DC detectives were told to "stand down", Wheeler stated:

---

[22]        Wheeler vouched for the FBI Report and expressed no doubt that there was email communication between Seth Rich and WikiLeaks.

WHEELER:          And that is a claim I actually heard myself from a detective, who said 'Rod we were told not to investigate this fully'. Now see that's interesting because that is consistent with what this federal investigator said. The federal investigator never knew Lou, that I had heard from a detective in the police department to stand down. Well if this guy says the same thing, you have to start saying to yourself well maybe there is some truth behind this. So, that's why I think when you look at the totality of everything we have right now it is very consistent with what this federal investigator has said.

…

We also don't have body cameras that I know police officers were wearing on the scene the night in which Seth was killed. That's a problem because we know for a fact those officers had on body cameras. No one knows where the video is. I think we are going to have to continue to look at this case and hope more will come out as time goes by Lou."

140.     Folkenflik knew that Wheeler's statements to Marraco, Zimmerman, Hannity and Dobbs in May 2017 cast serious doubts on the false narrative promoted by Wigdor in June/July 2017. In spite of these doubts, Folkenflik published Wigdor and Wheeler's statements as if they were true.[23]

---

[23]     As was well-known to Folkenflik prior to publication of the false and defamatory statements at issue in this action, Wheeler made repeated positive statements to multiple people, and then, in less than 48 hours, claimed that his own statements were fabricated. **Wheeler did a colossal flip-flop**. Blake Hounshell, the Editor-in-Chief of POLITICO Magazine, observed:



Blake Hounshell ✔
@blakehounshell

The puzzling thing about Rod Wheeler is that he went on Lou Dobbs and Sean Hannity and said more or less what he's alleging was made up.

9:20 AM · Aug 1, 2017

62 Retweets     138 Likes

9.     *Folkenflik Knew About Wigdor/Wheeler's Motive To Lie*

141.    On May 16 or May 17, 2017, one or more members of Seth Rich's family or a spokesman for the Rich family (Bauman) threatened to sue Wheeler for violating the terms of his contract with the Richs by speaking with Marraco, Zimmerman, Hannity and Dobbs.   [*See, e.g.,* https://www.nbcnews.com/politics/justice-department/slain-dnc-staffer-s-family-orders-blabbing-detective-cease-desist-n762211].

142.    Counsel for the Rich family, Joseph A. Ingrisano, Esquire, of Kutak Rock, notified Wheeler that his "statements and actions have caused, and continue to cause, the [Rich] Family severe mental anguish and emotional distress.   Your behavior appears to have been deliberate, intentional, outrageous, and in patent disregard of the Agreement and the obvious damage and suffering it would cause the Family."   Ingrisano further advised Wheeler that his "improper and unauthorized statements, many of which are false and have no basis in fact, have also injured the memory and reputation of Seth Rich and have defamed and injured the reputation and standing of the members of the Family".

143.    Bauman, a DNC crisis operations, strategic planning, digital engagement, rapid response, and media relations "political consultant"[24] deployed to represent the Rich family after the murder of Seth Rich, also issued a public statement.   Bauman trumpeted the DNC party line:   "Anyone who continues to push this fake news story after it was so thoroughly debunked is proving to the world they have a transparent political agenda or are a sociopath".   "In either case, they should be taken off the air because they

---

[24]     Bauman is the former Executive Director of the Democratic Congressional Progressive Caucus, the largest caucus within the House Democratic Caucus. [https://cpc-grijalva.house.gov/what-is-cpc/].   He is currently an agent working for the "Pastorum Group", a full-service communications and political strategy firm founded by Bauman and dedicated to promoting Democratic candidates, causes and coalitions. [https://www.thepastorumgroup.com/#about-section].

are either blind to the damage they are doing to a murder victim's family or don't care, showing a profound lack of judgement and common decency." Bauman discouraged the investigation of Seth Rich's murder, upon information and belief, because he was assisting the DNC in a cover-up of Seth Rich's leak of emails to WikiLeaks.

144.    The threats from the Rich family and Bauman provided Wheeler with a motive to lie, backtrack and to distance himself from the quotes and statements he had made to Marraco, Zimmerman, Hannity and Dobbs.

145.    Folkenflik knew that Wheeler's liability to the Rich family also provided Wheeler with a motive to lie about Butowsky, Zimmerman and Fox.

146.    Folkenflik also knew that there was significant conflict between Wheeler and Seth Rich's brother, Aaron Nathan Rich, an employee of defense contractor, Northrop Grumman Corporation (NYSE:NOC) with a Top-Secret security clearance.[25] Folkenflik knew that in a YouTube video recording (published July 12, 2017) Wheeler had accused Aaron Rich of obstructing the murder investigation by prohibiting Wheeler from inquiring about "emails". [https://www.youtube.com/watch?v=2p8at6PD4L8]. BigLeaguePolitics.com summarized the audio tape of Wheeler's accusations of obstruction as follows:

---

[25]    Aaron Rich is a Senior Software Engineer with NOC.

<blockquote>
Wheeler said that brother Aaron Rich tried to block Wheeler from looking at Seth's computer, even though there could be evidence on it. "He said no, he said I have his computer, meaning him," Wheeler said. "I said, well can I look at it?...He said, what are you looking for? I said anything that could indicate if Seth was having problems with someone. He said no, I already checked it. Don't worry about it."

Wheeler said that Seth's girlfriend told him that Aaron Rich had possession of Seth's cell phones, but Aaron denied it and said "we're not going to worry about the cell phones."

Aaron also blocked Wheeler from finding out about who was at a party Seth attended the night of the murder.

"All I want you to do is work on the botched robbery theory and that's it," Aaron told Wheeler, according to Wheeler's claim on the audio. Wheeler said that Seth's father Joel "does not appear to have any hidden agenda."
</blockquote>

[https://bigleaguepolitics.com/audio-rod-wheeler-explains-fox-news-fiasco-claims-brother-blocked-wikileaks-inquiries/].

147. Aaron Rich's obstruction and refusal to permit Wheeler to investigate Seth Rich's emails caused Wheeler to believe that there were email communications between Rich and Wikileaks. In the July 12, 2017 audio recording, Wheeler positively stated, **"with everybody pushing back on this email thing in the family and they're so protective of the email, it leads me to think that perhaps there were some communications between Seth Rich and Wikileaks**."[26]

---

[26] Compare these statements to what Wheeler told Zimmerman and what was published in the Fox News' story:

<blockquote>
"My investigation up to this point shows there was some degree of email exchange between Seth Rich and Wikileaks," said Wheeler, who was hired to investigate Rich's murder. "I do believe that the answers to who murdered Seth Rich sits on his computer on a shelf at the DC police or FBI headquarters."
</blockquote>

148.    Wheeler's public statements about the Seth Rich emails should have caused Folkenflik (and Wigdor) to question the veracity of Wheeler's subsequent denial of his quotations to Zimmerman.

###    10.    *Folkenflik Could Never Have Believed The Flip-Flopping Wheeler*

149.    Folkenflik knew that Wigdor's source, Wheeler, flip-flopped on virtually all the essential facts, including what he (Wheeler) had told Marraco.  The fact that Folkenflik accepted Wheeler's word as true – when it was verifiably false – demonstrates that Folkenflik acted with reckless disregard for the truth.

150.    In an article published on May 17. 2017 at 12:42 a.m., BuzzFeed News quoted Wheeler as follows:

> "That story on Fox 5 last night was inaccurate," said Wheeler, a former DC homicide detective. "I don't even know where the computers are."

https://www.buzzfeed.com/claudiakoerner/the-private-detective-who-ignited-a-clinton-conspiracy?utm_term=.cmYQ8ZrbEz#.xr04N76J3z].

151.    On May 17, 2017 at 11:32 p.m., Fox 5 DC published an editor's note.  The note emphasized that what Wheeler told Fox 5 DC on camera on Monday, May 15, 2017 regarding Seth Rich's murder investigation is in "clear contrast" to his representations "over the last 48 hours".  Fox 5 DC pointed out that Wheeler "backtracked" completely on his assurances given to Fox 5 DC and Fox News on May 15, 2017.  After Wheeler backtracked, Fox 5 DC attempted incessantly to communicate with him, but he did not return calls or emails.  On May 17, 2017, "just before our newscast, Wheeler responded to our requests via a telephone conversation, where he now backtracks his position and Wheeler    characterizes    his    on-the-record    and    on-camera    statements    as

'miscommunication.'" [http://www.fox5dc.com/news/local-news/private-investigator-there-is-evidence-seth-rich-contacted-wikileaks-prior-to-death].[27]

**11.** _**Folkenflik Knew About Wheeler's Statement to FetchYourNews**_

152. After May 17, 2017, Wheeler continued to publish statements that should have caused Folkenflik to doubt Wigdor and Wheeler's false narrative.

153. On May 22, 2017, Wheeler released a statement concerning the death of Seth Rich that was published by Brian K. Pritchard of FetchYourNews.com. [http://fetchyournews.com/tag/rod-wheeler/]:



Detective Rod Wheeler releases statement concerning the Death of DNC staffer Seth Rich

FEATURED, NEWS — May 22, 2017 , by Brian K. Pritchard

Former Homicide D.C. Detective Rod Wheeler has released the following statement concerning the death of former DNC staffer Seth Rich. **Wheeler, "I am still of the personal opinion that his murder may be tied to his employment."**

154. Wheeler's written statement, in pertinent part, reads:

---

[27]    Folkenflik (and Wigdor) had every reason to doubt Wheeler's veracity. Wheeler's backtracking and lies were a matter of public record. Folkenflik and Wigdor acted with reckless disregard for the truth when they deliberately republished Wheeler's false and defamatory statements about Butowsky and Fox.

> Since accepting the request of the Rich family to assist them in this investigation, I have always been focused on one thing, and one thing only; finding out who is responsible for the death of Seth. I feel as if I was making good progress and getting very close to developing a motive. Further, I can say that I have developed what I believe to be persons of interest, that I essentially would like to talk to further regarding information that they may have surrounding Seth's death. I am of the personal opinion that the information/article reported by FoxNews Channel last Tuesday was essentially correct and worthy of further investigation. That is exactly why when I first learned of this new information developed by a FoxNews investigative journalist, I immediately called the DC Police to inform them.

Wheeler publicly admitted that Zimmerman's article was "**essentially correct and worthy of further investigation**". (Emphasis added).[28]

155.    Folkenflik failed to report any of this in his Articles.  Rather, he concealed the truth and materially misrepresented Wheeler's position.

156.    Rupert Murdoch's daughter-in-law, Kathryn Murdock (wife of James Murdock), worked for the Clinton Foundation and is a friend of the Clintons. [http://www.qdvm.org/kathrynmurdoch/].  As Folkenflik well knew, Kathryn Murdock is also an outspoken critic of President Trump.

157.    Zimmerman's article was not pulled by Fox because it was "concocted" or "fake news" or "deceptive" or any of the other pejorative connotations used by Folkenflik

---

[28]     Despite Wheeler's own words, Wigdor and Wheeler falsely stated that on May 16, 2017, Wheeler called Zimmerman and confronted her about the use of false statements in the article.  Wigdor and Wheeler ginned up a story that Zimmerman told Wheeler that she would have the statements removed from the article and, when they were not removed, that Zimmerman told Wheeler that she had been instructed by her bosses at Fox News to leave the false quotes in the story.  Wigdor and Wheeler made up facts out of whole cloth.  **If Wheeler was upset about purportedly fabricated quotes of a highly politically-charged nature being falsely attributed to him, why would he admit in a written statement on May 22, 2017 that Zimmerman's story was "essentially correct and worthy of further investigation"???  In truth, Wheeler admitted to FetchYourNews – on at least two public occasions on May 22, 2017 – that Zimmerman's article was on the money.**

and NPR.   At Kathryn Murdock's request, and for political reasons, Fox pulled Zimmerman's article.

158.    On May 23, 2017, Fox retracted the article with the following explanation:

"On May 16, a story was posted on the Fox News website on the investigation into the 2016 murder of DNC Staffer Seth Rich.  The article was not initially subjected to the high degree of editorial scrutiny we require for all our reporting. Upon appropriate review, the article was found not to meet those standards and has since been removed.

We will continue to investigate this story and will provide updates as warranted."

[http://www.foxnews.com/politics/2017/05/23/statement-on-coverage-seth-rich-murder-investigation.html].

159.    On June 5, 2017, Wheeler denied back-tracking on Fox and Zimmerman. He told the hosts of YouTube channel, *Crowdsource The Truth*, that "I haven't walked back anything.  As a matter of fact, in my statement that I released a week ago … I said … in writing that **I do believe that there was some communication between Seth and WikiLeaks and I believe that based on common sense**". (Emphasis added).[29] [https://www.youtube.com/watch?v=yDI0AFOHuNI].   Wheeler also confirmed that he had hired an "attorney".

160.    On June 19, 2017, Wheeler appeared on another YouTube channel, *Jamaral Thomas*, and tried to explain away his statements to Marraco.  Wheeler stated:

---

[29]     This is the exact same thing that he said to Zimmerman and that she quoted in the May 16, 2017 Fox News story.

"what happened was the Fox 5 reporter, a woman named Marina Marroco, she reached out to me on that particular Monday … So I had not read the actual report that was going to be released by the Fox News reporter on Tuesday, but I had heard there was going to be a report released.[30]  So the Fox 5 reporter asked could I give her a comment just a teaser, okay just teaser for the 10 o'clock news … So she asked me and this is important she said so you have information from a source that they have seen emails from Seth Rich computer?  And I said I think I said something yes, confirmed.  Now what did I mean by that?  I meant that it was confirmed by the Fox News reporter who had just told me about this guy, not that it was confirmed that I saw it with my own eyes.  So I never really back tracked on anything.  The reporter from Fox News who told me yes it's confirmed that this guy that this guy saw the emails, okay and so basically what I did was repeated that but not once have I ever said I saw the computer."

[https://www.youtube.com/watch?v=er8PhSOk85s].   Wheeler confirmed that his work for the Rich Family was "done".  Wheeler stated that he declined to keep working on the Seth Rich murder case because "my family and me has [sic] taken so much of a hit in the media over the past couple of weeks.  To be honest, I've never had to deal with anything like this before. You know what I mean? … It takes a toll on you, so I decided I really don't even want to be involved in this case anymore."

### COUNT I – DEFAMATION *PER SE*

161.    Butowsky restates paragraphs 1 through 160 of this Complaint and incorporates them herein by reference.

162.    Folkenflik and NPR made and published to third-parties, including subscribers, viewers, listeners, followers, main stream media, and print media, numerous false factual statements, which are detailed verbatim above, of or concerning Butowsky.

163.    By publishing Articles on the Internet and by tweeting his false statements, Folkenflik and NPR knew or should have known that their false and defamatory statements would be republished over and over by third-parties millions of

---

[30]    This is a patently false statement.  As evidenced by the emails and text messages on May 15, 2017, Wheeler *__had__* read Zimmerman's report.

times to Butowsky's detriment and injury.  Republication by main stream media, print media and on social media was the natural and probable consequence of Folkenflik and NPR's actions and was actually and/or presumptively authorized by Folkenflik and NPR. In addition to their original publications, Folkenflik and NPR are liable for the millions upon millions of republications of the false and defamatory statements by third-parties.

164.    Folkenflik and NPR's false statements constitute defamation *per se*.  The statements accuse and impute to Butowsky the commission of crimes involving moral turpitude and for which Butowsky may be punished and imprisoned in a state or federal institution.  The statements impute to Butowsky an unfitness to perform the duties of an office or employment for profit, or the want of integrity in the discharge of the duties of such office or employment.  Folkenflik and NPR's statements also prejudice Butowsky in his profession or trade.

165.    Folkenflik and NPR's false statements caused Butowsky to suffer loss and injury to his business, insult, pain, embarrassment, humiliation, and mental suffering, harm to Butowsky's name reputation, and out-of-pocket loss.

166.    Folkenflik and NPR acted with actual malice and reckless disregard for the truth for the following reasons:

> a.    Folkenflik, NPR and its editors and publishers abandoned all journalistic standards in writing, editing and publishing the Articles at issue;

> b.    Acting in concert with Wigdor, Folkenflik and NPR conceived a story line in advance of any investigation and then consciously set out to make the evidence conform to the preconceived story.  Folkenflik pursued and regurgitated the preconceived narrative that he knew to be false.

c.      Folkenflik and NPR relied on a primary source – Wheeler – that Folkenflik and NPR knew to be wholly debunked and unreliable.  Based on information known and available to Folkenflik, Folkenflik in fact harbored serious doubt as to the veracity of Wigdor and Wheeler's statements about Butowsky.  Indeed, the statements were knowingly false, with not a shred of supporting evidence, and Folkenflik knew that before he wrote the Articles published by NPR.

d.      Folkenflik and NPR were in possession of Wheeler's email communications and text messages with Zimmerman and other information that demonstrated the falsity of Wigdor and Wheeler's information.  Folkenflik consciously and intentionally ignored known and available contradictory evidence that demonstrated the preconceived thesis was false and deliberately failed to investigate sources of information (*e.g., Marraco, Hersh, etc.*) that contradicted the preconceived storyline.

e.      Folkenflik and NPR knowingly presented half-truths wrapped in misstatements and conjecture.  They repeated Wigdor and Wheeler's words knowing that the words were false or inherently improbable and at a time when there were obvious reasons to doubt the veracity and credibility of both Wigdor and Wheeler.  Folkenflik and NPR repeated Wigdor and Wheeler's words at a time when they were cognizant of the sources inconsistencies and credibility problems.

f.      Folkenflik and NPR knew that Wigdor and Wheeler both had a strong motive to lie about Butowsky, and a motive to fabricate the charges

73

conspiracy, collusion, fraud and "fake news". Folkenflik and NPR never questioned the extreme bias of their sources. Rather, Folkenflik and NPR were guided by their own extreme bias, ill-will and desire to publish a salacious story about the President, Fox, fake news and "collusion". Folkenflik's book, prior articles, blogs and tweets about Fox and Rupert Murdoch further demonstrate that he and NPR was prejudiced against Fox and had an axe to grind. Butowsky was a victim of that actual malice.

g. Folkenflik and NPR chose to manufacture and publish false statements about Butowsky and use unnecessarily strong and violent language, disproportionate to the occasion, when they knew there was no evidentiary basis for the statements. Folkenflik and NPR did not act in good faith because, in the total absence of evidence, they could not have had an honest belief in the truth of their statements about Butowsky.

h. Folkenflik and NPR reiterated, repeated and continued to publish the false defamatory statements out of a desire to gain notoriety, increase revenues for NPR, hurt Butowsky and Fox and with reckless disregard for the consequences.

i. Folkenflik and NPR initiated the defamation, and went out of their way to publish extra-judicial statements about Butowsky.

167. Folkenflik and NPR lacked reasonable grounds for any belief in the truth of their statements and acted negligently in failing to determine the true facts.

168. As a direct result of Folkenflik and NPR's defamation, Butowsky suffered substantial damage and loss, including, but not limited to, pain and suffering, emotional

distress and trauma, insult, anguish, stress and anxiety, public ridicule, humiliation, embarrassment, indignity, damage and injury to his personal and professional reputations, attorney's fees, costs, and other out-of-pocket expenses in an amount to be determined by the Jury, but not less than $57,000,000.00.

## COUNT II – BUSINESS DISPARAGEMENT

169.  Butowsky restates paragraphs 1 through 168 of this Complaint and incorporates them herein by reference.

170.  Folkenflik and NPR published false and disparaging information about Butowsky, which is detailed verbatim above.

171.  Folkenflik and NPR knew their statements were false and acted with the specific intent to injure Butowsky and aid and abet the extortion money from Fox.

172.  None of Folkenflik and NPR's statements are privileged.  Folkenflik and NPR had no right to publish false and disparaging information about Butowsky. Folkenflik and NPR knew of the falsity of their statements and acted with wanton, intentional and reckless disregard concerning publication.  Folkenflik and NPR acted with ill-will and they intended to interfere with the economic interests of Butowsky in an unprivileged fashion.

173.  Folkenflik and NPR's statements and actions constitute business disparagement under Texas law.

174.  Folkenflik and NPR's business disparagement caused Butowsky to suffer and incur special damages, including loss of income and business and out-of-pocket expenses in an amount to be determined by the Jury, but not less than $57,000,000.00.

## COUNT III– CIVIL CONSPIRACY

175.    Butowsky restates paragraphs 1 through 174 of this Complaint and incorporate them herein by reference.

176.    Beginning in July 2017 and continuing through the present, Folkenflik combined, associated, agreed or acted in concert with Wigdor for the express purpose of injuring Butowsky in his business and reputation through the publication and republication of false and defamatory statements.  In furtherance of the conspiracy and preconceived joint plan, Folkenflik and Wigdor orchestrated a scheme the unlawful purpose of which was to defame Butowsky and destroy his name and reputation.  Acting in concert, Folkenflik and Wigdor utilized the mails, wires, Internet and various main stream media outlets and social media properties to publish, republish and spread the defamation and character assassination.

177.    Folkenflik acted intentionally, purposefully, without lawful justification, and with the express knowledge that he was injuring Butowsky.

178.    Folkenflik's joint actions with Wigdor constitute a civil conspiracy under Texas law.

179.    As a direct result of Folkenflik's misconduct, Butowsky suffered damage and loss, including, but not limited to, injury to and loss of business, injury to his reputation, insult, pain, humiliation, embarrassment, mental suffering, attorney's fees, court costs, and other damages in an amount to be determined by the Jury, but not less than $57,000,000.00.

## COUNT IV – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

180.    Butowsky restates paragraphs 1 through 179 of this Complaint, and incorporates them herein by reference.

181.    Folkenflik and NPR's conduct, detailed above, was intentional and/or reckless.

182.    Folkenflik and NPR's actions offend against generally accepted standards of decency and morality and are atrocious and utterly intolerable.

183.    Folkenflik and NPR's outrageous conduct caused Butowsky to suffer severe emotion distress, extreme fear and panic.[31]

184.    Folkenflik and NPR's misconduct constitutes intentional infliction of emotional distress.

185.    As a direct result of Folkenflik and NPR's misconduct, Butowsky suffered damage and incurred loss, including, without limitation, pain and suffering, physical injury, severe emotional trauma, insult, embarrassment, humiliation, public ridicule, anguish, stress and anxiety, injury to reputation, special damages, medical expenses, attorney's fees, costs and out-of-pocket expenses in an amount to be determined by the Jury, but not less than $57,000,000.00.

---

[31]    The severe emotional distress and tragic consequences that can be caused by false statements made for political and/or malicious reasons, including those published and republished by media outlets such as NPR, is very well-known. [*See, e.g.,* http://www.washingtonexaminer.com/kentucky-state-lawmaker-commits-suicide-amid-allegations-of-sexual-misconduct/article/2643461].

Butowsky alleges the foregoing based upon personal knowledge, public statements of others, and records in his possession. Butowsky believes that substantial additional evidentiary support, which is in the exclusive possession of Folkenflik, NPR, their sources, Wigdor and Wheeler, and their agents and other third-parties, will exist for the allegations and claims set forth above after a reasonable opportunity for discovery.

Butowsky reserves the right to amend this Complaint upon discovery of additional instances of Folkenflik and NPR's defamation and wrongdoing.

## CONCLUSION AND REQUEST FOR RELIEF

WHEREFORE, Ed Butowsky respectfully requests the Court to enter Judgment against Folkenflik and NPR, jointly and severally, as follows:

A.      Compensatory damages in an amount to be determined by the Jury, but not less than $57,000,000.00;

B.      Punitive damages in the maximum amount allowed by Texas law;

C.      Prejudgment interest on the principal sum awarded to Plaintiff by the Jury from August 1, 2017 to the date of Judgment at the maximum rate allowed by law;

D.      Postjudgment interest at the maximum rate allowed by Texas law;

E.      Costs and such other relief as is just and proper.

## TRIAL BY JURY IS DEMANDED

DATED:      June 20, 2018

ED BUTOWSKY,
In his Individual and Professional Capacities


By:   */s/ Ty Clevenger*                                              
        Ty Clevenger, Esquire
        Texas Bar No. 24034380
        P.O. Box 20753
        Brooklyn, NY 11202-0753
        (979) 985-5289
        (979) 530-9523 (Fax)
        Email:  tyclevenger@yahoo.com

        *Counsel for the Plaintiff*

        Steven S. Biss (VSB # 32972)
        300 West Main Street, Suite 102
        Charlottesville, Virginia 22903
        Telephone:    (804) 501-8272
        Facsimile:    (202) 318-4098
        Email:      **stevenbiss@earthlink.net**

        *Of Counsel for the Plaintiff*
                *(Application for Admission Pro Hac Vice*
                *To be Filed)*

# EXHIBIT 12

| | |
|---|---|
| **From:** | Gottlieb, Michael <MGottlieb@willkie.com> |
| **Sent:** | Tuesday, December 17, 2019 9:33 AM |
| **To:** | 'Eden Quainton' |
| **Cc:** | Meryl Governski; Joshua Riley; Sam Hall |
| **Subject:** | RE: Wheeler Deposition |

Perhaps we can schedule a call to discuss this later today, during which I will expect you to address this:



12/16/19, 4:40 PM
Ellen Ratner was my source from Assange who asked her, who then, asked me to share info with Seth Rich's parents about Seth selling the emails to Wikileaks. I've resisted sharing recordings proving that she is lying. She keeps lying, I keep proving it.

drive.google.com/file/d/1Z9zzTW…

**Michael Gottlieb**
**Willkie Farr & Gallagher LLP**
1875 K Street, N.W. | Washington, DC 20006-1238
Direct: +1 202 303 1442 | Fax: +1 202 303 2442
mgottlieb@willkie.com | vCard | www.willkie.com bio

**From:** Eden Quainton [mailto:equainton@gmail.com]
**Sent:** Monday, December 16, 2019 6:54 PM
**To:** Gottlieb, Michael <MGottlieb@willkie.com>
**Cc:** Meryl Governski <mgovernski@bsfllp.com>; Joshua Riley <jriley@bsfllp.com>; Hall, Samuel <SHall@willkie.com>
**Subject:** Wheeler Deposition

Michael,

Something has come up and I now have a conflict for this Friday.  I would like to reschedule Rod Wheeler's deposition.  Do you have an objection?  If not, can we coordinate with Mr. Wheeler?

I am thinking the first week in January if that would work.

Eden P. Quainton
Quainton Law, PLLC
1001 Avenue of the Americas, 11th Floor
New York, NY 10018
Tel: 212.813.8389

Fax: 212.813.8390
Cell: 202.360.6296
www.quaintonlaw.com

---

**Important Notice:**  This email message is intended to be received only by persons entitled to receive the confidential information it may contain.  Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged.  Please do not read, copy, forward or store this message unless you are an intended recipient of it.  If you have received this message in error, please forward it back.  Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.

# EXHIBIT 13

| **From:** | Eden Quainton |
|---|---|
| **To:** | Michael Gottlieb |
| **Cc:** | Joshua Riley; Meryl Governski; Sam Hall |
| **Subject:** | Butowsky Production |
| **Date:** | Tuesday, December 17, 2019 9:46:51 PM |
| **Attachments:** | Butowsky 0001431.mp4 |

Mike,

Attached is the full, unedited audio.  Please note that the audio is being produced subject to the objections in our forthcoming responses and objections to Plaintiff's outstanding discovery request.

Sincerely,

Eden

Eden P. Quainton
Quainton Law, PLLC
1001 Avenue of the Americas, 11th Floor
New York, NY 10018
Tel: 212.813.8389
Fax: 212.813.8390
Cell: 202.360.6296
www.quaintonlaw.com

Butowsky 0001431



Page 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

- - -

AARON RICH,                : Civil Action No.
                           :
         Plaintiff,        : 1:18-cv-00681
      v.                   :
                           :
EDWARD BUTOWSKY,           :
MATTHEW COUCH, and         :
AMERICA FIRST MEDIA,       :
                           :
         Defendants.       :


- - -

AUDIO TRANSCRIPTION

- - -


        Audio Transcription of
Recording of Phone Call Between Ed
Butowsky and Ellen Ratner (Butowsky
0001431).



- - -

MAGNA LEGAL SERVICES
(866) 624-6221
www.MagnaLS.com



Page 2

1            - - -
2        ED BUTOWSKY:  Hey.  Hey.
3   I'm sitting here watching this guy
4   Schiff.  Are you watching this?
5        ELLEN RATNER:  I'm in an
6   airport.
7        ED BUTOWSKY:  All right.
8   When you met with Julian
9   (indiscernible), whenever you met
10  with him --
11       ELLEN RATNER:  Right.
12       ED BUTOWSKY:  -- I mean, I'm
13  watching this and they're sitting
14  here talking about how the e-mails
15  came from Wiki -- from -- that
16  WikiLeaks got the e-mails from
17  Russia.  Like -- like, the whole
18  hearing is about that.
19       ELLEN RATNER:  Who's saying
20  this?
21       ED BUTOWSKY:  This is on
22  television during this -- all --
23  all of them are.  I mean,
24  everybody's talking about how the

Page 3

1   e-mails came from the Russians to
2   Julian Assange.
3        ELLEN RATNER:  Right.
4        ED BUTOWSKY:  And why aren't
5   you saying anything?
6        ELLEN RATNER:  I say stuff
7   all the time about it.
8        ED BUTOWSKY:  You -- you
9   tell people --
10       ELLEN RATNER:  I say -- yes.
11  WikiLeaks is a Dropbox.  There is
12  absolutely no evidence that it
13  comes from the Russians.  And as
14  far as I'm concerned, it's a
15  made-up story.  I say that all the
16  time.
17       ED BUTOWSKY:  Do you ever
18  tell people that he told you?
19       ELLEN RATNER:  Yeah.  Of
20  course.
21       ED BUTOWSKY:  Nobody seems
22  to listen.  All right.
23       ELLEN RATNER:  No.  They
24  don't listen to me.  I'm not a big

Page 4

1   chief.
2            - - -
3        (End of audio file)
4            - - -

Page 5

1        CERTIFICATE
2
3
4        I HEREBY CERTIFY that the
5   foregoing was transcribed by me from an
6   audio file to the best of my ability.
7
8
9
        Cindy Parker
10      Dated:  December 21, 2019
11
12
13
14
15      (The foregoing certification
16  of this transcript does not apply to any
17  reproduction of the same by any means,
18  unless under the direct control and/or
19  supervision of the certifying reporter.)
20
21
22
23
24



2  (Pages 2 to 5)

# EXHIBIT 14

| | |
|---|---|
| **From:** | Philip Harvey |
| **To:** | Joshua Riley; Meryl Governski; Gottlieb, Michael; Matt Couch; Eden Quainton |
| **Cc:** | Paris Sorrell |
| **Subject:** | Rich v. Butowsky |
| **Date:** | Monday, October 7, 2019 3:01:11 PM |
| **Attachments:** | ED 1st ROGs.pdf |

I mailed these on Friday.

**Philip J. Harvey**
**Harvey & Binnall, PLC**
**717 King Street, Suite 300**
**Alexandria, Virginia  22314**
**703.888.1943**
pharvey@harveybinnall.com

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AARON RICH,                          )
                                     )
              Plaintiff,             )
                                     )
        v.                           )        Case No. 1:18-cv-681-RJL
                                     )
EDWARD BUTOWSKY, *et al.*,           )
                                     )
              Defendants.            )
_____)

### DEFENDANT EDWARD BUTOWSKY'S FIRST SET
### OF INTERROGATORIES TO PLAINTIFF

Defendant Edward Butowsky requests, pursuant to Rule 33, that plain-
tiff Aaron Rich answer the following interrogatories separately and fully under
oath within thirty (30) days of service.

### INTERROGATORIES

1.      Identify all therapists, physicians and other mental health profes-
sionals from whom you have sought treatment for any psychological issues or
illnesses from January 1, 2013 to the present, including the name and address
of any provider, the date you began treatment, and any diagnosis.

2.      Identify your current employer.  Include in your response your job
title, the address of your employer, the length of your employment and identify
whether a security clearance is required to perform your job.

3.      Describe in detail all impact(s) that Mr. Butowsky's alleged actions
have had on your career, including a description of all "lost career opportuni-
ties" and the "reduced productivity" referenced in paragraph 89 of the

Complaint and of any revocation, questioning or compromise of your security clearance.

      4.     Describe in detail all communications between yourself and Mr. Butowsky from July 1, 2016 to the present, including the dates, method and content of such communications.

      5.     Identify all financial accounts (*e.g.,* bank, credit union, brokerage, credit card, debit card, PayPal accounts) for which you were an owner, co-signer, or to which you otherwise had access from January 1, 2016 – December 31, 2016, including the name and location of the company or institution, the type of account, the account number and all persons who had access to or control over the account.

      Dated: October 4, 2019

Philip J. Harvey (#252580)
HARVEY & BINNALL, PLLC
717 King Street, Suite 300
Alexandria, Virginia 22314
(703) 888-1943
(703) 888-1930 (fax)
pharvey@harveybinnall.com

*Counsel for Defendant*
*Edward Butowsky*

## CERTIFICATE OF SERVICE

I hereby certify that on October 4, 2019, a copy of the foregoing document was served by U.S. mail, postage prepaid, on the following:

Joshua Riley
Meryl C. Governski
BOIES SCHILLER FLEXNER LLP
1401 New York Ave NW
Washington, DC 20005
JRiley@bsfllp.com
MGovernski@bsfllp.com

Michael J. Gottlieb
WILLKIE FARR GALLAGHER LLP
1875 K Street, #100
Washington, DC 20006
MGottlieb@willkie.com

Matthew Couch
2300 W Ash Street
Rogers, Arkansas 72758
mattcouch@af-mg.com

Philip J. Harvey (#252080)

# EXHIBIT 15

| | |
|---|---|
| **From:** | Eden Quainton |
| **To:** | Meryl Governski; Joshua Riley; Michael Gottlieb; Philip Harvey |
| **Subject:** | Rich v. Butowsky, Case No. 1:18-cv-0681, Defendant Matt Couch"s First Set of Discovery Demands |
| **Date:** | Wednesday, October 16, 2019 10:16:13 PM |
| **Attachments:** | Couch"s First Set of Requests for Production .pdf |
| | Couch"s First Set of Interrogatories to Plaintiff Aaron Rich.pdf |

Please see attached.

Eden P. Quainton
Quainton Law, PLLC
1001 Avenue of the Americas, 11th Floor
New York, NY 10018
Tel: 212.813.8389
Fax: 212.813.8390
Cell: 202.360.6296
www.quaintonlaw.com

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AARON RICH,                                        Case No. 1:18-cv-00681-RJL
                                                   Honorable Richard J. Leon
Plaintiff,

v.


EDWARD BUTOWSKY,
MATTHEW COUCH
AMERICA FIRST MEDIA,
Defendants.

### DEFENDANT MATTHEW COUCH'S FIRST SET OF INTERROGATORIES TO PLAINTIFF AARON RICH

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Defendant

Matthew Couch ("Couch") requests that Plaintiff Aaron Rich. ("Rich"or "You")

serve upon Couch sworn answers to the interrogatories set forth below within thirty

(30) days after the service hereof. These interrogatories are intended to be continuing

in nature and any information that may be discovered subsequent to the service of the

answers should be brought to Couch's attention through supplemental answers within

a reasonable time following such discovery.

Pursuant to Local Rule 26.2(d), Couch requests that each interrogatory be

quoted in full immediately preceding the response.

### DEFINITIONS AND INSTRUCTIONS

A.      The following definitions apply to all of Plaintiffs' discovery requests:

(1)      "Communication" means the transmittal of information (in the

form of facts, ideas, inquiries, or otherwise).

(2)     "Complaint" means the complaint filed by Aaron Rich against the Washington Times, Ed Butowsky and Matt Couch on March 26, 2018 in Federal District Court for the District of Columbia, Case No. 1:18-cv-00681.

(3)     "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a) and shall mean any and all information in tangible or other form, whether printed, typed, recorded, computerized, filmed, reproduced by any process, or written or produced by hand, and whether an original, draft, master, duplicate or copy, or notated version thereof, that is in Your possession, custody, or control.  A draft or non-identical copy is a separate document within the meaning of this term.

(4)     "Person" is defined as any natural person or any business, legal, or governmental entity or association.

(5)     In reference to a person, "to identify" means to state, to the extent known, the person's full name, present or last known business address, and when referring to a natural person, additionally, the present or last known home address, and present or last-known title, position, and business affiliation. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

(6)     In reference to documents, "to identify" means to state, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), address(ees), and recipient(s).

(7)     The term "state" or "state all facts" means to state all facts discoverable under Fed. R. Civ. P. 26(b) that are known to You. When used in reference

2

to a contention, "state," "state all facts," "identify all documents," and "identify all communications" shall include all facts, documents, and communications negating as well as supporting the contention.  When used in reference to a contention, "identify each person" shall include persons having knowledge of facts negating, as well as supporting, the contention.

(8)     "Regarding" or "referring or relating to" means constituting, comprising, concerning, regarding, mentioning, containing, setting forth, showing, disclosing, describing, explaining, summarizing, evidencing, discussing, either directly or indirectly, in whole or in part, and should be given the broadest possible scope consistent with the Federal Rules of Civil Procedure.

(9)     "Local Rule" shall mean the Local Rules of the District Court for the District of Columbia.

(10)     "Regarding" or "referring or relating to" means constituting, comprising, concerning, regarding, mentioning, containing, setting forth, showing, disclosing, describing, explaining, summarizing, evidencing, discussing, either directly or indirectly, in whole or in part, and should be given the broadest possible scope consistent with the Federal Rules of Civil Procedure.

(11)     "You" refers to Aaron Rich and "Your" is the possessive form of the pronoun referring to Aaron Rich.  You includes Your representatives, agents, consultants and employees.

B.     The following rules of construction shall apply to all of Couch's discovery requests:

(1)     The terms "all" and "each" shall be constructed as all and each.

3

(2)     The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside its scope.

(3)     The use of the singular form of any word shall include within its meaning the plural form of the word, and vice versa.

(4)     The use of the masculine form of a pronoun shall include also within its eaning the feminine form of the pronoun so used, and vice versa.

(5)     The use of any tense of any verb shall include also within its meaning all other tenses of the verb so used.

C.     No part of an interrogatory can be left unanswered merely because an objection is interposed to another part of the interrogatory.

D.     Where an objection is made to any discovery request, or sub-part thereof, state with specificity all grounds for the objection. Any ground not stated in an objection within the time provided by the Local Rules and the Federal Rules of Civil Procedure, or any extensions thereof, is waived.

E.     Where a claim of privilege or work product is asserted in objecting to an interrogatory or document request, or sub-part thereof, and an answer is not provided on the basis of such assertion, the attorney asserting the privilege must in the objection to the interrogatory or document request, or sub-part thereof, identify the nature of the privilege being claimed; and provide the following information, unless divulgence of the information would cause disclosure of the allegedly privileged information:

F.

(1)     For documents:

4

        (a)     the type of document;

        (b)     general subject matter of the document;

        (c)     the date of the document; and

        (d)     such other information as is sufficient to identify the document for a subpoena duces tecum, including the author of the document, the addressee of the document, and the relationship of the author to the addressee.

    (2)    For oral communications:

        (a)     the name of the person making the communication, the names of persons present while the communication was made, and the relationship of these persons;

        (b)     the date and place of communication; and

        (c)     the general subject matter of the communication.

G.    If You find the meaning of any discovery request to be unclear, You should assume a reasonable meaning, state what that meaning is, and respond to the request according to the assumed meaning.

H.    Documents and things should be consecutively numbered and the numbers should be preceded by a prefix identifying the documents and electronically stored information originating from You.

## INTERROGATORIES

## INTERROGATORY NO. 1

For each statement in the Complaint attributed to Couch, state in detail Your basis, if any, for believing said statement is false, including any communications from any third parties that substantiate Your belief.

## INTERROGATORY NO. 2

State in detail Your basis, if any, for believing that any of the statements attributed to Couch in the Complaint were made with reckless disregard for the truth, including any communications from any third parties that substantiate Your belief.

## INTERROGATORY NO. 3

State in detail Your basis, if any, for believing that any of the statements attributed to Couch in the Complaint were made negligently, including any communications from any third parties that substantiate Your belief.

## INTERROGATORY NO. 4

State in detail the substance of any communication between You and Joel and/or Mary Rich (either separately or together) not committed to writing relating to the allegations in the Complaint, identifying the date of such communication and the subject matter thereof.

## INTERROGATORY NO. 4

State in detail the substance of any communication not committed to writing between You and Rod Wheeler relating to the allegations in the Complaint, identifying the date of such communication and the subject matter thereof.

6

## INTERROGATORY NO. 5

Identify and describe in detail each and every communication between You and Michael

Isikoff regarding any of the allegations in the Complaint.

## INTERROGATORY NO. 6

State the number of times You have testified before a grand jury in the Seth Rich

murder investigation and describe each and every non-privileged communication You

have had relating to such grand jury testimony.

## INTERROGATORY NO. 7

Identify each and every law enforcement officer, whether state or federal, including

members of the Washington D.C. police, the Federal Bureau of Investigation or others,

with whom You have communicated, orally or in writing, with respect to the subject

matter of any of allegations in the Complaint.

## INTERROGATORY NO. 8

Identify each eBay, PayPal, Venmo, Coinbase, other electronic account or address (such

as for Bitcoin, Ethereum or Litecoin) You or Seth Rich created or used, together with

the date such account was created, the relevant account number, and the username or

names and passwords employed by You or Seth Rich to use such eBay account, PayPal,

Venmo, Coinbase or other electronic account or address (such as for Bitcoin, Ethereum

or Litecoin) from January 1, 2016 to December 31, 2016.

## INTERROGATORY NO. 9

Describe in detail and state all facts relating to Your downloading or using, or assisting

Seth Rich in downloading or using, any Tor Browser at any time from January 1, 2016

to the date of the Complaint.

## INTERROGATORY NO. 10

Identify any codename You or Seth Rich used in connection with Your or Seth Rich's

use of a Tor Browser at any time from January 1, 2016 to the date of the Complaint.

## INTERROGATORY NO. 11

State in detail Your knowledge of information technology ("IT"), including any

academic training or degrees related to or reflecting knowledge of IT, all computer

programs and systems (including operating systems and malware such as X-Agent and

X-Tunnel) with which You are familiar, and Your IT experience and skills, including

PowerShell commands, the CCleaner computer program and the use of keylog and

screenshot functions to obtain third-party credentials.

## INTERROGATORY NO.12

State all facts relating to Your employment at Northrup Grumman, including dates of

services, job description or descriptions, duties and promotions.

## INTERROGATORY NO. 13

Identify each and every person with whom You have communicated about any of the

allegations in the Complaint or any of the substance of any statements attributed to Matt

Couch.

## INTERROGATORY NO. 14

State all facts relating to Your knowledge of Seth Rich's work for the Democratic

National Committee.

**INTERROGATORY NO. 15**

Identify each and every medical, funeral home, first responder, emergency, hospital representative with whom you discussed Seth Rich at any time from 12:00 a.m. on July 10, 2016 to the present.

**INTERROGATORY NO. 16**

Describe in detail and state all facts relating to any instance in which You, either individually or with Seth Rich, met with Donna Brazile in person.

**INTERROGATORY NO. 17**

Describe in detail each communication You have had with Dimitri Alperowitch, Sean Henry or any other representatives of Crowdstrike.

**INTERROGATORY NO. 18**

Describe in detail and state all facts relating to the instructions or directions You provided to Rod Wheeler for the conduct of the Seth Rich murder investigation and any limitations You placed on the nature of the investigation, together with Your reasons, if any, for limiting the investigation.

**INTERROGATORY NO. 19**

Describe in detail and state all facts relating to the instructions, directions or limitations You have provided to any other person relating to the Seth Rich murder investigation, including, without limitation, Kelsey Mulka, Rod Wheeler, Joe Capone, Dov Friedman, Ed Butowsky, Seth Rich's roommates, any individuals who worked at or with the Democratic National Committee, any first responders or hospital or medical personnel, any Rich family members including Joel, Mary and Jonathan Rich, any employees or

9

agents of Lou's City Bar or the Wonderland Ballroom, and any of  Dylan MacInerny, Doug McAcy or Rob Placek.

## INTERROGATORY NO. 20

Describe in detail and state all facts relating to each and every public statement or communication You have made relating to the murder of Seth Rich and the substance of any of the allegations in the Complaint, through the Internet, podcasts, television, radio, print or any other medium of communication.  For each such statement, identify the date of the statement or communication, the substance of the statement or communication, and the identity of the party or parties with which You were communicating.

## INTERROGATORY NO. 21

Identify each and every desktop or laptop computer used by Seth Rich at any time from January 1, 2016 of which You are aware, including any that remain in Your custody and control.

## INTERROGATORY NO. 22

Identify each and every cell phone used by Seth Rich at any time from January 1, 2016 of which You are aware, including any that remain in Your custody and control.

## INTERROGATORY NO. 23

Describe in detail and state all facts relating to each occasion on which You provided any property of Seth Rich to any state or federal law enforcement agencies and specify whether any such property has been returned to you and/or was altered in any way.

## INTERROGATORY NO. 24

Identify each email account used by Seth Rich of which You are aware at any time from

January 1, 2016 to the date of Seth's death and any username/password for each any such account of which You are aware.

## INTERROGATORY NO. 25

Identity each person who prepared, or provided information used in preparing, Your responses to these interrogatories, and state which interrogatories they helped answer and the general nature of their knowledge about such matters.

Dated: October 16, 2019
      New York, NY

 

QUAINTON LAW, PLLC
By: *Eden P. Quainton*
Eden P. Quainton
1001 Avenue of the Americas, 11th Floor
New York, NY 10018
Telephone: (212) 813-8389
Facsimile: (212) 813-8390
equainton@gmail.com
*Attorneys for Defendant Matthew Couch*
*Pending admission and appearance[1]*

---

[1] Mr. Quainton is in the process of resubmitting of his application for admission to practice before the United States District Court for the District of Columbia.  The deadline for resubmission is October 18, 2019 for a potential swearing in on November 4, 2019.

To:

Joshua Riley
Meryl C. Governski
BOIES SCHILLER FLEXNER LLP
1401 New York Ave, N.C
Washington, DC 2005
jriley@fsflip.com
mgovernski@bsflip.com
*Attorneys for Plaintiff Aaron Rich*

Micahel J. Gottlieb
WILLKIE FARR & GALLAGHER LLP
1875 K. Street, N.W.
Washington, D.C. 20006
mgottlieb@willkie.com
*Attorneys for Plaintiff Aaron Rich*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AARON RICH,                                        Case No. 1:18-cv-00681-RJL
                                                   Honorable Richard J. Leon
Plaintiff,

v.

EDWARD BUTOWSKY,
MATTHEW COUCH
AMERICA FIRST MEDIA,
Defendants.

## DEFENDANT MATTHEW COUCH'S FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS AND THINGS TO PLAINTIFF AARON RICH

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Defendant Matthew Couch ("Couch") submits this First Set of Requests for the Production of Documents and Things to Plaintiff Aaron Rich ("Rich") and requests that Rich respond by producing the requested documents at the offices of Plaintiffs' counsel, Quainton Law, PLLC 1001 Avenue of the Americas, New York, NY 10018 within 30 days of the date hereof.

## DEFINITIONS AND  INSTRUCTIONS

Couch incorporates by reference the definitions and instructions set forth in Couch's First Set of Interrogatories to Plaintiff Aaron Rich.

## REQUESTS FOR THE PRODUCTION OF DOCUMENTS AND THINGS

1.      All documents constituting, referring or relating to communications between You and each of Julian Assange, Wikileaks, Rod Wheeler, Brad Bauman, Donna Brazile, Amy Dacey, Pratt Wiley, Muriel Bowser, Jack Burkman, Kevin Dougherty, Dov Friedman, Joe Capone, Mark Mueller, Kelsey Mulka, Ellen Ratner, Dimitri Alperowitch, Shawn Henry, Roger Stone, Jerome Corsi, Randy Credico, Deborah Sines, Joel Rich, Mary Rich, Jonathan Rich, Dr.

Christine Trankiem, Ed Butowsky, Dylan MacInerny, Doug McAcy or Rob Placek from January 1, 2016 to the present.

2.      All documents constituting, referring or relating to communications in Your custody and control between Seth Rich and each of Julian Assange, Wikileaks, Rod Wheeler, Brad Bauman, Donna Brazile, Amy Dacey, Pratt Wiley, Muriel Bowser, Jack Burkman, Kevin Dougherty, Dov Friedman, Joe Capone, Mark Mueller, Kelsey Mulka, Ellen Ratner, Dimitri Alperowitch, Shawn Henry, Roger Stone, Jerome Corsi, Randy Credico, Deborah Sines, Joel Rich, Mary Rich, Jonathan Rich, Dylan MacInerny, Doug McAcy or Rob Placek from January 1, 2016 to the date of Seth Rich's murder.

3.      All documents constituting, referring or relating to communications between You and any member of the federal or state law enforcement community, including members of the FBI and the DC Metropolitan Police and its Major Case/Cold Case squad, including Andrew McCabe, Deborah Sines, Joe Della Camera, Brian Bradol, Anthony Haythe and Leslie Parsons from January 1, 2016 to the present.

4.      All documents constituting, referring or relating to communications from January 1, 2016 to the present between You and any medical, EMT or hospital personnel (including, without limitation Dr. Christine Trankiem and any MedStar Hospital, Geoge Washington University Hospital, DCF Engine No. 6 personnel) referring or relating to Seth Rich.

5.      All documents constituting, referring or relating to communications from January 1, 2016 to the present between You and any member of the media (whether print, radio, television or Internet-based) including, without limitation:

- Seymour Hirsch,

- David Sanger, Adam Goldman, Jonah Bromwich, or any other reporter or person

affiliated, employed by or associated with the New York Times,

- Ellen Nakashima, or any other reporter or person employed by, affiliated or associated with the Washington Post,

- Luke Harding, or any other reporter or person employed by, affiliated or associated with the The Guardian,

- Colleen Shalby, or any other reporter or person employed by, affiliated or associated with the Los Angeles Times,

- Michael Isikoff, or any other reporter or person employed by, affiliated or associated with any reporter or person at Yahoo! News,

- David Folkenflick or any other reporter or person employed by, affiliated or associated with any reporter or person at NPR,

- Sean Hannity, Malia Zimmerman, or any other reporter or person employed by, affiliated or associated with any reporter or person at Fox News, or

- Cassandra Fairbanks or any other reporter or person employed by, affiliated or associated with any reporter or person at The Gateway Pundit.

6.    All documents and communications relating to:

- the use, installation, operation or upgrading of Securedrop or any Securedrop account,

- the downloading and operation of any Tor Browser,

- any submissions to any Landing Page through Securedrop,

- any codename generated for You or Seth Rich for use with Securedrop,

- any messages sent to You or Seth Rich through the Securedrop platform,

- the use, installation, downloading or operation of Qubes, Ubuntu Xenial server ISO, Docker, Debian packages or Quay and

- the use or installation of X-Tunnel and X-Agent malware.

7.    Each computer or other electronic device used by You or Seth Rich on which any

of the programs, accounts, items or features described in Request No. 6 have been used from

January 1, 2015 to the present, together with the password for access to permit a forensic examination of said computer or other electronic device.

8.      All documents constituting, referring or relating to bank records for each bank account in Your name or in the name of any corporate entity controlled in whole or in part by You for the period January 1, 2016 to December 31, 2016.

9.      All documents constituting, referring or relating to bank records for each bank account in Seth Rich name or in the name of any corporate entity controlled in whole or in part by Seth Rich for the period January 1, 2016 through the date of Seth Rich's death.

10.     All documents constituting, referring or relating to transaction records for each account maintained directly or indirectly by You at e-Bay, PayPal, Venmo, Coinbase or relating to any other non-bank service (such as Bitcoin, Ethereum, Litecoin) permitting the receipt of funds from third parties for the period from January 1, 2016 through December 31, 2016.

11.     All documents constituting, referring or relating to transaction records for each account maintained directly or indirectly by Seth Rich at e-Bay, PayPal, Venmo, Coinbase or any other non-bank service (such as Bitcoin, Ethereum, Litecoin) permitting the receipt of funds from third parties for the period from January 1, 2016 through December 30, 2016.

12.     Any laptop belonging to Seth Rich in Your possession, together with the password for laptop access to permit a forensic examination of said laptop.

13.     Any desktop computer belonging to Seth Rich in Your possession, together with the password for desktop access to permit a forensic examination of said desktop computer.

14.     Any flash or USB drives belonging to Seth Rich in Your possession for forensic examination.

15.     Any cell phone used by Seth Rich from January 1, 2016 to July 10, 2016 for

4

forensic examination.

16.     All phone records showing telephone calls made by Seth Rich from January 1,

2016 until the night of his murder.

17.     All phone records showing all telephone calls made by Aaron Rich from January

1, 2016 until the date of the filing of the Complaint in this action.

18.     All documents constituting, referring or relating to records, including receipts,

relating to any GoFundMe account established, directly or indirectly by Rich from June 1, 2016

to the present.

19.     All documents constituting, referring or relating to emails to or from Seth Rich's

gmail account from the date of his murder to the present.

Dated: October 16, 2019
        New York, NY

                                        QUAINTON LAW, PLLC
                                        By: *Eden P. Quainton*_____
                                        Eden P. Quainton
                                        1001 Avenue of the Americas, 11th Floor
                                        New York, NY 10018'
                                        Telephone: (212) 813- 8389
                                        Facsimile: (212) 813-8390
                                        equainton@gmail.com
                                        *Attorneys for Defendant Matthew Couch*[1]
                                        *Pending Admission and Appearance*

---

[1] Mr. Quainton is in the process of resubmitting of his application for admission to practice before the United States District Court for the District of Columbia.  The deadline for resubmission is October 18, 2019 for a potential swearing in on November 4, 2019.

To:     Joshua Riley
        Meryl C. Governski
        BOIES SCHILLER FLEXNER LLP
        1401 New York Ave, N.C
        Washington, DC 2005
        jriley@fsflip.com
        mgovernski@bsflip.com
        *Attorneys for Plaintiff Aaron Rich*

        Micahel J. Gottlieb
        WILLKIE FARR & GALLAGHER LLP
        1875 K. Street, N.W.
        Washington, D.C. 20006
        mgottlieb@willkie.com
        *Attorneys for Plaintiff Aaron Rich*

# EXHIBIT 16

| **From:** | Eden Quainton |
| **To:** | Meryl Governski; Joshua Riley; Michael Gottlieb; Ed Butowsky |
| **Subject:** | Rich v. Butowsky -- Couch RFAs |
| **Date:** | Friday, November 8, 2019 10:24:04 AM |
| **Attachments:** | Couch Requests for Admissions.1.pdf |

Please see attached.

Eden P. Quainton
Quainton Law, PLLC
1001 Avenue of the Americas, 11th Floor
New York, NY 10018
Tel: 212.813.8389
Fax: 212.813.8390
Cell: 202.360.6296
www.quaintonlaw.com

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AARON RICH,                                          Case No. 1:18-cv-00681-RJL
                                                     Honorable Richard J. Leon
      Plaintiff,

      v.

EDWARD BUTOWSKY,
MATTHEW COUCH ,
AMERICA FIRST MEDIA,

      Defendants.

## DEFENDANT MATTHEW COUCH'S FIRST SET OF REQUESTS FOR ADMISSION TO PLAINTIFF AARON RICH

Mr. Couch, by and through his counsel and pursuant to Rules 26 and 36 of the Federal Rules of

Civil Procedure, hereby requests that Plaintiff Aaron Rich respond to the following requests for

admission within thirty days of service and afterwards supplement such production as may

become necessary to comply with the Requirements of Rule 26(e) of the Federal Rules of Civil

Procedure.

## DEFINITIONS AND INSTRUCTIONS

Defendant incorporates by reference all the instructions, definitions, and rules contained in the

Federal Rules of Civil Procedure and for purposes of the Requests, the following definitions

shall apply:

A.      These Requests are continuing so as to require supplemental responses during the

pendency of the litigation in accordance with Fed. R. Civ. P. 26(e).

B.      Answer each Request separately and fully.

C.      If you do not admit a Request, the answer shall specifically deny it and set forth in detail

the reason(s) for denial in accordance with Fed. R. Civ. P. 36(a)(4).

D.      If you deny only part of a Request, you must specify the part admitted and qualify or deny the rest in accordance with Fed. R. Civ. P. 36(a)(4).

E.      If you object or otherwise decline to set forth in your response any of the information requested by any Request, set forth the exact ground upon which you rely with specificity so as to permit the Court to determine the legal sufficiency of your objection or position, and provide the most responsive information you are willing to provide without a court order.

F.      Unless words or terms have been given a specific definition herein, each word or term used herein shall be given its usual and customary dictionary definition.

G.      The terms defined herein should be construed broadly to the fullest extent of their meaning in a good faith effort to comply with the Federal Rules of Civil Procedure.

H.      The Requests hereby incorporate any and all of the Definitions in the agreed-upon Stipulated Protective Order, filed on the docket at ECF No. 29 ("Protective Order").

I.      "You," "Your," or "Yours" refers to Plaintiff Aaron Rich and includes any persons or entities acting for him or on his behalf, including but not limited to all representatives, servants, agents, employees, officers, affiliates, subsidiaries, parent companies, and/or third parties, as well as any entities over which Plaintiff Aaron Rich has control.

K.      "DNC" refers to the Democratic National Committee.

L.      "Evidence" means documents, witness statements, or other materials obtained.

## FIRST SET OF REQUESTS FOR ADMISSION

**RFA 1:**      Admit You cannot prove that Russian military intelligence hacked into the servers of the DNC.

**RFA 2:**      Admit You cannot prove that anyone other than You and Seth Rich downloaded emails and other documents from the DNC servers and transmitted these documents to Wikileaks.

**RFA 3**:        Admit that You have communicated with Gavin MacFayden.

**RFA 4**:        Admit that You know Seth Rich communicated with Gavin MacFayden.

**RFA 5**:        Admit that You know Seth Rich was a supporter of Bernie Sanders.

**RFA 6**:        Admit that You are familiar with Tor Browsers.

**RFA 7**:        Admit that You have downloaded a Tor Browser in the past.

**RFA 8**:        Admit that You assisted Seth Rich in downloading a Tor Browser

**RFA 9**:        Admit that You are familiar with SecureDrop.

**RFA 10**:       Admit that You know Seth Rich was familiar with Secure Drop.

**RFA 11**:       Admit You are willing to provide all bank account and on-line transaction

records, including those from or involving eBay, PayPal, Venmo, Coinbase,

Bitcoin, Ethereum and other cryptocurrencies, that would prove whether or not

You received compensation from Wikileaks or Julian Assange.

**RFA 12**:       Admit that You have authorized Wikileaks and/or Julian Assange to disclose any

documents and communications in the possession of Wikileaks or Julian Assange

relating to any direct or indirect communications You have had with Wikileaks or

Julian Assange, whether in Your own name or in any code name or alias.

**FRA 13**:        Admit that You have authorized Wikileaks and/or Julian Assange to disclose any

documents and communications in the possession of Wikileaks or Julian Assange

relating to any direct or indirect communications Seth Rich had with Wikileaks or

Julian Assange, whether in his own name or by means of any any code name or

alias.

**RFA 14**:       Admit that You do not think there is anything wrong in acting as a whistleblower.

**RFA 15**:       Admit that You do not think it is "stealing" if a whistleblower receives

compensation for sharing copies of emails and documents with the press.

**RFA 16**:       Admit that Seth Rich received threats after DNC emails and other documents were transmitted to Wikileaks.

**RFA 17**:       Admit that You were frightened when Seth Rich received threats.

**RFA 18**:       Admit that You were worried that something might happen to Seth Rich after he received threats.

**RFA 19**:       Admit that You have communicated with Ellen Nakashima.

**RFA 20**:       Admit that You have communicated with David Folkenflik.

**RFA 21**:       Admit You have communicated with Greg Miller.

**RFA 22**:       Admit You have communicated with Greg Jaffe.

**RFA 23**:       Admit You have communicated with Phillip Rucker.

**RFA 24**:       Admit that You have communicated with Adam Goldman.

**RFA 25**:       Admit that You have communicated with Maggie Haberman.

**RFA 26**:       Admit that You have communicated with Donna Brazile.

**RFA 27**:       Admit that You have discussed Seth Rich's murder and the transmission of DNC emails and documents with Michael Isikoff.

**RFA 28**:        Admit that You have discussed Seth Rich's murder and the transmission of DNC emails and documents to journalists other than Michael Isikoff.

**RFA 29**:       Admit that You knew and accepted that Michael Iskikoff would quote you in his podcast, Conspiracyland, and that You knew this podcast would be disseminated to the public at large through the Internet.

**RFA 30**:       Admit that You and Seth Rich met with Donna Brazile during the summer of 2016 after it was reported that Russians had hacked the DNC.

**RFA 31**:       Admit that You became upset during your meeting with Donna Brazile

**RFA 32**:       Admit that You became so upset during your meeting with Donna Brazile that

You threw a chair.

**RFA 33**:     Admit that You have read <u>Hack, The Inside Story of the Break-ins and</u>

<u>Breakdowns That Put Donald Trump in the White House</u>.

**RFA 34**:     Admit that You communicated with Donna Brazile after Seth Rich's murder.

**RFA 35**:     Admit that You communicated with Muriel Bowser before Seth Rich's murder.

**RFA 36**:     Admit that You communicated with Muriel Bowser after Seth Rich's murder.

**RFA 37:**     Admit that You told Kelsey Mulka that You were afraid something was going to

happen to Seth Rich.

**RFA 38**:     Admit that You knew Seth Rich had a USB file on his person on the night of July

9, 2016.

**RFA 39**:     Admit that You argued with your father about how much information should be

shared with Rod Wheeler.

**RFA 40**:     Admit that You told your father that Rod Wheeler should not pursue certain lines

of investigation in his investigation of Seth Rich's murder.

**RFA 41**:     Admit Your father disagreed with You about what was relevant in connection

with the investigation of Seth Rich's murder.

**RFA 42**:     Admit that in September, 2016 You made a visit to the DC fire department office.

**RFA 43**:     Admit that the purpose of the visit was not to thank the DC fire department.

**RFA 44**:     Admit that You told Jack Burkman that You did not want him to investigation any

connection between Seth Rich's murder and Wikileaks, Julian Assange, the DNC

or DNC emails or documents.

**RFA 45**:     Admit that You told Rod Wheeler that You did not want him to investigation any

connection between Seth Rich's murder and Wikileaks, Julian Assange, the DNC

or DNC emails or documents.

**RFA 46**:        Admit that You told Joe Capone that You did not want him to talk to Jack

Burkman about any connection between Seth Rich's murder and Wikileaks,

Julian Assange, the DNC or DNC emails or documents.

**RFA 47**:        Admit that You told Joe Capone that You did not want him to talk to Rod

Wheeler about any connection between Seth Rich's murder and Wikileaks, Julian

Assange, the DNC or DNC emails or documents.

**RFA 48**:        Admit that You told Dov Friedman that You did not want him to talk to Jack

Burkman about any connection between Seth Rich's murder and Wikileaks,

Julian Assange, the DNC or DNC emails or documents.

**RFA 49**:        Admit that You told Dov Friedman that You did not want him to talk to Rod

Wheeler about any connection between Seth Rich's murder and Wikileaks, Julian

Assange, the DNC or DNC emails or documents.

**RFA 50**:        Admit that You told Kelse Mulka that you did not want her to talk to Jack

Burkman about any connection between Seth Rich's murder and Wikileaks,

Julian Assange, the DNC or DNC emails or documents.

**RFA 51**:        Admit that You told Kelse Mulka that You did not want her to talk to Rod

Wheeler about any connection between Seth Rich's murder and Wikileaks, Julian

Assange, the DNC or DNC emails or documents.

**RFA 52**:        Admit that You have testified before a grand jury on matters related to the murder

of Seth Rich.

Dated: November 8, 2019
          New York, NY

                                QUAINTON LAW, PLLC
                                By: *Eden P. Quainton_____*
                                Eden P. Quainton
                                1001 Avenue of the Americas, 11th Floor
                                New York, NY 10018

Telephone: (212) 813- 8389
Facsimile: (212) 813-8390
equainton@gmail.com
*Attorneys for Defendant Matthew Couch*

## **CERTIFICATE OF SERVICE**

The undersigned counsel hereby certifies that on November 8, 2019, a copy of the foregoing

document was emailed to attorneys for Plaintiff, Joshua Riley at jriley@bsflip.com, Meryl

Governski at mgoversnki@bsflip.com, and Michael Gottlieb at mgottlieb@willkie.com, and to

Defendant Edward Butowsky at ebutowsky@gmail.com.

      November 8, 2019
      New York, NY

                    QUAINTON LAW, PLLC
                    By: *Eden P. Quainton_____*
                    Eden P. Quainton
                    1001 Avenue of the Americas, 11th Floor
                    New York, NY 10018
                    Telephone: (212) 813- 8389
                    Facsimile: (212) 813-8390
                    equainton@gmail.com
                    *Attorneys for Defendant Matthew Couch*

# EXHIBIT 17

| | |
|---|---|
| **From:** | Eden Quainton |
| **To:** | Meryl Governski; Joshua Riley; Michael Gottlieb |
| **Subject:** | Rich v. Butowsky -- Defendant Edward Butowsky"s Discovery Demands |
| **Date:** | Thursday, November 21, 2019 9:54:09 PM |
| **Attachments:** | Butowsky"s Second Set of Interrogatories to Plaintiff Aaron Rich.pdf |
| | Butowsky"s First Set of Requests for Production.pdf |
| | Butowsky Requests for Admissions.1.pdf |

Please see attached.

Eden P. Quainton
Quainton Law, PLLC
1001 Avenue of the Americas, 11th Floor
New York, NY 10018
Tel: 212.813.8389
Fax: 212.813.8390
Cell: 202.360.6296
www.quaintonlaw.com

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AARON RICH,                                    Case No. 1:18-cv-00681-RJL
                                               Honorable Richard J. Leon

      Plaintiff,

      v.

EDWARD BUTOWSKY,
MATTHEW COUCH ,
AMERICA FIRST MEDIA,

      Defendants.

## DEFENDANT EDWARD BUTOWSKY'S FIRST SET OF REQUESTS FOR ADMISSION
## TO PLAINTIFF AARON RICH

Mr. Butowsky, by and through his counsel and pursuant to Rules 26 and 36 of the Federal Rules

of Civil Procedure, hereby requests that Plaintiff Aaron Rich respond to the following requests for

admission within thirty days of service and afterwards supplement such production as may become

necessary to comply with the Requirements of Rule 26(e) of the Federal Rules of Civil Procedure.

## DEFINITIONS AND INSTRUCTIONS

Defendant incorporates by reference all the instructions, definitions, and rules contained in the

Federal Rules of Civil Procedure and for purposes of the Requests, the following definitions shall

apply:

A.      These Requests are continuing so as to require supplemental responses during the pendency

of the litigation in accordance with Fed. R. Civ. P. 26(e).

B.      Answer each Request separately and fully.

C.      If you do not admit a Request, the answer shall specifically deny it and set forth in detail

the reason(s) for denial in accordance with Fed. R. Civ. P. 36(a)(4).

D.      If you deny only part of a Request, you must specify the part admitted and qualify or deny the rest in accordance with Fed. R. Civ. P. 36(a)(4).

E.      If you object or otherwise decline to set forth in your response any of the information requested by any Request, set forth the exact ground upon which you rely with specificity so as to permit the Court to determine the legal sufficiency of your objection or position, and provide the most responsive information you are willing to provide without a court order.

F.      Unless words or terms have been given a specific definition herein, each word or term used herein shall be given its usual and customary dictionary definition.

G.      The terms defined herein should be construed broadly to the fullest extent of their meaning in a good faith effort to comply with the Federal Rules of Civil Procedure.

H.      The Requests hereby incorporate any and all of the Definitions in the agreed-upon Stipulated Protective Order, filed on the docket at ECF No. 29 ("Protective Order").

I.      "You," "Your," or "Yours" refers to Plaintiff Aaron Rich and includes any persons or entities acting for him or on his behalf, including but not limited to all representatives, servants, agents, employees, officers, affiliates, subsidiaries, parent companies, and/or third parties, as well as any entities over which Plaintiff Aaron Rich has control.

K.      "DNC" refers to the Democratic National Committee.

L.      "Evidence" means documents, witness statements, or other materials obtained.

M.      "Wheeler Complaint" means <u>Wheeler v. Twenty-First Century Fox, Inc. et al</u>, Case No, 1:17-cv-05807 (GBD).

## <u>FIRST SET OF REQUESTS FOR ADMISSION</u>

**RFA 1:**      Admit You cannot prove that Russian military intelligence hacked into the servers of the DNC.

**RFA 2:**      Admit You cannot prove that anyone other than You and Seth Rich downloaded

emails and other documents from the DNC servers and transmitted these documents to Wikileaks.

**RFA 3:**    Admit You cannot prove any statements attributed to Mr. Butowsky are false.

**RFA 4:**    Admit You do not have any evidence of an "agreement" between Mr. Butowsky and Mr. Couch to defame You.

**RFA 5:**    Admit that the Fox News article relating to Seth Rich does not defame You.

**RFA 6:**    Admit the Wheeler Complaint was dismissed for failure to state a claim on which relief could be granted.

**RFA 7:**    Admit You do not have any evidence Mr. Butowsky held meetings in D.C. for the purpose of advancing a D.C.-centric conspiracy theory other than the dismissed Wheeler Complaint.

**RFA 8:**    Admit You do not have any evidence Mr. Butowsky coordinated meetings in Washington D.C. about the "creation" of a Fox News article relating to Seth Rich other than the allegations in the dismissed Wheeler Complaint.

**RFA 9:**    Admit You do not have any evidence that Mr. Butowsky has been "caught pushing a false story about his family for the purpose of advancing a political narrative supporting President Trump" other than the dismissed Wheeler Complaint

**RFA 10**:    Admit You do not have any evidence that Mr. Butowsky "was willing to lie about the subject matter" of the Washington Times referenced in paragraph 76 of the Complaint other than allegations of the dismissed Wheeler Complaint.

**RFA 11**:    Admit that You relied exclusive on the dismissed complaint by Rod Wheeler against Fox News your allegation that Mr. Butowsky "knew" "statements attributed to Mr. Wheeler" "were false."

**RFA 12**:      Admit that You relied exclusively on the dismissed complaint by Rod Wheeler against Fox News for Your allegation that Mr. Butowsky had "been shown months prior to the publication [of the Washington Times article] as having encouraged Fox News to publish false information."

**RFA 13**:      Admit that You have failed to correct the Complaint even though You know it contains false allegations based on the dismissed Wheeler Complaint.

**RFA 14**:      Admit that You do not consider the articles published by Cassandra Fairbanks referenced in paragraphs 81 and 82 and accompanying footnotes of the Complaint to be defamatory.

**RFA 15**:      Admit that You have not sought a retraction from Cassandra Fairbanks or the Gateway Pundit for the articles referenced in paragraphs 81 and 82 and accompanying footnotes of the Complaint.

**RFA 16**:      Admit that You have not sued Cassandra Fairbanks or the Gateway Pundit for defamation.

**RFA 17**:      Admit You are willing to provide all bank account and on-line transaction records, including those from or involving eBay, PayPal, Venmo, Coinbase, Bitcoin, Ethereum and other cryptocurrencies, that would prove whether or not You received compensation from Wikileaks or Julian Assange.

**RFA 18**:      Admit that You have authorized Wikileaks and/or Julian Assange to disclose any documents and communications in the possession of Wikileaks or Julian Assange relating to any direct or indirect communications You have had with Wikileaks or Julian Assange, whether in Your own name or in any code name or alias.

**RFA 19**:      Admit that You have authorized Wikileaks and/or Julian Assange to disclose any documents and communications in the possession of Wikileaks or Julian Assange

relating to any direct or indirect communications Seth Rich had with Wikileaks or Julian Assange, whether in his own name or by means of any any code name or alias.

**RFA 20**:   Admit that You argued with your father about how much information should be shared with Rod Wheeler.

**RFA 21**:   Admit that You know Your father told Mr. Butowsky, "I know what the boys did."

**RFA 22**:   Admit that You told your father that Rod Wheeler should not pursue certain lines of investigation in his investigation of Seth Rich's murder.

**RFA 23**:   Admit Your father disagreed with You about what was relevant in connection with the investigation of Seth Rich's murder.

**RFA 24**:   Admit that You told Rod Wheeler that You did not want him to investigation any connection between Seth Rich's murder and Wikileaks, Julian Assange, the DNC or DNC emails or documents.

**RFA 25**:   Admit that You are a public figure.

**RFA 26**:   Admit that the downloading and transmission to Wikileaks of DNC emails and documents is a matter of public concern.

Dated: November 21, 2019
       New York, NY

QUAINTON LAW, PLLC
By: *Eden P. Quainton*_____
Eden P. Quainton
1001 Avenue of the Americas, 11<sup>th</sup>Floor
New York, NY 10018
Telephone: (212) 813- 8389
Facsimile: (212) 813-8390
equainton@gmail.com
*Attorneys for Defendant Edward Butowsky*

### CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on November 21, 2019, a copy of the foregoing document was emailed to attorneys for Plaintiff, Joshua Riley at jriley@bsflip.com, Meryl Governski at mgoversnki@bsflip.com, and Michael Gottlieb at mgottlieb@willkie.com.

November 21, 2019
New York, NY

QUAINTON LAW, PLLC
By: *Eden P. Quainton*
Eden P. Quainton
1001 Avenue of the Americas, 11th Floor
New York, NY 10018
Telephone: (212) 813- 8389
Facsimile: (212) 813-8390
equainton@gmail.com
*Attorneys for Defendant Edward Butowsky*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AARON RICH,                                              Case No. 1:18-cv-00681-RJL
                                                         Honorable Richard J. Leon

      Plaintiff,

      v.

EDWARD BUTOWSKY,
MATTHEW COUCH,
AMERICA FIRST MEDIA,

      Defendants.

## DEFENDANT EDWARD BUTOWSKY'S FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS AND THINGS TO PLAINTIFF AARON RICH

      Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Defendant Edward Butowsky ("Butowsky") submits this First Set of Requests for the Production of Documents and Things to Plaintiff Aaron Rich ("Rich") and requests that Rich respond by producing the requested documents at the offices of Plaintiffs' counsel, Quainton Law, PLLC 1001 Avenue of the Americas, New York, NY 10018 within 30 days of the date hereof.

## DEFINITIONS AND  INSTRUCTIONS

      Butowsky incorporates by reference the definitions and instructions set forth in Butowsky's Second Set of Interrogatories to Plaintiff Aaron Rich.

## REQUESTS FOR THE PRODUCTION OF DOCUMENTS AND THINGS

      1.     All Documents constituting, referring or relating to Communications between You and each of Julian Assange, Wikileaks, Rod Wheeler, Brad Bauman, Donna Brazile, Gavin McFayden, Amy Dacey, Pratt Wiley, Muriel Bowser, Jack Burkman, Kevin Dougherty, Dov Friedman, Joe Capone, Mark Mueller, Kelsey Mulka, Ellen Ratner, Dimitri Alperowitch, Shawn

Henry, Deborah Sines, Joel Rich, Mary Rich, Jonathan Rich, Dylan MacInerny, Doug McAcy, Rob Placek, Thomas Schoenberg, Manuel Chavez, Matt Couch, America First Media, or America First Media Group, Inc. from January 1, 2016 to the present.

2.      All Documents referring or relating to any of the individuals identified in Request 1 above (other than You), including memoranda, reports, studies, presentations, notes, whether in draft or final form.

3.      All Documents constituting, referring or relating to Communications in Your custody and control between Seth Rich and each of Julian Assange, Wikileaks, Donna Brazile, Gavin McFayden, Amy Dacey, Pratt Wiley, Muriel Bowser, Dov Friedman, Joe Capone, Mark Mueller, Kelsey Mulka, Dimitri Alperowitch, Shawn Henry, Joel Rich, Mary Rich, Jonathan Rich, Dylan MacInerny, Doug McAcy or Rob Placek from January 1, 2016 to the date of Seth Rich's murder.

4.      All Documents constituting, referring or relating to Communications between You and any member of the federal or state law enforcement community, including members of the FBI and the DC Metropolitan Police and its Major Case/Cold Case squad, including Andrew McCabe, Deborah Sines, Joe Della Camera, Brian Bradol, Anthony Haythe and Leslie Parsons from January 1, 2016 to the present.

5.      All Documents constituting, referring or relating to Communications from January 1, 2016 to the present between You and any medical, EMT or hospital personnel (including, without limitation Dr. Christine Trankiem and any MedStar Hospital, George Washington University Hospital, DCF Engine No. 6 personnel) referring or relating to Seth Rich.

6.      All Documents constituting, referring or relating to Communications from January 1, 2016 to the present between You and any member of the media (whether print, radio, television

or Internet-based) including, without limitation:

- Seymour Hirsch,

- David Sanger, Adam Goldman, Jonah Bromwich, or any other reporter or person affiliated, employed by or associated with the New York Times,

- Ellen Nakashima, or any other reporter or person employed by, affiliated or associated with the Washington Post,

- Luke Harding, or any other reporter or person employed by, affiliated or associated with the The Guardian,

- Colleen Shalby, or any other reporter or person employed by, affiliated or associated with the Los Angeles Times,

- Michael Isikoff, or any other reporter or person employed by, affiliated or associated with any reporter or person at Yahoo! News,

- David Folkenflick or any other reporter or person employed by, affiliated or associated with any reporter or person at NPR,

- Sean Hannity, Malia Zimmerman, or any other reporter or person employed by, affiliated or associated with any reporter or person at Fox News, or

- Cassandra Fairbanks or any other reporter or person employed by, affiliated or associated with any reporter or person at The Gateway Pundit.

7.   All documents and communications relating to:

- the use, installation, operation or upgrading of Securedrop or any Securedrop account,

- the downloading and operation of any Tor Browser,

- any submissions to any Landing Page through Securedrop,

- any codename generated for you or Seth Rich for use with Securedrop,

- any messages sent to you or Seth Rich through the Securedrop platform,

- the use, installation, downloading or operation of Qubes, Ubuntu Xenial server ISO, Docker, Debian packages or Quay, and

- the use or installation of X-Tunnel and X-Agent malware.

8.     Each computer or other electronic device used by You or Seth Rich on which any of the programs, accounts, items or features described in Request No. 6 have been used from January 1, 2016 to the present, together with the password for access to permit a forensic examination of said computer or other electronic device.

9.     All Documents and Communications constituting, referring or relating to bank records for each bank account in Your name or in the name of any corporate entity controlled in whole or in part by You for the period January 1, 2016 to December 31, 2016.

10.    All Documents and Communications constituting, referring or relating to bank records for each bank account in Seth Rich name or in the name of any corporate entity controlled in whole or in part by Seth Rich for the period January 1, 2016 through the date of Seth Rich's death.

11.    All Documents and Communications constituting, referring or relating to transaction records for each account maintained directly or indirectly by You at e-Bay, PayPal, Venmo, Coinbase or relating to any other non-bank service (such as Bitcoin, Ethereum, Litecoin) permitting the receipt of funds from third parties for the period from January 1, 2016 through December 31, 2016.

12.    All Documents and Communications constituting, referring or relating to transaction records for each account maintained directly or indirectly by Seth Rich at e-Bay, PayPal, Venmo, Coinbase or any other non-bank service (such as Bitcoin, Ethereum, Litecoin) permitting the receipt of funds from third parties for the period from January 1, 2016 through December 31, 2016.

13.    Any laptop belonging to Seth Rich in Your possession, together with the password for laptop access to permit a forensic examination of said laptop.

4

14.   Any desktop computer belonging to Seth Rich in Your possession, together with the password for desktop access to permit a forensic examination of said desktop computer.

15.   Any flash or USB drives belonging to Seth Rich in Your possession for forensic examination.

16.   Any cell phone used by Seth Rich from January 1, 2016 to July 10, 2016 for forensic examination.

17.   All phone records showing telephone calls made by Seth Rich from January 1, 2016 until the night of his murder.

18.   All phone records showing all telephone calls made by You from January 1, 2016 until the date of the filing of the Complaint in this action.

19.   All documents constituting, referring or relating to records, including receipts, relating to any GoFundMe account established, directly or indirectly by You from June 1, 2016 to the present.

20.   All documents constituting, referring or relating to emails to or from Seth Rich's Gmail account from the date of his murder to the present.

21.   Any report, study or analysis in Your custody or control of the contents of any electronic device belonging to or in the custody and control of Seth Rich prior to his murder.

22.   All Documents constituting, referring or relating to the death certificate for Seth Rich containing the cause of death of Seth Rich.

23.   All Documents constituting, referring or relating to the autopsy report for Seth Rich.

24.   All Documents constituting, referring or relating to any virtual private network (VPN) created or used by You or Seth Rich from January 1, 2016 to the date of Seth Rich's murder.

25.     A complete list of all code names, aliases, handles, usernames and pseudonyms used by each of You and Seth Rich in any medium of communication from January 1, 2016 to the present.

26.     Any back-up files of DNC emails and documents transmitted to Julian Assange or Wikileaks in Your custody and control.

27.     All Documents constituting, referring or relating to Communications between You and any member of the United States House of Representatives or the United States Senate.

28.     All Documents constituting, referring or relating to Communications between Seth Rich and any member of the United States House of Representatives or the United States Senate.

29.     All Documents constituting, referring or relating to Communications between You and any of John Brennan, Gina Haspell, James Clapper, James Comey, H.R. McMaster, Hilary Clinton, John Podesta, Robby Mook, Deborah Wasserman Schultz and Sidney Blumenthal, William Barr and John Durham.

30.     All Documents constituting, referring or relating to Communications between Seth Rich and any of John Brennan, Gina Haspell, James Clapper, James Comey, H.R. McMaster, Hilary Clinton, John Podesta, Robby Mook, Deborah Wasserman Schultz and Sidney Blumenthal.

Dated: November 21, 2019
        New York, NY

                              QUAINTON LAW, PLLC
                              By: *Eden P. Quainton*_____
                              Eden P. Quainton
                              1001 Avenue of the Americas, 11<sup>th</sup>Floor
                              New York, NY 10018
                              Telephone: (212) 813- 8389
                              Facsimile: (212) 813-8390
                              equainton@gmail.com
                              *Attorneys for Defendant Edward Butowsky*

6

To:     Joshua Riley
        Meryl C. Governski
        BOIES SCHILLER FLEXNER LLP
        1401 New York Ave, N.C
        Washington, DC 2005
        jriley@fsflip.com
        mgovernski@bsflip.com
        *Attorneys for Plaintiff Aaron Rich*

        Micahel J. Gottlieb
        WILLKIE FARR & GALLAGHER LLP
        1875 K. Street, N.W.
        Washington, D.C. 20006
        mgottlieb@willkie.com
        *Attorneys for Plaintiff Aaron Rich*

## CERTIFICATE OF SERVICE

     I hereby certify that on November 21, 2019, a copy of the foregoing Defendant Edward Butowsky's First Set of Request for Production of Documents and Things to Plaintiff Aaron Rich was served by electronic mail on the foregoing:

Joshua Riley
Meryl C. Governski
BOIES SCHILLER FLEXNER LLP
1401 New York Ave, N.C
Washington, DC 2005
jriley@fsflip.com
mgovernski@bsflip.com

Micahel J. Gottlieb
WILLKIE FARR & GALLAGHER LLP
1875 K. Street, N.W.
Washington, D.C. 20006
mgottlieb@willkie.com

                                 **QUAINTON LAW, PLLC**
                                 */s/ Eden Quainton*
                                 EDEN P. QUAINTON, ESQ.
                                 1001 Avenue of the Americas, 11th Floor
                                 New York, New York 10018
                                 Telephone: (212) 813-8389
                                 E-mail: equainton@gmail.com
                                 *Attorneys for Defendant Edward Butowsky*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AARON RICH,                                          Case No. 1:18-cv-00681-RJL
                                                     Honorable Richard J. Leon

      Plaintiff,

      v.


EDWARD BUTOWSKY,
MATTHEW COUCH ,
AMERICA FIRST MEDIA,

      Defendants.

## DEFENDANT EDWARD BUTOWSKY'S SECOND SET OF INTERROGATORIES TO PLAINTIFF AARON RICH

      Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Defendant Edward Butowsky ("Butowsky") requests that Plaintiff Aaron Rich ("Rich"or "You") serve upon Butowsky sworn answers to the interrogatories set forth below within thirty (30) days after the service hereof.  These interrogatories are intended to be continuing in nature and any information that may be discovered subsequent to the service of the answers should be brought to Butowsky's attention through supplemental answers within a reasonable time following such discovery.

      Pursuant to Local Rule 26.2(d), Butowsky requests that each interrogatory be quoted in full immediately preceding the response.

## DEFINITIONS AND INSTRUCTIONS

      A.     The following definitions apply to all of Plaintiffs' discovery requests:

      (1)    "Communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

1

(2)    "Complaint" means the complaint filed by Aaron Rich against the Washington Times, Ed Butowsky and Matt Couch on March 26, 2018 in Federal District Court for the District of Columbia, Case No. 1:18-cv-00681.

(3)    "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a) and shall mean any and all information in tangible or other form, whether printed, typed, recorded, computerized, filmed, reproduced by any process, or written or produced by hand, and whether an original, draft, master, duplicate or copy, or notated version thereof, that is in Your possession, custody, or control.  A draft or non-identical copy is a separate document within the meaning of this term.

(4)    "Person" is defined as any natural person or any business, legal, or governmental entity or association.

(5)    In reference to a person, "to identify" means to state, to the extent known, the person's full name, present or last known business address, and when referring to a natural person, additionally, the present or last known home address, and present or last-known title, position, and business affiliation. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

(6)    In reference to documents, "to identify" means to state, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), address(ees), and recipient(s).

(7)    The term "state" or "state all facts" means to state all facts discoverable under Fed. R. Civ. P. 26(b) that are known to You. When used in reference

to a contention, "state," "state all facts," "identify all documents," and "identify all communications" shall include all facts, documents, and communications negating as well as supporting the contention.  When used in reference to a contention, "identify each person" shall include persons having knowledge of facts negating, as well as supporting, the contention.

(8)  "Regarding" or "referring or relating to" means constituting, comprising, concerning, regarding, mentioning, containing, setting forth, showing, disclosing, describing, explaining, summarizing, evidencing, discussing, either directly or indirectly, in whole or in part, and should be given the broadest possible scope consistent with the Federal Rules of Civil Procedure.

(9)  "Local Rule" shall mean the Local Rules of the District Court for the District of Columbia.

(10)  "Regarding" or "referring or relating to" means constituting, comprising, concerning, regarding, mentioning, containing, setting forth, showing, disclosing, describing, explaining, summarizing, evidencing, discussing, either directly or indirectly, in whole or in part, and should be given the broadest possible scope consistent with the Federal Rules of Civil Procedure.

(11)  "You" refers to Aaron Rich and "Your" is the possessive form of the pronoun referring to Aaron Rich. You includes Your representatives, agents, consultants and employees.

B.  The following  rules of construction shall apply to all of **Butowsky**'s discovery requests:

(1)  The terms "all" and "each" shall be constructed as all and each.

3

(2)     The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside its scope.

(3)     The use of the singular form of any word shall include within its meaning the plural form of the word, and vice versa.

(4)     The use of the masculine form of a pronoun shall include also within its meaning the feminine form of the pronoun so used, and vice versa.

(5)     The use of any tense of any verb shall include also within its meaning all other tenses of the verb so used.

C.     No part of an interrogatory can be left unanswered merely because an objection is interposed to another part of the interrogatory.

D.     Where an objection is made to any discovery request, or sub-part thereof, state with specificity all grounds for the objection. Any ground not stated in an objection within the time provided by the Local Rules and the Federal Rules of Civil Procedure, or any extensions thereof, is waived.

E.     Where a claim of privilege or work product is asserted in objecting to an interrogatory or document request, or sub-part thereof, and an answer is not provided on the basis of such assertion, the attorney asserting the privilege must in the objection to the interrogatory or document request, or sub-part thereof, identify the nature of the privilege being claimed; and provide the following information, unless divulgence of the information would cause disclosure of the allegedly privileged information:

(1)     For documents:

(a)     the type of document;

(b)     general subject matter of the document;

(c)     the date of the document; and

(d)     such other information as is sufficient to identify the document for a subpoena duces tecum, including the author of the document, the addressee of the document, and the relationship of the author to the addressee.

(2)     For oral communications:

(a)     the name of the person making the communication, the names of persons present while the communication was made, and the relationship of these persons;

(b)     the date and place of communication; and

(c)     the general subject matter of the communication.

F.     If You find the meaning of any discovery request to be unclear, You should assume a reasonable meaning, state what that meaning is, and respond to the request according to the assumed meaning.

G.     Documents and things should be consecutively numbered and the numbers should be preceded by a prefix identifying the documents and electronically stored information originating from You.

5

## INTERROGATORIES

## INTERROGATORY NO. 1

Identify each and every statement by Butowsky that You believe to be defamatory and state Your basis for believing such statement to be defamatory.

## INTERROGATORY NO. 2

For each statement in the Complaint attributed to Butowsky You allege is defamatory, state in detail Your basis, if any, for believing said statement is false, and provide any Documents and Communications that substantiate Your belief.

## INTERROGATORY NO. 3

For each statement in the Complaint attributed to Butowsky You contend is defamatory and was made with reckless disregard for the truth, state in detail Your basis, if any, for believing said statement was made with reckless disregard, and provide any Documents and Communications that substantiate Your belief.

## INTERROGATORY NO. 4

Identify and describe in detail each and every Communication, Document or instance of conduct You believe supports Your allegation that Butowsky entered into a conspiracy with Defendant Matthew Couch ("Couch"), explaining Your basis for believing such allegation and providing each and every Communication, Document or instance of conduct You allege constitutes or establishes the existence or furtherance of a conspiracy with Couch to defame You.

## INTERROGATORY NO. 5

Explain in detail whether you consider the articles published by Cassandra Fairbanks in

The Gateway Pundit to be defamatory, and if so, state the basis for your belief, and the reasons, if any, why you have not sued Ms. Fairbanks or The Gateway Pundit or demanded a retraction from said publication.

**INTERROGATORY NO. 6**

State in detail the explanation you provided to Your father about the leaking of DNC emails and documents to Wikileaks and/or Julian Assange and the payments You and/or Seth Rich allegedly received from Wikileaks and/or Julian Assange.

**INTERROGATORY NO. 7**

Explain in detail what you believe Joel Rich meant when he told Ed Butowsky, "I know what the boys did."

**INTERROGATORY NO. 8**

State in detail the basis for Your allegation that Mr. Butowsky "pushed" Fox News to publish a story about the Seth Rich murder and provide all Documents and Communications that support Your allegation.

**INTERROGATORY NO. 9**

State in detail the basis for Your allegation that Mr. Butowsky and Mr. Couch "agreed to work together to publish defamatory statements about Aaron" and provide all Documents and Communications that support Your allegation.

**INTERROGATORY NO. 10**

State in detail when, where and how the statements in the Washington Times article referenced in paragraph 9 of the Complaint had been previously "peddled" by Mr. Butowsky, and provide all Documents and Communications that support your statement.

**INTERROGATORY NO. 11**

Identify each and every "overt act" that You allege Mr. Butowsky committed in Washington D.C. to "further" his alleged "common scheme" with Mr. Couch and provide all Documents and Communications that support Your allegation.

**INTERROGATORY NO. 12**

State in detail the basis for Your allegation that Mr. Butowsky "helped to fabricate" the Fox News story referenced in paragraph 34 of the Complaint and provide all Documents and Communications that support Your allegation.

**INTERROGATORY NO. 13**

State in detail each instance of conduct constituting Mr. Butowsky's alleged "behind-the-scenes role" in the "conspiracy" identified in paragraph 39 of the Complaint and provide all Documents and Communications that support Your allegation.

**INTERROGATORY NO. 14**

State in detail the basis for Your allegation that Mr. Butowsky "encouraged" the "creation of new, false, defamatory content" in March of 2018, and provide all Documents and Communications that support Your allegation.

**INTERROGATORY NO. 15**

State in detail the basis for Your allegation that the Washington Times had knowledge that Mr. Butowsky was "willing to lie" about the content of the Publication identified in paragraph 76 of the Complaint and provide all Documents and Communications that support Your allegation.

## INTERROGATORY NO. 16

Describe in detail the basis for Your allegation that Mr. Butowsky has developed a "tin-foil hat" theory and provide all Documents and Communications that support Your allegation.

Dated: November 21, 2019
      New York, NY

QUAINTON LAW, PLLC
By: *Eden P. Quainton*
Eden P. Quainton
1001 Avenue of the Americas, 11th Floor
New York, NY 10018
Telephone: (212) 813-8389
Facsimile: (212) 813-8390
equainton@gmail.com
*Attorneys for Defendant Edward Butowsky*

To:

Joshua Riley
Meryl C. Governski
BOIES SCHILLER FLEXNER LLP
1401 New York Ave, N.C
Washington, DC 2005
jriley@fsflip.com
mgovernski@bsflip.com
*Attorneys for Plaintiff Aaron Rich*

Micahel J. Gottlieb
WILLKIE FARR & GALLAGHER LLP
1875 K. Street, N.W.
Washington, D.C. 20006
mgottlieb@willkie.com
*Attorneys for Plaintiff Aaron Rich*

## CERTIFICATE OF SERVICE

I hereby certify that on November 21, 2019, a copy of the foregoing Defendant Edward Butowsky's Second Set of Interrogatories o Plaintiff Aaron Rich was served by electronic mail on the foregoing:

Joshua Riley
Meryl C. Governski
BOIES SCHILLER FLEXNER LLP
1401 New York Ave, N.C
Washington, DC 2005
jriley@fsflip.com
mgovernski@bsflip.com

Micahel J. Gottlieb
WILLKIE FARR & GALLAGHER LLP
1875 K. Street, N.W.
Washington, D.C. 20006
mgottlieb@willkie.com

**QUAINTON LAW, PLLC**
*/s/ Eden Quainton*
EDEN P. QUAINTON, ESQ.
1001 Avenue of the Americas, 11th Floor
New York, New York 10018
Telephone: (212) 813-8389
E-mail: equainton@gmail.com
*Attorneys for Defendant Edward Butowsky*

# EXHIBIT 18

| **From:** | Eden Quainton |
|---|---|
| **To:** | Michael Gottlieb; Joshua Riley; Meryl Governski; Sam Hall |
| **Subject:** | Notice of Intent to Serve Third-Party Subpoenas |
| **Date:** | Thursday, December 19, 2019 6:22:48 PM |
| **Attachments:** | Notice of Intent to Serve Subpoena Brad Bauman.pdf |
| | Notice of Intent to Serve Subpoena Reddit.pdf |
| | Notice of Intent to Serve Subpoena Duces Tecum and Ad Testificandum.pdf |

Attached please find three Notices of Intent to Serve Third-Party Subpoenas.

Eden P. Quainton
Quainton Law, PLLC
1001 Avenue of the Americas, 11th Floor
New York, NY 10018
Tel: 212.813.8389
Fax: 212.813.8390
Cell: 202.360.6296
www.quaintonlaw.com

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

---

AARON RICH

                Plaintiff,

v.

EDWARD BUTOWSKY,
MATTHEW COUCH, and
AMERICA FIRST MEDIA,

                Defendants.

Civil Action No. 1:18-cv-00681-RJL

Hon. Richard J. Leon

**DEFENDANT EDWARD
BUTOWSKY'S NOTICE OF
INTENT TO SERVE
THIRD-PARTY SUBPOENA
DUCES TECUM AND AD
TESTIFICANDUM**

---

TO PLAINTIFF:

PLEASE TAKE NOTICE, that pursuant to Rule 45 of the Federal Rules of Civil

Procedure, Defendant Edward Butowsky intends to serve a third-party subpoena duces tecum

and ad testificandum on Seymour Hersh.

The subpoena is attached to this Notice.

Dated: December 19, 2019
       New York, NY

                QUAINTON LAW, PLLC
                By: *Eden P. Quainton_____*
                Eden P. Quainton
                1001 Avenue of the Americas, 11th Floor
                New York, NY 10018
                Telephone: (212) 813- 8389
                Facsimile: (212) 813-8390
                equainton@gmail.com
                *Attorneys for Defendant Edward Butowsky*

To:    Joshua Riley
       Meryl C. Governski
       BOIES SCHILLER FLEXNER LLP
       1401 New York Ave, N.C
       Washington, DC 2005
       jriley@fsflip.com

mgovernski@bsflip.com
*Attorneys for Plaintiff Aaron Rich*

Micahel J. Gottlieb
Samuel Hall
WILLKIE FARR & GALLAGHER LLP
1875 K. Street, N.W.
Washington, D.C. 20006
mgottlieb@willkie.com
shall@gmail.com
*Attorneys for Plaintiff Aaron Rich*

AO 88A  (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

### for the

### District of Columbia

| | | |
|---|---|---|
| Aaron Rich | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   18-cv-0681 (RJL) |
| Edward Butowsky et al. | ) | |
| | ) | |
| *Defendant* | ) | |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:                                                         Seymour Hersh
                           3214 Newark Street NW, Washington D.C. 20008
                              *(Name of person to whom this subpoena is directed)*

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action.  If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| Place:   Wilder & Baptiste, 1150 Connecticut Avenue, Suite 315, N.W. Washington D.C. 20036 | Date and Time:  01/10/2020 9:30 am |
|---|---|

          The deposition will be recorded by this method:   Audio visual recording and court reporter.

☑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material: Information set forth on the Subpoena Addendum attached hereto.

          The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   12/19/2019

                    *CLERK OF COURT*
                                                          OR

_____              _____
    *Signature of Clerk or Deputy Clerk*                        *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   Edward Butowsky
_____ , who issues or requests this subpoena, are:
Eden P. Quainton, 1001 Avenue of the Americas, 11th Fl., New York, NY 10018, equainton@gmail.com

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev.  02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.   18-cv-0681 (RJL)

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $      0.00      .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88A (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
    (i) is a party or a party's officer; or
    (ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:
  (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  (B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*
  (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  (B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

  (A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

    (i) fails to allow a reasonable time to comply;
    (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
    (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    (iv) subjects a person to undue burden.
  (B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

    (i) disclosing a trade secret or other confidential research, development, or commercial information; or
    (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  (C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  (A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  (B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  (C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  (D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*
  (A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    (i) expressly make the claim; and
    (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  (B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

---

AARON RICH

                           Plaintiff,                                    Civil Action No. 1:18-cv-00681-RJL

v.                                                                        Hon. Richard J. Leon

EDWARD BUTOWSKY,
MATTHEW COUCH, and
AMERICA FIRST MEDIA,

                           Defendants.

---

## SUBPOENA ADDENDUM

The subpoena commands the production of the items or things listed below.  Each individual Request for Documents (collectively the "Requests"), shall be read and interpreted in accordance with the definitions and instructions identified below.

## GENERAL DEFINITIONS

Plaintiff incorporates by reference all the instructions, definitions, and rules contained in the Federal Rules of Civil Procedure and for purposes of this Subpoena, the following definitions shall apply:

1.  Unless words or terms have been given a specific definition herein, each word or term used herein shall be given its usual and customary dictionary definition.

2.  The terms defined herein should be construed broadly to the fullest extent of their meaning in a good faith effort to comply with the Federal Rules of Civil Procedure.

3.  "Communication" means, in addition to its customary and usual meaning, every contact of any nature, whether documentary, electronic, written or oral, formal or informal, at any time or place and under any circumstances whatsoever whereby information of any nature is transmitted or transferred by any means, including, but not limited to letters, memoranda, reports, emails, text

messages, instant messages, Social Media, telegrams, invoices, telephone conversations, voicemail messages, audio recordings, face-to-face meetings and conversations, or any other form of communication, and any Document relating to such contact, including, but not limited to, correspondence, memoranda, notes or logs of telephone conversations, e-mail, electronic chats, text messages, instant messages, direct or private messages, correspondence in "meet ups" or chat rooms, and all other correspondence on Social Media. Without limiting the foregoing in any manner, commenting as well as any act of expression that is not directed at a specific person, or otherwise may not be intended to provoke a response (such as a Social Media posting, "likes," "shares," or any other form of reacting to another's use of Social Media), are forms of communication.

4.  The term "relating to" means "concerning," "referring to," "describing," "evidencing," or "constituting."

5.  "Document" or "Documents" means documents broadly defined in Rule 34 of the Federal Rules of Civil Procedure and includes (i) papers of all kinds, including, but not limited to, originals and copies, however made, of letters, memoranda, hand-written notes, notebooks, work-pads, messages, agreements, rough drafts, drawings, sketches, pictures, posters, pamphlets, publications, news articles, advertisements, sales literature, brochures, announcements, bills, receipts, credit card statements, and (ii) non-paper information of all kinds, including, but not limited to, any computer generated or electronic data such as digital videos, digital photographs, audio recordings, podcasts, Internet files (including "bookmarks" and browser history), online articles and publications, website content, electronic mail (e-mail), electronic chats, instant messages, text messages, uploads, posts, status updates, comments, "likes", "shares", direct messages, all Social Media activity, or any other use of ephemeral communications services or Social Media, and (iii)

any other writings, records, or tangible objects produced or reproduced mechanically, electrically, electronically, photographically, or chemically. Without limiting the foregoing in any way, every Communication is also a Document.

6.   The term "Electronically Stored Information" or "ESI" is defined to be synonymous in meaning and equal in scope to the usage of "electronically stored information" in Fed. R. Civ. 34(a)(1)(A). "ESI" includes data on all servers, including IP addresses, MAC 3 addresses, archived data, deleted data, and legacy data, as well as data on removable electronic media and in any other location where documents relevant to the Requests may be found.

7.   "Social Media" means any forum, website, application, or other platform on which persons can create, transmit, share, communicate, or comment upon any information, ideas, or opinions, or otherwise engage in social networking, including, but not limited to: Twitter, Gab, MeWe, Periscope, Facebook, Discord, Reddit, Imgur, SnapChat, Instagram, Google+, 4chan, 8chan, Tumblr, Youtube, LinkedIn, Flikr, Reddit, Quora, Disquis, Slack, Whisper, Yik Yak, Medium, WordPress, and instant messaging services such as Signal, WhatsApp, Facebook Messenger, Hangouts, Skype, Line, KakaoTalk, Telegram, and CyberDust. Without limiting the foregoing in any manner, and by way of example only, the following are examples of Social Media activity: uploading, posting, commenting, reacting (e.g., "liking" a post), sharing, and communicating on comment sections of Social Media.


## SPECIFIC DEFINITIONS

1.  Aaron Rich refers to "Aaron Nathan Rich," the plaintiff in the above-captioned litigation.

2.  "Seth Rich" refers to Seth Conrad Rich, the brother of the plaintiff in the above captioned litigation.

3. "Joel Rich" refers to the father of Seth Rich.

4. "Mary Rich" refers to the mother of Seth Rich.

5. "You," "Your," or "Yours" refers to Seymour Hersh, and includes all of Your agents, representatives, or other persons, organizations, or others acting or purporting to act on Your behalf, or under Your control.


## INSTRUCTIONS

Plaintiff incorporates by reference all the instructions, definitions, and rules contained in the Federal Rules of Civil Procedure and for purposes of this Subpoena, the following instructions shall apply:

A.  Your responses to the following Requests shall be based on all knowledge and information (whether or not hearsay or admissible) in Your possession, custody, or control.

B.  Produce all responsive documents in Your possession, custody, or control, regardless of whether such documents are possessed directly by You or persons or entities under Your control.

C.  Produce each responsive document in its entirety including with all attachments or other matters affixed thereto. Documents attached to each other should not be separated.

D.  Any alteration of a responsive document, including any marginal notes, handwritten notes, underlining, date stamps, received stamps, endorsed or filed stamps, drafts, revisions, modifications, and other versions of a document, is a responsive document in its own right and must be produced.

E.  If no responsive documents exist for a specific Request, specifically state that no responsive documents exist.

F.   Certify that Your production is complete and correct in accordance with specifications of the attached Certification that Response is Complete and Correct form provided as Exhibit A.

G.   If any otherwise responsive document was, but is no longer, in existence or in Your possession, custody, or control, identify the type of information contained in the document, its current or last known custodian, the location/address of such document, and the identity of all persons having knowledge or who had knowledge of the document, and also describe in full the circumstances surrounding its disposition from Your possession or control.

H.   If You object to production in response to a specific request, You shall state with particularity the basis for all objections with respect to such request. You shall respond to any and all portions of any request that do not fall within the scope of Your objection.

I.   Whether or not You object, You must preserve all Documents and Communications relevant to the above-captioned matter, including all Documents and Communications responsive to the Requests.

J.   Pursuant to Rule 45(e) of the Federal Rules of Civil Procedure, documents shall be produced either (a) as they are kept in the usual course of business (in which case they shall be produced in such fashion as to identify the department, branch, or office in whose possession it was located and, where applicable, the natural person in whose possession it was found or the server or central file in which it was found, and the address of each document's custodian(s)), or (b) segregated as responsive to a specific Request enumerated in the Request, with such specific Request identified.

K.   All Documents produced in electronic form shall include related metadata. Produce in TIFF or native format (i.e., Word documents as .DOC or .DOCX files, Outlook emails as .PST files, Excel spreadsheets as .XLS or .XLSX files, Adobe PDF documents as .PDF files). For all forms of ESI, ensure that ESI is provided in unencrypted form and free of password protection.

L.  In the event any Document or Communication is withheld on the basis of the attorney-client privilege, work product doctrine, or any other right of non-disclosure on any other basis, You shall produce a privilege log.

## **DOCUMENTS TO BE PRODUCED**

1.      All Documents and Communications referring or relating to any of Seth Rich, Aaron Rich, Joel Rich, or Mary Rich.

2.      All Documents and Communications referring or relating to any report of the Federal Bureau of Investigation (the "FBI") or any other federal agency, or any agent or employee of the FBI or such other federal agency, referring or relating to the hacking or leaking of emails and related documents from the DNC to Wikileaks in the course of 2016.

## EXHIBIT A
## CERTIFICATION THAT RESPONSE IS CORRECT AND COMPLETE

I, _____ , certify as follows:


1.   The enclosed production of Documents and Communications were prepared and assembled under my personal supervision;

2.   The Documents and Communications contained in this production to the Subpoena are authentic, genuine and what they purport to be;

3.   Attached is a true and accurate record of all persons who prepared and assembled any productions and responses to the Subpoena, all persons under whose personal supervision the preparation and assembly of productions and responses to the Subpoena occurred, and all persons able competently to testify: (a) that such productions and responses are complete and correct to the best of such person's knowledge and belief; and (b) that any Documents produced are authentic, genuine and what they purport to be; and

4.   Attached is a true and accurate statement of those requests under the Subpoena as to which no responsive Documents were located in the course of the aforementioned search.

Signature: _____ Date: _____

Printed Name: _____

Address,     e-mail     and     telephone     number:_____

_____

_____

## <u>CERTIFICATE OF SERVICE</u>

       I, EDEN P. QUAINTON, hereby certify that on this 19th day of December 2019, a copy of the documents entitled:

       Notice of Intent to Serve Third Party Subpoena Duces Tecum and Ad Testificandum
       Subpoena
       Subpoena Addendum

Were served via electronic document transfer to the following parties.

Joshua Riley
Meryl C. Governski
BOIES SCHILLER FLEXNER LLP
1401 New York Ave, N.C
Washington, DC 2005
jriley@fsflip.com
mgovernski@bsflip.com

Micahel J. Gottlieb
Samuel Hall
WILLKIE FARR & GALLAGHER LLP
1875 K. Street, N.W.
Washington, D.C. 20006
mgottlieb@willkie.com
shall@willkie.com

                          */s/ Eden Quainton*
                          EDEN P. QUAINTON, ESQ.

                          1001 Avenue of the Americas, 11th Floor
                          New York, New York 10018
                          Telephone: (212) 813-8389
                          equainton@gmail.com

# EXHIBIT 19

| | |
|---|---|
| **From:** | Eden Quainton |
| **To:** | Meryl Governski |
| **Cc:** | Michael Gottlieb; Joshua Riley; Sam Hall |
| **Subject:** | Re: FW: Notice of Intent to Serve Third-Party Subpoenas |
| **Date:** | Friday, January 10, 2020 10:05:13 AM |

Meryl,

I have not been able to reach Mr. Hersh and I do not know if he has counsel.   He has not responded to my subpoena.  I will reschedule as soon as I have been able to reach him.   In the meantime, the deposition is <u>not</u> occurring today.

Eden

On Fri, Jan 10, 2020 at 9:58 AM Meryl Governski <mgovernski@bsfllp.com> wrote:

> Mr. Quainton,
>
> I am currently at the address you listed on the attached notice of subpoena for the deposition of Seymour Hersh, which also states that it was to occur today (January 10) at 9:30 a.m.
>
> There is no one else here related to this deposition, including the witness, any counsel, a court reporter, or a videographer.  An attorney of the sponsoring firm indicated he thought the deposition had been "relocated or rescheduled."
>
> Please advise immediately if this deposition is occurring at a different location or time, and explain when you provided notice of that change.
>
> **From:** Eden Quainton [mailto:equainton@gmail.com]
> **Sent:** Thursday, December 19, 2019 6:32 PM
> **To:** Michael Gottlieb <mgottlieb@willkie.com>; Joshua Riley <jriley@bsfllp.com>; Meryl Governski <mgovernski@bsfllp.com>; Sam Hall <shall@willkie.com>
> **Subject:** Notice of Intent to Serve Third-Party Subpoenas
>
> Attached please find three Notices of Intent to Serve Third-Party Subpoenas.
>
> Eden P. Quainton
>
> Quainton Law, PLLC

1001 Avenue of the Americas, 11th Floor

New York, NY 10018

Tel: 212.813.8389

Fax: 212.813.8390

Cell: 202.360.6296

www.quaintonlaw.com

---

The information contained in this electronic message is confidential information intended only for the use of the named recipient(s) and may contain information that, among other protections, is the subject of attorney-client privilege, attorney work product or exempt from disclosure under applicable law. If the reader of this electronic message is not the named recipient, or the employee or agent responsible to deliver it to the named recipient, you are hereby notified that any dissemination, distribution, copying or other use of this communication is strictly prohibited and no privilege is waived. If you have received this communication in error, please immediately notify the sender by replying to this electronic message and then deleting this electronic message from your computer. [v.1 08201831BSF]

--
Eden P. Quainton
Quainton Law, PLLC
1001 Avenue of the Americas, 11th Floor
New York, NY 10018
Tel: 212.813.8389
Fax: 212.813.8390
Cell: 202.360.6296
www.quaintonlaw.com