# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| AARON RICH | | |
| | Plaintiff, | Civil Action No. 1:18-cv-00681-RJL |
| v. | | Hon. Richard J. Leon |
| EDWARD BUTOWSKY, | | |
| MATTHEW COUCH, and | | |
| AMERICA FIRST MEDIA | | |
| | Defendants. | |

## REPLY IN SUPPORT OF PLAINTIFF'S MOTION
## FOR SANCTIONS AGAINST DEFENDANT BUTOWSKY

JOSHUA P. RILEY
MERYL C. GOVERNSKI
BOIES SCHILLER FLEXNER LLP
1401 New York Ave NW, Washington DC 20005

MICHAEL J. GOTTLIEB
WILLKIE FARR GALLAGHER LLP
1875 K Street NW, Washington, DC 20006

*Attorneys for Plaintiff Aaron Rich*

Plaintiff Aaron Rich respectfully submits this Reply ("Reply") to Defendant Butowsky's Opposition ("Opposition") to Plaintiff's Motion for Sanctions Against Defendant Butowsky ("Motion").  *See* Dkt. 93 (Motion); Dkt. 109 (Opposition).

*******

Plaintiff served his First Request for Production of Documents ("First RFP") on Defendant Butowsky nine months ago.[1]  After Defendant Butowsky failed to respond to the First RFP, the Court entered a July 31, 2019, Order requiring him to do so.[2]  Defendant Butowsky failed to comply with the Court's Order, including by failing to complete a reasonable collection and production of documents and by failing to supplement his production after he committed to do so. It was only after considerable efforts to obtain Defendant Butowsky's compliance through numerous efforts to meet and confer with his counsel, and after it became clear that Defendant Butowsky would not produce additional documents prior to the close of discovery, that Plaintiff filed his Motion to enforce the Court's Order.[3]

In response, Defendant Butowsky does *not* contend that he has responded sufficiently to the First RFP or that he has complied with the Court's Order; to the contrary, he concedes that there exist nearly 6,500 potentially responsive documents, none of which has been produced as of the date of this filing (the single exception being one responsive document that Defendant Butowsky produced on the insistence of Plaintiff's counsel only after Defendant Butowsky posted the document to his Twitter account).[4]  Defendants' counsel further admits that he did not even

---

[1] *See* Dkt. 63-1.

[2] *See* Dkt. 75 at 5:11-12; 7/31/2019 Minute Order.

[3] *See* Dkt. 93-4.

[4] *See* Dkt. 109 at 5; Dkt. 116-3 at Exs. 12-13.

1

retain a document collection vendor until November 19, 2019 (nearly four months after the Court's order),[5] and he admits that he had promised to complete his document production by December 23, 2019,[6] and then waited until that day to tell Plaintiff's counsel that no documents were forthcoming.[7]  The Court should order Defendant Butowsky to produce immediately the nearly 6,500 documents he has located in his search, and the Court should order payment of Rule 37's mandatory penalty against parties whose non-compliance with discovery obligations necessitates motions to compel discovery and to enforce discovery orders.[8]

Instead of arguing that he has complied with the Court's Order, Defendant Butowsky argues that he has been "substantially justified" in his failure to do so.[9]  While Defendant Butowsky alludes to some unspecified "administrative issues" involving his assistant[10] and a "bureaucratic hold up" with his insurance carrier,[11] the essence of Defendant Butowsky's argument is that his health has rendered him unable to comply with his discovery obligations in this case.[12]  That argument is addressed in detail in Plaintiff's Opposition to Defendants' Motion to Extend or Stay Discovery, which explains that during the same period for which Defendant Butowsky claims disability:  he filed six lawsuits against nearly fifty defendants (including certain of Plaintiff's

---

[5] *See* Dkt. 109 at 4.

[6] *See id.* ("Defendants' counsel agreed that the production would be complete before Christmas.").

[7] *See* Dkt 109-1 ¶ 19 ("I notified Plaintiff's counsel on December 23, 2020 and informed him that in light of the foregoing it would not be possible to meet the previously agreed deadline.").

[8] *See* Fed. R. Civ. P. 37(a).  Plaintiff has not routinely moved for Rule 37 penalties in connection with motions to compel, even those that have been granted.  Plaintiff did so here because the current Motion was required to enforce the Court's Order granting a prior motion to compel.

[9] *See generally* Dkt. 109.

[10] *See* Dkt. 109-1 ¶ 17.

[11] *See* Dkt. 109 at 4.

[12] *See id.* at 2.

counsel) relating to the same issues in this case and he *opposed* a stay in one of those cases; he continued to pursue professional and personal endeavors, including multiple media appearances and what appears to be a recent overseas vacation, with no apparent difficulty; and he has continued publicly to make false statements about Plaintiff and Plaintiff's brother.[13]

In just the past two weeks, Defendant Butowsky has issued notices for five depositions, including Plaintiff's, to be taken in a six-day span, a crush of work that Defendants waited to initiate until the eve of the Court's discovery deadline, after doing nothing for the overwhelming majority of the discovery period in this case.[14]  Defendant Butowsky's position appears to be that he is well enough to pursue discovery of his own, but he is too unwell to respond to discovery requests, and he has sufficient focus and health to prosecute litigation he has filed against others, but that focus and health dissipates when it comes to defending this lawsuit.  In any event, to the extent that Defendant Butowsky's medical condition has rendered him unable to attend to this litigation, neither he nor his counsel previously raised that issue.  For example, when the Court's Scheduling Order was issued, Defendant Butowsky did not suggest that he would require more time due to health issues (to the contrary, Defendants stipulated to the Scheduling Order),[15] and he did not raise his health in response to Plaintiff's initial Motion to Compel,[16] when surely it would have been relevant.

*******

---

[13] See Dkt. 116 § I.B.

[14] *See id.* at 11 n.17.

[15] *See* Dkt. 77.

[16] In fact, Defendant Butowsky did not file an opposition to Plaintiff's initial Motion to Compel. *See* Dkt. 64.

3

The foregoing should be the end of the matter; however, Defendant's Opposition contains a number of inaccurate or misleading statements that warrant the Court's attention, just a handful of examples of which include the following:

**First**, Defendants' counsel states that Defendant Butowsky's "former counsel produced 1429 documents in response to Plaintiff's discovery demands."[17]  That is false—it is nearly triple the number of documents Defendant Butowsky actually produced.  Defendant Butowsky, under this Court's Order compelling him to do so, produced a total of 536 documents.[18]  Plaintiff, upon having reviewed those documents, informed Defendant Butowsky of the numerous deficiencies in his production,[19] and Defendant Butowsky does not dispute those deficiencies.

**Second**, Defendants' counsel has accused Plaintiff's counsel of a "serious error of judgment"[20] by posing questions to Defendants' counsel with respect to the scheduling of Defendant Butowsky's deposition, but the factual representations made by Defendant's counsel are grossly misleading by omission, likely intended to suggest that Plaintiff sought to force Defendant Butowsky to sit for his deposition from his hospital bed.  Curiously, Defendant Butowsky neglected to inform the Court that Plaintiff's counsel agreed to postpone Defendant Butowsky's deposition as an accommodation to him.[21]  And because Defendant Butowsky has presented the Court with an incomplete record of the communications between counsel, Plaintiff has appended the full exchange, which includes the following emails from Plaintiff's counsel on January 12 and 14 (both of which are conveniently are missing from Defendant Butowsky's filing):

---

[17] *See* Dkt. 109 at 3.

[18] *See* Dkt. 93 at 1.

[19] Dkt. 93-4.

[20] Dkt. 109 at 1.

[21] *See* Dkt. 116 at 6 & n.16.

4

"On October 17, October 30, and November 4, we sent emails seeking agreement as to a date for Defendant Butowsky's deposition.  We received no response to those inquiries.  On November 12, 2019, we served a notice for Defendant Butowsky's deposition to take place on January 16.  On the afternoon of January 6, you represented to us that it would be 'impossible' for Defendant Butowsky to sit for his deposition as scheduled because of medical issues.  On January 10, *we informed you that 'we would be willing to accommodate a verified medical event that physically prevented Defendant Butowsky from appearing at a deposition,'* and we requested further representations from you as to Defendant Butowsky's condition.  Later that day, you represented to us for the first time that Defendant Butowsky 'remains in the hospital' and that he 'went in for surgery' that morning.  (We note that, in your January 10 email, you stated that you previously had 'informed [us] in emails subsequent to the Declaration [which was filed in the evening of January 6] that Mr. Butowsky remains in the hospital and has been in the ICU.'  We are unaware of any email in which you provided any such update.)

*Relying on the representations you have made to us, we are willing to grant your request to postpone Defendant Butowsky's deposition from January 16*, so long as you'll commit to work cooperatively with us to make arrangements for that deposition to go forward as soon as practicable, regardless of discovery deadlines.  *To be clear: we are willing to postpone Defendant Butowsky's deposition*; however, we request that you please (1) provide us some dates in the near future for which we can plan to take the deposition (at least tentatively) and (2) agree that if Defendant Butowsky does not sit for his deposition before the January 27 close of fact discovery, you would consent to the deposition occurring after that date notwithstanding anything to the contrary in the Scheduling Order.  Please provide the requested dates and let me know that you agree with the foregoing, and we promptly will withdraw the deposition notice."[22]

*"We are pleased to hear that Mr. Butowsky's surgery was successful and that he is recovering.  Based on the representations you have made to us and the Court, we are withdrawing the*

---

[22] Ex. 1 (emphasis added); *see id*. at 1/10/20 12:29 p.m. Email from J. Riley to E. Quainton ("Our standard practice is to extend accommodations and courtesies as reasonably are required or appropriate to parties who face personal, medical, or family conflicts, and we would be willing to accommodate a verified medical event that physically prevented Defendant Butowsky from appearing at a deposition.").

*deposition notice for next week*, and we understand your email to be a commitment to work with us to set a date for the deposition at the soonest practicable time.  To that end, could you please provide us with some tentative dates for the deposition?"[23]

As the communications above make clear, Plaintiff's counsel merely asked Defendants' counsel to provide more information about Defendant Butowsky's condition—and did so only because Defendants' counsel had demanded to postpone Mr. Butowsky's deposition *indefinitely* on the grounds that "apparently" Defendant Butowsky's doctors *might* have been "considering" a surgery that *could* render Defendant Butowsky unable to testify as scheduled,[24] though it was "unclear what the next steps will be."[25]  Once concrete representations were made regarding Defendant Butowsky's condition, his surgery, and the like, Plaintiff's counsel promptly agreed to postpone the deposition notwithstanding that Defendant Butowsky still has not committed to a date certain for that deposition.

**Third**, Defendants' counsel argues that Plaintiff's list of search terms "was absurdly over-reaching."[26]  That position is startling.  It never was Plaintiff's burden to draft search terms for Defendant to use to perform a search of his responsive documents.  Plaintiff did so as a courtesy upon Defendants' counsel's invitation and after Defendants' counsel rejected Plaintiff's counsel's invitation for Defendant Butowsky to propose search terms himself.[27]  In response to Plaintiff having provided those search terms, Defendants' counsel never asked Plaintiff's counsel to revise

---

[23] Ex. 2 (emphasis added).

[24] *See* Dkt. 109-2.

[25] Dkt. 109-9 ¶ 38.

[26] Dkt. 109 at 4.

[27] Dkt. 93 at 3 n.2.

any aspect of the list—a point that Defendants' counsel concedes.[28]   Defendant has no grounds whatsoever to assert that Plaintiff would have engaged in a "fight with Plaintiff over these search terms,"[29] because he never bothered even to discuss narrowing them.   If Defendant Butowsky had objections, he could have: (a) provided general objections; (b) provided a revised list of search terms; or (c) provided his own list of search terms—instead, the option Defendant Butowsky selected was to sit on the list of terms for months, without objection, and raise these issues in response to Plaintiff's present Motion.[30]   Thus, to the extent Defendant Butowsky objected to Plaintiff's search terms, he waived those objections long ago.

**Fourth**, Defendants argue that Plaintiff's list of search terms (to which Defendants' counsel agreed) is based on Plaintiff's supposed "theory that Mr. Butowsky was operating as an agent of President Trump."[31]   That is false, and Defendants' counsel does not cite anything in support of that proposition.   Plaintiff has *never* alleged that Defendant Butowsky was or is operating as an "agent of President Trump."   Defendant Butowsky may be uncomfortable with the fact that he, directly or indirectly, attempted to disseminate his narrative—that Seth Rich was responsible for the leaking of DNC documents to WikiLeaks—to senior officials at the White House,[32] the Justice Department,[33] and Congress.[34]   Or perhaps Defendant Butowsky would like

---

[28] *See* Dkt. 109 at 4 ("In any event, rather than fight with Plaintiff over these search terms, which would only have delayed the production further, Mr. Butowsky's counsel instructed online security to perform a search of these terms.").

[29] *Id.*

[30] *Id.* at 4-5.

[31] *Id.* at 4.

[32] *See, e.g.*, Ex. 3 at …662, …666; Ex. 4 at 16-19.

[33] *See, e.g.*, Ex. 3 at …662, …666-67.

[34] Ex. 5 at 210:13-216:2.

to distract from his own characterization of why *he* believed the public should care about the Seth Rich narrative—as he described it, in writing, on the eve of the publication of the retracted May 16, 2017 Fox News Article: "One of the big conclusions we need to draw from this is that the Russians did not hack our computer systems and steel [sic] emails and there was no collusion like trump with the Russians."[35]

In any event, search terms like "Sessions" and "debunking" were narrowly and appropriately tailored to capture communications relating to Defendant Butowsky's central role in the drafting and publication of the also retracted Washington Times article falsely accusing Plaintiff of having leaked DNC documents to WikiLeaks,[36] and search terms like "White House" and "donaldtrump.com" were designed to capture records of Defendant Butowsky's efforts to present his Seth Rich narrative to senior members of the current Administration.[37]

**<u>Fifth</u>**, Defendant Butowsky asserts that Plaintiff "has pursued fanciful conspiracy theories that have nothing to do with the case, such as the idea that Mr. Butowsky was organizing a supposed 'sting' operation, the only evidence for which is hearsay testimony that Mr. Couch 'was in' Omaha."[38]  That sentence is wrong in almost every respect: this supposedly "fanciful" theory

---

[35] Dkt. 95-4; *see also* Second Amended Complaint, *Butowsky v. Gottlieb*, No. 4:19-cv-00180-ALM-KPJ (E.D. Tex. July 31, 2019), Dkt. 101 ¶ 46 (explaining that Defendant Butowsky reached out to the Rich family in the first instance after "he grew increasingly frustrated as the DNC and #Resistance 'journalists' blamed the Russian government for the email leak"); Ex. 3 at …687-88 ("The narrative in the interviews you might use is that your and Malia's work prove that the Russians didn't hack into the DNC and steal the emails and impact our election."); *id.* at …691-92 ("[T]ry to highlight this puts the Russian hacking story to rest. . . . the Russian hacking narrative of stealing the records from the DNC is officially dead.").

[36] *See, e.g.*, Dkt. 117 at Exhibit 56.

[37] See supra note 32.

[38] Dkt. 109 at 3.

was offered by a percipient third-party witness in what is, to date, uncontradicted sworn testimony, and it is entirely relevant to this case.  Here is what the record shows:

On September 20, 2018—four months after the retracted Fox News story—Defendant Butowsky convened a meeting at his home in Texas with, among others: Fox News reporter Malia Zimmerman, Defendant Matt Couch, America First Media ("AFM") member Josh Flippo, and various members of an organization called "Shadowbox," which described itself as "an elite team of specialists" that conducts "deep recon on your competitors [sic] next move" and "set[s] in motion strategies your opponent can't counteract."[39]  One of the participants in that meeting, Thomas Schoenberger, has testified under oath that Defendant Butowsky "said, I want to outfit a van.  I'll pay for everything.  I want it outfitted with a StingRay.  He said, I want you guys to have ability to listen in on phone calls, to listen on conversations, and to listen to whatever devices I have to get into their emails."[40]  Mr. Schoenberger further testified that Defendant Butowsky:

> "had stated that he wanted us to drive to Omaha; to have a van that would have the capability of eavesdropping.  And our conversations, no matter what room in the house it was, he wanted the phones tapped, the computers tapped, the cell phones tapped.  He said he wanted to be able to hear a pin drop in the kitchen.  And I said to him, what if it's linoleum.  And he said, even that."[41]

Mr. Schoenberger also testified that, during the meeting, a member of Shadowbox named Manuel Chavez a/k/a Defango hacked into Defendant Couch's computer as a demonstration of Mr. Chavez's hacking abilities, after which "Ed looked around and said, you're who I want, and

---

[39] Ex. 6.

[40] Ex. 7 at 111:1-6; *see also id*. at 117:8-11 ("And then he said, how do we get into their bank accounts?  How do we get into Aaron Rich's bank accounts?  He said that.  Absolutely."); *see also* Ex. 8 ███████████████████████████████████████████████

[41] Ex. 7 at 123:25-124:9.

pointed a finger at Manny."[42]  In text messages subsequent to the meeting, Defendant Couch stated to Defendant Butowsky: "████████████████████████████████████."[43]  And for what it is worth, new documents have been disclosed publicly since the date of Mr. Schoenberger's deposition that appear to confirm that Defendant Butowsky did ask Mr. Chavez to travel to Omaha.[44]

When deposed, Defendant Couch did not dispute Mr. Schoenberger's testimony; ████████ ██████████████[45]  Defendant Butowsky, of course, may believe that these allegations are false, but to date has offered no sworn testimony contradicting any aspect of the testimony.

This testimony, if credited by a jury, would be directly relevant to Plaintiff's conspiracy and intentional infliction of emotional distress claims.  *See Halbertstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983); *Jenco v. Islamic Republic of Iran*, 154 F. Supp. 2d 27, 35 (D.D.C. 2001). Defendant Butowsky does not seriously contend otherwise.

\*\*\*\*\*\*\*

Plaintiff respectfully asks the Court to grant the Motion, order Defendant Butowsky's counsel to produce documents immediately, and levy penalties as required by Rule 37.

---

[42] Ex. 7 at 113:18-114:2 ("Matt Couch looked over at Defango, and said, you are really good.  You just hacked my computer. . . . Matt declared to everybody, wow, Manny, you've got chops.  You just hacked my computer.  And Ed looked around and said, you're who I want, and pointed a finger at Manny.").

[43] Ex. 9 at …011.

[44] *The Gatekeeper Files: How One Conspiracy Brought Together a Consortium of Actors*, jimmysllama (Jan. 10, 2020), https://jimmysllama.com/2020/01/10/15414/.

[45] *See* Ex. 10 at 346:24-347:2 ████████████████████████████ ████████████████████████

Dated: January 17, 2020

/s/  *Joshua P. Riley* _____
JOSHUA P. RILEY (D.C. Bar No. 1026900)
MERYL C. GOVERNSKI (D.C. Bar No. 1023549)
BOIES SCHILLER FLEXNER LLP
1401 New York Ave NW, Washington DC 20005
Tel: (202) 237-2727 / Fax: (202) 237-6131
jriley@bsfllp.com
mgovernski@bsfllp.com

MICHAEL J. GOTTLIEB (D.C. Bar No. 974960)
WILLKIE FARR GALLAGHER LLP
1875 K Street NW, Washington, DC 20006
Tel: (202) 303-1442 / Fax: (202) 303-2000
mgottlieb@willkie.com

***Attorneys for Plaintiff Aaron Rich***

11

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that on January 17, 2020, the foregoing document was filed through the CM/ECF system and thereby served electronically on counsel for Defendant Edward Butowsky and Matthew Couch. A courtesy copy of the foregoing document also was emailed to their counsel, Eden Quainton, at equainton@gmail.com. Mr. Quainton has agreed to convey served and filed documents to Defendant America First Media through Defendant Couch as necessary.

Dated: January 17, 2020

/s/   *Joshua P. Riley*
JOSHUA P. RILEY (D.C. Bar No. 1026900)
MERYL C. GOVERNSKI (D.C. Bar No. 1023549)
BOIES SCHILLER FLEXNER LLP
1401 New York Ave NW, Washington DC 20005
Tel: (202) 237-2727 / Fax: (202) 237-6131
jriley@bsfllp.com
mgovernski@bsfllp.com