# EXHIBIT 1

# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| ED BUTOWSKY, | § | |
| **Plaintiff,** | § | |
| | § | |
| V. | § | **Civil Action No. 4:18CV442** |
| | § | **Judge Mazzant/Magistrate Judge Craven** |
| DAVID FOLKENFLIK, ET AL., | § | |
| **Defendants.** | § | |

## ORDER

The above-referenced cause of action was referred to the undersigned United States Magistrate Judge for pretrial purposes in accordance with 28 U.S.C. § 636. The following motion is before the Court:

**Plaintiff's Motion to Compel Federal Bureau of Investigation to Comply with Subpoena Duces Tecum (Docket Entry # 75).**

The Court, having carefully considered the relevant briefing, is of the opinion the motion should be

**DENIED**.

## I. BACKGROUND

This is an action for defamation *per se*, business disparagement, and civil conspiracy filed by Plaintiff Ed Butowsky ("Plaintiff" or "Butowsky"), a Dallas investment advisor, against National Public Radio, Inc. ("NPR"), its senior media correspondent, David Folkenflik ("Folkenflik"), and certain former and current executive editors at NPR (Edith Chapin, Leslie Cook, and Pallavi Gogoi, jointly and severally) (collectively, "Defendants"). According to Plaintiff, Defendants published false and defamatory statements about Plaintiff online and via Twitter between August 2017 and March 2018 – statements Plaintiff alleges injured his business and reputation. Docket Entry # 72, ¶ 5. Defendants contend Plaintiff filed suit against

them for accurately reporting on a publicly filed lawsuit on a matter of public concern.  Specifically, Defendants assert Plaintiff filed suit following NPR's reporting on a 2017 lawsuit filed by Fox News contributor Rod Wheeler against Fox News. *See* Complaint, *Wheeler v. Twenty-First Century Fox, Inc., et al.*, Case No. 1:17-cv-05807 (S.D.N.Y. Aug. 1, 2017).  Docket Entry # 65 at p. 2, n. 3.

The Second Amended Complaint alleges as follows. Plaintiff resides with his family in Plano, Texas and is an "internationally recognized expert in the investment wealth management industry." Docket Entry # 72, ¶ 9.  He has been in the financial services industry for over twenty-nine years and has made hundreds of appearances on national television and radio shows. *Id.*, ¶¶ 9-10.

In early 2017, Plaintiff contacted the family of Seth Rich to help the family investigate their son's unsolved murder.[1] *Id.*, ¶ 70.  Plaintiff offered to pay for a private investigator.  *Id.* On February 23, 2017, Plaintiff contacted Rod Wheeler via text message to see if Wheeler would be interested in investigating the murder.  *Id.*, ¶ 71.  Plaintiff did not know Wheeler, but he had seen him on television and Wheeler appeared to be a competent investigator. *Id.*

Plaintiff alleges the family of Seth Rich entered into a contract with Wheeler to investigate the murder of Seth Rich.  *Id.*, ¶ 72. Plaintiff was not a party to the contract between Wheeler and the Rich family, and his role and involvement in the investigation of Seth's murder were limited. *Id.*, ¶¶ 73-75. According to Plaintiff, Wheeler investigated the matter and came up with the theory that Seth's murder was not the result of a botched robbery.  *Id.* at p. 20, n. 7.

On March 31, 2017, Wheeler appeared on Fox 5 DC and claimed he had been investigating

---

[1] Seth Rich was a DNC staffer who was murdered on July 10, 2016.  Docket Entry # 72, ¶ 5.

2

Seth's murder over the "past three weeks." *Id*., ¶¶ 79-81. According to the Second Amended Complaint, after Wheeler appeared on Fox 5 DC, he updated Malia Zimmerman, an "award-winning investigative reporter" employed by FoxNews.com, concerning his investigation. *Id*., ¶¶ 83-85. In one of his texts to Zimmerman, Wheeler stated, "I'm ready to say that Seth's [sic] Death was not a botched robbery and there appears to be a coverup within the D.C. Govt related to his death." *Id.*, ¶ 86. Zimmerman, who knew Wheeler worked for the Rich family, asked Wheeler if the family was letting him talk. *Id*., ¶ 87. Zimmerman expressed interest in doing a story on the murder investigation, if Wheeler was "up to it." *Id.*

As part of the murder investigation, Wheeler was also in direct contact with the "lead detective," Joseph Dellacamera, and information Wheeler obtained from Detective Dellacamera supported Wheeler's belief and his public statements to Zimmerman and others that Seth had been in contact with WikiLeaks and had sent emails to WikiLeaks. *Id*., ¶¶ 95-96. On May 15, 2017, Wheeler told Fox 5 DC reporter, Marina Marraco, on camera that he had sources at the FBI who said there was information that could link Seth to WikiLeaks. ("Absolutely, yeah, and that's confirmed."). *Id*., ¶¶ 99-103.

On May 15, 2017, Wheeler was in contact with Zimmerman multiple times about an article Zimmerman was writing. *Id*., ¶ 106. Zimmerman provided Wheeler several "drafts" containing quotes attributed to Wheeler. *Id.*, ¶¶ 108-129. At no point in time did Wheeler ever deny making the statements quoted by Zimmerman; instead he offered further quotations. *Id.*

On May 16, 2017, in the early morning, Fox published Zimmerman's story entitled, "*Seth Rich, slain DNC staffer, had contact with WikiLeaks, say multiple sources*." *Id*., ¶ 143. The article included statements Wheeler had made and approved. *Id.* On May 16, 2017, after publication of Zimmerman's article, Wheeler appeared on Fox News and was interviewed by Sean Hannity, where Wheeler again

3

confirmed Seth had communicated with WikiLeaks. *Id.*, ¶¶ 145-148. On May 16, 2017, Wheeler appeared on Fox Business with Lou Dobbs to discuss the Seth Rich murder investigation. *Id.*, ¶ 151.

On May 16 or May 17, 2017, one or more members of the Rich family, or a spokesman for the Rich family, threatened to sue Wheeler for violating the terms of his contract with the Rich family by speaking with Marraco, Zimmerman, Hannity, and Dobbs. *Id.*, ¶ 153. According to Plaintiff, the threats from the Rich family provided Wheeler with a motive to lie, backtrack, and distance himself from the quotes and statements he had made to Marraco, Zimmerman, Hannity, and Dobbs. *Id.*, ¶ 156. Wheeler then "flip-flopped on virtually all the essential facts." *Id.*, ¶ 161.

On May 23, 2017, Fox retracted Zimmerman's article with the following explanation:

> On May 16, a story was posted on the Fox News website on the investigation into the 2016 murder of DNC Staffer Seth Rich. The article was not initially subjected to the high degree of editorial scrutiny we require for all our reporting. Upon appropriate review, the article was found not to meet those standards and has since been removed.

> We will continue to investigate this story and will provide updates as warranted.

*Id.*, ¶ 170.

Between August 2017 and March 2018, Folkenflik and NPR published and republished the following online articles: (1) *Behind Fox News' Baseless Seth Rich Story: The Untold Tale*, NPR.ORG (Aug. 1, 2017); (2) *Fox News' Seth Rich Story Echoes Previous Problems For Owner Rupert Murdoch*, NPR.ORG (Aug. 7, 2017); (3) *The Man Behind The Scenes In Fox News' Discredited Seth Rich Story*, NPR.ORG (Aug. 16, 2017); (4) *No Apology, No Explanation: Fox News And The Seth Rich Story*, NPR.ORG (Sept. 15, 2017); and (5) *Fox News Fights Back On Lawsuit Filled Over Seth Rich Story*, NPR.ORG (Sept. 19, 2017). Among other things, Plaintiff alleges Folkenflik and NPR relied

on a primary source – Wheeler – that Folkenflik and NPR knew to be wholly debunked and unreliable. Docket Entry # 72, ¶ 181. According to Plaintiff, based on information known and available to Folkenflik, Folkenflik "harbored serious doubt as to the veracity of Wheeler's statements about Butowsky. Indeed, the statements were knowingly false, with not a shred of supporting evidence, and Folkenflik knew that before he wrote the Articles published by NPR." *Id.*

According to the Second Amended Complaint, in the articles Folkenflik misrepresented Plaintiff's involvement in the murder investigation; misrepresented Wheeler's contracts with Zimmerman; knew the President was not involved in any way; knew Wheeler had interviewed Detective Dellacamera; disregarded Wheeler's public statements to Marraco; knew Fox had accurately quoted Wheeler; disregarded Seymour Hersh's July 11, 2017 recorded statement; knew about Wheeler's appearances on Hannity and Dobbs when Wheeler again confirmed Seth Rich had communicated with WikiLeaks; knew about Wheeler's motive to lie (the Rich family's threats to sue Wheeler for violating the terms of his contract by speaking with Marraco, Zimmerman, Hannity and Dobbs); and knew about Wheeler's statement to FetchYourNews. *Id.*, ¶¶ 68-172.

In his civil conspiracy claim, Plaintiff claims Folkenflik knowingly and intentionally conspired with Douglas H. Wigdor ("Wigdor") to promote, publish, and republish a demonstrably false and defamatory narrative about Plaintiff. *Id.*, ¶¶ 190-197; *see also* Joint Report of Attorney Conference (Docket Entry # 52) at p. 2. According to Plaintiff, Wigdor is an attorney who has represented over twenty employees at Fox News in their claims against the network. Docket Entry # 72, ¶ 17. Wigdor also represented Wheeler in a lawsuit alleging defamation in connection with the Fox News story published about murdered DNC staffer Seth Rich. *Id.* According to the Second Amended Complaint, "Wigdor often grants in-depth

access to a single reporter from a prominent news outlet, on the condition that the story be embargoed until the day a suit is filed, when it can be set off like a firecracker." *Id.*, ¶ 18. Plaintiff alleges Folkenflik gladly accepted the "scoop" from Wigdor and published "fake news with reckless indifference to the consequences of his actions as a 'journalist.'" *Id.*, ¶ 19.

Plaintiff alleges Wigdor, in conjunction with Folkenflik and NPR's defamatory attacks on Butowsky and in furtherance of the conspiracy, "launched his own wehrmacht and published numerous false and defamatory statements about Butowsky." *Id.*, ¶ 192. According to the Second Amended Complaint, Wigdor scheduled an interview with Ari Melber with MSNBC, wherein Wheeler stated as follows:

> That's right well I was asked to get involved in conducting an investigation, a murder investigation of Seth Rich and that why I got involved, so I could try and find out who killed this guy. During the course of my investigation, there was a lot of things that came up uh there was a lot of suspicious information that I was learning about possibly the DNC being involved to some degree, I don't know. What I decided to do was to take all my information and give it to the police department like you should do in any case and go from there. But halfway through the investigation and up [to] the point this article was released by Fox, there were these quotes in there from me supposedly saying that I knew for a fact that Seth Rich the decedent had been in contact with WikiLeaks emailing them emails, that was not true.
>
> …
>
> I think uh well I know for a fact Ed Butowsky, who was the individual that was funding the investigation, he had been in contact with people from the White House and he was the one that was pushing this Russian hacking narrative, by the way that I didn't know a whole lot about because I wasn't you know trying to debunk a narrative or support a narrative I was trying to find a murderer.

*Id.*

Plaintiff seeks money damages for alleged loss and injury to his business, insult, pain and mental

suffering, humiliation, embarrassment, and injury to his reputation sustained as a result of Defendants' publication of allegedly false and defamatory statements. *Id.*, ¶ 196.

## II. PLAINTIFF'S MOTION TO COMPEL

In his current motion, Plaintiff moves to compel the Department of Justice ("DOJ") through its agency representative, a non-party, to comply with a subpoena served on the Federal Bureau of Investigation ("FBI") pursuant to Federal Rule of Civil Procedure 45. Generally speaking, Plaintiff seeks an order compelling the production of documents in the possession of the FBI related to Seth Rich and his brother Aaron Rich, as well as any other persons involved in transferring data from the Democratic National Convention to WikiLeaks. Specifically, the July 3, 2019 subpoena duces tecum seeks production of the following:

> 1. Produce all data downloaded from all electronic devices that belonged to Seth Conrad Rich (born on or about January 3, 1989) as well as all data, documents, records or communications indicating how the devices were obtained and who was responsible for downloading the information.

> 2. Produce all data, documents, communications, records or other evidence indicating whether Seth Conrad Rich (hereinafter 'Seth Rich'), his brother Aaron Rich, or any other person or persons were involved in transferring data from the Democratic National Committee to Wikileaks, either directly or through intermediaries.

> 3. Produce all documents, communications, records or other evidence reflecting orders or directions (whether formal or informal) for the handling of any evidence pertaining to Seth Rich's or Aaron Rich's involvement in transferring data from the Democratic National Committee to Wikileaks.

> 4. Produce all documents, records, or communications exchanged with any other government agencies (or representatives of such agencies) since July 10, 2016 regarding (1) Seth Rich's murder or (2) Seth Rich's or Aaron Rich's involvement in transferring data from the Democratic National Committee to Wikileaks.

> 5. Produce all recordings, transcripts, or notes (e.g., FD-302 forms) reflecting any

interviews of Aaron Rich or any other witness regarding (1) the death of Seth Rich or (2) the transfer of data from the Democratic National Committee to Wikileaks.

6. In an August 13, 2018 letter from Assistant U.S. Attorney Kathleen Mahoney (EDNY) to Ty Clevenger pertaining to *Ty Clevenger v. U.S. Department of Justice, et al.*, Case No. 18-CV-01568 (EDNY), Ms. Mahoney wrote that she had conferred with the FBI (her client) regarding whether it assisted the Seth Rich investigation:

> *I subsequently ascertained from the FBI that as part of the search that it conducted in response to your FOIA request, the Washington, D.C. Field Office was contacted. They responded that they did not open a case or assist in the investigation and have no records.*

In an August 22, 2018 letter from Assistant U.S. Attorney Kathleen Mahoney (EDNY) to Magistrate Judge Lois Bloom in the same case, Ms. Mahoney wrote as follows:

> *Plaintiff then inquired by email on August 16, whether the FBI had searched for records with the Computer Analysis and Response Team ('CART'). On August 20, the undersigned responded by email that the FBI had advised that it did not reach out to CART because the FBI had not assisted in the investigation (the D.C. police declined the FBI's assistance) but that the searches that the FBI did conduct would have located any CART records.*

Produce all records, documents, data, or communications (e.g., text messages or telephone records) identifying the person or persons who offered FBI assistance and the person or persons who declined it on behalf of the D.C. police. Also produce the full contents of any such communications wherein the offer of assistance was made or rejected.

7. Produce all data, documents, records or communications obtained by the FBI's Computer Analysis and Response Team ('CART') regarding Seth Rich and/or Aaron Rich.

8. Produce all data, documents or records (including texts or emails) that reflect any meetings or communications from July 10, 2016 until July 10, 2017 between former FBI Deputy Director Andrew McCabe and any and all of the following: (1) Seymour Myron 'Sy' Hersh (born on or about April 8, 1937); (2) Washington, D.C. Mayor Muriel Bowser; and/or (3) former Democratic National Committee Interim Chairwoman Donna Brazile.

Docket Entry # 75, Ex. 1.

Plaintiff filed this motion after seeking the same information in a Freedom of Information Act

("FOIA") action pending in the Eastern District of New York, *Clevenger v. United States Dep't of*

*Justice*, Case No. 1:18CV1568 (the "FOIA action") and after serving on the FBI, in the context of the instant case, a subpoena duces tecum and a *Touhy* request pursuant to DOJ regulations. Plaintiff argues the DOJ improperly withheld the information sought in his *Touhy* request, by first pretending no responsive records exist and then by pretending it does not understand how such records would be relevant to Plaintiff's claims. Docket Entry # 75 at p. 6. Plaintiff further argues the information sought by the subpoena duces tecum would not be protected by the Privacy Act because it does not apply to the deceased. *Id.* at p. 7. According to Plaintiff, to the extent any records covered by the subpoena "pertain to the living," the Court should review those records *in camera* to determine whether release is warranted. *Id.*

In response to Plaintiff's motion to compel, the DOJ contends the Court does not have the power to compel the FBI to produce documents in the context of the immediate lawsuit. According to the DOJ, Plaintiff must seek judicial review through a direct action brought under the Administrative Procedures Act, 5 U.S.C. § 701 *et seq*. ("APA"). Docket Entry # 76 at p. 7. According to the DOJ, "in that separate APA action, the reviewing court may only overturn an agency's decision denying disclosure if the decision is found to be 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.'" *Id*. at pp. 7-8 (quoting 5 U.S.C. § 706(2)(A)). The DOJ argues the scope of APA review under that standard is narrow, and the reviewing court cannot substitute its judgment for that of the agency. Docket Entry # 76 at p. 8 (citing *Hasie v. Comptroller of Currency*, 633 F.3d 361, 365 (5th Cir. 2011)). The DOJ's response does not contain any substantive arguments regarding the DOJ's reasons for denying the *Touhy* request (i.e., the relevance of the requested documents or the applicability of the Privacy Act).

### III. APPLICABLE LAW

Federal agencies are permitted to promulgate regulations, known as *Touhy* regulations, governing

the disclosure of information pursuant to a request.[2] *CF Indus., Inc. v. Dep't of Justice Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 692 Fed. Appx. 177, 181 (5th Cir. 2017). The Department of Justice's regulations, set forth at 28 C.F.R. §§ 16.21 *et seq.*, provide procedures and standards that govern the production or disclosure of any material or information in its files or within the knowledge of its employees, acquired by reason of their official duties, when responding to subpoenas issued in litigation to which the DOJ is not a party. *Beckett v. Serpas*, Civil Action No. 12-910, 2013 WL 796067, at *2 (E.D. La. Mar. 4, 2013) (citing 28 C.F.R. §§ 16.21–16.26). Specifically, the DOJ's *Touhy* regulations prohibit disclosures that "would reveal investigatory records compiled for law enforcement purposes, and would interfere with enforcement proceedings or disclose investigative techniques and procedures the effectiveness of which would thereby be impaired." *CF Indus.*, 692 Fed. Appx. at 181–82 (quoting 28 C.F.R. § 16.26(b)(5)). Section 16.26(a) also directs DOJ officials to consider "[w]hether such disclosure is appropriate under the rules of procedure governing the case or matter in which the demand arose" and "[w]hether disclosure is appropriate under the relevant substantive law concerning privilege." *CF Indus.*, 692 Fed. Appx. at 182 (quoting 28 C.F.R. § 16.26(a)).

# IV. DISCUSSION

## A. Background facts

---

[2] The term "*Touhy* request" comes from the Supreme Court decision, *United States ex rel. Touhy v. Regan*, 340 U.S. 462 (1951). *Upsher-Smith Labs., Inc. v. Fifth Third Bank*, Civil Action No. 16-CV-556 (JRT/HB), 2017 WL 7369881, at *2 n. 1 (D. Minn. Oct. 18, 2017). In that case, the Supreme Court ruled that an FBI agent could not be held in contempt for refusing to obey a subpoena based on instructions given to him by the Attorney General of the United States pursuant to the regulations the DOJ has enacted under the Federal Housekeeping Statute. *Id.* In so doing, the Supreme Court upheld the validity of agency regulations under the Federal Housekeeping Statute which constrain agency employees' authority to produce documents and information in response to a subpoena. *Id.*

1.      **Plaintiff's FOIA action**

By letter dated September 1, 2017, Plaintiff submitted a FOIA request to the FBI seeking all

records and correspondence pertaining to Seth Rich, who was murdered in the District of Columbia on or

about July 10, 2016.  Docket Entry # 75, Ex. 5 (Declaration of David M. Hardy ("Hardy Decl."), ¶ 5,

attached to August 8, 2019 letter from DOJ regarding Plaintiff's second *Touhy* letter).  By letter dated

September 19, 2017, the FBI advised Plaintiff it was unable to identify main file records responsive to his

FOIA request.  Hardy Decl., ¶ 6. On September 30, 2017, Plaintiff submitted an administrative appeal of

the FBI's September 19, 2017 determination, alleging the FBI improperly limited its search to the Central

Records System ("CRS") for main file records.  *Id.*, ¶ 7. Additionally, Plaintiff noted any responsive

records would likely be found in emails, hard copy documents, and other files in the FBI's Washington

Field Office; therefore, the FBI should be directed to conduct a thorough search, to include emails and

other records in the Washington Field Office.  *Id.*

By letter executed on November 9, 2017, the Office of Information Policy ("OIP") advised Plaintiff

it affirmed the FBI's determination. *Id.*, ¶ 9. OIP advised Plaintiff of his right to file a lawsuit in federal

district court if he was dissatisfied with its action on appeal. *Id.*  On March 14, 2018, Plaintiff filed a

complaint in the Eastern District of New York, Cause No. 1:18-cv-01568-WFK-LB. *Id.*, ¶ 10; *see also*

Docket Entry # 75, Ex. 5 (August 8, 2019 letter from AUSA Russ regarding Plaintiff's second *Touhy*

letter).

2.      **Plaintiff's *Touhy* request in this lawsuit**

Plaintiff filed this case on October 16, 2018. Docket Entry # 1.  On July 3, 2019, Plaintiff's counsel

sent a cover letter and subpoena duces tecum to the United States Attorney. Docket Entry # 76, Ex. A.

On July 23, 2019, the United States Attorney, through his designee, wrote Plaintiff's counsel to request that

he provide a summary of the information sought and its relevance to the proceedings, in accordance with

the DOJ's *Touhy* regulations. Docket Entry # 76, Ex. B (July 23, 2019 letter from AUSA Russ regarding

Plaintiff's first *Touhy* letter (citing 28 C.F.R. § 16.22(d))). Plaintiff's attorney provided the requested

summary on July 26, 2019. Docket Entry # 76, Ex. C; *see also* Docket Entry # 75, Ex. 4.

In his July 26 letter, Plaintiff's counsel explained how the requested documents related to the

immediate lawsuit and the related case of *Butowsky v. Gottlieb*, Cause No. 4:18-cv-18-ALM-KPJ (E.D.

Tex.). According to Plaintiff, both cases "are centered on the same key question: whether the Rich brothers

were responsible for transferring emails to Wikileaks."[3] Docket Entry # 75-4 at p. 1. Plaintiff states

Request Nos. 1-7 contained in the previously-submitted subpoena are targeted to this central question.

*Id.* at p. 2. Plaintiff further states Request No. 8 seeks information about what role former FBI Deputy

Director Andrew McCabe played in concealing information about the Rich brothers, as that information

"is pertinent to Paragraphs 43 and 57 of the *Gottlieb* FIRST AMENDED COMPLAINT." *Id.*

Following a review of the July 26 *Touhy* summary, the United States Attorney's designee denied

the request. Docket Entry # 76, Ex. D (August 8, 2019 letter from AUSA Russ regarding Plaintiff's second

---

[3] Plaintiff states he has "said publicly since 2017 that the Rich brothers (rather than Russian hackers) where responsible for transferring embarrassing emails from the DNC to Wikileaks," and since that time, Plaintiff "has been portrayed as a liar and a conspiracy theorist, and he has filed defamation claims against multiple defendants who accused him of fabricating the story about the Rich brothers." Docket Entry # 75-4 at p. 1. The letter further provides that Plaintiff informed his attorney of the following: (1) Plaintiff "was informed by someone with access to FBI records that the FBI's Computer Analysis and Response Team ('CART') took custody of Seth's electronic devices and downloaded evidence from those devices;" and (2) Plaintiff was further told "the evidence included communications between Mr. Rich and Wikileaks." *Id.*

*Touhy* letter (the "*Touhy* Denial Letter")). In the *Touhy* Denial Letter disallowing the production of

documents, the United States Attorney raised the following objections and considerations:

- The request sought the same records that Mr. Clevenger has requested in a FOIA action pending in the Eastern District of New York, *Clevenger v. United States Dep't of Justice*, Case No. 1:18CV1568, in the Eastern District of New York;

- The request sought information that was irrelevant to the pending litigation, and was therefore not permissible under FED. R. CIV. P. 26(b)(1);

- The burdensomeness of the request outweighed any possible benefit from its production, again violating FED. R. CIV. P. 26(b)(1);

- Regardless of the relevancy of the request, no responsive documents existed; and

- The request sought information that implicated the Privacy Act, 5 U.S.C. § 225a.

*Id*.

**B.    Analysis**

**1.    Whether Plaintiff must file a separate lawsuit under the Administrative Procedures Act**

According to the DOJ's response, Plaintiff must seek judicial review through a direct action brought

under the APA.[4] Docket Entry # 76 at p. 7. In his corrected reply, Plaintiff asserts neither *Hasie* nor *CF*

*Industries*, the two Fifth Circuit cases relied upon by the DOJ, deal with subpoenas issued under Federal

---

[4] Under the APA, Congress enacted a broad waiver of the sovereign immunity of the United States "with regard to all actions that seek 'relief other than money damages.'" *Upsher-Smith Labs*., 2017 WL 7369881, at *5 (quoting *Linder v. Calero–Portocarrero*, 251 F.3d 178, 180 (D.C. Cir. 2001) (quoting 5 U.S.C. § 702)). Because a motion to compel is an action that seeks relief other than money damages, the government consents to it under the express terms of the APA. *Upsher-Smith Labs*., 2017 WL 7369881, at *5 (citing 5 U.S.C. § 702). Further, numerous circuit courts have agreed that the government cannot hide behind broad assertions of sovereign immunity to avoid a third party subpoena given the explicit waiver of sovereign immunity contained in the APA. *Upsher-Smith Labs*., 2017 WL 7369881, at *5 (citing *Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 778 (9th Cir. 1994); also citing *COMSAT Corp. v. Nat'l Sci. Found*., 190 F.3d 269, 274 (4th Cir. 1999); also citing *Northrop Corp. v. McDonnell Douglas Corp*., 751 F.2d 395, 398 n. 2 (D.C. Cir.1984)).According to the district court in *Upsher-Smith*, the DOJ may be compelled to produce information sought by a Rule 45 subpoena provided the movant can establish the DOJ has improperly withheld the information. *Upsher-Smith Labs*., 2017 WL 7369881, at *4-*5.

13

Rule of Civil Procedure 45. Docket Entry # 78 at p. 2. Plaintiff points out the underlying litigation in both cases occurred in state court, "therefore the respective plaintiffs filed claims in federal court pursuant to the" APA. *Id.* According to Plaintiff, "[i]t is well-established that state court parties may not issue state-court subpoenas on federal entities or personnel. . . . That issue is, however, completely irrelevant to this case." *Id.* at pp. 2-3. Plaintiff asserts the relevant question is whether a federal entity such as the FBI is subject to a subpoena issued pursuant to Rule 45.

In *Beckett v. Serpas*, the plaintiff, a former New Orleans Police officer, brought an action in the Eastern District of Louisiana pursuant to 42 U.S.C. § 1983 and Louisiana state law, alleging the Superintendent of the New Orleans Police Department ("NOPD") and the City of New Orleans violated her federal and state constitutional free speech rights. *Beckett*, 2013 WL 796067, at *1. The plaintiff alleged the defendants terminated her employment in retaliation for her having testified in the defense of another NOPD officer, who was one of five NOPD officer defendants in a federal criminal prosecution in the Eastern District of Louisiana. *Id.* The plaintiff served a subpoena to depose Assistant United States Attorney Knight, one of the prosecuting attorneys in the criminal case. *Id.*

The DOJ, a non-party, declined to authorize Knight to testify and filed a motion to quash the subpoena or, alternatively, for a protective order postponing the deposition. *Id.* Among other things, the DOJ argued the plaintiff could obtain judicial review of its decision "only by filing a separate lawsuit against the United States under the Administrative Procedures Act. . . ." *Id.* at *3. The plaintiff argued, similar to Plaintiff here, that unlike the cases cited by the DOJ "in which the subject subpoenas were issued by a state court, her litigation ha[d] proceeded entirely in federal court, where the United States has waived its sovereign immunity." *Id.*

14

The court noted the APA includes a waiver of sovereign immunity for challenges to executive

agency decisions:

> A person . . . adversely affected or aggrieved by agency action . . . is entitled to judicial
> review thereof. An action in a court of the United States seeking relief other than money
> damages and stating a claim that an agency or an officer or employee thereof acted or
> failed to act in an official capacity or under color of legal authority shall not be dismissed
> nor relief therein be denied on the ground that it is against the United States. . . .

*Id.* (quoting 5 U.S.C. § 702). Under this standard, "[a]gency actions, findings, and conclusions . . . may

be set aside only if they are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance

with law." *Beckett*, 2013 WL 796067, at *3 (quoting *Hasie*, 633 F.3d at 365 (citing 5 U.S.C. § §

706(2)(A))).

According to the court in *Beckett*, the majority of the cases cited by the government in support of

its sovereign immunity argument involved third-party subpoenas issued by a state court or an arbitrator, not

by a federal court. *Beckett*, 2013 WL 796067, at *3. In finding the cases were not on point, the court

explained as follows:

> In these cases, the United States removed the state court's or arbitrator's orders to federal
> court, arguing that the state court or arbitrator lacked jurisdiction to issue a subpoena or
> a contempt order against a nonparty federal employee. The federal courts in these cases
> held that the United States had not waived its sovereign immunity as to the underlying state
> court litigation or arbitration. Therefore, the party who had requested the subpoena could
> seek review of the agency's refusal to comply with the subpoena by filing a separate action
> against the agency in federal court under the Administrative Procedures Act. Such an
> action is a state court litigant's only recourse.

*Id.* (citing *State of La. v. Sparks*, 978 F.2d 226, 235–36 (5th Cir. 1992); also citing *COMSAT Corp.

v. Nat'l Sci. Found.*, 190 F.3d 269 (4th Cir. 1999); also citing *Swett v. Schenk*, 792 F.2d 1447, 1452

(9th Cir. 1986)).

15

According to the *Beckett* court, the United States's "sovereign immunity was implicated in these cases, and judicial review was available only in a separately filed action under the Administrative Procedures Act, because the state court or arbitrator lacked jurisdiction to enforce its subpoena against a federal employee." *Beckett*, 2013 WL 796067, at *3. However, when a subpoena is issued to a nonparty federal employee by a federal court, "the courts have generally held that sovereign immunity does not preclude the subpoena and that the party seeking to enforce the subpoena is not required to file a separate suit under the Administrative Procedures Act." *Id*. at *4. The *Beckett* court noted another court in the Eastern District of Louisiana had previously analyzed the case law and explained that while the cases differ on the applicable standard of review "*nearly every court faced with this issue has determined that sovereign immunity does not insulate a federal agency from complying with a Rule 45 subpoena*." *Id.* at *5 (quoting *In re Vioxx Prods. Liab. Litig*., 235 F.R.D. 334, 343 (E.D. La.2006)) (emphasis added in *Beckett*).

The court in *Beckett* found the United States had waived its sovereign immunity; the court had jurisdiction over the merits of the DOJ's decision, and the plaintiff did not need to file a separate lawsuit to obtain review of the DOJ's response to the subpoena. *Beckett*, 2013 WL 796067, at *6. In *Samadian v. Meade*, Civil Action No. 3:10-CV-851-P, 2011 WL 13180181 (N.D. Tex. Dec. 22, 2011), *aff'd*, 494 Fed. Appx. 490 (5th Cir. 2012), another court within the Fifth Circuit likewise found a separate federal action to review an agency's denial of *Touhy* requests is not required.[5] *Id*. at *8.

---

[5] The court noted the issue is unsettled within the Fifth Circuit. *Samadian*, 2011 WL 13180181, at *8. According to the court, the Fifth Circuit held in *Hasie v. Office of the Comptroller of the Currency of the U.S.*, 633 F.3d 361, 365 (5th Cir. 2011), that judicial review of an administrative agency's denials of *Touhy* requests are governed by the APA. *Samadian*, 2011 WL 13180181, at *7. However, the court in *Samadian* further noted that while the plaintiff in *Hasie* filed a separate federal action for review of the agency's decision to withhold documents, the Fifth Circuit did not discuss

16

Here, the underlying matter originated in federal court, and therefore, sovereign immunity does not preclude the Court from considering whether Plaintiff's subpoena should be enforced. *See Lamb v. Wallace*, Civil Action No. 7:16-CV-44-FL, 2018 WL 847242, at *3 (E.D.N.C. Feb. 13, 2018). Consistent with *Beckett* and *Samadian*, and with no contrary Fifth Circuit precedent, the Court concludes Plaintiff does not need to initiate a collateral action to review the DOJ's refusal to comply with the subpoena issued pursuant to Federal Rule of Civil Procedure 45 and in compliance with the applicable *Touhy* regulations. However, the appropriate standard of review remains an issue.

## 2. Whether the proper standard of review is found in the Federal Rules of Civil Procedure or the APA

The DOJ argues that, even if the Court does not agree Plaintiff must file a separate lawsuit, the arbitrary and capricious standard of review set forth in the APA still applies. Under that standard, Plaintiff has the burden to show the DOJ's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Beckett*, 2013 WL 796067, at *6 (quoting 5 U.S.C. § 706(2)(A)).

In his corrected reply, Plaintiff argues the "greater weight of authority suggests . . . Rule 45 standards apply to Rule 45 subpoenas." Docket Entry # 78 at p. 4. Plaintiff further asserts he should prevail under either standard. According to Plaintiff, the DOJ does not dispute the relevance of the records nor has it suggested "the requested records are covered by some sort of exemption or privilege. Instead, the FBI has refused (in a separate FOIA case) to search for the documents in the places where they are most likely to be found." *Id.*

---

whether a separate judicial action is required. *Id.* at *8, n.8. "Additionally, the underlying lawsuit in which the *Touhy* request was denied in *Hasie* was in state court." *Id.* (citing *Hasie*, 633 F.3d at 364). Finally, the court in *Samadian* noted other circuits have held that a separate action is not required. *Samadian*, 2011 WL 13180181, at *8, n. 8.

17

The court in *Upsher-Smith* noted the movant and the DOJ disagreed about the applicable standard of judicial review of the DOJ's denial of the movant's *Touhy* request. *Upsher-Smith Labs.*, 2017 WL 7369881, at *6. After noting the Eighth Circuit Court of Appeals had "yet to address the appropriate standard of review for reviewing the validity of a federal agency's decision to withhold information responsive to a Rule 45 subpoena or a *Touhy* request," the court looked to "persuasive authority in other jurisdiction" and noted the courts of appeals are split on the issue. *Id*. The court summarized the split as follows:

> In one camp, the Ninth and D.C. Circuits hold that courts should review agency decisions to withhold information under the Federal Rules of Civil Procedure, including their privilege and undue burden standards. *Watts v. SEC*, 482 F.3d 501 (D.C. Cir. 2007); *Exxon Shipping Co.*, 34 F.3d at 780. In the other camp, the First, Second, Fourth, Seventh, and Eleventh Circuits hold that courts should review agency decisions to withhold information under the APA's arbitrary and capricious standard, which is a more deferential standard that upholds an agency decision unless it is found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. *Puerto Rico v. United States*, 490 F.3d 50, 61 (1st Cir. 2007); *COMSAT Corp.*, 190 F.3d at 277; *Edwards v. U.S. Dep't of Justice*, 43 F.3d 312, 316 (7th Cir. 1994); [*U.S. E.P.A. v.*] *Gen. Elec.*, 197 F.3d [592, 599 (2d Cir. 1999)]; *Moore v. Armour Pharm. Co.*, 927 F.2d 1194, 1197 (11th Cir. 1991); *see also* 5 U.S.C. § 706(2)(A).

*Id.*

The court in *Upsher-Smith* explained the "former camp takes the view that the Federal Rules of Civil Procedure provide the standard of review to guide the court's review of a federal agency's decision to not provide information in response to a subpoena." *Id.* "According to proponents of this position, the Federal Rules of Civil Procedure give courts discretion under the protective provisions of Rules 45 and 26 to order or prevent disclosures relating to privilege, the imposition of an undue burden, and relevance." *Id*. (citing *Linder v. Calero–Portocarrero*, 251 F.3d 178, 180 (D.C. Cir. 2001)). "That a different source

18

of law, namely the APA, provides the basis for an action against the government in this context, they argue, does not mean the Federal Rules of Civil Procedure should be disregarded." *Id*. According to the *Upsher-Smith* court, these cases hold "Rule 45 may nonetheless apply because federal agencies are within the meaning of the term 'persons' in the text of the Rule and thus are covered by its provisions." *Upsher-Smith Labs*., 2017 WL 7369881, at *6 (quoting *Watts*, 482 F.3d at 508 ("[A] challenge to an agency's refusal to comply with a Rule 45 subpoena should proceed and be treated not as an APA action but as a Rule 45 motion to compel")).

"The latter camp asserts that the APA 'arbitrary and capricious' standard should govern the Court's review of a federal agency's decision to not provide information in response to a subpoena," and "courts in that camp insist that the APA provides the sole basis for a federal court to review a federal agency's refusal to comply with a subpoena." *Upsher-Smith Labs*., 2017 WL 7369881, at *7 (citing *COMSAT*, 190 F.3d at 274). "By this camp's logic, when a statute provides the basis for relief, and the statute also supplies the standard for courts to apply when granting the relief sought, courts should apply the standard provided in the statute and not some other source of law."[6] *Id.*

According to the court in *Upshur-Smith*, although the Eighth Circuit had not specifically embraced a particular standard of review, "an Eighth Circuit decision appears to support following the plurality approach and assessing the validity of a federal agency's refusal to comply with a subpoena under the arbitrary and capricious standard." *Id.* (discussing *Elnashar v. Speedway Super America, L.L.C.*, 484 F.3d 1046 (8th Cir. 2007)). After careful consideration of the relevant case authority, the court in *Upshur-*

---

[6] Section 706 of the APA provides the standard of review for courts to apply when reviewing final agency action. *Upsher-Smith Labs*., 2017 WL 7369881, at *7.

19

*Smith* concluded that "APA § 706 provides the appropriate standard." *Upsher-Smith Labs.*, 2017 WL 7369881, at *7. "Under that standard, a reviewing court may set aside agency action only when it is found to be 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Id.* (quoting 5 U.S.C. § 706).

In *Beckett*, the court noted the Fifth Circuit Court of Appeals had not ruled on the proper standard of review when a private litigant causes the federal court to issue a subpoena to a non-party federal employee. *Beckett*, 2013 WL 796067, at *7. In that case, similar to the argument before the Court here, the DOJ relied on prior Fifth Circuit cases that arose out of a state court-issued subpoena and argued those cases indicate the Fifth Circuit would apply the arbitrary and capricious standard in the context of a federal-court subpoena. *Id.* The *Beckett* court noted the above-mentioned split of authority among the appeals courts. *Id.* The court further noted some district courts, "lacking guidance from their own circuit court of appeal, have adopted one or the other standard used in other circuits," with the majority of the more recent decisions at that time holding the agency's denial of a *Touhy* request, as with any objection to a third-party subpoena, is properly analyzed under Federal Rules of Civil Procedure 26 and 45. *Id.* at *8 (citations omitted).

According to the court in *Beckett*, other district courts have declined to decide the question and have analyzed the cases before them either under both standards where both would lead to the same result, "or under whichever standard is more favorable to the ultimately losing party, since the result would presumptively be the same under the other standard that is less deferential to that party." *Id.* The *Beckett* court declined to decide which standard the Fifth Circuit would adopt and instead applied the APA standard, which is more deferential to the DOJ. *Beckett*, 2013 WL 796067, at *8. Even under the more

20

deferential standard of the APA, the court found the DOJ acted arbitrarily and abused its discretion in refusing to produce the prosecuting attorney to testify. *Id.*

Another court in Louisiana was not persuaded the Fifth Circuit had made any clear choice on the issue, but unlike those courts that avoid making a decision, it was "persuaded that the courts that have applied the APA standard have the better argument." *Palmer v. Hawkins*, Civil Action No. 09-MC-0019, 2009 WL 3230750, at *3 (W.D. La. Oct. 2, 2009) (citing *U.S. EPA v. General Electric*, 197 F.3d at 598). That court also followed the APA approach and concluded the agency's decision was not arbitrary and capricious. *Id.* at *3-*4.

Similarly here, the Court will apply the APA standard. Thus, to prevail on this motion, Plaintiff must show that in refusing to comply with the subpoena and rejecting the *Touhy* request, the DOJ acted in a way that was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

### 3. Whether the DOJ's refusal to produce the requested documents was arbitrary and capricious

### a. The APA standard

Section 706 provides a narrow standard of review. *Upsher-Smith Labs.*, 2017 WL 7369881, at *7 (citing *Marsh v. Oregon Nat. Res. Council*, 490 U.S. 360, 378 (1989)). "An agency decision is arbitrary or capricious if [ ] the agency . . . entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Upsher-Smith Labs.*, 2017 WL 7369881, at *7 (quoting *Nat'l Parks Conservation Ass'n v. McCarthy*, 816 F.3d 989, 994 (8th Cir. 2016)). When reviewing "agency decisions under the arbitrary and capricious

21

standard, we cannot substitute our judgment or preferences for that of the agency. To affirm an agency's action, we need only find a rational explanation for how the [agency] reached its decision." *Patterson v. Def. POW/MIA Accounting Agency*, 398 F. Supp. 3d 102, 125 (W.D. Tex. 2019) (quoting *Associated Builders & Contractors of Texas, Inc. v. Nat'l Labor Relations Bd.*, 826 F.3d 215, 224-25 (5th Cir. 2016) (citation omitted)). "[T]here is a presumption that the agency's decision is valid, and the plaintiff has the burden to overcome that presumption by showing that the decision was erroneous." *Patterson*, 398 F. Supp. 3d at 125 (quoting *Tex. Clinical Labs, Inc. v. Sebelius*, 612 F.3d 771, 775 (5th Cir. 2010)).

"In addition to a prohibition on arbitrary or capricious action, the APA prohibits agency action that is 'not in accordance with law,' 5 U.S.C. § 706(2)(A), or is carried out without following procedures prescribed by statute." *Am. Stewards of Liberty v. Dep't of the Interior*, 370 F. Supp. 3d 711, 724 (W.D. Tex. 2019) (citing 5 U.S.C. § 706(2)(D); also citing *FCC v. Next Wave Personal Communications Inc.*, 537 U.S. 293, 300, 123 S.Ct. 832, 154 L.Ed.2d 863 (2003) ("The Administrative Procedure Act requires federal courts to set aside federal agency action that is "not in accordance with law," 5 U.S.C. § 706(2)(A)—which means, of course, any law, and not merely those laws that the agency itself is charged with administering.")).

**b.     DOJ's *Touhy* Regulations**

DOJ's *Touhy* "regulations are 'intended only to provide guidance for the internal operations of the Department of Justice, and [are] not intended to, and [do] not, and may not be relied upon to create any right or benefit, substantive or procedural, enforceable at law by a party against the United States.'" *Lamb*, 2018 WL 847242, at *5 (quoting *Smith v. Cromer*, 159 F.3d 875, 880 (4th cir. 198) (alterations in original) (quoting 28 C.F.R. § 16.21(d))). However, these internal regulations, promulgated under the

22

federal "housekeeping statute," 5 U.S.C. § 301, also create no substantive rights in favor of the government. *Lamb*, 2018 WL 847242, at *5. There is no "independent privilege to withhold government information or shield federal employees from valid subpoenas" that arise from the regulations. *Id.* (quoting *General Electric*, 197 F.3d at 598 (quoting *Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 780 (9th Cir. 1994))). Nor could there be, as § 301 expressly provides it "does not authorize withholding information from the public or limiting the availability of records to the public." *Lamb*, 2018 WL 847242, at *5 (quoting 5 U.S.C. § 301; also citing *Houston Bus. Journal, Inc. v. Office of Comptroller of Currency*, 86 F.3d 1208, 1212 (D.C. Cir. 1996) ("[N]either the Federal Housekeeping Statute nor the *Touhy* decision authorizes a federal agency to withhold documents from a federal court.")).

c.    **The DOJ's *Touhy* Denial Letter**

     ***Pending FOIA action***

     The DOJ's *Touhy* Denial Letter first referenced the FOIA action still pending in the Eastern District of New York, directing Plaintiff's counsel's attention to the Declaration of David Hardy which had been filed in the FOIA action and suggesting Mr. Hardy's testimony proved the FBI had no records regarding Seth Rich. Docket Entry # 76, Ex. D at p. 1. The DOJ has not argued in its response to Plaintiff's motion to compel that the pendency of a FOIA action would mandate the denial of a *Touhy* request regarding the same information. Clearly, FOIA requests are different and distinct from *Touhy* requests and both are governed by two separate standards, regulations and procedures.[7] *Benhoff v. United States Dep't of*

---

[7] FOIA requires every agency "upon any request for records which . . . reasonably describes such records" to make such records "promptly available to any person." *Benhoff*, 2016 WL 6962859, at *3 (quoting 5 U.S.C. § 552(a)(3)). There are nine categories of documents exempted from disclosure under FOIA. *Benhoff*, 2016 WL 6962859, at *2 (citing 5 U.S.C. § 552(b)). "If an agency improperly withholds any documents, the district court has jurisdiction to order their production." *Benhoff*, 2016 WL 6962859, at *2 (quoting *U.S. Dep't. of Justice v. Reporters Comm. for Freedom of Press*,

*Justice*, Civil Action No. 16CV1095-GPC (JLB), 2016 WL 6962859, at *2 (S.D. Cal. Nov. 29, 2016).

As noted above, the DOJ attached to the *Touhy* Denial Letter the October 3, 2018 Declaration of David Hardy, Section Chief of the Record/Information Dissemination Section ("RIDS"), Information Management Division ("IMD"), of the FBI, which the DOJ filed in the FOIA action. Hardy Decl., ¶ 1. Apparently, the court in the FOIA action ordered the FBI to provide the court and Plaintiff "with an explanation of its recordkeeping system, the procedures it used to search for potentially responsive records to Plaintiff's request, and to confirm it located no records responsive to Plaintiff's FOIA request to the FBI seeking all records and correspondence pertaining to Seth Conrad Rich (deceased)." *Id.*, ¶ 4.

In his declaration filed in response to the court's order, Mr. Hardy stated he is "familiar with the FBI's handling of Plaintiff's FOIA request for records concerning Seth Conrad Rich (deceased)." *Id.*, ¶ 3. Mr. Hardy further explained the Central Records System ("CRS") is an "extensive system of records consisting of applicant, investigative, intelligence, personnel, administrative, and general files compiled and maintained by the FBI in the course of fulfilling its integrated missions and functions as a law enforcement, counterterrorism, and intelligence agency to include performance of administrative and personnel functions." *Id.*, ¶ 11. According to Mr. Hardy, the CRS spans the entire FBI organization and encompasses the records of FBI Headquarters and FBI Field Offices. *Id.*

The declaration further provides as follows. The CRS is indexed in a manner which allows FBI personnel to "reasonably and adequately locate pertinent files in the performance of their law enforcement duties." *Id.*, ¶ 13. The entries in the general indices fall into two category types: (1) main entry (pertaining

489 U.S. 749, 756 (1989)).

to records indexed to the main subject(s) of a file, known as "main file" records); and (2) reference entry (pertaining to records that mention or reference an individual, organization, or other subject matter that is contained in a "main" file record). *Id.* The FBI does not index every individual name or other subject matter in the general indices. *Id.*, ¶ 14.

Automated Case Support ("ACS") is an electronic, integrated case management system that became effective on October 1, 1995. *Id.*, ¶ 15. The Universal Index ("UNI") is the automated index of the CRS and provides all offices of the FBI a centralized, electronic means of indexing pertinent investigative information to FBI files for future retrieval via index searching. *Id.*, ¶ 16. According to Mr. Hardy, "a UNI index search in ACS is capable of locating FBI records created before its 1995 FBI-wide implementation to the present day in both paper and electronic format." *Id.* "Sentinel is the FBI's next generation case management system that became effective FBI-wide on July 1, 2012." *Id.*, ¶ 17. Sentinel did not replace ACS and its relevance but "builds on ACS and shares its operational purpose; Sentinel provides another portal to locate information within the vast CRS for FBI records generated on or after July 1, 2012." *Id.*

In response to Plaintiff's FOIA request dated September 1, 2017, RIDS first conducted an index search of the CRS, using "Seth Conrad Rich" or combinations of the name, for responsive main and reference file records employing the UNI application of ACS. *Id.*, ¶ 19. These searches located no main or reference records responsive to Plaintiff's FOIA request. *Id.*

Subsequently, the FBI conducted additional searches of the CRS via the UNI application of ACS and a Sentinel index search for both main and reference file records. *Id.*, ¶ 20. The FBI used the same search terms it used in its original searches, and the search resulted in no main or reference file records

25

being located. *Id.*

In addition to the above search efforts, and prior to Plaintiff's FOIA action or appeal thereof, the FBI contacted the Washington Field Office ("WFO") on June 21, 2017, and "confirmed WFO did not open an investigation into the murder of Seth Conrad Rich, as the matter was under investigation by the Metropolitan Police Department ('MPD')." *Id.*, ¶ 22. According to Mr. Hardy, soon after Rich's murder, "WFO Criminal Division contacted MPD and offered its assistance; however, MPD declined the offer." *Id.* On April 24, 2018, "the FBI again performed its due diligence and contacted WFO regarding records responsive to Plaintiff's [FOIA] request on Seth Conrad Rich." *Id.*, ¶ 23. "WFO again confirmed they did not assist MPD, provide investigative or technical assistance (including Computer Analysis and Response team [CART] assistance) to MPD, or open an FBI investigation into the murder of Seth Conrad Rich." *Id.*

Mr. Hardy represented in a footnote that if responsive CART records existed, "they would have been located through the FBI's CRS searches." *Id.* at p. 9, n. 6. Based on Plaintiff's suggestion that the FBI should conduct an email search in the WFO to locate responsive records, Mr. Hardy asserted there was no reasonable basis to conclude that responsive records would be located by a search of FBI email systems in its WFO. *Id.*, ¶ 24.

Despite the DOJ's suggestion in its response to Plaintiff's motion to compel that "no responsive documents exist," the Court notes the DOJ did not independently state in the *Touhy* Denial Letter that no responsive documents exist in the possession of the FBI after a reasonable search for such documents. *See* Docket Entry # 76 at p. 6. Rather, the DOJ stated the FBI had previously informed Plaintiff's counsel in the FOIA action that it had not located responsive documents, which appear to be the same records sought

26

by the *Touhy* request in this action. Docket Entry # 75-5 at p. 3. In its reference to the FOIA action in the

*Touhy* Denial Letter, the DOJ noted that in the FBI's response to Plaintiff's separate FOIA request, Mr.

Hardy stated in his declaration that "[t]he FBI conducted an adequate and reasonable search for records

responsive to [your] FOIA request; however no records were located." *Id.* at p. 2 (citing Hardy Decl.,

¶ 25). The DOJ further noted Mr. Hardy explained the FBI did not investigate the murder of Seth Rich.

*Id.* (citing Hardy Decl., ¶ 23). According to the *Touhy* Denial Letter, it was the understanding of the DOJ

that AUSA Kathleen Mahoney (EDNY) informed Plaintiff's counsel in email correspondence that the FBI

did not investigate the Seth Rich murder.[8]  Docket Entry # 75-5 at p. 2.

     In his motion to compel filed in this case, Plaintiff argues the FBI clearly has records pertaining to

Seth Rich, and it has withheld those records in bad faith.  Docket Entry # 75 at p. 3. According to

Plaintiff's counsel, after the DOJ sent the *Touhy* Denial Letter on August 8, 2019, counsel "obtained clear

evidence that Mr. Hardy and the FBI acted in bad faith in the FOIA litigation, namely by refusing to search

for information about Seth Rich in the two places where such information would be found:" WFO and

CART. *Id.* at p. 4. Specifically, Plaintiff references an episode of an August 2019 podcast series about

the Seth Rich murder called "Conspiracyland," wherein Michael Isikoff of *Yahoo!News* interviewed former

AUSA Deborah Sines. *Id.*  Plaintiff's motion contains the following from episode 5 of that podcast, which

---

    [8] Subpoena Request No. 6 references email correspondence from Ms. Maloney.  Plaintiff states he inquired by
email on August 16, 2018 whether the FBI had searched for records with CART.  According to Request No. 6, Ms.
Maloney represented to the court in the FOIA action that on August 20, 2018, she responded by email that the FBI had
advised that it did not reach out to CART because the FBI had not assisted in the investigation (the D.C. police declined
the FBI's assistance) but that the searches that the FBI did conduct would have located any CART records.
    Based on this predicate to Request No. 6, Plaintiff's counsel seeks the production of "all records, documents,
data, or communications (e.g., text messages or telephone records) identifying the person or persons who offered FBI
assistance and the person or persons who declined it on behalf of the D.C. police" as well as the production of "the full
contents of any such communications wherein the offer of assistance was made or rejected."

Plaintiff's counsel states he personally transcribed:

> Isikoff: "As soon as she heard the [Fox News] story, Sines reached out to the FBI."

> Sines: "Of course I did. Of course I did."

> Isikoff: "And what did they tell you?"

> Sines: "No."

> Isikoff: "No."

> Sines: "No. No connection between Seth and Wikileaks. And there was no evidence on his work computer of him downloading and disseminating things from the DNC."

> Isikoff: "As it turned out, there was one sliver of truth in the Fox story. **The FBI had been examining Seth's computer**, not for any ties to the DNC emails or Wikileaks, but because they saw unusual activity by a foreign hacker after his death."

> Sines: "There were allegations that someone, maybe more than one person, was trying to invade Seth's Gmail account and set up a separate account after Seth was murdered, and **the FBI was looking into that**. I presumed they were trying to create a fake Gmail account or get into Seth's Gmail account so they could dump false information in there."

> Isikoff: "So just to be clear, **the FBI** had only **investigated** an attempt to hack into Seth Rich's email when they saw activity after he died. When we contacted the Bureau's Washington Field Office, a spokesperson said it had never opened an investigation into the DNC staffer's death, pointing out that the FBI had no jurisdiction over local crimes. **Andrew McCabe**, the Bureau's acting director at the time, told us something else. He **had personally reached out to his agents** when he heard the Seth Rich conspiracy stories and was informed there was nothing to them. There was no 'there' there, McCabe said he was told."

Docket Entry # 75 at pp. 4-5 (quoting counsel's transcription of excerpt of episode 5 of "Conspiracyland")

(emphasis added by Plaintiff).

The Court does not find the above proffer is "clear evidence that Mr. Hardy and the FBI acted in bad faith in the FOIA action . . . by refusing to search for information about Seth Rich" in WFO and

CART, as urged by Plaintiff. *See* Docket Entry # 76 at p. 6. However, a review of Mr. Hardy's Declaration indicates the FBI did not search for records regarding Seth Conrad Rich in CART or in the FBI's email system in its WFO. Nor is there any indication before the Court the FBI searched for any of the other requests contained in the *Touhy* request (i.e., regarding Aaron Rich).

Assuming there may be responsive records within the possession of the FBI, the Court now focuses on the narrow issue before it: whether the DOJ, in refusing to comply with the subpoena and rejecting the *Touhy* request in this case, acted in a way that was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. Although the DOJ does not substantively address the reasons contained in the *Touhy* Denial Letter, the Court considers those reasons below.

### *Relevance/burdensomeness*

The *Touhy* Denial Letter explained that in evaluating *Touhy* requests, the agency considers whether disclosure would be appropriate under the rules of procedure and whether disclosure is appropriate under the relevant substantive law. *Id.* According to the DOJ, even if documents existed that were responsive to Plaintiff's *Touhy* requests, "disclosure is impermissible under applicable procedural and substantive law." Docket Entry # 76, Ex. D at p. 2.

Referencing the Federal Rules of Civil Procedure first, the DOJ stated it was having "a difficult time understanding why the information [Plaintiff seeks] is relevant to the causes of action [Plaintiff] asserted in both of these lawsuits in the Eastern District of Texas," both of which contain allegations of defamation, business disparagement, and civil conspiracy. *Id*. The DOJ stated Plaintiff's allegations in this lawsuit appear to focus on information that Plaintiff learned from another person purportedly having access to FBI records and do not suggest Plaintiff learned of anything concerning Seth Rich – or any of the other people

29

identified in the subpoena – directly from the FBI itself. *Id.* According to the DOJ, "it does not appear that any documents from the FBI (rather than from Mr. Butowsky's 'informant') have anything to do with your client's tort allegations." *Id.* The *Touhy* Denial Letter further stated that regardless of the relevancy of the information, the requests are not reasonably tailored as required by the Federal Rules of Civil Procedure and do not provide "any definitive information about the purported source supplying information to Mr. Butowsky's informant, such as a name, date, or office location." *Id.* Additionally, the *Touhy* Denial Letter stated that because Plaintiff's *Touhy* request seeks the same documents Plaintiff seeks in the FOIA action, "the burdensomeness of your immediate request outweighs any likely benefit." *Id.*

The Court finds the arguments on the burdensomeness of the requests without merit. It appears the DOJ's chief concerns about the requests, as articulated in the *Touhy* Denial Letter, are that Plaintiff asked for a broad range of information but did not detail why much of the information sought was relevant to the issues in the underlying litigation or provide definitive information as to the purported source supplying information to Plaintiff's informant, such as a name, date, or office location. The DOJ also expressed concerns that some of the requests would implicate the Privacy Act.[9]

The DOJ's overall conclusions appear to be reasonably supported. Plaintiff's requests are not narrowly tailored to information related to Seth Rich. In his motion, Plaintiff generally argues the information he seeks is relevant but then focuses his relevancy arguments only on Seth Rich, with no argument as to the relevance of the requests regarding Aaron Rich or others:

---

[9] In his motion to compel, Plaintiff argues information regarding Seth Rich would not be protected by the Privacy Act but concedes other information sought by the subpoena might be protected and thus would need to be reviewed *in camera* by the Court. Docket Entry # 75 at p. 7.

> One of the most fundamental fact disputes in this case is whether Seth Rich actually transferred emails from the Democratic National Committee to Wikileaks, or whether Mr. Butowsky instead helped fabricate a story that he did. . . . As the Court well knows, each side has implied that the other of lying about whether Mr. Rich was involved in the email leaks. If the FBI has records proving that he did or did not transfer the emails, that revelation alone could resolve this litigation very quickly.

Docket Entry # 75 at pp. 6-7. Plaintiff offers no argument in either his motion or his underlying *Touhy* request about the relevance of Request No. 8 (regarding Andrew McCabe's role in concealing information about the Rich brothers) with regard to the allegations contained in this case.[10]

Putting aside the requests that do not pertain to Seth Rich, the Court is not convinced the requested records regarding Seth Rich and WikiLeaks are relevant to the specific issues in this case, even under the Court's broad definition of relevance. Whether Seth Rich leaked documents to WikiLeaks appears to have little to do with whether Defendants merely republished the *Wheeler* lawsuit[11] (as Defendants have characterized this case) or about what Folkenflik knew to be true about Wheeler, Plaintiff, and/or President Trump and whether Plaintiff suffered harm as a result of Defendants' alleged conspiracy with Wigdor to arrange the facts in a misleading way to misrepresent Plaintiff's role in the Seth Rich murder investigation and the Fox News story (as Plaintiff has characterized this case).[12] *See Butowsky v. Folkenflik*, No.

---

[10] In the *Touhy* request, Plaintiff's counsel argued the information sought in that request was pertinent to two paragraphs contained in the complaint in a different case pending in this district.

[11] Rod Wheeler brought a cause of action in the Southern District of New York, asserting claims for defamation *per se* and, in the alternative, defamation and libel *per quod*, against Fox News Network LLC ("Fox News") and its parent company, Zimmerman, and Butowsky. *Wheeler v. Twenty-First Century Fox*, 322 F. Supp. 3d 445, 449 (S.D.N.Y. 2018). Wheeler's allegations principally arose out of Fox News's coverage of his investigation into the murder of Seth Rich, "a former Democratic National Committee ('DNC') employee who was rumored to have leaked sensitive, private emails from DNC servers to WikiLeaks." *Id.* On August 2, 2018, the court granted the defendants' motions to dismiss for failure to state a claim. *Id.*

[12] As suggested by the DOJ, throughout his complaint, Plaintiff's allegations focus on Rod Wheeler and his investigation of Seth Rich's murder, minimizing Plaintiff's role in that investigation. *See* Docket Entry # 76 at p. 5, n. 1.

4:18CV442, 2019 WL 3712026, at *16 (E.D. Tex. Aug. 7, 2019).

Even if some of the requested information is potentially relevant (i.e., documents regarding Seth Rich's murder (part of Request No. 4) or documents regarding any offers of FBI assistance in the murder investigation (Request No. 6)), relevance is not the only consideration. *See Agility Pub. Warehousing Co. K.S.C.P. v. U.S. Dep't of Def.*, 246 F. Supp. 3d 34, 44 (D.D.C. 2017). In *Agility*, the court noted the plaintiff treated this case as if it was an "ordinary civil discovery dispute, in which the thumb is on the scale in favor of more production rather than less," whereas the case was an APA case, wherein the decision about production rests with the agency based on the factors provided in agency's *Touhy* regulations. *Id*. According to the court in *Agility*, even if the information sought by the plaintiff was relevant to the underlying litigation, the plaintiff would not automatically be entitled to the depositions it had requested. *Id*. The court concluded the agency articulated rational reasons for denying the litigation-related requests: they were not relevant, or even if they were relevant, they were cumulative of information the government had already produced, would run afoul of agency's regulations regarding expert testimony, or the information was already publicly available. *Id*.

Here, the DOJ raised rational concerns in the *Touhy* Denial Letter and ultimately declined to produce documents in response to the subpoena, noting the FBI had already conducted some searches for the records in the context of the FOIA action. The Court finds those searches were adequate. The DOJ's briefing does not indicate the agency's decision in this case was reached upon a misapplication of its regulations, runs contrary to the evidence before it, and failed to consider important aspects of the problem, namely the seriousness of the action Plaintiff has brought, the posture of that action, and the relevance to that lawsuit of the information sought from the FBI. The Court does not find the DOJ's refusal to comply

with Plaintiff's subpoena was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance

with law.

Based on the foregoing analysis, it is hereby

**ORDERED** that Plaintiff's Motion to Compel (Docket Entry # 75) is **DENIED.**

**SIGNED this 13th day of December, 2019.**

CAROLINE M. CRAVEN
UNITED STATES MAGISTRATE JUDGE