UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AARON RICH,

Plaintiff,

v.

EDWARD BUTOWSKY,
MATTHEW COUCH
AMERICA FIRST MEDIA,
Defendants.

Case No. 1:18-cv-00681-RJL
Honorable Richard J. Leon

## DEFENDANTS' REPLY TO OPPOSITION TO MOTION TO EXTEND OR STAY DISCOVERY

EDEN P. QUAINTON, ESQ. (D.C. Bar No. NY0318)
QUAINTON LAW, PLLC
1001 Avenue of the Americas, 11th Floor
New York, New York 10018
Telephone: (212) 813-8389
*Attorneys for Defendants Edward Butowsky and Matthew Couch*

**INTRODUCTION**

With his customary hyperbole, Plaintiff sounds an all-hands on deck alarm in opposition to Defendants' reasonable motion for an extension amply warranted under the circumstances, intoning that Defendants are threatening to "bring this litigation to a halt."  Plaintiff's Opposition to Motion to Extend or Stay Discovery  (Pl.s' Opp.) at 25.  Plaintiff then claims, without evidence, that Defendants are attempting to "weaponize" Plaintiff's submission to the Court that Julian Assange's deposition was "critical, necessary and relevant." *Id.* at 35.  In a staggering display of "win-at-all-costs" callousness, Plaintiff even suggests that Defendant Butowsky's representations as to his medical condition "do not deserve the benefit of the doubt." *Id.* at 21. Finally, in an almost comical attempt to gain sympathy with the Court, Plaintiff's counsel – two of the largest and most profitable firms in the world, with an army of eight attorneys and uncounted paralegals working for a single plaintiff – actually go so far as to suggest that in the battle with a small-firm New York litigator, they are actually Plaintiff's David to Defendants' Goliath.  *Id.* at 36.[1]  As flattering as this mischaracterization is, hyperbole such as Plaintiff's usually betrays a weak hand and the present case is no exception.  Plaintiff's 36-page opposition memorandum is far too long and thoroughly unconvincing.

I.   DEFENDANTS HAVE BEEN DILIGENT UNDER THE CIRCUMSTANCES

Plaintiff go to great lengths to cast Defendants as inexcusably dilatory and not worthy of a modest extension of time.  Pl.s' Opp. at 8-25.  This attempt fails.  Plaintiff glosses over the reality of this case and the substantial discovery efforts Defendants have made, both to respond

---

[1] The Court can take judicial notice that both Boies Schiller and Willkie Farr boast profits per partner in excess of $3 million dollars and that, together, the two firms generate over $600 million in profits.  https://en.wikipedia.org/wiki/List_of_largest_United_States-based_law_firms_by_profits_per_partner.  The resources devoted to this litigation by Plaintiff's counsel, impressive as they are, represent a rounding error in monthly profits.

to Plaintiff's demands and develop their own case, despite the serious headwinds created by Mr. Couch's lack of familiarity with the legal system and Mr. Butowsky's medical condition.

**Defendants' Responses to Plaintiff's Discovery Demands**.

Mr. Couch

As a *pro se* party with very limited resources, Mr. Couch had been struggling to participate meaningfully in the litigation before counsel entered an appearance on his behalf. While *pro se* parties generally are not afforded greater indulgence that represented litigants, that is because the vast majority of the *pro se* litigants clogging the federal court system are *pro se* plaintiffs, mainly of whom are incarcerated. With a *pro se* defendant, brought into court by a Plaintiff with far greater resources, a degree of indulgence is warranted. *See, e.g*, *United States v. El-Bey*, 873 F.3d 1015, 1020 (7th Cir. 2017)(finding prejudice in judge's comments toward *pro se* defendant who was "difficult litigant").

Mr. Couch lacked familiarity with the legal system and his efforts at responding to Plaintiff's request were sufficiently unsatisfactory from Plaintiff's perspective that a motion to compel was filed against him. Dkt. 71. Mr. Couch has noted that he was not afforded due process in connection with this motion. Motion to Extend or Stay Discovery (the "Motion") at ¶ 16. Plaintiff brushes aside this serious issue of fundamental fairness by suggesting that because Mr. Butowsky was represented at the time, the violation of Mr. Couch's rights is excusable. Pl.s' Opp. at 14. This makes no sense, as the representation of a third party during an *ex parte* hearing has no bearing on the potential constitutional violation. But the important point here, however, is that the violation of Mr. Couch's rights illustrates how difficult it is for *pro se* defendants, who did not request judicial intervention in the first place, to understand and engage in the arcane system of complex civil litigation—which the present case has undoubtedly become.

In any event, since he has been represented by counsel, Mr. Couch has been diligent in responding to his discovery obligations. He has completed two separate document productions, one of which used search words specifically chosen by Plaintiff. Declaration of Eden P. Quainton, dated January 23, 2020 (the "Quainton Decl."), at ¶ 3 and Ex. 1. Mr. Couch also responded formally to Plaintiff's Interrogatories, which he had been unable to do previously because he did not understand what was requested of him in the interrogatory format, and has responded to Plaintiff's Requests for Admissions. Quainton Decl. at ¶ 4. Mr. Couch was sufficiently diligent in producing documents that his deposition was held as scheduled on December 12, 2020, with no need to adjourn the deposition as a result of any document production deficiencies. *Id.* at ¶ 5. The parties had a substantive dispute about Mr. Couch's claims of source privilege, but this debate was itself meaningfully framed by Mr. Couch's diligence in in preparing a well-labelled privilege log permitting a substantive challenge by Plaintiff. *Id.*

Mr. Butowsky

Prior to the involvement of his current counsel, and despite the medical difficulties discussed in Defendants' Motion for Extension or Stay of Discovery (the "Motion"), Mr. Butowsky had taken his obligations seriously. His former counsel produced 1429 documents in response to Plaintiff's discovery demands and Mr. Butowsky had responded to Plaintiff's interrogatories. *Id.* at ¶ 7. However, Plaintiff was dissatisfied with Mr. Butowsky's production and demanded that he conduct a more thorough document search. *Id.* at ¶ 8. Under the direction of his new counsel and a professional ESI discovery vendor, Mr. Butowsky has endeavored to satisfy Plaintiff's demands. *Id.* at ¶¶ 8 9. On December 1, 2019, Plaintiff provided a list of 61 search terms that Mr. Butowsky was to use in searching for responsive documents. *Id.* at ¶ 11. Plaintiff's 61 search terms then generated 6,452 documents representing a total of 29,920 pages,

a volume of documents that could not be reviewed in a few days. Despite this huge volume of material, counsel ensured that the documents would be reviewed as a priority matter. *Id.* at ¶ 13 and Ex. 2. The initial review was complete on January 8, 2020. Quainton Decl. at ¶ 15. It has not been possible to finalize the review because of the sudden, sharp decline in Mr. Butowsky's health discussed below.

**Defendants' Discovery Efforts**

Party Discovery

At the same time Defendants were complying with Plaintiff's demands, Defendants were also diligently pursuing their own discovery. On October 16, 2019 a first set of Interrogatories and a first set of Requests for Poductions were issued by Mr. Couch. *Id.* at ¶ 17. On November 8, 2019, a first set of Requests for Admissions was served by Mr. Couch. *Id.* at ¶ 18, On November 21, 2019, Mr. Butowsky served his Second Set of Interrogatories, his first Request for Production and his first Requests for Admissions. *Id.* at ¶ 19. In response to Defendants' requests, Plaintiff has produced close to 4,000 pages of documents in six "rolling" productions, the most recent of which occurred on January 13, 2020. *Id.* at ¶ 20. Reviewing, absorbing, digesting and categorizing these documents has required substantial time and effort. *Id.*

Defendants Third-Party Discovery

Defendants have also been diligent in pursuing third-party discovery. Defendants have issued subpoenas to Donna Brazile, the former chairwoman of the DNC and a close acquaintance/confidant of the Rich family; Cathy Lanier, the former chief of police of the District of Columbia; the Estate of Seth Rich; Brad Bauman, the PR crisis manager who has been working with the Rich family on press relations for many years; Sy Hersh, who first reported on the existence of an FBI report documenting email exchanges between Seth Rich and Wikileaks; Pratt Wiley, Seth's immediate boss at the DNC; Michael Issikoff, host of the six-part

Conspiracyland podcast devoted to the Seth Rich murder case, on which Aaron Rich appears and discusses the pending lawsuit; Amy Dacey, another of Seth Rich's supervisors; Stuart Blaugrund, Plaintiff's source for his bogus theory that Defendants were attempting to surveil him; Kelsey Mulka, Seth Rich's former girlfriend; Joey DellaCamera, the D.C. detective responsible for the Seth Rich murder investigation; and Joe Capone, the manager of Lou's bar, whom Aaron allegedly told not to discuss emails, in addition to subpoenas to Reddit, eBay and Google, all of which could result in the production of documents directly relevant to the core issues in the case. Quainton Decl. at ¶¶ 22-35. Defendants were successful in scheduling the depositions of Rod Wheeler, Aaron Rich, Kelsey Mulka and Joe Capone, a comparable success rate to that of Plaintiff who has taken and/or definitively scheduled a total of 4 depositions (Thomas Schoenberg, Matt Couch, Rod Wheeler, and Ed Butowsky). *Id.* at ¶¶ 33, 35, 36.

Based on the foregoing, it is impossible to conclude with a straight face that Defendants have not been diligent under the circumstances. Defendants' efforts have been all the more remarkable in that Mr. Butowsky has been battling a very severe medical condition since 2017 and has recently suffered a severe downturn in his health. Mr. Butowsky has undergone six surgeries to date, has suffered from an infection that left him with over 100,000 white blood cells, more than ten times the "healthy" outer limit, has been hospitalized for a total of 72 days, has been under the effect of powerful pain medication and was recently admitted to the intensive care unit after a fever spiked to 107 degrees. *See* Declaration of Edward Butowsky, dated January 6, 2020 (Dkt. 97-9).

Most recently, Mr. Butowsky's health has taken another sharp downward turn and he was taken to the emergency room and then re-admitted to the hospital following severe post-surgical hemorrhaging. Quainton Decl. at ¶ 38. Mr. Butowsky is currently in the hospital, but with his consent, his wife has obtained certain records that testify unmistakably to the gravity of his

5

situation. *See* Quainton Decl., Ex. 3 (identifying Mr. Butowsky's most serious hospital-related conditions over the past three years, including "severe sepsis" on January 5, 2020 and "intractable pain" on January 22, 2020); Quainton Decl. Ex. 4 (describing the surgical operation Mr. Butowsky underwent on January 10, 2020, "the definitive removal and removal of femoral component, acetubular component, implantation of antibiotic spacer; and a two-stage revision for hip replacement" that involved an "anterior arthrotomy" following which "purulent material" was uncovered, the hip was "completely debrided" and a methylmethracrylate OsteoRemedies antiobiotic spacer was implanted, a highly complex procedure). Further hospital records and a letter from Mr. Butowsky's doctor will be provided supplementally. Quainton Decl. at ¶ 41. Based on discussions with Mrs. Butowsky, it appears that Mr. Butowsky will not be able to travel, participate in legal proceedings or sit for a deposition for 6-8 weeks following full hip replacement surgery currently scheduled for the beginning of March.

However, Defendants' diligence in the face of substantial health and other challenges amply supports their motion for a 120-day extension of discovery.

II.     THE STATUS OF PENDING DISCOVERY SUPPORTS A 120-DAY EXTENSION.

As noted above, Plaintiff has only taken three of the ten depositions sought in this case. Defendants have managed to schedule a total of four, but many of the most important third party witnesses, such as Sy Hersh and Brad Bauman, whose testimony is crucial to the case, have not been able to be served, either because they are actively evading service or because of the intrinsic difficulties of scheduling third party depositions. Obtaining evidence will likely require vigorous motion practice on both sides, as Plaintiff has indicated that Malia Zimmerman, Adam Housely and possibly other witnesses are resisting subpoenas, while Defendants expect challenges from Sy Hersh and Joey Della Camera, among others. When both sides have not

taken the depositions needed and both sides anticipate the need to litigate motions to quash or protective orders, it makes no sense to cut off discovery arbitrarily before discovery is complete.

In addition, key document subpoenas remain outstanding or to be litigated. Donna Brazile, as noted above, has raised first amendment challenges to the disclosure of material relating to Seth and Aaron Rich, which strongly supports the view that Ms. Brazile is in possession of material evidence and that obtaining such evidence will require hard-fought litigation. Cathy Lanier and Michael Issikoff have not been served, but both have no doubt a wealth of information, Ms. Lanier because she was the chief of police during the early stages of the Seth Rich investigation and Michael Issikoff, because of the time and energy he has devoted to the Seth and Aaron Rich story, and his familiarity with many of the key players, including Aaron Rich, Ellen Ratner and Deborah Sines (a key AUSA familiar with the case, as her public comments on Michael Issikoff's Conspiracyland podcast demonstrate). As the Court was recently advised, Ms. Ratner has just completed a Rule 31 deposition and Defendants need to conduct a live deposition to authenticate her public videotaped comments and further probe whether Ms. Ratner stands by or now disavows her previous public comments. In sum, closing discovery in a few days would serve no useful truth-seeking function and would lead to a trial based on an incomplete record, full of glaring holes—which would do a disservice to the trier of fact in an already complex case.

III. THE POTENTIAL FOR DISCOVERY OF ADDITIONAL MATERIAL EVIDENCE FULLY SUPPORTS DEFENDANTS MOTION TO EXTEND DISCOVERY

All parties agree that the deposition of Julian Assange is "critical, necessary and relevant." Dkt. 91-2, at 2; Dkt. 105-3. When critical, necessary and relevant evidence remains outstanding, the Court should not hesitate to extend discovery. *See, e.g.*, *Vision Autodynamics, Inc. v. KASA Capital LLC*, No. CV1306003DMGMANX, 2014 WL 12614746, at *3 (C.D. Cal.

7

June 6, 2014)("the Court would be willing to consider a reasonable extension of the pretrial and trial dates and deadlines to permit such additional discovery as may be necessary"); *Charm Floral, Ltd. v. Wald Imports, Ltd.*, No. C10-1550-RSM, 2011 WL 13127153, at *2 (W.D. Wash. Aug. 5, 2011)(extension of the discovery deadline may be warranted to allow Defendants to conduct necessary discovery); *Fed. Ins. Co. v. More*, No. CIV 99-1035 JC/RLP, 2000 WL 36739539, at *4 (D.N.M. Nov. 2, 2000)(extension of discovery deadlines is often necessary and frequently granted to clarify the issues and evidence in dispute).  Despite his insistence that Mr. Assange's deposition is critical and necessary, Plaintiff strangely soft-peddles this point, and bizarrely argues that the deposition they maintain is so crucial "need not upend the existing expert and trial schedule." Pl.s' Opp. at 32.  It is difficult to follow Plaintiff's logic.  Depositions are a discovery tool and the purpose of the deposition of Mr. Assange is not so much to obtain a "smoking gun" admission that Seth and Aaron Rich transmitted emails to him – an unlikely outcome, given Mr. Assange's opposition to disclosing his sources – but to obtain evidence on the intermediaries who may have been involved, the method of communication of emails, and the general manner of paying sources, in short to obtain evidence in aid of further discovery.  It simply makes no sense to take a deposition such as Mr. Assange's without an extension of the deadline.

But it is not only the deposition of Mr. Assange that warrants an extension of the deadline. Plaintiff minimizes the import of the FBI report documenting the existence of Seth Rich's communications with Wikileaks, Pl.s' Opp. at 6 (referring dismissively to the "purported" report"), 7 (the "supposed" report), 26 (the "purported" report), 27 (the "supposed" report). Nonetheless, this existence of the report is credibly reported by Sy Hersh in language that simply cannot be dismissed.  Dkt. 95-9 at 2:2-5 ("what I know comes off an FBI report").  The point at this particular juncture in the litigation is that **the FBI has only just now**, after years of claiming

8

to have searched everywhere for the report, ***admitted that it has not, in fact, searched the locations most likely to house the report***, the FBI's CART [Computer Analysis Response Team] division and the FBI's Washington Field Office.  Dkt. 97-6, at 29 ("However, a review of Mr. Hardy's Declaration indicates the FBI did not search for records regarding Seth Conrad Rich in CART or in the FBI's email system in its WFO.").  The Court decision making this finding is a little more than one month old.  Following up will necessarily require additional time.  Rather than berating Mr. Butowsky and his counsel for doggedly pursuing this evidence in the face of great resistance, as Plaintiff hopes, the Court should commend them, since the disclosure of the FBI report would necessarily have a substantial, material impact on the present litigation.  While the present lawsuit focusses on the alleged defamation of Aaron Rich, the public narrative, which the Rich family publicly espoused long before any allegedly defamatory statements were made involving Aaron, has been that any link between Seth Rich and Wikileaks was pure fanstasy, "fake news," "conspiracy theory," "demonstrable falsehood."  Proof of the existence of the report would shatter this consensus and have a major impact on this case.  Mr. Butowsky has also brought to the attention of John C. Eckenrode and the Durham investigation the existence of other sources who purport to have evidence relevant to Seth and Aaron Rich.  See Dkt. 97-2, at 2.  Plaintiff has no substantive argument as to why Defendants should not be entitled to additional time to attempt to obtain the relevant information from the government.  Instead, Plaintiff's argument boils to a statement that Mr. Butowsky is not be trusted because, as Plaintiff shouts in bold, italicized language, Mr. Butowsky does not know the name of the source.  Pl.s' Opp. at 30.  This is an extremely odd argument to make at the very time the President of the United States is being impeached based on the anonymous testimony of an individual whose name most of the impeachment managers are reputed (cue the bold, italicized font) not even to know.  Mr. Butowsky would obviously not have asked his counsel to approach some of the most

9

senior people in the Justice Department if he did not have great confidence in his source.  At an absolute minimum, Defendants need additional time to obtain information from the authorities who appear to be withholding material documents.

IV.     PLAINTIFF WOULD NOT SUFFER ANY PREJUDICE FROM THE EXTENSION REQUESTED.

Plaintiff makes much of the supposed prejudice that a 120-day extension would cause. Pl.s' Opp, at 33-36.  But this is not a serious argument.  Plaintiff's counsel has admitted that he still needs to schedule as many as six depositions and it is not plausible to suppose these depositions will not yield any information that will require further discovery.  Plaintiff has also said that the deposition of Julian Assange is critical, necessary and relevant to his own case; as noted above, this deposition is primarily needed as a discovery device, not as a means of obtaining "smoking gun" admissions.  Moreover, Plaintiff himself would be severely prejudiced if discovery closed and the parties proceeded to prepare for summary judgment and trial, only for substantive new evidence relating to Seth and Aaron Rich to emerge.  Finally, in the scheme of things, a 120-day extension, with corresponding changes to the remainder of the schedule, would keep the litigation on a relative fast-track in comparison with the typical complex litigation in federal court and will not materially delay trial, while increasing the chances of developing a full record from which the truth is most likely to emerge.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court extend discovery for 120-days, with the remainder of schedule in the present matter accordingly adjusted.

Dated January 23, 2020

*/s/ Eden Quainton*
EDEN P. QUAINTON, ESQ. (D.C. Bar No. NY0318)
QUAINTON LAW, PLLC
1001 Avenue of the Americas, 11th Floor
New York, New York 10018
Telephone: (212) 813-8389
E-mail: equainton@gmail.com
*Attorneys for Defendants Edward Butowsky and Matthew Couch*

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that on January 23, 2020, the foregoing document was filed through the CM/ECF system and thereby served electronically on counsel for Plaintiff Aaron Rich.

**QUAINTON LAW, PLLC**

*/s/ Eden Quainton*_____
EDEN P. QUAINTON, ESQ.
1001 Avenue of the Americas, 11th Floor
New York, New York 10018
Telephone: (212) 813-8389
E-mail: equainton@gmail.com
*Attorneys for Defendants Edward Butowsky and Matthew Couch*