## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

AARON RICH

              Plaintiff,

   v.

EDWARD BUTOWSKY, MATTHEW
COUCH, and AMERICA FIRST
MEDIA,

              Defendants.

Civil Action No. 1:18-cv-00681-RJL
Hon. Richard J. Leon

## PLAINTIFF'S OPPOSITION TO NON-PARTIES MALIA ZIMMERMAN AND FOX NEWS NETWORK, LLC'S JOINT MOTION FOR A PROTECTIVE ORDER BARRING DEPOSITION

MICHAEL J. GOTTLIEB (D.C. Bar No. 974960)
WILLKIE FARR & GALLAGHER LLP
1875 K Street NW
Washington, DC 20006
Tel: (202) 303-1000
Fax: (202) 303-2000
mgottlieb@willkie.com

JOSHUA P. RILEY (D.C. Bar No. 1026900)
MERYL C. GOVERNSKI (D.C. Bar No. 1023549)
BOIES SCHILLER FLEXNER LLP
1401 New York Ave NW
Washington, DC 20005
Tel: (202) 237-2727
Fax: (202) 237-6131
jriley@bsfllp.com
mgovernski@bsfllp.com

*Attorneys for Plaintiff Aaron Rich*

Plaintiff Aaron Rich respectfully submits this Opposition ("Opposition") to the Joint Motion for a Protective Order Barring Deposition ("Motion"), Dkt. 114, filed by third parties Fox News Network, LLC ("Fox News") and Fox News reporter Malia Zimmerman.[1]

## INTRODUCTION

Plaintiff Aaron Rich has sued Defendants Ed Butowsky, Matt Couch, and America First Media ("AFM") for defamation and intentional infliction of emotional distress based upon false statements in which Defendants have accused Mr. Rich of (1) conspiring with his deceased brother, Seth Rich, to steal documents from the Democratic National Committee ("DNC"); (2) providing those documents to WikiLeaks in exchange for money; and (3) obstructing the investigation into Seth Rich's murder.

On May 16, 2017, Fox News published an article ("Fox News Article") alleging that Seth Rich had transmitted stolen DNC documents to WikiLeaks prior to his July 2016 murder, relying upon a so-called "federal investigator" who allegedly claimed to have reviewed a report by the Federal Bureau of Investigation ("FBI Report").  On May 23, 2017, Fox News retracted the story, issuing a statement that the article "was not initially subjected to the high degree of editorial scrutiny we require for all our reporting."  Prior to the retraction of the Fox News Article, Defendants do not appear to have made *any* public accusations regarding Plaintiff's alleged involvement in stealing DNC documents—but in the months that followed, Defendants launched an assault on Plaintiff's reputation by asserting his participation in Seth Rich's alleged scheme. Both before and after the publication of the Fox News Article, Ms. Zimmerman was in frequent

---

[1] Although the motion was filed jointly by Fox News and Ms. Zimmerman, for ease of reference, this Opposition refers generally to the movants as "Ms. Zimmerman."

contact with Defendant Edward Butowsky and Rod Wheeler, a former police detective whom Defendant Butowsky identified and then recommended to Plaintiff's family.

Ms. Zimmerman is one of a handful of vital third-party witnesses with personal knowledge about the issues at the core of this litigation. In the months leading up to the publication of the Fox News Article, Ms. Zimmerman communicated about the Fox News Article via email (using her Fox News and personal accounts), text messaging, Zoom, and phone calls with Mr. Butowsky despite the fact that Mr. Butowsky was neither a Fox News employee nor a source for the Fox News Article. Following the retraction of the Fox News Article, Ms. Zimmerman continued to communicate with Defendant Butowsky, including traveling to his home in Texas in September 2017 for a meeting after she had been suspended from her position at Fox News. At that meeting, according to discovery to date, Ms. Zimmerman spoke with Defendants Matthew Couch and AFM, Defendant Butowsky made defamatory statements about Plaintiff and his family, and there was discussion about hacking and surveilling Plaintiff and his family. Defendant Butowsky has listed Ms. Zimmerman in his initial disclosures as a witness with "knowledge about her investigation of and the article she wrote about Seth Rich's murder and about the FBI's file on the Seth Rich murder investigation." Mr. Couch similarly stated that Ms. Zimmerman had "knowledge about her investigation of and the article she wrote about the leaking of the DNC emails to Wikileaks and the FBI's report relating to the leaked DNC emails."

In light of Ms. Zimmerman's central role in the events described in Plaintiff's Complaint and Defendants' expected defenses, Plaintiff noticed a subpoena to depose Ms. Zimmerman, which her counsel accepted on her behalf on January 7, 2020. Ms. Zimmerman's testimony is central to understanding what information Defendant Butowsky communicated to or from third parties regarding Mr. Rich, but also to determine whether Butowsky acted intentionally or recklessly, in

a manner that was extreme or outrageous, when he shifted his narrative to focus on Plaintiff subsequent to the retraction of the Fox News Article.

In response to the subpoena, Ms. Zimmerman did not attempt to meet and confer with Plaintiff on topics that might be appropriate for a deposition in light of her profession—instead, Ms. Zimmerman has filed this Motion and asked this Court to issue a breathtakingly broad Order quashing her deposition in its entirety based upon newsgathering privileges under the First Amendment and New York law. There is no support for such an Order, including because the testimony Plaintiff seeks either falls squarely outside these protections for newsgathering, *see infra* § III, or Ms. Zimmerman has waived any protection she could claim under the protections for newsgathering, *see infra* § IV. Even assuming *arguendo* that waiver has not occurred and certain information qualifies for the newsgathering privilege, Mr. Rich has overcome this qualified privilege, *see infra* § V. Finally, Plaintiff is unaware of (and Ms. Zimmerman does not provide) any legal basis for staying Ms. Zimmerman's deposition indefinitely pending her theoretical future deposition in a different case in the Southern District of New York. *Infra* § VI. The Motion should therefore be denied.

## FACTUAL BACKGROUND

Discovery to date has shown that Ms. Zimmerman, Defendant Butowsky, and Mr. Wheeler worked together to publish the Fox News Article,[2] including by participating in meetings telephonically, in D.C., and via video, and by discussing advance drafts.[3] Mr. Wheeler has testified that Defendant Butowsky introduced him to Ms. Zimmerman shortly before the Rich family

---

[2] Ex. 1.

[3] Dkt. 116 n.75 (Exhibits 61, 63, 64, 67, 68, 69, and 71).

retained him, at Mr. Butowsky's urging, as a private investigator.[4]  Mr. Butowsky told Mr. Wheeler

that he had been working with Ms. Zimmerman on an investigation of Seth Rich, and warned Mr.

Wheeler not to mention Ms. Zimmerman to the Rich family in his conversations.[5]  Mr. Wheeler

testified that he had learned that at some point earlier, in January of 2017, a Fox News managing

editor had reviewed, and rejected, an earlier version of the Fox News Article that was ultimately

published and then retracted—Mr. Wheeler testified that his name was added to the story in May

of 2017 in order "to get the story credence."[6]

      Documents produced in discovery show that on or prior to 

[8]  On March 29, 2017, Defendant Butowsky emailed Ms. Zimmerman, Fox

News producer A. Adam Housley, and Mr. Wheeler stating:  "I really need a four-way zoom video

conference tomorrow with all of you.  Please tell me what times DO NOT work for you tomorrow?

***We are on the 1 yard line and we need to take it over the goal line*** and in order to do that we all

---

[4] Ex. 2.

[5] Ex. 3.

[6] Ex. 4.

[7] ▇

[8] ▇

need to be on a video conference as a starting point."[9]  On April 29, 2017, Ms. Zimmerman sent another draft of the Fox News Article to Defendant Butowsky, saying she still needed to "confirm the bold sections"—which were statements alleging a link between Seth Rich, the DNC email hack, and WikiLeaks that still were not attributed to anyone—and to receive Mr. Wheeler's approval on certain *other* quotations.[10]  On May 4, 2017, Ms. Zimmerman appears to have not received confirmation on the statements alleging a link between Plaintiff's brother and WikiLeaks, asking Defendant Butowsky "any news on the key point?"[11]  Before it was published, the Fox News Article—titled "Seth Rich, slain DNC staffer, had contact with WikiLeaks, say multiple sources"—was edited to attribute at least one "key point" to Mr. Wheeler: "'My investigation up to this point shows there was some degree of email exchange between Seth Rich and WikiLeaks,' Wheeler said. 'I do believe that the answers to who murdered Seth Rich sits on his computer on a shelf at the DC police or FBI headquarters.'"[12]  The Fox News Article further stated that a "federal investigator who reviewed an FBI forensic report -- generated within 96 hours after DNC staffer Seth Rich's murder -- detailing the contents Rich's [sic] computer said he made contact with WikiLeaks through Gavin MacFadyen, a now-deceased American investigative reporter, documentary filmmaker, and director of WikiLeaks who was living in London at the time."[13]

---

[9] Dkt. 116-8 at Ex. 67 (emphasis added).

[10] Dkt. 116-8 at Ex. 69.

[11] *Id.*

[12] Ex. 1.

[13] *Id.*

Nearly immediately, Mr. Wheeler publicly stated that he did not have any evidence substantiating the quote attributed to him.[14]  On May 23, 2017, Fox News retracted the story, stating: "The article was not initially subjected to the high degree of editorial scrutiny we require for all our reporting.  Upon appropriate review, the article was found not to meet those standards and has since been removed. We will continue to investigate this story and will provide updates as warranted."[15]  Fox News reportedly launched an internal investigation into the Fox News Article, but according to at least one report, "Fox executives grew frustrated they were unable to determine the identity" of the "anonymous 'federal investigator' whose agency was never revealed.  The Fox editors came to have doubts that the person was in fact who he claimed to be or whether the person actually existed."[16]

 who deposition testimony has revealed to be Kashyap Patel, a staffer for then-Chairman of the House Permanent Select Committee on Intelligence, Congressman Devin Nunes,[17]

---

[14] *See* Dkt. 3 ¶ 29.

[15] Dkt. 116-7 at Ex. 59.

[16] Michael Isikoff, *Exclusive: The true origins of the Seth Rich conspiracy theory. A Yahoo News investigation*, Yahoo News (July 9, 2019), https://news.yahoo.com/exclusive-the-true-origins-of-the-seth-rich-conspiracy-a-yahoo-news-investigation-100000831.html.

[17] *See* Ex. 6.



In addition, ███████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████[20] Ms. Zimmerman also appears to have personal knowledge of a fake FBI Report,

apparently disseminated by the individual known as "whysprtech" to third parties in June of 2017,

which appears to have been forged in order to make it appear that the FBI had evidence of a link

between Seth Rich and WikiLeaks.[21]

---

[18] ████

[19] ████; ████; ██████

[20] *See* ██████.

[21] Ex. 12.

██████[22]██████████████████████████████████████████████████

████████████████████████████████████████████████████████[23]

On September 20, 2017—just four months after the retracted Fox News story—Ms. Zimmerman participated in a meeting at Defendant Butowsky's home in Texas with, among others: Fox News reporter Malia of Defendant Butowsky, Defendant Couch, AFM member Josh Flippo, and various members of an organization called "Shadowbox," which described itself as "an elite team of specialists" that conducts "deep recon on your competitors [sic] next move" and "set[s] in motion strategies your opponent can't counteract."[24] According to the deposition of one of the attendees of that meeting, participants at the meeting discussed a plan to hack into the emails of Aaron Rich and his family and to surveil their phone calls.[25] According to that same testimony, Ms. Zimmerman stated at the time that she was on paid suspension, and thus could not publish any stories.[26] Just one day after that meeting, and continuing for several days thereafter, Defendant Couch unleased a flood of defamatory tweets and videos on Periscope accusing Plaintiff of being involved in the DNC hack, of having received payment from WikiLeaks, and of obstructing the investigation into Seth Rich's murder.[27]

---

[22] ████; ████; *see also* ████(███████████████████████████████████); ██(██████████████████████████).

[23] *E.g.,* ████; ████; ████; ████; ████; ████; ████; ████; ████.

[24] Dkt. 118-7 Ex. 6.

[25] Dkt. 118-8 Ex. 7.

[26] Ex. 26.

[27] *E.g.,* Dkt. 3 ¶¶ 51-54.

Given her extensive involvement with the Defendants and the events relevant to this lawsuit, all parties to this litigation appear to have assumed that Ms. Zimmerman would be an essential witness. Ms. Zimmerman and the Fox News Article are discussed in the complaint.[28]  In his initial disclosures, Mr. Butowsky stated that Ms. Zimmerman had "knowledge about her investigation of and the article she wrote about Seth Rich's murder and about the FBI's file on the Seth Rich murder investigation."[29]  Mr. Couch similarly stated that Ms. Zimmerman had "knowledge about her investigation of and the article she wrote about the leaking of the DNC emails to Wikileaks and the FBI's report relating to the leaked DNC emails."[30]  Plaintiff filed a motion for additional depositions in which his intent to take Ms. Zimmerman's deposition was raised explicitly.[31]  Plaintiff also subpoenaed documents from Ms. Zimmerman, Fox News, and from Defendants to prepare for Ms. Zimmerman's deposition.

Furthermore, Defendants' reliance on Ms. Zimmerman's story and source has continued throughout this litigation. In refusing to admit that he did not know if the FBI had reviewed Seth Rich's laptop, Mr. Butowsky relied upon Ms. Zimmerman's alleged FBI source.[32]  Curiously, Mr. Butowsky claimed prior to this litigation, in a voicemail he left for Mr. Wheeler, that Ms. Zimmerman never spoke to the "federal" source on whom the Fox News story was based—as Mr. Butowsky put it, "The reason Fox pulled the story is because . . . Malia did not actually speak to

---

[28] Dkt. 3 ¶¶ 28-31.

[29] Dkt. 83-3.

[30] Dkt. 91-29.

[31] Dkt. 83.

[32] *See* Dkt. 127 at 5.

someone.  She heard."[33]  In any event, there is no dispute that Ms. Zimmerman is a central figure

in Defendants' claim that they did not defame Aaron Rich when they accused him of stealing

documents from the DNC, providing them to WikiLeaks, and engaging in obstruction of justice.

## ARGUMENT

### I.      Ms. Zimmerman's Deposition is Clearly Relevant to Issues in this Litigation

Rule 26 of the Federal Rules of Civil Procedure allows parties to seek through discovery

any information that is "relevant" to a party's claims or defense.  Relevance is broadly defined and

"'encompass[es] any matter that bears on, or that reasonably could lead to other matter that could

bear on' any party's claim or defense."[34]  Information "need not be admissible in evidence to be

discoverable."[35]  Ms. Zimmerman does not challenge that her testimony would be relevant to

Plaintiff's claims, and has therefore waived any argument sounding in relevance.[36]

Ms. Zimmerman's testimony is clearly relevant to this case because it is likely to lead to

relevant information about Defendant Butowsky's efforts to publish false stories about Plaintiff,

as well as to demonstrate the constantly changing narrative that Defendant Butowsky has offered

regarding Plaintiff's purported involvement in the hack of the DNC and the circumstances of Seth

---

[33] Ex. 27.

[34] *United States ex rel. Shamesh v. CA, Inc.*, 314 F.R.D. 1, 8 (D.D.C. 2016) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *see also Prasad v. George Washington University*, 325 F.R.D. 1, 3 (D.D.C. 2018) (relevance is broadly defined to include anything that bears on or could lead to other information that bears on a party's claim or defense); *United States v. Anthem, Inc.*, 2016 WL 11164026, at *5 n.4 (D.D.C. 2016) (same).

[35] Fed. R. Civ. P. 26(b).

[36] *See In re Papst Licensing GMBH & Co. KG Litigation*, 550 F. Supp. 2d 17, 22 (D.D.C. 2008) ("As a general rule, when a party fails to object timely to discovery requests, such objections are waived.").

Rich's murder.  As mentioned above, both Defendants Butowsky and Couch have listed Ms. Zimmerman in their initial disclosures,[37] and Defendant Butowsky has relied on the Fox News Article and Ms. Zimmerman's alleged FBI "source" as a basis for his defense.[38]

Plaintiff's defamation and intentional infliction of emotional distress claims both turn on what Defendants knew when they began their campaign of defamation against Plaintiff.  Ms. Zimmerman is uniquely positioned to testify about what Defendant Butowsky did or did not tell her (and others) regarding Aaron Rich both *before* the retraction of the May 16, 2017 Fox News article, and what he told her (and others) *after* the retraction.  Similarly, Ms. Zimmerman's testimony is plainly probative as to whether Mr. Butowsky's decision to spread falsehoods regarding Aaron Rich amounted to extreme and outrageous conduct.

## II.    Zimmerman and Fox News Have Not Met Their Burden in Proving the Need for a Protective Order

A journalist claiming newsgathering privileges bears the burden of demonstrating the applicability of those privileges, and the party moving for a protective order bears the burden of demonstrating the need for such an order.  Ms. Zimmerman has failed to carry her burden on either issue.  Ms. Zimmerman has asserted she deserves a blanket protection as a reporter without any specific information or arguments related to specific lines of testimony and how those lines of questions would implicate the newsgathering privileges.  To the extent the court has doubts as to

---

[37] Dkt. 83-3; Dkt. 91-29.

[38] *See* Dkt. 127 at 5 ("It has likewise between widely reported that the FBI has inspected Seth's laptop, as attested to by two separate independent sources, the FBI source quoted by Sy Hersh ***and the FBI source quoted by Malia Zimmerman***.") (emphasis added)

whether Ms. Zimmerman's representations are sufficient to establish the newsgathering privilege, the court should resolve such doubts in favor of the Plaintiff.

A.    *The Scope of the Federal and State Privilege Is Narrow.*[39]

Neither the First Amendment to the United States Constitution ("federal privilege") or the New York law protecting newsgathering, NY Civil Rights § 79-h ("state privilege") immunizes a reporter from the civil discovery obligations with which every citizen is expected to comply, including sitting for a deposition.[40]  The federal and state privileges afforded to newsgathering are narrowly tailored to protect the identity of sources and information collected during newsgathering.

The concept of "newsgathering" does not sweep within it every action a journalist takes, nor every conversation a journalist may have.  To qualify for the privilege of testimonial immunity, the information must be obtained during the course of newsgathering, which has been defined under federal law as obtaining information from sources with the clear intent of publishing that information.  The privilege, in other words, applies to the collection of information from sources in preparation of and prior to the publication of a news story.  *See Hutira v. Islamic Republic of Iran*, 211 F. Supp. 2d 115, 119 n.4 (D.D.C. 2002) (holding that in order for the federal privilege

---

[39] This Opposition addresses why the state privilege and federal privilege do not provide grounds for the protective order Ms. Zimmerman and Fox News seek.  The Washington, D.C. statute is equivalent to the federal privilege, and thus, to the extent it applies, it does not provide grounds for the protective order for the same reason.  *Cf. Grunseth v. Marriott Corp.*, 868 F. Supp. 333, 336 (D.D.C. 1994).  Plaintiff respectfully reserves the right to brief choice-of-law to the extent the Court finds it necessary.

[40] *Branzburg v. Hayes*, 408 U.S. 665, 682 (1972) ("It is clear that the First Amendment does not invalidate every incidental burdening of the press that may result from the enforcement of civil or criminal statutes of general applicability."); *Sands v. News Am. Publ.*, 161 A.D. 2d 30, 37 (N.Y. App. Div. 1990) (recognizing that the protections for the media do not negate all of the rights of an opposing party in litigation).

to apply, the requested information must have been "obtained . . . for the purpose of disseminating it to the public, and that [the reporter] had this intent at the time [the reporter] obtained the information"); *Alexander v. F.B.I.*, 186 F.R.D. 21, 50 (D.D.C. 1998) (the federal privilege applies only when the "primary relationship between the one seeking to invoke the privilege and his sources must have as its basis the intent to disseminate the information to the public garnered from that relationship."). The state privilege similarly provides protection only to "information gathered by a professional journalist *in preparation of a news story*," *i.e.*, prior to publication. *Guice-Mills v. Forbes*, 12 Misc. 3d 852, 855 (N.Y. Sup. Ct. 2006) (emphasis added).

> B.     *Zimmerman's Has Not Provided the Necessary and Specific Evidence to Establish that All Deposition Topics are Covered by Newsgathering Privileges*

Ms. Zimmerman has failed to meet her heavy burden of establishing that *no* deposition may take place as a result of the federal and state privileges for newsgathering. *See Hutira*, 211 F. Supp. 2d at 119 n.4 (holding that the journalist asserting the federal privilege has the burden of demonstrating it applies); *Matter of Andrews v. Andreoli*, 92 Misc. 2d 410, 418 (N.Y. Sup. Ct. 1977) (holding that the journalist bears the burden of offering evidence that establishes the privilege). In order to meet her burden, Ms. Zimmerman is obliged to show, with specific evidence, that the communications and information sought were gathered from sources with the intent of publishing the gathered information. *See Alexander*, 186 at 50. For the reasons described below, Ms. Zimmerman cannot meet that burden.

The Motion fails to provide specific factual support for why the following lines of inquiry are protected by either the federal or state privilege: (1) testimony related to the decision to retract the Fox News Article, which was not newsgathering with the intent of providing news to the public but rather the consideration of the withdrawal of inaccurate information; (2) conversations prior to and after publication with Defendant Butowsky, who was neither a journalist subject to the

protections of the privilege nor a news "source" for the Fox News Article; (3) post-publication communications with Defendants Butowsky and Couch, including but not limited to the meeting at Defendant Butowsky's home in Dallas, Texas on September 20, 2017, when Ms. Zimmerman was suspended from her position at Fox News, as well as discussions regarding Mr. Butowsky's public relations campaign relating to litigation filed by Rod Wheeler.

The Motion does not explain why the doctrines above require quashing the deposition in its entirety, nor does it identify particular lines of potential questioning that would violate federal or state privileges. Instead, the Motion relies upon vague generalities about Ms. Zimmerman's employment at Fox News and the fact that she authored the Fox News Article. That is a plainly insufficient basis for quashing the subpoena.

Counsel for Ms. Zimmerman did not seek to meet and confer with Plaintiff's counsel regarding the potential scope of contemplated testimony prior to filing the Motion.[41] That is so notwithstanding that Plaintiff's counsel informed Ms. Zimmerman's counsel on December 9, 2019, prior to serving the subpoena, that Plaintiff intended to subpoena Ms. Zimmerman for a deposition, and also notwithstanding that counsel for former Fox News journalist A. Adam Housley engaged in such a process with Plaintiff's counsel, resulting in an agreement to schedule a deposition while reserving rights to object to certain questions based upon privilege claims.[42] Ms. Zimmerman should not be permitted to raise new arguments regarding contemplated

---

[41] Counsel for Ms. Zimmerman did meet and confer with Plaintiff's counsel as to whether or not Mr. Rich would issue the deposition subpoena, and the timing for doing so, but neither Ms. Zimmerman nor Fox News ever inquired into the potential lines of testimony prior to asserting that all such testimony would be barred by newsgathering privileges. Ex. 28; Ex. 29.

[42] Ex. 28. Following the filing of this Motion, Plaintiff agreed to hold Mr. Housley's deposition in abeyance to allow sufficient time for the Court to consider the legal issues raised herein. *Id.*

testimony for the first time in her Reply Brief.  *See Aleutian Pribilof Islands Ass'n, Inc. v. Kempthorne*, 537 F. Supp. 2d 1, 12 n.5 (D.D.C. 2008) (holding "it is a well-settled prudential doctrine that courts generally will not entertain new arguments first raised in a reply brief").

    C.    *Zimmerman Has Not Met Her Burden of Establishing the Requirements of a Protective Order under Rule 26*

Rule 26 of the Federal Rules of Civil Procedure requires that a person seeking a protective order demonstrate that the sought discovery will cause "annoyance, embarrassment, oppression, or undue burden or expense."[43]  The movant for a protective order bears the burden of proving that good cause exists for the order.[44]  This is a "heavy burden" that requires "showing extraordinary circumstances based on specific facts that would justify an order."[45]  Courts are reluctant to issue protective orders that entirely prohibit the taking of a deposition, saving such a measure for only the most "extraordinary circumstances."[46]

Ms. Zimmerman's sole justification for a protective order under Rule 26 appears to do nothing more than restate her claims relating to the federal and state privileges.  Apart from those privileges, which are addressed elsewhere in this Opposition, Zimmerman does not advance any other grounds as to why the deposition would cause "annoyance, embarrassment, oppression, or

---

[43] Fed. R. Civ. P. 26(c).

[44] *Eidos Display, LLC v. Chunghwa Picture Tubes, Ltd.*, 296 F.R.D. 3, 5 (D.D.C. 2013).

[45] *Id.* at 6 (internal quotations omitted).

[46] *See U.S. v. Kellogg Brown & Root Services, Inc.*, 285 F.R.D. 133, 135 (D.D.C. 2012).

undue burden or expense."[47]  As such, Ms. Zimmerman and Fox News have waived any arguments

beyond the assertion of the newsgathering privileges.[48]

### III.     The Bulk of the Testimony Plaintiff Seeks from Ms. Zimmerman is Outside the Scope of the Privilege Protecting Newsgathering

   A.     *Information Related to The Retraction of the Fox News Article is not Protected by the Federal or State Privilege*

Testimony related to Fox News' decision to retract Fox News Article is not protected by

the federal or state privilege because the decision to retract a story from publication does not

amount to newsgathering for the purpose of publishing information.  Indeed, it is the very opposite.

The purpose of retraction is to remove inaccurate information from the public domain.

The publication of false information has no First Amendment value and, accordingly, the

federal and state newsgathering privileges provide no immunity for communications relating to

the investigation and retraction of false claims.  In *Herbert v. Lando*, the Supreme Court held that

"[s]preading false information in and of itself carries no First Amendment credentials.  There is no

constitutional value in false statements of fact."[49]  Several years later, in *Westmoreland v. CBS,*

*Inc.*, the court analyzed the applicability of the state newsgathering privilege to CBS's

investigation of statements made by General William Westmoreland about a documentary film

that CBS had recently broadcast.[50]  In response, President of CBS News Van Gordon Sauter

---

[47] Fed. R. Civ. P. 26(c).

[48] *See In re Papst Licensing GMBH & Co. KG Litigation*, 550 F. Supp. 2d at 22 ("As a general rule, when a party fails to object timely to discovery requests, such objections are waived.").

[49] 441 U.S. 153, 171 (1979) (internal quotations omitted).  *Herbert* also rejected CBS's attempt to create an absolute privilege for editorial process for a media defendant in a libel case.  *Id.* at 169.

[50] 97 F.R.D. 703, 704 (S.D.N.Y. 1983).

directed CBS News Senior Executive Producer Burton Benjamin to investigate and prepare a written report about Gen. Westmoreland's criticisms and the accuracy of the film generally.[51]  Mr. Sauter issued a public written statement based on that report, stating that "CBS News [stood] by" the film and "support[ed] the substance of the broadcast."[52]  Gen. Westmoreland sued CBS for defamation and moved to compel production of the written report, which CBS claimed was protected by the state privilege.[53]  The court rejected CBS's claim to privilege because the CBS written retraction statement was not news, and therefore the related report was not created in "the course of gathering or obtaining news for publication."[54]  Similarly, in *Guzman v. News Corp.*, the court rejected defendants' motion for a protective order based on the federal privilege because "editorial decisions" relating to discussions following the publication did not constitute newsgathering.[55]  Under the principles of *Westmoreland* and *Guzman*, Fox News's decision to retract the article, the results of the internal investigation on the Fox News Article, conversations Ms. Zimmerman had with Defendant Butowsky regarding the retraction, and the role Defendant Butowsky played in the aftermath of the retraction are not immune from civil discovery under the federal or state newsgathering privileges.

---

[51] *Id.*

[52] *Id.*

[53] *Id.* at 704–05; 707.

[54] *Id.*  Dicta in *Westmoreland* indicates that the federal privilege may have applied to the Benjamin report.  However, the court did not fully address this issue as it instead answered what it considered to be an easy question: whether the privilege was outweighed by Westmoreland's need for the report.  *Id.* at 706.  The court held that Westmoreland had a clear need for the document, and as such, granted Westmoreland's motion to compel.  *Id.* at 706-07.  Thus, the court did not consider the issue of whether the federal newsgathering privilege was truly applicable.

[55] 877 F. Supp. 2d 74, 76–77 (S.D.N.Y. 2012).

B.   *Defendant Butowsky's Communications with Ms. Zimmerman Before and After Publication of the Fox News Article are not Protected by Newsgathering Privileges*

As an initial matter, the focus of Plaintiff's deposition of Ms. Zimmerman will relate to what she heard, said, and did with respect to Aaron Rich.  As stated in her motion, Ms. Zimmerman never published a story about Aaron Rich.[56]  Thus, any conversations Ms. Zimmerman may have had with Defendant Butowsky relating to Plaintiff are not protected by the newsgathering privilege.

Separately, Ms. Zimmerman's communications with Defendant Butowsky *prior* to the publication of the Fox News Article are not protected by federal or state law because Defendant Butowsky was not a source of the "information" in the Fox News Article.[57]  As Defendant Butowsky has admitted, he was an advocate for the story, and an intermediary between relevant individuals.  Dkt. 95-4 (In reference to the Fox News Article, Butowsky wrote, "I'm actually the one who's been putting this together but as you know I keep my name out of things because I have no credibility.").  For example, he pushed to arrange a meeting between Mr. Wheeler and Mr. Patel so that Ms. Zimmerman could receive information from Mr. Patel through Mr. Wheeler.[58]  Thus, although Defendant Butowsky was arranging and facilitating meetings, he was not a source of information.  Similarly, Defendant Butowsky provided Ms. Zimmerman with information he

---

[56] Motion at 1.

[57] The Fox News Article referred to only two sources—Mr. Wheeler and an unnamed "federal investigator"—neither of whom is Defendant Butowsky.  Ex. 1.

[58] Ex. 30.

obtained from Seymour Hersh,[59] but the "source" in that interaction was either Mr. Hersh or Mr. Hersh's alleged source, rather than Defendant Butowsky.

It is even clearer that Defendant Butowsky was also a "source" for Ms. Zimmerman following publication of the Fox News Article.  Communications with Defendant Butowsky relating to Mr. Wheeler's lawsuit, or Defendant Butowsky's efforts to defend the credibility of the retracted Fox News Article through public relations efforts, do not constitute "newsgathering," given the absence of any follow on story from Ms. Zimmerman on these matters.  In any event, at some point after May 16, 2017, Ms. Zimmerman was suspended from her duties by Fox News, making any claims for protection under the privilege suspect.[60]  That includes, but is not limited to the September 2017 meeting Ms. Zimmerman attended in Mr. Butowsky's home.

Ms. Zimmerman may disagree with these assertions, but she has failed to meet her burden to establish that the newsgathering privileges apply to any of the above lines of testimony.[61]  It is her burden to put forward specific facts to demonstrate the applicability of these privileges.[62]

## IV.     Zimmerman has Waived the Federal and State Newsgathering Privileges

Even if the federal or state newsgathering privileges might protect Ms. Zimmerman's communications in the abstract, she has waived those privileges by sharing information with third parties, including Defendant Butowsky, who is neither a journalist nor an employee of Fox News. Under New York law, a journalist waives the right to assert the newsgathering privilege as to both the underlying information and the identity of the source by voluntarily disclosing or consenting

---

[59] Dkt. 116 at 27-28.

[60] *See* Ex. 26.

[61] *See Hutira*, 211 F. Supp. 2d at 119 n.4; *Andrews,* 92 Misc. 2d at 418.

[62] *See Alexander*, 186 F.R.D. at 50.

to the disclosure of the information to a non-journalist such as Defendant Butowsky.  NY Civil Rights § 79-h(g) ("[A] person entitled to claim the exemption provided under subdivision (b) or (c) of this section waives such exemption if such person voluntarily discloses or consents to disclosure of the specific information sought to be disclosed to any person not otherwise entitled to claim the exemptions provided by this section.").  For example, in *Guice-Mills v. Forbes*, a New York trial court found a reporter waived privilege as to both the information and source by disclosing to a defamation plaintiff that a source had informed the journalist of plaintiff's criminal conviction.  12 Misc. 3d at 857; *see also Matter of Dan v Simonetti*, 80 Misc. 2d 399, 401-02 (N.Y. Sup. Ct. 1975) (disclosure of information to third-parties waived the privilege).

Federal law is similar.  Federal courts have found waiver as to the federal privilege where journalists have disclosed information from newsgathering to third parties.  *Bredemus v. International Paper Co.*, 2008 WL 11348492, at *8 (D. Minn. 2008) (finding the reporter waived any federal privilege by voluntarily providing footage and information to third parties); *Lozman v. City of Riviera Beach*, 2014 WL 12360697, at *4-5 (S.D. Fla. 2014) (finding that by voluntarily disclosing information to others related to events that occurred at a marina on a specific date, the reporter waived the federal privilege for any information he had related to the events of that date); *see also In re Grand Jury Subpoena, Judith Miller*, 438 F.3d 1141, 1177 (D.C. Cir. 2006) ("reporters . . . may waive the privilege).  And importantly, as the movant, Ms. Zimmerman bears the burden of demonstrating that the privilege has not been waived with respect to the information on which she seeks immunity from production or testimony.  *Lozman*, 2014 WL 12360697, at *4 (quoting *United States v. Weissman*, 1996 WL 737042, at *25 (S.D.N.Y. 1996)) ("It is axiomatic that '[t]he party seeking to invoke a privilege has the burden of establishing the non-waiver of the privilege.'").

Here, Ms. Zimmerman waived whatever newsgathering privileges might apply multiple times over by actively sharing drafts and information relating to the subject matter of the Fox News Article with Defendant Butowsky, Rod Wheeler, and others.   Discovery to date has revealed numerous examples of communications from Ms. Zimmerman to Mr. Wheeler and Defendant Butowsky, including communications Ms. Zimmerman forwarded from the FBI and the Metropolitan Police Department.[63]  Discovery has also shown that ███████████████████ ████████████████████████████████████████████████████████████████████ ███████[64]  It is Ms. Zimmerman's burden to show why these disclosures do not waive her right to assert federal or state privileges as to the information she voluntarily shared with non-journalist third parties.[65]

## V.   Alternatively, Aaron Rich has Met His Burden in Overcoming the Federal Privilege and the State Privilege

In the alternative, if the Court were to rule that the federal privilege and/or the state privilege applied to any of the deposition topics describe above, Aaron Rich has demonstrated a need that outweighs both qualified privileges.   The federal privilege is a qualified one, which

---

[63] *See, e.g.*, Ex. 31; Ex. 32; Ex. 33; Ex. 34; Ex. 35; Ex. 36; Ex. 37; Ex. 38; Ex. 39; Dkt. 116-8 at Ex. 69; Ex. 40; Ex. 41; Ex. 42.

[64] ████; ████; ████; ████.

[65] The notable exceptions to the waiver doctrine are inapplicable here.  For example, in *Pugh v. Avis Rent A Car System, Inc.*, the court held CBS had not waived the privilege by conducting interviews in the presence of third-parties because the court said the purpose of the privilege would be foiled if reporters could not interview people in public places, or interview multiple people at the same time.  1997 WL 669876, at *5-6 (S.D.N.Y. 1997).  Here, however, Ms. Zimmerman was working in tandem with two individuals who were not journalists, employees, or contractors with Fox News (Messrs. Butowsky and Wheeler), and she easily could have performed her job without sharing information with Mr. Butowsky—indeed, she often corresponded with Mr. Wheeler without Mr. Butowsky's involvement.  *E.g.*, Ex. 43; Ex. 44; Ex. 45; Ex. 46.

Aaron Rich can overcome if he demonstrates (1) his need for the information and (2) that he has exhausted "reasonable alternative sources of information." *Estate of Klieman v. Palestinian Authority*, 293 F.R.D. 235, 241 (D.D.C. 2013). Where the information that is requested is not confidential, the showing needed to overcome the federal privilege is "less demanding than the showing required where confidential materials are sought."[66]

The test for overcoming the state privilege is very similar to the federal one, where the information sought is non-confidential. The party seeking the non-confidential information must demonstrate that the information sought is:

> (1) highly material or relevant; (2) critical or necessary to the maintenance of a party's claim, defense, or proof of an issue material to that claim or defense; and (3) is not obtainable from any other source.[67]

The information sought by Plaintiff is non-confidential. Defendant Butowsky was not a confidential source, nor was Mr. Wheeler. Moreover, as discussed above, Ms. Zimmerman voluntarily provided information from her confidential "federal investigator" source to Defendant Butowsky, rendering that information non-confidential.

> 1.      Aaron Rich Has a Clear Need for the Requested Information

Courts have stated that in demonstrating the need for the information, the party seeking to overcome the federal privilege must demonstrate that the information sought goes to the "heart of the matter."[68] This language has generally been interpreted to mean that the requested information must be relevant to proving an element of a claim or disproving an element of a defense.

---

[66] *Id.* at 242.

[67] *Guice-Mills*, 12 Misc. 3d at 854.

[68] *Klieman*, 293 F.R.D. at 241.

In *Klieman*, plaintiffs sued the Palestinian Authority ("PA") and the Palestine Liberation Organization ("PLO").[69]  Plaintiffs' theory of liability was:

> (1) that members of the Al–Aqsa Martyrs Brigades ("Al–Aqsa") shot at the bus on which Klieman was traveling; (2) that Al–Aqsa is the military arm of Fatah; (3) that Fatah is funded by the PA and/or the PLO; and (4) that the PA and PLO provided weapons, instruments, permission, training, and funding to Al–Aqsa to support its terrorist activities.[70]

To support their claim, plaintiffs sought outtakes from interviews of Al–Aqsa and Fatah leaders conducted as part of a BBC documentary.[71]  Plaintiffs sought these outtakes to establish that the PA and PLO supported and controlled Al–Aqsa.[72]  In other words, the outtakes would only potentially demonstrate part of Plaintiffs' theory, namely elements three and four discussed above. Despite that, the court ruled that the information sought went to the "heart" of the theory of liability.[73]

Here, the sought deposition testimony goes to the heart of Mr. Butowsky's defense. Plaintiff seeks Ms. Zimmerman's testimony on the following four topics: (1) Communications between Defendant Butowsky and Ms. Zimmerman relating to Aaron Rich prior to the publication of the Fox News Article; (2) whether Ms. Zimmerman spoke directly to the "federal investigator" source mentioned in the Fox News Article; (3) the decision to retract the Fox News Article and discussions about that decision; and (4) communications between Defendant Butowsky and Ms.

---

[69] *Id.* at 237.

[70] *Id.*

[71] *Id.* at 241-42.

[72] *Id.* at 242.

[73] *Id.*

Zimmerman relating to Mr. Wheeler's litigation and the September 2017 meeting at Defendant Butowsky's house.

With respect to the first topic (communications prior to the publication of the Fox News Article), if the Court finds that these communications fall within the scope of the privilege, Plaintiff overcomes the privilege given the central importance of Ms. Zimmerman's testimony on Plaintiff's core claims and Defendants' core defenses.  Understanding what false statements Defendant Butowsky conveyed to Ms. Zimmerman regarding Plaintiff is central to his defamation and intentional infliction of emotional distress claims.  To the extent that Defendant Butowsky made no statements regarding Plaintiff to Ms. Zimmerman prior to the publication of the Fox News Article, that is directly relevant to his mental state (and therefore recklessness or actual malice) when he subsequently began to make such statements about Plaintiff, as it demonstrates his knowledge that such later statements were false.  The Defendant's credibility is always relevant, and goes to the heart of a matter.[74]

With respect to the second topic, as discussed earlier, Plaintiff's position is that Ms. Zimmerman has waived the newsgathering protections for the alleged "federal" source referenced in the Fox News Article.  If the Court disagrees, however, Plaintiff would not ask Ms. Zimmerman to identify the real name, to the extent she knows, of this "federal" source.  But, Plaintiff should be permitted to ask Ms. Zimmerman to testify under oath, without revealing the source's identity, whether she spoke directly to the source prior to publication, or rather whether she relied upon representations from Defendant Butowsky or Rod Wheeler for the Fox News Article's assertions.

---

[74] *In re Subpoena to Goldberg*, 693 F. Supp. 2d 81, 86 (D.D.C. 2010).

Defendant Butowsky has put the reliability of this source at the heart of his defense,[75] but has also stated that Ms. Zimmerman did not speak to the alleged source prior to publication[76]—Plaintiff is entitled to ask Ms. Zimmerman whether Defendant Butowsky's prior representations regarding Ms. Zimmerman are truthful and accurate.

With respect to the retraction of the Fox News Article, and if the Court disagrees that the retraction falls outside the scope of the newsgathering privileges, Plaintiff overcomes the privilege because the decision to retract and discussion around it are central to this litigation. The retraction of the Fox News Article appears to be a critical turning point in Mr. Butowsky's narrative regarding Seth and Aaron Rich—it was only after the publication and retraction that Defendant Butowsky began to accuse Aaron Rich of involvement in the DNC hack, and relatedly, it was not until *after* the retraction that Mr. Butowsky began to allege for the first time that Joel and Mary Rich supposedly admitted that they "know what our sons did."[77] It is plausible, if not probable, that Fox News's decision to retract the Fox News Article was relevant to the shift in Defendant Butowsky's narrative; and it is certain that the reasoning for the retraction of the Fox News Article is highly probative of what Mr. Butowsky knew when he continued to assert (as he still does today) that an FBI report linking Seth Rich to WikiLeaks exists. Ms. Zimmerman's testimony as to what Mr. Butowsky did or did not say about Aaron Rich after the Fox News Article was published and retracted goes to the core of his mental state (whether that mental state is evaluated via a negligence or actual malice standard).

---

[75] *See* Dkt. 127 at 5.

[76] *See* Ex. 27.

[77] *See* Dkt. 3 ¶ 82.

With respect to discussions of Mr. Wheeler's litigation and the September 2017 meeting, if the Court does not agree those are outside the scope of the newsgathering privileges, Plaintiff has demonstrated that those communications are critical to this case. Ms. Zimmerman's testimony about her communications immediately before, during, and after the September 2017 meeting at Defendant Butowsky's home is also critical to establishing what Defendant Butowsky and Defendant Couch were attempting to disseminate into the public domain at that point in time. Plaintiff and his family were the subject of that meeting, and beginning the very day after that meeting, Defendant Couch published numerous tweets and Periscope videos defaming Plaintiff.[78]

2.   Plaintiff Has Exhausted All Reasonable Alternative Sources of Information

Plaintiff has also exhausted reasonable means of obtaining the information sought from Ms. Zimmerman. With respect to the limited scope of questions relating to the FBI source and with respect to the topic of the retraction, Ms. Zimmerman is the only witness who can testify fully to these issues. With respect to Ms. Zimmerman's conversations with Defendant Butowsky prior to publication of the Fox News Article, the only sources of information are Defendant Butowsky and Ms. Zimmerman. But as described above, Defendant Butowsky did not initially allege that Plaintiff was involved in the hack of the DNC, or that Plaintiff's parents had confirmed as much. It is unreasonable to force Plaintiff to rely solely on Defendant Butowsky's testimony on this given his previous false statements, including his false claim that he has "said virtually nothing in connection with Aaron Rich."[79]   Further, Mr. Butowsky appears to claim that he was rendered

---

[78] *E.g.*, Dkt. 3 ¶¶ 51-54.

[79] *See* Dkt. 116 at 21.

medically unable to focus on these matters as a result of pain and pain medications following hip surgery in March 2017.[80]  As such, Ms. Zimmerman may be the only firsthand witness capable of testifying as to these key communications.

## VI.    Ms. Zimmerman and Fox News Provide No Support for Their Position that Ms. Zimmerman's Deposition Should be Stayed

There is no legal support for Ms. Zimmerman's separate claim for a protective order.  The fact that Ms. Zimmerman is likely to be deposed in a separate lawsuit involving different parties is not a reason to delay her testimony in this matter.

The Motion relies primarily on two cases, *In re Subpoena to Wang* and *Ecomission Solutions, LLC v. CTS Holdings, Inc.*  In *Wang*, the court stayed the deposition of Dr. Ping Wang because the parties were in the midst of arguing as to whether certain documents could be properly withheld on a claim of attorney-client privilege.[81]  The court stayed the deposition because if the attorney-client privilege was determined to have been waived and hence additional documents were required to be produced, Dr. Wang might be deposed on these additional documents.[82]  In

---

[80] *See* Dkt. No. 106 at 6-7 ("On March 22, 2017, Mr. Butowsky underwent a total left-hip replacement. Declaration of Edward Butowsky, dated January 3, 2019 (the 'Butowsky Decl.') at 3.  Over the course of the following year, Mr. Butowsky suffered debilitating back, groin, thigh and hip pain that required two additional surgeries, including back surgery. *Id.* at 4-9.  At the time the instant lawsuit was filed, Mr. Butowsky faced excruciating pain. *Id.* at 10.  Mr. Butowsky was unable to focus on the allegations, beyond noting that they appeared absurd, since he had made virtually no statements of any kind about Plaintiff.  *Id.*"); Dkt. No. 109-9 at 6 ("The medications I have needed over the last two years have seriously affected my mental capacities even on days when the pain has subsided and I have been able to work.  These issues have severely limited my ability to respond to Plaintiff's discovery demands and mount my own defense in the present litigation.")

[81] *In re Subpoena to Wang*, 214 F. Supp. 3d 91, 93 (D.D.C. 2016).

[82] *Id.* at 95-96.

other words, the court stayed the deposition until the proper scope of the deposition could be determined.[83]   That makes sense, and is precisely why Plaintiff agreed to delay the deposition of Mr. Adam Housley pending this Court's resolution of this Motion.   This Motion, however, seeks something different—a stay of an appropriate and necessary deposition solely because Ms. Zimmerman *may* be deposed in a different case in a different jurisdiction.

   *Ecomission* is similarly inapplicable.   In that case, Dell Marketing, LP ("Dell") moved to stay the deposition of Bradley Hughes.[84]   Mr. Hughes had been served with a subpoena by defendants to take his deposition as a representative of non-party Dell, but the defendants had also filed a motion to add Dell as a third-party defendant. [85]   Dell filed a motion to stay Mr. Hughes's deposition until it was determined whether Dell would be added as a defendant and hence whether Mr. Hughes would be deposed as a representative of a defendant or as a representative of a non-party.[86]   The court's decision to grant that motion is a far cry from staying a deposition simply because the deponent may later be deposed in another action.[87]

   As such, Ms. Zimmerman and Fox News provide no grounds for the deposition of Ms. Zimmerman to be stayed.   Indeed, this Court has allowed depositions to proceed even when the depositions would overlap with multiple *prior* depositions in other actions and testimony at "numerous" Congressional hearings.   *See U.S. Department of the Treasury v. Pension Benefit Guaranty Corp.*, 301 F.R.D. 20, 30 (D.D.C. 2014).   That is because this Court has recognized that

---

[83] *Id.*

[84] *Ecomission Solutions, LLC v. CTS Holdings, Inc.*, 2016 WL 4506974, at *2 (D.D.C. 2016).

[85] *Id.* at *1.

[86] *Id.* at *2.

[87] *Id.* at *3.

depositions "rank high in the hierarchy of pre-trial, truth-finding mechanisms," and that limiting discovery "goes against courts' general preference for a broad scope of discovery." *Id.* at 25, 30.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny the Motion in its entirety.

DATED:  January 29, 2020

*/s/ Michael J. Gottlieb*
MICHAEL J. GOTTLIEB (D.C. Bar No. 974960)
WILLKIE FARR & GALLAGHER LLP
1875 K Street NW
Washington, DC 20006
Tel: (202) 303-1000
Fax: (202) 303-2000
mgottlieb@willkie.com

JOSHUA P. RILEY (D.C. Bar No. 1026900)
MERYL C. GOVERNSKI (D.C. Bar No. 1023549)
BOIES SCHILLER FLEXNER LLP
1401 New York Ave NW
Washington, DC 20005
Tel: (202) 237-2727
Fax: (202) 237-6131
jriley@bsfllp.com
mgovernski@bsfllp.com

***Attorneys for Plaintiff Aaron Rich***

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that on January 29, 2020, the foregoing document was filed through the CM/ECF system and thereby served electronically on counsel for Malia Zimmerman, Fox News Network LLC, Defendant Edward Butowsky, and Defendant Matthew Couch.   A courtesy copy of the foregoing document also was emailed to their counsel, Eden Quainton, at equainton@gmail.com.  Mr. Quainton has agreed to convey served and filed documents to Defendant America First Media through Defendant Couch as necessary.


Dated: January 29, 2020

*/s/ Michael J. Gottlieb*
MICHAEL J. GOTTLIEB
WILLKIE FARR & GALLAGHER LLP
1875 K Street NW
Washington, DC 20006
Tel: (202) 303-1000
Fax: (202) 303-2000
mgottlieb@willkie.com
D.C. Bar No. 974960

*Attorney for Plaintiff Aaron Rich*