**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| AARON RICH | |
| Plaintiff, | |
| v. | Civil Action No. 1:18-cv-00681-RJL |
| | Hon. Richard J. Leon |
| EDWARD BUTOWSKY, MATTHEW COUCH, and AMERICA FIRST MEDIA, | |
| Defendants. | |

**REPLY MEMORANDUM IN SUPPORT OF THE MOTION OF
NON-PARTIES MALIA ZIMMERMAN AND FOX NEWS NETWORK, LLC, FOR
A PROTECTIVE ORDER BARRING DEPOSITION**

David H. Stern (*pro hac* pending)
Vincent H. Cohen, Jr.

DECHERT LLP
U.S. Bank Tower
633 West 5th Street, 26th Floor
Los Angeles, CA 90071

1900 K Street, NW
Washington, DC 20006
Tel: (213) 808-5720
Fax: (213) 808-5760

*Attorneys for Non-party Malia Zimmerman*

Joseph M. Terry
Stephen J. Fuzesi
Katherine A. Petti

WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Tel: (202) 434-5000
Fax: (202) 434-5029

*Attorneys for Non-party Fox News Network, LLC*

## TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................................... ii

TABLE OF AUTHORITIES .............................................................................................. iii

I.     Plaintiff Misconstrues the Scope of the Constitutional and Statutory
Newsgathering Privileges. ............................................................................................ 2

II.     The Privileges Apply to Each Category of Testimony Sought. .................................... 5

      A.      Communications Between Ms. Zimmerman and Sources Leading Up to
the 2017 Article. ............................................................................................... 5

      B.      Fox News's Decision to Retract the 2017 Article. ........................................... 9

      C.      Information Obtained While Investigating Other Potential News Stories
After the Publication of the 2017 Article. ...................................................... 11

III.     Plaintiff Cannot Overcome Either the First Amendment or the New York
Newsgathering Privilege. ............................................................................................ 13

      A.      The Information Sought Does Not Go to the "Heart" of Plaintiff's Claims
Nor Is It "Critical or Necessary." .................................................................. 13

      B.      Plaintiff Has Not Exhausted Alternative Sources of Information. .................. 18

      C.      Plaintiff Has Not Made a Clear and Specific Showing as to Ms.
Zimmerman's Testimony. ............................................................................... 20

      D.      Ms. Zimmerman Has Not Waived the Newsgathering Privilege. ................... 21

IV.     Should the Court Not Bar Ms. Zimmerman's Deposition, this Court Should Stay
the Deposition to Avoid Prejudice and Undue Burden. ............................................... 24

CONCLUSION ................................................................................................................. 25

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Alexander v. F.B.I.*, 186 F.R.D. 21 (D.D.C. 1998) .......................................................11

*Auersperg ex rel. von Bulow v. von Bulow*, 811 F.2d 136 (2d Cir. 1987) ................................6, 11

*Baker v. Goldman Sachs & Co., (In re Eisinger)*, No. 09-10053-PBS, 2011 WL 1458230, at *3 (S.D.N.Y. Apr. 12, 2011), *aff'd*, 669 F.3d 105 (2d Cir. 2012) ..................6, 10

*Banks v. Vilsack*, 932 F. Supp. 2d 185 (D.D.C. 2013)....................................................2

*Branzburg v. Hayes*, 408 U.S. 665 (1972)..................................................................3

*Bredemus v. Int'l Paper Co.*, No. CV 06-1274 (PJS/RLE), 2008 WL 11348492 (D. Minn. Aug. 22, 2008) ...............................................................................22

*Carey v. Hume*, 492 F.2d 631 (D.C. Cir. 1974)..........................................................14

*Dowd v. Calabrese*, 577 F. Supp. 238 (D.D.C. 1983) .................................1, 14, 15, 16

*Ecomission Sols., LLC v. CTS Holdings, Inc.*, No. 16-1793 (EGS), 2016 WL 4506974 (D.D.C. Aug. 26, 2016)....................................................................24

*Eidos Display, LLC v. Chunghwa Picture Tubes, Ltd.*, 296 F.R.D. 3 (D.D.C. 2013) ......................................................................................................4

*Estate of Klieman v. Palestinian Auth.*, 18 F. Supp. 3d 4 (D.D.C. 2014)......................14

*Estate of Klieman v. Palestinian Auth.*, 293 F.R.D. 235 (D.D.C. 2013) ................13, 14

*Giuffre v. Maxwell*, 221 F. Supp. 3d 472 (S.D.N.Y. 2016) ................................. *passim*

*Goldberg v. Amgen, Inc.*, 123 F. Supp. 3d 9 (D.D.C. 2015)...................................3, 5, 13

*Gonzales v. NBC, Inc.*, 194 F.3d 29 (2d Cir. 1999) .......................................................3

*Gray v. Hoffman-La Roche, Inc.*, No. 02-136, 2002 WL 1801613 (D.D.C. Mar. 27, 2002) ....................................................................................................5

*Grunseth v. Marriott Corp.*, 868 F. Supp. 333 (D.D.C. 1994) .......................................5

*Guzman v. News Corp.*, 877 F. Supp. 2d 74 (S.D.N.Y. 2012), *aff'd*, No. 09 Civ. 9323 (BSJ)(RLE), 2012 WL 13042629 (S.D.N.Y. Nov. 5, 2012)...........................9

*Herbert v. Lando*, 441 U.S. 153 (1979) ...................................................................10

*Hutira v. Islamic Republic of Iran*, 211 F. Supp. 2d 115 (D.D.C. 2002) ............. *passim*

*In re Grand Jury Subpoena, Judith Miller*, 438 F.3d 1141, 1177 (D.C. Cir. 2006) .....................22

*Krase v. Graco Children Prods. (In re Application to Quash Subpoena to NBC)*,
    79 F.3d 346 (2d Cir. 1996)...........................................................................1, 13, 14

*\*Liberty Lobby, Inc. v. Rees*, 111 F.R.D. 19 (D.D.C. 1986)................................... *passim*

*Lozman v. City of Riviera Beach*, No. 08-cv-80134-HURLEY/HOPKINS, 2014
    WL 12360697 (S.D. Fla. Oct. 8, 2014)......................................................................22

*Maughan v. NL Indus.*, 524 F. Supp. 93 (D.D.C. 1981) .........................................3, 7, 8

*Mgmt. Info. Techs., Inc. v. Alyeska Pipeline Serv. Co.*, 151 F.R.D. 471 (D.D.C.
    1993) .................................................................................................................13

*Palandjian v. Pahlavi*, 103 F.R.D. 410 (D.D.C. 1984)..............................................4, 9

*\*Peck v. City of Bos. (In re Slack)*, 768 F. Supp. 2d 189 (D.D.C. 2011)............................. *passim*

*\*Phigenix, Inc. v. Genentech, Inc. (In re Subpoena to Wang)*, 214 F. Supp. 3d 91
    (D.D.C. 2016)......................................................................................................24

*Saperstein v. Palestinian Auth. (In re Goldberg)*, 693 F. Supp. 2d 81, 84 (D.D.C.
    2010) ...........................................................................................................3, 13, 15

*\*Tripp v. DOD*, 284 F. Supp. 2d 50 (D.D.C. 2003).......................................... *passim*

*United States v. Kellogg Brown & Root Servs., Inc.*, 284 F.R.D. 22 (D.D.C. 2012).................4, 5

*Westmoreland v. CBS, Inc.*, 97 F.R.D. 703 (S.D.N.Y. 1983) ...................................10, 11

*\*Zerilli v. Smith*, 656 F.2d 705 (D.C. Cir. 1981) ................................................ *passim*

### STATE CASES

*Brown & Williamson Tobacco Corp. v. Wigand*, No. 101678/96, 1996 WL
    350827, at \*5 (N.Y. Sup. Ct. Feb. 28, 1996) ...........................................................19

*\*Flynn v. NYP Holdings*, 235 A.D.2d 907 (3d Dep't 1997).....................................10, 14, 20

*\*Guice-Mills v. Forbes*, 819 N.Y.S.2d 432 (Sup. Ct. 2006)..........................7, 22, 23, 24

*In re Am. Broad. Companies, Inc.*, 735 N.Y.S.2d 919 (Sup. Ct. 2001)..........................14, 15, 16

*\*In re Application of Home Box Office, Inc.*, 103 N.Y.S.3d 794 (Sup. Ct. 2019)................ *passim*

*In re Dan*, 363 N.Y.S.2d 493 (Sup. Ct. 1975) .......................................................22, 23

*In re Subpoena Duces Tecum to Ayala*, 616 N.Y.S.2d 575 (Sup. Ct. 1994) ..........................20, 21

*People v. Hendrix*, 820 N.Y.S.2d 411, 416 (Sup. Ct. 2006) ...........................................................20

*People v. Iannaccone*, 447 N.Y.S.2d 996 (Sup. Ct. 1982) ......................................................13, 22

*Perito v. Finklestein*, 51 A.D.3d 674 (2d Dep't 2008) ..................................................................21

*Sands v. News Am. Publ.*, 161 A.D.2d 30 (1st Dep't 1990) ......................................................3, 10

## OTHER AUTHORITIES

First Amendment ................................................................................................................. *passim*

Federal Rule of Civil Procedure 26 ...........................................................................................15

N.Y. Civ. Rights Law § 79-h ................................................................................................ *passim*

Aaron Rich's opposition only confirms that the central purpose of his subpoena for testimony from Fox News reporter Malia Zimmerman is not to obtain information critical to his own lawsuit, but rather to obtain information useful in another suit—his parents' separate case pending in the Southern District of New York against Ms. Zimmerman and Fox News arising out of her May 2017 online article.  As Plaintiff concedes, the claims in *his* lawsuit are based solely on allegedly false statements by Defendants Butowsky, Couch, and AFM.  (Opp. at 2).  Yet his opposition proceeds as if Fox News's publication—and even Fox News's internal deliberations—are somehow at issue in his own lawsuit.  They are not.  Plaintiff does not come close to carrying his heavy burden to overcome the constitutional and statutory newsgathering protections implicated here.

Indeed, Plaintiff's opposition reveals the extent to which he seeks information at the heart of the First Amendment and New York privileges for journalists invoked by Ms. Zimmerman and Fox News.  Plaintiff explicitly seeks, for instance, testimony relating to a confidential source—as well as testimony regarding communications with other sources in the course of Ms. Zimmerman's newsgathering and internal editorial decisions at Fox News.  (*Id.* at 24).  Plaintiff then wholly fails to meet his burden in establishing how this information is both critical to *his* claims and not duplicative of testimony he can seek from other witnesses.  *See Peck v. City of Bos. (In re Slack)*, 768 F. Supp. 2d 189, 194–95 (D.D.C. 2011) (requiring that the information go to the "heart" of Plaintiff's claim); *Krase v. Graco Children Prods. (In re Application to Quash Subpoena to NBC)*, 79 F.3d 346, 351 (2d Cir. 1996) (requiring that Plaintiff's claim "*virtually rises or falls* with the admission or exclusion" of the information (emphasis added)); *Dowd v. Calabrese*, 577 F. Supp. 238, 242 (D.D.C. 1983) ("cumulative" evidence does not meet this standard); *In re Application of Home Box Office, Inc.*, 103 N.Y.S.3d 794, 801 (Sup. Ct. 2019)

1

(same).  If anything, Plaintiff's collection of dozens of exhibits illustrates just how he can—and

apparently has already—obtained discovery as to the very issues on which he contends he must

take testimony from Ms. Zimmerman.  Further, Plaintiff cannot even articulate what Ms.

Zimmerman's testimony would be on these topics—which, alone, is fatal to his bid to overcome

the privilege.

Accordingly, the Court should issue a protective order barring Ms. Zimmerman's

deposition.  In the alternative, her testimony should be coordinated with her deposition in the

New York action in which she is a party.

## ARGUMENT

I.      **Plaintiff Misconstrues the Scope of the Constitutional and Statutory Newsgathering Privileges.**

Plaintiff does not dispute the applicability of New York law to this dispute.[1]  Instead,

citing no authority in support, he asserts that both the New York and First Amendment privileges

at issue are "narrow."  (Opp. at 13).  But that is not the law.  It is well-established that the

privileges sweep broadly to protect journalists from just the sort of testimony sought by Plaintiff.

The First Amendment privilege broadly protects information "obtained as part of the[]

[reporter's] news gathering role," *In re Slack*, 768 F. Supp. 2d at 193 (citing *Zerilli v. Smith*, 656

F.2d 705, 711 n.39 (D.C. Cir. 1981)), and the New York privilege broadly protects information

"coming into [the reporter's] possession in the course of gathering or obtaining news for

publication," N.Y. Civ. Rights Law § 79-h.  Both privileges protect against "the symbolic harm

of making journalists appear to be an investigative arm of the judicial system, the government or

---

[1] He purports to "reserve[] the right to brief choice-of-law" at a later time, Opp. at 13 n.39, but a party opposing a motion who "does not address an argument advanced in the motion is deemed to have conceded the argument."  *Banks v. Vilsack*, 932 F. Supp. 2d 185, 193 (D.D.C. 2013).

private parties." *In re Slack*, 768 F. Supp. 2d at 194 (citing *Gonzales v. NBC, Inc.*, 194 F.3d 29, 35 (2d Cir. 1999)); *Giuffre v. Maxwell*, 221 F. Supp. 3d 472, 477 (S.D.N.Y. 2016).  Both promote "the broader public policy of encouraging the free flow of information and avoiding a chill on the press," and protect the press's ability to "publish freely on topics of public interest without harassment and scrutiny by litigants seeking to conduct 'fishing expeditions' into [unpublished] materials in the hope that some relevant information may turn up."  *Giuffre*, 221 F. Supp. 3d at 477; *Goldberg v. Amgen, Inc.*, 123 F. Supp. 3d 9, 16 (D.D.C. 2015) (extending protection to nonconfidential information to avoid "exposure of press files to litigant scrutiny . . . burden[ing] the press with heavy costs of subpoena compliance"); *Hutira v. Islamic Republic of Iran*, 211 F. Supp. 2d 115, 118 (D.D.C. 2002) ("[T]he privilege is a recognition [of] society's interest in protecting the integrity of the news gathering process, and in ensuring the free flow of information to the public.").[2]

The privileges protect confidential, nonconfidential, and unpublished information.  *See Goldberg*, 123 F. Supp. 3d at 16–17; *Maughan v. NL Indus.*, 524 F. Supp. 93, 94 (D.D.C. 1981); N.Y. Civ. Rights Law § 79-h.  Both privileges extend to "inquiries into the newsgathering *process, as a whole*."  *Giuffre*, 221 F. Supp. 3d at 477, 477-79 (emphasis added) (citation and internal quotation marks omitted) (prohibiting inquiry into all "unpublished details of the

---

[2] Plaintiff cites *Branzburg v. Hayes*, 408 U.S. 665, 682 (1972) and *Sands v. News America Publishing Inc.*, 161 A.D.2d 30, 37 (1st Dep't 1990) to support his assertion that the privilege is "narrow."  "Although *Branzburg* may limit the scope of a reporter's First Amendment privilege in criminal proceedings, . . . in civil cases, where the public interest in effective law enforcement is absent, that case is not controlling."  *Saperstein v. Palestinian Auth.* (*In re Goldberg*), 693 F. Supp. 2d 81, 84 (D.D.C. 2010) (quoting *Zerilli*, 656 F.2d at 711).  *Sands*, too, is inapposite. There, the reporter was a party to the case and the court did not compel disclosure from the reporter—it merely issued an order "preventing defendants from using as a sword the information which they are shielding from disclosure."  *Sands*, 161 A.D.2d at 37.  Unlike the *Sands* reporter, Ms. Zimmerman is not a party here.

newsgathering process" to prevent "problematic incursions into the integrity of the editorial process"); *Hutira*, 211 F. Supp. 2d at 121 ("[T]he [First Amendment] privilege is intended to protect the press in general and the news gathering *process as a whole*." (emphasis added)); *Palandjian v. Pahlavi*, 103 F.R.D. 410, 412 (D.D.C. 1984) (quashing subpoena duces tecum for notes and tapes pursuant to First Amendment privilege to prevent "intrusion into the newsgathering and editorial *processes*" (emphasis added)).

Although these privileges require the reporter to possess an intent to disseminate information to the public, *see, e.g.*, *Hutira*, 211 F. Supp. 2d at 119 n.4, this intent can be inferred from the reporter's status as a journalist alone: "[w]hile [the reporter] has not directly alleged that she obtained [the] information . . . with the intent to disseminate the information to the public, the fact that she was employed in a journalistic capacity is sufficient to meet her burden," *see Tripp v. DOD*, 284 F. Supp. 2d 50, 58 (D.D.C. 2003). Other indicia of intent can include participation in "traditional newsgathering activities," and the existence of a reporter-source relationship between the communicating parties. *See id.* (reasoning that "[the reporter] engaged in traditional journalistic activities as a reporter for *Stars and Stripes*, an organization whose sole purpose is to disseminate commercial news and information to individuals involved in the military"); *Giuffre*, 221 F. Supp. 3d at 479 (protecting "informal communication . . . even if not for the immediate purpose of gathering information for a specific article" where communication arises from reporter-source interaction).

In the face of this authority, Plaintiff further argues that a protective order barring a deposition should not issue absent "extraordinary circumstances." (Opp. at 16). But neither case Plaintiff cites for this proposition even involved the application of newsgathering privileges. *See Eidos Display, LLC v. Chunghwa Picture Tubes, Ltd.*, 296 F.R.D. 3 (D.D.C. 2013); *United States*

*v. Kellogg Brown & Root Servs., Inc.*, 284 F.R.D. 22 (D.D.C. 2012).  And Plaintiff does not

dispute that "in the ordinary case[,] the civil litigant's interest in disclosure should yield to the

journalist's privilege."  *Zerilli*, 656 F.2d at 712 ("[T]he privilege . . . [should] prevail in all but

the most exceptional cases"); *see also In re Slack*, 768 F. Supp. 2d at 194, 196 (internal quotation

marks omitted) (in civil cases, the privilege is "readily available," "typically prevails" over the

private interest, and "should be abrogated only as a last resort").  In fact, Plaintiff does not

address any of a series of cases cited in Ms. Zimmerman's opening brief in which courts quashed

subpoenas on the basis of the newsgathering privilege.  (Mem. at 12-13 (citing *Goldberg*, 123 F.

Supp. 3d at 22; *Tripp*, 284 F. Supp. 2d at 53; *Grunseth v. Marriott Corp.*, 868 F. Supp. 333, 334–

37 (D.D.C. 1994); *In re Slack*, 768 F. Supp. 2d at 195-98; *Hutira*, 211 F. Supp. 2d at 121; *Gray

v. Hoffman-La Roche, Inc.*, No. 02-136 (RMU), 2002 WL 1801613 (D.D.C. Mar. 27, 2002))).

## II.    The Privileges Apply to Each Category of Testimony Sought.

Each category of information that Plaintiff seeks falls well within the First Amendment

and New York privileges.

### A.    Communications Between Ms. Zimmerman and Sources Leading Up to the 2017 Article.

The first two categories of information sought by Plaintiff expressly seek testimony on

newsgathering by Ms. Zimmerman for her 2017 article—"[c]ommunications between Defendant

Butowsky and Ms. Zimmerman relating to Aaron Rich prior to the publication of the Fox News

Article" and, with respect to a confidential source, "whether Ms. Zimmerman spoke directly to

the 'federal investigator' source mentioned in the Fox News Article."  (Opp. at 24).

Plaintiff does not dispute that testimony related to Ms. Zimmerman's confidential federal

source is protected by the First Amendment and New York privilege.  (*See id.* at 14-15

(enumerating categories that Plaintiff contends are *not* protected by either privilege)).  Indeed,

5

any information Ms. Zimmerman has on either of these two topics clearly was obtained in the course of gathering news with the intent to publish (in the form of the 2017 article), and thus is protected "newsgathering" material under both the First Amendment and New York law.  *See Hutira*, 211 F. Supp. 2d at 119 n.4 (First Amendment standard); *Auersperg ex rel. von Bulow v. von Bulow*, 811 F.2d 136, 144 (2d Cir. 1987) (New York standard); *Giuffre*, 221 F. Supp. 3d at 475, 478–79 (same).

Ms. Zimmerman communicated with Mr. Butowsky while engaging in a "newsgathering activit[y]," namely investigating the high-profile murder of Seth Rich, and while "employed in a journalistic capacity" by Fox News—the publisher of the 2017 article relating to that murder. *See Tripp*, 284 F. Supp. 2d at 58 (holding that the information sought fell within the First Amendment privilege because "[the reporter] engaged in traditional journalistic activities as a reporter for . . . an organization whose sole purpose is to disseminate commercial news and information to individuals involved in the military").

New York law is explicit in its protection of the "the privacy of editorial processes and the press's independence in its selection of material for publication," including all "unpublished details of the newsgathering process."  *Giuffre*, 221 F. Supp. 3d at 477-78.  Accordingly, courts have barred inquiry into such topics as "who made calls and interviewed particular sources, techniques for the reporters' investigation, . . . the backgrounds of the coauthors and editorial staff," and "whether [the reporter] consulted with any experts or other sources in the course of the investigation."  *See id.* at 478-79; *Baker v. Goldman Sachs & Co.* (*In re Eisinger*), No. 09-10053-PBS, 2011 WL 1458230, at *3 (S.D.N.Y. Apr. 12, 2011), *aff'd*, 669 F.3d 105 (2d Cir. 2012).  This protected editorial "process" specifically includes "informal communication with sources, even if not for the immediate purpose of gathering information for a specific article"

because such communications are "an integral part of the overall newsgathering process." *Giuffre*, 221 F. Supp. 3d at 479 ("[T]he Shield Law does not narrowly apply only to the specific exchanges where the source conveys "news'" because "[s]uccessful journalists must cultivate extensive networks of sources, and communicate with them regularly on a variety of topics").

Plaintiff nonetheless argues that because "Ms. Zimmerman never published a story about Aaron Rich[,] . . . any conversations [she] may have had with Defendant Butowsky relating to Plaintiff are not protected by the newsgathering privilege." (Opp. at 19). Plaintiff incorrectly cites as support *Hutira*, 211 F. Supp. 2d 115, and *Guice-Mills v. Forbes*, 819 N.Y.S.2d 432 (Sup. Ct. 2006). Neither imposes such a rule establishing protection only for newsgathering of *published* content. Rather, it is clear that both the First Amendment and New York privilege provide protection for *unpublished* materials. *See* N.Y. Civ. Rights Law § 79-h (protecting "unpublished news obtained or prepared by a journalist or newscaster in the course of gathering or obtaining news"); *Maughan*, 524 F. Supp. at 94 (quashing subpoena for unpublished "notes, tape recordings, and other documents" reasoning that "[t]he right of a newspaper to determine for itself *what it is to publish* and how it is to fulfill its mandate of dissemination must be given great respect." (emphasis added)). This is for obvious reason. Reporters often investigate leads without ultimately publishing a story. To allow intrusion into the press whenever an investigation does not result in published content would conflict with journalistic practice and is incompatible with the breathing space for a free press required by the First Amendment and New York law.

Likewise, Plaintiff asserts that to qualify as newsgathering material, information must be obtained from a "source" and that Butowsky was not a "source."[3]  But Plaintiff cites no case defining the term "source" at all, much less in a way that would exclude Mr. Butowsky.  Nor does Plaintiff offer any plausible definition of a "source" that would exclude him.  Plaintiff appears to argue that communications with Mr. Butowsky fall outside the privilege because the May 2017 article did not expressly refer to him and instead "referred to only two sources—Mr. Wheeler and an unnamed 'federal investigator.'"  (Opp. at 19).  This is meritless.  There is no reason to limit Ms. Zimmerman's newsgathering privilege solely to information she obtained from persons who were specifically cited in her 2017 article.  Again, the privileges fully protect unpublished information, including "informal communication with sources, even if not for the immediate purpose of gathering information *for a specific article*."  *Giuffre*, 221 F. Supp. 3d at 479 (emphasis added) (extending protection beyond the "specific exchanges where the source conveys "news.'"); N.Y. Civ. Rights Law § 79-h (protection for unpublished news); *Maughan*, 524 F. Supp. at 94 (extending protection to unpublished materials).  Just as reporters do not publish all information they gather, reporters frequently rely on sources that they do not ultimately quote.  There is simply no basis to suggest that the information from those sources are not newsgathering materials merely because those sources were not cited by name in an article.

Mr. Butowsky was, at all relevant times, a source for Ms. Zimmerman.  Plaintiff does not dispute that they communicated frequently as to the subject of the 2017 article, while

---

[3] Plaintiff suggests that Mr. Butowsky was an "advocate" and an "intermediary," without explaining why a "source" cannot also be either of those things.  (Opp. at 19).  A source that is active and interested in the development of a story is no less a source of newsgathering information and deserves no less protection.  Indeed, many sources are advocates—that is the very reason why they choose to communicate with journalists.  If anything, intrusions into such relationships would be particularly damaging to newsgathering interests by rendering communications with a reporter's most valuable sources subject to discovery.

investigating Seth Rich's murder and any potential link between Seth and WikiLeaks.  Indeed,

Plaintiff even takes the position that "Ms. Zimmerman, Defendant Butowsky, and Mr. Wheeler

worked together to publish the Fox News Article."  (Opp. at 4).  He further points out that Ms.

Zimmerman would reach out to Butowsky to check if he uncovered any new information she

could use in the article.  (*Id.* at 6 (citing an email where Ms. Zimmerman asked Mr. Butowsky if

he had "any news on this key point").  Plaintiff even admits that Mr. Butowsky gave Ms.

Zimmerman "information [Butowsky] obtained from Seymour Hersh."  (*Id.* at 19-20).[4]  In short,

Ms. Zimmerman's communications with Mr. Butowsky are clearly subject to the privileges.

### B.    Fox News's Decision to Retract the 2017 Article.

Plaintiff additionally seeks testimony regarding "the decision to retract the Fox News

Article and discussions about that decision."  (*Id.* at 24).  This request spans not only

communications with Mr. Butowsky, but also internal Fox News deliberations about this

editorial decision.  Once again, any knowledge Ms. Zimmerman has about the retraction of the

2017 article is clearly protected by the First Amendment and New York privileges.

Plaintiff contends that the privileges do not apply to "editorial decisions," citing *Guzman*

*v. News Corp.*, 877 F. Supp. 2d 74 (S.D.N.Y. 2012), *aff'd*, No. 09 Civ. 9323 (BSJ)(RLE), 2012

WL 13042629 (S.D.N.Y. Nov. 5, 2012).  (Opp. at 18).  But the *Guzman* court did not hold that

the newsgathering privilege excluded "editorial decisions"; it merely determined that defendants

had not met their burden of so demonstrating.  *Id.* at 77.  The law in this jurisdiction is that the

First Amendment privilege protects "editorial processes" and the "news gathering process as a

---

[4] On that point, Plaintiff declares that Mr. Hersh was the true "source" in that interaction.  (Opp.
at 20).  But Plaintiff has no basis upon which to assert that a person can only be a "source" of
newsgathering information if he obtains that information through first hand observation rather
than from another person.

whole." *See Palandjian*, 103 F.R.D. at 412 (quashing subpoena to prevent "intrusion into the

newsgathering and editorial processes"); *Hutira*, 211 F. Supp. 2d at 121 (quashing subpoena for

documents and testimony to protect "the integrity of the news gathering process").  The New

York privilege is likewise.  *See Giuffre*, 221 F. Supp. 3d at 477-78, 480 (quashing subpoena for

documents and testimony to protect "the privacy of editorial processes"); *In re Eisinger*, 2011

WL 1458230, at *3-4 (quashing deposition subpoena to protect "investigative and editorial

process, including the interaction of journalists within an investigation").  There can be no

question that the decision whether to *retract* an article, like a decision to publish it in the first

instance, is part and parcel of the "editorial" and "newsgathering process."

      None of the other cases cited by Plaintiff support his assertion.  *Herbert v. Lando*, 441

U.S. 153, 171 (1979), did not address the question of how to apply the constitutional privilege—

let alone the New York privilege—to a retraction at all.  The question there was whether a

defamation defendant was absolutely privileged from providing any testimony into its editorial

processes.[5]  *Id.* at 169.  *Westmoreland v. CBS, Inc.*, 97 F.R.D. 703 (S.D.N.Y. 1983), is likewise

inapplicable.  The plaintiff in that case did not seek information about a retraction, but rather

information about a press release issued by CBS News's president.[6]  *Id.* at 704-07.  Further, the

---

[5] To the extent Plaintiff is contending that the privilege should not apply because the Fox News report is alleged to have been "false," Opp. at 17, that does not affect the analysis.  The newsgathering privilege is routinely invoked in defamation actions, and the D.C. Circuit instructs that even when the reporter is the defendant in such an action, "disclosure should by no means be automatic."  *Zerilli*, 656 F.2d at 714 (instructing that in such cases, "[w]here other relevant factors suggest disclosure is inappropriate, the privilege should prevail").  In such cases, journalists frequently, and successfully, invoke the New York privilege as well.  *See, e.g., Flynn v. NYP Holdings*, 235 A.D.2d 907, 908 (3d Dep't 1997) (New York privilege barred production of documents by reporter who was a defendant to the defamation action); *Sands*, 161 A.D.2d at 37 (New York privilege barred compelling testimony from reporter who was a defendant to the defamation action).

[6] Even if *Westmoreland* extended beyond press releases to encompass retractions of published news, such a decision would be contrary to the plain language of the New York Shield law,

plaintiff there asserted a libel claim against the defendants, and sought documents from those same defendants, which those defendants explicitly relied upon in their defense.  *Id.*  The First Amendment and New York law both consider such circumstances to present a stronger case for disclosure—indeed so did the *Westmoreland* court itself.[7]  *Id.*  ("In other litigations, I have declined to permit intrusion by discovery into the editorial or information gathering process of non-party journalists, where the countervailing interests were insufficient."); *Alexander v. F.B.I.*, 186 F.R.D. 21, 49 (D.D.C. 1998) ("[A] distinction can . . . be drawn between civil cases in which the reporter is a party, as in a libel action, and cases in which the reporter is not a party.").

C.  **Information Obtained While Investigating Other Potential News Stories After the Publication of the 2017 Article.**

Finally, Plaintiff seeks "post-publication communications with Defendants Butowsky and Couch."  (Opp. at 15, 24).  But newsgathering does not stop with the publication of a first, or even a second, article.  Any conversations Ms. Zimmerman had with Mr. Butowsky and Mr. Couch after the publication of the 2017 article are protected by the First Amendment and New York privileges: these were undertaken while engaging in newsgathering—investigating

---

which defines "news" as any "written, oral, pictorial, photographic, or electronically recorded information or communication concerning local, national or worldwide events or other matters of public concern or public interest or affecting the public welfare."  *See* N.Y. Civ. Rights Law § 79-h.  A retraction of a news article discussing "matters of public concern" is certainly also a "matter[]of public concern."  *See id.*

[7] Though the *Westmoreland* court determined that the press release information was not "newsgathering" under the New York privilege, it left open the question of whether it constituted "newsgathering" under the First Amendment privilege and instead based its ultimate decision to compel production solely on the fact that the plaintiff's need outweighed the First Amendment privilege asserted by defendants.  Plaintiff's interests do not outweigh the privilege here, as discussed below in Part III.

potential follow-up news stories.[8]  *See Hutira*, 211 F. Supp. 2d at 119 n.4; *Auersperg*, 811 F.2d at 144; *Tripp*, 284 F. Supp. 2d at 58.  In any case, as discussed, because Ms. Zimmerman's relationship with Mr. Butowsky was that of reporter and source, the New York privilege extends to all "informal communication . . . even if not for the immediate purpose of gathering information for a specific article" to the extent that such communications exist.  *See Giuffre*, 221 F. Supp. 3d at 479.  Any "informal communications" Ms. Zimmerman had, if any, with Mr. Couch is protected for the same reason: her conversations with Mr. Couch would have sought information for a potential follow-up story.

Plaintiff makes much of the claim that Ms. Zimmerman was "suspended" at the time of a purported meeting in Dallas in September 2017.  (Opp. at 20).  Whether true or not, at the time of this meeting, Ms. Zimmerman was still a paid journalist, employed by Fox News.  There is no evidence that she could not continue to investigate potential stories or that she did not attend the meeting with that intent.  Plaintiff offers no other plausible explanation for Ms. Zimmerman's post-publication communications with Defendants Butowsky and Couch.  *See Tripp*, 284 F. Supp. 2d at 58 (applying First Amendment newsgathering privilege where "Plaintiff offer[ed] no alternative explanation, nor [was] any explanation found in the record, for why [the reporter] would have obtained [the] information").

In sum, all of the information sought by Plaintiff falls within the protections of the First Amendment and New York privileges.

---

[8] In the case of Mr. Butowsky, he and Ms. Zimmerman also communicated with respect to the development of other, unrelated potential news stories.

III.    **Plaintiff Cannot Overcome Either the First Amendment or the New York Newsgathering Privilege.**

Plaintiff does not dispute that the New York privilege absolutely protects confidential information and sources.  *See* N.Y. Civ. Rights Law § 79-h(c).  With respect to non-confidential information, Plaintiff substantially understates the stringency of the multi-part test that he must satisfy under the First Amendment and New York law.  (*See* Mem. at 4-5, 10).  And for obvious reason.  He cannot come close to overcoming the multiple, independently-dispositive hurdles that apply when a plaintiff seeks testimony from a non-party journalist like Ms. Zimmerman.  *See, e.g., Mgmt. Info. Techs., Inc. v. Alyeska Pipeline Serv. Co.*, 151 F.R.D. 471, 477 (D.D.C. 1993) ("[T]he Court finds no justification for requiring [the reporter] to provide the requested documents or to testify in a deposition.  She is not a party.  The information requested is of only marginal value . . . .").[9]

A.    **The Information Sought Does Not Go to the "Heart" of Plaintiff's Claims Nor Is It "Critical or Necessary."**

Plaintiff devotes much of his opposition to arguing that the information he seeks is *relevant*, claiming that the standard is whether "the requested information [is] relevant to proving an element of a claim or disproving an element of a defense."  (Opp. at 23).  But the actual standard is substantially higher than relevance.  *See In re Slack*, 768 F. Supp. 2d at 194

---

[9] Plaintiff asserts Ms. Zimmerman and Fox News should have discussed "the potential scope of contemplated testimony prior to filing the[ir] Motion."  (Opp. at 15).  But his brief confirms what was obvious: All of the information sought from Ms. Zimmerman concerns the unrelated 2017 article and related newsgathering.  A reporter is not required to invoke the privilege "on a question-by-question basis."  *See Goldberg*, 123 F. Supp. 3d at 22 (collecting cases).  Mr. Rich also claims that "Adam Housley engaged in such a [meet and confer] process with Plaintiff's counsel, resulting in an agreement to schedule a deposition while reserving rights to object to certain questions based upon privilege claims."  (Opp. at 15).  Fox News's understanding is that Mr. Housley intends to file a similar motion and the parties agreed to adjourn his deposition and his deadline for filing such a motion until this Court rules on the motion filed by Ms. Zimmerman and Fox News.

(requiring the information sought to be "crucial" not merely "relevant"); *People v. Iannaccone*, 447 N.Y.S.2d 996, 998 (Sup. Ct. 1982) ("The reporter's information and source of such information are privileged *regardless of its relevancy*.") (emphasis added); *Krase*, 79 F.3d at 351 ("The test is not merely that the material may be helpful or probative," but whether the claim itself "may be presented without it"); *see, e.g.*, *In re Goldberg*, 693 F. Supp. 2d at 86-87 (barring disclosure despite acknowledging that the information sought was relevant).[10]

The First Amendment privilege requires that the information sought be "crucial" and "go[] to the 'heart'" of Plaintiff's claim. *In re Slack*, 768 F. Supp. 2d at 194–96 (quoting *Carey v. Hume*, 492 F.2d 631, 636 (D.C. Cir. 1974) and *Zerilli*, 656 F.2d at 713). The New York privilege requires that the information be "critical or necessary"—i.e., that his claim "*virtually rises or falls* with the admission or exclusion" of the information. *See Krase*, 79 F.3d at 351; *Flynn*, 235 A.D.2d at 908 (emphasis added).

Further, "[m]ore must be shown than mere potential for impeachment and erosion of credibility." *Liberty Lobby, Inc. v. Rees*, 111 F.R.D. 19, 22 n.3 (D.D.C. 1986); *In re Am. Broad. Companies, Inc.*, 735 N.Y.S.2d 919, 922 (Sup. Ct. 2001) (the requesting party must be able to "define the specific issue, other than general credibility, as to which the sought after [information] provides truly necessary proof"). Evidence that is "cumulative" also will not

---

[10] Plaintiff cites *Estate of Klieman v. Palestinian Auth.*, 293 F.R.D. 235 (D.D.C. 2013) for the proposition that evidence need only "*potentially* demonstrate *part* of Plaintiff's theory." (Opp. at 24 (emphasis added)). Plaintiff misreads *Klieman*. That court reiterated established Circuit law that information must go to "the heart of the matter" and that "in the ordinary case the civil litigant's interest in disclosure should yield to the journalist's privilege." *Id.* at 241. It also specifically noted that the plaintiffs in that case demonstrated that "their need for the information is far from merely speculative"—i.e. that the information did more than "*potentially* demonstrate" the claims at issue. *Id.* The *Klieman* order was also subsequently stayed based on new evidence that the plaintiffs had not exhausted alternative sources. *See Estate of Klieman v. Palestinian Auth.*, 18 F. Supp. 3d 4, 6 (D.D.C. 2014).

overcome the privilege. *See Dowd*, 577 F. Supp. at 242 (information not "crucial" where it "would be collateral and cumulative evidence at best"); *In re Application of Home Box Office*, 103 N.Y.S.3d at 801 (information not "critical" if it is cumulative).

Plaintiff's opposition demonstrates that each category of information he seeks is far from crucial—and is also entirely cumulative based on the witnesses or documents he already has at his disposal. By his own admissions, Plaintiff seeks Ms. Zimmerman's testimony primarily to shed light on the *state of mind* of the *defendants*.[11] But Ms. Zimmerman cannot testify to their mental states. Even if Ms. Zimmerman could offer testimony somehow probative of that point, Plaintiff apparently wants her testimony to corroborate or substantiate evidence he *already has* from defendants themselves or from others. Such testimony cannot be "crucial," and Plaintiff's claims surely do not come close to "rising or falling" based on her testimony. *See Dowd*, 577 F. Supp. at 242; *In re Application of Home Box Office*, 103 N.Y.S.3d at 801.

*First*, with respect to communications with Mr. Butowsky while Ms. Zimmerman was reporting her May 2017 article, Plaintiff claims that "[u]nderstanding what false statements Defendant Butowsky conveyed to Ms. Zimmerman regarding Plaintiff is central to his defamation and [IIED] claims," because such information goes to Mr. Butowsky's "mental state," and "[t]he Defendant's credibility is always relevant."[12] (Opp. at 25). But the law is clear

---

[11] With respect to pre-publication communications with Mr. Butowsky, Plaintiff argues "[t]o the extent that Defendant Butowsky made no statements regarding Plaintiff to Ms. Zimmerman prior to the publication of the Fox News Article that is directly relevant to his *mental state*." (Opp. at 25). With respect to information about the federal source, Plaintiff argues such is relevant on the issue of Mr. Butowsky's reliance on the source. (*Id.* at 25-26). With respect to post-publication communications, Plaintiff seeks to determine "what Defendant Butowsky and Defendant Couch were attempting to disseminate into the public domain," presumably to determine their intent at the time. (*Id.* at 27). With respect to the retraction, Plaintiff argues such information "goes to the core of [Butowsky's] mental state." (*Id.* at 26).

[12] Plaintiff cites *In re Goldberg*, 693 F. Supp. 2d 81, for this proposition. But the *Goldberg* court made clear that even though credibility is *relevant*, relevance does not carry the day. The court

15

that credibility evidence is neither "crucial" nor "critical."  *See Liberty Lobby*, 111 F.R.D. at 22

n.3 ("More must be shown than mere potential for impeachment and erosion of credibility."); *In*

*re Am. Broad. Companies, Inc.*, 735 N.Y.S.2d at 922 (the "sought after [information] [must]

provide[] truly necessary proof" of something more than "general credibility").

Moreover, Ms. Zimmerman's testimony regarding communications that Mr. Butowsky

made to her is cumulative of evidence Plaintiff can obtain from Mr. Butowsky himself.  *See*

*Dowd*, 577 F. Supp. at 242 (information not "crucial" where it "would be collateral

and cumulative evidence at best"); *In re Application of Home Box Office*, 103 N.Y.S.3d at 801

(information not "critical" if it is cumulative).  And Plaintiff further underscores the limited

relevance that communications in this time period even have to the claims at issue in his case.

He admits that, "prior to the retraction of the [2017 article], Defendants do not appear to have

made *any* public accusations regarding Plaintiff[.]"  (Opp. at 2).

*Second*, with respect to Ms. Zimmerman's communications with the confidential "federal

source," Plaintiff claims that "whether [Zimmerman] spoke directly to the source prior to

publication, or rather . . . relied upon representations from Defendant Butowsky or Rod Wheeler"

is relevant because "Butowsky has put the reliability of this source at the heart of his defense, but

has also stated that Ms. Zimmerman did not speak to the alleged source prior to publication."

(Opp. at 25).  To begin with, again such credibility evidence is neither "crucial" nor "critical."

*See Liberty Lobby*, 111 F.R.D. at 22 n.3; *In re Am. Broad. Companies, Inc.*, 735 N.Y.S.2d at 922.

The evidence Plaintiff seeks is also cumulative.  Plaintiff already cites evidence he believes

supports his theory that Ms. Zimmerman never spoke to the source, Opp. at 26, n.76, and even

---

denied the plaintiff's motion to compel the reporter's testimony based on Federal Rule of Civil
Procedure 26(b)'s prohibition on discovery of "cumulative" evidence *and* the much more
protective newsgathering privilege.  *See id.* at 86-87.

acknowledges he seeks Ms. Zimmerman's testimony only to confirm that "Butowsky's prior representations . . . are truthful and accurate." (*Id.* at 26); *see Dowd*, 577 F. Supp. at 242; *In re Application of Home Box Office*, 103 N.Y.S.3d at 801.

Further, Ms. Zimmerman's testimony on this point is not even relevant—let alone critical. It concerns a confidential source in an article not at issue in this lawsuit. Whether Ms. Zimmerman *actually* spoke to the federal source does not reveal anything about Mr. Butowsky's mental state. Mr. Butowsky's mental state depends on what *he* understood to be true.

*Third*, with respect to information about the retraction of the 2017 article, Plaintiff claims that the retraction "appears to be a critical turning point" after which "Butowsky began to accuse Aaron Rich of involvement in the DNC hack.'" (Opp. at 26). He argues that it is "plausible" that the retraction was "relevant to the shift in Defendant Butowsky's narrative." (*Id.*). The possibility that Ms. Zimmerman might possess testimony of "plausible" relevance does not come close to satisfying either the First Amendment or New York standard of criticality. Further, Ms. Zimmerman's knowledge about the investigation and internal decision-making process at Fox News regarding the retraction has no bearing on why Mr. Butowsky allegedly changed *his* "narrative" or *his* mental state at the time. Once again, Mr. Butowsky's mental state depends on what *he* understood. It is apparent that Plaintiff seeks here to engage in a prohibited "fishing expedition" with "the hope that some relevant information may turn up," either for his case or his parents' New York action. *See Giuffre*, 221 F. Supp. 3d at 477-79. But the newsgathering privilege prohibits such "harassment and scrutiny by litigants." *See id.* at 477.

*Finally*, with respect to post-publication communications with Defendants Butowsky and Couch, Plaintiff states that Ms. Zimmerman's testimony about an alleged September 2017 meeting is "critical to establishing what Defendant Butowsky and Defendant Couch were

attempting to disseminate into the public domain at that point in time." (Opp. at 27). Plaintiff's

case does not "rise or fall" with the admission of evidence on this point—if Plaintiff wishes to

determine what defendants "were attempting to disseminate into the public domain," he needs

look no further than the public statements and publications Plaintiff cites in his complaint as the

basis for his IIED and defamation claims. Moreover, Plaintiff concedes that there were

numerous attendees at that meeting, including Defendants Butowsky and Couch as well as third

parties.[13] Even if Ms. Zimmerman's testimony would be helpful, it cannot be "crucial" or

"critical" because it would be cumulative of the testimony of all those other attendees.[14]

## B.     Plaintiff Has Not Exhausted Alternative Sources of Information.

Plaintiff also does not establish that he has exhausted all alternative sources of

information. That, alone, additionally bars the testimony. *See Giuffre*, 221 F. Supp. 3d at 480

(requiring the reporter to be a "last resort"); *Hutira*, 211 F. Supp. 2d at 122 (quashing subpoena

on the exhaustion element alone because plaintiff sought "compelled testimony from the press as

a *first* option rather than a *last* resort"); *Zerilli*, 656 F.2d at 715 (requiring exhaustion of

alternative sources even where doing so "would be time-consuming, costly, and unproductive").

As noted above, Plaintiff argues that all the evidence he seeks goes to Mr. Butowsky's

"mental state." (Opp. at 25-27). The most obvious and available source for this information is

Mr. Butowsky himself, a named defendant subject to discovery obligations. Plaintiff is also

---

[13] Plaintiff claims that at that meeting, the attendees included: "Fox News reporter Malia of
Defendant Butowsky, Defendant Couch, AFM member Josh Flippo, and various members of an
organization called "Shadowbox." (Opp. at 9).

[14] Plaintiff does not argue that any post-publication communications, other than those relating to
the retraction and the September 2017 meeting, are "crucial" or "critical." Plaintiff has therefore
waived the argument that other post-publication communications can overcome the
newsgathering privileges.

apparently in possession of Mr. Butowsky's emails and contemporaneous phone recordings.  As to the September 2017 meeting, Plaintiff has his pick of the numerous other attendees of that meeting, including both of the defendants and other third parties.

Plaintiff argues that Ms. Zimmerman is the only source of information who can testify fully with respect to the details of the retraction decision and whether she communicated with the confidential federal source.  But to the extent that Plaintiff seeks *more* than what Mr. Butowsky himself knew about the source or the retraction during the relevant period, such evidence is irrelevant and reveals nothing about Mr. Butowsky's mental state.  As discussed, the reason Fox News chose to retract an article that did not mention Aaron Rich is wholly irrelevant to Plaintiff's case—certainly not "critical" to it.  Nor are Ms. Zimmerman's communications with a confidential source quoted in that article relevant at all to Plaintiff's case.

With respect to Ms. Zimmerman's pre-publication conversations with Mr. Butowsky, Plaintiff complains that "[i]t is unreasonable to force Plaintiff to rely solely on Defendant Butowsky's testimony on this given his previous false statements," effectively admitting that Plaintiff does in fact have access to this information from an available source, but prefers to obtain it from another.  (Opp. at 27).  Plaintiff cannot establish exhaustion based solely on the fact that he does not like the alternate sources of information.  The privilege does not yield for such preferences.  *See, e.g.*, *Brown & Williamson Tobacco Corp. v. Wigand*, No. 101678/96, 1996 WL 350827, at *5 (N.Y. Sup. Ct. Feb. 28, 1996) (quashing subpoena where plaintiff argued that testimony was needed because the defendant "is not a reliable alternative source because he is inherently dishonest," explaining that accepting this argument "would set a judicial precedent that, in effect, would vitiate the three-prong test of [the New York privilege] since all that would

be required to defeat the journalist's protection would be to allege, without more, that the alternative non-journalistic source is dishonest").[15]

### C.   Plaintiff Has Not Made a Clear and Specific Showing as to Ms. Zimmerman's Testimony.

A party cannot overcome the privilege if that party "does not know what is actually contained" in the requested material or does not know "whether there is evidence in existence." *See In re Application of Home Box Office*, 103 N.Y.S.3d at 799; *People v. Hendrix*, 820 N.Y.S.2d 411, 416 (Sup. Ct. 2006).  This requires a "clear and specific" showing.  *See In re Application of Home Box Office*, 103 N.Y.S.3d at 799.  The requesting party cannot rely on "mere[] speculation" about the content and relevance of the sought-after information.  *Id.; see also In re Subpoena Duces Tecum to Ayala*, 616 N.Y.S.2d 575, 579 (Sup. Ct. 1994) (requiring "demonstrative factual corroboration"); *Liberty Lobby*, 111 F.R.D. at 22 n.3 ("More than mere speculation or supposition must be shown.").

The opposition brief makes clear that Plaintiff does not know the expected content of Ms. Zimmerman's testimony.  With respect to pre-publication communications with Mr. Butowsky, for example, he admits he does not know if Mr. Butowsky made *any* statements to Ms. Zimmerman as to any connection between the Riches and WikiLeaks.  (Opp. at 25 ("Understanding what false statements Defendant Butowsky conveyed . . . is central . . . To the

---

[15] As a seemingly last ditch effort to establish exhaustion, Plaintiff misleadingly cites to Mr. Butowsky's Motion to Extend or Stay Discovery, wherein Mr. Butowsky states he was "medically unable to focus" on preparing his defense because of a hip surgery.  (Opp. at 28).  From this statement, Plaintiff concludes that "Ms. Zimmerman may be the only firsthand witness capable of testifying as to these key communications."  (*Id.*).  This argument warrants no attention.  Plaintiff makes no claim that Mr. Butowsky lost memories or has no memory of the relevant issues.  In any event, the tentative conclusion that Ms. Zimmerman "*may* be" the only available witness does not satisfy Plaintiff's heavy burden of proving exhaustion under either the First Amendment or New York privilege.  *See Flynn*, 652 N.Y.S.2d at 835 (requiring a requesting party to "detail[] any efforts made to obtain the requested [information]"); *Liberty Lobby*, 111 F.R.D. at 22 n.3 ("More than mere speculation or supposition must be shown.").

extent that Defendant Butowsky made no statements . . . that is directly relevant to his mental

state.")).  Plaintiff also does not know whether Mr. Butowsky's representation that "Ms.

Zimmerman did not speak to the alleged [confidential federal] source prior to publication" is

"truthful and accurate."  (*Id.* at 26).  With respect to the retraction, Plaintiff merely theorizes that

"[i]t is plausible" that the retraction "was relevant to the shift in Defendant Butowsky's

narrative."  (*Id.* at 26).

Such "vague assertions" speculating about the content of Ms. Zimmerman's testimony

and the "plausible" relevance of that testimony do not amount to the "clear and specific"

"demonstrative factual corroboration" necessary to overcome the New York privilege.  *See In re

Application of Home Box Office*, 103 N.Y.S.3d at 799-800 (upholding the privilege with respect

to outtakes because the requesting party "[did] not know what the outtakes actually captured"

and "cannot contend that her defense 'rises or falls' on the basis of footage that may not even

exist"); *Ayala*, 616 N.Y.S.2d at 579; *Perito v. Finklestein*, 51 A.D.3d 674, 675 (2d Dep't 2008)

("[Requesting party's] vague assertions that the information sought might impact on the

credibility of witnesses in the impending trial" did not establish criticality).  Such "speculation"

also cannot carry Plaintiff's burden of overcoming the First Amendment privilege.  *Liberty

Lobby*, 111 F.R.D. at 22 n.3 (requiring "[m]ore than mere speculation or supposition").

### D.  Ms. Zimmerman Has Not Waived the Newsgathering Privilege.

Finally, Plaintiff frivolously argues that Ms. Zimmerman waived the newsgathering

privilege by revealing information to Mr. Butowsky and Mr. Wheeler, two sources with whom

she worked while developing the 2017 article.

Unsurprisingly, Plaintiff cites no case—either state or federal—finding waiver based on

a reporter sharing information *with her own sources* about the story for which the individuals

were sources.[16]  Communications between a reporter and source cannot be a one-way street.  To

elicit relevant information, build upon known information, and gain the trust of sources, the

journalist must be able to engage in two-way communication, and protect the communications

going each way.  *See Guice-Mills*, 819 N.Y.S.2d at 436 (noting that a journalist must be free to

"fact check[] sources" and "ascertain the veracity of information used in news reports prior to

publication").  Any other rule would limit a reporter's ability to gather news and inhibit the "free

flow of information" that the newsgathering privilege is designed to promote.  *See Giuffre*, 221

F. Supp. 3d at 477.

The only case Plaintiff cites in this Circuit[17] is *In re Grand Jury Subpoena, Judith Miller*,

438 F.3d 1141 (D.C. Cir. 2006), which offers the bare statement, in a concurring opinion, that

"reporters . . . may waive the privilege."[18]  That case did not discuss the waiver issue at all and is

limited to the scope of the First Amendment privilege when reporters are subpoenaed to testify

before a Grand Jury.  Ms. Zimmerman and Fox News are not aware of any instance in which the

D.C. Circuit or this District Court has held that a journalist waived the newsgathering privilege.

---

[16] There is no dispute that Mr. Wheeler was a source.  Indeed, as Plaintiff's own brief concedes, Mr. Wheeler was a quoted source.  (Opp. at 19 ("The [2017 article] referred to only two sources—Mr. Wheeler and an unnamed 'federal investigator'—neither of whom is Defendant Butowsky.")).

[17] Plaintiff also cites *Bredemus v. Int'l Paper Co.*, No. CV 06-1274 (PJS/RLE), 2008 WL 11348492 (D. Minn. Aug. 22, 2008) and *Lozman v. City of Riviera Beach*, No. 08-cv-80134-HURLEY/HOPKINS, 2014 WL 12360697 (S.D. Fla. Oct. 8, 2014), which are not controlling in this Court.  Moreover, the facts of those cases do not resemble the facts in this case.  In *Lozman*, the reporter sought to protect information that he disclosed in previous, detailed trial testimony, while in *Bredemus*, the reporter "shared the totality of the information with his son, and partial portions with certain of the Plaintiffs, and the public at large."  *Lozman*, 2014 WL 12360697, at *4; *Bredemus*, 2008 WL 11348492, at *7.

[18] The full quote, which is found in Judge Tatel's concurring opinion, reads: "As the reporters point out, however, numerous cases (including persuasive district court decisions from this circuit) indicate that *only reporters, not sources, may waive the privilege*."  *Id.* at 1177 (Tatel, J., concurring) (emphasis added).

With respect to the New York privilege, Plaintiff cites to *In re Dan*, 363 N.Y.S.2d 493 (Sup. Ct. 1975), which was decided in 1975, before the Shield Law was subsequently amended "to strengthen the already existing Shield Law."  *See Iannaccone*, 447 N.Y.S.2d at 997-98 (discussing the 1981 amendment, and how prior to amendment, "courts [had] been all too often disinclined to follow the letter or even the spirit of the existing law").  In addition to its age, the *In re Dan* decision addressed entirely different facts from the case at hand where Ms. Zimmerman spoke to two sources about a story: *In re Dan* was limited to the Grand Jury context, where the reporter observed criminal conduct and disclosed his observations to the Assistant Attorney-General and a publisher who thereafter published those observations.  *Id.* at 401-02.

Plaintiff also cites *Guice-Mills*, 819 N.Y.S.2d 432, wherein the reporter waived the privilege with respect to information and the identity of the related source by disclosing that information to plaintiff *himself* prior to the lawsuit.  *Id.* at 434, 436.  Indeed, in *Guice-Mills*, the reporter disclosed this information with no apparent purpose to further the story, fact-check any information, or obtain follow-up information from plaintiff.  *Id.*  The *Guice-Mills* court made clear that had the reporter operated with that purpose, no waiver would occur.  *Id.* ("Were this an issue of whether or not a journalist waives the Shield Law by fact checking sources to ascertain the veracity of information used in news reports prior to publication, this court would not find waiver, as a journalist has an obligation to check their sources prior to publishing an article. Anything less would likely render them liable in a court of law.").  Here, in contrast, Ms. Zimmerman's communications with Mr. Butowsky and Mr. Wheeler were all made in furtherance of *the story she was investigating*.

Plaintiff goes even further to argue that "[u]nder New York law, a journalist waives the right to assert the newsgathering privilege as to *both* the underlying information *and* the identity

of the source by voluntarily disclosing or consenting to disclose the *information* to . . . Butowsky," relying on *Guice-Mills*.  (Opp. at 20 (emphasis added)).  Plaintiff reaches this conclusion through an apparent misreading of *Guice-Mills*.  The court in that case was clear that a waiver applies only "with respect to the *limited information shared*" and compelled the reporter to testify to "what was said by [the reporter] to plaintiff, and what or who the source of the information was" only because the reporter had already disclosed *both the information and the source* to the plaintiff prior to the lawsuit at issue.  *Guice-Mills*, 819 N.Y.S.2d at 434, 436.

**IV.     Should the Court Not Bar Ms. Zimmerman's Deposition, this Court Should Stay the Deposition to Avoid Prejudice and Undue Burden.**

Plaintiff does not dispute that this Court has the discretion to stay Ms. Zimmerman's deposition until her deposition in the New York action brought by Plaintiff's parents.  In determining whether to stay a deposition, the Court must "balance the burden to the moving party against the requestor's need for, and relevance of, the information sought."  *See Phigenix, Inc. v. Genentech, Inc. (In re Subpoena to Wang)*, 214 F. Supp. 3d 91, 94-95 (D.D.C. 2016).  Plaintiff has articulated no prejudice.  Nor has he demonstrated a need that outweighs Ms. Zimmerman's legitimate interest against sitting for multiple depositions about the same information and prematurely testifying about facts at the core of the lawsuit against her.

Plaintiff attempts to distinguish *Wang*, 214 F. Supp. 3d 91, and *Ecomission Sols., LLC v. CTS Holdings, Inc.*, No. 16-1793 (EGS), 2016 WL 4506974 (D.D.C. Aug. 26, 2016), because Ms. Zimmerman supposedly does not seek a stay to allow time for "the proper *scope* of the deposition to be determined," but because "Zimmerman *may* be deposed in a different case." (Opp. at 29).  For one, Ms. Zimmerman's deposition in the New York action is not hypothetical—it is inevitable.  And, as stated in the opening brief, a stay *will* serve the additional function, above and beyond protecting Ms. Zimmerman from undue burden, of allowing Plaintiff

to exhaust all alternative sources of information, as required by the newsgathering privileges. His ability or inability to exhaust those sources will directly affect the proper "scope" of Ms. Zimmerman's deposition.

## **CONCLUSION**

For these reasons and those stated in Ms. Zimmerman and Fox News's opening brief, this Court should issue a protective order barring Plaintiff from deposing Ms. Zimmerman. Alternatively, the Court stay her deposition in this case until she is deposed in *Rich v. Fox News Network, LLC et al.*, No. 18-CV-2223 (GBD) (S.D.N.Y.).   Ms. Zimmerman and Fox News respectfully request oral argument.

Respectfully submitted,

*/S Joseph M. Terry*

Joseph M. Terry (DDC Bar 473095)
Stephen J. Fuzesi (DDC Bar 496723)
Katherine A. Petti (DDC Bar 1026532)

WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Tel: (202) 434-5000
Fax: (202) 434-5029
jterry@wc.com
sfuzesi@wc.com
kpetti@wc.com

*Attorneys for Non-party Fox News Network, LLC*

David H. Stern (*pro hac* pending)
Vincent H. Cohen, Jr. (DDC Bar 471489)

Dechert LLP
U.S. Bank Tower
633 West 5th Street, 26th Floor
Los Angeles, CA 90071

1900 K Street, NW
Washington, DC 20006
Tel: (213) 808-5720
Fax: (213) 808-5760
david.stern@dechert.com
vincent.cohen@dechert.com

DATED: February 5, 2020                    *Attorneys for Non-party Malia Zimmerman*

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 5, 2020, I caused to be filed electronically the foregoing Reply Memorandum in Support of the Motion of Non-Parties Malia Zimmerman and Fox News Network, LLC, for a Protective Order Barring Deposition with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record in this matter who are on the CM/ECF system.  I further certify that a copy of the foregoing document was provided to Defendant America First Media via email to mattcouch@af-mg.com on February 5, 2020.


*/S Joseph M. Terry*

Joseph M. Terry

## NAMES OF PERSONS TO BE SERVED WITH PROPOSED ORDER UPON ENTRY

In accordance with Local Rule 7(k), listed below are the names and addresses of the

attorneys and parties entitled to be notified of the proposed order's entry:

Joshua P. Riley
Meryl C. Governski
Boies Schiller Flexner LLP
1401 New York Ave NW
Washington DC 20005
Tel: (202) 237-2727
Fax: (202) 237-6131
jriley@bsfllp.com
mgovernski@bsfllp.com

Michael J. Gottlieb
Willkie Farr Gallagher LLP
1875 K Street NW
Washington, DC 20006
Tel: (202) 303-1442
Fax: (202) 303-2000
mgottlieb@willkie.com

*Attorneys for Plaintiff Aaron Rich*

Eden P. Quainton
Quainton Law, PLLC
1001 Avenue of the Americas, 11th Floor
New York, NY 10018
Tel: (212) 813-8389
Fax: (212) 813-8390

*Attorney for Defendants Edward Butowsky and Matthew Couch*

America First Media
2300 West Ash Street
Rogers, AR 72758

*Pro Se*

David H. Stern
Vincent H. Cohen Jr.
Dechert LLP
U.S. Bank Tower
633 West 5th Street, 26th Floor
Los Angeles, CA 90071

1900 K Street, NW
Washington, DC 20006
Tel: (213) 808-5720
Fax: (213) 808-5760
david.stern@dechert.com
vincent.cohen@dechert.com

*Attorneys for Non-party Malia Zimmerman*

Joseph M. Terry
Stephen J. Fuzesi
Katherine A. Petti
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Tel: (202) 434-5000
Fax: (202) 434-5029
jterry@wc.com
sfuzesi@wc.om
kpetti@wc.com

*Attorneys for Non-party Fox News Network, LLC*

28