**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

AARON RICH

                 Plaintiff,

    v.

EDWARD BUTOWSKY,
MATTHEW COUCH, and
AMERICA FIRST MEDIA

               Defendants.

Civil Action No. 1:18-cv-00681-RJL
Hon. Richard J. Leon

---

**PLAINTIFF'S OPPOSITION TO**
**DEFENDANT BUTOWSKY'S SECOND MOTION TO EXTEND DISCOVERY**

MICHAEL J. GOTTLIEB
WILLKIE FARR GALLAGHER LLP
1875 K Street NW, Washington, DC 20006

JOSHUA P. RILEY
MERYL C. GOVERNSKI
BOIES SCHILLER FLEXNER LLP
1401 New York Ave NW, Washington DC 20005

*Attorneys for Plaintiff Aaron Rich*

Plaintiff Aaron Rich respectfully submits this Opposition ("Opposition") to Defendant Edward Butowsky's second Motion to Extend Discovery ("Motion" or "Def. Mot."). Dkt. 161. Undersigned counsel recognizes the extraordinary circumstances facing the country with the Coronavirus pandemic, as well as the continuing health concerns of Defendant Butowsky, and we welcome the opportunity to address with the Court how to balance those legitimate health concerns with the Court's desire to keep this case "moving forward."[1] Our position is that the Court should rule that discovery is effectively closed as of March 27, 2020 with the exception of any party and third-party depositions that have been noticed and served as of this date (Friday, March 13, 2020), which is the last date on which a party could serve a third-party subpoena in order to even arguably hold it within the discovery period. Fed. R. Civ. P. 45(d)(3)(A)(i) ("By motion, the court for the district where compliance is required must quash or modify a subpoena that: (i) fails to allow a reasonable time to comply[.]" ); *In re Malyugin*, 310 F. Supp. 3d 3, 5 (D.D.C. 2018) ("[M]any courts have found fourteen days *from the date of service* as presumptively reasonable." (internal citations omitted) (emphasis in original)). Beyond those served and noticed depositions, any additional request for discovery should require leave of Court.

Closing discovery except as to a limited number of depositions not only would address the merits of Defendant Butowsky's Motion (including his health concerns) but also the Coronovirus crisis by permitting the Court to stay this case for a reasonable and limited period of time, after which the parties could complete all outstanding depositions and move forward with expert discovery and summary judgment briefing within a reasonable period of time.[2]

---

[1] *See* 3/3/2020 Hearing Trans. at 20:1–6 ("I'm not inclined to slow everything down, stop everything down, on the other hand. We need to keep this thing moving forward, have to keep this train moving forward.").

[2] To the extent that discovery is necessary as a result of any of the depositions, the parties could

## INTRODUCTION

Plaintiff filed this lawsuit in March 2018—nearly two years ago—to seek accountability for false statements that Defendants Edward Butowsky, Matthew Couch, and America First Media ("AFM") published about Plaintiff.  After having sat on their rights for more than 18 months, Defendants filed a motion on January 6, 2020—three weeks prior to the date fact discovery was slated to close on January 27, 2020—requesting a 120-day extension.  Dkt. 97 (public); Dkt. 103-2 (sealed).  On February 5, 2020, the Court granted Defendants' motion in part, permitting Defendant Couch to have until March 27, 2020 to depose three witnesses and Defendant Butowsky to have until the same date "to complete all fact discovery."  Dkt. 151 ("February 5 Order").[3]  In its February 5 Order, the Court stated that should Defendant Butowsky "be unable to sit for his own deposition within that time frame due to his medical condition, he can seek leave to hold that deposition outside the extended discovery period."  *Id.*[4]  On March 3, 2020, Defendant Butowsky

_____

file motions to re-open limited fact discovery.

[3] The February 5 Order also denied Defendant Couch's motion asking the Court to reconsider its January 24, 2020 Order requiring he *inter alia* either sit for a 3-and-half-deposition in which he answers the questions his counsel improperly instructed him not to answer or enter a stipulation. *See* Dkt. 133; Dkt. 151.  Defendant Couch elected to sit for a deposition but has refused to provide a date within the discovery window due to other obligations, including to apparently attend a multiple-day speaking engagement in Las Vegas titled "Deplorapalooza."  Declaration of Meryl Governski ("Governski Decl.") ¶ 5 (Email from counsel for Matt Couch stating "Unfortunately, Mr. Couch is not available on the 12th or 13th as I had thought. . . . .  Next week doesn't work for me as I am still trying to get depositions of other witnesses scheduled (without much luck for the moment, but that is a separate issue).  Mr. Couch can give you any date during the week of March 30th"); *id.* (Ex. 1) (Periscope video in which Matt Couch stated "He's hosting deplorapalooza in Las Vegas, March 5th through the 7th. I'm planning on being there").

[4] The Motion claims that "when the prior scheduling order was entered it was not foreseeable that Mr. Butowsky would almost immediately be re-hospitalized and that he would spend most of February being subjected to further medical procedures and then recuperating at home."  Mot. at 4.  But since he asked this Court to grant the first extension, Defendant Butowsky said he would be unable to participate in discovery until May 2020, the same month to which he is now asking discovery be extended.  *See, e.g.,* Dkt. 140.  The Court already considered, and rejected, extending discovery past March 2020 except for Mr. Butowsky's deposition.  For the reasons discussed *infra*,

filed his Motion, asking the Court to extend discovery until May 27, 2020, effectively the same remedy it had previously rejected.  Mot. at 1.[5]

## ARGUMENT

As the moving party, Defendant Butowsky has the burden to establish good cause for a modification of a scheduling order.  *See Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.*, 630 F.3d 217, 226 (D.C. Cir. 2011).  In determining whether good cause exists, the relevant questions are whether the moving party was diligent in obtaining discovery, whether trial is imminent, whether the request is opposed, whether the non-moving party would be prejudiced, the foreseeability of the need for additional discovery, and the likelihood that discovery will lead to relevant evidence.  *See In re Rail Freight Fuel Surcharge Antitrust Litig.*, 281 F.R.D. 12, 14 (D.D.C. 2011).  If the moving party "was not diligent, the inquiry should end."  *St. Paul Mercury Ins. Co. v. Capitol Sprinkler Inspection, Inc.*, No. 05–2115 (CKK), 2007 WL 1589495, *6 (D.D.C. June 1, 2007) (citations omitted).[6]

---

there is nothing in the Motion that justifies the Court altering its original approach.

[5] The Motion seeks to rely on statements the Court made in chambers about considering a longer extension than the one ultimately granted, Mot. at 2, but fails to acknowledge that the discussion in chambers does not constitute an order and the Court is entitled to change course, including in light of Plaintiff's supplemental authority showing Defendant Butowsky was capable of providing financial advice at the same time his counsel was in chambers representing his medical impairments.  *See* Dkt. 126.

[6] Defendant Butowsky misreads the cases he cites, Mot. at 6; *Burns* supports the unremarkable proposition that a defendant filing an unopposed motion for an extension of discovery is entitled to one including because *plaintiff's* illness precluded defendant from obtaining necessary discovery.  *See Burns v. MedStar Georgetown Univ. Hosp.*, Inc., 106 F. Supp. 3d 238 (D.D.C. Sept. 4, 2015) (Dkt. 58-1); *id.* Sept. 8, 2015 minute order.  In *Handwerker*, the Court rejected plaintiff's argument that it should not dismiss the case on the basis of the "state of her health" because her "belated efforts to comply were not sufficient to overcome her longstanding intransigence," and "it was not up to [plaintiff], by repeated failure to comply with the Court's Orders, unilaterally to impose limits on the proper bounds of discovery."  *Handwerker v. AT&T Corp.*, 285 F. Supp. 2d 331, 333 (S.D.N.Y. 2002).

Here, Defendant Butowsky has not carried his burden of establishing good cause to grant a second across-the-board discovery extension.   As the Court stated at the March 3, 2020 status conference, the Court should not permit Defendant Butowsky to "slow everything down"[7]—instead, it should accommodate Defendant Butowsky's medical condition without granting him the unilateral ability to continue propounding discovery of Plaintiff and third parties.   The way to do that is by granting a stay of this case in its entirety for a reasonable period of time, and when the stay is lifted permitting Defendants, Plaintiff, and any third parties who have been properly served within the current discovery period to sit for their depositions promptly following the lifting of the stay.

As a threshold matter, the Motion concludes that "it has not been possible for Mr. Butowsky to advance significantly, either with respect to outstanding items in his production or in preparing for his own defense," but fails to explain what exactly Defendant Butowsky has been unable to advance in his own defense since the Court extended discovery the first time.   Mot. at 2.   Nor could it.   The record proves that Defendant Butowsky has been aggressively advancing offensive discovery since the February 5 Order.   In the span of nine days between February 20 and February 28, 2020, Defendant Butowsky served 38 requests for information (RFPs) on Plaintiff. Governski Decl. ¶ 2.[8]   Since February 13, 2020, Defendant Butowsky has noticed (or re-noticed) 18 third-party subpoenas pursuant to Federal Rule of Civil Procedure 45,[9] including deposition

---

[7] *See supra* at 1 n.1.

[8] Including the 30 RFPs he served in late November 2019, Defendant Butowsky has served a total of 68 RFPs on Plaintiff.   *See* Dkt. 116-3 at Ex. 17.   He also already has issued the presumptive 25 interrogatories, Governski Decl. ¶ 2, and 26 RFAs on Plaintiff, Dkt. 116-3 at Ex. 17.

[9] Defendant Butowsky noticed document subpoenas for: (1) the Office of the Chief Medical Examiner; (2) Google; (3) Brad Bauman; (4) Seymour Hersh; (5) Detective Joseph Della Camera; (6) Joe Capone; (7) Michael Isikoff; (8) Former D.C. Police Chief Cathy Lanier; (9) Pratt Wiley; (10) Amy Dacey; (11) Ellen Ratner; (12) Mary Rich; (13) Joel Rich; (14) Antoine Weston; (15)

subpoenas.[10]  *See* Exs. 2-5.

Contrary to the Motion's representation that "Mr. Butowsky has not yet been able to determine who his final deposition witness should be," Mot. at 4, Defendant Butowsky already has deposed, noticed, or scheduled the five depositions that the Court has authorized: he has (1) already deposed Rod Wheeler; (2) plans to depose Plaintiff on March 27, 2020; (3) has scheduled Brad Bauman's deposition for March 25, 2020; and has noticed depositions of (4) Seymour Hersh and (5) Ellen Ratner.  Only the depositions of Mr. Hersh and Ms. Ratner are not currently calendared to occur prior to the close of discovery, even though Defendant Butowsky has known since at least August 2019—when he listed them on his initial disclosures, Dkt. 83-3—that both individuals were witnesses on whom he would rely for his defense in this litigation.  In reality, Mr. Butowsky has known for much longer than August of 2019 given that Mr. Hersh and Ms. Ratner are alleged to have been in contact with Mr. Butowsky since no later than January of 2017.

Mr. Butowsky has only his own lack of diligence to blame for his inability to complete the depositions of Mr. Hersh and Ms. Ratner by the close of discovery.[11]  Defendant Butowsky could

---

Elissa Nadwormy; (16) Erica Baker; (17) Michael Cass Antony; (18) Dov Friedman.

[10] Defendant Butowsky's pattern and practice in this case is to notice depositions with arbitrary dates and without conferring with counsel in an apparent rush to meet discovery cut-offs, and then neglecting to serve them, notify counsel proactively of their withdrawal, or serve updating deposition notices.  *See* Dkt. 116 at 11–12 (public); Dkt. 117 (sealed) (collectively, "First Extension Opposition").  For example, counsel for Plaintiff appeared at the location where and at the date and time when Defendant Butowsky had noticed Mr. Hersh's deposition to occur, and only after inquiry from Plaintiff's counsel did counsel for Defendant Butowsky explain that he had not made any arrangement for the deposition to occur, including by serving the deponent, despite having never withdrawn the subpoena or alerting Plaintiff.  *See* First Extension Opposition at 11.

[11] Defendant Butowsky's lack of diligence since the Court's February 5 Order is consistent with the dismissive approach he has exhibited throughout this litigation with respect to the Court's rules and deadlines, as discussed at length in the briefing relating to the first extension request.  *See* First Extension Opposition.

have submitted cross questions or noticed a cross deposition in conjunction with Plaintiff's

deposition by written questions (under Rule 31) that occurred on January 21, 2020.  Ex. 6.  But

Defendant Butowsky failed to do so within the time permitted by Federal Rule of Civil Procedure

31, and therefore waived his opportunity. Fed. R. Civ. P. 31; Ex. 6.  Defendant had an additional

opportunity to object to Ms. Ratner's deposition before it occurred, when his counsel belatedly

claimed to have discovered the Rule 31 subpoena on January 14, 2020 but did not then or in the

days that followed object to the deposition going forward or request to submit written questions

out of time (even though he had a full copy of every question Plaintiff had propounded to Ms.

Ratner).  *See* Ex. 6.  Even after knowing that the deposition had occurred and receiving a gratis

copy of the transcript from Plaintiff on January 17, 2020, Ex. 7, Defendant Butowsky waited until

February 28, 2020 to serve a notice of his own deposition subpoena for Ms. Ratner, Ex. 4.  As to

Mr. Hersh, Defendant Butowsky first noticed Mr. Hersh's subpoena in December 2019, and the

Motion does not explain why he was unable to serve it in the intervening *three months*.  *See* Ex.

8.[12]  On February 29, 2020, Defendant Butowsky re-noticed a number of subpoenas, including the

one for Mr. Hersh, explaining that he had "a bad experience with my former process server and

[is] switching to a new process server."  Ex. 4.[13]  On March 11, 2020—two days before the date

---

[12] The Motion implies that the difficulties in serving the third-party witnesses is due in part to "the pressure of Plaintiff's ongoing motion practice." Mot. at 3–4.  This Court should not grant Defendant Butowsky's counsel any concessions for deciding to represent *both* Defendants (as well as, now, a third-party witness in connection with this litigation too) *after* he knew of the scheduling order, or for opposing Plaintiff's motions that were nearly all necessitated by Defendants' conduct (such as, for example, refusing to comply with discovery or follow Court orders, following frivolous privilege objections, and pursuing litigation in Texas against Plaintiff's counsel).

[13] Though he does not offer the excuse in this Motion, Defendant Butowsky has repeatedly accused third-party witnesses of make making "efforts to evade service," including in Court filings. *See, e.g.,* Dkt. 97 at 4 ("third-party witnesses' successful efforts to evade service of subpoenas"). When pressed multiple times on the basis of those claims, counsel for Defendant Butowsky explained that he stated "it 'appeared' there was an effort to evade service.  If I find evidence in support of

7

Defendant Butowsky noticed for Mr. Hersh's deposition and only after inquiry by Plaintiff as to the deposition's status—counsel for Defendant Butowsky confirmed that "[t]o my knowledge, service has not yet been effected but am confirming with process server." Ex. 9.

Even accepting that Defendant Butowsky deserves more time to complete third-party depositions, the solution is not an across-the-board extension. The proper remedy is to permit the parties to depose individuals outside the discovery window if they have been noticed and served properly within the discovery window. To the extent Defendant Butowsky claims such a remedy is insufficient because, as he has argued in the Motion, the depositions he has yet to take are "likely to shed additional light on Plaintiff's theories" and that he may need extra depositions, Mot. at 4, such theoretical speculation does not provide a good faith basis to extend discovery for a second time. If Mr. Butowsky discovers evidence that warrants additional discovery, he may make a motion to this Court at that time. Until then, hypothetical theories about future discovery is not a justification for continuing to drag out the resolution of this case.[14]

The Motion also alludes to a need for more time in order to conduct "voluntary depositions" and pursue "other fact-finding figures such as Kim Dotcom, who alleges he had contact with Seth Rich in connection with the leak of emails to Wikileaks," "Charles Johnson, who accompanied Dana Rohrbacher on a mission to meet with Julian Assange, at which, according to news reports, Julian Assange's actual sources for the Wikileaks material were discussed, and Craig Murray, the British ambassador who apparently had contact with a Wikileaks source." Mot. at 4.[15] On its face,

---

that appearance, I will provide it to you." Governski Decl. ¶ 3. Counsel has neither provided evidence nor informed the Court that he lacked a basis for those representations.

[14] Defendants waited until December 2019 to even begin serving third-party discovery, despite having had the better part of 2019 to do so. First Extension Opposition at 11.

[15] The Motion asserts that it is *Plaintiff* who intends to conduct this informal discovery. Mot. at 4. This statement must be a typographical error because beyond the impropriety of Defendant

the Motion neither explains why the testimony of these three individuals is even relevant to Defendant Butowsky's claims *about Plaintiff*, nor why Defendant Butowsky has determined at the eleventh hour that he must pursue discovery of three individuals who he never listed on his initial disclosures and whose allegations have been a matter of public record for years.  *See* Dkt. 83-3; *Covad Commc'ns Co. v. Revonet, Inc.*, 267 F.R.D. 14, 22 (D.D.C. 2010) ("Federal Rule of Civil Procedure 26(e) specifically requires a party to supplement or correct such a disclosure or response in a timely manner").[16]  Defendant Butowsky's former counsel recognized *two years ago* (on May 30, 2018) that Kim Dotcom—who is currently located in New Zealand, under indictment, and facing extradition to the United States[17]—was "beyond U.S. jurisdiction," Dkt. 24-13, and his current counsel waited until January 2, 2020 to confer with Plaintiff about filing a motion relating to Kim Dotcom, but confirmed the next day that he did not plan to file that motion, Ex. 10.[18]

---

Butowsky making representations about Plaintiff's intentions, it is wrong: Plaintiff does not intend to "conduct voluntary depositions."

[16]  *See, e.g.,* Kim Dotcom, Twitter (May 19, 2017), twitter.com/KimDotcom/status/865699156278484992 ("If Congress includes #SethRich case into their Russia probe I'll give written testimony with evidence that Seth Rich was  @Wikileaks source."); Ryan Grim, *Congressman Says He Tried To Brief Trump On Wikileaks And Russia After Meeting With Julian Assange, But John Kelly Blocked Him*, The Intercept (Feb. 14, 2018), https://theintercept.com/2018/02/14/dana-rohrabacher-trump-russia-wikileaks-julian-assange/; (**February 2018**: Former Rep. Dana Rohrabacher claimed that Assange showed "him and *his traveling companion, Charles Johnson*, definitive proof that Russia was not the source of the Democratic Party communications that WikiLeaks published during the 2016 campaign"); Dave Boyer, *WikiLeaks figure says 'disgusted' Democrat leaked Clinton campaign emails*, The Washington Times (Dec. 14, 2016), https://www.washingtontimes.com/news/2016/dec/14/craig-murray-says-source-of-hillary-clinton-campai/ (**December 2016**: "'Neither of [the leaks] came from the Russians,' *Mr. Murray* told the British newspaper. 'The source had legal access to the information. The documents came from inside leaks, not hacks.'").

[17]  *See* Kim Dotcom, Press Release, *Kim Dotcom Approaches Special Counsel* (May 30, 2017), scoop.co.nz/stories/PO1705/S00469/kim-dotcom-approaches-special-counsel.htm.

[18]  Plaintiff agrees with Defendant Butowsky's co-defendant, Defendant Couch, that Kim Dotcom is not a credible witness: "we've been saying that we didn't believe Kim Dotcom's Intel for a good 6 months now including on our broadcasts," Ex. 11.

Even accepting *arguendo* that the Motion articulates necessary discovery, it fails to address, let alone answer, Defendant Butowsky's selective ability to advance (1) his own defense in this litigation, (2) other litigation, and (3) his own business ventures.  That includes Defendant Butowsky's ability to serve more than three dozen RFPs during the same period (beginning on one of the days he claims to have been in the hospital),[19] to issue nearly 20 third-party subpoenas, and to take or notice all of his allotted depositions.  *See supra* at 6.  The question before this Court is not whether Defendant Butowsky has serious medical issues—the question is whether those medical issues should allow him to not participate in discovery served to him while aggressively pursuing discovery against Plaintiff and third parties in this litigation and elsewhere.  It appears the only discovery-related task Defendant Butowsky has been unable to do is sit for his own deposition[20] and comply with the Court's order requiring he produce all responsive documents, which he still has not done despite his counsel representing that he completed his review of the thousands of pages of documents on January 8, 2020, Dkt. 130-1 ¶ 15.[21]

It bears repeating that Defendant Butowsky continues to prosecute his lawsuits in federal courts elsewhere.  On February 14, 2020—a day the Motion states he was discharged from the

---

[19] The Motion does not attach an affidavit from Defendant Butowsky's treating physician or medical records or any document that articulates medical limitations, and instead of relies solely on excerpts of booking notes, which his counsel claims substantiate the dates of hospitalization, and which excludes without explanation the first and fourth pages of the first record, and the first three pages of the second.

[20] Defendant Butowsky's counsel has indicated that Defendant Butowsky will be unable to participate in litigation, including sitting for his deposition, for six-to-eight weeks after a surgery that is slated to occur around the week of March 16. Dkt. 161-1 ¶ 15.

[21] Counsel for Defendant Butowsky has not explained why his client must review thousands of pages of his own communications, including to make privilege determinations even though he is not a lawyer. As the Court has recognized, Defendant Butowsky's challenging health situation "doesn't mean that the other things that need to be done in discovery can't be done."  3/3/2020 Hearing Trans. at 19:23-25.

hospital and the day before he was re-admitted—Defendant Butowsky filed a proposed

"supplemental complaint" in which he asserted additional allegations and claims against Plaintiff's

counsel.  *See* Dkt. 156.  On February 18, 2020—also a day the Motion states he was discharged

from the hospital—Defendant Butowsky served a notice of his intent to serve a deposition and

document subpoena in the Texas litigation on Deborah Sines, the former Assistant United States

Attorney who coordinated the prosecutorial work related to the murder of Plaintiff's brother.  *Id.*

On the same date, Defendant Butowsky moved the court in his lawsuit against National Public

Radio (NPR) to allow him to file an amended complaint to "make certain clarifications and

corrections" in response to NPR's motion for sanctions.  *See Butowsky v. Folkenflik* et al, 18-cv-

00442-ALM-CMC, Dkt. 98 (Feb. 18, 2020).  In the same lawsuit, Defendant Butowsky was able

to sign a declaration under penalty on March 10, 2020 in which he attempts to defend himself

against the motion for sanctions by making a number of assertions that are directly at issue in this

litigation too.  *Id.* Dkt. 110-11 (Mar. 10, 2020).[22]  Additionally, on or around February 10, 2020,

Defendant Butowsky was able to draft and transmit a letter to the United States District Court of

the Southern District of New York "requesting a motion to dismiss on personal jurisdiction

grounds be decided" in the lawsuit filed against him by Plaintiff's parents.  *See Rich v. Fox News

et al*, 18-cv-02223-GBD-SN, Dkt. 109 (Feb. 10, 2020).  Defendant Butowsky has never, including

in the Motion, explained how he is sufficiently cogent to pursue his interests in other litigation but

not fulfill his own obligations in this one.

The Motion also provides no answer as to why Defendant Butowsky is able to engage in

---

[22] NPR noted in a filing in that case that Defendant Butowky called NPR's counsel "directly and
left a message promising responsive documents" on January 15, 2020, a date on which he appears
to have been in the hospital. *Compare* NPR Lawsuit, Dkt. 97-1 ¶15, *with* Dkt. 140-4; 140-1 ¶ 3.

professional endeavors benefitting his own business but cannot even "have a meaningful discussion" with his counsel about discovery in this case.  Mot. at 5.  During the relevant time period—including on February 20, 2020 when the Motion asserts that he was hospitalized—Defendant Butowsky recorded and publicly posted three audio recording providing his views regarding current financial and economic conditions and (in two of them) offering his phone number to field incoming calls.[23]



As the recordings illustrate, Defendant Butowsky sounds lucid and does not appear to be suffering from "extreme pain" and the "effect of medication."  Mot. at 2, 5.  Defendant Butowksy's attempted defense—that no one "should really fault him for wanting to try to make some money," 3/3/2020 Hearing Trans at 21:6–14—misses the point entirely: if Defendant Butowsky is sufficiently capable of trying to "make some money" by offering investment advice to potential clients, he should be more than able to consult with his counsel about strategic litigation decisions and review his own documents in order to comply with a Court Order.  While in the hospital, Defendant Butowsky also posted at least five social media messages regarding his views on the

---

[23] *See* Edward Butowsky, Twitter (Feb. 21, 2020), twitter.com/EdButowsky/status/1230898433889832960; *id.* (Feb. 27, 2020), twitter.com/EdButowsky/status/1233127075541929984; *id.* (Mar. 2, 2020), twitter.com/EdButowsky/ status/1234571091290599426.

policy positions of various presidential candidates.  Ex. 12.

Defendant Butowsky refuses to take any accountability for his own conduct and dismisses any prejudice to Plaintiff as "minimal," irrespective of the fact that Plaintiff has been prejudiced throughout this litigation by Defendant Butowsky's disregard for Court orders, the federal rules, any imposed deadlines, and the harm his own actions have caused and continue to cause Plaintiff. As discussed in the First Extension Opposition, Plaintiff has already been prejudiced by Defendants' ongoing refusal to engage in discovery and comply with Court orders, and any extension continues to aggravate that ongoing prejudice.  Even prior to the Court's February 5 Order, Plaintiff's counsel had incurred nearly $200,000 solely in *costs* related to discovery (not to mention attorney time), including responding to Defendants' facially overbroad and burdensome RFPs.  Governski Decl. ¶ 4.  In the past month, Defendant Butowsky has issued more than three dozen more RFPs, which will result in even more incurred expenses.  What has happened is precisely what Plaintiff feared: Plaintiff diligently conducted discovery under the Scheduling Order in one phase, and Defendants have abused Plaintiff's diligence by mounting their own discovery strategy in a second phase having the benefit of seeing Plaintiff's strategy in advance.

Defendant Butowsky attempts to leverage his *own defiance of this Court's order* to justify his request of an extension by stating that "Plaintiff would benefit from the extension as it would give Mr. Butowsky more time to review the additional documents to be produced pursuant to agreement with counsel."  *See* Mot. at 2.  The law does not permit Defendant Butowsky to benefit from his own obstruction and flouting of the Court and the federal rules, *especially* when Plaintiff has prosecuted his case with the utmost respect for this Court and the federal rules.  *See Covad*, 267 F.R.D. at 22–23 (denying discovery motion that would provide parties with an "incentive to withhold essential discovery information as leverage").  Defendant Butowsky is right that Plaintiff

13

has been and will be prejudiced by Defendant Butowsky's ongoing refusal to comply with the orders of this Court, including by refusing to sit for a deposition until some amorphous date in May 2020 or to produce thousands of pages of documents Defendant Butowsky has been holding hostage for months.  But that prejudice is relevant only to the question as to whether *Plaintiff* deserves additional time to pursue discovery (or to re-open discovery in a limited capacity if necessary) and undermines any argument that *Defendant Butowsky* deserves the same.  Plaintiff has not requested additional discovery at this point in spite of this prejudice because he has diligently pursued and received discovery in this case, and that discovery reinforces the facts he has known all along to be true, that he alleged in his Complaint, and that he will present to the Court in summary judgment papers as soon as this Court allows.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion To Extend Discovery and enter the Proposed Order accompanying this Opposition.


DATED:  March 13, 2020

/s/ *Michael J. Gottlieb*
MICHAEL J. GOTTLIEB (D.C. Bar No. 974960)
WILLKIE FARR & GALLAGHER LLP
1875 K Street NW
Washington, DC 20006
Tel: (202) 303-1000
Fax: (202) 303-2000
mgottlieb@willkie.com

JOSHUA P. RILEY (D.C. Bar No. 1026900)
MERYL C. GOVERNSKI (D.C. Bar No. 1023549)
BOIES SCHILLER FLEXNER LLP
1401 New York Ave NW
Washington, DC 20005
Tel: (202) 237-2727

Fax: (202) 237-6131
jriley@bsfllp.com
mgovernski@bsfllp.com

***Attorneys for Plaintiff Aaron Rich***

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that on March 13, 2020, the foregoing document was served via ECF and emailed to Eden Quainton, counsel for Defendant Edward Butowsky and Defendant Matthew Couch, at the email address equainton@gmail.com.  Mr. Quainton has agreed to convey served and filed documents to Defendant America First Media through Defendant Couch as necessary.

/s/ *Michael J. Gottlieb*

MICHAEL J. GOTTLIEB (D.C. Bar No. 974960)
WILLKIE FARR & GALLAGHER LLP
1875 K Street NW
Washington, DC 20006
Tel: (202) 303-1000
Fax: (202) 303-2000
mgottlieb@willkie.com

***Attorney for Plaintiff Aaron Rich***