UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AARON RICH,                              Case No. 1:18-cv-00681-RJL
                                               Honorable Richard J. Leon

Plaintiff,

v.

EDWARD BUTOWSKY,
MATTHEW COUCH
AMERICA FIRST MEDIA,
Defendants.


# DEFENDANT EDWARD BUTOWSKY'S REPLY TO OPPOSITION TO MOTION TO EXTEND DISCOVERY


EDEN P. QUAINTON, ESQ. (D.C. Bar No. NY0318)
QUAINTON LAW, PLLC
1001 Avenue of the Americas, 11th Floor
New York, New York 10018
Telephone: (212) 813-8389
*Attorneys for Defendant Edward Butowsky*

**PRELIMINARY STATEMENT**

Plaintiff's two-firm, seven-lawyer team spends the bulk of its opposition to Defendant Butowsky's modest request for an extension of time studiously avoiding any discussion of Mr. Butowsky's medical condition except to castigate him for attempting to make a living in his few moments of respite from often unbearable pain and suffering.[1]  It would be one thing if the roles were inversed – as is often the case – and Plaintiff were represented by a solo practitioner facing the weight of multiple AmLaw 100 firms and their armies of partners, associates, paralegals and other support staff.  But that is obviously not the case here.[2]

For all the fluff in Plaintiff's opposition, however, the relevant facts for the Court on this motion are simple: Mr. Butowsky has been suffering from a debilitating medical condition that has seriously impeded his ability to participate in the litigation and continues to hamper his ability to prepare his defense.  In this context, he needs an extension of time to ensure that he can adequately complete fact discovery.  It would be truly heartless to ignore Mr. Butowsky's condition.  Indeed, Mr. Butowsky is simply requesting the very extension the Court had initially indicated would be available, notwithstanding the unexpected hospitalizations that consumed much of the month of February and further delayed Mr. Butowsky's preparation of his defense.  *See* Dkt. 161 at 4-5.  Accordingly, at the conclusion of any stay required in light of the current extraordinary situation, Mr. Butowsky respectfully requests that fact discovery be extended 60

---

[1] Mr. Butowsky does not oppose a stay of the litigation as a result of the Coronavirus for a reasonable period—most likely 30 days.  However, when the litigation resumes, he will still need the additional time requested.  As a result, his reply focuses on that issue.

[2] Mr. Butowsky notes he was required to reply to Plaintiff's opposition in two days less than the full seven days afforded under Rule 7(d) of the District Court Local Rules, despite the disruptions to lives and schedules caused by the current global crisis.  Declaration of Eden P. Quainton, dated March 18, 2020 (the "Quainton Decl.") at ¶ 2.

days, bringing the total extension to 120 days, in keeping with extensions frequently granted to defendants suffering from serious medical conditions and the Court's initial leaning.

## LEGAL ARGUMENT

I. MR. BUTOWSKY'S MEDICAL CONDITION WARRANTS AN EXTENSION OF THE DISCOVERY DEADLINE.

Plaintiff's Memorandum in Opposition to Defendant's Motion for an Extension, mischaracterizes Defendant's motion as his "second" motion for an extension. In fact, the present motion does no more than repeat the request for what was already agreed to by the Court in chambers. On January 6, 2020, Defendants filed a motion seeking a stay of litigation or a 120-day extension of the close of discovery. Dkt. 97. On January 27, 2020, the Court held a status conference in chambers at which the Court heard argument from counsel on Defendants' motion. Declaration of Eden P. Quainton, dated March 18, 2020 (the "Quainton Decl.") at ¶ 5. At the conclusion of the conference, the Court indicated that it would grant Defendant Butowsky a 90-day extension to complete discovery, with the option for Mr. Butowsky to seek an additional 30-day extension if necessary, bringing the total potential extension to the 120 days requested. *Id.* Indeed, the Court asked counsel whether he believed 90 days would be sufficient, implicitly acknowledging that Mr. Butowsky's condition would make it difficult to complete discovery in that time period. *Id.* at ¶ 6. However, following the status conference, the Court entered an order only granting Mr. Butowsky a 60-day extension and not providing for any further extension. Dkt. 151. The Court did not explain the reasons for its change of heart, notwithstanding that Mr. Butowsky had filed, as requested, overwhelming evidence of the severity of his medical condition. *See* Dkt. 139-3, 139-4, 139-5 and 139-6; *see also* Dkt 97-9, 130-4, 130-5. Since the entry of the Court's order, Mr. Butowsky's has **continued** to face serious medical problems and was unable to communicate with counsel for extended periods

because of his hospitalizations and medication.  *See* Dkt 161 at 4-5, Dkt. 161-1, 161-2.  In fact, Mr. Butowsky and counsel lost almost the entire month of February because of Mr. Butowsky's condition.  Quainton Decl. at ¶ 7.  Even if Mr. Butowsky had not faced these further difficulties, he would have been hard-pressed to complete discovery within the 90-day window.  But Mr. Butowsky's further medical challenges have continued to hamper his ability to prepare a defense and the 60-day extension sought is reasonable under the circumstances.

Tellingly, Plaintiff cites **no cases** in opposition to the numerous cases Plaintiff has cited in support of the proposition that a serious medical condition warrants an extension of discovery deadlines.  *See Burns v. Georgetown Univ. Med. Ctr.*, 106 F. Supp. 3d 238, 242 (D.D.C. 2015)(medical issues warranted six-month extension of discovery deadline); *Handwerker v. AT & T Corp.*, S.D.N.Y.2002, 285 F.Supp.2d 331, *affirmed* 93 Fed.Appx. 328, 2004 WL 693414 (multiple extensions of discovery deadline warranted for medical reasons). *Cf. Pardo-Kronemann v. Donovan*, 601 F.3d 599, 611 (D.C. Cir. 2010)(illness of counsel warrants extension of discovery deadline).[3]  *See also Thein v. Feather River Cmty. Coll.*, No. CIV S06-1777 FCDGGH, 2007 WL 926568, at *1 (E.D. Cal. Mar. 27, 2007)(extending discovery by 100 days in light of surgery-related difficulties).

There is a patent lack of human empathy in Plaintiff's approach, the irony of which should not be lost on the Court in assessing a complaint in which Plaintiff is appealing to the sympathy of the Court for the suffering he claims to have endured as a result of Defendants' alleged actions.  *See, e.g.*, Dkt. 3, ¶¶ 90, 91, 104, 121, 125.  The bottom line here is that the exact same medical condition that warranted Plaintiff's initial 120-day request and supported the

---

[3] In one of his previous submissions, Plaintiff insinuated to the Court that Mr. Butowsky has been faking his medical condition. Dkt. 136 at 4. This was completely uncalled for, as can be seen in the gruesome photographs posted in response. Dkt.145 at 2.

Court's initial inclination has not improved and, indeed, has shortened the productive time Mr. Butowsky has had to participate in the litigation, both in terms of responding to discovery requests and preparing his own defense.  Mr. Butowsky should not be penalized for a medical condition that has already cost him so much pain and suffering.  Rather, the Court should be compassionate and grant Mr. Butowsky a meaningful opportunity to prepare his defense so that this matter does not devolve into a "show" trial that would do a disservice to time-honored traditions of fair play and substantial justice.

II.     MR. BUTOWSKY HAS BEEN DILIGENT UNDER THE CIRCUMSTANCES.

As counsel has repeatedly stated, Mr. Butowsky has been unable to devote the necessary attention to completing his production since his admission to the hospital on January 5, 2020. Declaration of Edward Butowsky, dated March 18 (the "Butowsky Decl.") at ¶ 3.  At Plaintiff's request, Mr. Butowsky retained a discovery vendor who collected all of Mr. Butowsky's email information and preserved it in a searchable format.  *Id.*  This resulted in the collection of approximately 4,000 pages of responsive documents and approximately 1,000 pages of documents that needed to be reviewed for privilege.  *Id.* at ¶¶ 3-4.  The responsive documents spanned a multi-year period and included names of interlocutors that were unfamiliar to Mr. Butowsky's counsel, who had only been representing Mr. Butowsky since November, 2019 and could not, without input from his client, fully assess whether the documents flagged as responsive were privileged or otherwise objectionable.  Quainton Decl. at ¶ 8.  Reviewing 4,000 pages of documents is not something that even a fully healthy and alert defendant could do quickly under the best of circumstances.  But Mr. Butowsky only had intermittent moments of lucidity and relief from his pain, during which, understandably, he prioritized reassuring his clients so that he could remain solvent and provide for his family.  Butowsky Decl. at ¶ 2. Indeed, since January 5, 2020, when Mr. Butowsky's most recent medical difficulties began, Mr.

4

Butowsky did not have a sufficient block of pain and medication-free time to review the proposed production until the weekend of March 14, 2020. *Id.* at ¶ 3. During this weekend, Mr. Butowsky devoted himself exclusively to the task of reviewing the proposed production, which was delivered to Plaintiff on Monday, March 16, 2020. *Id.* at ¶ 4. To claim that Mr. Butowsky has not been diligent under the circumstances ignores the difficulties he has faced and the good faith efforts he has made to provide Plaintiff with responsive documents.

At the same time, Mr. Butowsky has been as diligent as possible in pursuing his own defense. Some of this work could be delegated to counsel without direct involvement of the client, as is the case in many litigations. Counsel diligently continued to propound discovery requests to prepare Mr. Butowsky's defense as best as possible under the circumstances, which Plaintiff choses to criticize when it suits his purposes. Dkt. 165 at 5 (counsel "has been aggressively advancing offensive [written] discovery").

While counsel has been as diligent as possible under the circumstances, Plaintiff ignores the core difficulty counsel and Mr. Butowsky have faced. Written discovery requests can be made without direct input from the client, but counsel **cannot** ethically make strategic decisions affecting the overall conduct of the litigation without the meaningful participation of the client. *See e.g.*, *In re Gluck*, 114 F. Supp. 3d 57, 60 (E.D.N.Y. 2015); *Sec. Title Guarantee Corp. of Baltimore v. 915 Decatur St NW, LLC*, No. CV 18-1128 (CKK), 2020 WL 474449, at *2 (D.D.C. Jan. 29, 2020)(without being able to communicate with her client, it is unclear how counsel can effectively represent her client's interests or fulfill her ethical obligations as counsel). A lawyer's duty is not only to keep the client informed of important developments but also to ensure that it is the client, and not the lawyer, who makes the ultimate strategic decisions. *See* David A. Marcello, *The Ethics and Politics of Legislative Drafting*, 70 Tul. L. Rev. 2437, 2446 (1996)(underscoring an attorney's ethical duty to "abide by a client's decisions concerning the

5

objectives of representation"). It should be self-evident that the ethical lawyer needs to have his or her client's full attention, unclouded by pain or medication, before making decisions that could affect the strategic direction of a case. While Mr. Butowsky had moments of lucidity that permitted him to exercise his chosen profession, he did not have the mental clarity needed to make key decisions on the direction of the case until very recently. Counsel required Mr. Butowsky's full and undivided attention before issuing the final subpoenas for depositions, given the already unfair restrictions the court had placed on defendants and the five deposition "bullets" the Court had allotted Mr. Butowsky in contrast with Plaintiff's ten.[4]

As Mr. Butowksky lay in his hospital bed unable to grasp the implications of legal decisions fully, it was by no means obvious what final decisions Mr. Butowsky would take or what depositions Mr. Butowsky would chose to prioritize. While Ellen Ratner and Cassandra Fairbanks – whose depositions Mr. Butowsky is now seeking – are important witnesses, counsel knew that Mr. Butowsky was aware of other individuals with knowledge of relevant corroborating statements, including Margaret Kunstler, the spouse of civil rights lawyer William Kunstler and Julian Assange's lawyer Michael Ratner; Adam Housely, a reporter at Fox News; and William Shine, a senior executive at Fox News. In addition, Susan MacFayden, the wife of deceased journalist, Gavin MacFayeden, reputed to be the intermediary used by Seth Rich to transmit emails to Wikileaks, and Julian Assange's mother, among many others, may be able to provide relevant testimony. Butowsky Decl. at ¶ 6. Counsel could not ethically make choices

---

[4] The Court permitted Plaintiff to take up to ten depositions in response to a motion to which Defendants had consented **on condition** they be granted an equal number of depositions, Dkt. 83 and Note 1. Yet the court has only allowed Mr. Butowsky five depositions and both Defendants together a combined total of only eight depositions. This is manifestly unfair and biased towards Plaintiff. In other pending litigation, where Mr. Butowsky is not faced with such stringent restrictions, Mr. Butowsky's counsel does not have the same need to consult with Mr. Butowsky since issuing a given subpoena does not foreclose other strategic choices. See F.R.C.P 30(a)(2)(A)(i) (requiring leave of court to take more than 10 depositions).

among potential witnesses without a meaningful, in-depth discussion with his client. When Mr. Butowsky gave his final approval to the decision to seek depositions of Ellen Ratner and Cassandra Fairbanks, there was little time remaining to effect service of process.[5] Ellen Ratner's counsel has refused to cooperate with Mr. Butowsky, taking the entirely unreasonable position that because Ms. Ratner sat for a Rule 31 deposition noticed by Plaintiff, Defendant has no independent right to take Ms. Ratners's deposition. Quainton Decl., Ex. 1. Mr. Butowsky has attempted to effect service on Ms. Ratner, but has so far been unable to complete service, despite diligent attempts. *Id.*, Ex. 2 - 9. Mr. Butowsky is also attempting to serve Cassandra Fairbanks, with a similar lack of success. *Id.*, Ex. 10. In fact, Ms. Fairbanks is flatly refusing service, telling the process server, through an intermediary, to "get off the property." *Id.*, Ex. 11.

Strategizing about (and then scheduling) depositions, however, are not the only difficulty Defendant has faced. In reviewing the responses to subpoenas from eBay and Google, Mr. Butowsky learned of the existence of a recovery email account that had never been disclosed to Defendants. In addition, through an expert, Mr. Butowsky has learned of another undisclosed email account apparently operated by Plaintiff. Quainton Decl., Ex. 13. It is evident that these accounts need to be thoroughly analyzed. Plaintiff asserts emphatically that any suggestion either he or his brother communicated with Wikileaks is a far-right conspiracy theory. This is an absurd claim to make if Plaintiff is hiding email accounts and their contents, and Defendants are entitled to get to the bottom of these accounts. In addition, the existence of one of Seth Rich's accounts was alluded to by an Internet impresario named Kim Dotcom, whom Defendants have dismissed as unreliable, but who has provided credible public statements about Seth Rich's

---

[5] If Mr. Butowsky maintains the current proposed deposition of Brad Bauman and secures the deposition of Sy Hersh, he would need Court approval to take Ms. Fairbanks' deposition, as that would be his sixth deposition. Mr. Butowsky intends to make the necessary application.

communications with Wikileaks.[6]  Counsel has attempted unsuccessfully to reach Mr. Dotcom, but will need additional time either to obtain a voluntary deposition of Mr. Dotcom or to obtain Court permission to serve him via alternate means.  Quainton Decl. at ¶ 12.  Mr. Butowsky is not seeking an open-ended extension of discovery but limited additional time to ensure that he can properly prepare his defense.

While Mr. Rich's desire to have his day in court is certainly understandable, it should be no less understandable that Mr. Butowsky wants to make sure he can adequately respond to accusations that have resulted in severe financial harm and death threats to him and his family.  Butowsky Decl. at ¶ 7.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court extend discovery for an additional 60 days following the lifting of any stay to be entered as a result of the current global crisis.

Dated March 18, 2020

                                                */s/ Eden Quainton*_____
                                                EDEN P. QUAINTON, ESQ. (D.C. Bar No. NY0318)
                                                QUAINTON LAW, PLLC
                                                1001 Avenue of the Americas, 11th Floor
                                                New York, New York 10018
                                                Telephone: (212) 813-8389
                                                E-mail: equainton@gmail.com
                                                *Attorneys for Defendants Edward Butowsky*

---

[6] *See* https://consortiumnews.com/2019/08/02/watch-cn-live-kim-dotcom-bill-binney-mike-gravel-on-episode-4/ beginning at minute 48.

8

## **CERTIFICATE OF SERVICE**

The undersigned counsel certifies that on March 18, 2020, the foregoing document was filed through the CM/ECF system and thereby served electronically on counsel for Plaintiff Aaron Rich.

**QUAINTON LAW, PLLC**

*/s/ Eden Quainton*_____
EDEN P. QUAINTON, ESQ.
1001 Avenue of the Americas, 11th Floor
New York, New York 10018
Telephone: (212) 813-8389
E-mail: equainton@gmail.com
*Attorneys for Defendants Edward Butowsky and Matthew Couch*