# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

AARON RICH

                Plaintiff,

   v.

EDWARD BUTOWSKY, MATTHEW
COUCH, and AMERICA FIRST
MEDIA,

                Defendants.

Civil Action No. 1:18-cv-00681-RJL
Hon. Richard J. Leon

## PLAINTIFF'S SURREPLY IN SUPPORT OF HIS OPPOSITION TO NON-PARTIES MALIA ZIMMERMAN AND FOX NEWS NETWORK, LLC'S JOINT MOTION FOR A PROTECTIVE ORDER BARRING DEPOSITION

MICHAEL J. GOTTLIEB (D.C. Bar No. 974960)
WILLKIE FARR & GALLAGHER LLP
1875 K Street NW
Washington, DC 20006
Tel: (202) 303-1000
Fax: (202) 303-2000
mgottlieb@willkie.com

JOSHUA P. RILEY (D.C. Bar No. 1026900)
MERYL C. GOVERNSKI (D.C. Bar No. 1023549)
BOIES SCHILLER FLEXNER LLP
1401 New York Ave NW
Washington, DC 20005
Tel: (202) 237-2727
Fax: (202) 237-6131
jriley@bsfllp.com
mgovernski@bsfllp.com

*Attorneys for Plaintiff Aaron Rich*

Plaintiff Aaron Rich respectfully submits this Surreply ("Surreply") to the Reply Memorandum ("Reply"), Dkt. 150, filed jointly by third parties Fox News Network, LLC ("Fox News") and Fox News reporter Malia Zimmerman (hereinafter "Ms. Zimmerman").[1]   This Surreply is limited to addressing the new arguments and assertions in Ms. Zimmerman's Reply.

## ARGUMENT

### I.      The Reply Improperly Attempts to Assign the Burden of Persuasion for Invoking the Newsgathering Privileges to Plaintiff

It is Ms. Zimmerman's burden to establish the predicates necessary for invocation of the protections offered by the First Amendment to the United States Constitution ("federal privilege") and the New York law protecting newsgathering, N.Y. Civ. Rights § 79-h ("state privilege").   *See Hutira v. Islamic Republic of Iran*, 211 F. Supp. 2d 115, 119 n.4 (D.D.C. 2002) (holding that the journalist asserting the federal privilege has the burden of demonstrating it applies); *Matter of Andrews v. Andreoli*, 92 Misc. 2d 410, 418 (N.Y. Sup. Ct. 1977) (holding that the journalist bears the burden of offering evidence that establishes the privilege).   The Reply sidesteps this clear law and instead appears to claim that Plaintiff is required to show a heightened need for Ms. Zimmerman's testimony even if the information in question falls outside the scope of the newsgathering privileges, or is subject to waiver.[2]   Ms. Zimmerman cites nothing supporting that proposition.   As courts have made clear, it is only *after* the journalist has established that the newsgathering privilege applies that the court evaluates a party's need for the information.   *See*

---

[1] Although the Reply was filed jointly by Fox News and Ms. Zimmerman, for ease of reference, this Surreply refers generally to the movants as "Ms. Zimmerman."

[2] For example, the Reply presents and argues the waiver point as a subsection of the argument that Plaintiff has not overcome the privilege.   Reply at 13, 21-24.   These are two entirely separate issues.

*Tripp v. Dep't of Def.*, 284 F. Supp. 2d 50, 54-55 (D.D.C. 2003) (a case cited to by Ms. Zimmerman that holds: "*Once a court determines the reporter's privilege is properly invoked*, it must look to the facts of the particular case, balancing the public interest in protecting the reporter's sources against the private interest in compelling disclosure.") (internal quotations omitted) (emphasis added); *Westmoreland v. CBS, Inc.*, 97 F.R.D. 703, 705 (S.D.N.Y. 1983) ("*Unless defendants [the news organization] can establish entitlement to an overriding privilege*, the high likely usefulness of the Report for the discovery of relevant evidence requires its production.") (emphasis added). If the newsgathering privileges do not apply, either because the information is outside the scope of the privileges or the privileges have been waived, Plaintiff need only show relevance[3] to justify discovery.  *See Westmoreland*, 97 F.R.D. at 705 (if the journalist fails to establish the privilege, anything relevant is within the scope of discovery); Fed. R. Civ. P. 26(b) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. . . .").

In assessing claims based upon newsgathering privileges, courts are concerned with "society's interest in protecting the integrity of the news gathering process." *Hutira*, 211 F. Supp. 2d at 118.  Both federal and state newsgathering privileges are limited to protecting information that is obtained from newsgathering efforts following professional standards of journalism—the privileges do not shield conduct that substantially departs from those standards.  *See id.* at 117-18; N.Y. Civ. Rights § 79-h; *cf. Obsidian Fin. Grp., LLC v. Cox*, No. 11-CV-00057, 2011 WL 5999334, at *5 (D. Or. Nov. 30, 2011) (listing recognized standards of journalism, including "adherence to journalistic standards such as editing, fact-checking, or disclosures of conflicts of

---

[3] This is precisely why Plaintiff briefed the issue of relevance, contrary to the mischaracterization in the Reply.  *See* Opposition, Dkt. 138 § I.

interest," maintaining a "mutual understanding or agreement of confidentiality" with sources, and creating "independent product rather than assembling writings and postings of others").

## II.     Ms. Zimmerman Fails to Establish that the Sought Testimony Falls Within the Newsgathering Privileges

### A.     *Ms. Zimmerman's Reply Offers No Evidence to Support the Claim that Mr. Butowsky was a "Source"*

Apart from the case caption, Defendant Edward Butowsky's name was not mentioned in the Joint Motion for a Protective Order Barring Deposition ("Motion"), Dkt. 114.  For the first time in her Reply, Ms. Zimmerman asserts that *all* of her communications with Edward Butowsky, *at all times*, constituted newsgathering from a source.  The Reply asserts that Mr. Butowsky was Ms. Zimmerman's source for not just the May 16, 2017 news article, but also never before mentioned potential follow-up news articles, and "the development of other, unrelated potential news stories."  *See* Reply at 8-9, 11-12, 12 n.8.  Neither the Motion nor the Reply cites anything— an email, declaration, document, or other testimony—supporting the assertion that Mr. Butowsky was a source.  That is fatal to the claim because unsworn factual assertions by counsel in a brief do not constitute evidence upon which this Court may rely.

In any event, the evidence that does exist shows the opposite of what Ms. Zimmerman now claims: Mr. Butowsky was not, and could not have been, a source for all or nearly all of Ms. Zimmerman's reporting.  First and foremost, Mr. Butowsky himself has declared that he was *not* a source for Ms. Zimmerman.  In his lawsuit filed against various media defendants, Mr. Butowsky states that it is "categorically false" that he was one of the "sources" who "fed tips to Wheeler and Zimmerman."  Compl. ¶ 53 & n.16, *Ed Butowsky v. David Folkenflik*, No. 18-cv-00442, (E.D. Tex. June 21, 2018).  To the contrary, Mr. Butowsky alleges in the same suit that his "role and involvement in the investigation of Seth Rich's murder was limited," *id.* ¶ 57, and that he "did not participate" in the investigation conducted by Rod Wheeler, *id* ¶ 62.  If those statements (made

subject to Rule 11 of the Federal Rules of Civil Procedure) are true, he plainly was not a source for Ms. Zimmerman; if false, a separate set of questions arise.  In any event, the contemporaneous representations Mr. Butowsky made to third parties show that whatever he may have been (a freelance producer, co-author, or otherwise), he clearly did not hold himself out as a source.  *See* Dkt. 95-4 (In reference to the Fox news article published May 16, 2017, Butowsky wrote, "I'm actually the one who's been putting this together but as you know I keep my name out of things because I have *no credibility*.") (emphasis added).

The Reply's insistence that Mr. Butowsky was a source strains credulity.  Mr. Butowsky is a financial and wealth management adviser in Texas who serves as a part-time, unpaid commentator for Fox News.[4]  There is no claim (1) that Mr. Butowsky has ever worked for the Federal Bureau of Investigation ("FBI") or any other investigative or law enforcement position in the federal government; (2) that Mr. Butowsky ever received information from any employee of the FBI; (3) that Mr. Butowsky ever held a federal security clearance; (4) that Mr. Butowsky ever met or spoke with Julian Assange; or (5) that Mr. Butowsky had contacts within the Democratic National Committee.[5]  In light of the above, it seems implausible that any reasonable reporter could or would have considered Mr. Butowsky a source, or a fact-checker, for Ms. Zimmerman's claim that the FBI had produced a report showing that Seth Rich transferred DNC documents to WikiLeaks.  The Reply does not dispute that Ms. Zimmerman used Mr. Butowsky as a functional co-author (or, perhaps, an editor or producer) for the May 16, 2017 article.  Mr. Butowsky received multiple versions and drafts of the article prior to publication, and at least one witness has testified

---

[4] *See* Dkt. 3 ¶14; Dkt. 23 at 24-25; Dkt. 52-5; Dkt. 116-2 at Ex. 8 at 6:5-10.

[5] Mr. Butowsky has admitted that he never communicated directly with Mr. Assange.  Ex. 1.

that the May 16, 2017 article was Mr. Butowsky's concept from the start.[6]   The Reply cites no

legal authority, or any professional norms,[7] in support of the proposition that the privilege between

a journalist and a non-journalist third party remains intact where the journalist has outsourced

drafting, editing, and production tasks to that third party.[8]   That is unsurprising—Fox News itself

has admitted that Ms. Zimmerman's May 16, 2017 article failed to meet the professional standards

it "require[s] for all [its] reporting."  *See* Dkt. 116-7 at Ex. 59.

If this Court agrees that Ms. Zimmerman has not established that Mr. Butowsky was a

source,[9] then Plaintiff need only establish relevance with respect to information exchanged

---

[6] *See* Ex. 2 (Mr. Wheeler agreeing that Mr. Butowsky was the one who "put[] this story together"); *see also* Dkt. 116-8 at Ex. 69. (Ms. Zimmerman sends Mr. Butowsky a "rough draft" of the article and asks him to provide feedback); Dkt. 138-42 (Ms. Zimmerman sends a draft copy of the article for Mr. Butowsky and Mr. Wheeler's review); Ex. 3 (Mr. Wheeler identifies Mr. Butowsky as the driving force behind the May 16, 2017 Fox News article).

[7] The Reply does not state what Fox News's policy is, but many news organizations prohibit journalists from sharing "drafts of entire stories with outside sources prior to publication" except in extraordinary circumstances.  *See, e.g.*, *Policies and Standards*, The Washington Post (Jan. 1, 2016, 12:01 PM), https://www.washingtonpost.com/news/ask-the-post/wp/2016/01/01/policies-and-standards/.

[8] *See Hutira*, 211 F. Supp. 2d at 117-18; N.Y. Civ. Rights § 79-h; *cf. Obsidian*, 2011 WL 5999334, at *5 (listing standards of professional journalists, including creating "independent product rather than assembling writings and postings of others").

[9] Even as to Mr. Wheeler, Ms. Zimmerman has not carried her burden of establishing that *all* of her communications with Mr. Wheeler constituted communications with a source in the course of newsgathering.  For example, Ms. Zimmerman does not explain how or why post-publication communications with Mr. Wheeler regarding the public controversy over the retracted Fox News article are entitled to protection from disclosure.  *See, e.g.*, Ex. 4.  Nor does the Reply address Ms. Zimmerman's direct role in reviewing and advising Mr. Wheeler on the terms of the investigative contract he signed with Aaron Rich—terms which Mr. Butowsky later directed Mr. Wheeler to violate, thereby forming one element of Plaintiff's claim for intentional infliction of emotional distress.  *See* Ex. 5; Ex. 6.

between Ms. Zimmerman and Mr. Butowsky—the privilege simply does not apply.  *See Tripp*, 284 F. Supp. 2d at 54-55; *Westmoreland*, 97 F.R.D. at 705.

       **B.**    *Zimmerman Waived the Federal and State Newsgathering Privileges with Respect to Any Information She Shared with Mr. Butowsky or Any Other Third Party*

Both the federal and state newsgathering privileges are waived when journalists share information with non-journalist third parties, including (but not limited to) other sources.  *See* N.Y. Civ. Rights § 79-h(g); *Bredemus v. Int'l Paper Co.*, No. 06-cv-01274, 2008 WL 11348492, at *8 (D. Minn. Aug. 22, 2008) (finding the reporter waived any federal privilege by voluntarily providing footage and information to third parties); *Lozman v. City of Riviera Beach*, No. 08-cv-80134, 2014 WL 12360697, at *4-5 (S.D. Fla. Oct. 8, 2014) (finding that by voluntarily disclosing information to others related to events that occurred at a marina on a specific date, the reporter waived the federal privilege for any information he had related to the events of that date); *see also In re Grand Jury Subpoena, Judith Miller*, 438 F.3d 1141, 1177 (D.C. Cir. 2006) ("reporters . . . may waive the privilege") (Tatel, J., concurring); *Palandjian v. Pahlavi*, 103 F.R.D. 410, 413 (D.D.C. 1984) (holding that although the journalist had not done so in this case, journalists could waive the newsgathering privilege).

Although it was Ms. Zimmerman's burden to establish that she has not waived the privilege,[10] she did not attempt to do so until her Reply.[11]  Yet nowhere in the Reply is there any discussion of the text of N.Y. Civ. Rights § 79-h(g), which plainly states that Ms. Zimmerman waived any state privilege when she shared source information with non-journalists.  *See* N.Y.

---

[10] *Lozman*, 2014 WL 12360697, at *4 ("It is axiomatic that '[t]he party seeking to invoke a privilege has the burden of establishing the non-waiver of the privilege.'") (quoting *United States v. Weissman*, No. 94-CR-00760, 1996 WL 737042, at *25 (S.D.N.Y. Dec. 26, 1996)).

[11] *See* Reply at 21-24.

Civil Rights § 79-h(g) ("Notwithstanding the provisions of this section, a person entitled to claim the exemption provided" for journalists "waives such exemption if such person *voluntarily discloses* or consents to disclosure of the specific information sought to be disclosed to *any person not otherwise entitled to claim the exemptions* provided by this section.") (emphasis added).  Given that none of Messrs. Butowsky, Couch, or Wheeler are "otherwise entitled to claim the exemptions provided" by the New York shield law, the plain meaning of the text of the New York statute compels the finding that Ms. Zimmerman waived any privilege she may have had with respect to information she shared with them.  *Id.*

The Reply claims that *Guice-Mills v. Forbes* stands for the proposition that Ms. Zimmerman's extensive disclosures of information gathered from sources does not waive the privileges, Reply at 21-24, but that argument misses the mark.  *Guice-Mills* acknowledged that journalists will, at times, need to disclose information learned from sources for the purposes of fact-checking, and that such fact-checking does not constitute waiver.  *Guice-Mills v. Forbes*, 12 Misc. 3d 852, 857 (N.Y. Sup. Ct. 2006) ("Were this an issue of whether or not a journalist waives the Shield Law by fact checking sources to ascertain the veracity of information used in news reports prior to publication, this court would not find waiver. . . .").  But the Reply does not establish that Ms. Zimmerman was disclosing information to Mr. Butowsky from Mr. Wheeler, or anyone else, for purposes of fact-checking—indeed, Ms. Zimmerman does not appear to argue as much.  *See* Reply at 21-24.  As discussed above, Mr. Butowsky was not in a position to fact-check the relevant information provided by Ms. Zimmerman.  *See infra* § II. A.

In sum, Ms. Zimmerman shared considerable information with non-journalist third parties throughout the relevant period of time subject to the subpoena, and she has failed to carry her burden to establish that such disclosures do not constitute waiver.  *See Lozman*, 2014 WL 12360697, at *4 (quoting *Weissman*, 1996 WL 737042, at *25).  As such, this Court should Order

that Ms. Zimmerman testify as to any information she shared with non-journalist third parties, including Mr. Butowsky, and should further Order that Ms. Zimmerman and Fox News produce all documents that have previously been withheld based upon such claim of privilege.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court deny the Motion in its entirety.

DATED:  February 10, 2020

/s/ *Michael J. Gottlieb*
MICHAEL J. GOTTLIEB (D.C. Bar No. 974960)
WILLKIE FARR & GALLAGHER LLP
1875 K Street NW
Washington, DC 20006
Tel: (202) 303-1000
Fax: (202) 303-2000
mgottlieb@willkie.com

JOSHUA P. RILEY (D.C. Bar No. 1026900)
MERYL C. GOVERNSKI (D.C. Bar No. 1023549)
BOIES SCHILLER FLEXNER LLP
1401 New York Ave NW
Washington, DC 20005
Tel: (202) 237-2727
Fax: (202) 237-6131
jriley@bsfllp.com
mgovernski@bsfllp.com

***Attorneys for Plaintiff Aaron Rich***

## <u>CERTIFICATE OF SERVICE</u>

The undersigned counsel certifies that on February 10, 2020, the foregoing document was filed through the CM/ECF system and thereby served electronically on counsel for Malia Zimmerman, Fox News Network LLC, Defendant Edward Butowsky, and Defendant Matthew Couch. A courtesy copy of the foregoing document also was emailed to their counsel, Eden Quainton, at equainton@gmail.com. Mr. Quainton has agreed to convey served and filed documents to Defendant America First Media through Defendant Couch as necessary.

Dated: February 10, 2020

/s/ *Michael J. Gottlieb*
MICHAEL J. GOTTLIEB
WILLKIE FARR & GALLAGHER LLP
1875 K Street NW
Washington, DC 20006
Tel: (202) 303-1000
Fax: (202) 303-2000
mgottlieb@willkie.com
D.C. Bar No. 974960

*Attorney for Plaintiff Aaron Rich*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AARON RICH | |
| Plaintiff, | Civil Action No. 1:18-cv-00681-RJL |
| v. | Hon. Richard J. Leon |
| EDWARD BUTOWSKY, MATTHEW COUCH, and AMERICA FIRST MEDIA, | |
| Defendants. | |

**DECLARATION OF ANDREW ENGLISH IN SUPPORT OF**
**PLAINTIFF'S SURREPLY IN SUPPORT OF HIS OPPOSITION TO NON-PARTIES**
**MALIA ZIMMERMAN AND FOX NEWS NETWORK, LLC'S JOINT MOTION FOR A**
**PROTECTIVE ORDER BARRING DEPOSITION**

I, Andrew English, hereby declare as follows:

1. I am an attorney with Willkie Farr & Gallagher LLP and represent Aaron Rich ("Plaintiff") in the above-captioned matter.  This Declaration is made in support of Plaintiff's Surreply in Support of His Opposition to Non-Parties Malia Zimmerman and Fox News Network, LLC's Joint Motion for a Protective Order Barring Deposition.  All of the statements set forth herein are true and correct and are based on my personal knowledge.

2. Attached as Exhibit 1 to this Declaration is a true and correct copy of Defendant Edward Butowsky's responses to Plaintiff Aaron Rich's first set of requests for admissions.

3. Attached as Exhibit 2 to this Declaration is a true and correct copy of an excerpt of the transcript of the deposition of third party Rod Wheeler, which took place on November 18, 2019.

4. Attached as Exhibit 3 to this Declaration is a true and correct copy of an excerpt of the transcript of the deposition of third party Rod Wheeler, which took place on November 18, 2019.

5. Attached as Exhibit 4 of this Declaration is a true and correct copy of a document produced in this litigation by third party Rod Wheeler bearing bates stamp WHEELER0000385.

6. Attached as Exhibit 5 of this Declaration is a true and correct copy of a document produced in this litigation by third party Rod Wheeler bearing bates stamp WHEELER0000125.

7. Attached as Exhibit 6 to this Declaration is a true and correct copy of an excerpt of the transcript of the deposition of third party Rod Wheeler, which took place on November 18, 2019.

I certify under penalty of perjury that the foregoing is true and correct.

Executed on February 10, 2020, in Washington, DC.

/s/ Andrew English
Andrew English

# EXHIBIT 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AARON RICH,                                                    Case No. 1:18-cv-00681-RJL
                                                               Honorable Richard J. Leon

      Plaintiff,

      v.


EDWARD BUTOWSKY,
MATTHEW COUCH,
AMERICA FIRST MEDIA,

      Defendants.

### DEFENDANT EDWARD BUTOWSKY'S RESPONSES TO PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSIONS FROM DEFENDANT EDWARD BUTOWSKY

### PRELIMINARY STATEMENT

Defendant Edward Butowsky ("Defendant" or "Butowsky") has not, at this time, fully completed his discovery and investigation in this action. All information contained herein is based solely upon such information and evidence as is presently available and known to Defendant upon information and belief at this time.  Further discovery, investigation, research and analysis may supply additional facts, and meaning to currently known information. Defendant reserves the right to amend any and all responses herein as additional facts are ascertained, legal research is completed, and analysis is undertaken. The responses herein are made in a good faith effort to supply as much information as is presently known to Defendant.

### GENERAL OBJECTIONS

    1. Defendant objects to the requests that impose or seek to impose any requirement or discovery obligation greater than or different from those under the Federal Rules of Civil Procedure and the applicable Local Rules and Orders of the Court.

2. Defendant objects to the requests to the extent they seek disclosure of information protected under the attorney-client privilege, deliberative process privilege, attorney work product doctrine, or any other applicable privilege or immunity. Should any such disclosure by Defendant occur, it is inadvertent and shall not constitute a waiver of any privilege or immunity. Subject to and without waiving the foregoing objections, Defendant provides the following responses.

**RFA 1:** Admit that You are responsible for all content posted by the username @EdButowsky on Twitter and Periscope.

**RESPONSE**:  Admitted.

**RFA 2:**  Admit that the statements you made in the CNN Interview were truthful.

**RESPONSE:** Admitted.

**RFA 3:** Admit that You have published statements accusing Aaron Rich of being involved in downloading and/or stealing emails from the DNC.

**RESPONSE:**  Defendant objects that this Request assumes facts not in evidence and calls for a legal conclusion.  Defendant has never stated that Aaron Rich was involved in "stealing" DNC emails.   Defendant has never "published" statements "accusing" Aaron Rich.  To the extent a response is required, denied.

**RFA 4:** Admit that You have published statements accusing Aaron Rich of being involved in transmitting stolen DNC emails to Wikileaks.

**RESPONSE:** Defendant objects that this Request assumes facts not in evidence and calls for a legal conclusion.  Defendant has never stated that Aaron Rich was involved in "stealing" DNC emails.  Defendant has never "accused" Aaron Rich.  To the extent a response is required, denied.

**RFA 5:** Admit that You have published statements accusing Aaron Rich of receiving money from Wikileaks in exchange for DNC emails.

**RESPONSE:** Defendant objects that this Request assumes facts not in evidence and calls for a legal conclusion.  Defendant has never "published" statements "accusing" Aaron Rich.  To the extent a response is required, denied

**RFA 6:** Admit that Ellen Ratner never provided You with any information about Aaron Rich.

**RESPONSE:**  Admitted.

**RFA 7:** Admit that Seymour Hersh never provided You with any information about Aaron Rich.

**RESPONSE:**  Defendant objects that this request is vague and ambiguous in that the words "provided" and "information about" are confusing and misleading.  To the extent a response is required, denied.

**RFA 8:** Admit that Larry Johnson never provided You with any information about Aaron Rich.

**RESPONSE:**  Defendant objects that this request is vague and ambiguous in that the verb "provided" is confusing and misleading.  Defendant further objects that Larry Johnson has been retained as a consultant in the pending litigation and no answer is required under FRCP Rule 36 because communications with Larry Johnson are privileged under FRCP Rule 26(b)(3)(A)

**RFA:** Admit that William Binney never provided You with any information about Aaron Rich.

**RESPONSE:** Admitted.

**RFA 10:** Admit that You have never communicated directly with Julian Assange.

**RESPONSE:** Admitted.

**RFA 11:** Admit that Julian Assange has never provided You with any information about Aaron Rich.

**RESPONSE:** Defendant objects that this request is vague and ambiguous in that the verb "provided" is confusing and misleading.  Julian Assange communicated information relating to

Aaron Rich to others, including Cassandra Fairbanks and Margaret Kunstler, that was communicated to Defendant. To the extent a response is required, denied.

**RFA 12:** Admit that the first time you claimed that Mr. Assange told you to "look at Aaron's bank accounts" was in Your interrogatory answers in this litigation.

**RESPONSE:** Subject to the objection and response in Request No. 11, denied.

**RFA 13:** Admit that when You first called Joel and Mary Rich in December 2016, you did not know they had a son named Aaron Rich.

**RESPONSE:** Admitted.

**RFA 14:** Admit that the sole basis for Your statements accusing Aaron Rich of being involved in downloading and/or stealing emails from the DNC is your assertion that Joel Rich told you "I know what my boys did."

**RESPONSE:** Defendant objects that this Request assumes facts not in evidence and calls for a legal conclusion. Defendant has never stated that Aaron Rich was involved in "stealing" DNC emails. Defendant has never "accused" Aaron Rich. To the extent a response is required, denied.

**RFA 15:** Admit that the sole basis for Your statements accusing Aaron Rich of being involved in transmitting stolen DNC emails to Wikileaks is your assertion that Joel Rich told you "I know what my boys did."

**RESPONSE:** Defendant objects that this Request assumes facts not in evidence and calls for a legal conclusion. Defendant has never made statements "accusing" Aaron Rich of being involved in "stealing" DNC emails. To the extent a response is required, denied.

**RFA 16:** Admit that the sole basis for Your statements accusing Aaron Rich of receiving money from Wikileaks in exchange for DNC emails is your assertion that Joel Rich told you "I know what my boys did."

**RESPONSE:** Defendant objects that this Request assumes facts not in evidence and calls for a legal conclusion.   Defendant has never "accused" Aaron Rich.  To the extent a response is required, denied.

**RFA 17:** Admit that, aside from what you allege Joel Rich said to You, You do not have any Evidence showing that Aaron Rich was involved in downloading and/or stealing emails from the DNC.

**RESPONSE:** Defendant objects that this Request assumes facts not in evidence and calls for a legal conclusion.  Defendant has never stated that Aaron Rich was involved in stealing DNC emails.  To the extent a response is required, denied.

**RFA 18:** Admit that, aside from what you allege Joel Rich said to You, You do not have any Evidence showing that Aaron Rich was involved in transmitting stolen DNC emails to Wikileaks.

**RESPONSE:** Defendant objects that this Request assumes facts not in evidence and calls for a legal conclusion.  Defendant has never stated that Aaron Rich was involved in stealing DNC emails.  To the extent a response is required, denied.

**RFA 19:** Admit that, aside from what you allege Joel Rich said to You, You do not have any Evidence showing that Aaron Rich received any money from Wikileaks in exchange for DNC emails.

**RESPONSE:** Denied.

**RFA 20:** Admit that Joel Rich has never told You that either of his sons was involved in downloading and/or stealing emails from the DNC.

**RESPONSE:**  Defendant objects that this Request assumes facts not in evidence and calls for a legal conclusion.  Defendant has never stated that Aaron Rich was involved in stealing DNC emails.  To the extent a response is required, denied.

**RFA 21:** Admit that Joel Rich has never told You that either of his sons was involved in transmitting stolen DNC emails to Wikileaks.

**RESPONSE**: Defendant objects that this Request assumes facts not in evidence and calls for a legal conclusion.  Subject to the foreoing objection, admitted that Joel Rich did not tell Defendant his sons were involved in transmitting "stolen" DNC emails to Wikileaks.

**RFA 22:** Admit that Joel Rich has never told You that either of his sons received money from Wikileaks in exchange for DNC emails.

**RESPONSE:**  Defendant objects that this Request is vague and ambiguous.  Defendant further objects that Joel Rich stated "I know what my boys did."  Subject to the foregoing objections, Defendant admits that Joel Rich never uttered the words "my sons received money from Wikileaks."

**RFA 23:** Admit that You have no personal knowledge that the transfer of funds for the DNC email leak was made through eBay.

**RESPONSE:**  Defendant objects that this Request is vague and ambiguous in that "personal knowledge" is not defined.  Defendant was told by Cassandra Fairbanks after her meeting with Julian Assange that the transfer of funds was made via e-Bay.  To the extent a response is required, denied.

**RFA 24:** Admit that You do not know why Seth Rich was killed.

**RESPONSE:** Admitted.

**RFA 25:** Admit that You provided information about Aaron Rich to Cassandra Fairbanks for the August 1, 2017 article published on Big League Politics, titled Brother of Seth Rich Works for Government Contractor That Provides Cyber Defense, available at https://bigleaguepolitics.com/brother-seth-rich-works-government-contractor-provides-cyber-defense/.

**RESPONSE:**  Defendant objects that discovery has not been completed and he does not recall every statement made to Cassandra Fairbands over two years ago.  Defendant cannot truthfully affirm or deny this Request.

**RFA 26:** Admit that You provided information about Aaron Rich to Cassandra Fairbanks for the August 1, 2017 article published on Big League Politics, titled Audio: Rod Wheeler Explains Fox News Fiasco, Claims Brother Blocked WikiLeaks Inquiries, available at

https://bigleaguepolitics.com/audio-rod-wheeler-explains-fox-news-fiasco-claims-brother-blocked-wikileaks-inquiries/.

**RESPONSE:** Defendant admits that he provided Cassandra Fairbanks with an audio recording of Rod Wheeler discussing his investigation of the murder of Seth Rich.

**RFA 27:** Admit that You made the statements Cassandra Fairbanks attributes to You in her March 1, 2018 article authored, "Exclusive => Insider Ed Butowsky: Seth Rich's Father Confirmed His Son Was the Wikileaks Leaker."

**RESPONSE:** Defendant objects that this Request is vague and ambiguous and calls for Defendant to affirm a mis-characterization of a restatement by Mr. Butowksy of Joel Rich's statement to Defendant and cannot therefore be truthfully admitted or denied.

**RFA 28:** Admit that You provided content to Admiral James Lyons about Aaron Rich that was ultimately published in The Washington Times.

**RESPONSE:** Defendant objects that the phrase "provided content" is vague and ambiguous.  To the extent a response is required, admitted that Defendant sent Admiral Lyons an email with a number of bullet points encapsulating information that was already in the public domain.

**RFA 29:** Admit that You initiated contact with Defendant Matthew Couch in May 2017 to discuss Seth Rich and/or Aaron Rich.

**RESPONSE:**  Denied.

**RFA 30:** Admit that You provided information to Defendants Matthew Couch and America First Media ("AFM") regarding Aaron Rich.

**RESPONSE:**  Defendant objects that this request refers to a mere name that has no legal existence and cannot be truthfully admitted or denied as to AFM.  As to Defendant Matthew Couch, admitted that Joel Rich's and Cassandra Fairbanks' statements were communicated to Mr. Couch.

**RFA 31:** Admit that as of August 2017, you agreed to provide support—whether financial, in-kind, direct, or indirect—to Defendant Matthew Couch to perform activities related to the Rich Family.

**RESPONSE:** Defendant objects that this request is vague and ambiguous, in that "support" and "activities related to the Rich Family" are unclear.  To the extent a response is required, denied.

**RFA 32:** Admit that You paid money to Defendant Matthew Couch to perform activities related to the Rich Family.

**RESPONSE:** Defendant objects that this request is vague and ambiguous, in that "paid money" suggests falsely that Mr. Couch performed services for Mr. Butowsky and "activities related to

the Rich Family" is not susceptible of clear and definite meaning.  To the extent a response is required, denied.

**RFA 33:** Admit that on or around September 20, 2017, you participated in a meeting at your residence with at least the following individuals: Defendant Matthew Couch, Joshua Flippo, Thomas Shoenberger, and Manual Chavez.

**RESPONSE:**  Admitted.

**RFA 34:** Admit that on or around September 20, 2017, you participated in a meeting at your residence where you accused Aaron Rich of being involved in downloading and/or stealing emails from the DNC.

**RESPONSE:** Defendant objects that this Request assumes facts not in evidence and calls for a legal conclusion.  Defendant has never stated that Aaron Rich was involved in "stealing" DNC emails.   Defendant has never "accused" Aaron Rich.  To the extent a response is required, denied.

**RFA 35:** Admit that on or around September 20, 2017, you participated in a meeting at your residence where you accused Aaron Rich of being involved in transmitting stolen DNC emails to Wikileaks.

**RESPONSE:** Defendant objects that this Request assumes facts not in evidence and calls for a legal conclusion.  Defendant has never stated that Aaron Rich was involved in transmitting "stolen" DNC emails.   Defendant has never "accused" Aaron Rich.  To the extent a response is required, denied.

**RFA 36:** Admit that on or around September 20, 2017, you participated in a meeting at your residence where you accused Aaron Rich of receiving money from Wikileaks in exchange for DNC emails.

**RESPONSE:** Defendant objects that this Request assumes facts not in evidence and calls for a legal conclusion.  Defendant  has never "accused" Aaron Rich.  To the extent a response is required, denied.

**RFA 37**:  Admit that You referred to some or all of the individuals who attended the September 20, 2017 meeting in your home as your "private militia."

**RESPONSE:** Defendant objects that this request is irrelevant and beyond the proper scope of FRCP Rule 36.  To the extent a response is required, denied.

**RFA 38**: Admit that you have discussed hacking into a computer or online account owned by a member of the Rich Family.

**RESPONSE:** Defendant o bjects that this request is irrelevant and beyond the proper scope of FRCP Rule 36.  To the extent a response is required, denied.

**RFA 39**: Admit that you have hired an individual or individuals or a company to hack into a computer or online account owned by at least one member of the Rich Family.

**RESPONSE:** Defendant objects that this request is irrelevant and beyond the proper scope of FRCP Rule 36.  To the extent a response is required, denied.

**RFA 40**: Admit that You provided funds (directly, indirectly, or in-kind) to Manuel Chavez to perform activities related to the Rich Family.

**RESPONSE:** Defendant objects that this request is irrelevant and beyond the proper scope of FRCP 36.  Defendant further objects that this request is vague and ambiguous in that "perform activities related to the Rich Family" is not susceptible of a clear meaning. To the extent a response is required, denied.

**RFA 41:** Admit that you discussed having Manuel Chavez outfit a van to surveil at least one member of the Rich family.

**RESPONSE:** Defendant bjects that this request is irrelevant and beyond the proper scope of FRCP Rule 36.  To the extent a response is required, denied.

**RFA 42:** Admit that you have asked Manuel Chavez and/or Thomas Schoenberger to accuse Stuart Blaugrund of sexual crimes.

**RESPONSE:** Defendant objects that this Request is irrelevant and beyond the proper scope of FRCP 36.  Defendant further objects that he never "asked" Mr. Chaves or Mr. Schoenberger to "accuse" Mr. Blaugrund of sexual crimes.  To the extent a response is required, denied.

**RFA 43:** Admit that prior to August 1, 2017, You read or were made aware of the contents of Mary and Joel Rich's May 23, 2017 open letter in the Washington Post titled We're Seth Rich's parents. Stop politicizing our son's murder.

**RESPONSE:** Defendant objects that this request is irrelevant.  To the extent a response is required, denied**.**

**RFA 44:** Admit that in January 2018, You received and read a letter from Aaron Rich telling You that Your statements about him are false.

**RESPONSE:**  Admitted.

**RFA 45:** Admit that on or about September 30, 2018, You read or were made aware of the contents of the Washington Times' Retraction: Aaron Rich and the murder of Seth Rich.

**RESPONSE:** Defendant objects that this Request is beyond the proper scope of FRCP 36 and no response is required.

**RFA 46:** Admit that Seymour Hersh told You that he had no first-hand knowledge about Seth Rich, including about the existence of a FBI report.

**RESPONSE:** Defendant objects that the phrase "first hand knowledge" is vague and ambiguous. Seymour Hersh stated that he spoke directly to an FBI agent who had reviewed and read an

internal report stating that Seth Rich transmitted emails to Wikileaks and requested money. To the extent a response is required, denied.

**RFA 47:** Admit that Seymour Hersh told You to stop telling people that he had information about Seth Rich.

**RESPONSE:** Defendant objects that he did not tell people he had information about Seth Rich, but merely shared the audio recording with Mr. Hersh's statements.  Subject to the foregoing objection, admitted.

**RFA 48:** Admit that Seymour Hersh told You that You were relaying inaccurate information about Aaron RAich.

**RESONSE:**  Denied.

**RFA 49**: Admit that it would be harmful to Aaron Rich's reputation if You were to publish statements falsely accusing him of being involved in downloading and/or stealing emails from the DNC.

**RESPONSE:** Defendant objects that discovery has not concluded and he has not developed information relating to Aaron Rich's reputation and standing in the community and therefore cannot truthfully admit or deny this request.

**RFA 50**: Admit that it would be harmful to Aaron Rich's reputation if You were to publish statements falsely accusing him of being involved in transmitting stolen DNC emails to Wikileaks.

**RESPONSE:** Defendant objects that discovery has not concluded and he has not developed information relating to Aaron Rich's reputation and standing in the community and therefore cannot truthfully admit or deny this request.

**RFA 51**: Admit that it would be harmful to Aaron Rich's reputation if You were to publish statements falsely accusing him of receiving money from Wikileaks in exchange for DNC emails.

**RESPONSE:** Defendant objects that discovery has not concluded and he has not developed information relating to Aaron Rich's reputation and standing in the community and therefore cannot truthfully admit or deny this request.

**RFA 52**: Admit that You have made statements about Aaron Rich's alleged involvement in stealing the DNC emails at least in part because those statements serve as a counter-narrative to allegations that Russia was involved in interfering with the 2016 election by stealing the DNC emails.

**RESPONSE:**  Denied that Defendant made any statements relating to Aaron Rich's alleged involvement in stealing emails.  Denied as to the remainder of the Request.  Defendant did not make any statements "because" they serve as a counter-narrative to anything.

**RFA 53:** Admit that You have received income related to Your role promoting the events in Benghazi.

**RESPONSE:** Defendant objects that this request is irrelevant to any issue in this litigation.  To the extent an answer is required, denied.

**RFA 54:** Admit that You have explored the possibility of entering into a book or movie deal relating to the Rich Family.

**RESPONSE:**  Defendant objects that this request is irrelevant.  Defendant further objects that the phase "explored the possibility" is vague and ambiguous.  To the extent an answer is required, denied.

**RFA 55:**  Admit that You caused the creation of the website

debunkingrodwheelersclaims.net  and/or debunkingrodwheelersclaims.com.

**RESPONSE:** Defendant objects that the phrase "caused the creation" is vague and ambiguous

and he cannot truthfully affirm or deny this Request.

**RFA 56:** Admit that You provided content for the website debunkingrodwheelersclaims.net

and/or debunkingrodwheelersclaims.com.

**RESPONSE:** Admitted.


Dated: New York, New York
       November 18, 2019

                                                    **QUAINTON LAW, PLLC**

                                                    */s/ Eden Quainton*
                                                    EDEN P. QUAINTON, ESQ.

                                                    1001 Avenue of the Americas, 11th Floor
                                                    New York, New York 10018
                                                    Telephone: (212) 813-8389
                                                    E-mail: equainton@gmail.com
                                                    *Attorneys for Defendant Edward Butowsky*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November18, 2019, a copy of the foregoing was served by agreement by electronic mail on the foregoing:

Joshua Riley
Meryl C. Governski
BOIES SCHILLER FLEXNER LLP
1401 New York Ave, N.C
Washington, DC 2005
jriley@fsflip.com
mgovernski@bsflip.com

Micahel J. Gottlieb
WILLKIE FARR & GALLAGHER LLP
1875 K. Street, N.W.
Washington, D.C. 20006
mgottlieb@willkie.com

Mathew Couch
4000 S Dixieland A-201
Rogers, AR 72758
mattcouch@af-mg.com

**QUAINTON LAW, PLLC**

*/s/ Eden Quainton*
EDEN P. QUAINTON, ESQ.

1001 Avenue of the Americas, 11th Floor
New York, New York 10018
Telephone: (212) 813-8389
E-mail: equainton@gmail.com
*Attorneys for Defendant Edward Butowsky*

# EXHIBIT 2

                UNITED STATES DISTRICT COURT

                FOR THE DISTRICT OF COLUMBIA

-----------------------------

AARON RICH                        *


          Plaintiff,              *


v.                                * Case No. Civil Action
                                    1:18-cv-00681-RJL

EDWARD BUTOWSKY,                  *

MATTHEW COUCH, and

AMERICA FIRST MEDIA,             *


          Defendants.             *


-----------------------------




VIDEOTAPED DEPOSITION OF:

                    ROD WHEELER,

taken on Monday, November 18, 2019, at 10:00 a.m.,

held at the offices of Willkie Farr & Gallagher, LLP,

1875 K Street, NW, Washington, D.C. 20006, before

Goldy Gold, a Registered Professional Reporter and a

Notary Public within and for the District of

Columbia.




Reported by:  Goldy Gold, RPR

Job No. 523974



Page 312

1    "The story is or will be up early tomorrow morning.

2    Rod Wheeler is up and ready to give interviews."

3              Was that correct?  Were you ready to

4    give interviews on this story?

5        A.     According to Ed Butowsky, I was.  But

6    how would he know that?  Because Ed doesn't schedule

7    interviews for me for Fox & Friends, and I had not

8    scheduled any interview with Fox & Friends for the

9    next day.

10       Q.     Mr. Butowsky says, "There's more to come

11   on this story, but for now this is a massive

12   story" --

13             (Reporter clarification.)

14             BY MR. GOTTLIEB:  I apologize.

15   BY MR. GOTTLIEB:

16       Q.     Mr. Butowsky says, "This is a massive

17   story.  There's going to be talk about it for a long

18   time.  If you have any questions about the story or

19   more information needed, call me at 977-" -- and the

20   number is not important.

21             Mr. Butowsky is telling these folks to

22   call him if they have questions about this story; is

23   that correct?

24       A.     That's correct.

25       Q.     And in the next sentence, Mr. Butowsky



1    says, "I'm actually the one who's been putting this

2    together, but as you know, I keep my name out of

3    things because I have no credibility."

4            Do you agree that -- with the content of

5    that sentence?

6        A.    Yes, I do.

7            MR. QUAINTON:   Objection to form.

8    BY MR. GOTTLIEB:

9        Q.    Do you agree that Mr. Butowsky was the

10   one who was putting this story together?

11       A.    Yes, I do.

12       Q.    And is that agreement based on your

13   personal knowledge, having worked with Mr. Butowsky

14   and Ms. Zimmerman over the prior two-plus months?

15       A.    Yes.

16       Q.    In the next paragraph, Mr. Butowsky

17   writes, "One of the big conclusions we need to draw

18   from this is that the Russians did not hack into our

19   computer systems and steal e-mails, and there was no

20   collusion like Trump with the Russians.  We're going

21   to have a follow-up story which includes Donna

22   Brazile in her role in all of this."

23           Did you know anything about the

24   connection between this story and the Russians

25   hacking into computer systems or stealing e-mails?



# EXHIBIT 3

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

------------------------------

AARON RICH                        *

      Plaintiff,            *

v.                                * Case No. Civil Action
                             1:18-cv-00681-RJL

EDWARD BUTOWSKY,                  *

MATTHEW COUCH, and

AMERICA FIRST MEDIA,              *

      Defendants.           *

------------------------------

VIDEOTAPED DEPOSITION OF:

               ROD WHEELER,

taken on Monday, November 18, 2019, at 10:00 a.m.,

held at the offices of Willkie Farr & Gallagher, LLP,

1875 K Street, NW, Washington, D.C. 20006, before

Goldy Gold, a Registered Professional Reporter and a

Notary Public within and for the District of

Columbia.

Reported by:  Goldy Gold, RPR

Job No. 523974



1      Q.     But no other payments from Googie or

2   Purple or Mr. Butowsky?

3      A.     No.

4      Q.     Okay.  In looking back at the complaint

5   ongoing page 27, paragraph 105, you've alleged in

6   paragraph 105:  "At all relevant times, Butowsky and

7   Zimmerman were corresponding and talking to

8   Mr. Wheeler about his investigation of Seth Rich's

9   murder, what steps he was taking in the

10  investigation, including who Mr. Wheeler had spoken

11  to and records he had reviewed."

12             Is that accurate?

13     A.     Yes, it is.

14     Q.     Was there ever a time when Mr. Butowsky

15  and Ms. Zimmerman backed off and allowed you to work

16  privately with the Rich family?

17     A.     Not that I can recall.

18     Q.     Okay.  And -- And is it fair to say that

19  -- of the three of you, Ms. Zimmerman and yourself

20  and Mr. Butowsky, was there a leader or driving force

21  in what was going to be investigated and what was

22  going to be done?

23     A.     Yes, I would say that would have been

24  Mr. Butowsky.

25     Q.     At all times?



1       A.      That's what I would say, yes.

2       Q.      Okay.  I want to show you a document

3   Wheeler 20.  I'm sorry, this is marked as

4   Wheeler Exhibit 12.  I'm sorry.  This is marked as

5   Exhibit 12, Wheeler Exhibit 12.  The Bates number is

6   WHEELER20.

7               [Wheeler Exhibit 12, March 6 e-mail from

8           Zimmerman to Wheeler, was marked for

9           identification.]

10  BY MR. GOTTLIEB:

11      Q.      I ask you take a look at document.

12              This appears to be an e-mail from

13  Ms. Zimmerman to you on March 6th, Bates number

14  WHEELER20 through WHEELER24.  Do you recognize this

15  document?

16      A.      Yes, I do.

17      Q.      And is this an e-mail Ms. Zimmerman sent

18  to you forwarding some correspondence that she had

19  had with MPD?

20      A.      That's correct, sir.

21      Q.      Do you see a reference from MPD on page

22  WHEELER20 where Ms. Zimmerman has asked MPD for

23  certain information and MPD has said "all crime scene

24  pictures, calls or videos related to this case have

25  not been released to the public as this is an ongoing



# EXHIBIT 4

**From:** Malia Zimmerman <maliamzimmerman@gmail.com>
**To:** Rod Wheeler <rod@rodwheeler.com>, Ed Butowsky <ebutowsky@gmail.com>
**Subject:**
**Date:** May 18, 2017 at 5:38:48 PM EDT

I think it would be good to include anything you have on how the reporter at Fox misquoted you and what she said that was inaccurate and how that set off a series of problems. And what happened when you went to her boss.

Let me know what you think, Thanks

Malia

On Thu, May 18, 2017 at 2:28 PM, Malia Zimmerman <maliamzimmerman@gmail.com> wrote:

> Hi Rod
>
> Do you have time to write up a time line of what happened from the night where the Fox 5 reporter talked with you and you also talked with Joel?
> That might be helpful for all of us,
>
> thanks
> Malia

<mailcore: MessageHeader Ox7fa03aa0j2c03 Message-ID: CAOCmf3F8H36r1c8fqj4EM2X5W8E_gTi8S7nNVaa9iDAaidFK4A@mail.gmail.com Reference: [CAOCmf3F8HBCjhs8fqX83u_irT1W8H8o0nQkMc=6zs4zLs3e6rQ@mail.gmail.com] In-Reply-To: [CAOCmf3F8HBCjhs8fqX83e_irT1W8H8o0nQkMc=6zs4zLs3e6rQ@mail.gmail.com] From: maliacore: Address Ox7fa03aa0eh02 Malia Zimmerman <maliamzimmerman@gmail.com> To: [maliacore: Address Ox7fa03aa0dd32 Rod Wheeler <rod@rodwheeler.com>,maliacore: Address Ox7fa03aa0f092 Ed Butowsky <ebutowsky@gmail.com>]
Subject: Re: Content-Type: multipart/alternative; boundary="000a134448b2af0d03c058418a5e" X-Received: by 10.55.33.17 with SMTP id h17mr00356jkh.240.1495145323852; Thu, 18 May 2017 14:58:48 -0700 (PDT) MIME-Version: 1.0 X-Gm-Message-State: ACC0to+CEXtE0gr3vceL20jm8J+LcF5hDQoXBXH2c5mDgfb3HEl...
gB1H9YQNR4dK026663amh2aekSxW7bSthqv=2i Mimetype: None DKIM-Signature: v=1; a=rsa-sha256; c=relaxed/relaxed; d=gmail.com; s=0216102; bvsomerstonio-in-reply-to:references-from-date:message-id-subject-to; bh=ZkNA97fWwlwrCRjjXiu0xo84t1w/0v/2kV7FVrVrdKaD1seQ
bruJoAdFrXC6i90faNe9N4dXd/oorfGaPeiV7Xd1g0drs4r46ZiDAe5sA7aJTbS37mdW0j+Xm/d905JZhw2Anf/w0mi8F/djBYTSRtTYtyurG4edRPEtQ8M3CC7YotC1ch84ufeX45+ZliV70VO4u9CiQ80RTY10D2wDexoGONT7/105Zn5seLGR1lhIwQ80p1rOAnAASWntj4C5d8+woXa
iY6G3fWKEFLs=EJjoT99=g0x4dAt9FYOD08lXv2L8rq2aALAbqqOxhSA/1NRNNVVvY3et/+VEZQreQ9T1Rx/VD5cSi5UcpEJlx/ZX6dWfw+Qo/aT Received: (qmail 123596 invoked by uid: REPO, 18 May 2017 21:38:49 -0000 X-Google-DKIM-Signature: v=1; a=rsa-sha256; c=relaxed/relaxed; d=1e100.net;
s=20161025; bvs-gm-message-state=atios-emistr-in-reply-to references-from date: message-id-subject-to; bh=ZkN3k09H=u6eCRJp4Adj/9x76AU8QfgjebQb3kNFpHelEB0nxtPdthpbrPDs6=bv76r3e0aYUOnxC0KGgb20nNfeySSgf=u/RSBWlnS5=
N4305qgvsdU0Y1jw/t5AlJeglph0Bc8Z2KE4V+dhvz0fsHgub0EwS0vea01+q7hi21 xgaWFN2Xgm9Mzywk0pbIM6PFFT3K7qoyC3847euRaFn7uPD00saAyrNGSpz7V+E3848uPfjkrTzDkhqI_GcYL/BM4063ZUQ+aF5z0b01S9TEPEbzX9W7sPq28/d0W9YrSK7G97gz/f68kgk1CyZlmEriSg5c=069Dor WtPD0axCe8E=gYqw=
mCfM2U78385fUbV/0ebl+qj/CmeMJayJeXQZZml5US5z5+0WFC2ae/Osd6lGjpmv=
Email-Archive: Version: 571.100

# EXHIBIT 5

**From:** Zimmerman, Malia McLaughlin <Malia.Zimmerman@FOXNEWS.COM>
**To:** Rod wheeler <rod@rodwheeler.com>
**Subject:** Agreement
**Date:** March 14, 2017 at 2:48:02 PM EDT

It is definitely a one way agreement to their benefit, but at least it will get you access to what you need.

It also does not say anything about limiting your investigation to a street crime, which is great.

I think its a win - and now hopefully can help solve the case.

---

**From:** Rod wheeler <rod@rodwheeler.com>
**Sent:** Tuesday, March 14, 2017 11:38:20 AM
**To:** Zimmerman, Malia McLaughlin
**Cc:** Rod wheeler
**Subject:** Agreement

# Rod
Rod Wheeler
rod@rodwheeler.com

This message and its attachments may contain legally privileged or confidential information. It is intended solely for the named addressee. If you are not the addressee indicated in this message (or responsible for delivery of the message to the addressee), you may not copy or deliver this message or its attachments to anyone. Rather, you should permanently delete this message and its attachments and kindly notify the sender by reply e-mail. Any content of this message and its attachments that does not relate to the official business of Fox News or Fox Business must not be taken to have been sent or endorsed by either of them. No representation is made that this email or its attachments are without defect.

<analyzer: MessageHeader 0x79a93d30dd40 Message-ID: BYTPR08MB3038B2488A14F69DC9E35465EB240@BYTPR08MB3038.namprd02.prod.outlook.com Reference: [13954633-99E8-4041-9276-3E55D2E95953@rodwheeler.com] In-Reply-To: [13954633-99E8-4041-9276-3E55D2E95953@rodwheeler.com] From: <analyze: Address 0x79a93d30e020 Zimmerman, Malia McLaughlin <Malia.Zimmerman@FOXNEWS.COM> To: [<analyze: Address 0x79a93d30e0c0 Rod wheeler <rod@rodwheeler.com>] Subject: Re: Agreement X-MS-TNEF-Correlator: Content-Type: multipart/alternative; boundary="_000_BYTPR08MB3038B2488A14F69DC9E35465EB240BYTPR08MB3038namp_" x-forefront-antispam-report: SFV:NSPM;SFS:(10009020)(98900003)(39830400003)(396003)(376002)(366004)(136003)(346002);DIR:OUT;SFP:1102;SCL:1;SRVR:BYTPR08MB3038;H:BYTPR08MB3038.namprd02.prod.outlook.com;FPR:;SPF:None;LANG:en;PTR:InfoNoRecords;A:1; MIME-Version: 1.0 X-MS-Exchange-CrossTenant-originalarrivaltime: 14 Mar 2017 18:48:02.3274 (UTC) X-MS-Exchange-CrossTenant-fromentityheader: Hosted X-MS-Exchange-CrossTenant-id: d6de6782-e0aa-49bf-85c4-c4daabc4558a X-MS-Exchange-Transport-CrossTenantHeadersStamped: BYTPR08MB3038 x-forefront-prvs: 0245035858 Accept-Language: en-US x-exchange-antispam-report-test: Uri:Score; X-MS-Exchange-CrossTenant-firstentityheader: Hosted spamdiagnosticmetadata: NSPM x-exchange-antispam-report-cfa-test: BCL:0;PCL:0;RULEID:(6040450)(601004)(2401047)(5005006)(8121501046)(93006095)(93001095)(10201501046)(3002001)(6055026)(6041248)(201703131423075)(201703020000)(201703120000)(201703150102)(201703180000)(6042181)(6072148);SRVR:BYTPR08MB3038;BCL:0;PCL:0;RULEID:;BVR:BYTPR08MB3038; x-microsoft-antispam: UriScan;BCL:0;PCL:0;RULEID:(22001)(5005006)(201703120060);SRVR:BYTPR08MB3038; x-Email-Archive-Version: 371.100

# EXHIBIT 6

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

------------------------------

AARON RICH                        *

        Plaintiff,          *

v.                                * Case No. Civil Action
                          1:18-cv-00681-RJL

EDWARD BUTOWSKY,                   *

MATTHEW COUCH, and

AMERICA FIRST MEDIA,               *

        Defendants.         *

------------------------------

VIDEOTAPED DEPOSITION OF:

                ROD WHEELER,

taken on Monday, November 18, 2019, at 10:00 a.m.,

held at the offices of Willkie Farr & Gallagher, LLP,

1875 K Street, NW, Washington, D.C. 20006, before

Goldy Gold, a Registered Professional Reporter and a

Notary Public within and for the District of

Columbia.

Reported by:  Goldy Gold, RPR

Job No. 523974



1   committed a murder?

2        A.     Yes.

3        Q.     And is that -- is that your

4   understanding of the audio today?

5        A.     Yes.

6        Q.     Okay.  If you look at paragraph 84 back

7   in the complaint, on page 2.  Can you take a look at

8   paragraphs 84 and 85, please?

9        A.     Yes.

10       Q.     Are these -- are these paragraphs

11  accurate?

12       A.     Yes.

13       Q.     And you believe the contents of

14  paragraphs 84 and 85 as we sit here today?

15       A.     I do.

16       Q.     What -- what do you mean in 84 when you

17  say "Butowsky and Zimmerman were not simply good

18  samaritans attempting to solve a murder; rather,

19  Butowsky and Zimmerman were interested in advancing a

20  political agenda."

21       A.     I meant exactly that.

22       Q.     What political agenda do you believe

23  Mr. Butowsky and Ms. Zimmerman were interested in

24  advancing?

25       A.     At some point during my investigation,



Page 67

1    it became rather clear to me that Butowsky and

2    Zimmerman, first of all, knew each other much better

3    than I thought they did.  I knew they had worked

4    together on the Benghazi case, but I didn't know they

5    were as close.

6              But, every time I talked to Malia on the

7    telephone, Malia Zimmerman, Butowsky would be on the

8    line, just about -- just about every time.  There

9    could have been one or two calls where he wasn't.

10   But for the most part he was always -- he was always

11   on the line.

12             Then when he started making comments,

13   you know, Don't share this -- even early on in the

14   investigation when he said, don't mention to

15   Joel Rich that you know Malia Zimmerman, you know,

16   it's a red flag in the back of my mind.  You know,

17   I'm thinking, Why not, but I didn't question it that

18   much.  I didn't know.

19             But anyway, at some point like, midway

20   through my investigation, Mike, I really began to

21   think, This isn't just about solving a murder.  And

22   can I quickly tell you why that happened?

23        Q.    It's yes.

24        A.    And I know I'm not supposed to volunteer

25   information, but this is like this.



```
1                    But I was down in LeDroit Park in the
2         Shaw neighborhood one evening --
3                    (Reporter clarification.)
4                    THE WITNESS:  The Shaw neighborhood,
5              over by Howard University, one evening, and I
6              was on the street talking to some guys to the
7              street.  This guy's on the street hanging out,
8              you know.  Man, who do you all know?  Do you
9              know anything about this dude getting killed?
10                   The same thing you would do if you are a
11             homicide detective in D.C., and my phone rang.
12             I don't know if it was -- if my phone rang or
13             some kind of way I communicated with Butowsky.
14             And he said, What are you doing?  And.
15                   I said, I'm over at the Shaw
16             neighborhood talking to some of these -- I
17             probably referenced them as these --
18             knuckleheads on the street, just to see if they
19             know anything about who killed Seth, and he got
20             mad.  He got upset.  What are you doing that
21             for?  I told you, you're wasting time, Rod.  I'm
22             not going to need to use you if you don't -- you
23             know, if you don't do like I told you.
24                   And I said, Ed, what is this all about?
25             Maybe these guys know who the shooter was?  And
```



```
1        he got upset about that.  And then that's when I
2        started really thinking to be honest, What is
3        this really about.
4             If thought he wanted me to solve the
5        murder.  If you want me to solve the murder, I
6        need to talk to the knuckleheads in -- in the
7        Shaw neighborhood because those are the ones who
8        typically do the murders on the street.  Do you
9        know what I mean?
10   BY MR. GOTTLIEB:
11        Q.    And just --  just so I'm clear,
12   Mr. Butowsky was upset with you because you were
13   talking to individuals in the Shaw neighborhood in
14   order to attempt to develop leads about who the
15   shooter of Seth Rich might have been?
16        A.    Yes, because if -- it could have been a
17   botched robbery, and if it is a botched robbery, with
18   the amount of money that was being offered as a
19   reward, the best thing you can do as a detective is
20   go on the street and you let these people know, This
21   money is available, if you can just tell me -- you
22   needn't have to testify.  You know, that's things you
23   tell them.
24             And so that's what I was trying to do,
25   come up with some leads because if it was a botched
```



1  robbery, one of them are going to know -- somebody is

2  going to know, girlfriend of one of -- somebody is

3  going to know on the street.  That's how you solve

4  cases on the street, but he was upset about that.

5        Q.    Do you understand why Mr. Butowsky was

6  upset about that?

7        A.    Now I do.

8        Q.    Why is that?

9        A.    Well, because I believe he was upset

10  about that because that's not the narrative he wanted

11  -- he wanted.  He wanted me to go down this path of

12  the e-mail thing and tie it into this political thing

13  as far as this Russian hacking, which I have no

14  interest in whatsoever.  That's what wanted me to do.

15             He should have told me that upfront.  If

16  he would have told me that upfront, then I would have

17  had the option at that point to say, Yes, I'm

18  interested or no, I'm not.  He never gave me that

19  option.

20             And I'll tell you why that's

21  significant, Mike, is because I've learned since all

22  of this stuff has been going on, that Butowsky had

23  conversations with people like Ellen Ratner about

24  this whole case in e-mails, and he never shared any

25  of that with me.



Page 394

1    not investigate; is that right?

2         A.      That's correct.

3         Q.      And Mr. Butowsky was not your client; is

4    that right?

5         A.      That's correct.

6         Q.      And so as a detective, as you were

7    saying, you were troubled and suspicious, I think you

8    said?

9         A.      Not suspicious, just troubled.

10        Q.      "Troubled."

11                Did you have -- were you also troubled

12   by Mr. Butowsky giving you instructions about what

13   you were and were not allowed to look into?

14        A.      And I mentioned this several times

15   today, that I was troubled with Mr. Butowsky from the

16   very beginning.  Remember I said that?  Early this

17   morning, I said I was troubled by Butowsky.

18        Q.      Okay.  Give me one moment to see if

19   there's anything else we have missed.

20                Okay.  So, Mr. Wheeler, we had -- we

21   reached out to you regarding one particular recording

22   that we wanted to have produced to us, so we've asked

23   you to look into it.  It's the May 19th audio.

24        A.      Sure.  And I will take another look for

25   that.

