# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

AARON RICH

     Plaintiff,

 v.

EDWARD BUTOWSKY,
MATTHEW COUCH, and
AMERICA FIRST MEDIA

     Defendants.

Civil Action No. 1:18-cv-00681-RJL

Hon. Richard J. Leon

**ORAL ARGUMENT REQUESTED**


**PLAINTIFF'S MOTION TO REMEDY THIRD-PARTY LARRY JOHNSON'S REFUSAL TO ANSWER QUESTIONS DURING HIS DEPOSITION, INCLUDING TO IMPOSE RULE 37 SANCTIONS ON HIS COUNSEL**

MICHAEL J. GOTTLIEB (D.C. Bar No. 974960)
WILLKIE FARR GALLAGHER LLP
1875 K Street NW, Washington, DC 20006
Tel: (202) 303-1442 / Fax: (202) 303-2000
mgottlieb@willkie.com

JOSHUA P. RILEY (D.C. Bar No. 1026900)
MERYL C. GOVERNSKI (D.C. Bar No. 1023549)
BOIES SCHILLER FLEXNER LLP
1401 New York Ave NW, Washington DC 20005
Tel: (202) 237-2727 / Fax: (202) 237-6131
jriley@bsfllp.com
mgovernski@bsfllp.com

Pursuant to Federal Rule of Civil Procedure 37(a)(3)(B)(i), Plaintiff Aaron Rich respectfully submits this Motion to Remedy Third-Party Larry Johnson's Refusal To Answer Questions During His Deposition, Including To Impose Rule 37 Sanctions On His Counsel ("Motion").  Pursuant to Local Rule 7(m), the undersigned certifies that Plaintiff's counsel conferred with Mr. Johnson's and Defendants Butowsky's counsel in an unsuccessful attempt to resolve this dispute.

## **INTRODUCTION**

Defendant Edward Butowsky listed Mr. Johnson in his initial disclosures as a percipient fact witness with "knowledge of his investigation of Seth Rich's murder and communications with Mr. Butowsky regarding the same."  Nonetheless, during Mr. Johnson's deposition in Bradenton, Florida on March 4, 2020, his counsel, Eden Quainton—who also represents Defendants Butowsky and Matthew Couch—instructed Mr. Johnson ██████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████████████.  The law does not support Mr. Quainton's argument, and the Court should penalize Mr. Quainton for yet again imposing a burden on Plaintiff's efforts to pursue proper discovery.  (On January 24, 2020, the Court ordered Defendant Matthew Couch to sit for a second deposition after Mr. Quainton improperly instructed Defendant Couch not to answer dozens of questions during his first deposition.)  For the following reasons, the Court should enter an order requiring Mr. Johnson to sit for a deposition, prohibiting Mr.

Quainton from instructing Mr. Johnson not to answer questions, and requiring Mr. Quainton to bear all costs relating to Plaintiff's completion of the deposition.

## **FACTUAL BACKGROUND**

In his Initial Disclosures in this matter, Defendant Butowsky designated Mr. Johnson as a fact witness, stating that he has "knowledge of his investigation of Seth Rich's murder and communications with Mr. Butowsky regarding the same." Dkt. 83-3; *see also* Declaration of Samuel Hall ("Hall Decl.") Ex. 1 at 10:2-3; *id.* at 200:9-11 ███████████████████████

███████. That designation appears to be consistent with Mr. Johnson's publications and

███████████████████████████████████████ since 2016 concerning the hack of the DNC during the 2016 presidential campaign.

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████. Documents and testimony revealed during discovery have shown that:

███████████████████████████████████████████

███████████████████████████

███████████████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████

████████████████████████████████████

████████████████████████████████████

██████████████████████

Moreover, since late 2016, Mr. Johnson has been a central figure in developing and publishing a theory that the DNC was not hacked in 2016 by Russia, but instead the relevant data was leaked by an insider, likely Seth Rich. As examples, Mr. Johnson published a piece on December 9, 2016, titled "Unraveling the Russian Hack Conspiracy Propaganda," arguing that efforts to blame Russia for the hack of the DNC were part of "the Clinton playbook[.]" Larry Johnson, *Unraveling the Russian Hack Conspiracy Propaganda*, No Quarter (Dec. 9, 2016).[1] On December 11, 2016, Mr. Johnson published a piece titled "Washington Post Fake News and CIA Spin," giving his opinion that allegations that Russia had meddled in the 2016 U.S. election were a CIA plot. Larry Johnson, *Washington Post Fake News and CIA Spin*, No Quarter (Dec. 11, 2016).[2] On December 12, 2016, Mr. Johnson signed another piece, titled "US Intel Vets Dispute Russia Hacking Claims," concluding that "[a]ll signs point to leaking, not hacking," when referring to the breach of DNC data in 2016. Larry Johnson et al., *US Intel Vets Dispute Russia Hacking Claims*, Consortium News (Jan. 12, 2016).[3] On January 17, 2017, Mr. Johnson again publically signed a piece concluding "that leaks are the source of the WikiLeaks disclosures in question – not hacking." Larry Johnson et al., *A Demand for Russian 'Hacking' Proof*, Consortium News (Jan.

---

[1]       *Available      online      at*      https://web.archive.org/web/20161211152729/ http://www.noquarterusa.net/blog/79458/unraveling-russian-hack-conspiracy-propaganda/

[2]       *Available      online      at*      https://web.archive.org/web/20161212133034/ http://www.noquarterusa.net/blog/79460/washington-post-fake-news-cia-spin/

[3]   *Available  online  at*   https://consortiumnews.com/2016/12/12/us-intel-vets-dispute-russia-hacking-claims/

17, 2017).  On July 24, 2017, Mr. Johnson published a piece titled "Intel Vets Challenge 'Russia Hack' Evidence," concluding that DNC data released in connection with the 2016 breach "originated with a copy (onto an external storage device – a thumb drive, for example) by an insider" and that the "data was leaked to implicate Russia."  Larry Johnson et al., *Intel Vets Challenge 'Russia Hack' Evidence*, Consortium News (July 24, 2017).[4]

Since that time, Mr. Johnson has continued to publish and/or sign public statements relating to the above captioned case, concluding that an insider at the DNC leaked data to WikiLeaks and that allegations of Russian involvement are a hoax.  *See, e.g.,*  William Binney and Larry Johnson, *Why the DNC Was Not Hacked by the Russian*, Sic Semper Tyrannis (Feb. 13, 2019).[5]  More recently, Mr. Johnson has stated that:

- "[t]he DNC emails that ultimately were published on Wikileaks likely originated with a DNC staffer, Seth Rich. It was not the Russians,"  Larry Johnson, "Fabricating the Russian DNC Hack" Sic Semper Tyrannis (Aug. 28, 2019);[6] and that

- "Special Counsel Robert Mueller's report insists that Guccifer 2.0 and DCLeaks were created by Russia's military intelligence organization, the GRU, as part of a Russian plot to meddle in the U.S. 2016 Presidential Election. But this is a lie. Guccifer 2.0 and DCLeaks were created by Brennan's CIA and this action by the CIA should be a target of U.S. Attorney John Durham's investigation."  Larry Johnson, *Did John Brennan's CIA Create Guccifer 2.0 and DCLeaks*, Sic Semper Tyrannis (Dec. 19, 2019).

---

[4] *Available online at* https://consortiumnews.com/2017/07/24/intel-vets-challenge-russia-hack-evidence/

[5] *Available online at* https://turcopolier.typepad.com/sic_semper_tyrannis/2019/02/why-the-dnc-was-not-hacked-by-the-russians.html

[6] *Available online at* https://turcopolier.typepad.com/sic_semper_tyrannis/2019/08/fabricating-the-russian-dnc-hack-by-larry-c-johnson.html

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████. *See, e.g.*,

Hall Decl. Exs. 2-4.  Plaintiff, as a result, sought discovery from Mr. Johnson.

## PROCEDURAL BACKGROUND

On October 23, 2019, Plaintiff issued and served Mr. Johnson with a document subpoena pursuant to Federal Rule of Civil Procedure 45, which asked for *inter alia* all Documents or Communications related to Plaintiff or his family, and relating to Mr. Johnson's "claims that (a) the Democratic National Committee was not hacked by Russians in 2016 and, instead, (b) an insider leaked DNC materials to WikiLeaks."  Hall Decl. Ex. 5 at 6.  Mr. Johnson lodged untimely objections and responses to the document subpoena on November 11, 2019 via email, on which he copied Mr. Quainton and Ty Clevenger—Defendant Butowsky's former counsel in this case who withdrew his motion to appear *pro hac vice* and who continues to represent Defendant Butowsky in other litigation including in the proceeding against certain of Plaintiff's counsel.  Hall Decl. Ex. 6.  Mr. Johnson's objections to the subpoena included that he "was retained by Mr. Butowsky's attorney as an investigator in this case and in related cases."  *Id.*  The objections did not include any contention that Mr. Johnson could not respond because the requested documents would cover contemplated expert testimony.

On November 12, 2019, Plaintiff's counsel notified Mr. Johnson personally (based on an understanding that Mr. Johnson was not represented by counsel) to explain that his production was deficient, including because he waived his right to object due to failing to timely respond, and that Plaintiff would be moving to compel a proper production.  Hall Decl. Ex. 7 at 8-13.  In communications amongst Mr. Johnson, Mr. Clevenger, Mr. Quainton, and Plaintiff's counsel, Mr.

Johnson explained that he "was hired/retained by Mr. Clevenger" on April 8, 2018, and was "not at liberty under that agreement to disclose anything to you without the permission of Mr. Clevenger." *Id.* at 4.[7] Mr. Johnson later dropped any objections after he discussed the issue with Mr. Quainton—who at the time was not serving as Mr. Johnson's counsel—and stated that he had given Plaintiff's counsel everything responsive in his possession. Hall Decl. Ex. 8 at 1 ("I've provided you everything I have in my possession as requested in the subpoena and cannot add anything to that submission. The decision by Mr. Quainton to allow me to send the emails with Ed Butowsky cleared up the only emails I did not provide with my original submission.").

On January 6, 2020, Plaintiff issued a subpoena for Mr. Johnson's deposition to take place at 10 a.m. at TownePlace Suites in Bradenton, Florida on January 24, 2020. Hall Decl. Ex. 9. After personal service was effected, Mr. Johnson indicated he would not be available to sit for a deposition until January 31, 2020, and only after receiving permission from Defendant Butowsky. Throughout the month of January 2020, Plaintiff's counsel attempted in good faith to negotiate a date for Mr. Johnson's deposition and to address the deficiencies of his production with Mr. Quainton, who was negotiating on Mr. Johnson's behalf (although did not confirm with Plaintiff's counsel that he was in fact representing Mr. Johnson until February 3, 2020). *See* Hall Decl. Ex. 10. Finally, and after the Court extended discovery, Mr. Johnson agreed to sit for a deposition on March 4, 2020, in Florida. *See* Hall Decl. Ex. 11.

On February 26, 2020, Plaintiff served an "updated notice and subpoena for Mr. Johnson's deposition on March 4," beginning at 9 am at Springhill Suites in Bradenton, Florida via email to Mr. Quainton. *Id.* Two days prior to the deposition, Plaintiff's counsel responded to the same

---

[7] It is unclear who is paying Mr. Johnson ██████████████████████████████ ████████████████████████████████.

email chain, writing: "I am following up on the email below. Please confirm that Mr. Johnson has accepted service of the deposition subpoena and that we will move forward with his deposition this Wednesday, March 4th." Hall Decl. Ex. 12 at 3-4. Mr. Quainton responded that day, stating "Yes we are moving forward with the deposition. Where though?" *Id.* at 3. Plaintiff's counsel then provided the address again, stating that "the location was on the subpoena itself, but I'm pasting the address here for your convenience[.]" *Id.* at 2-3.

On March 4, 2020, counsel for Plaintiff was ready to begin on time, but the deposition did not begin until nearly an hour-and-a-half after the noticed 9 am start time because Mr. Quainton and Mr. Johnson did not arrive until 10:20 am.[8] Prior to Plaintiff's counsel initiating questioning,

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████ Hall Decl. Ex. 1, at 8:8-11. ███████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████, *id.* at 9:16-19. ███████

███████████████████████████████████████████████████████████

---

[8] Failure to show up on time, or to show up at all, for noticed depositions has been a continual issue in this case for Mr. Quainton. Mr. Quainton has delayed the start of several depositions or failed to notify Plaintiff's counsel that a deposition has been cancelled within a reasonable period of time—on one occasion waiting until the day before the deposition to let counsel know, and on another occasion, only notifying Plaintiff's counsel after they showed up at the noticed location to find no one else in attendance.

███████████████████████████████████████████

████

█████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████ *Id.* at

10:25-11:4.  ██████████████████████████████████

███████████████████████████████████████████

██████████████████████████████



<hr />

[9] As discussed *supra*, Mr. Johnson claims that he was originally retained by Mr. Clevenger as an "investigator."  Hall Decl. Ex. 6.  At the time Plaintiff issued the deposition subpoena, Mr. Johnson stated that it was "unclear whether I will be providing an expert report."  Hall Decl. Ex. 10 at 9. Once Mr. Johnson retained Mr. Quainton, Mr. Quainton suggested that Mr. Johnson may serve as an expert, but there was no confirmation at any time prior to the deposition that Mr. Johnson would actually be submitting an expert report nor was there ever an enunciation of the specific topics his "expertise" would cover.  *Id.* at 2.



*Id.* at 14:22-15:18 ███████████████████████████████████████████

██████████████████

*Id.* at 17:3-10.

Nonetheless ████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████





[redacted]

## ARGUMENT

The Court should grant Plaintiff's motion because it is undisputed that Mr. Quainton's instruction was not based on any of the three express grounds permitted by Federal Rule of Civil Procedure 30(c)(2). *Infra* Section I. But even accepting *arguendo* that an attorney can properly instruct a witness not to answer questions based on grounds other than those articulated in Rule 30, ███████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████████ ████████. *Infra* Section II. Mr. Johnson should be compelled to answer these questions and Mr. Quainton should reimburse any associated fees pursuant to Federal Rules of Civil Procedure 30 and 37. *Infra* Section III.

**I.  THE FEDERAL RULES AUTHORIZE ONLY THREE GROUNDS FOR INSTRUCTING A WITNESS NOT TO ANSWER QUESTIONS DURING A DEPOSITION, AND MR. QUAINTON ADMITTED THAT HIS INSTRUCTIONS WERE NOT WITHIN THOSE GROUNDS.**

Federal Rule of Civil Procedure 30 establishes that an attorney "may instruct a deponent not to answer ***only when necessary to preserve a privilege***, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." Fed. R. Civ. P. 30(c)(2) (emphasis added). Rule 30(c)(2) provides the exclusive grounds on which a deponent can refuse to answer questions.

*See Pilates, Inc. v. Georgetown Bodyworks Deep Muscle Massage Ctrs., Inc.*, 201 F.R.D. 261, 262 (D.D.C. 2000) (Rule 30 "forbids a party to instruct a deponent to refuse to answer a question unless such instruction is necessary to preserve a privilege, to enforce a limitation on evidence imposed by the court, or to permit the making of a motion for a protective order under Rule 30(d)(3)."); *Cobell v. Norton*, 213 F.R.D. 16, 23 (D.D.C. 2003) (compelling deponent to testify where his attorney's instruction was not based on any of the "three grounds" articulated in Rule 30(c)(2), reasoning that "plaintiffs' line of questioning did not call for privileged information, that their line of questioning sought information relevant to the instant proceedings, and that both the question and the means in which it was asked were proper").[11]



Hall Decl. Ex. 1 at 191:20-23; *see also id.* 189:20-22

Additionally, the Court has imposed no limitations on the deposition nor have Mr. Quainton, Mr. Johnson, or any of the Defendants filed a Rule 30(d)(3) motion. The Court need not go any further in its analysis in order to rule that Mr. Johnson must answer all of questions and lines of questioning that he refused to answer based on his counsel's improper objection.

---

[11]  The language of Rule 30(c)(2) relating to deposition instructions used to be contained in Rule 30(d)(1), which was "integrated" in full into  Rule 30(c)(2) in 2007, as part of the restyling of the federal rules.  *See Scott v. Potter*, No. CV096496RGKFMOX, 2010 WL 11475563, at *1 (C.D. Cal. Dec. 6, 2010).

II.   **FEDERAL RULE OF CIVIL PROCEDURE 26(B)(4) DOES NOT PROVIDE A BASIS TO INSTRUCT MR. JOHNSON NOT TO ANSWER QUESTIONS ABOUT FACTS KNOWN OR OPINIONS HELD PRIOR TO APRIL 2018.**

The United States Court of Appeals for the District of Columbia has rejected attempts by

counsel ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████   In *Marine Petroleum Co. v. Champlin Petroleum Co.*, 641 F.2d 984, 989 (D.C. Cir. 1979),

the Court of Appeals held that

> Rule 26(b)(4) is in terms confined in operation to quests for facts known and opinions held by experts, acquired or developed in anticipation of litigation or for trial. One who, though an expert, derives his information simply as 'an actor or viewer with respect to transactions or occurrences that are part of the subject matter of the lawsuit should be treated as an ordinary witness.

*Id.* (alterations omitted) (citations omitted); *see also Committee Note to 1970 amendment subdivision (b)(4)* ("It should be noted that the subdivision does not address itself to the expert whose information was not acquired in preparation for trial but rather because he was an actor or viewer with respect to transactions or occurrences that are part of the subject matter of the lawsuit. Such an expert should be treated as an ordinary witness.").[12]   The *Marine Petroleum* Court affirmed a trial court's ruling that an "independent consultant on energy matters" must answer deposition questions because the plaintiff was entitled to "orthodox discovery of facts known or opinions held by [the expert] prior to the time at which he began to devote his talents to the litigation." *Id.*; *see Am. Prop. Const. Co. v. Sprenger Lang. Found.*, 274 F.R.D. 1 (D.D.C. 2011)

---

[12] Plaintiff notes that Rule 26 was amended in 2010, including Rule 26(b)(4). Those amendments further show that Rule 26's discovery protections were not meant to block discovery of information known or opinions formed prior to anticipation of litigation; indeed, Rule 26(b)(4) was "amended to provide work-product protection against discovery regarding draft expert disclosures or reports and--with three specific exceptions--communications between expert witnesses and counsel." Fed. R. Civ. P. 26 (Advisory Committee Notes 2010 amendments).

(holding that a witness testifying on their experience outside of being retained as an expert will not be treated as an expert under Rule 26); *Sununu v. Philippine Airlines, Inc.*, No. CIV.A. 981192, 2010 WL 3927601, at *2-3 (D.D.C. Oct. 4, 2010) (same); *Brandstetter v. National R.R. Passenger Corp.*, 1987 WL 12766, at *2 (D.D.C. 1987) (holding that Federal Civil Rule 26(b)(4) only restricted discovery of "information developed and opinions framed by [a treating physician retained as an expert] in anticipation of litigation"); *see also Downey v. Bob's Disc. Furniture Holdings, Inc.*, 633 F.3d 1, 7 (1st Cir. 2011) ("Consequently, where, as here, the expert is part of the ongoing sequence of events and arrives at his causation opinion during treatment, his opinion testimony is not that of a retained or specially employed expert.").

████. As a result, questions on these articles, opinions, and communications should be considered as "facts known or opinions held by [the deponent] prior to the time at which he began to devote his talents to the litigation precipitated by [defendant]," and should be discoverable, notwithstanding any future report Mr. Johnson *may* write and submit in this case. *Id.* Discovery of the facts known or opinions held by Mr. Johnson prior to his being retained, or which he did not acquire or develop in anticipation of litigation or for trial, will have no effect on how the Defendants prepare for litigation and is directly relevant to Plaintiff's burden of proof.

If the Court were to hold otherwise, parties (including the Defendants here) could shut down all questioning of *any* fact witness—including one listed on their initial disclosures— simply by "retaining" the witness irrespective of whether he ultimately serves as an expert witness. A party could simply retain any number of fact witnesses as "experts" on topics they want to shield, wait for fact discovery to end, and then decide not to submit reports for those witnesses, leaving the opposing party unable to depose fact witnesses on relevant topics. Mr. Johnson has made clear that he does not know if he will submit an expert report, *see supra* at 9, n.9, and Plaintiff is unaware of anything in the Federal Rules of Civil Procedure that would require him to do so simply because Defendants' counsel says he might. As a result, there is a significant risk that Plaintiff will be entirely unable to depose Mr. Johnson on dozens of communications and articles that all pre-dated Mr. Johnson's retention on this matter, or were written and developed for purposes outside of this litigation. Manipulating Rule 26(b)(4) to shield proper factual discovery of anyone a party decides to anoint as "retained" is a far cry from the purpose of the rule.[13] As a result, ██████████ ████████████████████████ were improper.

---

[13] Limiting Rule 26 to questions relating to information known or opinions formed after retention comports with the purpose of the protections Rule 26: "that a party might well be deterred from

III.   **THE ACTIONS OF COUNSEL WARRANT PAYMENT OF ASSOCIATED EXPENSES PURUSANT TO RULE 30(D)(2) AND RULE 37(A)(5)**

Mr. Quainton should bear the costs associated with retaking Mr. Johnson's deposition and filing this motion, pursuant to Rules 30(c)(2) and 37(a)(5)(A).  *See GMAC Bank v. HTFC Corp.*, 248 F.R.D. 182, 194 (E.D. Pa. 2008) (awarding sanctions under Rules 30(c)(2) and 37(a)(5)(A) for failure to answer questions at a deposition).   Rule 30 authorizes courts to "impose an appropriate sanction—including the reasonable expenses and attorney's fees incurred by any party—on a person who impedes, delays, or frustrates the fair examination of the deponent." Fed. R. Civ. P. 30(d)(2).  Rule 37 mandates requiring "the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in making the motion, including attorney's fees," Fed. R. Civ. P. 37(a)(4)(A),[14] including where an attorney "repeatedly attempted to restrict the scope of plaintiffs' questioning," without any basis.  *Cobell v. Norton*, 213 F.R.D. 16, 31 (D.D.C. 2003).

Mr. Quainton's conduct impeded, delayed, and frustrated Plaintiff's fair examination of Mr. Johnson.  As Rule 30(c)(2) expressly provides, unless an objection is made for a privilege, some other court ordered limitation, or a motion to terminate a deposition due to bad faith or harassment: "*the examination still proceeds; the testimony is taken subject to any objection*."  *Id.*

---

thorough preparation of his case were it possible for his opponent to freely discover information from a hired expert whose assistance is important but not yet so vital as to require his testimony at trial."  *Marine Petroleum*, 641 F.2d at 993-994.

[14] Rule 37 establishes: "The court shall, after affording an opportunity to be heard, require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in making the motion, including attorney's fees, unless the court finds that the motion was filed without the movant's first making a good faith effort to obtain the disclosure or discovery without court action, or that the opposing party's nondisclosure, response, or objection was substantially justified, or that other circumstances make an award of expenses unjust."

As another court in this district explained, rather than instruct the witness not answer, attorneys should:

> note their objections, but permit their clients to answer questions—leaving resolution of the objection to pre-trial or trial. This approach conserves the parties or witnesses' time and money, as well as judicial resources, and expedites the trial of the lawsuit. Furthermore, the objections may become moot by disposition of the case before trial or abandonment by the other party at the time of trial.

*Drew v. Int'l Bhd. of Sulphite & Paper Mill Workers*, 37 F.R.D. 446, 449–50 (D.D.C 1965).


Having made that decision, ████ ████ Mr. Quainton must now be held accountable for his decision, which has inconvenienced the parties and now this Court.

This conduct warrants payment of associated fees related to filing this motion and retaking Mr. Johnson's deposition under Federal Rule of Civil Procedure 37.  Rule 37(a)(5)(A) provides that "the court *must* . . . require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." (emphasis added).  Courts in the D.C. Circuit have explained that fees should be awarded under Rule 37 if there is no substantial justification for the instruction not to answer.  *See Cobell v. Norton*, 213 F.R.D. 16, 31 (D.D.C. 2003) (awarding sanctions under Rule 37 because "defendants have failed to provide any evidence that their repeated objections were 'substantially justified'"); *Int'l Union of Elec., Radio & Mach. Workers, AFL-CIO v. Westinghouse Elec. Corp.*, 91 F.R.D. 277, 280 (D.D.C. 1981) (awarding fees because "this court finds no substantial justification" for counsel's decision to instruct a client not to answer questions during a deposition based on relevancy).  Here, Mr. Quainton had no justification for

████████████████████████████████████████ "facts known or opinions held by [Mr. Johnson] prior to the time at which he began to devote his talents to the litigation precipitated by [defendant][.]" *Marine Petroleum*, 641 F.2d at 987.  Moreover, Mr. Quainton had no substantial justification ██████████████████████████████████, as opposed to simply objecting on the record and later moving to strike any improper questions.

It must also be noted this is not the first time Defendants' counsel has disrupted a deposition in this litigation based on improper instructions.   As the Court knows, Mr. Quainton pursued a similar litigation tactic when he improperly instructed Defendant Matthew Couch not to answer nearly 50 questions in his deposition, which necessitated Plaintiff to brief a motion to compel, Dkt. 95 (which the Court ultimately granted, Dkt. 133, and affirmed, Dkt. 151).  Plaintiff has not received fees or costs relating to that motion despite Rule 37's mandatory language.  Here, there was even less basis for such an instruction, as there was no purported privilege to protect.  Unless this Court imposes consequences for this behavior, this pattern of disruption will continue unabated.

For the foregoing reasons, Plaintiff respectfully moves this Court to enter the proposed order included here, requiring Mr. Johnson to sit for the remainder of his deposition—not including time Defendants' counsel spent ███████████████████████████████████ ███████████████████████████████—and for Mr. Quainton to pay for associated fees related to the filing of this motion and the completion of the deposition.

Dated: March 27, 2020

/s/ Michael J. Gottlieb
MICHAEL J. GOTTLIEB (D.C. Bar No. 974960)
WILLKIE FARR GALLAGHER LLP
1875 K Street NW, Washington, DC 20006
Tel: (202) 303-1442 / Fax: (202) 303-2000
mgottlieb@willkie.com

JOSHUA P. RILEY (D.C. Bar No. 1026900)
MERYL C. GOVERNSKI (D.C. Bar No. 1023549)
BOIES SCHILLER FLEXNER LLP
1401 New York Ave NW, Washington DC 20005
Tel: (202) 237-2727 / Fax: (202) 237-6131
jriley@bsfllp.com
mgovernski@bsfllp.com

***Attorneys for Plaintiff Aaron Rich***

## **CERTIFICATE OF SERVICE**

The undersigned counsel certifies that on March 27, 2020, the foregoing document was filed through the CM/ECF system and thereby served electronically on counsel for Defendant Edward Butowsky and Matthew Couch. A courtesy copy of the foregoing document also was emailed to their counsel, Eden Quainton, at equainton@gmail.com. Mr. Quainton has agreed to convey served and filed documents to Defendant America First Media through Defendant Couch as necessary.

Dated: March 27, 2020

s/ Michael J. Gottlieb
MICHAEL J. GOTTLIEB (D.C. Bar No. 974960)
WILLKIE FARR GALLAGHER LLP
1875 K Street NW, Washington, DC 20006
Tel: (202) 303-1442 / Fax: (202) 303-2000
mgottlieb@willkie.com