# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

AARON RICH

                              Plaintiff,

        v.

EDWARD BUTOWSKY,
MATTHEW COUCH, and
AMERICA FIRST MEDIA,

                              Defendants.

Civil Action No. 1:18-cv-00681-RJL

Hon. Richard J. Leon


## MOTION OF MALIA ZIMMERMAN AND FOX NEWS NETWORK, LLC
## FOR RECONSIDERATION OF DENIAL OF PROTECTIVE ORDER


David H. Stern (*pro hac vice*)
Vincent H. Cohen, Jr.

DECHERT LLP
U.S. Bank Tower
633 West 5th Street, 26th Floor
Los Angeles, CA 90071

1900 K Street, NW
Washington, DC 20006
Tel: (213) 808-5720
Fax: (213) 808-5760


*Attorneys for Non-party Malia Zimmerman*

Joseph M. Terry
Stephen J. Fuzesi
Katherine A. Petti

WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Tel: (202) 434-5000
Fax: (202) 434-5029


*Attorneys for Non-party Fox News Network, LLC*

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

GOVERNING STANDARD ................................................................................................2

ARGUMENT .......................................................................................................................3

      I.      The Court's Order Is Premised on an Unduly Narrow View of the Scope
              of the Newsgathering Privileges. .........................................................................3

              A.    Fox News's Internal Deliberations Concerning the Retraction of a
                     News Article Are a Protected Newsgathering Activity. .............................4

              B.    Ms. Zimmerman's Post-Publication Communications with Mr.
                     Butowsky Do Not Fall Outside the Privilege as a Category........................5

              C.    Communications with Mr. Butowsky Were Part of Ms.
                     Zimmerman's Newsgathering, and She Did Not Waive the
                     Newsgathering Privilege by Sharing Information with Him. .....................6

      II.     The Order is Premised on an Unduly Broad View of What Showing Can
              Overcome the Newsgathering Privileges. ............................................................9

               A.    Ms. Zimmerman's Testimony Does Not "Go to the Heart" of Mr.
                       Rich's Claims, Nor Do His Claims "Rise or Fall" with Her
                     Testimony. .................................................................................................9

              B.    Mr. Rich Has Not Yet Exhausted All Alternative Sources of
                     Information. ..............................................................................................12

      III.    The Court's Privilege Ruling Unnecessarily Reaches Constitutional Issues.........14

CONCLUSION...................................................................................................................14

# TABLE OF AUTHORITIES

## CASES

*Allen v. Dep't of Justice*, No. 17-cv-1197, 2020 WL 474526 (D.D.C. Jan. 29, 2020) ....................2

*Application of Consumers Union of United States*, 495 F. Supp. 582 (S.D.N.Y. 1980) .......3, 5, 14

*Baker v. Goldman Sachs & Co.*, No. 09-10053, 2011 WL 1458230
    (S.D.N.Y. Apr. 12, 2011)................................................................................................3, 7

*Blum v. Schlegel*, 150 F.R.D. 42 (W.D.N.Y. 1993) ........................................................................13

*Brown & Williamson Tobacco Corp. v. Wigand*, No. 101678/96, 1996 WL 350827
    (N.Y. Sup. Ct. Feb. 28, 1996) ................................................................................................13

*Cobell v. Norton*, 224 F.R.D. 266 (D.D.C. 2004) ...........................................................................2

*Dowd v. Calabrese*, 577 F. Supp. 238 (D.D.C. 1983) ...................................................................11

*Estate of Klieman v. Palestinian Auth.*, 18 F. Supp. 3d 4 (D.D.C. 2014).....................................12

*Estate of Klieman v. Palestinian Auth.*, 293 F.R.D. 235 (D.D.C. 2013) ..................................9, 12

*Flynn v. NYP Holdings*, 235 A.D.2d 907 (3d Dep't 1997)......................................................10, 12

*\*Giuffre v. Maxwell*, 221 F. Supp. 3d 472 (S.D.N.Y. 2016) .............................................3, 4, 9, 12

*Goldberg v. Amgen, Inc.*, 123 F. Supp. 3d 9 (D.D.C. 2015).........................................................13

*\*Guice-Mills v. Forbes*, 819 N.Y.S.2d 432 (Sup. Ct. 2006).............................................................9

*Hutira v. Islamic Republic of Iran*, 211 F. Supp. 2d 115 (D.D.C. 2002)..................................3, 12

*In re Am. Broad. Companies, Inc.*, 735 N.Y.S.2d 919 (Sup. Ct. 2001)........................................11

*In re Application of Home Box Office, Inc.*, 103 N.Y.S.3d 794 (Sup. Ct. 2019).........................10

*In re Application to Quash Subpoena to NBC*, 79 F.3d 346 (2d Cir. 1996) .................................10

*Kalka v. Hawk*, 215 F.3d 90 (D.C. Cir. 2000) ...........................................................................2, 14

*Krase v. Graco Children Prods.*, 79 F.3d 346 (2d Cir. 1996) .................................................10, 11

*Liberty Lobby, Inc. v. Rees*, 111 F.R.D. 19 (D.D.C. 1986).............................................................11

*Maughan v. NL Indus.*, 524 F. Supp. 93 (D.D.C. 1981) ..............................................................4, 6

*McGehee v. U.S. Dep't of Justice*, No. 01-cv-01872, 2019 WL 2516652
    (D.D.C. June 18, 2019) .............................................................................................................2

*Palandjian v. Pahlavi*, 103 F.R.D. 410 (D.D.C. 1984).............................................................4, 14

*\*Peck v. City of Bos. (In re Slack)*, 768 F. Supp. 2d 189 (D.D.C. 2011)..............................7, 9, 13

*Pugh v. Avis Rent A Car Sys., Inc.*, No. M8-85, 1997 WL 669876
   (S.D.N.Y. Oct. 28, 1997) ..........................................................................................................13

*Rosenberg v. U.S. Dep't of Defense*, No. 17-cv-00437, 2020 WL 1065552
   (D.D.C. Mar. 5, 2020)..............................................................................................................2, 6

*Westmoreland v. CBS, Inc.*, 97 F.R.D. 703 (S.D.N.Y. 1983) ...........................................................5

*\*Zerilli v. Smith*, 656 F.2d 705 (D.C. Cir. 1981) .................................................................9, 12, 13

## CONSTITUTION, STATUTES, AND RULES

*U.S. Const. amend. I ...................................................................................................... *passim*

Fed. R. Civ. P. Rule 54 ...............................................................................................................1, 2

Fed. R. Civ. P. Rule 59 ...............................................................................................................1, 2

Fed. R. Civ. P. Rule 60 ...............................................................................................................1, 2

*N.Y. Civ. Rights Law § 79-h ........................................................................................... *passim*

## INTRODUCTION

Pursuant to Rules 54(b), 59(e), and 60(b) of the Federal Rules of Civil Procedure, Malia Zimmerman and Fox News Network, LLC ("Fox News") respectfully move for reconsideration of this Court's opinion and order (Doc. 177) denying their joint motion for a protective order barring Ms. Zimmerman's deposition (Doc. 114).

Fox News and Ms. Zimmerman respectfully request reconsideration of three aspects of the Court's ruling concerning the First Amendment and New York newsgathering privileges they have asserted in response to the deposition subpoena:  (1) the conclusion that certain information or communications, including about Fox News's decision to retract a news report, fall outside the newsgathering privilege altogether; (2) the conclusion that Ms. Zimmerman waived her privilege with respect to certain of her communications with defendant Ed Butowsky; and (3) the factual determination that plaintiff Aaron Rich has overcome the privilege with respect to certain topics. Reconsideration is warranted because the Court's opinion adopts an unduly narrow view of what constitutes protected newsgathering and editorial activity that is inconsistent with established precedent regarding the First Amendment privilege and the New York Press Shield Law.  The Court's ruling simultaneously takes too broad a view of the bases on which a litigant may overcome these strict privileges, allowing testimony that does not go to the heart of Mr. Rich's claims or that is available from alternative sources.

In the alternative, Fox News and Ms. Zimmerman respectfully request that the Court vacate its ruling on the first two issues—both of which implicate the scope of constitutional protections for newsgathering—and leave them undecided.  The Court's determination that Mr. Rich has overcome the privilege as to certain topics is sufficient by itself to resolve the motion for a protective order.  In the event it decides to leave its denial of the protective order intact, the Court should rest its decision on that third and narrowest ground, without determining whether Fox

1

News's retraction decision is privileged at all or whether Ms. Zimmerman's communications with Mr. Butowsky constitute a waiver. Those questions concerning scope and waiver of the privilege have constitutional dimension, as well as implications for journalists beyond the confines of this dispute, and they should not be decided unless it is necessary for the Court to do so. *See Kalka v. Hawk*, 215 F.3d 90, 97 (D.C. Cir. 2000).

## GOVERNING STANDARD

A Rule 54(b) motion should be granted "as justice requires." *Allen v. Dep't of Justice*, No. 17-cv-1197, 2020 WL 474526, at *10 (D.D.C. Jan. 29, 2020). "[A] court may grant a Rule 54(b) motion for reconsideration so long as there are good reasons for doing so." *Rosenberg v. U.S. Dep't of Defense*, No. 17-cv-00437, 2020 WL 1065552, at *4 (D.D.C. Mar. 5, 2020). Under Rule 54(b), a litigant is not confined to raising arguments or presenting evidence that could have been raised prior to the court's ruling. *Id.* at *4. Courts have "more flexibility" in deciding motions under Rule 54(b) than they do in deciding whether reconsideration is warranted under Rules 59 or 60. *Cobell v. Norton*, 224 F.R.D. 266, 272 (D.D.C. 2004).

Separately, a court may grant a Rule 59(e) motion for reconsideration "(1) if there is an intervening change of controlling law; (2) if new evidence becomes available; or (3) if the judgment should be amended in order to correct a clear error or prevent manifest injustice." *McGehee v. U.S. Dep't of Justice*, No. 01-cv-01872, 2019 WL 2516652, at *2 (D.D.C. June 18, 2019). And a court may grant a Rule 60(b) motion for relief from a judgment or order for "any . . . reason that justifies relief." Fed. R. Civ. P. 60(b)(6).

## ARGUMENT

I.  **The Court's Order Is Premised on an Unduly Narrow View of the Scope of the Newsgathering Privileges.**

This Court held that several of the topics on which Mr. Rich seeks to depose Ms. Zimmerman fall outside the protection of the newsgathering privilege altogether, either because they are not newsgathering at all or because Ms. Zimmerman has waived the privilege with respect to them. The Court's ruling merits reconsideration because it cannot be squared with the expansive scope of the privilege repeatedly affirmed by courts in New York and the District of Columbia. In particular, the Court's opinion appears to extend protection only to activity predating publication of the May 16, 2017, article about Seth Rich—and only to communications by a journalist with a "source" who had direct, firsthand knowledge supporting the story or was actually quoted in it. (Mem. Order at 3). That narrow interpretation is contrary to the purposes of the privilege and at odds with prior decisions of courts here and in New York. Those courts have held that the broad protections of the First Amendment privilege and the New York Shield Law extend to "the newsgathering *process, as a whole*." *Giuffre v. Maxwell*, 221 F. Supp. 3d 472, 479 (S.D.N.Y. 2016) (emphasis added); *Hutira v. Islamic Republic of Iran*, 211 F. Supp. 2d 115, 121 (D.D.C. 2002) (same). That "newsgathering process" includes all information and communications "coming into [the reporter's] possession in the course of gathering or obtaining news." N.Y. Civ. Rights Law § 79-h(a)(8). It also embraces the "editorial process" itself, including the drafting and editing of news articles and the confidential newsroom discussions about which stories merit publication—or retraction. *See, e.g.*, *Baker v. Goldman Sachs & Co.*, No. 09-10053, 2011 WL 1458230, at *3 (S.D.N.Y. Apr. 12, 2011) (recognizing that the New York Shield Law was enacted "to prevent intrusion into the editorial process"); *Application of Consumers Union of United States, Inc.*, 495 F. Supp. 582, 588 (S.D.N.Y. 1980) (recognizing that First Amendment shields journalists

from third-party discovery that "would represent a serious intrusion into . . . editorial and thought processes"); *Palandjian v. Pahlavi*, 103 F.R.D. 410, 412 (D.D.C. 1984) (similar).

A.    **Fox News's Internal Deliberations Concerning the Retraction of a News Article Are a Protected Newsgathering Activity.**

Ms. Zimmerman and Fox News respectfully move this Court to revisit its ruling that the newsgathering privilege does not extend to "the decision to retract the Fox News Article." (Mem. Order at 3). Both the First Amendment and New York privileges protect precisely such editorial decisions. The privilege prohibits inquiry not simply into the fact gathering, writing, and editing that take place in advance of publication, but into all "unpublished details of the newsgathering process" to prevent "problematic incursions into the integrity of the editorial process." *Giuffre*, 221 F. Supp. 3d at 477, 477-79. The process leading to the issuance of a retraction is no less an exercise in editorial judgment or newsgathering than the initial decision to publish.

Fox News's retraction decision falls within the scope of the privilege because it implicates fundamental editorial judgments about which news stories merit publication. Surely there is no dispute that an editor's decision *whether to publish* a story in the first instance is protected; the same reasoning applies to a news organization's decision about *whether to continue publishing* or withdraw a report from its web site. *See id.* (privilege shields "the privacy of editorial processes and the press's independence in its selection of material for publication"); *Maughan v. NL Indus.*, 524 F. Supp. 93, 94 (D.D.C. 1981) ("The right of a newspaper to determine for itself what it is to publish and how it is to fulfill its mandate of dissemination must be given great respect."). In both situations, a news organization may weigh such factors as whether a reporter's sources are credible; whether the sources' accounts can be independently verified; whether an article comports with editorial standards; whether revisions are warranted; and how a family's request not to publish

should be weighed against the public's interest in disclosure.  These types of considerations lie at the very heart of what the newsgathering privilege aims to protect.

In holding that testimony related to Fox's retraction decision is not privileged, the Court relied on *Westmoreland v. CBS, Inc.*, 97 F.R.D. 703 (S.D.N.Y. 1983).  But that case was not about whether the editorial process behind a retraction was protected by the privilege.  The question in *Westmoreland* was whether the newsgathering privilege shielded a retrospective, internal report that that president of CBS had commissioned to evaluate a complaint about the organization's reporting, where CBS's president had quoted and relied on the report in a *press release* that was *itself* the subject of a libel claim.  It was those facts, which are entirely absent in the instant case, that led the district court to conclude that the press release, and the underlying materials which it cited, were not covered by the newsgathering privilege.  As such, *Westmoreland* has little to say about the present dispute—in which a third party seeks a reporter's testimony about a news organization's internal deliberations about whether to retract a report.  Those contemporaneous discussions fall within the heartland of the privilege.  In fact, the author of *Westmoreland*, Judge Pierre Leval, elsewhere specifically recognized that the First Amendment privilege extends to both "reportorial and editorial processes."  *Consumers Union*, 495 F. Supp. at 585-86.

### B.  Ms. Zimmerman's Post-Publication Communications with Mr. Butowsky Do Not Fall Outside the Privilege as a Category.

Without stating the legal basis for its decision, the Court broadly ruled that Ms. Zimmerman's communications with Mr. Butowsky and Mr. Couch following publication of her May 16, 2017, article fall outside the scope of the newsgathering privilege.  That ruling should be revisited.  At the very least, the Court should amend its ruling to make clear that, to the extent Ms. Zimmerman sought information from these individuals in order to pursue *additional news stories*, those communications are shielded by the privilege.

There is no basis to conclude that Ms. Zimmerman was no longer engaged in newsgathering after May 16, 2017.  According to its published retraction,[1] Fox News removed Ms. Zimmerman's article from the web site because it "was not initially subjected to the high degree of editorial scrutiny we require for all our reporting."   The retraction did *not* state that Fox had concluded the article was false.  On the contrary, Fox News told its readers:  "We will continue to investigate this story and will provide updates as warranted."  And Ms. Zimmerman has submitted a declaration here, as she is permitted to do under the Federal Rules, averring that she sought information from Mr. Butowsky after May 16, 2017, in order to corroborate or update her reporting or pursue additional stories.  Zimmerman Decl. ¶ 7; *see also Rosenberg*, 2020 WL 1065552, at *4 (allowing new evidence on motion for reconsideration).  That newsgathering activity is shielded from third-party discovery, regardless of whether it ultimately yielded a published report.  *See* N.Y. Civ. Rights Law § 79-h(c) (protecting "unpublished news"); *Maughan*, 524 F. Supp. at 94 (same).

### C. Communications with Mr. Butowsky Were Part of Ms. Zimmerman's Newsgathering, and She Did Not Waive the Newsgathering Privilege by Sharing Information with Him.

Ms. Zimmerman and Fox News also seek reconsideration of the Court's ruling that her communications with Mr. Butowsky fall outside the scope of the privileges and that she waived those privileges by sharing information with him.  The Court's reasoning was based on its conclusion that Mr. Butowsky was not a "source" because "[n]othing in the record suggests Butowsky himself provided Ms. Zimmerman with information undergirding the claim that the FBI

---

[1] That retraction is available at https://www.foxnews.com/politics/statement-on-coverage-of-seth-rich-murder-investigation.

produced a report showing Seth Rich transferred DNC documents to Wikileaks." (Mem. Order at 3).  That conclusion was erroneous for three reasons.

*First*, as a threshold matter, the applicability of the privileges does not depend on whether an individual with whom a journalist communicates meets a particular definition of "source."  The New York and First Amendment newsgathering privileges broadly apply to any "information or communication" obtained by a reporter "in the course of gathering or obtaining news."  *See* N.Y. Civ. Rights Law § 79-h(a)(8), (c); *Peck v. City of Bos. (In re Slack)*, 768 F. Supp. 2d 189, 193 (D.D.C. 2011); *see also Baker*, 2011 WL 1458230, at *3 (barring testimony about "whether [the reporter] consulted with any experts or other sources in the course of the investigation").  Ms. Zimmerman's communications with Mr. Butowsky leading up to the publication of her online report indisputably occurred while she—employed as a professional journalist with Fox News— was "in the course of gathering or obtaining news."  N.Y. Civ. Rights Law § 79-h(c).  They took place "as part of the[] [reporter's] news gathering role."  *In re Slack*, 768 F. Supp. 2d at 193.  They are thus protected by the privilege.

*Second*, even if relevant, the Court adopted an unduly narrow view of who qualifies as a "source."  Mr. Rich himself introduced evidence in opposition to the motion that Mr. Butowsky acted "as an intermediary between relevant individuals" and arranged for a meeting between Rod Wheeler and a congressional staffer "*so that Ms. Zimmerman could receive information*." (Doc. 138 at 19) (emphasis added).  Regardless of whether Mr. Butowsky had firsthand information about Seth or Aaron Rich that Ms. Zimmerman could quote for publication, the record reflects that he connected her with knowledgeable people who could either provide such information directly or channel Ms. Zimmerman to other sources who could.

Indeed, because of the nature of the story, it was necessary for Ms. Zimmerman to pursue "intermediary" sources who might lead her to information.  Ms. Zimmerman was reporting on a leak of sensitive political emails implicating national security concerns.  She could not simply call the FBI or NSA and gain access to their case files concerning the DNC email leak.  Instead, she had the delicate task of seeking out current or former government or law enforcement sources who might disclose relevant information.  Mr. Rich's own evidence shows that Mr. Butowsky was *a source for these sources*.  That evidence is consistent with Ms. Zimmerman's declaration. Confirming that she viewed Mr. Butowsky as a "source" and communicated with him as part of her "newsgathering for that article," Ms. Zimmerman avers that "Mr. Butowsky introduced me to his contacts so that I could receive relevant information or uncover sources of relevant information."  Zimmerman Decl. ¶¶ 4-6.

*Third*, the record reflects that Mr. Butowsky *did* provide Ms. Zimmerman with information supporting her news story—even if she never quoted him.  Again, Mr. Rich himself introduced evidence in opposition to the motion that Mr. Butowsky "*provided Ms. Zimmerman with information* he obtained from Seymour Hersh," a well-regarded journalist.  (Doc. 138 at 19-20) (emphasis added).  And Zimmerman explains in her sworn declaration that she obtained "leads" and "background information" from Mr. Butowsky and that he "also provided me with information he learned from his contacts within the law enforcement and intelligence communities." Zimmerman Decl. ¶¶ 5-6.

It makes no difference here that Ms. Zimmerman never quoted Mr. Butowsky directly, or that she asked him to obtain information from his own sources that he could pass on to her. Background and intermediary sources are commonplace in the newsgathering process.  Nor does it make any difference whether information from Mr. Butowsky was ultimately even used.  The

8

record reflects that Ms. Zimmerman sought information from Mr. Butowsky in order to obtain or confirm facts for a news report on a matter of intense public interest. That is classic newsgathering activity, not a waiver of the privilege. *See Guice-Mills v. Forbes*, 819 N.Y.S.2d 432, 436 (Sup. Ct. 2006) (noting that a journalist does not waive the privilege by "fact checking sources to ascertain the veracity of information used in news reports prior to publication").

## II.    The Order is Premised on an Unduly Broad View of What Showing Can Overcome the Newsgathering Privileges.

Reconsideration is also warranted because the Court has taken an overly broad view of the legitimate bases on which the newsgathering privilege may be overcome. The standard for overcoming the newsgathering privilege is "a stringent one that imposes a 'very heavy burden' on any party seeking to overcome it." *Giuffre*, 221 F. Supp. 3d at 476. In the ordinary case, "the civil litigant's interest in disclosure should yield to the journalist's privilege." *Zerilli v. Smith*, 656 F.2d 705, 712 (D.C. Cir. 1981). Indeed, the privilege should "prevail in *all but the most exceptional cases*," *id.* (emphasis added), and "should be abrogated only as a last resort," *In re Slack*, 768 F. Supp. 2d at 194, 196. Mr. Rich has not shown that there is anything "exceptional" about this case that warrants disclosure.

### A.    Ms. Zimmerman's Testimony Does Not "Go to the Heart" of Mr. Rich's Claims, Nor Do His Claims "Rise or Fall" with Her Testimony.

The Court held that Mr. Rich overcame the newsgathering privilege because Ms. Zimmerman's testimony "is central to Butowsky's state of mind" and "go[es] to the heart of his claims." (Mem. Order at 4). As an initial matter, the Court does not appear to have independently applied New York's strict standard for overcoming the privilege. Its opinion cited only one case that applied the First Amendment privilege, *see Estate of Klieman v. Palestinian Auth.*, 293 F.R.D. 235 (D.D.C. 2013), and contained none of the language from the New York statute describing the burden on the party seeking to overcome the privilege. That statute requires Mr. Rich, as the party

seeking discovery, to make "a clear and specific showing" that the testimony "is critical or necessary to the maintenance of [his] claim." N.Y. Civ. Rights L. § 79-h. Under New York law, information is not "critical or necessary" unless the claim "virtually rises or falls with the admission or exclusion of the proffered evidence." *Krase v. Graco Children Prods.*, 79 F.3d 346, 351 (2d Cir. 1996); *Flynn v. NYP Holdings*, 235 A.D.2d 907, 908 (3d Dep't 1997). "The test is not merely that the material may be helpful or probative," but whether the claim "may be presented without it." *In re Application to Quash Subpoena to NBC*, 79 F.3d 346, 351 (2d Cir. 1996). Mr. Rich has not come close to satisfying the standard under New York law—or, for that matter, under the First Amendment.

The Court identified three specific topics as "central to Butowsky's state of mind" and on which Ms. Zimmerman must give testimony: (1) "communications with Butowsky both before and after publication," (2) "the decision to retract the Fox News Article," and (3) "[w]hether Zimmerman spoke directly to the 'federal investigator' source mentioned in the Fox News Article." (Mem. Order at 4). But Mr. Rich has not overcome the privilege as to these topics for multiple reasons.

With respect to communications with Mr. Butowsky, there is no showing by Mr. Rich that his claim "virtually rises or falls," *Krase*, 79 F.3d at 351, with Ms. Zimmerman's testimony. Indeed, he does not know what Ms. Zimmerman will testify to concerning the content of those communications, so he cannot even speculate that her testimony is somehow "critical or necessary" to the maintenance of his claim. N.Y. Civ. Rights Law § 79-h. Any testimony she offered would either be cumulative of Mr. Butowsky's own testimony or else would serve only to undermine his credibility. Neither circumstance provides a basis for compelling a journalist's deposition. *See In re Application of Home Box Office, Inc.*, 103 N.Y.S.3d 794, 801 (Sup. Ct. 2019)

10

(cumulative information); *Dowd v. Calabrese*, 577 F. Supp. 238, 242 (D.D.C. 1983) (same); *In re Am. Broad. Companies, Inc.*, 735 N.Y.S.2d 919, 922 (Sup. Ct. 2001) (credibility); *Liberty Lobby, Inc. v. Rees*, 111 F.R.D. 19, 22 n.3 (D.D.C. 1986) (same).

Moreover, Mr. Rich has not sufficiently established a need to compel Ms. Zimmerman to testify about Fox News's decision to retract the article or whether she communicated directly with the federal investigator.  These subjects do not even arguably bear on Mr. Butowsky's state of mind—the only purpose for which Mr. Rich contends they are relevant—except to the extent that Ms. Zimmerman discussed these matters with him.  The Court, however, appears to have allowed a far broader inquiry into *what in fact happened*—the substantive "decision to retract the Fox News Article" and "[w]hether Zimmerman spoke directly to the 'federal investigator' source mentioned in the Fox News Article"—regardless of what was shared by Ms. Zimmerman with Mr. Butowsky about these topics.  Aaron Rich has no basis to probe Fox's sensitive internal deliberations whether to retract the article—deliberations in which Mr. Butowsky did not participate, which say nothing about his state of mind, and which concerned an article that did not even mention Aaron Rich.  The content of those confidential discussions is not "critical or necessary" to the maintenance of his claims.  N.Y. Civ. Rights Law § 79-h; *Krase*, 79 F.3d at 351.  For the same reasons, it is immaterial to Mr. Rich's claims whether Ms. Zimmerman *in fact* spoke with the federal investigator directly or obtained this information through intermediaries.

As to these topics, Mr. Rich has not even made a bare showing of relevance under the Federal Rules of Civil Procedure, much less established the vastly heightened "clear and specific showing," N.Y. Civ. Rights Law § 79-h, that his claim "virtually rises or falls" with this testimony, *Krase*, 79 F.3d at 351, that is required to overcome the privilege.

**B.      Mr. Rich Has Not Yet Exhausted All Alternative Sources of Information.**

Reconsideration is also warranted because Mr. Rich has not shown that he has exhausted all alternative sources of information.  This is a second, separate hurdle that Mr. Rich must overcome in addition to demonstrating that the evidence is critical.  *See* N.Y. Civ. Rights Law § 79-h(c)(iii); *Zerilli*, 656 F.2d at 713.

The Court held that Mr. Rich had satisfied his exhaustion requirement because "Zimmerman is the only witness who can provide testimony, other than defendant Butowsky," and "Plaintiff should not have to rely solely on his testimony to gather evidence on these issues." (Mem. Order at 4 n.2).  But both D.C. Circuit precedent and New York law require that Mr. Rich exhaust *all* alternative sources *prior* to seeking information from a reporter.  *See* N.Y. Civ. Rights Law § 79-h(c)(iii); *Flynn*, 652 N.Y.S.2d at 835; *Zerilli*, 656 F.2d at 713.  Here, Mr. Rich simply has not exhausted his sources yet.  He seeks Ms. Zimmerman's testimony not as a "last resort," but as a prohibited "first option."  *See Giuffre*, 221 F. Supp. 3d at 480; *Hutira*, 211 F. Supp. 2d at 122.  He has not yet deposed all witnesses who were present when certain of Ms. Zimmerman's post-publication communications with Mr. Butowsky or Mr. Couch allegedly occurred.  (Doc. 173—Plaintiff's Notice of Outstanding Discovery Requests).  He has not yet completed his deposition of Mr. Couch.  (*Id.*)  He has not even *begun* to depose Mr. Butowsky, who would have the most salient information about his own mental state.  (*Id.*).  The law requires that Mr. Rich take these steps *before* seeking Ms. Zimmerman's deposition in order to overcome the First Amendment and the New York privileges.[2]  The Court's decision allows Mr. Rich to circumvent that process, in violation of the privileges.

---

[2] The Court cited *Estate of Klieman v. Palestinian Auth.*, 293 F.R.D. 235 (D.D.C. 2013).  Although the *Klieman* court initially held that the plaintiff had exhausted alternative sources of information, on reconsideration it stayed its order requiring the disclosure in light of an incomplete but anticipated document production from defendants.  *See Estate of Klieman v. Palestinian Auth.*, 18

In *Brown & Williamson Tobacco Corp. v. Wigand*, No. 101678/96, 1996 WL 350827, at *5 (N.Y. Sup. Ct. Feb. 28, 1996), for example, the New York court barred the deposition of a journalist, notwithstanding the plaintiff's argument that the defendant was "not a reliable alternative source because he is inherently dishonest." The court reasoned that to accept the plaintiff's argument "would set a judicial precedent that, in effect, would vitiate the three-prong test of [the New York privilege] since all that would be required to defeat the journalist's protection would be to allege, without more, that the alternative non-journalistic source is dishonest." *Id.*

There is no futility exception to the rule of exhaustion. *See Zerilli*, 656 F.2d at 715 (litigants "cannot escape their obligation to exhaust alternative sources" simply because doing so "would be time-consuming, costly, and unproductive"); *In re Slack*, 768 F. Supp. 2d at 194 (the reporter must be "a last resort *after* pursuit of other opportunities *has failed*" (emphasis added)); *Blum v. Schlegel*, 150 F.R.D. 42, 46 (W.D.N.Y. 1993) ("Where the source is known and can be deposed, the availability of a deposition is an alternative source that *must be pursued*" (emphasis added)); *Pugh v. Avis Rent A Car Sys., Inc.*, No. M8-85, 1997 WL 669876, at *4 (S.D.N.Y. Oct. 28, 1997) (rejecting futility argument).[3]

---

F. Supp. 3d 4, 6 (D.D.C. 2014). Here too, Mr. Rich has numerous outstanding discovery requests that foreclose any conclusion that he has exhausted alternative sources of information. (Doc. 173).

[3] Even if some small subset of topics falls outside the scope of the privileges, Ms. Zimmerman should not be required to "object to specific questions at her deposition," Mem. Order at 5, when the overwhelming majority of deposition topics relate to information she obtained in the course of her newsgathering activities. *See Goldberg v. Amgen, Inc.*, 123 F. Supp. 3d 9, 22 (D.D.C. 2015) (quashing subpoena for deposition of journalist, reasoning that, though "the law generally disfavors blanket assertions of privilege, . . . courts in this jurisdiction have not required journalists to invoke the journalist's privilege on a question-by-question basis before obtaining protection from the court").

**III.     The Court's Privilege Ruling Unnecessarily Reaches Constitutional Issues.**

In the alternative, if the Court adheres to its ruling that Ms. Zimmerman's deposition must go forward, it should reach that result without addressing (1) whether the retraction or certain post-publication communications fall within the scope of the privilege or (2) whether Ms. Zimmerman waived the privilege with respect to certain communications with Mr. Butowsky.  Both questions implicate important First Amendment and state law protections for newsgathering, and both carry potentially significant consequences for Ms. Zimmerman, Fox News, and other journalists beyond this specific subpoena.  The Court should instead rest its ruling on the narrowest ground available—that Mr. Rich has overcome the newsgathering privilege as to certain topics that arguably go to the heart of his claims.  Such a ruling would fully dispose of all issues on this motion.  What is more, it would have the virtue of avoiding unnecessary rulings on constitutional questions concerning the scope or waiver of the newsgathering privilege.  *See Kalka*, 215 F.3d at 97 ("Federal courts should not decide constitutional questions unless it is necessary to do so.").

Avoiding these constitutional questions would also bring important practical benefits.  A ruling limited to the question of whether Ms. Zimmerman's testimony goes to the heart of plaintiff's claims would not have potential spillover effects on the issues of privilege in Fox News and Ms. Zimmerman's separate litigation with plaintiff's parents, Joel and Mary Rich, in the Southern District of New York.  And it would leave for another day important questions, with consequences for all journalists, about the protections that they may assert against intrusions into the newsgathering and editorial processes.  *See Consumers Union*, 495 F. Supp. at 588; *Palandjian*, 103 F.R.D. at 412.

## CONCLUSION

For the foregoing reasons, the Court should grant Ms. Zimmerman and Fox News's motion for reconsideration of the Court's denial of a protective order.

14

Respectfully submitted,

*/S Joseph M. Terry*

Joseph M. Terry (DDC Bar 473095)
Stephen J. Fuzesi (DDC Bar 496723)
Katherine A. Petti (DDC Bar 1026532)

WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Tel: (202) 434-5000
Fax: (202) 434-5029
jterry@wc.com
sfuzesi@wc.com
kpetti@wc.com

*Attorneys for Non-party Fox News Network, LLC*

David H. Stern (*pro hac vice*)
Vincent H. Cohen, Jr. (DDC Bar 471489)

Dechert LLP
U.S. Bank Tower
633 West 5th Street, 26th Floor
Los Angeles, CA 90071

1900 K Street, NW
Washington, DC 20006
Tel: (213) 808-5720
Fax: (213) 808-5760
david.stern@dechert.com
vincent.cohen@dechert.com

DATED: April 22, 2020                    *Attorneys for Non-party Malia Zimmerman*

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 22, 2020, I caused to be filed electronically the foregoing Motion for Reconsideration of Denial of Protective Order with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record in this matter who are on the CM/ECF system.  I further certify that a copy of the foregoing document was provided to Defendant America First Media via email to mattcouch@af-mg.com on April 22, 2020.

*/S Joseph M. Terry*
Joseph M. Terry
*Counsel for Fox News Network, LLC*

16

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AARON RICH<br><br>                      Plaintiff,<br><br>    v.<br><br>EDWARD BUTOWSKY,<br>MATTHEW COUCH, and<br>AMERICA FIRST MEDIA,<br><br>                  Defendants. | Civil Action No. 1:18-cv-00681-RJL<br><br>Hon. Richard J. Leon |

**[PROPOSED] ORDER**

Having considered Malia Zimmerman and Fox News Network, LLC's Motion for

Reconsideration of Denial of Protective Order, it is hereby ORDERED that the motion is

GRANTED.

**SO ORDERED** this _____ day of _____, 2020.

_____
Hon. Richard J. Leon
United States District Judge

## NAMES OF PERSONS TO BE SERVED WITH PROPOSED ORDER UPON ENTRY

In accordance with Local Rule 7(k), listed below are the names and addresses of the

attorneys and parties entitled to be notified of the proposed order's entry:

Joshua P. Riley
Meryl C. Governski
Boies Schiller Flexner LLP
1401 New York Ave NW
Washington DC 20005
Tel: (202) 237-2727
Fax: (202) 237-6131
jriley@bsfllp.com
mgovernski@bsfllp.com

Michael J. Gottlieb
Willkie Farr Gallagher LLP
1875 K Street NW
Washington, DC 20006
Tel: (202) 303-1442
Fax: (202) 303-2000
mgottlieb@willkie.com

*Attorneys for Plaintiff Aaron Rich*

Eden P. Quainton
Quainton Law, PLLC
1001 Avenue of the Americas, 11th Floor
New York, NY 10018
Tel: (212) 813-8389
Fax: (212) 813-8390

*Attorney for Defendants Edward Butowsky
and Matthew Couch*

America First Media
2300 West Ash Street
Rogers, AR 72758

*Pro Se*

David H. Stern
Vincent H. Cohen Jr.
Dechert LLP
U.S. Bank Tower
633 West 5th Street, 26th Floor
Los Angeles, CA 90071

1900 K Street, NW
Washington, DC 20006
Tel: (213) 808-5720
Fax: (213) 808-5760
david.stern@dechert.com
vincent.cohen@dechert.com

*Attorneys for Non-party Malia Zimmerman*

Joseph M. Terry
Stephen J. Fuzesi
Katherine A. Petti
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Tel: (202) 434-5000
Fax: (202) 434-5029
jterry@wc.com
sfuzesi@wc.om
kpetti@wc.com

*Attorneys for Non-party Fox News Network,
LLC*