UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AARON RICH,   Case No. 1:18-cv-00681-RJL
  Honorable Richard J. Leon
    Plaintiff,

v.

EDWARD BUTOWSKY,
MATTHEW COUCH,
AMERICA FIRST MEDIA,

    Defendants.

# EXPERT WITNESS LARRY JOHNSON'S OPPOSITION TO MOTION TO COMPEL AND CROSS-MOTION FOR PROTECTIVE ORDER AND SANCTIONS

EDEN P. QUAINTON, ESQ. (D.C. Bar No. NY0318)
QUAINTON LAW, PLLC
1001 Avenue of the Americas, 11th Floor
New York, New York 10018
Telephone: (212) 813-8389
*Attorneys for Larry Johnson*

**PRELIMINARY STATEMENT**

On March 27, 2020, in violation of FRCP 26(b)(4)(A), Plaintiff sought to compel the deposition testimony of Larry Johnson, Defendant Edward Butowsky's expert witness, on matters to be covered by Mr. Johnson's expert report, notwithstanding the fact that Mr. Johnson has not yet produced his expert report and will not do so for a period following the lifting of the stay in the present matter, and notwithstanding the fact that Plaintiff had expressly acknowledged, before conducting the deposition and before filing his motion to compel and for sanctions, that Mr. Johnson had ***only*** agreed to testify as a fact witness and not as to any matters that would be subject to his expert report.

Plaintiff has repeatedly and for nearly two years used his vastly superior resources – his army of two law firms, two partners, at least five associates, countless paralegals and support staff – to browbeat and harass Defendants with pointless and abusive motions designed to divert attention away from his crumbling case and to force Defendants to wave the white flag simply to stop the repeated assaults. Adversarial litigation is designed to sharpen the parties' substantive positions and presentation of evidence, not to reward the wealthier party—here a team that has even bragged to this Court about the hundreds of thousands of dollars spent on a wild goose chase approach to discovery when the real issues depend on documents in Plaintiff's possession: Can Plaintiff prove he did not participate in leaking documents to Wikileaks? Can Plaintiff prove he did not receive money from Wikileaks? Can Plaintiff prove he did not interfere with investigations into Seth Rich's murder? The resolution of these questions turns on whether Plaintiff can demonstrate that he has made available the contents of the relevant email accounts that would contain evidence of communications with Wikileaks; that he timely provided all relevant evidence – emails, notes, computers, cell phones and any other devices in his possession – promptly to law enforcement in circumstances that ensure the absence of tampering; and that

he has made available all bank accounts and explained all movements of funds during the relevant period. If Plaintiff does not or cannot provide the foregoing evidence, he cannot carry his burden of proof and the vast resources he is devoting to silencing Defendants will have proved to be an immense waste.

Of course, Plaintiff is free to waste his money—or that of his rich lawyers. What he is not free to do is abuse the legal system and force Defendants and their counsel, who have a fraction of Plaintiff's resources, to waste their time and effort on abusive and harassing litigation. The Court should deny Plaintiff's motion to compel, grant Defendant's expert the protective order needed to ensure the integrity of his expert report and impose sanctions on Plaintiff's counsel for their abusive behavior.

## **LEGAL ARGUMENT**

I. **THE COURT SHOULD DENY PLAINTIFF'S MOTION TO COMPEL.**

   A. THE FEDERAL RULES OF CIVIL PROCEDURE PROHIBIT THE TAKING OF A TESTIFYING EXPERT'S DEPOSITION BEFORE THE EXPERT'S REPORT HAS BEEN COMPLETED TO PREVENT THE OPPOSING PARTY FROM IMPROPERLY USING THE EXPERT TO PREPARE ITS OWN CASE.

Under Rule FRCP 26(b)(4)(A), "A party may depose any person who has been identified as an expert whose opinions may be presented at trial. If Rule 26(a)(2)(B) requires a report from the expert, the deposition may be conducted only after the report is provided." Plaintiff does not dispute that Mr. Johnson was identified as an "expert whose opinion may be presented at trial." This is evident from the correspondence between the parties. Mr. Johnson's counsel stated unambiguously, on ***January 14, 2020***, well in advance of the March 4 deposition, that:

*See* 171-11 at 2;

Declaration of Eden P. Quainton, dated May 4, 2020 (the "Quainton Decl."), Ex. 1 (Engagement Letter of Larry Johnson). Mr. Quainton, who had not yet been retained by Mr. Johnson, raised

what appeared to him the principal issue with Plaintiff's counsel: whether the deposition of an expert as a fact witness was appropriate at all. Dkt. 171-11 at 2. Following Plaintiff's response and consideration of Plaintiff's arguments, **_Mr. Johnson agreed to be deposed as a fact witness_**, **_nothing more_**. Plaintiff knew, as stated in written correspondence and communicated over the phone, that Mr. Johnson was an expert. *See supra* at 2; *see also* Quainton Decl. ¶ 9. Plaintiff knew that, if an expert report were submitted, Mr. Johnson would be deposed as an expert **_after_** the production of his report. FRCP 26(b)(4)(A). Plaintiff can provide no evidence – because there is none – to support any notion that Mr. Johnson had agreed to be deposed as an expert before the preparation of his expert report. Despite the onset of the Covid-19 crisis, counsel flew to Florida for purposes of defending the deposition of Mr. Johnson as a fact witness. Quainton Decl. at ¶ 7. Mr. Johnson complied with the subpoena solely for the purpose of answering fact questions and Plaintiff stated in writing that Mr. Johnson was only being deposed as a fact witness. Dkt. 171-11 at 1 ("He will sit for deposition as a fact witness"). Plaintiff did not offer to reimburse Mr. Johnson for any time spent in preparation for the deposition as an expert—for the obvious reason that neither Plaintiff nor Mr. Johnson contemplated that Mr. Johnson would be deposed as an expert at that time. *See supra* at 3.

Prior to the deposition, Mr. Quainton conferred with Mr. Butowsky and Mr. Butowsky confirmed that Mr. Johnson would be asked to prepare an expert report. *Id.* at ¶ 6. Mr. Johnson was informed of this decision and agreed with it. *Id.* As a result, any deposition of the facts underlying, the opinions to be contained in, or the bases for the report could only be conducted after the report containing the disclosures prescribed by Rule 26(a)(2)(B) had been submitted in accordance with Rule 26(b)(4)(A). Counsel made this point clear immediately at the outset of the deposition to avoid any waste of time. Quainton Decl., Ex. 2, 8:4-18. Plaintiff was thus on notice

4

that Mr. Johnson had been designated as an expert witness and that he would be preparing an expert report. Obviously, once it was clear that Mr. Johnson would be providing an expert report, any discussion of the facts underlying, or the opinions to be contained in, Mr. Johnson's report could only occur ***after*** the report had been prepared and submitted, a position with which Plaintiff's counsel appeared to concur. *Id.* 8:25, 9:1-3.

However, rather than simply accepting Mr. Johnson's position, counsel for Plaintiff refused to agree to limit the deposition to matters of fact and sought, without any legal basis, to take Mr. Johnson's expert testimony subject to Mr. Johnson's right to move to strike such testimony in the future. *Id.* 11:1-4. This approach was unacceptable to Mr. Johnson and was immediately rejected as it could provide Plaintiff with an unfair advantage in preparing its case. Mr. Quainton outlined the contemplated contents of Mr. Johnson's report:

Quainton Decl., Ex. 2, 15:4-19.

Any inquiry into this area under the guise of an exploration of "facts" within Mr. Johnson's knowledge was clearly inappropriate under Rule 26(b)(4)(A) as Mr. Quainton stated repeatedly:

2

Quainton Decl., Ex. 2, 207:2-16

Beyond their technical requirements designed to organize the American adversarial system in a logical and coherent way, the Federal Rules of Civil Procedure aim to preserve substantive justice and to provide parties, as much as possible in a world of varying resources, with a level playing field. This notion is implicated in the structure of Rule 26(b)(4). As a leading treatise summarizes:

> Rule 26(b)(4), taken as a whole, has been recognized to have been promulgated for the dual purpose of (1) facilitating the presentation and clarification of issues at trial, while (2) **_guarding against the danger that one party will unfairly use another party's experts to prepare his own case._**

33 A.L.R. Fed. 403 (Originally published in 1977)

Plaintiff already has a tremendous advantage in attorneys and resources. Permitting him to venture into areas to be covered by Mr. Johnson's report before the report had been prepared would give him yet another unfair advantage. Plaintiff's attorneys are well aware of the underlying policy behind Rule 26(b)(4) and know that trying to get a "sneak peak" into Defendants' trial strategy is manifestly unfair and improper. Moreover, Plaintiff is also aware that he is required to pay for an expert's time in preparing for a deposition. FRCP 26(b)(4)(E). Yet at no time did Plaintiff offer to pay Mr. Johnson for his time spent responding to expert discovery as required if expert deposition testimony were to be taken. *Barnes v. D.C.*, 272 F.R.D.

135, 137 (D.D.C. 2011); *Dinkel v. MedStar Health, Inc.*, No. CV 11-0998 (CKK-AK), 2014 WL 12792993, at *4 (D.D.C. Mar. 20, 2014). Plaintiff was simply hoping to throw his weight around and use Defendant's expert to prepare his own case, for free, at Defendant's financial and strategic expense. This was and is totally inappropriate.

The principal basis for Plaintiff's motion appears to be that a party may not instruct a designated expert intending to prepare an expert report but testifying as a fact witness not to answer improper questions unless the instruction specifically references Rule 30(d)(3). Dkt. 172-1 at 12-13. The Court should reject this hyper-technical approach. As noted, the Federal Rules of Civil Procedure are always to be interpreted to further the interests of justice. *See* FRCP Rule 1 ("[Rules] should be construed, administered, and employed by the court and the parties to secure the ***just***, speedy, and inexpensive determination of every action and proceeding")(emphasis added); *cf.* Rule 8(e)("pleadings must be construed so as to do justice"). It was clear that counsel for Mr. Johnson intended to protect his client's rights through Court intervention if necessary:

Johnson Dep. 9:21-24, 10:1.

Plaintiff understood that Mr. Johnson was demanding that the deposition be suspended on the issue of his expert testimony as required under Rule 30(d)(3) and expressly agreed,

. *Id*. at 9-11.

Even if it were somehow not clear that Mr. Johnson were demanding that the deposition be suspended until an appropriate protective order could be issued, Mr. Johnson is making this demand now, as set forth below in Section II, and his attorney's instructions were necessary to preserve his client's rights to seek appropriate relief from the Court.

### B. PLAINTIFF'S ANALYSIS OF RULE 26(b)(4)(a) RELIES ENTIRELY ON INAPPOSITE CASES THAT DO NOT SPEAK TO AN ATTEMPT TO COMPEL TESTIMONY FROM AN EXPERT BEFORE HIS REPORT HAS BEEN SUBMITTED

Plaintiff concedes, in a footnote to his motion to compel, that the Federal Rules of Civil Procedure were amended in 2010. Dkt. 171-1 at 14 and Note 12. This is significant because Plaintiff relies primarily on old (and in some cases no longer good) law for the proposition that an expert's writings before the date of his retention as an expert – even if central to his expert opinion – can be inquired into before his expert report is prepared. Dkt. 171-1 at 15. But whether based on the old or new rules, this is a preposterous distortion of decades of law on expert witnesses. Good experts have publication histories extending in many cases long before their retention as testifying experts. A valuable expert opinion is one that has been the subject of research and experience independent of the litigation for which the expert has been retained. Plaintiff advances the incredible rule that a testifying expert's "publications," "thought processes," "communications," "opinions," and "qualifications" from before his retention as an expert can be inquired into before the expert's report has been prepared. *Id.* This absurd misreading of the rules is astonishing. If this were the law, a testifying expert could be examined on virtually everything going into his or her export report before the report has been prepared and submitted, if he or she agreed to testify on any factual issue, no matter how minor. This would allow the examining party to use its opponent's expert to prepare its own case, a perversion of the underlying logic of adversarial litigation. Moreover, this position is inconsistent with the plain language of Rule 26(a)(2)(B), which requires the expert witness to provide publications from the preceding 10 years, a period that in almost all cases will extend well before

his or her retention as an expert. Obviously, inquiry into these publications cannot be subject to "fact discovery" if, as here, the expert intends to prepare an expert report. Indeed, Plaintiff's rule would have the effect of interfering with a party's right to designate its own experts simply because an expert may have factual knowledge on some issue in the case. There is no support for this proposition in the law. It is incredible that such an argument made it through the internal review process of firms such as Willkie Farr and Boies Schiller.[1]

Plaintiff confuses an entirely separate point that if an expert has factual knowledge unrelated to his expert report he may be deposed separately on such factual knowledge. Dkt. 171-1 at 15. That is obvious and not in dispute. Here, Mr. Johnson has certain, limited factual knowledge,

*See e.g.*, Johnson Dep. 142-143, 153-54. This knowledge is fair game for a deposition on matters of fact, as Mr. Johnson's counsel acknowledged. *Id.* 12:14-16. Mr. Johnson was examined at length on these topics. If anything, Mr. Johnson's counsel gave Plaintiff too much leeway in exploring the matters that could be a part of or could inform the matters required to be covered by a Rule 26(a)(2)(B) report.

But this self-evident proposition has nothing to do with the issue before the Court and none of the cases cited by Plaintiff are even remotely apposite. In *Downey v. Bob's Disc. Furniture Holdings, Inc.*, 633 F.3d 1, 7 (1st Cir. 2011) the court addressed the question of **_whether_** an expert report was **_required_** and held that "as long as an expert was not retained or

---

[1] Plaintiff claims that Mr. Quainton has somehow acted improperly because he has failed to produce a case standing for the self-evident proposition that Rule 26(b)(4)(A) means what it says and is not over-ridden by an expert's factual knowledge. Quainton Decl., Ex. 4. This has it exactly backwards. It was Plaintiff's burden to come forward with some law in support of his absurd position that contorts the plain meaning of the Rule, which he has utterly failed to do.

specially employed in connection with the litigation, and his opinion about causation is premised on personal knowledge and observations made in the course of treatment, no report is required under the terms of Rule 26(a)(2)(B)." Here, Defendant does not deny – and indeed insists – that Mr. Johnson **_was_** retained as an expert and **_was_** directed to provide an expert report.

*Brandstetter v. Nat'l R.R. Passenger Corp.,* No. CIV. A. 86-2893, 1987 WL 12766, at *2 (D.D.C. Mar. 12, 1987) held that treating physicians are considered as 'fact witnesses' as to information not obtained or prepared in anticipation of litigation. This 30-year old case was adopted before the 1993, 2000, 2007 and 2010 amendments to the Federal Rules, and in particular the 1993 amendments that expressly provided that an expert preparing a report could only be deposed after the submission of the report. The case obviously has nothing to do with the issue of deposing an expert on the content of his report, a point that was not even in the drafting of the rules at the time the decision. With "hybrid fact/expert witnesses" such as the treating physician in *Brandstetter*, the issue that arises is whether the jury would be unduly swayed by a doctor's opinion as an expert if it hears him opine as to related issues of fact, thus cloaking the doctor's opinion with an aura of definitiveness it may not merit. But Mr. Johnson is not a classic "hybrid witness."

>Quainton Decl. at ¶ 6.

Plaintiff places great reliance on *Marine Petroleum Co. v. Champlin Petroleum Co.*, 641 F.2d 984 (D.C. Cir. 1979). Dkt. 171-1 at 14-15. This old case, also adopted before the 1993 amendments discussed above, indeed before the 1980 and 1983 amendments to the Federal

Rules, is also of no help to Plaintiff. The plaintiff in that case did not contest the procedural propriety of defendant's instructions not to answer based on a witness' expert status, but questioned whether the former Rule 26(b)(4)(B) shielded a non-testifying expert from inquiry into opinions before he was specially employed as an expert in anticipation of litigation. The court's negative answer to that question, *id.* at 991, has nothing to do with the limitations on the deposition of a testifying expert preparing an expert report. *Marine Petroleum* provides no guidance whatsoever on the question of whether the deposition of an expert on certain factual matters opens the door to a wholesale examination of the foundations of an expert report to be prepared under Rule 26(a)(2)(B). As noted, Plaintiff has offered no law in support of an affirmative answer to this question and Mr. Johnson's research has also uncovered none. The reason is obvious: if an expert is to prepare a report for use at trial he may not be deposed on the subject matter of the report until after the report is prepared—as the French say, ***point à la ligne***.[2]

Plaintiff also relies on *Am. Prop. Const. Co. v. Sprenger Lang Found.*, 274 F.R.D. 1, 4 (D.D.C. 2011) which addresses the status of "hybrid fact/expert witness," but is again inapposite because the experts at issue had not prepared and did not believe they were required to prepare an expert report. Here, obviously, the issue is completely different, because Mr. Johnson fully intends on preparing an expert report and submitting to an examination on such report – at Plaintiff's expense – once the report is completed.

Finally, Plaintiff reliance on *Sununu v. Philippine Airlines, Inc.*, No. CIV.A. 981192, 2010 WL 3927601, at *2 (D.D.C. Oct. 4, 2010) is completely misplaced, as the defendant in that case did not quarrel with the basic fact that the witness in question was ***not*** "retained or

---

[2] Plaintiff's counsel faults Mr. Quainton for the absence of case law overriding Rule 26(b)(4)(A) and threatens him with Rule 11 sanctions because the law does not support Plaintiff's position. *See supra* at 9 and Note 1. This is nonsense.

specifically employed to provide expert testimony," which Mr. Johnson unambiguously was here.

The issue before the Court is both analytically distinct from the cases brought forward by Plaintiff and straightforward. Mr. Johnson concedes he has limited factual knowledge and has fully answered all relevant factual questions. He also concedes he is required to prepare an expert report and that he is subject to examination on the report, as Plaintiff's cost, once the report is prepared. Mr. Johnson simply submits that his examination on the subject matter of the report cannot occur before the report has been prepared. Any other holding would render Rule 26(b)(4)(A) a dead letter.

II. **A PROTECTIVE ORDER SHOULD BE ISSUED TO PREVENT ANY FURTHER DEPOSITION OF MR. JOHNSON UNTIL HIS EXPERT REPORT HAS BEEN PREPARED AND SUBMITTED**.

Pursuant to Rule 26(c), a "party or any person from whom discovery is sought may move for a protective order ... on matters relating to a deposition, in the court for the district where the deposition may be taken."[3] After consideration of the motion, "the court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including ... forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." Fed.R.Civ.P. 26(c). As this Court has held, "If the court decides to grant a protective order, it may 'limit the conditions, time, place, or topics of

---

[3] Pursuant to Local Rule 7(m) counsel for Mr. Johnson offered Plaintiff's counsel the opportunity to withdraw his motion and consent to the present motion for a protective order. Plaintiff's counsel declined and indeed threatened Mr. Quainton with Rule 11 sanctions if Mr. Johnson proceeded with his cross-motion, which cannot come as a surprise. *See* Quainton Decl., Ex. 4; *see also supra* Notes 1 and 2. Moreover, the Cross-Motion for a Protective Order rests on the same substantive analysis as Plaintiff's Motion to Compel and was simply the logical corollary to Plaintiff's Motion. Any arguments made by Plaintiff in his reply can made in his opposition as well, preventing any possible prejudice. Mr. Johnson's meet and confer obligation have been satisfied as any further discussion between the parties would be fruitless.

discovery.'" *Eidos Display, LLC v. Chunghwa Picture Tubes, Ltd.*, 296 F.R.D. 3, 5 (D.D.C. 2013)(internal citations omitted). Here, there is good cause to limit the scope of the deposition of Mr. Johnson because Plaintiff has made clear that he desires to inquire into

even though these very opinions form the basis for the expert report that he is preparing and will submit in this matter. *See* Dkt. 171-14 (Plaintiff's Proposed Order). Plaintiff also seeks to depose Mr. Johnson on facts that were not acquired or developed in anticipation of litigation, even though these very facts

will be relied on in his expert report. *Id.* In the absence of a protective order, Mr. Johnson will be unable to prepare his expert report in the manner provided for in the rules, *i.e.*, free from the opposing party's examination until the report is completed, which would work a manifest injustice. *See supra* at 6.

Plaintiff has not moved to bar Mr. Johnson from testifying as an expert or to strike his report, no doubt knowing that such action would be futile. Rather, Plaintiff seeks to achieve the same result indirectly, vitiating the ability of Mr. Johnson to prepare his own independent report and improperly using his expertise to prepare his own case. While the party seeking a protective order bears the burden of showing that "good cause" for such an order exists, *Abraha v. Colonial Parking, Inc.*, 311 F. Supp. 3d 237, 238 (D.D.C. 2018), this standard is easily met here.

First, Mr. Johnson's counsel has searched the entire Westlaw federal data base for any support for the proposition that a testifying expert may be deposed on the subject matter of his report before any reports have been submitted by either party and no such support exists. That fact alone demonstrates that Mr. Johnson is entitled to protection from a patently improper and over-reaching attempt by Plaintiff to undermine Rule 26(b)(4)(A). Second, a sampling of Mr. Johnson's pre-2018 writings illustrates that there is no basis for permitting Plaintiff to enquire

into these writings before Mr. Johnson's synthetic report has been completed. *See* Quainton Decl., Ex. 3. Absent a protective order, Plaintiff could render it impossible for Mr. Butowsky to obtain an expert report altogether from Mr. Johnson, because of the risk Plaintiff would be able to prepare his own case using Mr. Johnson's expertise. Giving Plaintiff a *de facto* veto right over Mr. Johnson's choice of expert, without explanation, would offend basic notions of due process and fair play. The Court should not permit such tactics.

III. **SANCTIONS SHOULD NOT BE IMPOSED ON MR. JOHSON'S COUNSEL BUT SHOULD, RATHER, BE IMPOSED ON PLAINTIFF'S COUNSEL**.

There is absolutely no basis for an award of sanctions under Rule 37 against Mr. Johnson's counsel. Under Rule 37, a party who prevails on a motion to compel is to be awarded "reasonable expenses incurred in making the motion, including attorney's fees" under Rule 37(a)(5)(A) unless the non-movant's opposition to the motion was "substantially justified" under Rule 37(a)(5)(A)(ii). A party is "substantially justified" in opposing a motion if reasonable people could differ in their views on the motion. *Pierce v. Underwood,* 487 U.S. 552, 565 (1988).

Obviously, sanctions should not be awarded here because Plaintiff's motion must be denied. But even if the motion were granted, which it should not be, "reasonable people" could clearly disagree as to whether an expert preparing a report must be required to submit to an examination of his pre-retention opinions before his report has been submitted. That Plaintiff cannot cite a single case in support of the proposition motivating his motion demonstrates that Mr. Johnson's opposition was "substantially justified." Reasonable people can disagree with Plaintiff's a-textual, misleading and simply wrong reading of Rule 26(b)(4)(B). Plaintiff's only real quarrel is that Mr. Johnson's counsel did not expressly reference Rule 30(d)(3) when he instructed his client not to answer questions that would improperly intrude on matters to be

14

covered by an expert report and timely informed Plaintiff that he would he seeking relief from the Court. *See supra* at 7. This quibble does not provide a basis for Rule 37 sanctions.

However, the Court does have the inherent power to impose sanctions on Boies Schiller and Willkie Farr for their abusive conduct in bringing this motion. As the Supreme Court has held:

> Consequently, the "less severe sanction" of an assessment of attorney's fees is undoubtedly within a court's inherent power as well. Indeed, there are ample grounds for recognizing . . . that in narrowly defined circumstances federal courts have inherent power to assess attorney's fees against counsel, even though the so-called "American Rule" prohibits fee shifting in most cases . . . most relevant here, a court may assess attorney's fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.

*Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991).

Here the bad faith and vexatiousness of Plaintiff's counsel's conduct can be seen in the order they have the audacity to ask of the Court: knowing that Mr. Johnson has been designated as an expert, knowing that he will prepare an expert report,

Plaintiff nonetheless asks this court to order Mr. Johnson to answer "***answer all questions regarding opinions or facts that predated April, 2018***." Dkt. 171-14 (Proposed Order). This order is patently over-reaching on its face and would completely eviscerate Rule 26(b)(4)(A). No expert could ever rely on the rule if he had any knowledge of any factual matter that would subject him to deposition on matters of fact. But Plaintiff knows this request is wholly improper as he concedes that Mr. Johnson will be subject to deposition – which will necessarily be at Plaintiff's cost – and yet Plaintiff seeks to have a preview of this report ***not only*** without paying for it, as the Rules require, but, incredibly,

***also*** at Mr. Johnson's and his counsel's expense.[4] Meritless and abusive motions such as the one brought by Plaintiff waste the parties' and the court's time and resources, divert attention from the real issues in the case, prevent the parties from preparing for trial, and are truly only brought because Plaintiff has the money and the time to waste on such motions, whereas Defendant and Defendant's expert do not—to say nothing of the overburdened judiciary. If Plaintiff wants to inquire into                                                – which he has every right to do – he must wait until the expert report synthesizing Mr. Johnson's views has been prepared, he must focus his inquiry on the opinions actually expressed in the report, and he must reimburse Mr. Johnson for his costs in submitting to this deposition. The Court should send a message to Plaintiff that his counsel's attempt to do an end-run around the rules and to prepare his case at Mr. Johnson's and his counsel's expense will not be tolerated. Anything less will only invite further abusive tactics by Plaintiff and his counsel.[5]

## CONCLUSION

For the foregoing reasons, Mr. Johnson respectfully requests that the Court deny Plaintiff's motion to compel and request for Rule 37 sanctions and grant his request for a

---

[4] Plaintiff's reference to Mr. Quainton's instructions at Mr. Couch's deposition is further evidence of their pattern of distorting facts and law in an attempt to score points. Dkt. 171-1 at 19. The Court did not hold that it was improper for Mr. Quainton to raise objections based on, among other things, the U.S. Constitution. The Court did not even opine on the availability of either a First Amendment or reporter's privilege, issues that continue to be litigated before the Court. *See* Dkt. 133. It is likely the Court's reasoning was similar to that adopted in ruling on a similar motion brought by Fox News, in which the Court held that even if a privilege did apply, it could be invaded because of the importance of the allegedly protected testimony. *See* Dkt. 177 at 4.

[5] Opinions outside the scope of the expert's report – as in every case – are not subject to deposition, nor are they admissible at trial. An expert on the architecture of Samsung phones who also happens to be a well-known music critic cannot be examined on his views on Schoenberg if his opinion covers the optimum placement of the motherboard in a phone's circuitry.

protective order limiting further deposition until Mr. Johnson's expert report has been prepared and for sanctions under its inherent authority to punish and deter Plaintiff's abusive conduct.

Dated: May 4, 2020

*/s/ Eden Quainton*_____
EDEN P. QUAINTON, ESQ. (D.C. Bar No. NY0318)
QUAINTON LAW, PLLC
1001 Avenue of the Americas, 11th Floor
New York, New York 10018
Telephone: (212) 813-8389
E-mail: equainton@gmail.com
*Attorneys for Expert Witness Larry Johnson*

## **CERTIFICATE OF SERVICE**

The undersigned counsel certifies that on May 4, 2020 the foregoing document was filed through the CM/ECF system and thereby served electronically on counsel for Plaintiff Aaron Rich.

                                         **QUAINTON LAW, PLLC**

                                         */s/ Eden Quainton*
                                         EDEN P. QUAINTON, ESQ.

                                         1001 Avenue of the Americas, 11th Floor
                                         New York, New York 10018
                                         Telephone: (212) 813-8389
                                         E-mail: equainton@gmail.com
                                         *Attorneys for Larry Johnson*