# EXHIBIT 17

**Eden P. Quainton**
**Quainton Law, PLLC**

1001 Avenue of the Americas, 11th Floor
New York, NY 10018

33 Tyson Lane
Princeton, NJ 08540

Telephone (212) 813-8389; (609) 921-0529
Fax (212) 813-8390
Cell: (202) 360-6296
Email equainton@gmail.com

April 17, 2020

*Via email to sjparker2@fbi.gov*

Steven J. Parker, Esq.
Assistant General Counsel
Office of the General Counsel
U.S. Department of Justice
Federal Bureau of Investigation
950 Pennsylvania Avenue, NW
Washington D.C. 20535-0001

Re:   Rich v. Butowsky, et al., 18-cv-0681 (RJL)

Dear Mr. Parker:

I write in response to a letter dated April 10, 2020 from Mr. Paul R. Wellons, a copy of which is attached, requesting further information regarding the material sought pursuant to a subpoena issued to the Federal Bureau of Investigation (the "FBI" or the "Department") by Mr. Edward Butowsky, one of the defendants in the above-captioned litigation (the "Rich litigation").  The litigation arises from questions that emerged after Democratic National Committee ("DNC") staffer Seth Rich was murdered on July 10, 2020, shortly before Wikileaks published emails from various officials of the Democratic National Committee (the "DNC"). The leadership of the FBI and the CIA popularized the theory that Russian military intelligence

hacked into the DNC and transmitted emails to Wikileaks using a cut-out known as Guccifer 2.0. However, almost from the beginning of the discussions of the Russian hacking theory, a number of dissenting voices, on both the left and the right, have identified weaknesses in the theory, and many have suggested that Seth Rich was involved in leaking emails to Wikileaks. One of the foremost investigative journalists of his generation, Seymour Hersh, winner of the Pulitzer Prize, has been recorded stating that a senior FBI source read to him the contents of an FBI report documenting email communications between Seth Rich and Wikileaks relating to DNC emails. *See* http://debunkingrodwheelersclaims.net/. Mr. Hersh's account is detailed and highly plausible, and Mr. Hersh has no motive to lie. National security experts such as William Binney maintain that a remote hack of the kind described in the *Report On The Investigation Into Russian Interference in the 2016 Presidential Election* by Special Counsel Robert Mueller (the "Mueller Report") are inconsistent with the metadata on the Wikileaks documents, which, Mr. Binney maintains, must have been locally downloaded, not remotely hacked. *See, e.g.*, https://www.shiftfrequency.com/binney-proves-dnc-not-hacked-by-russia/. The Mueller Report itself does not exclude the possibility of a local download to a thumb drive. *Mueller Report*, Vol. I, at 47.[1]

Nonetheless, the Plaintiff in the Rich Litigation, Seth's older brother, Aaron, alleges that is defamatory to suggest that Aaron was involved in leaking emails to Wikileaks, because, according to Aaron, any possible link between Seth Rich and Wikileaks is a "conspiracy theory." Plaintiff also maintains that he fully cooperated with all law enforcement agencies and that any

---

[1] Mr. Mueller states, without evidence, that it is "false" to suggest Seth Rich was involved in leaking emails. Mueller Report at 48. Mr. Mueller also acknowledges that Wikileaks claims to have "physical proof" of the origin of the leaked emails, but inexplicably fails to interview Julian Assange or evaluate his "proof" and simply writes off the issue with a reference to a CNN article. *Id.* at 49 and 182.

suggestion to the contrary is defamatory. Mr. Butowsky believes the FBI is in possession of material evidence central to these core claims.

First, as discussed, Seymour Hersh has been recorded stating that a senior FBI source read to him the contents of an FBI report documenting email communications between Seth Rich and Wikileaks relating to DNC emails. Second, recent reporting in the mainstream media has indicated that the FBI *did* examine Seth Rich's computer albeit, according to the report, a year after Seth Rich was murdered in connection with a new Russian hacking attempt, this time one that sought to gain access to Seth's electronic accounts. *See* https://www.stitcher.com/podcast/yahoo-news/conspiracyland, Episode 5, 14:21-15:21. Whether Aaron Rich was truthful with the Department of Justice and the FBI in connection with the investigation of his brother's electronic devices is obviously a key issue.  Third, recently disclosed emails show that FBI officials, including the official responsible for opening the Crossfire Hurricane investigation, ***did*** know of and discuss Seth Rich, apparently insisting that the Seth Rich story be "***squashed.***" *See* Exhibit 1. These emails indicate on their face that there must be further communications (as both the visible and the redacted cc's show) relating to Seth Rich in the FBI's possession.

The specific information requested and the relevance of such information is discussed below:

1. Produce all data, documents, records, or communications (electronic or otherwise) created or obtained since January 1, 2016 that discuss or reference Seth Rich or Aaron Rich. This would include, but is not limited to, the following: data, documents, records, or communications regarding any person or entity's attempt to hack into Seth Rich's electronic or internet accounts (e.g., email) after his death.

Mr. Butowsky is seeking (a) the FBI report describing Seth's communications with Wikileaks, together with all internal communications relating to this report, (b) any documents or

communications relating to Aaron Rich generally and (c) documents and communications relating to the FBI's investigation of Seth Rich's computer in response to claims that "Russians" were hacking in to Seth's computer to create new accounts and/or "dump" incriminating data into his email accounts.   The FBI report would contradict a central pillar of Aaron's claims, namely that it is a conspiracy theory to suggest that Seth Rich had any involvement with Wikileaks,[2] while the evidence of the FBI's investigation in Seth's computer will shed light on Aaron's truthfulness in communicating with the FBI since the Department must have interviewed Aaron, as the administrator of his brother's estate, in connection with its investigation.

2. Produce all data downloaded from all electronic devices that belonged to Seth Rich as well as all data, documents, records or communications indicating how the devices were obtained and who was responsible for downloading the information.

To the extent Aaron Rich had physical possession of his brother's electronic devices, it is crucial to know what information the FBI discovered when they finally searched these devices and whether such information is consistent with Aaron's claims. If the FBI did not search these devices, there should be communications explaining why the Department was uninterested in them, particularly when it is no longer disputed that the FBI did conduct an investigation into Seth Rich in the spring of 2017.  *See supra* at 3.

---

[2] It is worth noting how closely Aaron's narrative aligns with the claims made by the anti-Trump intelligence community leadership in the 2016-2108 period and how important it is to both Aaron and this anti-Trump leadership that the "official" narrative not be disturbed. Aaron is represented by two of the most powerful law firms in Washington, Boies, Schiller & Flexner and Willkie, Farr & Gallagher, who have spent hundreds of thousands of dollars in expenses alone attempting to shore up their client's case.

3. Produce all data, documents, communications, records or other evidence indicating whether Seth Rich, Aaron Rich, or any other person or persons were involved in transferring data from the Democratic National Committee to Wikileaks in 2016, either directly or through intermediaries.

The relevance of this information is indicated in the responses to 1 and 2 above and is otherwise self-evident in light of Aaron Rich's claims in the Rich Litigation.

4. Produce all documents, communications, records or other evidence reflecting orders or directions (whether formal or informal) for the handling of any evidence pertaining to Seth Rich's or Aaron Rich's involvement in transferring data from the Democratic National Committee to Wikileaks.

This request seeks to obtain information beyond Peter Stozk's comments that information relating to Seth Rich should be "squashed." If the Department had decided to "squash" information, or if it had determined that certain investigative avenues were not to be pursued, this should not have been left to the initiative of a political operative such as Strozk, but should have been memorialized in guidelines or protocols or should at least have generated substantial internal discussion. The extent to which certain investigative avenues were not explored bears on Plaintiff's assertion that it is defamatory to question the official hacking narrative and the extent to which Aaron did or did not fully cooperate with law enforcement.

5. Produce all documents, records, or communications exchanged with any other government agencies (or representatives of such agencies) since January 1, 2016 regarding (1) Seth Rich's murder or (2) Seth Rich's or Aaron Rich's involvement in transferring data from the Democratic National Committee to Wikileaks.

Mr. Butowsky has obtained information that the National Security Administration ("NSA") has records of communications relating to Seth Rich and Aaron Rich. Mr. Butowsky is seeking to understand whether this information came from the FBI or was shared with the FBI so that he can obtain the fullest picture of Aaron Rich's involvement in leaking DNC information to Wikileaks. In addition, the recently released FBI emails relating to Seth Rich strongly indicate that FBI agents were in communication with other agencies about Seth Rich (and possibly Aaron

5

Rich). Defendants need all relevant inter-agency communications relating to Seth and Aaron Rich to ensure that they can obtain a complete picture of the intelligence community's overall views of non-Russian military hacking theories, how such theories were analyzed, and why FBI/CIA leadership in 2016 discarded these theories.

6. Produce all recordings, transcripts, or notes (e.g., FD-302 forms) reflecting any interviews of Aaron Rich or any other witness regarding (1) the death of Seth Rich, (2) the transfer of data from the Democratic National Committee to Wikileaks, or (3) any attempt to hack into electronic or internet accounts (e.g., email) belonging to Seth Rich.

We are interested in determining to what extent the Department interviewed Aaron about his knowledge of the leaking of information to Wikileaks or, if it determined that it did not need to interview Aaron on this matter, how it came to that conclusion. We are also interested, among other things, in any interview notes or 302's relating to Aaron's knowledge of the alleged hack into his brother's accounts and devices so that Aaron's statements to Defendants can be reconciled with his statements to law enforcement.

7. Produce all data, documents, records or communications obtained or produced by the FBI's Computer Analysis and Response Team ("CART") or any other FBI cyber unit regarding Seth Rich and/or Aaron Rich.

The Magistrate Judge in a separate litigation has already determined that the FBI failed to search in the places most likely to contain information relating to Seth and Aaron Rich, notably the CART department and the Washington Field Office. *See Butowsky v. Folkenklik*, 4:18-cv-442, Dkt. 80, Order dated December 13, 2019 ("A review of Mr. Hardy's Declaration indicates the FBI did not search for records regarding Seth Conrad Rich in CART or in the FBI's email system in its WFO. Nor is there any indication before the Court the FBI searched for any of the other requests contained in the Touhy request (*i.e.*, regarding Aaron Rich)."). These locations must be thoroughly searched for responsive information.

8. Produce all data, documents, records or communications (including texts or emails) that reflect any meetings or communications from July 10, 2016 until July 10, 2017 between former FBI Deputy Director Andrew McCabe and any and all of the following: (1) Seymour "Sy" Hersh (born on or about April 8, 1937); (2) Washington, D.C. Mayor Muriel Bowser; and/or (3) former Democratic National Committee Interim Chairwoman Donna Brazile.

As discussed, Mr. Hersh claims that a senior FBI source read him the contents of the FBI report relating to Seth Rich. We have not been able to determine the identity of the source, and Mr. Hersh's deposition is still being scheduled, but we have reason to believe that the senior official is Andrew McCabe. According to Michael Issikoff, Andrew McCabe told Yahoo News that he had "personally" reached out to his agents and had been told there was "no there there" in connection with a separate theory that Seth's death was related to his leaking of emails. Conspiracyland Podcast, Episode 5, 15:05-15:14. This may or may not be true, but it is consistent with Mr. Hersh's stated view that Seth Rich's murder was unrelated to his involvement in leaking emails to Wikileaks. The carefully worded denial elicited by Issikoff on the ConspiracyLand podcast calls out for further review and analysis of all communications between Mr. McCabe and Mr. Hersh.

With respect to Donna Brazile, Ms. Brazile was not only interim Chairwoman of the DNC, but was also obsessed with the murder of Seth Rich, dedicating her bestseller, *Hacks*, to Seth Rich and referencing Seth over 30 times in her book. Any communications with Mr. McCabe could illuminate the extent to which FBI leadership evaluated Seth Rich's involvement in leaking emails to Wikileaks.

As to Ms. Bowser, she is and was at all relevant times the Mayor of D.C. Mr. McCabe would have had little occasion to correspond with Ms. Bowser outside the context of the Russian hacking investigation and we believe that Ms. Bowser was in direct communication with Aaron Rich. Any discussions Mr. McCabe had with Ms. Bowser relating to Seth and Aaron Rich would

thus be relevant to assessing the brothers' role in leaking DNC emails and Aaron's truthfulness in recounting his version of events.

9. If any of the items or things requested in this subpoena were discarded or destroyed, produce all data, documents, records or communications reflecting that fact.

If the Plaintiff destroyed any evidence relating to his brother, we need to review all correspondence relating to any such destruction to determine whether the Department was aware of and approved of such destruction, and if so why. One of the allegations in Plaintiff's case is that it was defamatory to suggest that Aaron interfered with "investigations." While it is unclear what "investigations" were being referred to in connection with the allegedly defamatory statements, if Aaron destroyed evidence without the knowledge of the FBI, this obviously undercuts one of Aaron's central claims and is of great importance in assessing Aaron's credibility. If the FBI approved any destruction of evidence, this raises questions about the integrity of the FBI's investigation and any conclusions on which Plaintiff relies.

As you know, earlier this year, President Donald Trump gave Attorney General William Barr the authority to declassify documents related to allegations that the President or his aides "colluded" with Russia. *See* Armonstrong Williams, "Giving Barr Declassification Authority is a Needed Ray of Sunshine (https://www.dailysignal.com/2019/06/06/giving-barr-declassification-authority-is-a-needed-ray-of-sunshine/). If any of the requested information is classified, we respectfully request that it be declassified pursuant to General Barr's authority. In addition, if your search for responsive documents reveals evidence of malfeasance or irregularities in the Department's investigation of alleged Russian collusion, or investigative theories that were improperly ignored or disregarded, we respectfully request that such information be provided immediately to the Attorney General and the U.S. Attorney for Connecticut. As you know, the

Inspector General has uncovered widespread and serious misconduct in the Department's pursuit of FISA warrants to spy on Carter Page and the Trump campaign. *See* Michael E. Horowitz, Review of Four FISA Applications and Other Aspects of the FBI's Crossfire Hurricane Investigation, (FBI agents found guilty of "intentionally withholding information", p. 399 failing to provide "satisfactory explanations for. . .missing information," p. xiii, "factual misstatements," 377, "errors, omissions. . .mischaracterizations, id. "providing inaccurate and incomplete information," id.). Any such misconduct in the Russia investigation, including the deliberate preparation of "incomplete" information or the intentional "withholding" of information such as that sought to be "squashed" by Mr. Strozk, would be highly relevant to the Attorney General's ongoing investigation.

       Thank you for your consideration. Please do not hesitate to contact me if you have any questions on the foregoing or if I can provide you with any further information.

                                                   Very truly yours,

                                                   */s/ Eden P. Quainton*_____
                                                 EDEN P. QUAINTON