UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AARON RICH<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>EDWARD BUTOWSKY,<br>MATTHEW COUCH, and<br>AMERICA FIRST MEDIA,<br><br>　　　　　　　Defendants. | Civil Action No. 1:18-cv-00681-RJL<br><br>Hon. Richard J. Leon |

**PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION TO REMEDY THIRD-PARTY LARRY JOHNSON'S REFUSAL TO ANSWER QUESTIONS AND OPPOSITION TO MR. JOHNSON'S CROSS MOTION FOR A PROTECTIVE ORDER**

MICHAEL J. GOTTLIEB (D.C. Bar No. 974960)
WILLKIE FARR GALLAGHER LLP
1875 K Street NW, Washington, DC 20006
Tel: (202) 303-1442 / Fax: (202) 303-2000
mgottlieb@willkie.com

JOSHUA P. RILEY (D.C. Bar No. 1026900)
MERYL C. GOVERNSKI (D.C. Bar No. 1023549)
BOIES SCHILLER FLEXNER LLP
1401 New York Ave NW, Washington DC 20005
Tel: (202) 237-2727 / Fax: (202) 237-6131
jriley@bsfllp.com
mgovernski@bsfllp.com

On March 27, 2020, Plaintiff Aaron Rich filed a Motion to Remedy Third Party Larry Johnson's Refusal To Answer Questions During His Deposition, Including To Impose Rule 37 Sanctions On His Counsel. Dkt. 172-1 ("Motion" or "Mot."); Dkt. 171 (public). On May 4, 2020, Mr. Johnson filed an Opposition to the Motion and a Cross-Motion for Protective Order and Sanctions. Dkt. 188, 189, 190 (the "Opposition" or "Opp." or "Cross-Motion").[1] In response to the Opposition, Plaintiff respectfully submits this Reply in Support of the Motion and Opposition to Mr. Johnson's Cross-Motion.

## INTRODUCTION

Mr. Johnson attempts to divert attention from the clear facts and law at issue in Plaintiff's Motion by raising inapposite arguments about Defendants' resources, immaterial changes to the Federal Rules, incorrect legal propositions, threats of a parade of horribles, and feeble efforts to distinguish the relevant case law. But the Opposition does not cite any legal support for Mr. Johnson's own actions and instead spends more than a dozen pages erecting and then burning down a strawman that falls apart on even the slightest scrutiny. Specifically, Mr. Johnson's entire argument depends on the misrepresentation that Plaintiff sought to depose Defendants' expert witness on the subject of his expert report. The problem with this claim is that nothing in the record supports it. The undisputed facts are that: (1) it was Defendant Butowsky, not Plaintiff, who designated Mr. Johnson as a *fact* witness about "his investigation of Seth Rich's murder and *communications with Mr. Butowsky* regarding the same;" and (2) Plaintiff sought testimony

---

[1] The due date for Mr. Johnson to file an opposition to the Motion tolled on April 10, 2020. Mr. Johnson missed that deadline, in what marks a long string of missed deadlines by Defendants and their counsel. Five days after missing that deadline, counsel for Mr. Johnson and the Defendants filed a "notice for request for clarification" in which he asserted many of the same defenses as he now makes in the Opposition and asked whether they could file motions. Although Mr. Johnson did not seek leave to file a belated Opposition, the Court ordered he file a response by May 4, 2020. Dkt. 182.

unquestionably relevant to that disclosure; and (3) Mr. Johnson's counsel, Mr. Quainton, instructed him repeatedly not to answer broad categories of questions on the topics on which Defendant Butowsky admits Mr. Johnson is a percipient witness and about which Mr. Johnson has personal knowledge pre-dating his retention as an "expert" in this case.

The governing law is just as clear as the facts. Once Defendant's strawman is set aside, the Opposition cannot distinguish the binding case law in this Circuit and elsewhere, which holds that Rule 26 permits the deposition of an individual designated as both an expert and fact witness on facts known or opinions held prior to his being retained, or on which he or she did not acquire or develop in anticipation of litigation or for trial. *See* Motion at 14-16 (citing *Marine Petroleum Co. v. Champlin Petroleum Co.*, 641F.2d 984, 989 (D.C. Cir. 1979)). Mr. Johnson cites no contrary authority.

Mr. Johnson cannot escape, and the Opposition does not justify, the impropriety of instructing a witness not to respond to permitted lines of questions during a deposition. *See infra* Section A(I). Any additional expenses that resulted in that unjustified instruction should be borne by counsel, especially considering Mr. Johnson is unable to provide a single case to support his novel reading of the relevant rule. *See infra* Section A(II). Plaintiff's motion should therefore be granted. For the same reasons, Mr. Johnson's attempts to seek fees against Plaintiff's counsel is unjustified, as is his untimely attempt to seek a protective order, and both should thus be denied. *See infra* Sections B(I)-(II).

Finally, before addressing the merits, Plaintiff is compelled to respond to Defendant's latest invocation of David and Goliath to justify Defendants' inability to comply with the same federal rules that apply to every other litigant. In virtually every filing, and again here, the Defendants chastise Plaintiff for having "vastly superior resources," "rich lawyers," and an "army" at his disposal. Opp. at 1-2, 6. Aaron Rich is one individual of modest means, who has relied upon pro

bono representation in order to sustain this litigation against a group of defendants, including one (Defendant Butowsky) who is allegedly a multi-millionaire who manages billions of dollars in assets, and whose legal expenses are being paid by an insurance policy. But what Counsel for Defendant Butowsky has concealed from this Court is that Defendant Butowsky has amassed his own army of attorneys and litigation support staff, as evidenced by a privilege log that spans 62 pages and includes hundreds of communications with various attorneys, including not just Eden Quainton (who represents the Defendants and Mr. Johnson), Ty Clevenger, Steven Biss, and potentially others, as well as retained investigators, experts, and public relations and communications advisers. (As relevant to this Motion, the privilege log lists more than one hundred communications that include *inter alia* Mr. Johnson and other so-called third-party "experts"). Defendant Butowsky's resources have enabled him to bring offensive litigation, represented by counsel, in at least six cases since April 2018, against nearly 50 defendants. All of this, of course, leaves aside that Defendant Butowsky invited all of this litigation by repeatedly accusing Aaron Rich of engaging in misconduct despite having no evidence, of any kind, to substantiate his allegations.

### A. ARGUMENT IN REPLY TO THE OPPOSITION

I. **Mr. Johnson's Opposition Fails To Provide Any Basis To Instruct Mr. Johnson Not To Answer Questions About Facts Known Or Opinions Held Prior to Anticipation of Litigation.**

The Opposition has no answer for, and therefore concedes, that Federal Rule of Civil Procedure ("Rule") 30 authorizes an attorney to instruct a witness not to answer questions *"only when necessary to preserve a privilege"* and that, here, Mr. Johnson's refusal to answer questions was ███████████████ *Compare* Mot. at 12-13 (citing cases), *with* Opp. at 14-15. Instead, the Opposition confirms that the sole basis for Mr. Johnson refusing to answer Plaintiff's questions during his deposition is Rule 26(b)(4)(A), which states that when a party has designated

a testifying expert that must under the Rule provide a report, the expert's "deposition may be conducted only after the report is provided." *Id.*; Opp. at 9, n.1; Mot. at 11. The Opposition's sole basis, therefore, is the non-controversial proposition that a testifying expert must serve a report prior to answering questions about the expert opinions contained in his report. *See* Opp. at 3.

The problem with Defendant's theory is that it involves a fact pattern that is not before the Court in this Motion, which relates to designated experts *who are also fact witnesses*. The Opposition concedes (as it must) that it is "self-evident," "obvious and not in dispute" that an individual who happens to also be an expert "may be deposed separately" on certain "factual knowledge." Opp. at 9. But Mr. Johnson asserts that the scope of that "factual knowledge" is limited to topics *"unrelated* to his expert report." *Id.* (emphasis added); *see also id.* at 7 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (emphasis added)). The Opposition fails to point to any textual support in Rule 26 or to cite to any case law that supports the proposition that a witness can refuse to answer any questions about factual matters in his personal knowledge if they bear some relation to or fall within the scope of a future contemplated expert report. In spite of Plaintiff's multiple requests for such support and Defendants' counsel's promise that he would provide "hundreds" of cases, Mr. Johnson has yet to provide a *single* case—even after stating that he "searched the entire Westlaw federal data base for" relevant case law and that his position is "obvious" (an adjective he uses seven times in the Opposition)—that justifies the limitations he has unilaterally inserted into Rule 26. *See* Opp. Ex. 4; Dkt. 172-2 at 196:1 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Opp. at 13. As a result, Mr. Johnson's argument amounts to a request for the Court to follow a novel reading of Rule 26, despite a complete lack of any supporting text or case law.

In contrast to the absence of any legal support for Mr. Johnson's argument, Plaintiff's argument is supported by both binding and persuasive case law that directly contradicts Mr. Johnson's invented version of Rule 26. *See* Mot. at 14-16. The United States Court of Appeals for the District of Columbia has held that dual fact/expert witnesses must testify to *any* facts or opinions that were not "acquired or developed in anticipation of litigation or for trial." *Marine Petroleum Co.*, 641 F.2d at 989 ("Rule 26(b)(4) is in terms confined in operation to quests for facts known and opinions held by experts, acquired or developed in anticipation of litigation or for trial. One who, though an expert, derives his information simply as 'an actor or viewer with respect to transactions or occurrences that are part of the subject matter of the lawsuit should be treated as an ordinary witness." (alterations and citations omitted)). The controlling test in this Circuit is not whether a witness' factual knowledge is "unrelated" to his expert report, it is whether he "acquired" those facts or "developed" those opinions "in anticipation of litigation or for trial." *Id.*

Applying the *Marine Petroleum* test here necessitates compelling Mr. Johnson to answer Plaintiff's questions, even accepting *arguendo* that they may bear some relation to his future report. Mr. Johnson *admits* that he refused to answer a number of the questions he that were based on "facts that were not acquired or developed in anticipation of litigation" solely because those facts "will be relied on in his expert report," which is plainly not the operative question. Opp. at 13. Mr. Johnson began to acquire "factual knowledge" about Seth Rich and the hacking of the Democratic National Committee (DNC) no later than late 2016/early 2017—more than a year before Mr. Rich filed this lawsuit or Mr. Clevenger ███████████████████████ ████████████████████████████████████████████████████████████ ███████ Mot. at 3-6. Throughout 2017, Mr. Johnson publicly opined that the DNC hack was a leak, not a hack, by a DNC "insider." *Id.* There can be no credible argument, and the Opposition does not attempt to argue, that Mr. Johnson's activities in 2016 and 2017 were "in anticipation of

6

litigation or for trial," which would be the only colorable basis for determining they fall within the purview of Rule 26 at all. As a matter of law, Plaintiff has the right to depose Mr. Johnson on the activities in which he engaged, the persons with whom he communicated, and the factual basis he acquired on any relevant topics, except for the limited subset of activities, communications, and factual understanding he developed in anticipation of litigation. While Mr. Johnson accuses Plaintiff of acting in bad faith to get a free "sneak peek" into the Defendants' trial strategy, he simultaneously articulates one of the reasons why Plaintiff is entitled to probe Mr. Johnson's factual knowledge: that it is Plaintiff's burden to prove the falsity of Defendant's statements. *See* Opp. at 2.[2] The basis for Mr. Johnson's public statements about the DNC hack being an "inside job" and the content of any "communications" with Defendant Butowsky or related third-parties about that topic and Seth Rich—on which Defendant Butowsky has indicated he intends to rely to defend his false statements about Plaintiff by listing Mr. Johnson as a fact witness in his initial disclosures—goes squarely towards Plaintiff's case. Plaintiff's ability to seek discovery on topics directly relevant to Plaintiff's burden of proof does not turn on defense counsel's unilateral decisions about whether certain statements and topics *may be related* to a potential future expert report.

Mr. Johnson does not even attempt to address Plaintiff's argument that Mr. Johnson's proposed reading of Rule 26 would introduce a bullet-proof means for parties to block depositions of key fact witnesses. *See* Mot. at 16. As Plaintiff noted in his Motion, if the Court were to adopt Mr. Johnson's reading, parties (including the Defendants here) could shut down all questioning of fact witness—including those listed on their initial disclosures *as fact witnesses*—simply by

---

[2] Plaintiff disagrees with the factual and legal characterizations in the Opposition regarding what Plaintiff must "demonstrate" in order to meet his burden, but need not address the inaccuracies here because they are not dispositive of or relevant to the issue before the Court.

"retaining" the witness irrespective of whether he or she ultimately serves as an expert witness, and then declare the facts and opinions known as related to the future report, and Mr. Johnson's counsel has done here. Mr. Johnson has made clear that he does not know if he will submit an expert report, Mot. 9, n.9, and Plaintiff is unaware of anything in the Federal Rules of Civil Procedure that would require him to do so simply because Defendants' counsel says he might. As a result, there is a significant risk that Plaintiff will be entirely unable to depose Mr. Johnson on dozens of communications and articles that all pre-dated Mr. Johnson's retention on this matter, or were written and developed for purposes outside of this litigation. The injustice of this outcome is made clear by the fact that if Defendant Butowsky had not hired Mr. Johnson as an expert, Plaintiff would *still* have deposed Mr. Johnson *and asked the exact same questions he is seeking to ask in his Motion*. In fact, Defendant subpoenaed Mr. Johnson for a deposition prior to having any knowledge of his designation as an expert. Mot. at 6-8. In turn, the only conclusion that remains is that Mr. Johnson is seeking to give Defendant Butowsky the right to limit otherwise appropriate discovery by simply stating that he *may* use a fact witness as a testifying expert. This cannot be. Manipulating Rule 26(b)(4) to shield proper factual discovery of anyone a party decides to anoint as "retained" is a far cry from the purpose of the rule.

Mr. Johnson's attempt to distinguish the binding and persuasive cases cited by Plaintiff fails. Mr. Johnson argues that the Court should disregard two cases because they pre-date certain amendments to Rule 26, yet provides no explanation as to why those amendments have any bearing on the holdings of the cases. Opp. at 9-12.[3] *Brandstetter* and *Marine Petroleum Co.* hold that where a witness is both a fact witness and an expert witness, Rule 26's protections against certain expert discovery only cover "information developed and opinions framed . . . in anticipation of

---

[3] Plaintiff raised the 2010 amendments to Rule 26 in the Motion, and explained why the changes to Rule 26(b)(4) further support its reasoning. *See* Mot. at 14 n. 12.

litigation." *Brandstetter v. National R.R. Passenger Corp.*, 1987 WL 12766 *2 (D.D.C. 1987); *Marine Petroleum Co.*, 641 F.2d at 989. None of the amendments to Rule 26 have any bearing whatsoever on this issue, as is shown by the fact that the remaining cases Plaintiff cites for that same principal were all decided subsequent to the amendments referenced by Mr. Johnson.

Although it references Rule 26 amendments from 1980, 1983, 1993, 2000, 2007, and 2010, the Opposition only discusses the 1993 Amendment as establishing that testifying experts may be deposed after they submit their expert report. Opp. at 10. None of the amendments explicitly addressed the relevant issue here, however: namely what topics are appropriate under the Federal Rules during a deposition of a dual fact/expert witness. The 2010 amendment is the only one arguably applicable and, as discussed in the Motion, that amendment cuts against Mr. Johnson's position. *See* Mot. at 14 n. 12. As the Advisory Committee Notes illustrate, Rule 26(b)(4) was amended in 2010 "to provide work-product protection against discovery regarding draft expert disclosures or reports and--with three specific exceptions--communications between expert witnesses and counsel." Fed. R. Civ. P. 26 (Advisory Committee Notes 2010 amendments). In other words, the 2010 Amendment is consistent with the case law Plaintiff cites to advance the position that Rule 26 protects only information known or opinions formed prior to anticipation of litigation. *See e.g., Chevron Corp. v. Weinberg Grp.*, 286 F.R.D. 95, 100 (D.D.C. 2012) (ordering the production of certain expert materials that "cannot possibly be prepared 'in anticipation of litigation or for trial,' as required for protection under the Federal Rules." (citing Fed.R.Civ.P. 26(b)(3)(A)).

Mr. Johnson's remaining attempts to distinguish the relevant case law are equally misplaced. Mr. Johnson argues that both *Marine Petroleum* and *Sprenger Lang Foundation* are "completely different" from the case at hand, because those cases dealt with a non-testifying expert that did not need to submit a report. Opp. at 10-11. But the Court in *Marine Petroleum* specifically

noted that non-testifying experts require *more* protections against discovery under the Federal Rules than those, like Mr. Johnson, who will testify and submit a report. *Marine Petroleum Co.*, 641 F.2d at 990. In other words, *Marine Petroleum* and *Sprenger Lang Foundation* stand for the proposition that a non-testifying expert—a witness who warrants even more protections than Mr. Johnson should receive as a potential testifying expert—does *not* receive Rule 26 protections if he is testifying to their experience outside of being retained as an expert. *See Am. Prop. Const. Co. v. Sprenger Lang. Found.*, 274 F.R.D. 1, 5 (D.D.C. 2011); *Marine Petroleum Co.*, 641 F.2d at 990.

Finally, Mr. Johnson attempts to distinguish additional case law Plaintiff cites[4] because in those cases the parties were offering opinion testimony for experts who were not actually retained. But whether an expert is formally retained is of no moment to the holdings of those cases: hybrid fact/expert witness must testify as to any facts or opinions he obtained prior to anticipation of litigation. *Downey*, 633 F.3d at 7 ("[W]here, as here, the expert is part of the ongoing sequence of events and arrives at his causation opinion during treatment, his opinion testimony is not that of a retained or specially employed expert."); *Sununu*, No. CIV.A. 981192, 2010 WL 3927601, at *2 (holding that allowing a hybrid fact/expert witness to "give opinion testimony without permitting defendant to explore the basis for those opinions would be to ignore the application of Rule 26 as to not just expert witnesses but as to all witnesses").

In sum, the Opposition fails to justify or provide a single case supporting the test Mr. Johnson's counsel invented, namely that a party can unilaterally obstruct testimony of any fact witness simply by designating him as an expert and objecting to any question that might bear some relation to a hypothetical future report. Not only does the law not support such an abuse of the

---

[4] *Downey v. Bob's Disc. Furniture Holdings, Inc.*, 633 F.3d 1, 7 (1st Cir. 2011) and *Sununu v. Philippine Airlines, Inc.*, No. CIV.A. 981192, 2010 WL 3927601, at *2 (D.D.C. Oct. 4, 2010) Opp. at 10-11.

litigation process, the law of this Circuit also categorically rejects such an approach by holding that a witness designated as an expert is simply like any other "ordinary" witness as to facts acquired and opinions develop prior to the anticipation of litigation. The Opposition provides this Court with no basis to hold differently. Plaintiff's Motion should, therefore, be granted.

### II. Mr. Johnson's Opposition Fails to Address Plaintiff's Argument for Fees and Fails to Provide Justification for Fees Against Plaintiff's Counsel

Mr. Johnson's Opposition concludes that there "is absolutely no basis for an award of sanctions under Rule 37 against Mr. Johnson's counsel" and that "[o]bviously, sanctions should not be awarded," Opp. at 14, based on (once again) his own legal principle that ignores facts, law, and the Federal Rules. Mr. Johnson offers the circular argument that Mr. Johnson's counsel was "substantially justified" in violating Rule 30 because "reasonable people" could disagree about his reading of Rule 26, citing as support the Supreme Court opinion *Pierce v. Underwood*, 487 U.S. 552 (1988). Opp. at 14. *Pierce* is entirely irrelevant to the question of Rule 37 sanctions (and, in fact, does not even cite that rule), and instead is an administrative law opinion that addresses when an agency is required to pay attorney fees pursuant to the Equal Access to Justice Act, which mandates fee shifting unless the agency was "substantially justified." *Pierce*, 487 at 556-57.[5] Apart from rhetorical hyperbole and the wrong legal test, the Opposition provides no argument against the application of the actual legal rules that authorize (Rule 30) and mandate (Rule 37) the imposition of sanctions: sanctions are warranted where, as here, counsel impeded, delayed, and frustrated Plaintiff's fair examination, with no basis under the rules or case law. *See* Motion at 17-

---

[5] Even if this were the right test (which it is not), Mr. Quainton's instruction was not substantially justified based on Rule 30, Rule 26, and the binding law of this Circuit, as discussed *supra*. But even more fundamentally, the Opposition provides no defense for why Mr. Quainton was substantially justified for instructing Mr. Johnson not to answer rather than, as Plaintiff's counsel suggested at the deposition, permitting Mr. Johnson to answer the questions and later challenging their use if necessary.

19 (citing cases). The Opposition also does not address that Mr. Quainton's instruction to Mr. Johnson follows his similar frivolous instructions to Defendant Matthew Couch, which necessitated a motion to compel for which Plaintiff has not received fees or costs despite Rule 37's mandatory language. *See id.* at 19.

The only additional argument that Mr. Johnson makes is to recast Plaintiff's Motion as only "quibbling" with the fact that "Mr. Johnson's counsel did not expressly reference Rule 30(d)(3)[.]" Opp. at 13-14. Even though it is true that ████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████, sanctions are not warranted because of Mr. Quainton's lack of citation to Rule 30, it is his lack of compliance with the plain text of Rule 30, for which the Opposition offers no justification. To the extent that Mr. Johnson is arguing that his refusal to answer questions was appropriate under Rule 30(d)(3), that rule only applies when at "*any time during a deposition*," a party moves to terminate or limit a deposition "that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party." Fed. R. Civ. Proc. 30(d)(3) (emphasis added). Mr. Quainton cannot invent a post-hoc justification for his conduct when the text of the rule (not Plaintiff) mandates moving pursuant to Rule 30(d)(3) *during the deposition* and Mr. Quainton neither terminated the deposition nor, as discussed *infra*, sought a protective order at any time prior to filing the Opposition. Even if Rule 30(d)(3) was a basis to instruct Mr. Johnson not the answer, it still would not insulate Mr. Quainton from sanctions because, as discussed immediately *infra*, questioning a dual fact and expert witness about facts or opinions that predate the witnesses contemplation of litigation neither evinces "bad faith" nor "unreasonably annoys, embarrasses, or oppresses the deponent or party." Fed. R. Civ. Proc. 30(d)(3).

## B. ARGUMENT IN OPPOSITION TO CROSS MOTION

### I. The Court Should Reject Mr. Johnson's Cross Motion For Sanctions As Baseless.

The Opposition asks this Court to use its "inherent power to impose sanctions" on Plaintiff's counsel for having the "audacity" to ask this Court to "order Mr. Johnson to *__answer all questions regarding opinions or facts that predated April, 2018__*," which the Opposition calls "abusive" and "patently over-reaching." Opp. at 15 (emphasis in original).[6] Mr. Johnson is correct that Plaintiff's counsel is asking this Court to order Mr. Johnson to answer all questions "based on facts known or opinion[s] held *prior to* April 2018" **because that is what the Plaintiff is entitled to ask and what Mr. Johnson is obligated to provide** *as a matter of law*. Moving this Court to compel Mr. Johnson to provide answers to which Plaintiff is entitled under the binding law of this Circuit in order to bear his burden of proof and advance his case is the purpose of discovery is the polar opposite of the "bad faith, vexaious[], wanton[], or [] oppressive reasons," pursuant to which a Court is permitted to exercise its inherent authority to sanction. *See Chambers*, 501 U.S. at 45 (attorney fees where a court finds "that fraud has been practiced on it, or that the very temple of justice has been defiled" or that the party has acted in "bad faith by delaying or irrupting the litigation or by hampering enforcement of a court order"); *see also Shepherd v. Am. Broad. Companies, Inc.*, 62 F.3d 1469, 1478 (D.C. Cir. 1995) (to award attorney fees pursuant to inherent authority "the district court must find clear and convincing evidence of the predicate misconduct").

It was Defendant Butowsky's decision to engage an expert that Mr. Butowsky himself had disclosed as a percipient fact witness in his initial disclosures, which admitted that Mr. Johnson had performed a so-called "investigation" into Seth Rich and had communication with Defendant

---

[6] The Cross Motion does not invoke any rule, including Rule 30, in support of its motion for sanctions and relies, solely, on the Court's inherent power, as articulated in *Chambers v. Nasco, Inc.*, 501 U.S. 32, 45–46 (1991).

13

Butowsky on the same topic. It was Defendant Butowsky's decision to engage an expert who Mr. Butowsky knew had acquired facts and formed opinions long prior to this litigation—and, in fact, that decision was likely *because of* the fact Mr. Johnson publicly subscribed to "facts" and "opinions" that mirrored his own narrative about Plaintiff and his family. Defendant Butowksy is free to implement whatever litigation strategy he chooses, but what he cannot do is what he is attempting to do here: use his own decision to designate a fact witness as an expert as a sword and a shield to discovery, and to *punish Plaintiff* for seeking the discovery that the rules and law expressly permit.

Mr. Quainton uses words such as "audacious" and "abusive" to describe Plaintiff's motion, yet having been pressed in person at the deposition, after in correspondence with counsel, and now in submitted motions, Mr. Quainton has failed to identify a single case, from a single court, anywhere in the United States, that has quashed a subpoena (or even granted a protective order) to a witness who a Defendant has designated as an expert *after first designating him as a fact witness*. Plaintiff's counsel made clear at the deposition, and in correspondence that followed it, that Plaintiff would file a motion for fees and costs if Mr. Johnson did not change his position, yet he refused to do so and effectively dared Plaintiff to file this motion. Mr. Johnson is correct that Plaintiff's counsel has been required to "divert attention away from the real issues in the case" and expend its own and the Court's time and resources by filing motion that he never should have had to file. Opp. at 16. But it is the *Defendants'* "bad faith, vexaious[], wanton[], or [] oppressive" conduct that has necessitated Plaintiff's discovery-related motions, all of which the Court has either granted in whole or part (apart from those on which the Court has not yet ruled).[7] In contrast

---

[7] *See*, Dkt. 63 (motion to compel Butowsky to respond to interrogatories), Dkt. 68 (Motion to compel Butowsky to respond to RFPs); Dkt. 71 (motion to compel Couch and AFM); Dkt. 75 (hearing granting motions); Nov. 4, 2019 (denying Couch motion for reconsideration); Dkt. 93 (pending motion for sanctions against Butowksy); Dkt. 95 (motion to enforce Couch); Dkt. 133

to Plaintiff's argument for why Mr. Quainton should bear the cost related to the Motion—an argument that is ground in facts and law—the Court should reject the Cross Motion for sanctions as baseless as a matter of fact and law.

### II. Mr. Johnson's Cross Motion For a Protective Order Is Untimely, Unjustified, and Unnecessary.

There is no factual or legal reason why the Court should grant Mr. Johnson a protective order. *First*, the Cross Motion is untimely. Mr. Johnson has known about Plaintiff's efforts to depose him since January 6, 2020, when Plaintiff first served him with a deposition subpoena. Mot. at 6. At no point, between January 6, 2020 and the date of the deposition did Mr. Johnson seek to limit the deposition to topics that Mr. Johnson's counsel deemed "unrelated" to an expert report that does not yet exist—to be clear, Mr. Johnson did not insist upon any agreement as to topics prior to sitting for his deposition, nor did Mr. Johnson file any timely motion for a Protective Order in advance of the deposition. That is unsurprising—up until the deposition itself, Mr. Johnson had made clear that he was not even sure if a report would ever be submitted. Mot. at 9, n.9. Mr. Johnson had two months prior to the rescheduled deposition to seek a protective order or move to quash—including at the Court hearing which occurred the day before the deposition. Instead, Mr. Johnson has waited *two months after* the deposition took place to file his Cross Motion and now attempts to cast his objection as one designed to target harassment during the deposition. This attempt at bootstrapping should be rejected, as it is plainly untimely. *See Cason-Merenda v. Detroit Med. Ctr.*, No. CIV.A. 06-15601, 2008 WL 2714239, at *1 (E.D. Mich. July 7, 2008) ("[T]he provisions of Fed.R.Civ.P. 26(b)(2)(B) and 26(c) plainly contemplate that a motion for

---

(order re same); Dkt 104 (motion to deem certain RFAs admitted); Dkt. 151 (order denying Couch reconsideration and granting Dkt. 104 in part); *see also* Dkt. 52 (motion for anti-suit injunction); Dkt. 175 (order on Dkt. 52)).

protective relief (including cost shifting) is to be brought before the court *in advance* of the undue burden, cost or expense from which protection is sought.").

*Second*, the Cross Motion is unjustified. Mr. Johnson's Cross Motion effectively asks for permission to assert the same baseless instruction that necessitated the Motion in the first place: limiting Mr. Johnson's deposition to the topics his counsel unilaterally deems will be "unrelated" to Mr. Johnson's potential future report. That is not the law, and the Cross Motion provides no basis for why the Court should ignore binding precedent for Mr. Johnson.

Mr. Johnson's last ditch effort to avoid having to answer questions under oath is to trot out a parade of horribles that would result from allowing Plaintiff to finish his deposition. But Mr. Johnson's protests also provide no reason to justify a protective order. Mr. Johnson has not explained how Plaintiff's questions regarding the communications and statements he has made *prior to* even being aware of this litigation would make it so Mr. Johnson is "unable to prepare his expert report in the manner provided for in the rules" or why it would mean "[n]o expert could ever rely on the rule if he had any knowledge of any factual matter that would subject him to deposition on matters of fact." Opp. at 15. Defendant Butowsky could have, but chose not to, engage as an expert a witness whom he did not list on his initial disclosures as a fact witness, or who acquired facts and formed opinions prior to the anticipation of litigation. Even accepting *arguendo* that Mr. Johnson's dual hat causes some remote prejudice, that is Defendant Butowsky's cross to bear for choosing Mr. Johnson as an "expert."

*Third*, the Cross Motion is unnecessary. If the Court denies Plaintiff's motion, the instructions will stand and Plaintiff will be unable to ask Mr. Johnson the questions that necessitated the Motion. If the Court grants Plaintiff's motion, then a protective order would be pointless and directly contrary to that order.

For the foregoing reasons, Plaintiff respectfully moves this Court to enter the proposed order included with his Motion, and to deny Mr. Johnson's Cross Motion.

DATED: May 11, 2020

Respectfully submitted,

*/s/ Michael J. Gottlieb*
MICHAEL J. GOTTLIEB (D.C. Bar No. 974960)
WILLKIE FARR & GALLAGHER LLP
1875 K Street NW
Washington, DC 20006
Tel: (202) 303-1000
Fax: (202) 303-2000
mgottlieb@willkie.com

JOSHUA P. RILEY (D.C. Bar No. 1026900)
MERYL C. GOVERNSKI (D.C. Bar No. 1023549)
BOIES SCHILLER FLEXNER LLP
1401 New York Ave NW
Washington, DC 20005
Tel: (202) 237-2727
Fax: (202) 237-6131
jriley@bsfllp.com
mgovernski@bsfllp.com

***Attorneys for Plaintiff Aaron Rich***

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that on May 11, 2020, the foregoing document was filed through the CM/ECF system and thereby served electronically on counsel for Defendant Edward Butowsky, and Defendant Matthew Couch. A courtesy copy of the foregoing document also was emailed to their counsel, Eden Quainton, at equainton@gmail.com. Mr. Quainton has agreed to convey served and filed documents to Defendant America First Media through Defendant Couch as necessary.

Dated: May 11, 2020

/s/ *Michael J. Gottlieb*
MICHAEL J. GOTTLIEB (D.C. Bar No. 974960)
WILLKIE FARR & GALLAGHER LLP
1875 K Street NW
Washington, DC 20006
Tel: (202) 303-1000
Fax: (202) 303-2000
mgottlieb@willkie.com