# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AARON RICH,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>EDWARD BUTOWSKY,<br>MATTHEW COUCH, and<br>AMERICA FIRST MEDIA,<br><br>　　　　　Defendants. | Civil Action No. 1:18-cv-00681-RJL<br><br>Hon. Richard J. Leon |

## REPLY MEMORANDUM IN SUPPORT OF MOTION OF
## MALIA ZIMMERMAN AND FOX NEWS NETWORK, LLC FOR
## <u>RECONSIDERATION OF DENIAL OF PROTECTIVE ORDER</u>

David H. Stern (*pro hac vice*)
Vincent H. Cohen, Jr.

DECHERT LLP
U.S. Bank Tower
633 West 5th Street, 26th Floor
Los Angeles, CA 90071

1900 K Street, NW
Washington, DC 20006
Tel: (213) 808-5720
Fax: (213) 808-5760

*Attorneys for Non-party Malia Zimmerman*

Joseph M. Terry
Stephen J. Fuzesi
Katherine A. Petti

WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Tel: (202) 434-5000
Fax: (202) 434-5029

*Attorneys for Non-party Fox News Network, LLC*

**TABLE OF CONTENTS**

INTRODUCTION ...........................................................................................................................1

ARGUMENT .................................................................................................................................1

    I.      The Court Has Ample Discretion to Grant This Motion for Reconsideration. ..................................................................................................1

    II.     Mr. Rich Continues to Urge Interpretations of the Privileges at Odds with Their Purpose and Prevailing Authority. ...........................................................2

         A.     The Privileges Encompass Retraction Decisions. .......................................2

         B.     The Privileges Encompass Ms. Zimmerman's Communications with Mr. Butowsky. .................................................................................5

         C.     There Was No Waiver of the Privileges. ....................................................7

    III.    Mr. Rich Cannot Overcome the Privileges As a Matter of Law. .............................9

    IV.    The Court's Prior Ruling Unnecessarily Implicates Sensitive Constitutional Issues. ..............................................................................................12

CONCLUSION ............................................................................................................................14

## TABLE OF AUTHORITIES

### CASES

*Baker v. Goldman Sachs & Co. (In re Eisinger)*, No. 09-10053, 2011 WL 1458230
   (S.D.N.Y. Apr. 12, 2011) ................................................................................................... 2, 3

*Blum v. Schlegel*, 150 F.R.D. 42 (W.D.N.Y. 1993) ..................................................................... 12

*Bredemus v. Int'l Paper Co.*, No. 06-cv-1274, 2008 WL 11348492
   (D. Minn. Aug. 22, 2008) ....................................................................................................... 8

*Brown & Williamson Tobacco Corp. v. Wigand*, No. 101678/96, 1996 WL 350827
   (N.Y. Sup. Ct. Feb. 28, 1996) ......................................................................................... 11, 12

*Cobell v. Norton*, 355 F. Supp. 2d 531 (D.D.C. 2005) ............................................................. 1, 14

*Estate of Klieman v. Palestinian Auth.*, 18 F. Supp 3d 4 (D.D.C. 2014) ....................................... 1

*Estate of Klieman v. Palestinian Auth.*, 293 F.R.D. 235 (D.D.C. 2013) ....................................... 1

*Flynn v. NYP Holdings*, 235 A.D.2d 907 (App. Div. 1997) .......................................................... 9

*Giuffre v. Maxwell*, 221 F. Supp. 3d 472 (S.D.N.Y. 2016) .................................................. 2, 8, 9

*Guice-Mills v. Forbes*, 819 N.Y.S.2d 432 (Sup. Ct. 2006) ........................................................ 7, 8

*Guzman v. News Corp.*, 877 F. Supp. 2d 74 (S.D.N.Y. 2012) ...................................................... 5

*Higgins v. Young*, No. 97CVD563, 2001 WL 1692379 (N.C. Super. Ct. Aug. 8, 2001) ............. 4

*Hutira v. Islamic Republic of Iran*, 211 F. Supp. 2d 115 (D.D.C. 2002) ...................................... 6

*In Def. of Animals v. Nat'l Inst. of Health*, 543 F. Supp. 2d 70 (D.D.C. 2008) ............................ 2

*Krase v. Graco Children Prods. (In re Application to Quash Subpoena to NBC)*,
   79 F.3d 346 (2d Cir. 1996) ..................................................................................................... 9

*Liberty Lobby, Inc. v. Rees*, 111 F.R.D. 19 (D.D.C. 1986) ......................................................... 10

*Lozman v. City of Riviera Beach*, No. 08-cv-80134, 2014 WL 12360697
   (S.D. Fla. Oct. 8, 2014) ........................................................................................................... 8

*Maughan v. NL Indus.*, 524 F. Supp. 93 (D.D.C. 1981) ............................................................ 7, 8

*McGehee v. U.S. Dep't of Justice*, No. 01-cv-01872, 2019 WL 2516652
   (D.D.C. June 18, 2019) ........................................................................................................... 2

*Murray Energy Corp. v. Reorg Research, Inc.*, 58 N.Y.S.3d 369 (App. Div. 2017) .................. 13

*Palandjian v. Pahlavi*, 103 F.R.D. 410 (D.D.C. 1984) ................................................................. 12

*Peck v. City of Bos. (In re Slack)*, 768 F. Supp. 2d 189 (D.D.C. 2011) ................................ 6, 9, 12

*Rainbow v. WPIX, Inc.*, No. 2018-5119 (N.Y. App. Div. Oct. 2, 2019) ......................................... 4

*Rosario v. N.Y. Times Co.*, 84 F.R.D. 626 (S.D.N.Y. 1979) ........................................................... 3

*Rosenberg v. U.S. Dep't of Defense*, No. 17-cv-437, 2020 WL 1065552
    (D.D.C. Mar. 5, 2020) ................................................................................................................ 2

*Tripp v. DOD*, 284 F. Supp. 2d 50 (D.D.C. 2003) ..................................................................... 6, 7

*United States v. All Assets Held at Bank Julius, Baer & Co.*, 308 F. Supp. 3d 186
    (D.D.C. 2018) ............................................................................................................................ 2

*Univ. of Colo. Health at Mem'l Hosp. v. Burwell*, 164 F. Supp. 3d 56 (D.D.C. 2016) ................... 6

*Westmoreland v. CBS, Inc.*, 97 F.R.D. 703 (S.D.N.Y. 1983) ......................................................... 4

*Zerilli v. Smith*, 656 F.2d 705 (D.C. Cir. 1981) ..................................................................... 11, 12

## CONSTITUTION, STATUTES, AND RULES

U.S. Const. amend. I ............................................................................................................ *passim*

Fed. R. Civ. P. 54 .................................................................................................................... 1, 6

Fed. R. Civ. P. 59 .......................................................................................................................... 2

Fed. R. Civ. P. 60 .......................................................................................................................... 2

Fed. R. Evid. 407 .......................................................................................................................... 5

N.Y. Civ. Rights Law § 79-h .............................................................................................. 6, 7, 8, 11

**INTRODUCTION**

Fox News Network, LLC and Malia Zimmerman brought this motion for reconsideration because the Court's opinion departed from settled New York and federal case law. Absent reconsideration, the Court's opinion will become the first, to our knowledge, in *any* jurisdiction to hold that the decision to retract a news article falls outside the scope of the federal and New York privileges. It also will be the first, to our knowledge, to hold that the privileges do not extend to a reporter's conversations with sources who provide valuable leads but are not quoted in an article itself. Such holdings are contrary to long and well-established precedent regarding the scope of the privileges. Nothing in Aaron Rich's opposition demonstrates otherwise. Indeed, the unprecedented reach of the Court's order alone provides a basis for revisiting the ruling—or, at a minimum, narrowing its scope to avoid an unnecessary adjudication of First Amendment questions or the bounds of another state's privilege law.[1]

**ARGUMENT**

**I.   The Court Has Ample Discretion to Grant This Motion for Reconsideration.**

Mr. Rich argues that a motion for reconsideration should be granted only in "extraordinary instances" and that Fox News and Ms. Zimmerman have not satisfied that requirement. Opp. 3–4. But the standard for granting a motion is far more flexible than Mr. Rich acknowledges. Courts have "broad discretion to grant or deny a motion for reconsideration" under Rule 54(b) and may give relief from an order where "justice [so] requires." *Cobell v. Norton*, 355 F. Supp. 2d 531, 539 (D.D.C. 2005). Courts often consider such factors as whether the original opinion reflected a

---

[1] Mr. Rich's suggestion that Fox News—the country's top-rated cable news network—brought this motion instead for the "extra-judicial objective[]" of seeking press coverage, for some unidentified reason, from a niche legal blog and the *Hollywood Reporter* is specious. *See* Opp. 2. Fox News brought this motion because the opinion would vitiate well-established First Amendment and statutory protections for journalists.

1

"clear error of law," *United States v. All Assets Held at Bank Julius, Baer & Co.*, 308 F. Supp. 3d 186, 192–93 (D.D.C. 2018); whether the court failed to consider "controlling decisions or data," *In Def. of Animals v. Nat'l Inst. of Health*, 543 F. Supp. 2d 70, 75 (D.D.C. 2008); or whether "the movant presents new information that constitutes a change in the court's awareness of the circumstances, even though it may not constitute a change in the actual facts of the case," *Rosenberg v. U.S. Dep't of Defense*, No. 17-cv-437, 2020 WL 1065552, at *4 (D.D.C. Mar. 5, 2020) (brackets omitted).  Even where such factors are not present, however, "the Court may nevertheless elect to grant a motion for reconsideration if there are other good reasons for doing so."  *Bank Julius, Baer & Co.*, 308 F. Supp. 3d at 192–93.  At the very least, Fox News and Ms. Zimmerman have presented "good reasons" for reconsideration here—in addition to noting "clear error[s] of law," "controlling decisions" the Court failed to consider, and "new information" in the form of Ms. Zimmerman's declaration.

For the same reasons, reconsideration is also warranted under Rules 59(e) and 60.  As Fox News and Ms. Zimmerman explained, Rule 59(e) permits reconsideration "to correct a clear error or prevent manifest injustice," *McGehee v. U.S. Dep't of Justice*, No. 01-cv-01872, 2019 WL 2516652, at *2 (D.D.C. June 18, 2019), while Rule 60 permits reconsideration for "any . . . reason that justifies relief," Fed. R. Civ. P. 60(b)(6).  Under any of these rules, justice requires that the Court revisit its ruling.

**II.   Mr. Rich Continues to Urge Interpretations of the Privileges at Odds with Their Purpose and Prevailing Authority.**

    **A.   The Privileges Encompass Retraction Decisions.**

Mr. Rich does not dispute the long line of cases protecting "the newsgathering *process, as a whole*," *Giuffre v. Maxwell*, 221 F. Supp. 3d 472, 479 (S.D.N.Y. 2016) (emphasis added), and prohibiting "intrusion[s] into the editorial process," *Baker v. Goldman Sachs & Co. (In re*

*Eisinger)*, No. 09-10053, 2011 WL 1458230, at *3 (S.D.N.Y. Apr. 12, 2011).  He instead makes the unsupported argument that the editorial process comes abruptly to an end at the moment of publication—and does not include later decisions whether to retract a publication or, instead, to continue to publish it.  But Mr. Rich does not cite a single case that embraces the artificial distinction he urges between "*pre-publication*" and "*post-publication*" editorial judgments, Opp. 9, nor is Fox News aware of any.  To the contrary, the decision whether to retract an article is no less a part of the editorial process than the decision whether to publish the article in the first place.

It makes little sense to draw a strict categorical distinction between pre- and post-publication editorial decision-making, as Mr. Rich urges.  That is particularly so in the digital age, when news organizations continually update their reports after they are first published online, including by adding new content.  In this case, only hours after Fox News published its May 16, 2017, article about Seth Rich, it revised the article to lead with the family's statement rejecting the contention that Seth had provided Democratic National Committee emails to WikiLeaks.  The retraction followed several days later and was another step in that ongoing editorial process.  *See Rosario v. N.Y. Times Co.*, 84 F.R.D. 626, 631 (S.D.N.Y. 1979) (First Amendment privilege shields discussions about both a particular column and whether to include a columnist on an ongoing basis in the future).

As Fox News and Ms. Zimmerman explained, Fox Br. 4–5, the decision to retract an article involves many of the same editorial judgments that influence whether an article warrants publication in the first place—judgments about, for example, whether the article is sufficiently sourced, whether sources are credible, whether the article comports with editorial standards, or whether it should be revised rather than taken down entirely.  As the Reporters Committee for Freedom of the Press, representing 20 major news organizations, recently argued in a brief before

3

a New York appellate court, the decision to retract is a painstaking process that may require the publisher to investigate whether "a legitimate issue with the story" exists or whether the person requesting the retraction is merely "unhappy with the truth." *See* Br. of Reporters Comm. at 20, *Rainbow v. WPIX, Inc.*, No. 2018-5119 (N.Y. App. Div. Oct. 2, 2019).[2] The Reporters Committee likewise noted this week with respect to this Court's ruling: "[F]ar from not being part of the editorial process in newsgathering, as the district court found, the decision to retract a story is perhaps the most 'weighty' exercise of editorial judgment there is."[3] *See also Higgins v. Young*, No. 97CVD563, 2001 WL 1692379, at *1–2 (N.C. Super. Ct. Aug. 8, 2001) (holding that the "qualified reporter's privilege attaches to the information sought" from a nonparty journalist about whether an individual quoted in the article had later sought a retraction).

Mr. Rich leans on *Westmoreland v. CBS, Inc.*, 97 F.R.D. 703 (S.D.N.Y. 1983), but that case differs from this one in fundamental ways. As Fox News and Ms. Zimmerman explained, Fox. Br. 5, the issue in *Westmoreland* was whether CBS News could assert the New York privilege over an internal report that was cited in a *press release* issued by its president—a press release that *was itself the subject of a libel claim* in the case. The court held simply that the press release "was not the publication of news." 97 F.R.D. at 707. And the court cautioned that where newsgathering itself was at issue, the privilege is "not lightly to be overridden in litigation," particularly where the discovery was sought from "non-party journalists." *Id.* at 706. In *Westmoreland*, unlike in this case, the party resisting discovery was the libel defendant.

---

[2] A copy of the brief is available at https://www.rcfp.org/briefs-comments/rainbow-v-wpix/.

[3] Gabe Rottman, *Why One of the Seth Rich Lawsuits Could Have Implications for National Security Reporting*, Reporters Committee for Freedom of the Press (posted May 13, 2020), *available at* https://www.rcfp.org/seth-rich-lawsuit-implications/.

As the Court's opinion did, Mr. Rich further relies on *Guzman v. News Corp.*, 877 F. Supp. 2d 74 (S.D.N.Y. 2012). *See* Opp. 9 n.12. But that case also differs significantly from this one. The testimony sought there—from a newspaper defendant, not a third-party journalist—concerned an editor's "discussions with [other] editors and his own personal beliefs" in the context of a race discrimination lawsuit, in which plaintiffs sought to show "racial motivation." 877 F. Supp. at 76–77. The court found that the deposition questions at issue, principally about a cartoon, did not relate to "newsgathering." *Id.* Moreover, the newspaper defendant did not invoke the New York statutory privilege at all.

In short, Mr. Rich provides no basis for excluding retraction decisions from the scope of the privileges. To the contrary, the Court's ruling that such decisions are open season for discovery—including in cases where the journalist is not even a party—will discourage media organizations from undertaking additional fact-gathering or editorial review to decide whether an article should be retracted. When errors are made, the law generally encourages self-correction—that is why "subsequent remedial measures" are not admissible for certain purposes. *See* Fed. R. Evid. 407. But, as the Reporters Committee explains, the Court's ruling here "threatens to set a precedent with ramifications that go far beyond its facts and that would discourage all news organizations from self-evaluation and correction—a threat to the cause of truth itself." Rottman, *supra*, note 3. The Court's ruling on this important issue should be reconsidered.

### B. The Privileges Encompass Ms. Zimmerman's Communications with Mr. Butowsky.

Mr. Rich continues to suggest that the Court rely on a narrow construction of which communications with what "sources" merit protection under the privileges. But his assertion conflicts with the sweeping scope of the privileges. The applicability of the newsgathering privileges turns simply on whether the "information" at issue was "obtained as part of the[] news

5

gathering role." *See Peck v. City of Bos. (In re Slack)*, 768 F. Supp. 2d 189, 193 (D.D.C. 2011) (First Amendment privilege); *see also Hutira v. Islamic Republic of Iran*, 211 F. Supp. 2d 115, 119 n.4 (D.D.C. 2002) (journalist need only show that she obtained the information "for the purpose of disseminating it to the public"); N.Y. Civ. Rights Law § 79-h(a)(8), (c) (the New York privilege protects "information or communication" obtained "in the course of gathering or obtaining news"). There can be no question but that Ms. Zimmerman, a professional journalist working for Fox News, obtained information from Mr. Butowsky in the course of gathering news, as Mr. Rich's own brief in opposition to the motion for protective order makes clear. *See* Dkt. No. 138, at 19–20. *That* is the test—not whether Mr. Butowsky met Mr. Rich's definition of who constitutes a "source." *See* Fox News Br. 6-7.

Ms. Zimmerman's declaration puts to rest any question as to how she viewed him as part of the newsgathering process.[4] Whether or not Ms. Zimmerman ever quoted Mr. Butowsky, it is uncontested that he connected her with others who might provide information for her article and further provided "information he learned from his contacts within the law enforcement and intelligence communities." Zimmerman Decl. ¶¶ 4–6. Mr. Rich does not cite a single case to suggest that communications with a source like Mr. Butowsky fall outside the ambit of the privilege. He argues only that it "strains credulity" that Ms. Zimmerman would call Mr. Butowsky a "source" when she obtained only "third-hand" information from him. Opp. 12. But it makes no difference whether Mr. Butowsky had direct, firsthand information. Again, that is not the test under either the First Amendment or New York privileges—and Mr. Rich cites no authority to suggest that it is. *See Tripp v. DOD*, 284 F. Supp. 2d 50, 58 (D.D.C. 2003) (holding that journalist

---

[4] This Court has granted motions for reconsideration under Rule 54(b) supported by new declarations or other evidence. *See Univ. of Colo. Health at Mem'l Hosp. v. Burwell*, 164 F. Supp. 3d 56, 62 (D.D.C. 2016).

satisfied her burden of showing the privilege applied where she "engaged in traditional journalistic activities as a reporter for . . . an organization whose sole purpose is to disseminate commercial news and information").

It likewise makes no difference whether Ms. Zimmerman communicated with Mr. Butowsky before or after publication of her May 16, 2017, article. Her declaration makes clear that she sought information from him after that date in order to corroborate or update her reporting or pursue additional stories. Zimmerman Decl. ¶ 7. Even if she or Fox News did not ultimately elect to publish it, both the New York and federal newsgathering privileges cover such "unpublished" information. *Maughan v. NL Indus.*, 524 F. Supp. 93, 94 (D.D.C. 1981); N.Y. Civ. Rights Law § 79-h(c). Mr. Rich ignores this well-settled law.[5]

### C. There Was No Waiver of the Privileges.

Mr. Rich asserts that the motion for reconsideration "does not even address" the Court's ruling that Ms. Zimmerman waived her privilege with respect to information shared with Mr. Butowsky. Opp. 4. In fact, the motion devotes an entire section to this issue. Fox News Br. 6–9. As explained, Ms. Zimmerman communicated with Mr. Butowsky in the course of obtaining information for publication—and communications that fall within the newsgathering privileges cannot simultaneously amount to a waiver of them. Fox News Br. 9 (citing *Guice-Mills v. Forbes*, 819 N.Y.S.2d 432, 436 (Sup. Ct. 2006)). None of the cases cited by Mr. Rich says otherwise.

Mr. Rich specifically argues that Ms. Zimmerman waived the privileges with respect to her "communications *to* Mr. Butowsky." Opp. 16–17. But the cases do not draw a distinction between

---

[5] Further, even if not *all* of Ms. Zimmerman's post-May 16, 2017, communications with Mr. Butowsky involve protected newsgathering, the Court should bar the deposition to the extent it seeks to probe her additional reporting. The same arguments apply to her communications with Mr. Couch.

communications *to* and *from* a source; instead, they protect back-and-forth dialogue that takes place as part of the newsgathering process. *See Giuffre*, 221 F. Supp. 3d at 474 (quashing subpoena for communications with a certain individual, her agent, or her attorneys without exception for communications *from* the reporter *to* any of these sources); *Maughan*, 524 F. Supp. at 94 (quashing subpoena for production of "conversations" reporter may have had with plaintiffs without exception for communications *from* the reporter *to* the plaintiffs). That only makes sense: in order to obtain meaningful information from their sources, journalists must tell them something about the story they are reporting, what facts they have already gathered, and what they still need to confirm. Indeed, journalists routinely call one source to verify information or tips they have received from another—an activity that is specifically protected by the privileges. *See Guice-Mills*, 819 N.Y.S.2d at 436. The privileges protect all "information or communication concerning . . . matters of public concern," N.Y. Civ. Rights Law § 79-h(a)(8), not simply communications *from* sources. Absent reconsideration, the Court's opinion will chill the dialogue that is integral to the newsgathering process.

The two cases on which Mr. Rich relies are inapposite. In both, the reporter waived the privilege by sharing information with a third party for purposes other than gathering news. *See Bredemus v. Int'l Paper Co.*, No. 06-cv-1274, 2008 WL 11348492, at *7 (D. Minn. Aug. 22, 2008) (reporter "shared the totality of the information with his son, and partial portions with certain of the Plaintiffs, and the public at large"); *Lozman v. City of Riviera Beach*, No. 08-cv-80134, 2014 WL 12360697, at *4 (S.D. Fla. Oct. 8, 2014) (reporter voluntarily offered "substantial testimony" at plaintiff's previous eviction trial about events in question). These cases do not in any way suggest that Ms. Zimmerman waived the privilege by communicating with Mr. Butowsky— someone she communicated with "[a]s part of [her] newsgathering" role. Zimmerman Decl. ¶ 5.

### III.    Mr. Rich Cannot Overcome the Privileges As a Matter of Law.

It is well-established that, to overcome the privileges, Mr. Rich bears the burden of making a "clear and specific showing" that the testimony he seeks from Ms. Zimmerman is "critical or necessary" to the maintenance of his claims, N.Y. Civ. Rights Law § 79-h(c), or that the testimony "goes to the heart of the claim," *In re Slack*, 768 F. Supp. 2d at 194–96 (First Amendment privilege).  Mr. Rich argues that Fox News and Ms. Zimmerman have merely expressed their "subjective disagreements," Opp. 17, about what information is central to his claims.  To the contrary, their motion focused on Mr. Rich's own stated purposes for seeking the testimony— purposes that did not come close to satisfying *his* "very heavy burden" in overcoming either the New York or First Amendment privileges.  *Giuffre*, 221 F. Supp. 3d at 476.

As a threshold matter, Mr. Rich addresses only the requirements for overcoming the First Amendment privilege, while wholly ignoring the separate standard under New York law.  Opp. 17–18.  That standard is an exceptionally high one, requiring him to demonstrate that his claim "virtually rises or falls with the admission or exclusion of" Ms. Zimmerman's testimony.  *See Krase v. Graco Children Prods. (In re Application to Quash Subpoena to NBC)*, 79 F.3d 346, 351 (2d Cir. 1996); *Flynn v. NYP Holdings*, 235 A.D.2d 907, 908 (App. Div. 1997).  Even as Mr. Rich fails to dispute that test, he does not come close to satisfying it.  He argues only that he would like Ms. Zimmerman's testimony because "Mr. Butowsky is relying on aspects of [her] article as part of his defense."  Opp. 18.  But the fact that Mr. Butowsky may be relying on the contents of a *published* article to show he lacked actual malice does not suggest that Mr. Rich requires access to unpublished details of Fox News's editorial process—let alone that Mr. Rich's claim "virtually rises or falls" with access to that information.  *See Krase*, 79 F.3d at 351.

Mr. Rich has argued that Ms. Zimmerman's testimony concerning the retraction of the Fox News article and aspects of her communications with her confidential source are relevant to Mr. Butowsky's state of mind. But, as explained in our opening brief, these subjects are not even arguably relevant to Mr. Butowsky's state of mind except to the extent that Ms. Zimmerman discussed these matters with him. Fox News Br. 11. Mr. Rich, however, is seeking testimony concerning not just what was shared with Mr. Butowsky, but what Ms. Zimmerman knows about the substantive "decision to retract the Fox News Article" and whether she "spoke directly to the 'federal investigator' source mentioned in the Fox News Article." Fox News Br. 10–11. His opposition brief makes no attempt to explain how that testimony is even relevant to his claims, much less critical or necessary.

Furthermore, any testimony by Ms. Zimmerman regarding matters she shared or discussed with Mr. Butowsky is neither "critical or necessary" to Mr. Rich's claims, as it would either be cumulative of his own testimony or serve only to undermine his credibility. Fox News Br. 10–11. Mr. Rich attempts to distinguish *Liberty Lobby, Inc. v. Rees*, 111 F.R.D. 19 (D.D.C. 1986), one of several cases cited in the motion for reconsideration as holding that testimony sought only to impeach credibility does not overcome the newsgathering privilege. He argues that, in *Liberty Lobby*, the court held that the defendant need not disclose the identity of his confidential source only because the defendant disclaimed intent to rely on that person's identity in support of his actual malice defense—whereas here, Mr. Butowsky is relying on "aspects of Ms. Zimmerman's article." Opp. 18. That is not what *Liberty Lobby* held. It held, instead, that intrusion into protected newsgathering was not warranted because "the disclosure would go only to a facet of the case and, at most, would involve a collateral matter and result in cumulative evidence undermining the credibility of" the defendant. 111 F.R.D. at 22. The same is true here. Mr. Rich does not need

a journalist's testimony concerning the actual contents of her interview with a confidential source in order to determine what Mr. Butowsky understood about that interview—he may depose Mr. Butowsky on all of those subjects.

Separately, Mr. Rich cannot overcome either the New York or First Amendment newsgathering privileges because he has failed to exhaust alternative sources of information. *See* N.Y. Civ. Rights Law § 79-h(c)(iii); *Zerilli v. Smith*, 656 F.2d 705, 713 (D.C. Cir. 1981). Mr. Rich argues that the Court already found the exhaustion requirement satisfied, and that the motion for reconsideration "does not present any error in law or fact that contradicted the Court's conclusion." Opp. 19. But Ms. Zimmerman and Fox News *did* outline just such errors. Fox News Br. 9–13.

*First*, we noted that the Court did not independently apply the New York standard for overcoming the privilege. The Court's ruling cited only one case, *Estate of Klieman v. Palestinian Auth.*, 293 F.R.D. 235 (D.D.C. 2013), that applied the First Amendment privilege—a ruling later stayed upon reconsideration precisely because the plaintiff had not exhausted alternative sources of information. *See Estate of Klieman v. Palestinian Auth.*, 18 F. Supp 3d 4, 6 (D.D.C. 2014).

*Second*, we noted that the Court appeared to have overlooked New York precedents undermining its ruling that Mr. Rich "should not have to rely solely on [Mr. Butowsky's] testimony" to show his state of mind. Mem. Order 4 n.2. Specifically, these cases require the party seeking discovery to first obtain testimony from other witnesses, including witnesses claimed to be dishonest or unreliable. Fox News Br. 12–13 (citing *Brown & Williamson Tobacco Corp. v. Wigand*, No. 101678/96, 1996 WL 350827, at *5 (N.Y. Sup. Ct. Feb. 28, 1996)). Mr. Rich attempts to distinguish *Brown* by arguing that "in that case, all the plaintiff had offered . . . was unproven allegations of [the witness's] dishonesty." Opp. 19 n.28. In fact, the evidence of the witness's dishonesty was far stronger in *Brown* than it is here. In that case, the witness had been

11

"sued for fraud, theft and breach of contract," 1996 WL 350827, at *5, whereas, here, Mr. Rich's cited evidence of unreliability is merely Mr. Butowsky's passing statement in an email that "I keep my name out of things because I have no credibility." Opp. 19 n.28 (citing Pl.'s Opp'n to Mot. for Protective Order, Dkt. No 138, at 19)).[6] Mr. Butowsky's personal opinion that he has no bona fides as a journalist does not relieve Mr. Rich of his burden of first deposing Mr. Butowsky about his own state of mind before deposing Ms. Zimmerman as to the same topic. *Blum v. Schlegel*, 150 F.R.D. 42, 46 (W.D.N.Y. 1993) ("Where the source is known and can be deposed, the availability of a deposition is an alternative source that *must be pursued*" (emphasis added)); *cf. Palandjian v. Pahlavi*, 103 F.R.D. 410, 413 (D.D.C. 1984) (no exhaustion because "[t]he most obvious source is the defendant herself. These . . . are her own words"). Tellingly, Mr. Rich cannot—and does not—even speculate as to what testimony Ms. Zimmerman would offer that would actually contradict what Mr. Butowsky hypothetically would testify to, if he is eventually deposed. Fox News Br. 10.

It bears emphasis that the privilege should "prevail in all but the most exceptional cases," *Zerilli*, 656 F.2d at 712, and "should be abrogated only as a last resort," *In re Slack*, 768 F. Supp. 2d at 194, 196. This is not one of those few cases.

## IV.  The Court's Prior Ruling Unnecessarily Implicates Sensitive Constitutional Issues.

Fox News and Ms. Zimmerman argued in their reconsideration motion that, if the Court is convinced the deposition should go forward, it should rest its ruling on the narrowest grounds available—that Mr. Rich has overcome the newsgathering privileges as to certain topics—rather

---

[6] It bears noting that Mr. Rich has simultaneously argued that (1) Mr. Butowsky has *so little credibility* that the Court should not require Mr. Rich from deposing him for purposes of exhaustion, Opp. 19 n.28, and (2) Mr. Butowsky is *so credible* that the Court should credit his assessment about whether he was a source for Ms. Zimmerman over documentary evidence and a sworn declaration attesting to the contrary, Opp. 12, 14. He cannot have it both ways.

than hold the privileges do not apply at all. Mr. Rich does not dispute the principle that the Court should avoid unnecessary rulings as to the scope of the First Amendment privilege. Instead, he notes that Fox News and Ms. Zimmerman cited "the New York newsgathering privilege," Opp. 19, misleadingly suggesting that we did not invoke constitutional protections as well. In fact, the motion for a protective order plainly relied on *both* state and First Amendment protections for newsgathering—which is why Mr. Rich's own briefing largely cites constitutional cases, though he ignores the standard that applies under New York law.

There are good reasons, in any event, to avoid unnecessarily deciding both questions of constitutional law and New York law when the Court has an alternative basis for decision limited to the facts of this case. Where, as here, not a single New York precedent holds that a retraction decision falls outside the scope of the privilege, an out-of-state federal court should not reach out to decide that question in the first instance. That is particularly true here because the Court's ruling is out of step with New York cases, which often describe the state privilege as "the strongest in the nation." *Murray Energy Corp. v. Reorg Research, Inc.*, 58 N.Y.S.3d 369, 371 (App. Div. 2017). Such questions of first impression should be left to the courts of New York to decide in the first instance—at least where, as in this case, it is not necessary to reach them.

Mr. Rich further argues that Fox News and Ms. Zimmerman's alternative argument is designed to "limit the topics and lines of questioning" he can pursue at the deposition. Opp. 20. That is not the case. The reasons that Fox News and Ms. Zimmerman ask the Court, in the alternative, to limit the breadth of its rulings are exactly those stated in the opening brief: the Court's interpretations of the scope of the privileges will have aftershocks for other journalists in other cases. Fox News Br. 14; *see also* Rottman, *supra*, note 3 ("To allow that holding to stand would discourage all news organizations from having [retraction] discussions, which would harm

newsgathering and the free flow of true information to the public."). They may also affect the ability of Fox News and Ms. Zimmerman to assert the privilege in the separate suit they are defending in the Southern District of New York against Mr. Rich's parents, Joel and Mary Rich. Fox News Br. 14. In these circumstances, "justice requires" revisiting—at the very least—some of the bases for decision to avoid impairing the rights of parties who are not litigants before this Court. *See Cobell*, 355 F. Supp. 2d at 539.

## CONCLUSION

For the foregoing reasons and those discussed in Ms. Zimmerman and Fox News's opening brief, the Court should grant the motion for reconsideration of the Court's denial of a protective order.

Respectfully submitted,

*/S Joseph M. Terry*

Joseph M. Terry (DDC Bar 473095)
Stephen J. Fuzesi (DDC Bar 496723)
Katherine A. Petti (DDC Bar 1026532)

WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Tel: (202) 434-5000
Fax: (202) 434-5029
jterry@wc.com
sfuzesi@wc.com
kpetti@wc.com

*Attorneys for Non-party Fox News Network, LLC*

David H. Stern (*pro hac vice*)
Vincent H. Cohen, Jr. (DDC Bar 471489)

Dechert LLP
U.S. Bank Tower
633 West 5th Street, 26th Floor

14

                                        Los Angeles, CA 90071

                                        1900 K Street, NW
Washington, DC 20006
Tel: (213) 808-5720
Fax: (213) 808-5760
david.stern@dechert.com
vincent.cohen@dechert.com

DATED: May 13, 2020                          *Attorneys for Non-party Malia Zimmerman*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 13, 2020, I caused to be filed electronically the foregoing Reply Memorandum in Support of the Motion for Reconsideration of Denial of Protective Order with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record in this matter who are on the CM/ECF system. I further certify that a copy of the foregoing document was provided to Defendant America First Media via email to mattcouch@af-mg.com on May 13, 2020.

> */S Joseph M. Terry*
> Joseph M. Terry
> *Counsel for Fox News Network, LLC*