UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AARON RICH,                                          Case No. 1:18-cv-00681-RJL
                                                     Honorable Richard J. Leon

      Plaintiff,

v.


EDWARD BUTOWSKY,
MATTHEW COUCH,
AMERICA FIRST MEDIA,

      Defendants.


## EXPERT WITNESS LARRY JOHNSON'S
## REPLY TO OPPOSITION TO CROSS-MOTION FOR PROTECTIVE ORDER AND SANCTIONS

EDEN P. QUAINTON, ESQ. (D.C. Bar No. NY0318)
QUAINTON LAW, PLLC
1001 Avenue of the Americas, 11th Floor
New York, New York 10018
Telephone: (212) 813-8389
*Attorneys for Larry Johnson*

## PRELIMINARY STATEMENT

In addressing the pending Motion to Compel and Cross-Motion for Protective Order, Plaintiff combined his Reply and Opposition. Dkt. 198. Accordingly, Mr. Johnson will not address the legal arguments that were made in the Reply portion of Plaintiff's papers and will only address those arguments made in Plaintiff's introduction and Opposition. Dkt 198 at 2-4 and 15-17.

In the introduction Plaintiff insists on casting himself as David to Defendant's Goliath. This continues to be absurd. Defendant is represented in this litigation by a solo practitioner with a single (and otherwise occupied) associate. Plaintiff, on the other hand, is backed by two of the most profitable law firms in American history, with the combined firepower of two sets of partners, associates, paralegals, secretaries, word processors and tech support staff. Defendant is truly armed with a slingshot and Plaintiff has not one but an army of javelin throwers.[1]

That Mr. Butowsky is also being harassed in a separate lawsuit claiming, in a wildly implausible flight of fancy, that he conspired with President Trump to intentionally target a grieving family is of course completely irrelevant. Plaintiff's attempt to deflect attention from his attorneys' massive commitment of resources  points to one of the central puzzles in this litigation: why are so many lawyers and their allies in the media and political establishment so committed to stamping out and branding as "lies," "fake news," "disinformation," "contrived narratives," "concocted stories" any suggesting that Seth or Aaron Rich were involved in transmitting DNC emails to Wikileaks?

---

[1] Plaintiff's attempt to recast the roles here is similar to his attempt to attack Mr. Quainton for running a parallel media "campaign" on the basis of a single interview with an alternative and little-known website, while his attorneys blanket the media with appearances on CNN, Vox, Yahoo! and HBO.

The question readily answers itself: the professional, media and political elite are heavily invested in the now debunked Trump-Russia conspiracy theory and are desperate to "squash" – in the words of one of the early FBI investigators responding to alternative theories to their pet Guccifer 2.0 claim – any honest investigation of the origins of the conspiracy theory, including the evidence-free "assessment" that Russia military intelligence hacked the DNC servers as part of a plot to support Donald Trump.

Second, Plaintiff repeats over and over again that Mr. Johnson has not provided any law other than the plain text of Rule 26(b)(4)(A), which Plaintiff apparently believes is optional, despite its unambiguous language. But it is not Mr. Johnson's burden to establish that the Federal Rules do not mean what they say; it is ***Plaintiff's*** burden to come forth with some precedent to support his position that if an individual has been designated as a fact witness, the mandatory language of Rule 26(b)(4)(A) somehow no longer applies. Despite wasting Mr. Johnson's and his counsel's time with a deposition conducted in bad faith, despite being the party moving to compel, despite having the audacity to seek sanctions against a witness protected by the Federal Rules of Civil Procedure, Plaintiff does not bring forth a single case in support of his remarkable theory—that would have the effect of preventing any expert who has some degree of factual knowledge about a case from preparing a Rule 26(a)(2)(B) report. Filing a motion to compel with no legal support, with the full knowledge that the deponent is preparing an expert report and will be available for examination once his report is complete, is the truly sanctionable behavior in this case.

**LEGAL ARGUMENT**

I.    MR. JOHNSON'S CROSS-MOTION FOR A PROTECTIVE ORDER IS TIMELY.

Plaintiff claims that Mr. Johnson's motion for a protective order is untimely. Dkt. 198 at

15. The primary reason for Plaintiff's claim is that Mr. Johnson has allegedly known of

Plaintiff's intention to depose him since January 6, 2020. *Id.* As Plaintiff's counsel knows, but

does not inform the Court, Mr. Quainton was not retained to represent Mr. Johnson until early

February, almost a month after Plaintiff's arbitrary starting point.[2] Moreover, Mr. Johnson did

not believe it was necessary to seek a protective order because it appeared that the parties had an

understanding on the scope of Mr. Johnson's deposition. As Mr. Gottlieb stated unambiguously:

"Mr. Johnson will sit for a deposition as  fact witness; and if Mr. Butowsky decides to designate

him as an expert witness, we will be entitled to depose him in his capacity as an expert").

Quainton Decl. Ex 5.

Mr. Johnson does not deny that he has some knowledge of the facts of the case—such as

how Mr. Butowsky encountered Mr. Hersh or what Mr. Butowsky may have said about Mr.

Hersh's audio, Ellen Ratner or Mr. Wheeler's investigation. Mr. Quainton did not object

substantively to questions along these lines. But Mr. Quainton made clear that Mr. Johnson

would also be providing an expert report and that Mr. Johnson could only be examined on the

---

[2] Plaintiff counsel is well aware that Mr. Johnson was initially unrepresented and that Mr.
Quainton was not retained for nearly a month after the January 6, 2020 date referenced by Mr.
Gottlieb. *See* Declaration of Eden P. Quainton, dated May 18, 2020 (the "Quainton Decl.") Ex. 1
(January 14 email from Mr. Gottlieb referring to the "uncertainty" of Mr. Quainton's status);
Quainton Decl. Ex. 2 (January 23 email from Ms. Governski acknowledging Mr. Quainton had
not confirmed his representation of Mr. Johnson); Quainton Decl., Ex. 3 (January 30 email from
Mr. Gottlieb stating that "first step" is getting confirmation as to whether Mr. Quainton is
representing Mr. Johnson); Quainton Decl. Ex. 4 (February 3, 2020 email confirming that Mr.
Butowsky had approved Mr. Quainton's representation of Mr. Johnson).

subject matter of that report after it was completed, in keeping with the Federal Rules of Civil Procedure. Dkt. 189 at 5-6. Plaintiff knows that Mr. Johnson's report will cover the alleged hacking of the DNC and the manner in which the intelligence community is believed to have constructed the narrative that Russian military intelligence hacked the DNC emails and funneled them to Guccifer 2.0 for further transmission to Wikileaks as part of a plot to help Donald Trump become President. *Id.* These topics are not "fact" questions as to which Mr. Johnson can personally testify. They are expert opinions based on his experience as an intelligence officer. It was not apparent to Mr. Johnson's counsel that Plaintiff was making the absurd claim that Mr. Johnson had personal "factual" knowledge about the alleged hacking of the DNC until the deposition of Mr. Johnson himself. Dkt 189 at 7. Once Plaintiff revealed his intentions, Mr. Quainton made clear he would be seeking court protection. *Id.*

Since Mr. Johnson has still not completed his expert report and dates for the preparation and rebuttal of expert reports have not yet been set, it is evident that Mr. Johnson's motion for a protective order remains timely as it is made well in advance of the contemplated expert discovery. *See  8 C. Wright & A. Miller, Federal Practice and Procedure* § 2035 at 262-63. As to Plaintiff's attempt to get a second-bite at his "fact" deposition – which he voluntarily cut short to pursue his novel theory that an expert can be forced to testify as a fact witness on the subject matter of his expert report – Plaintiff's sandbagging approach should not obscure the fact Mr. Johnson saw no need to seek a protective order before the deposition because Mr. Gottlieb had insisted Mr. Johnson would only be examined in his capacity as a fact witness. *See supra* at 4. Plaintiff's untimeliness argument is simply after-the-fact rationalization.

II.     A PROTECTIVE ORDER IS NECESSARY.

Plaintiff contends that a protective order is "unnecessary" because resolution of the Motion to Compel one way or the other will obviate the need for a Protective Order. Dkt. 196 at 16. This is wrong. The Court could deny Plaintiff's motion – as it should – but still leave Mr. Johnson exposed.

If Plaintiff's motion is denied, Plaintiff may still believe that he can resume his "fact" deposition on less aggressive grounds. This would be unfair and would reward Plaintiff's gamesmanship. Plaintiff had ample opportunity and plenty of time remaining to examine Mr. Johnson on all relevant factual issues and instead chose to waste Mr. Johnson's and his counsel's time on matters that obviously could not be addressed until Mr. Johnson had finished his expert report—and then cut short the deposition rather than pursuing permissible questions. Plaintiff is now asking the Court to compel Mr. Johnson to sit for a further deposition and "***answer all questions regarding opinions or facts*** that predated April, 2018," Dkt. 171-14, even though Plaintiff knows that Mr. Johnson's opinions on the alleged Russian hacking of the DC and the construction of the Russian military intelligence theory ***predated*** his retention as an expert. *See* Dkt. 189-4 (Article dated September 5 2017 entitled "The So-called Russian Hack of the DNC Does Not Make Sense."). Granting Plaintiff's motion would effectively overrule Rule 26(b)(4)(b), which the Court should plainly not do. But denying Mr. Johnson's Cross-Motion, when Plaintiff voluntarily chose to cut short his "fact" deposition, would allow Plaintiff to take what amounts to a ***second*** "fact" deposition in further violation of the Federal Rules of Civil Procedure. Rather than creating a moral hazard that would only encourage similar behavior in the future, the Court should require Plaintiff to live with the consequences of his counsel's bad strategic decision.

III.     THE PROTECTIVE ORDER IS JUSTIFIED.

In arguing that Mr. Johnson's request for a protective order is unjustified, Plaintiff makes the bizarre argument that Plaintiff will seek to make the same instruction that was made at Mr. Johnson's fact deposition. Dkt. 196 at 16. This makes no sense. Mr. Johnson's proposed order makes clear that he seeks protection from ***any*** further deposition until his expert report has been completed. Dkt. 189-6 (seeking an order "(a) preventing any further examination of Mr. Johnson until his expert report has been prepared and submitted and (b) limiting any further examination of Mr. Johnson to the contents of and bases for Mr. Johnson's expert report"). The heading to Mr. Johnson's Cross-Motion leaves no doubt as to the relief sought by Mr. Johnson. Dkt. 189 at 12. There will be no instructions to repeat because Mr. Johnson will be sitting as an expert and Plaintiff will be constrained to play by the rules.

As Plaintiff knows, having a witness testify as both a fact and expert witness is permissible under Federal Rules of Evidence 701 and 702. *Phoenix Restoration Grp., Inc. v. Liberty Mut. Grp. Inc.*, No. CV 18-2121 (BAH), 2020 WL 622152, at *3 (D.D.C. Feb. 10, 2020). Courts are concerned about risks of jury confusion in the context of "two-hatted" witnesses. *Id.* at *4. But Plaintiff has not made a motion to restrict the scope of Mr. Johnson's expert testimony. Rather, Plaintiff is effectively trying to prevent him from testifying on the basis of his expert report by subjecting his expert opinions to deposition before his report is ready. Dkt. 171-14.  As discussed above and in Mr. Johnson's Cross-Motion, there is no basis in law for this position. Plaintiff is simply attempting to browbeat and harass Mr. Johnson and his counsel with an overbroad motion and a baseless threat of monetary sanctions. Rule 26(c) exists precisely to protect a witness who may be subject to such tactics. *See Amobi v. D.C. Dep't of Corr.*, 262 F.R.D. 45, 49 (D.D.C. 2009).

Mr. Johnson has amply demonstrated good cause for his Cross-Motion, namely, the need to protect the integrity of his expert report, which would be fatally compromised if Plaintiff were permitted to inquire into Mr. Johnson's pre-April 2018 opinions and their underlying factual bases—facts that are the object of expert analysis, not personal knowledge. Moreover, Mr. Johnson gave Plaintiff an opportunity to withdraw his motion before the Cross-Motion was filed—to which Plaintiff responded with a threat of Rule 11 sanctions, indicating that good faith discussion was not possible. Dkt. 189 at 12 and Note 3.

Plaintiff makes the curious argument that Mr. Johnson's is relying on a "parade of horribles" and "fails to explain" how his expert report would be compromised by inquiry into his opinions before April 2018. Dkt. 196. To restate the obvious: Mr. Johnson's expertise bears on the construction of the Russian military intelligence hacking theory that began to take form in June 2016, with a Washington Post article by Ellen Nakashima, was developed through an October 2016 joint Homeland Security and DNI statement and led to the well-known ICA "assessment" in January 2017.  *See* https://www.washingtonpost.com/world/national-security/russian-government-hackers-penetrated-dnc-stole-opposition-research-on-trump/2016/06/14/cf006cb4-316e-11e6-8ff7-7b6c1998b7a0_story.htm; https://www.dhs.gov/news/2016/10/07/joint-statement-department-homeland-security-and-office-director-national; https://www.intelligence.senate.gov/sites/default/files/documents/ICA_2017_01.pdf at 2-3.

Mr. Johnson is one of a small number of experts who challenged the prevailing orthodoxy early on, when belief in a Trump-Russia conspiracy was widespread. *See supra* at 6. Mr. Butowsky has every right to rely on Mr. Johnson's expertise as an intelligence officer to provide expert testimony as to the internal inconsistencies, logical flaws, evidentiary gaps and

theoretical incoherencies in the official narrative, on which Plaintiff is clearly relying. *See* Dkt. 205 at 3 (quoting Plaintiff's appearance on HBO special in which Mr. Rich stated it had been "proven" that he and Seth Rich had no involvement in transmitting DNC emails to Wikileaks). The assumptions, inferences, assessments and judgments behind the official narrative – no less so than in the intelligence fiasco leading up to the Iraq war – may have been, and likely were, distorted, incomplete, biased and politically motivated. Mr. Johnson's expert report is critical to Defendant's ability to challenge the narrative Plaintiff will attempt to present through his own "experts" at trial. To open Mr. Johnson up to examination of the opinions to be synthesized in his report – before it has been written – on the theory that these opinions are fair game for a "fact" deposition robs Defendant of the right to pursue his defense strategy effectively and would constitute an egregious over-reach and denial of due process. Plaintiff's lawyers should be required to pay a price for their strong-arm tactics, not only to compensate Mr. Johnson for the harm he has suffered, but also to deter them from using their superior resources to obtain an improper advantage in the future.

## **CONCLUSION**

For the foregoing reasons, Mr. Johnson respectfully requests that the Court enter a protective order pursuant to Rules 26(c) and 26(b)(4)(A) prohibiting any further deposition of Mr. Johnson until his expert report has been prepared and requiring Plaintiff's counsel to pay the fees Mr. Johnson has incurred in responding to Plaintiff's motion and protecting his rights.

Dated: May 18, 2020

/s/ Eden Quainton
EDEN P. QUAINTON, ESQ. (D.C. Bar No. NY0318)
QUAINTON LAW, PLLC
1001 Avenue of the Americas, 11th Floor
New York, New York 10018

Telephone: (212) 813-8389
E-mail: equainton@gmail.com
*Attorneys for Expert Witness Larry Johnson*

## **CERTIFICATE OF SERVICE**

The undersigned counsel certifies that on May 18, 2020 the foregoing document was filed through the CM/ECF system and thereby served electronically on counsel for Plaintiff Aaron Rich.

**QUAINTON LAW, PLLC**

*/s/ Eden Quainton*
EDEN P. QUAINTON, ESQ.

1001 Avenue of the Americas, 11th Floor
New York, New York 10018
Telephone: (212) 813-8389
E-mail: equainton@gmail.com
*Attorneys for Expert Witness Larry Johnson*