UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AARON RICH<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>EDWARD BUTOWSKY,<br>MATTHEW COUCH, and<br>AMERICA FIRST MEDIA,<br><br>　　　　　　　Defendants. | Civil Action No. 1:18-cv-00681-RJL<br><br>Hon. Richard J. Leon |

### PLAINTIFF'S MOTION TO DE-DESIGNATE CERTAIN AUDIO RECORDINGS PRODUCED BY DEFENDANT MATTHEW COUCH

MICHAEL J. GOTTLIEB (D.C. Bar No. 974960)
WILLKIE FARR GALLAGHER LLP
1875 K Street NW, Washington, DC 20006
Tel: (202) 303-1442 / Fax: (202) 303-2000
mgottlieb@willkie.com

JOSHUA P. RILEY (D.C. Bar No. 1026900)
MERYL C. GOVERNSKI (D.C. Bar No. 1023549)
BOIES SCHILLER FLEXNER LLP
1401 New York Ave NW, Washington DC 20005
Tel: (202) 237-2727 / Fax: (202) 237-6131
jriley@bsfllp.com
mgovernski@bsfllp.com

Pursuant to the Protective Order entered by this Court, Plaintiff Aaron Rich by and through undersigned counsel respectively moves the Court for an order de-designating five audio recordings that Defendant Matthew Couch has designated as "Highly Confidential Information – Attorneys' Eyes Only" and refused to de-designate.  Dkt. 29 ("Protective Order," or "PO") ¶¶ 7.[1]

The recordings at issue in this Motion are recorded phone conversations between Defendant Couch and Defendant Edward Butowsky, as well as between Defendant Couch and Rod Wheeler, the private investigator who was hired by the Rich family to investigate the murder of Seth Rich.  The conversations involve direct allegations ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ nearly all of which Defendant Couch later published via one or more of his various social media platforms.  The conversations, moreover, include a discussion between Defendants Couch and Butowsky ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓   *See infra* at Factual Background.  The recordings document the states of mind of the Defendants in this case, and they are unquestionably relevant to Plaintiff's ability to prepare for depositions, summary judgment, and an eventual trial.  Moreover, the conversations between the Defendants are pristine records of conversations about which Defendant Couch has claimed (in his interrogatory responses) he cannot recall all of the details, yet nonetheless has made representations regarding those conversations that are either incomplete or inaccurate in material respects.

---

[1] Defendant Couch has rejected Plaintiff's repeated requests that he de-designate the audio recordings, including on February 13, 2020, February 21, 2020, and August 11, 2020, as part of Plaintiff's outreach pursuant to Local Rule 7(m).  Accordingly, Plaintiff understands Defendant Couch will oppose this motion.

1

Defendant Couch has no serious argument that he has "good cause" to deprive Plaintiff access to case-critical conversations between the Defendants in this case, or those involving Mr. Wheeler, who owed Plaintiff a contractual obligation of confidentiality. Declaration of Meryl Governski Exhibit A.[2] Defendant Couch has failed to articulate any legitimate basis for shielding these conversations from the "statutory presumption in favor of open discovery, extending even to those materials not used at trial." *John Does I-VI v. Yogi*, 110 F.R.D. 629, 632 (D.D.C. 1986); *see also Doe v. District of Columbia*, 697 F.2d 1115, 1119 (D.C. Cir. 1983) (holding that when district courts use protective orders to prevent "abusive invocations" of discovery procedures, they "must tailor the restraint so as to sweep no more broadly than necessary" and be "confident" that doing so is "essential to shield a party from significant harm or to protect an important public interest"); PO ¶ 7 (ordering the "burden of persuasion in such proceeding shall be on the Producing Party"); Fed. R. Civ. Pr. 26(c). Instead, Defendant Couch's defense of marking these recordings as AEO is that Defendant Butowsky and Mr. Wheeler were his "sources," and therefore these conversations must remain shielded from Plaintiff (and the public) even though Defendant Couch publicly divulged both the identity of these sources and the content of their accusations against Plaintiff.[3] But it is obvious that these recordings do not contain "highly confidential material" as that term is defined under the Protective Order—instead, the reason that Defendants seek to bury these recordings is that they provide contemporaneous proof the Defendants ▮▮▮▮▮▮▮▮

---

[2] All exhibits refer to those attached to the Declaration of Meryl Governski (hereinafter "Governski Decl.").

[3] To be sure, it can be legitimate to restrict access to sensitive materials "when serious harm to a party or to the community cannot be avoided without either forbidding discovery altogether or curtailing communication between one of the litigants and his attorney regarding discovered materials"—including where, as here, defendants have a history of distorting "evidence" in order to engage in a defamatory campaign causing harm. *Doe v. District of Columbia*, 697 F.2d at 1119. Defendant Couch cannot substantiate that those conditions exist here.

2

The Court should reject Defendant Couch's attempt to deprive Plaintiff and the public of the truth, and order that all confidentiality designations be removed from the corresponding five audio recordings.

## FACTUAL BACKGROUND

On June 21, 2018, this Court entered the PO to which all parties stipulated. *See* PO. The PO establishes the parameters for the designation of discovery materials as "Confidential" or "Highly Confidential Information – Attorneys' Eyes Only" ("AEO"), and defines the latter as including "sensitive personal information, medical records, bank records, non-public personal addresses, law enforcement investigations, and matters related to national security." *Id.* ¶ 3(b).[4] In order to designate materials AEO, the designating party must "reasonably believe" that they "contain or reflect any highly confidential information." *Id.* ¶ 3(a).

As described in detail immediately below, Defendant Couch has designated his audio recordings as AEO, including those at issue in this Motion. The sole basis that Defendant Couch has provided to justify the AEO designations is that he "has sources and is entitled to protect them", including from Plaintiff whom he "has no reason to trust." Governski Decl. ¶ 2.

### A. Recorded Conversations Between Defendants Couch and Butowsky

Before this litigation existed, Defendant Couch made the decision to disclose to the public that he had relied upon Mr. Butowsky as his source for the allegations Defendant Couch published regarding Plaintiff Rich. For example, Defendant Couch used his social media to publish all of

---

[4] The AEO designation permits counsel to view the designated material but prohibits disclosure to *inter alia* the named parties except in narrow circumstances. *See* PO ¶ 5.

3

the following statements (originally via his Periscope video feed) about his conversations with Defendant Butowsky:

- "I'm going to follow Ed's lead here. *Ed and I have had a couple of phone calls*, where we had a couple of great talks, and Ed just put it out there—Aaron Rich accepted money." Dkt. 3 ¶ 41.

- "I've got my friend Ed Butowsky here in this chat. There's no one closer to this investigation than Ed, and, Ed, thank you for coming out, brother, I appreciate it. And so *if you guys wondered who America First Media was talking to, and who multiple sources we have in this investigation, Ed Butowsky's here right now*, folks." *Id*. ¶ 42.

- "A huge thanks to Ed Butowsky, who I guess at this point, I mean hell it's out, *Ed joined my Periscope, yea he's one of my sources America*." *Id.* ¶ 43.

- *"I know Ed Butowsky is working on that*—we need access to Aaron Rich's bank accounts because the money went into Aaron Rich's personal accounts from WikiLeaks." *Id.* ¶ 50.

- "Aaron Rich is involved. *We know from Ed Butowsky* that Aaron Rich took money from WikiLeaks. We've proved that." *Id.* ¶ 52.

In the course of this litigation, Defendant Couch has served on Plaintiff various filings and discovery responses *without any confidentiality designations* that describe his August 2017 conversations with Defendant Butowsky. As examples, Defendant Couch has stated:

- "*Defendants AFM and Mr. Couch never mentioned Aaron Rich and Wikileaks together until having conversations in early August of 2017 with Defendant Butowsky*. Any statements made after intel was given to AFM and Mr. Couch were from our source Defendant Butowsky." *See* Dkt. 95-11 at 6 ¶ 5 (Declaration of Defendant Couch).

- "*Statements that AFM and Mr. Couch made in regards to Plaintiff were from our source Defendant Butowsky*." *Id*. at 7 ¶ 7.

- "*I first spoke to Ed [Butowsky] in August 2017*, this was my first time every [*sic*] speaking to him. *He informed me that* he had discussions with Mary & Joel Rich and they informed him that they 'knew' what Seth and Aaron did." *See* Dkt. 95-10 at 10 (Defendant Couch's response to Interrogatory No. 1).

- "*All information reported on Aaron Rich, Wikileaks, Money, and Emails came from Defendant Butowsky*." Dkt. 95-10 at 11 (Defendant Couch's response to Interrogatory No. 2).

- "*Defendant first spoke to Ed Butowsky in August of 2017 and spoke to him twice before the August 15, 2017 periscope*. *Defendant does not recall all the details of those two conesrvations* [*sic*]. Defendant remembers that Ed informed him: that Ed knew Seth and Aaron had leaked DNC emails to

4

> Wikileaks; that Ed had had discussions with Mary & Joel Rich who had informed him they knew what Seth and Aaron had done but wanted Seth's murder solved; that Aaron had received money from Wikileaks; that Ed had offered to cover the costs of a private investigator to research Seth's murder and was surprised when parents [sic] the parents accepted his offer; that the parents had interviewed a number of potential investigators and then chose Rod Wheeler; that Ed and Rod were at odds, but that Ed thought Rod had done a good job in his investigation." Dkt. 95-15 (Defendant Couch's supplemental response to Interrogatory No. 1).[5]

On December 6, 2019, Defendant Couch asserted (for the first time) that he would withhold certain audio, including the three recordings with Defendant Butowsky, based on a purported reporter's privilege. *See* Dkt. 96 at 11. The Court ordered Defendant Couch to provide testimony about and produce all of the materials he was withholding "on the basis of a purported reporter's privilege," Dkt. 133, and on February 5, 2020, denied his motion for reconsideration, ordering Defendant Couch to produce all withheld materials "within 72 hours" or the Court would "address whether to hold him in contempt," Dkt. 151.[6] Defendant Couch produced the audio recordings on February 10, 2020—including three recordings of his conversations with Defendant Butowsky bearing the bates stamps MC001047, MC001048, MC001049 ("Couch-Butowsky Recordings")—and designated them all as AEO. Ex. B; *see also* Exs. C-E.[7]

---

[5] Defendant Couch did not affix his signature to the responses he served on June 23, 2019, but he has since ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See* Dkt. 96 at Exhibit 7 at 98:23-99:5 (12/12/19 Deposition of Matthew Couch ("Couch Deposition")). He subsequently has served multiple supplemental responses.

[6] Defendant Couch also objected to producing the Couch-Butowsky Recordings to National Public Radio (NPR) as part of a subpoena in Defendant Butowsky's litigation in that case, before he agreed to their production two months later.

[7] The five audio recordings at issue in this Motion are referred to collectively hereinafter as the "Audio Recordings" and certified transcripts are attached to the Governski Declaration. *See* Exs. C-G. Plaintiff will provide a DVD of the Audio Recordings if the Court so requests.

5

The audio bearing bates stamp MC001047 appears to memorialize the first conversation between Defendants Couch and Butowsky, dated August 13, 2017, and includes the following excerpts about Plaintiff:



Ex. C at 3:10-4:8 (emphasis added).[8]



*Id.* at 22:2-20 (emphasis added).



---

[8] Defendant Couch has testified under oath ▮▮▮▮▮ Ex. H at 190:7-191:8. Neither Defendant Butowsky nor Defendant Couch ▮▮▮▮▮ in their initial disclosures, nor do they reference any conversations involving ▮▮▮▮▮ as a source for their related statements about Plaintiff in any of their interrogatory responses.



*Id.* at 29:5-31:3.



*Id.* at 54:11 -55:23.

During the same August 13, 2017 call, Defendant Butowsky ▌

7

███████████████████████." *Id.* at 18:6-16; 48:12-18; 52:15-21. Defendant Butowsky tells Defendant Couch that he is ████████████████████████████████████████████████," to which Defendant Couch responds: ████████████████████████████████████████████████████. *Id.* at 52:23-53:14.

In a conversation on August 18, 2017—three days after Defendant Butowsky joined Defendant Couch on a Periscope during which they, for the first time, accused Plaintiff of various crimes, including receiving money in his account from WikiLeaks—

Ex. D at 2-5.

In the third recorded conversation, dated September 13, 2017, Defendant Butowsky ███

█████ Ex. E at 6-9. Additionally discovery ████████████ that Defendant Couch attended ████████ in Dallas, and that the discussions included launching a "surveillance operation against the Rich family" including by "outfit[ting] a van" to "listen in on phone calls, to listen on conversations, and to listen to whatever devices I have to get into their emails." Dkt. 83.

### B. Recorded Conversations Between Defendant Couch and Rod Wheeler

Defendant Couch has publicly identified Mr. Wheeler as a basis for his statements about Plaintiff, including in discovery in this case, Dkt. 95-11 at 8 ¶ 16, and on social media. For example, in a series of tweets dated July 25, 2019, Defendant Couch divulged the substance of his conversations with Mr. Wheeler, including the accusation that Plaintiff "informed everyone not to

talk about certain things in the investigation" into the murder of Seth Rich. *See* Ex. I. On November 5, 2019, Defendant Couch produced two "audio files of his conversations with Rod Wheeler" dated August 6, 2018, and August 20, 2018 and bearing the bates numbers MC000636 and MC000635, respectively, both of which he designated as AEO. Ex J; *see also* Exs. F-G (hereinafter, "Couch-Wheeler Recordings"). The Couch-Wheeler Recordings include party admissions by Defendant Couch about *inter alia* co-Defendant Butowsky:



Ex. F at 6:5-11.



*Id.* at 8:9-21.



*Id.* at 9:13-10:7.

9



*Id.* at 51:20-53:6.



*Id.* at 54:17-55:23.



Ex. G at 29:7-30:24.

## ARGUMENT

Defendant Couch cannot provide the "particular and specific demonstration of fact" to establish the "good cause" that the law requires in order to deprive access to and "interfere with plaintiff['s] ability to communicate with counsel" about the Audio Recordings. *Berliner Corcoran & Rowe LLP v. Orian*, 662 F. Supp. 2d 130, 135 (D.D.C. 2009); *John Does I-VI*, 110 F.R.D. at 632 (internal citations omitted). None of the Audio Recordings contain or reflect any of the categories that the PO defines as AEO,[9] and Defendant Couch cannot show that he "reasonably believe[s]" that the Audio Recordings "contain or reflect any highly confidential information," as is required under the PO and the law. *Id.*; *see also In re ULLICO Inc. Litig.*, 237 F.R.D. 314, 317 (D.D.C. 2006) (a party abuses the "overarching requirement of good faith" provided by a protective order when *inter alia* the designations "exceed the scope" of the categories articulated therein). Instead, Defendant Couch's sole justification for depriving Plaintiff, his family, and the public from access to the Audio Recordings is his (third) attempt to claim a source privilege that the Court has already rejected and a conclusory assertion that he has "no reason to trust" Plaintiff. This is not the "good cause" the law requires.

*First*, the claim that Defendant Couch is "entitled" to a source privilege is contrary to the law of the case. This Court has already held that Defendant Couch has no right to assert a reporter's privilege, Dkt. 133, Dkt 151, and the Court should apply the same rationale here. *Thomas v. Gandhi*, 650 F. Supp. 2d 35, 39 (D.D.C. 2009), *aff'd* 377 F. App'x 25 (D.C. Cir. 2010) ("The law of the case doctrine provides, in part, that 'the *same* issue presented a second time in the *same case* in the *same court* should lead to the *same result.*'" (italics in original)) (Leon, J.). Defendant Couch should not be permitted to use a privilege that this Court has held to be

---

[9] "[S]ensitive personal information, medical records, bank records, non-public personal addresses, law enforcement investigations, and matters related to national security." PO ¶ 3(b).

11

inapplicable and waived in order to shield conversations from disclosure to Plaintiff or from use in discovery, pleadings, and briefs.

*Second*, even assuming *arguendo* that Defendant Couch at one time had a right to claim the protection of any media shield law, that rationale does not extend to a desire to "protect" his co-Defendant or Rod Wheeler.[10] As to Defendant Butowsky, the Court has already held that he is "neither a journalist nor a news 'source'" where (as with Defendant Couch) he serves as a "facilitator" of the content and "not a source." *See* Dkt. 177. Defendant Butowsky is not a "source" who can dictate confidentiality when it suits him—he is a facilitator and co-conspirator with Defendant Couch, and the audio recordings amount to ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. In any event, the First Amendment places *no* value in false speech, and therefore *at minimum* the conversation between the Defendants about a ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ cannot be shielded from public disclosure on the basis of any privilege grounded in First Amendment principles.

What is more, Defendant Couch has waived any purported entitlement to "protect" his conversations with Defendant Butowsky and Mr. Wheeler in multiple respects. Before this litigation began, Defendant Couch publicly disclosed these individuals and the contents of their communications on his social media platforms—he now seeks to shield only those portions of his communications that he finds disadvantageous to his interests. Defendant Couch has relied upon Defendant Butowsky and Mr. Wheeler, as well as the contents of their communications to him, as a basis for his defenses *in this very litigation*. This is a paradigm case of using a privilege as sword and shield, and the Court should not permit it. The law does not permit Defendant Couch to benefit

---

[10] In his deposition, Defendant Couch testified that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. *See* Dkt. 96 at Exhibit 7 at 265:18-24.

from his own selective disclosure or purported summaries of conversations when it suits him, while simultaneously using the PO to shield the underlying communications that directly ████████ ███

*Third*, Defendant Couch's purported lack of "trust" for Plaintiff is an insufficient basis to designate the Audio Recordings as AEO as a matter of law. *See Berliner Corcoran & Rowe LLP v. Orian*, 662 F. Supp. 2d 130, 135 (D.D.C. 2009) (an "unwarranted" conclusion that a receiving party would "reveal this information" without "certainty" is an insufficient basis to "interfere with plaintiff['s] ability to communicate with counsel"). In the absence of near certainty that the opposing party will abuse discovery—which there can be no good faith basis for asserting as to Plaintiff—a unilateral pronouncement that one party distrusts another does not provide a "good faith" basis for shielding materials. Here, Defendants have made no allegation, nor could they, that Plaintiff has disclosed a single document subject to the Protective Order.

If a lack of "trust" for the opposing party was a proper basis for an AEO designation, Plaintiff would be entitled to designate *every single document* AEO given the Defendants' history of pushing their own agenda at the expense of a grieving family. For example: Defendant Butowsky pushed the Rich family to hire Mr. Wheeler by claiming he was a Good Samaritan while (in the words of the Second Circuit) "exploit[ing] Wheeler's connection to the Riches to give credence to what [Malia] Zimmerman and Butowsky knew were false accusations against Seth— which Zimmerman and Butowsky widely disseminated through Fox News." *Rich v. Fox News Network, LLC*, 939 F.3d 112, 117 (2d Cir. 2019). For his part, Defendant Couch publicly read Plaintiff's personal letter (which explained the anguish that Defendant Couch has caused him) in a live broadcast while requesting donations, implying he was worth the investment because there was now a "direct line of communication with Aaron Rich." Dkt. 3 ¶ 69 (Periscope, Jan. 18, 2017).

13

In any event, these materials should not be designated with ***any marking*** under the Protective Order. The presumption of a public discovery process should apply to these recordings absent some good faith argument under the existing Protective Order, and here there is none. Plaintiff should be free to use these recordings in filings and submissions as relevant to the litigation without having to seal the materials based on nothing more than Defendant Couch's subjective view that the discussions were sensitive.

*Fourth*, the content of the Audio Recordings demonstrates that Defendant Couch's objective is not to protect any interest cognizable under the Protective Order—instead, the real interest is to prevent the truth of what he and Defendant Butowsky discussed from being publicly revealed. These recordings are a ▮▮▮▮▮▮ demonstrating Defendants' collective mental states just prior to when Defendant Couch first began to defame Plaintiff based upon Defendant Butowsky's allegations. They demonstrate an intent to ▮▮▮▮▮▮

▮▮▮▮▮▮

▮▮▮▮▮▮

▮▮▮▮▮▮

▮▮▮▮▮▮

▮▮▮▮▮▮

▮▮▮▮▮▮

▮▮▮▮▮▮, including their efforts to label Plaintiff's allegations as "wildly implausible conspiracy theory" that "Defendant Ed Butowsky conspired with Defendant Matt Couch to defame Aaron Rich." *See* Dkt. 174-1.

It is an abuse of the Federal Rules of Evidence to use a PO to shield material in order to avoid being "embarrassed by the public disclosure of formerly confidential communications."

*Berliner Corcoran*, 662 F. Supp. 2d at 135; *cf. Aircraft v. Dep't of Def.*, 2008 WL 11515644, at *7 (D.D.C. Sept. 22, 2008) ("[I]t is simply irrelevant that Plaintiff may be seeking confidential treatment for the documents in order to avoid disclosure of information that might be damaging to its reputation."). The Couch-Wheeler Recordings bear directly on Defendant Couch's state of mind and directly ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[11]

*Finally*, Defendant Couch cannot substantiate why his own desire to "protect" Defendant Butowsky and Mr. Wheeler should trump the ability of Plaintiff's counsel to consult with their client about the case-critical information contained in the Audio Recordings. As one example, and as Plaintiff's counsel explained to opposing counsel in a correspondence that went unanswered, "our client is entitled to know what your clients are claiming ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ is entitled to that information." Ex. K. Plaintiff, his family, and other individuals ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ have a right to know what the Defendants have said about them in order to adequately assess those statements, and to assess whether to file lawsuits or assert new causes of action.

## CONCLUSION

For the aforementioned reasons, Plaintiff respectfully requests that the Court de-designate the Audio Recordings bearing bates numbers MC001047, MC001048, MC001049, MC000635, and MC000636.


DATED:  August 26, 2020               Respectfully submitted,

                                      */s/ Michael J. Gottlieb*

---

[11] The Couch-Butowsky Recordings and parts of the Couch-Wheeler Recordings are presumptively admissible under Federal Rule of Evidence 801(d) as party admissions.

MICHAEL J. GOTTLIEB (D.C. Bar No. 974960)
WILLKIE FARR & GALLAGHER LLP
1875 K Street NW
Washington, DC 20006
Tel: (202) 303-1000
Fax: (202) 303-2000
mgottlieb@willkie.com

JOSHUA P. RILEY (D.C. Bar No. 1026900)
MERYL C. GOVERNS KI (D.C. Bar No. 1023549)
BOIES SCHILLER FLEXNER LLP
1401 New York Ave NW
Washington, DC 20005
Tel: (202) 237-2727
Fax: (202) 237-6131
jriley@bsfllp.com
mgovemski@bsfllp.com

*Attorneys for Plaintiff Aaron Rich*

## **CERTIFICATE OF SERVICE**

The undersigned counsel certifies that on August 26, 2020, the foregoing document was filed through the CM/ECF system and thereby served electronically on counsel for Defendant Edward Butowsky, and Defendant Matthew Couch. A courtesy copy of the foregoing document also was emailed to their counsel, Eden Quainton, at equainton@gmail.com. Mr. Quainton has agreed to convey served and filed documents to Defendant America First Media through Defendant Couch as necessary.

Dated: August 26, 2020

> */s/ Michael J. Gottlieb*
> MICHAEL J. GOTTLIEB (D.C. Bar No. 974960)
> WILLKIE FARR & GALLAGHER LLP
> 1875 K Street NW
> Washington, DC 20006
> Tel: (202) 303-1000
> Fax: (202) 303-2000
> mgottlieb@willkie.com