**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AARON RICH | |
| Plaintiff, | Civil Action No. 1:18-cv-00681-RJL |
| v. | Hon. Richard J. Leon |
| EDWARD BUTOWSKY, MATTHEW COUCH, and AMERICA FIRST MEDIA | |
| Defendants. | |

<u>**PLAINTIFF'S OPPOSITION TO DEFENDANT COUCH'S PURPORTED CROSS**</u>
<u>**MOTION FOR LEAVE TO FILE AN ANSWER, AFFIRMATIVE DEFENSES, AND**</u>
<u>**COUNTERCLAIM**</u>

MICHAEL J. GOTTLIEB (D.C. Bar No. 974960)
MERYL C. GOVERNSKI (D.C. Bar No. 1023549)
WILLKIE FARR & GALLAGHER LLP
1875 K Street NW, Washington, DC 20006
Tel: (202) 303-1442 / Fax: (202) 303-2000
mgottlieb@willkie.com
mgovernski@willkie.com

JOSHUA P. RILEY (D.C. Bar No. 1026900)
BOIES SCHILLER FLEXNER LLP
1401 New York Ave NW, Washington DC 20005
Tel: (202) 237-2727 / Fax: (202) 237-6131
jriley@bsfllp.com

*Attorneys for Plaintiff Aaron Rich*

On August 26, 2020, Plaintiff Aaron Rich filed a Motion to De-Designate Certain Audio Recordings Produced by Defendant Couch. Dkt. 233 (public); Dkt. 234-1 (sealed) ("Underlying Motion"). On September 9, 2020, Defendant Couch filed an Opposition to the Underlying Motion and a Cross-Motion for Leave to File an Answer, Affirmative Defenses, and Counterclaim. *See* Dkt. 244 ("Purported Cross Motion" or "Def. Mot.").[1] By and through undersigned counsel, Plaintiff moves the Court to deny Defendant Couch's Purported Cross Motion because it seeks to file an answer, affirmative defenses, and a counterclaim that are untimely, prejudicial, and fail as a matter of law.[2] Defendant Couch long-ago waived the opportunity filed an answer, affirmative defenses, and a counterclaim, and to permit their filing now would substantially prejudice Plaintiff. *See infra* § I. Even if Defendant Couch has not

---

[1] Plaintiff filed a Reply in support of the Underlying Motion on September 15, 2020. Dkt. 249 (public); Dkt. 250 (sealed). Relatedly, on September 2, 2014, Plaintiff filed a Motion to Modify Designations Of An Audio Recording Produced By Defendant Matthew Couch, specifically a recording bearing bates number MC001046. Dkt. 240 (public); Dkt. 241-1 (sealed) (collectively, "Motion"). Defendant Couch's opposition to the Motion was due on September 16, 2020—fourteen days after Plaintiff filed his Motion. LCvR7(b). Because Defendant Couch has not filed an opposition to Plaintiff's Motion, the Court should therefore consider the Motion unopposed and grant it. *See Ashford v. E. Coast Express Eviction*, 774 F. Supp. 2d 329, 331 (D.D.C. 2011) (Leon, J.); *United States v. Alrasheedi*, 953 F. Supp. 2d 112, 113 (D.D.C. 2013) (Leon, J.).

[2] Plaintiff intended to move the Court to strike Defendant Couch's Cross Motion as an improper cross motion, but in the course of conferring counsel for Plaintiff and Defendant Couch agreed to request that the Court treat the Cross Motion as an independent motion. Accordingly, Plaintiff's Motion to De-Designate Certain Audios Produced By Defendant Matthew Couch is fully briefed and ready for the Court's resolution. *See* Dkt. 234-1 (sealed motion); Dkt. 244 (sealed opposition); Dkt. 250 (sealed reply) (collectively "Motion to De-Designate"). This filing constitutes Plaintiff's Opposition to Defendant Couch's Motion for Leave To File An Answer, Affirmative Defenses, and a Counterclaim, to which Defendant Couch intends to file a reply within the time contemplated by the federal rules. Defendant believes that the Court should consider the facts set forth in the proposed counterclaim as part of its resolution of the Motion to De-Designate; Plaintiff does not share that view, but is comfortable with the Court simply treating the motions as separate for purposes of resolving them on the merits, with the Court according whatever weight it deems appropriate to the facts alleged in the proposed counterclaim in ruling on the Motion to De-Designate.

waived his right, the Court should not permit Defendant Couch to file a prejudicial counterclaim that would be futile as a matter of law.  *See infra* § II

## I. DEFENDANT COUCH WAIVED FILING HIS ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM, AND TO ALLOW HIM TO FILE THEM NOW WOULD SUBSTANTIALLY PREJUDICE PLAINTIFF.

### A. Defendant Couch waived filing his answer and affirmative defenses.

The Purported Cross Motion begins with an odd concession—namely, Defendant Couch admits that he ████████████████████████████████████████████

████████  *See* Def. Mot. at 1; *see also id*. at 10 ████████████████████████

████████ . . .").  Plaintiff ████████.  Defendant Couch *did* default by failing to file timely and responsive pleadings as required under the Federal Rules.  *See* Fed. R. Civ. P. 8(b)-(c), 12(a)-(b); *Boyd v. United States*, 209 F. Supp. 3d 160, 165 (D.D.C. 2016) ("Generally, defendants in a civil case must file an answer to the complaint stating their defenses to each claim asserted against [them] and either admit[ting] or deny[ing] the allegations asserted against [them.]") (internal quotation marks omitted and alterations in original). His failure to do so has consequences.  "It is well-settled that a party's failure to plead an affirmative defense generally results in the waiver of that defense and its *exclusion from the case*."  *See Harris v. Sec'y, U.S. Dep't of Veterans Affairs*, 126 F.3d 339, 343 (D.C. Cir. 1997) (internal citations and alterations omitted) (emphasis in original); *Walker v. England*, 590 F. Supp. 2d 113, 135–36 (D.D.C. 2008) (finding defendant waived affirmative defenses where he "failed entirely to answer" and to assert affirmative defenses).[3]

---

[3] *United States v. Olano*, 507 U.S. 725, 733 (1993) (waiver refers to a party's "intentional relinquishment or abandonment of a known right"); *United States v. All Assets Held at Bank Julius Baer & Co.*, 202 F. Supp. 3d 1, 7, 9 (D.D.C. 2016) (rejecting party's argument that there was no waiver where party sought to use discovery to determine whether to plead defenses); *Ruffin v. New Destination*, 800 F. Supp. 2d 262, 268 (D.D.C. 2011) ("Defendants did not raise this affirmative defense in their answer, and therefore it is waived."); *Biton v. Palestinian Interim*

Despite ██████ default, Defendant Couch now attempts to file an answer to the Complaint and ████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████—which largely amount to attempting to reset the case to May 2018 (when Defendant Couch served his original motion to dismiss) and April 2019 (when his answer and affirmative defenses were due).  Def. Mot. Ex. B at 13-14; *see infra*.  The Purported Cross Motion provides no legal citation or argument for why a Court should reward Defendant Couch for ████████ defaulting by permitting him to file an answer and ██████████ affirmative defenses almost 18 months after they were due.[4]  Instead, Defendant Couch claims that he should be allowed to file untimely pleadings because *Plaintiff* "███████████████████

████████████████████████████████████████████████

████████████████████████ *Def. Mot. at 9; see also id.* ("████████████████

████████████████████████████████████████████████

███████████████████████████████████████").  Accepting *arguendo* that

---

*Self-Gov't Auth.*, 239 F.R.D. 1, 4 (D.D.C. 2006) ("There is no authority permitting Defendants to file the answer out of time and without excusable neglect."); *Regency Commc'ns, Inc. v. Cleartel Commc'ns, Inc.*, 304 F. Supp. 2d 1, 7 (D.D.C. 2004) ("Defendants failed to timely plead an affirmative defense or file a counterclaim and their claim is therefore waived."); *accord In re Stevenson*, 519 B.R. 881, 884 (D.D.C. 2014) (Leon, J), *aff'd*, 789 F.3d 197 (D.C. Cir. 2015) (affirming determination of bankruptcy court to condition the filing of untimely affirmative defenses to require moving defendant to pay related attorney's fees).

[4] Defendant Couch's cases do not help him.  Unlike the defendants in those cases, Defendant Couch waited nearly eighteen months after the due date, more than one year after securing counsel, and more than five months after the close of discovery to attempt to file a belated pleading.  *See* Dkt. 244-1 at 9-10 (citing *Jackson v. Beech*, 636 F.2d 831, 832–33 (D.C. Cir. 1980) (allowing answer filed less than one month after complaint, where no prejudice to plaintiff)); *Serv. Emps. Int'l Union Nat'l Indus. Pension Fund v. Bristol Manor Healthcare Ctr., Inc.*, 307 F.R.D. 37, 43 (D.D.C. 2014) (no prejudice to plaintiff where parties had made "practically zero progress" in two years); *Great Socialist People's Libyan Arab Jamahiriya v. Miski*, No. 06-cv-02046 (LFO), 2008 WL 11396794, at *2 (D.D.C. Dec. 9, 2008) (declining to strike answer filed only four months late).

there were any legal nexus between granting leave to file waived pleadings with the existence of a motion to default, the Court should reject Defendant Couch's attempt to seek reward for his own refusal to comply with the Federal Rules of Civil Procedure. *See Delta Sigma Theta Sorority, Inc. v. LaMith Designs, Inc.*, 275 F.R.D. 20, 25 (D.D.C. 2011) (parties "have an independent obligation to comply with the Federal Rules of Civil Procedure and the local rules of the Court").

Defendant Couch ignores the plain operation of Rule 12 in claiming that, because his

███████████████████████████████████████████████████████████

██████████████████████████████████████ Def. Mot. at 3 (citing Rule 12(a)(1)(A)(i)); *see also* Dkt. 14 (joint stipulation between Plaintiff and Defendant Couch agreeing to extension to file motion to dismiss on May 17, 2018).  It is blackletter law that the filing of a motion (such as a motion to dismiss) "alters these periods" and establishes that a "responsive pleading must be served within 14 days after notice" that the Court has denied the motion or postponed its disposition.  *See* Rule 12(a)(4)(A). The Court entered an order denying motions to dismiss and transfer on March 29, 2019.  3/29/19 Minute Order.[5]  Accordingly, pursuant to Rule 12(a)(4)(A), Defendant Couch's answer was due fourteen days later—on April 12, 2019, nearly *18 months ago*.  Dkt. 56; Rule 12(a)(4).  Plaintiff could not have pursued default against Defendant Couch until sometime after April 12, 2019, because doing so before that date would have been premature.

---

[5] On May 17, 2018, Defendants Couch and AFM served a motion to dismiss and supporting declaration on Plaintiff's counsel via email, and stated that he would be mailing his papers to the Court.  *See* Dkt. 56 at 2.  Although the motion to dismiss does not appear on the Court's docket, Defendant Couch subsequently referred to it in his motion to transfer and publicly posted about it, and Plaintiff filed his opposition to it in June 2019. *See* Dkt. 47 at 1 ("as I explained in my motion to dismiss"); Dkt. 23 at 1 n.2 (Plaintiff's Opposition); Matthew Couch, Twitter (May 17, 2018), https://twitter.com/RealMattCouch/status/997178430000164864 (Defendant Couch publicly tweeted "Response Filed and Sent #Seth Rich").

4

The Purported Cross Motion frivolously asserts that ████████████████████████████
███████████████████████████████████████████████████████████████████████████████"

Def. Mot. at 3; *see also id.* at 9 (". . . ████████████████████████████████████████
████████████████████████████████████").  While literally accurate, that statement is

wildly misleading by omission.  As Defendant Couch and his counsel know, after Defendant

Couch failed to file an answer or affirmative defenses, Plaintiff on May 10, 2019 filed an

Affidavit In Support of Default with this Court, in which Plaintiff moved the Clerk of Court to

enter a Default against Defendants Butowsky, Couch, and America First Media Group (AFM)

pursuant to Rule 55(a).  *See* Dkt. 57.  Rule 55(a) states in no uncertain terms that: "When a party

against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend,

and that failure is shown by affidavit or otherwise, ***the clerk must enter the party's default***."

Fed. R. Civ. P. 55(a) (emphasis added); *United States v. Lairy*, No. 19-cv-2488 (RC), 2020 WL

4039176, at *2 (D.D.C. July 17, 2020) (under Fed. R. Civ. P. 55(b), "First, the Clerk of the Court

must enter default.  ***After the clerk's entry of default***, the plaintiff may move for a default

judgment.") (citation omitted and emphasis added).  Here, Plaintiff initiated default proceedings

by filing an affidavit of default, but the clerk did not enter (and still has not entered) Defendant

Couch's default.[6]  Why Plaintiff should be faulted for this chain of events is a mystery.

Beyond the absence of any cognizable legal or factual basis for why the Court should

excuse Defendant Couch from his obligation to comply with the Federal Rules of Civil

---

[6] The Purported Cross Motion embraces the circularity that Defendant Couch should be entitled
to file belated pleadings ████████████████
████████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

Procedure by permitting him to file a belated answer and counterclaims, the Court also should not do so because it would "act to the detriment" of Plaintiff whose case has been pending since March 2018.  *See Walker*, 590 F. Supp. 2d at 136.  Defendant Couch waited more than five months *after the close of discovery* before attempting to assert affirmative defenses, which indisputably has foreclosed the option of Plaintiff pursing a discovery strategy that incorporates the new claims.[7]  A finding of waiver and denial of leave to file affirmative defenses is proper where, as here, Plaintiff has "relied on Defendant's non-opposition to assert these claims" and Defendant's "shifting positions" would waste "party resources (having conducted discovery on issues associated with these claims) and judicial resources . . ." *Id.*

### B. Defendant Couch waived filing his attempted counterclaim.

The Purported Cross Motion cites Rule 13(f) and 15(a) as its procedural basis for asking the Court to permit Defendant Couch to file a counterclaim.  *See* Def. Mot. at 10-12.  Rule 13(f) has been abrogated—as the advisory notes to the rule explain, "Rule 13(f) is deleted as largely redundant and potentially misleading."  Even if some other (uncited) provision of Rule 13, or Rule 15, applies, both rules relate to *supplemental* or *amended* pleadings.  *See* Fed. R. Civ. P. 13(e) ("Counterclaim Maturing or Acquired After Pleading.  The court may permit a party to file a *supplemental* pleading asserting a counterclaim that matured or was acquired by the party after serving an earlier pleading.") (emphasis added); Fed. R. Civ. P. 15 (titled "Amended and Supplemental Pleadings"). There is no pleading for Defendant Couch to supplement or amend because, as discussed *supra*, he failed to file any pleading in the first place and waived his right

---

[7] If, as Defendant Couch claims, ███████████████████████████████████ ███████████ Def's. Mot. at 10, then Defendant Couch must have been aware of them sometime in the last two years and his counsel in the past year and could have pleaded them then. *See Crawford v. U.S. Dep't of Justice*, No. 05-cv-1424 (RMU), 2008 WL 2511345, at *1 (D.D.C. June 19, 2008) ("Once the defense becomes available, however, failure to amend one's answer to assert it counts as waiver.").

to do so. *See supra* § 1; Fed. R. Civ. P. 8; *N. Am. Cath. Educ. Programming Found., Inc. v. Womble, Carlyle, Sandridge & Rice, PLLC*, 887 F. Supp. 2d 78, 85–86 (D.D.C. 2012) ("The Court must identify how the amended complaint *differs from the original* before determining whether it should grant leave to amend.") (emphasis added); *accord Eng v. Cnty of L.A.*, 737 F. Supp. 2d 1078, 1099 (C.D. Cal. 2010) (claim untimely where party initially "made a conscious decision not to ascribe section 1983 liability" to other party, and thus there were no timely pleadings to amend).[8]   Having waived his opportunity to file any pleading in the first place, Defendant Couch also has waived his opportunity file a counterclaim.

Even if Rules 13 or 15 contemplated the filing of a counterclaim where there are not any existing pleadings to amend, there can be no serious argument that such relief is warranted here, where it is unduly delayed and would cause further delay and prejudice. *See Cameron v. Thornburgh*, 983 F.2d 253, 258 (D.C. Cir. 1993) (affirming denial of motion for leave to amend on the grounds of undue delay because leave was not sought until fifteen months after motions to dismiss were filed); *Residential Credit Opps. Tr. v. Poblete*, 245 F. Supp. 3d 91, 97 (D.D.C. 2017) (when "making the discretionary decision whether to permit a Rule 13(e) counterclaim, a court typically considers whether the case has proceeded to the point that allowing the counterclaim would cause confusion, delay, complication, or hardship") (internal quotation marks omitted); *Valle v. Karagounis*, No. 19-cv-03764 (CJN), 2020 WL 4039306, at *2 (D.D.C. July 16, 2020) (court has a "duty to police proposed amendments" for "bad faith or dilatory motive" or "undue prejudice to the opposing party"); *ASPCA v. Ringling Bros. & Barnum &*

---

[8] *See also Roelle v. Cobb Cnty Sch. Dist.*, No. 13-cv-3045 (WSD), 2014 WL 4457235, at *9 (N.D. Ga. Sept. 10, 2014) (denying motion to amend where no pending complaint); *Perry v. Pennsylvania*, No. 00-cv-1193, 2008 WL 11374376, at *1 n.2 (W.D. Pa. May 29, 2008) ("Plaintiff also cites Fed. R. Civ. P. 15, but there are no pleadings to amend."); *Farrow v. Sammis*, No. 07-cv-00097 (SWW), 2007 WL 4373602, at *2 n.1 (E.D. Ark. Dec. 7, 2007) ("In any case, because the original complaint never existed, there was no pleading to amend.").

*Bailey Circus*, 244 F.R.D. 49, 50–51 (D.D.C. 2007) ("The most important factor the Court must consider when deciding whether to grant a motion for leave to amend is the possibility of prejudice to the opposing party.").

Defendant Couch had access to the documents underlying the basis for his counterclaim *for at least seven months*[9] and has not provided the Court with any explanation for why it should excuse his decision to wait until now to raise to the possibility of a counterclaim with the Court.[10]   *See Preferred Meal Sys. v. Save More Foods, Inc.*, 129 F.R.D. 11, 13 (D.D.C. 1990) (denying defendant's motion to amend answer because "defendant's motion is untimely and, if granted, would require additional discovery and modification of the above dates. Moreover, the defendant does not claim that he only recently discovered the factual basis for his proffered counterclaim and offers no explanation or justification whatsoever for his lengthy delay . . .");

---

[9] Plaintiff's counsel produced documents to Defendant Couch on a rolling basis between November 15, 2019, and April 6, 2020, and every document that Plaintiff has been able to identify as providing the basis for Defendant Couch's counterclaim was produced by Plaintiff between December 24, 2019, and February 21, 2020. *See* Def. Mot. Ex. A (listing relevant documents ranging from bates numbers RICH0001350 to RICH0003243, produced no later than January 10, 2020); Governski Decl. ¶ 5. Plaintiff also produced a small batch of documents to defendants on August 31, 2020, in direct response to the parties' conversation relating to alleged deficiencies in the parties' productions, but importantly none of those documents bear any relation to the factual allegation in Defendant Couch's attempted counterclaim and Defendant Couch does not claim otherwise.

[10] That Defendant Couch could have asserted his counterclaim earlier is corroborated by his attempt to leverage discovery in order to boost the purported basis for his counterclaim. *Compare, e.g.,* Dkt. 178-3, served February 24, 2020 ("All Documents and Communications relating to the alleged hacking of the Steam account of Brad Bauman over which You have stated to the FBI and the DC Metropolitan Police you have custody and control."), *with* Def. Mot. Ex. B ¶¶ 55-56 (⬛⬛⬛⬛⬛⬛⬛⬛⬛). *See ASPCA*, 244 F.R.D. at 52-53 (denying leave to amend under Rule 15 where "[d]efendant decided to delay asserting this defense until three and a half years into the litigation, at least three years of discovery, and a year and a half after learning of plaintiffs' alleged payments . . . , and only after discovery appeared as though it was winding down . . . Such delay provides strong evidence of a dilatory motive aimed at prolonging the ultimate disposition of the one issue in this case."); *see also All Assets Held at Bank Julius Baer & Co.*, 202 F. Supp. 3d at 7, 9 (party cannot leverage discovery to see if belated pleading is warranted).

*Woodward v. DiPalermo*, 98 F.R.D. 621, 624 (D.D.C. 1983) ("If the amendment is proposed at a very late stage in the proceedings, or appears designed primarily to delay adjudication of plaintiff's claims, leave to amend may properly be denied."); *see also A Love of Food I, LLC v. Maoz Veget. USA, Inc.*, 292 F.R.D. 142, 145 (D.D.C. 2013) ("Here, defendant has not shown that it acted diligently; thus, the Court's inquiry must end, regardless of whether the amendment will assist the factfinder or result in prejudice to the plaintiff."); *In re Papst Licensing GmbH & Co. KG Litig.*, 762 F. Supp. 2d 56, 59, 61 (D.D.C. 2011) (no good cause where moving party was not diligent and opposing party would be prejudiced, where most of discovery completed and request "would significantly expand and delay the litigation").[11]

Fact discovery has been closed for nearly six months, and but for Defendants' conduct the case would be moving toward summary judgment briefing, which Plaintiff has been and is eager to commence. The addition of the attempted counterclaim would require yet another revised schedule; complicate and expand the case by raising novel issues; and, as evidenced by this briefing alone, necessitate the parties and the Court to expend additional resources. *See Williamsburg Wax Museum, Inc. v. Historic Figures, Inc.*, 810 F.2d 243, 247 (D.C. Cir. 1987) (district court properly denied motion to amend complaint where amendment would have

---

[11] Defendant Couch's own cases demonstrate that he should have sought to file his counterclaim long ago. *See* Def. Motion at 10-12 (citing *Perkins v. Fort Lincoln II Condo. Ass'n*, No. 09-cv-466 (RMC), 2009 WL 10736956, at *2 (D.D.C. July 30, 2009) (granting leave to file *compulsory* counterclaim *where discovery had not commenced*); *In re Page Assocs.*, 51 B.R. 11, 12 (Bankr. D.D.C. 1984) (granting leave to amend where added counterclaim sought *within twenty days* of first filing); *Woodward*, 98 F.R.D. at 624 (leave to amend where sought *"only a few months"* after answer and parties were engaged in *initial discovery*) (emphasis added); *Farouki v. Petra Int'l Banking Corp.*, No. 08-cv-2137 (RCL), 2013 WL 12309520, at *4 (D.D.C. June 12, 2013) (leave to amend where amendment took *only three weeks*, *discovery had not commenced*, and there was no dilatory intent); *Park v. Hyatt Corp.*, 436 F. Supp. 2d 60, 67 (D.D.C. 2006) (leave to file counterclaims granted when filed *before discovery commenced and only two months after filing* of complaint)); *see also id.* at 10-11 (citing *N.A.C.E.P.F., Inc. v. Womble, Carlyle, Sandridge & Rice, PLLC*, 887 F. Supp. 2d 78 (D.D.C. 2012) (interests of justice *did not* warrant leave to amend)).

injected new issue into case); *LaPrade v. Abramson*, No. 97-cv-0010 (RWR), 2006 WL 3469532, at *5 (D.D.C. Nov. 29, 2006) ("A motion to amend may be denied as prejudicial where a defendant would have to conduct additional discovery[.]").  Permitting Defendant Couch to assert a counterclaim will reward Defendants' dilatory approach toward discovery and provide them with a drawn out and costly discovery schedule that allows them to continue to chase unsubstantiated and baseless theories and concoct new ones.  *See Robinson v. District of Columbia*, 283 F.R.D. 4, 7 (D.D.C. 2012) (interests of justice not served where amended complaint would require party "to make sense of . . . labyrinth of meandering and argumentative allegations" and would pose undue burden). *Cf. Lurie v. Mid–Atl. Permanente Med. Grp., P.C.*, 589 F. Supp. 2d 21, 23 (D.D.C. 2008) (party required to show "good cause" to alter the calendar lest the rules "would allow for parties to disregard scheduling orders, which would undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier") (internal quotation marks omitted).

The Purported Cross Motion concludes that the "interests of justice" (presumably based on the abrogated Rule 13(f)) favor permitting Defendant Couch to upend the schedule in this case simply because he claims that the counterclaim's statute of limitations is not expired and that Defendant Couch could file a separate action.  Def. Motion at 11.  Defendant Couch cites no case law indicating that the legal standard for granting leave to file a counterclaim is whether the statute of limitations has run or whether the party could (theoretically) file a separate claim.  *Id.* Nor could he; that test would turn the Federal Rules and case law establishing a Court's duty to police the filing of counterclaims to nullities.  Judicial economy requires denying Defendant Couch leave to file his counterclaim.  *Compare* Def. Mot. at 12 ("[J]udicial economy argue[s] in favor of permitting Defendant to assert his counterclaim in the same forum. . . ."), *with K.O. v. U.S. Immigr. & Customs Enf't*, No. CV 20-309 (RC), 2020 WL 3429697, at *14 (D.D.C. June

10

23, 2020) (denying amendment where "[j]udicial economy would be better served by the filing of a new action" so that parties could continue to litigate other claims).[12]

## II.   THE COURT SHOULD DENY DEFENDANT COUCH'S MOTION FOR LEAVE TO FILE HIS ATTEMPTED COUNTERCLAIM AS FUTILE.

Even accepting *arguendo* that Defendant Couch had not waived his right to do so, the Court still should not permit Defendant Couch to file his proposed counterclaim because his claims are legally frivolous on their face and could not survive a motion to dismiss.  Def. Mot. Ex. B ¶ 86 ("Attempted Counterclaim"); *Cheeks v. Fort Myer Constr. Corp.*, 728 F. App'x 12, 13 (D.C. Cir. 2018) (mem.) ("We agree with the district court that granting leave to file that complaint would be futile because Appellants' claims are unable to survive a motion to dismiss."); *United States v. Eisenberg*, 149 F. Supp. 3d 71, 85 (D.D.C. 2015) ("When a party cannot allege adequate facts to state a claim, or the amended pleading would not survive a motion to dismiss, a court acts within its discretion in denying leave to amend a pleading as futile.").[13]

In his attempted counterclaim, Defendant Couch asserts a single cause of action ("███████████████████████████") and seeks various forms of relief, including ███████ █████████████████████████████████████████████████████████████████████.  Def. Mot. Ex. B ¶¶ 1, 86.  Defendant Couch does not and cannot assert a cause of action based on ████████████████████████████████████████████████████████████████████████████

---

[12] *See also United States v. TDC Mgmt. Corp.*, No. 89-cv-1533, 1991 WL 35528, at *1–2 (D.D.C. Feb. 23, 1991) ("In sum, defendants' reliance on the bald assertion that 'justice requires' that their motion for leave to amend should be granted is unpersuasive.  Defendants have not offered the Court an adequate justification upon which the Court could reasonably exercise its discretion to grant the motion, especially in view of their undue delay in filing the instant motion and the prejudice to plaintiff if the motion were granted.").

[13] Plaintiff does not waive or limit any other the Rule 12 or other arguments not included here.

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████ (internal citations and quotations omitted).

Instead, Defendant Couch attempts to avoid the insurmountable legal hurdle to his claim by

pleading a █████████████████████, which fares even worse.

The crux of Defendant Couch's cause of action is that ██████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████. Def. Mot. Ex.

B ¶¶ 83-86.  Most of the allegations in the attempted counterclaim are attempts to disparage

Plaintiff with conspiracy theories that are irrelevant to the claim itself—the limited allegations

that are relevant, *see id.* ¶¶ 70-82, amount to allegations that Plaintiff ████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████, *id.*  The attempted

counterclaim cites as its sole support for the allegation that Defendant Couch is ████████████

---

[14] The attempted counterclaim misspells ██████████████████████████████

12

██████████████████████████████████████████████████████

████████████████████████████████ *Id.* ¶ 81.  In sum, Defendant Couch claims that by

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████

Defendant Couch's attempted counterclaim fails because a party that "plead[s] the bare

elements of his cause of action . . . [cannot] expect his complaint to survive a motion to dismiss."

*Ashcroft v. Iqbal*, 556 U.S. 662, 686–87 (2009); *see generally* Def. Mot. Ex. B.  Courts "need not

accept inferences drawn by plaintiff if such inferences are unsupported by the facts set out in the

complaint" and "where the court cannot infer more than the mere possibility of misconduct from

the facts, the complaint has alleged—but it has not shown—that the pleader is entitled to relief."

*Poindexter v. D.C. Dep't of Corr.*, 891 F. Supp. 2d 117, 119–20 (D.D.C. 2012) (Leon, J.)

(internal quotations, citations, and alterations omitted); *Sheller-Paire v. Gray*, 888 F. Supp. 2d

34, 40 n.5 (D.D.C. 2012) (Leon, J.) ("unsupported conclusions" are "not entitled to the

assumption of truth").  "A court need not accept a plaintiff's legal conclusions as true, nor must a

court presume the veracity of the legal conclusions that are couched as factual allegations."

*K.O.*, 2020 WL 3429697, at *7 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Dismissal is appropriate where the "plaintiff can prove no facts 'consistent with the allegations in

the complaint' to support the claim.  *Lewis v. Gov't of D.C.*, 643 F. Supp. 2d 119, 122 (D.D.C.

2009) (quoting *Twombly,* 550 U.S. at 563).

*First*, the attempted counterclaim is barred as a matter of law because, even accepting as

true the allegations of the Complaint, ████████████████████████████████████

██████ are protected by immunity from suit.  As Defendant Couch acknowledges in his related

lawsuit against Plaintiff and others—which the attempted counterclaim ██████ (*see* Def. Mot. Ex.

13

B ¶ 47) and is therefore incorporated by reference[15]—Plaintiff voluntarily testified under oath as part of a grand jury investigation which included questioning about Defendant Couch's public statements about *inter alia* Plaintiff's role in the murder of his brother.[16]  That fact disables any ███████████ because the interactions between law enforcement and grand jury witnesses are absolutely immune from such actions.  As the Supreme Court of the United States has held,

> .  .  .  we conclude that grand jury witnesses should enjoy the same immunity as witnesses at trial.  This means that *a grand jury witness has absolute immunity from any § 1983 claim based on the witness' testimony*.  In addition, as the Court of Appeals held, this rule may not be circumvented by claiming that a grand jury witness conspired to present false testimony or by using evidence of the witness' testimony to support any other § 1983 claim concerning the initiation or maintenance of a prosecution. Were it otherwise, "a criminal defendant turned civil plaintiff could simply reframe a claim to attack the preparation instead of the absolutely immune actions themselves." *Buckley v. Fitzsimmons,* 509 U.S. 259, 283, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993) (KENNEDY, J., concurring in part and dissenting in part); see also *Dykes v. Hosemann,* 776 F.2d 942, 946 (C.A.11 1985) *(per curiam)* ("[J]udges, on mere allegations of conspiracy or prior agreement, could be hauled into court and made to defend their judicial acts, the precise result judicial immunity was designed to avoid").

*Rehberg v. Paulk*, 566 U.S. 356, 369–70 (2012) (emphasis added).  Absolute immunity extends to those communications between a "witness and the prosecutor conducting the investigation engage[d] in preparatory activity, such as a preliminary discussion in which the witness relates the substance of his intended testimony."  *Id.*  Furthermore, even accepting as true the allegation that the ████████████████████████████████████████████████

---

[15] *St. Croix Chippewa Indians of Wis. v. Kempthorne*, No. CIV. 07-2210 (RJL), 2008 WL 4449620, at *2 (D.D.C. Sept. 30, 2008), *aff'd sub nom. St. Croix Chippewa Indians of Wis. v. Salazar*, 384 F. App'x 7 (D.C. Cir. 2010) (court may properly consider materials that plaintiff "incorporated by reference").

[16] *See Couch v. Verizon et al*, Case No. 1:20-cv-02151-RJL (D.D.C.) (Aug. 6, 2020) ¶¶ 95-97 (re questioning during grand jury, including "did you murder your brother"); *see also* Dkt. 3 ¶ 53 (Defendant Couch: "Aaron Rich definitely knew the hit was coming . . . "); *id.* ("…Seth Rich did not know it was coming and his brother did know it was coming.  His brother didn't set it up, but I think he knew it was coming . . . .").

███████████████████████████████████████████████████████████████

██████████████████████████ their actions are immune because they are "reasonable and, indeed the type of information customarily relied on by law enforcement officers" to secure warrants. *See Sharpe v. District of Columbia*, 860 F. Supp. 2d 61, 66 (D.D.C. 2012) (dismissing § 1983 claim based on immunity where detective secured warrant based on "objective reasonable" information irrespective of it ultimately being only "partially information" because "such a mistake does not negate his entitlement to immunity"); *accord Gales v. District of Columbia*, 47 F. Supp. 2d 43, 45 (D.D.C. 1999).

*Second*, even if the activity at issue were not immune from suit, Defendant Couch's conclusory statements that ████████████████████████████████████████████

███████████████████████████████████████████████████████████████

██████████████████ is precisely the type of "patently insubstantial claims" that cannot survive dismissal. *Compare* Def. Mot. Ex. B ¶ 80, *with Tooley v. Napolitano*, 586 F.3d 1006, 1009 (D.C. Cir. 2009); *Lewis v. Bayh*, 577 F. Supp. 2d 47, 54 (D.D.C. 2008) (dismissing as frivolous § 1983 claim based on allegations of wiretapping without evidence). As a legal matter, allegations based entirely on "information and belief" provide scant "basis" that would allow this Court to draw a reasonable inference that "any particular defendant is liable for the misconduct alleged." *Robertson v. Cartinhour*, 867 F. Supp. 2d 37, 59 n.57 (D.D.C. 2012), *aff'd*, 553 F. App'x 1 (D.C. Cir. 2014) (brackets omitted) (citing cases).[17] The United States Court of Appeals for the District of Columbia has affirmed the dismissal of a complaint alleging illegal wiretapping on "information and belief," explaining that:

---

[17] Defendant Couch's counsel should have been aware of the insufficiency of "information and belief" pleadings in this context considering that his former co-counsel in this case, Ty Clevenger, represented the plaintiff in *Robertson*.

. . . the particular combination of sloth, fanaticism, inanity and technical genius alleged here seems to us to move these allegations into the realm of claims "flimsier than 'doubtful or questionable'—...'essentially fictitious,'" *Best* [*v. Kelly*]*,* 39 F.3d [320] [,] [] 330 (citing *Hagans v. Lavine,* 415 U.S. 528, 537, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974)), not realistically distinguishable from allegations of "little green men" of the sort that Justice Souter recognized in *Iqbal* as properly dismissed on the pleadings. *Iqbal,* 129 S.Ct. at 1959 (Souter, J., dissenting). Indeed, the allegations appear similar to those in a number of cases that district courts have dismissed for patent insubstantiality: that plaintiff was subjected to a campaign of surveillance and harassment deriving from uncertain origins, either a long past employment by the FBI or a falling out with roommates even earlier, *Curran v. Holder,* 626 F.Supp.2d 30, 33–34 (D.D.C.2009); that a U.S. Senator orchestrated a program of hacking into plaintiff's personal computer, monitoring his phone calls, causing a power outage affecting half of Los Angeles, and tracking him by helicopter, *Lewis v. Bayh,* 577 F.Supp.2d 47, 54–55 (D.D.C.2008); and that the Postal Service had conspired with two persons unconnected to the federal government (and bearing her surname) to keep her under surveillance in Postal Service premises by unlawful use of electronic devices, *Delaine v. United States Postal Service,* 2006 WL 2687019, *2 (D.D.C.2006), *aff'd* No. 06–5321, 2007 U.S.App. LEXIS 7371, unpublished order (D.C.Cir. June 1, 2007).

*Tooley*, 586 F.3d at 1009–10 (ellipses in original); *accord Detar v. U.S. Gov't*, 174 F. Supp. 3d 566, 570–71 (D.D.C. 2016) (dismissing § 1983 action alleging *inter alia* conspiracy to intercept emails and use an illegal wiretap where claims describe "fantastic or delusional scenarios"); *Curran v. Holder*, 626 F. Supp. 2d 30, 34 (D.D.C. 2009) ("Moreover, plaintiff's allegations that she is currently the subject of surveillance are conclusory and unsupported by factual details. She asserts that defendants are conducting video and electronic surveillance of her. . . . These allegations do not make her conclusion that she has been the subject of surveillance anything other than fanciful."). *Cf. Harris v. Holder*, 885 F. Supp. 2d 390, 398 (D.D.C. 2012) (dismissing allegation of belief of surveillance by DOJ and FBI as "precisely the type of pleading that *Twombly* and *Iqbal* are intended to address").

As a factual matter, the emails referenced in the attempted counterclaim ███████

████████████████████████████████████████████████████████████████

████████████  *See* Def. Mot. Ex. B ¶ 81; *Poindexter*, 891 F. Supp. 2d at 119–20.[18]   None of the

emails reference, state, or suggest that the █████████████████████████████████

█████████████████████████████████████████████████   Defendant

Couch is a prolific user of public-facing social media platforms—he maintains active profiles on

Twitter, Periscope, and other social media services with numerous daily posts.  *See Couch v.*

*Verizon*, Dkt. 1 ¶ 3 (describing himself as "one of the foremost, and perhaps the most widely

known, independent investigators seeking to uncover the truth of what happened to Seth Rich").

Couch's purported counterclaim offers no plausible fact from which one could conclude that the

███████████████████████████████████████████████████████

█████████████████████████.  Def. Mot. ¶ 81; Governski Decl. Exs. A–C, ¶ 5; *see St.*

*Croix Chippewa Indians of Wis.*, No. CIV. 07-2210 (RJL), 2008 WL 4449620, at *2 (D.D.C.

Sept. 30, 2008) (incorporation by reference), *aff'd sub nom. St. Croix Chippewa Indians of Wis.*

*v. Salazar*, 384 F. App'x 7 (D.C. Cir. 2010).   In sum, there is no plausible inference that the

███████████████████████████████████████████████████████

████████████████████████████████   he claimed he would

reveal, none of which requires ████████████████████████████████████

██████████   *Cheeks*, 722 F. Supp. 2d at 111–12 (dismissing under Rule 12(b)(6), stating,

"Here, the allegations consist of generalized complaints about surveillance and information

---

[18]  The other allegations in the Complaint ███████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████

sharing that do not plausibly show a constitutional violation. At best, the allegations suggest that Defendants monitored Cheeks's whereabouts, which is not necessarily unconstitutional.").

*Third*, the attempted counterclaim's failure to plead facts sufficient to evince more than a fanciful ████████████ is fatal as to the Court's subject matter jurisdiction. *See Richards v. Duke Univ.*, No. 07-5119, 2007 WL 4589770, at *1 (D.C. Cir. Aug. 27, 2007) ("alleging bizarre conspiracy theories, are the sort of fanciful and fictitious claims that would warrant dismissal for lack of subject matter jurisdiction"); *Weisser v. Obama*, No. CIV.A. 13-1257 (ESH), 2013 WL 4498980, at *1 (D.D.C. Aug. 21, 2013) ("Subject matter jurisdiction is lacking where a complaint is patently insubstantial presenting no federal question suitable for decision.") (internal quotation marks omitted); *Burnes v. Obama*, No. 10-cv-1338 (EGS), 2011 WL 13193437, at *1–2 (D.D.C. June 7, 2011) (dismissing claim for relief where petitioner claimed unconstitutional surveillance including by "microwave weaponry" and a "stealth bomber"). *Cf. Corsi v. Mueller*, 422 F. Supp. 3d 51, 62–63 (D.D.C. 2019) (party invoking federal jurisdiction bears "burden of establishing standing by showing that (1) he suffered an injury in fact, (2) the injury is 'fairly traceable' to the defendant's conduct, and (3) it is likely redressable by a favorable judicial decision"), *aff'd*, No. 19-5314, 2020 WL 5360991 (D.C. Cir. Sept. 2, 2020). Here, Defendant Couch relies on a "highly attenuated chain of possibilities" that he fails to sufficiently plead has caused him an injury in fact that is remotely traceable to alleged ████████ *Id.* at 63.

*Fourth*, the alleged counterclaim fails as a matter of law by claiming a ████████ ████████████████████████████████████████████████ ████████████████████████████ *See* 42 U.S.C. § 1983 ("of any State or Territory or the District of Columbia); *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999) ("To state a claim for relief in an action brought under § 1983, ***respondents must establish*** that they

18

were deprived of a right secured by the Constitution or laws of the United States, ***and that the alleged deprivation was committed under color of state law***." (emphasis added)). While the alleged counterclaim concludes that █████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

██████████[19]  Dismissal of a ████████████ is required where, as here, the "allegations do not state or infer" any "facts" that the alleged "wrongdoer" acted pursuant to an "unconstitutional policy, practice or custom promulgated or sanctioned *by the municipality*." *Lewis*, 643 F. Supp. 2d at 122 (emphasis added); *accord Sheller-Paire*, 888 F. Supp. 2d at 40.[20]

*Fifth*, Defendant Couch's attempted counterclaim fails to state a claim because there can be no facts "'consistent with the allegations in the complaint' to support the claim." *Lewis*, 643 F. Supp. 2d at 122 (quoting *Twombly*, 550 U.S. at 563). If this Court were to accept as true Defendant Couch's pleaded allegation that ███████████████████████████████████

---

[19] ███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

[20] "A *Bivens* action is the federal analog to suits brought against state officials under . . . 42 U.S.C. § 1983," which is not ████████████████████████████████████████
████████████████████████████ *See Harris*, 885 F. Supp. 2d at 397–98 (citing *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971)) (dismissing *Bivens* cause of action "in light of the critical deficiency of plaintiff's complaint: its utter failure to support its broad assertions of constitutional violations with factual allegations"); *see also Richards*, 2007 WL 4589770, at *1 (affirming dismissal of conspiracy claim under *Bivens*).

████████████████████████████, *see, e.g.*, Def. Mot. Ex. B ¶ ¶¶ 17-24, 35-36, 40, 57-

58, then there could not have been a ████████████████████████████████

████████████████████████████████████ *Lyles v. Hughes*, 964 F. Supp.

2d 4, 7 n.2 (D.D.C. 2013) (Leon, J.) (citing *Iqbal*, 556 U.S. at 697) (dismissal for failure to allege

elements of civil conspiracy); *Davis v. Sarles,* 134 F. Supp. 3d 223, 229 (D.D.C. 2015) (Leon, J.)

(dismissing civil conspiracy where pleading conclusory and not plausible allegations); *McCreary*

*v. Heath*, No. 04-cv-0623 (PLF), 2005 WL 3276257, at *5 (D.D.C. Sept. 26, 2005)

(dismissing conspiracy claim where the "complaint fails to allege the existence of any events,

conversations, or documents indicating that there was ever an agreement or 'meeting of the

minds' between any of the defendants").  The attempted counterclaim ██████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████ *Cf. Davis*, 134 F.

Supp. 3d at 229 ("[A] conclusory allegation of agreement at some unidentified point does not

supply facts adequate to show illegality.") (quoting *Twombly*, 550 U.S. at 557).

 *Finally,* the attempted counterclaim fails to assert any factual allegation the government

actors encouraged or acted in concert with Plaintiff in order to ████████████████████

██████████████ Defendant Couch ███████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████ *See Yelverton*, 2017 WL 6271266, at *3 ("[I]t is self-evident that a private citizen's

filing of a criminal complaint is not state action."); *Slovinec v. Georgetown Univ.*, No. 17-7122, 2018 WL 1052650, at *1 (D.C. Cir. Jan. 26, 2018) (affirming dismissal of § 1983 claim including because Plaintiff failed to establish that "a government entity controls or exercises any role" in connection with defendant); *see also Hobley v. Wachovia Corp.*, No. 06-cv 1739 (RCL), 2007 WL 2225891, at *2 (D.D.C. Aug. 1, 2007), *aff'd*, 275 F. App'x 16 (D.C. Cir. 2008).

\*\*\*

Finally, Plaintiff notes it is unfortunate that this filing is necessary, particularly given that Defendant Couch and his counsel devoted considerable resources to drafting a patently frivolous counterclaim rather than focusing on complying with Defendant's discovery obligations in this case. *See, e.g.*, 7/31/19 Min. Order; 9/17/20 Status Conf. Defendant Couch's Purported Cross Motion appears aimed at doing nothing more than draining Plaintiff's resources while advancing Defendant Couch's tired narrative that Plaintiff ████████████████████████████████ ██████.[21] Plaintiff's counsel has spent dozens of hours addressing this issue in correspondence with Defendant's counsel and in Court filings (*see, e.g.*, Dkt. 211 (motion to strike)) explaining the legal and factual frivolity of these claims, *see, e.g.*, Def. Mot. Ex. A. Plaintiff intends to file a Rule 11 motion in connection with Defendants Purported Cross Motion for the legal reasons discussed herein as well as the utter lack of factual basis. *See LeFande v. Mische-Hoeges*, No. 10-cv-1857 (DLF/GMH), 2018 WL 6620129, at *3 (D.D.C. Dec. 10, 2018) (sanctions for

---

[21] *See, e.g.*, ¶ 25 ████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

claims, including § 1983 claim, that were "frivolous, unreasonable, or groundless"), *report and recommendation adopted*, 2019 WL 8331599 (D.D.C. Jan. 29, 2019), *aff'd*, 806 F. App'x 1 (D.C. Cir. 2020); *Reynolds v. U.S. Capitol Police Bd.*, 357 F. Supp. 2d 19, 25 (D.D.C. 2004) ("It is plainly in violation of Rule 11(b)(2) to allege legal theories that have no apparent basis . . ."); *Rice v. Hilton Hotel Corp.*, No. 85-cv-1470, 1987 WL 16851 (D.D.C. Sept. 1, 1987) (sanctioning party "for his belligerence in pursuing a worthless action"), *aff'd*, 899 F.2d 40, 42 (D.C. Cir. 1990) ("Extensive discovery disclosed virtually no support for these claims."); *Hickey v. Scott*, 738 F. Supp. 2d 55, 72–73 (D.D.C. 2010) ("Any reasonable attorney would have recognized, after the completion of discovery, that the record lacks any evidence of fraud or abuse of process.").[22]

Dated: September 23, 2020

/s/ Michael J. Gottlieb
MICHAEL J. GOTTLIEB (D.C. Bar No. 974960)
MERYL C. GOVERNSKI (D.C. Bar No. 1023549)
WILLKIE FARR & GALLAGHER LLP
1875 K Street NW, Washington, DC 20006
Tel: (202) 303-1442 / Fax: (202) 303-2000
mgottlieb@willkie.com
mgovernski@willkie.com

JOSHUA P. RILEY (D.C. Bar No. 1026900)
BOIES SCHILLER FLEXNER LLP
1401 New York Ave NW, Washington DC 20005
Tel: (202) 237-2727 / Fax: (202) 237-6131
jriley@bsfllp.com

---

[22] Plaintiff reserves the right to file additional motions relating to Defendant Couch's Purported Cross Motion, including to seek fees pursuant to federal law, as well as additional bases not mentioned herein. *See Fox v. Vice*, 563 U.S. 826, 826 (2011) ("Section 1988 allows the award of 'a reasonable attorney's fee' to 'the prevailing party' in certain civil rights cases, including § 1983 suits."); *see also In re Stevenson*, No. 06-cv-03062013 WL 8149438, at *3 (Bankr. D.D.C. Jan. 4, 2013) (attorneys' fees for putting "unfair burden and expense of having to bring a motion to strike" on opposing counsel).

*Attorneys for Plaintiff Aaron Rich*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned counsel certifies that on September 23, 2020, the foregoing document was filed through the CM/ECF system and thereby served electronically on counsel for Defendant Edward Butowsky, and Defendant Matthew Couch. A courtesy copy of the foregoing document also was emailed to their counsel, Eden Quainton, at equainton@gmail.com. Mr. Quainton has agreed to convey served and filed documents to Defendant America First Media through Defendant Couch as necessary.

Dated: September 23, 2020

/s/ <u>Michael J. Gottlieb_____</u>
MICHAEL J. GOTTLIEB (D.C. Bar No. 974960)
WILLKIE FARR GALLAGHER LLP
1875 K Street NW, Washington, DC 20006
Tel: (202) 303-1442 / Fax: (202) 303-2000
mgottlieb@willkie.com