# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AARON RICH<br><br>      Plaintiff,<br><br> v.<br><br>EDWARD BUTOWSKY,<br>MATTHEW COUCH, and<br>AMERICA FIRST MEDIA<br><br>      Defendants. | Civil Action No. 1:18-cv-00681-RJL<br><br>Hon. Richard J. Leon |

### PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR RECONSIDERATION AND TO TAKE ADDITIONAL DEPOSITIONS, AND NOTICE REGARDING THIRD-PARTY WITNESSES

MICHAEL J. GOTTLIEB (D.C. Bar No. 974960)
MERYL C. GOVERNSKI (D.C. Bar No. 1023549)
WILLKIE FARR & GALLAGHER LLP
1875 K Street NW, Washington, DC 20006
Tel: (202) 303-1442 / Fax: (202) 303-2000
mgottlieb@willkie.com
mgovernski@willkie.com

JOSHUA P. RILEY (D.C. Bar No. 1026900)
BOIES SCHILLER FLEXNER LLP
1401 New York Ave NW, Washington DC 20005
Tel: (202) 237-2727 / Fax: (202) 237-6131
jriley@bsfllp.com

*Attorneys for Plaintiff Aaron Rich*

Plaintiff Aaron Rich, by and through undersigned counsel, files this response to Defendants' Motion for Reconsideration And To Take Additional Depositions. Dkt. 258 ("Motion" or "Mot.").[1] While taking no position on the purported factual bases for the Defendants' Motion,[2] Plaintiff respectfully submits this response to illustrate the Defendants' lack of diligence with respect to the three witnesses they now seek to depose, which they concede is the "primary consideration" for this Court to apply when resolving the Motion. *Infra* § I; *see* Mot. at 3-4. Relatedly, Plaintiff notifies the Court that he does not intend to move for additional depositions at this time, based upon consideration of the Court's comments at the Status Conference, and Plaintiff's determination that live testimony is unnecessary. *Infra* § II.

## I. DEFENDANTS ARE SEEKING TO DEPOSE TWO WITNESSES WHOSE DEPOSITIONS THEY CHOSE NOT TO PURSUE AT ANY POINT PREVIOUSLY, AND A THIRD WHOSE DEPOSITION THE COURT HAS TWICE DENIED LEAVE TO TAKE.

While Defendants concede that their own lack of diligence is the "primary consideration" before this Court, Mot. at 3-4, Defendants' burden is even higher here, where the Court: (1) has *already* extended discovery once at the request of Defendants who had failed to take a single deposition before discovery was slated to close on January 27, 2020; (2) has permitted Defendants to take an additional *eight* depositions outside the discovery window (of which they have completed only one since March 27, 2020);[3] and (3) is now being asked to permit Defendants to take *three additional depositions more than six months after discovery has closed* despite having never noticed or served a deposition subpoena for two of the witnesses at any

---

[1] Defendants filed their Motion entirely under seal without filing a public version. In this response, Plaintiff redacts only those parts of the Motion that relate to materials that have been designated in discovery.

[2] Plaintiff neither concedes the factual representations in the Motion nor waives his right to challenge them by choosing not burdening the Court with responses here.

[3] Prior to the close of discovery on March 27, 2020, the Defendants collectively completed only two depositions: Kelsey Mulka and Rod Wheeler. *See* Dkt. 178.

point in the past two-plus years, and the Court having twice denied the same request as to the third.

### A. Donna Brazile

Defendants' Motion marks the *third* time Defendants are asking this Court for permission to depose Ms. Brazile: in January 2020, Defendant Couch moved for permission to depose *inter alia* Ms. Brazile, which this Court denied in February 2020, Dkt.142; Dkt. 151, and in their Letter of Outstanding Discovery filed on March 27, 2020, Defendants asked permission to depose Ms. Brazile, which this Court denied in April 2020, Dkt. 174-1 ("March 27 Letter"); Dkt. 182.  The Motion ignores entirely that the Court considered and denied the Defendants' request to depose Ms. Brazile in the March 27 Letter and, instead, pretends that it is seeking reconsideration solely of the Court's January 2020 order.  *See* Motion at 8-12.  In so doing, the Defendants cannot meet their burden—and have waived their opportunity to do so—of demonstrating the circumstances necessary to merit reconsideration based on Federal Rule 54(b). *See Allen v. Dept. of J.*, CV 17-1197 (CKK), 2020 WL 474526, at *10 (D.D.C. Jan. 29, 2020) (burden on moving party to show that the "Court has patently misunderstood a party, has made a decision outside the adversarial issues presented to the Court by the parties, has made an error not of reasoning but of apprehension, or where a controlling or significant change in the law or facts has occurred since the submission of the issue to the Court").  Defendants' refusal to acknowledge that they raised the same arguments to the Court in the March 27 Letter that they are raising here is dispositive and fatal to their Motion for Reconsideration.  *Compare* Mot. at 8-12, *with* Dkt. 174-1 at 21.[4]

---

[4] Based on the Defendants' own admission, they had virtually all of the documents related to Ms. Brazile prior to filing the March 27 Letter.  *See* Mot. at 9.  Defendants' own purported justification for why they want to depose Ms. Brazile reflects it is an effort to perpetuate their

The Defendants argue that they meet the Rule 54(b) standard based entirely on the Court's denial of Defendant Couch's January motion and a recycled claim that the Court violated Defendant Couch's due process rights in July 2019 by limiting his ability to take depositions while unrepresented.  *See* Mot. at 8; *see also, e.g.* Dkt. 76 (Motion for Relief based on purported violation of due process rights).  But Defendant Couch has been receiving legal advice from Mr. Quainton *since at least August 2019* and his formal representation began in November 2019.  *See* Dkt. 76 at 1 n.1 (Defendant Couch noting in August 16, 2019 filing that he was receiving assistance from Mr. Quainton); Dkt. 90.  Defendant Couch has never explained why he and his counsel waited until January 2020 to move for permission to take depositions, and their decision to do so does not reflect any deprivation of process due to Defendant Couch but instead a lack of diligence and/or a concerted legal strategy for which he and his counsel are to blame.  Even if one were to assume *arguendo* that Defendant Couch was deprived of some right by virtue of not having counsel formally retained until November 2019, that provides no excuse (or even an explanation) for why the Court should re-consider its opinion from three months later in response to a filing submitted by counsel.  Despite having complained repeatedly of having his due process rights deprived by this Court, Defendant Couch has never explained (and cannot now identify) what process he was due that he was not afforded subsequent to the initiation of his relationship with his current counsel, nor can he articulate any prejudice resulting from the Court's action—the situation in which Defendant currently finds himself is entirely the result of

---

conspiracy theories about Seth Rich and not to defend their statements about Plaintiff, even, for example, their statement that he "threw a chair" during a meeting with her.

his strategic decisions to resist discovery and other decisions to pursue wasteful and irrelevant discovery and depositions that he now seems to have abandoned.[5]

### B. Joel Rich ("Mr. Rich")

Defendants offer no explanation or excuse for why they have inexplicably waited ten months from the initial deadline for completing fact depositions even to request permission to depose Mr. Rich, someone who they claim to be a "central witness," Mot. at 2. Defendants' failure to do so, whether by strategy or neglect, is inexcusable. As reflected in his August 16, 2019 initial disclosures, Defendant Butowsky has planned to rely on Mr. Rich since *at latest that date* for his "knowledge of his communications with Mr. Butowsky and the hiring of Rod Wheeler to investigate Seth Rich's murder," which is largely the same justification he advances in the Motion. *Compare* Dkt. 83-3 at 1 (initial disclosures), *with* Motion at 2. On January 21, 2020, the Defendants moved to extend discovery after having taken no depositions at that point, including to permit Defendant Butowsky to depose *inter alia* Mr. Rich. Dkt. 103-2 at 15 n.8. The Motion offers no explanation as to why Defendants chose not to serve a subpoena or make arrangements to depose Joel Rich at any time during discovery, including in their March 27 Letter to this Court in which they sought permission to depose *twelve* witnesses excluding Joel Rich, yet including Former Vice President Biden's former information technology director (Warren Flood), the former British Ambassador to Uzbekistan (Craig Murray), and an indicted fugitive who now lives in New Zealand (Kim Dotcom), Dkt. 174-1 at 23-28 (listing the twelve witnesses whom Defendants "have issued subpoenas for or need to take . . . depositions"). To

---

[5] For example, Defendant Couch does not attempt to explain how his counsel had the time to draft and file a separate lawsuit against Plaintiff and multiple other defendants, as well as drafting and filing a motion to add a *Bivens* counterclaim against Plaintiff that has no basis in fact or law, yet remains unable to complete document productions or take more than only one of the depositions that Defendant Couch has had permission to take since February and April 2020.

the extent Defendants believed those witnesses were more important to pursue than Joel Rich, that was their choice, and Defendants should own it. Nor does the Motion point to a single newly discovered purported fact or law to justify permitting the Defendants to take a deposition they could have, should have, but failed to notice at any point in the last two years. By way of one example, the Motion claims that ███████████████████████████████████████████████████████████████████████████████████ ████████████████████████ Mot. at 3, 13, but Defendants cited that exact same document in their March 27 Letter, yet nonetheless elected not to depose Mr. Rich, Dkt. 174-1 at 19.[6] Likewise, Defendants raised their theories about Plaintiff ███████████████████████████ ██████████████████████ in the March 27 Letter when they did not seek leave to depose Mr. Rich, Dkt. 174-1 at 7, and re-raise the same issue now six months later, Mot. at 2, 13-12.

Defendants are entitled to make strategic choices in discovery. But Defendants are not entitled to a do over and extension of the discovery schedule simply because they belatedly discover the error in their strategy. If Defendants wanted to depose Joel Rich, they could and should have done so long ago—they will be welcome to cross examine him at trial when he testifies on Plaintiff's behalf. The Due Process Clause does not entitle Defendants to an unlimited number of depositions or indefinite discovery schedule—the Federal Rules of Civil Procedure provide courts with the authority to limit not only the number of depositions but also the time period allotted for taking them. Defendants' strategic decisions on allocating the depositions and discovery period afforded them by this Court's generous schedule must have

---

[6] Defendants have made much about this email purportedly ████████████████████████ ████████████████████████████████████████ *See* Dkt. 266-3 ¶ 68 ███████████████████████████████████████████████████████████████████████████████████ ███████████████████████████ and, therefore, must correct their filings and desist from implying otherwise.

consequences.  There is no justification for granting further extensions to the Court's discovery schedule in order to accommodate Defendants' neglect.

### C.    Pratt Wiley

The Motion claims that there "can be no doubt as to Defendants' diligence in attempting to obtain evidence from Mr. Wiley," which is self-refuting given the Motion's admission that Defendants have never once noticed or attempted to serve a *deposition* subpoena on Mr. Wiley despite his having been "consistently identified as critical to the case[.]"  Mot. at 4; *see, e.g.,* Dkt. 174-1 at 23-28.  Defendants attempt to argue that they "focused on a document subpoena" because of the "limited number of depositions authorized by the Court," despite that fact that the twelve witnesses they asked for permission to depose in the March 27, 2020 Letter included numerous witnesses whose connection to the case is at *best* tangential.  *Id.*  The Defendants made the strategic decision to focus on Mr. Wiley's documents and *not* his deposition, and have offered no explanation as to why the Court should release them from the consequences of that decision by further extending discovery in this case.  The Motion also provides no explanation for what has changed between the March 27 Letter when they were supposed to submit their final list of outstanding discovery and now, and instead recycles the same arguments they previously advanced to justify an extension to serve a document subpoena, which the Court rejected.  *Compare* Mot. at 8; Dkt. 174-1 at 10; *see* Dkt. 182.

## II. PLAINTIFF DOES NOT INTEND TO SEEK ADDITIONAL DEPOSITIONS OF THE WITNESSES PREVIOUSLY IDENTIFIED, BUT RESPECTFULLY REQUESTS LEAVE TO DO SO PENDING OUSTANDING DISCOVERY.

At the September 17, 2020 status conference, counsel for Plaintiff indicated an interest in taking the depositions of three additional witnesses,[7] including Roger Aronoff who Defendant Butowsky claimed for the first time in a supplemental interrogatory response from August 17, 2020 was the author of The Washington Times article that published defamatory content about Plaintiff.  *See* Governski Decl. Ex. A at 6 ███████████████████████████████

███████████████████████████████████████████████████████████ Since the status conference, Plaintiff contacted Mr. Aronoff, who provided through counsel an affidavit signed under penalty of perjury about the allegations, including that: "I was never asked by anyone and I never did write a first draft or any draft of a column for Admiral Lyons, ever at any time" and in "the case involving the article he wrote about Seth Rich in February or March of 2017, no one asked me to write up a first draft, or any draft, and I am not sure that I did proof it

---

[7] There was also discussion at the September 17, 2020 Status Conference about Defendants' purported inability to locate Cassandra Fairbanks, who Defendants have repeatedly represented to be a critical witness in this matter, including relating to Ms. Fairbanks' alleged conversations with Julian Assange.  Dkt. 245 at 28:20-24.  Plaintiff has always reserved the right to cross-notice a deposition of Ms. Fairbanks, and in its April 23, 2020 Order, the Court left open the possibility that Plaintiff could move for permission to cross-notice the depositions of Ms. Fairbanks and Det. Joseph Della Camera if those depositions were scheduled.  Dkt. 182.  Plaintiff objects, however, to the notion that discovery must be extended further to allow more time for Defendants to locate Ms. Fairbanks for a deposition.  Ms. Fairbanks has publicly represented that Defendants' characterizations of her statements are false, *see, e.g.,* Governski Decl. Ex. C ("Julian Assange has never confirmed or denied Seth Rich being his source to be or anyone else that I'm aware of . . . "), and Ms. Fairbanks confirmed those views in a sworn statement offered through her attorney.  Ex. D at ¶ 9 ("I never told either Ed Butowsky or Matt Couch that Julian Assange told me he paid either of the Rich brothers for the DNC emails or that Julian Assange told me the Rich brothers received payments from him by any method, ebay or otherwise"); *id.* ¶ 5 ("I do not know who the source was for the DNC emails published by Wikileaks, nor has Julian Assange told me who the source was.").

at all." Governski Decl. Ex. B ¶¶ 6-7. With respect to the additional two potential witnesses, Plaintiff has determined it can satisfy his burden without the need for their depositions.

Finally, this week, the United States District Court of Northern District of California denied Twitter's motion to quash a subpoena demanding the unmasking of @whysprtech, who has anonymously published materials about Seth Rich relevant to this matter, including an obviously forged document that certain individuals disseminated in May of 2017 as purported evidence that there was a FBI Report linking Seth Rich to WikiLeaks. *See In the Matter of a Subpoena to Non-party Twitter, Inc. Order on Motion to Quash*, 4:20-mc-80081-DMR (N.D. Cal.). We have now received a production from Twitter in response to the subpoena. In order to follow up on this production, we expect to move the Court for permission to serve limited additional discovery as soon as we have completed our review of the production.

Dated: October 9, 2020  /s/ Michael J. Gottlieb_____
MICHAEL J. GOTTLIEB (D.C. Bar No. 974960)
MERYL C. GOVERNSKI (D.C. Bar No. 1023549)
WILLKIE FARR & GALLAGHER LLP
1875 K Street NW, Washington, DC 20006
Tel: (202) 303-1442 / Fax: (202) 303-2000
mgottlieb@willkie.com
mgovernski@willkie.com

JOSHUA P. RILEY (D.C. Bar No. 1026900)
BOIES SCHILLER FLEXNER LLP
1401 New York Ave NW, Washington DC 20005
Tel: (202) 237-2727 / Fax: (202) 237-6131
jriley@bsfllp.com
***Attorneys for Plaintiff Aaron Rich***

**CERTIFICATE OF SERVICE**

The undersigned counsel certifies that on October 9, 2020, the foregoing document was filed through the CM/ECF system and thereby served electronically on counsel for Defendant Edward Butowsky, and Defendant Matthew Couch. A courtesy copy of the foregoing document also was emailed to their counsel, Eden Quainton, at equainton@dunnington.com. Mr. Quainton has agreed to convey served and filed documents to Defendant America First Media through Defendant Couch as necessary.

Dated: October 9, 2020

/s/ Michael J. Gottlieb
MICHAEL J. GOTTLIEB (D.C. Bar No. 974960)
WILLKIE FARR GALLAGHER LLP
1875 K Street NW, Washington, DC 20006
Tel: (202) 303-1442 / Fax: (202) 303-2000
mgottlieb@willkie.com