## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| AARON RICH,<br><br>　　　　Plaintiff,<br><br>v.<br><br>EDWARD BUTOWSKY, MATTHEW COUCH, and AMERICA FIRST MEDIA,<br><br>　　　　Defendants. | Civil Action No. 1:18-cv-00681-RJL<br><br><br><br>Hon. Richard J. Leon |

## <u>THIRD-PARTY LUMUNANT MEDIA, INC.'S MOTION TO INTERVENE AND UNSEAL DOCKET NUMBERS 234(2-6) AND 241(2)</u>

LINCOLN D. BANDLOW (Bar ID: CA00099)
ROM BAR-NISSIM (admission application pending)
LAW OFFICES OF LINCOLN BANDLOW, P.C.
1801 Century Park East
Suite 2400
Los Angeles, CA 90067
Tel: (310) 556-9680 / Fax: (310) 861-5550
Email: Lincoln@BandlowLaw.com; Rom@BandlowLaw.com

## **TABLE OF CONTENTS**

I.     INTRODUCTION ........................................................................................................ 1

II.    RELEVANT BACKGROUND ................................................................................... 3

   A. Luminant ............................................................................................................... 3

   B. The Subject Matter of the Documentary ............................................................... 4

   C. Procedural History of the Certified Transcripts .................................................... 7

   D. Meet and Confer Efforts ...................................................................................... 10

III.   ARGUMENT ........................................................................................................... 11

   A. This Court Should Allow Luminant to Intervene ................................................ 11

   B. This Court Should Order the Certified Transcripts Unsealed .............................. 14

      1. The Law Governing Unsealing Judicial Records ............................................ 14

      2. The Opposing Defendants Cannot Satisfy Their Burden Under the
         *Hubbard* Factors to Defeat the Strong Presumption for Unsealing
         of the Certified Transcripts. ........................................................................... 14

         a. The Need for Public Access to the Certified Transcripts Favors
            Unsealing Them ......................................................................................... 14

         b. The Reason for the Public's Lack of Prior Access to the Certified Transcripts
            Favors Unsealing Them ............................................................................. 15

         c. There does not Appear to be any Proprietary or Privacy Interest at Issue,
            which Favors Disclosure ............................................................................ 16

         d. The Lack of Prejudice Favors Unsealing the Certified Transcripts ........... 17

         e. Plaintiff's Purpose in Submitting the Certified Transcripts Favors Disclosure .... 18

         f. Opposing Defendants' Justifications for their Objection to Unsealing are
            Meritless and Favor Unsealing .................................................................. 18

IV.    CONCLUSION......................................................................................................... 20

# TABLE OF AUTHORITIES

**CASES**

*Aristotle International, Inc. v. NGP Software, Inc.*,
　714 F.Supp.2d 1 (D.D.C. 2010) ............................................................................16

*Bauman v. Butowsky*,
　377 F.Supp.3d 1 (D.D.C. 2019) ..............................................................................6

*Brown v. Felsen*,
　422 U.S. 127 (1979) ...............................................................................................19

*Butowsky v. Folkenflik*,
　Case No. 4:18-cv-442, 2019 WL 3712026 (E.D. Tex. Aug. 7, 2019) .....................6

*Cable News Network, Inc. v. Federal Bureau of Investigation*,
　984 F.3d 114 (D.C. Cir. 2021) ..................................................................1, 11, 12

*Doe v. Public Citizen*,
　749 F.3d 246 (4th Cir. 2014) .................................................................................12

*EEOC v. National Children's Center, Inc.*,
　146 F.3d 1042 (D.C. Cir. 1998) ......................................................................11, 14

*Ex parte Drawbaugh*,
　2 App.D.C. 404 (D.C. Cir. 1894) ..........................................................................12

*Friedman v. Sebelius*,
　672 F.Supp.2d 54 (D.D.C. 2009) ...........................................................................13

*Grynberg v. BP P.L.C.*,
　205 F.Supp.3d 1 (D.D.C. 2016) .............................................................................13

*Guttenberg v. Emery*,
　26 F.Supp.3d 88 (D.D.C. 2014) .............................................................................13

*Hardaway v. D.C. Housing Authority*,
　843 F.3d 973 (D.C. Cir. 2016) ...............................................................................12

*In re Leopold*,
　964 F.3d at 1127 ........................................................................................12, 13, 19

*In re McCormick*,
　316 F.Supp.3d at 464 ........................................................................................13, 15, 16

*In re National Broadcasting Company*,
   653 F.2d 609 (D.C. Cir. 1981) ...................................................................................14

*John Doe Company No. 1 v. Consumer Financial Protection Bureau*,
   194 F.Supp.3d 9 (D.D.C. 2016) .................................................................................12

*Johnson v. Greater Southeast Community Hospital Corp*,
   941 F.2d 1268 (D.C. Cir. 1991) .................................................................................13

*League of Women Voters of United States v. Newby*,
   963 F.3d 130 (D.C. Cir. 2020) .................................................................................1, 11

*Metlife, Inc. v. Financial Stability Oversight Council*,
   865 F.3d 661 (D.C. Cir. 2017) .................................................................11, 12, 13, 14

*Nixon v. Warner Communications, Inc.*,
   435 U.S. 589 (1978) .................................................................................11, 12, 13

*Proctor & Gable v. Bankers Trust*,
   78 F.3d 219 (6th Cir. 1996) .......................................................................................16

*Quigley v. Yelp, Inc.*,
   No. 17-cv-03771-RS, 2018 WL 7204066 (N.D. Cal. Jan. 22, 2018) ....................6, 7

*Rich v. Butowsky*,
   Case No. CV 18-681 (RJL), 2020 WL 7016436 (D.D.C. Mar. 31, 2020)..................6

*Rich v. Fox News Network, LLC*,
   939 F.3d 112 (2d Cir. 2019).....................................................................................5, 6

*Richmond Newspapers, Inc. v. Virginia*,
   488 U.S. 555 (1980)....................................................................................................12

*United States v. Bank Julius, Baer & Company, Ltd.*,
   149 F.Supp.3d 69 (D.D.C. 2015) ........................................................................13, 19

*United States ex rel. Grover v. Related Companies, LP*,
   4 F.Supp.3d 21 (D.D.C. 2013) ............................................................................16, 17

*United States v. Hubbard*,
   650 F.2d 293 (D.C. Cir. 1980) ...................................12, 13, 14, 15, 16, 17, 18, 20

*United States v. ISS Marine Services, Inc.*,
   905 F.Supp.2d 121 (D.D.C. 2012) .............................................................................16

*United Steelworkers of America v. Enterprise Wheel & Car Corp.*,
   363 U.S. 593 (1960).....................................................................................................19

iii

*Union Employee Division of Printing Industry of Washington, D.C., Inc. v.*
    *Columbia Typographical Union No. 101,*
    353 F.Supp. 1348 (D.D.C. 1973) ............................................................................19

*Wheeler v. Twenty-First Century Fox,*
    322 F.Supp.3d 445 (S.D.N.Y. 2018) ........................................................................5

**STATUTES AND CODES**

Federal Rule of Civil Procedure 24(b) ......................................................................11

## I.     **INTRODUCTION**

Luminant Media, Inc. (Luminant") respectfully moves this Court to: (1) intervene for the limited purpose of unsealing judicial records; and (2) unseal Docket Numbers 234(2-6) and 241(2), which are six certified transcripts of audio recording filed in this case (the "Motion").

**Intervention**: It is the law of this Circuit that a non-party can intervene in a lawsuit for the limited purpose of unsealing judicial records.  *See League of Women Voters of United States v. Newby* ("*League of Women Voters*"), 963 F.3d 130, 132 (D.C. Cir. 2020).  Here, the sole purpose of Luminant's Motion is to unseal Docket Numbers 234(2-6) and 241(2) (the "Certified Transcripts").  The Certified Transcripts are judicial records because they were filed to influence this Court's decision regarding the August 26, 2020, and September 2, 2020, motions of Plaintiff Aaron Rich ("Plaintiff") to de-designate six audio recordings produced by Defendant Matthew Couch ("Couch").[1]  *See Cable News Network, Inc. v. Federal Bureau of Investigation*, 984 F.3d 114, 118 (D.C. Cir. 2021).  Therefore, Luminant's Motion to intervene is proper because Luminant is solely seeking to unseal judicial records (*i.e.,* the Certified Transcripts).

**Unsealing the Certified Transcripts**: Both the First Amendment and common law create a strong presumption that the Certified Transcripts should be unsealed.  *See Cable News Network*, 984 F.3d at 118.  Additionally, on September 23, 2020, this Court ordered that five of the six audio recordings could be publicly filed (the "9/23/20 Order").[2]  Finally, defendants Butowsky, Couch and America First Media (who oppose this Motion) (the "Opposing Defendants") cannot meet their burden to defeat the strong presumption that the Certified

---

[1] The Certified Transcripts were transcriptions of the six audio recordings of phone calls between Defendants Edward Butowsky ("Butowsky") and Couch and Butowsky and Rod Wheeler ("Wheeler").  Couch is the owner of defendant America First Media, which is now defunct.

[2] The 9/23/20 Order pertained to the audio recordings that were subject of Plaintiff's August 26, 2020 motion.  The Court apparently never ruled on Plaintiff's September 2, 2020 motion.

Transcripts should be unsealed.  The various factors as to whether the Opposing Defendants satisfy their burden all weigh heavily in favor of unsealing the Certified Transcripts.

The public deserves access to the Certified Transcripts.  The Certified Transcripts are related to the creation and propagation of a conspiracy theory by Butowsky, Couch, American First Media and Wheeler about the circumstances behind the death of Seth Rich.  The creation and propagation of this conspiracy theory is a matter of intense public interest.  Further, this very lawsuit is the subject of intense public interest and significant media coverage.  By unsealing the Certified Transcripts, the Court will allow the public to access and analyze the Certified Transcript and provide critical insight into the creation and propagation of a conspiracy that was a matter of intense public interest.  Further, recent events show that the spread of misinformation and conspiracy theories can have disastrous and violent results.  It is imperative for the public to examine how misinformation and conspiracy theories were created and propagated in the past to learn from them and perhaps avoid future negative consequences from them.

Luminant's Motion to unseal the Certified Transcripts is intended to serve this very purpose.  Luminant is a production company that produces documentary films.  Previous Luminant documentaries examined similar matters of public interest, including how these controversies were addressed through the legal and judicial process.  Luminant's next project is to explain the creation and propagation of conspiracy theories and to use the conspiracy theory about Seth Rich's death as a case study.  To properly and thoroughly prepare this Documentary, Luminant requires access to the Certified Transcripts.

Therefore, Luminant respectfully requests that this Court grant its Motion and allow Luminant to intervene to unseal the Certified Transcripts and order that the Certified Transcripts be unsealed.

## II.     RELEVANT BACKGROUND

### A.     Luminant

Luminant is a theatrical and television production company that has made such award-winning documentaries as *The Internet's Own Boy: The Story of Aaron Swartz, We are Legion: The Story of the Hacktivists, Nobody Speak: Trials of the Free Press*, *The Trials of Gabriel Fernandez* and *Church and the Fourth Estate*.  Declaration of Brian Knappenberger ("Brian Decl."), ¶ 2.

One of the primary objectives of Luminant documentaries is to provide transparency to the public by examining matters of intense public interest that resulted in judicial and legal proceedings.  Brian Decl., ¶ 3.  In *The Internet's Own Boy: The Story of Aaron Swartz*, Luminant explored the life of internet hacktivist, Aaron Swartz, including his criminal prosecution for his alleged unlawful access and proliferation of academic articles from prestigious academic institutions, which led him to take his own life.  *Id.*  In *Nobody Speak: Trials of the Free Press*, Luminant explored potential threats to freedom of speech by the wealthy and the powerful, including:  the invasion of privacy lawsuit by Terry "Hulk Hogan" Bollea against Gawker Media (financed by billionaire Peter Thiel); the secret purchase of the Las Vegas Review-Journal by casino owner Sheldon Adelson and the potential infusion of his views into the paper's coverage of issues; and the election of Donald Trump fueled in part by his animus towards the press.  *Id.* In *The Trials of Gabriel Fernandez*, Luminant explored the events surrounding the criminal prosecution of Pearl Fernandez and Isauro Aguirre for the murder of Pearl's eight-year-old son, Gabriel Fernandez, including the alleged institutional failures of the Los Angeles County Sheriff's Department and Department of Child and Family Services to prevent Gabriel's abuse and death.  In *Church and the Fourth Estate*, Luminant explored the widespread, and allegedly covered-up, sexual abuse within the Idaho Boy Scouts and the substantial litigation that took place involving the Idaho Falls *Post Register* when it did a story about the abuse. *Id.*

B. **The Subject Matter of the Documentary**

Luminant's next project is a documentary series about the creation and propagation of alleged conspiracy theories in recent years.  One episode uses events surrounding and following the death of a Democratic National Convention ("DNC") staffer, Seth Rich, as a case study (*i.e.*, the Documentary).  Brian Decl., ¶ 4.  The facts and circumstances surrounding and following the death of Mr. Rich are matters of intense public interest.  *Id.*, Exs. A-R.  In particular, there is great public interest in how of the conspiracy theory about Mr. Rich's death was created, propagated and litigated.  *Id.*

The Metropolitan Police Department for Washington D.C. came to believe that Mr. Rich's death was the result of a botched robbery.  Brian Decl., ¶ 5.  A number of media outlets, however, began circulating a conspiracy theory that Mr. Rich and his brother (*i.e.*, Plaintiff) were responsible for the 2016 leak of DNC emails to Wikileaks and that Mr. Rich's death was a political assassination to silence and punish him for such leaks.  *Id.*  This conspiracy theory was soon widely disseminated across media outlets, including by third-party petitioner Fox News Network, LLC ("Fox News"), its reporter, third-party petitioner Malia Zimmerman ("Zimmerman"), and defendants Butowsky, *The Washington Times*, American First Media and Couch.  *Id.*  The conspiracy theory, however, appears to have been ultimately debunked by law enforcement and intelligence agencies.  *Id.*

There was intense media scrutiny on how the conspiracy theory about Mr. Rich's death was created and propagated.  Brian Decl., ¶¶ 4, 6, Exs. A-J.  It was later revealed that Butowsky – a Fox News contributor with connections to the campaign and administration of former President Donald J. Trump – was involved in propagating this conspiracy theory.  Brian Decl., 6.  Butowsky approached Mr. Rich's family shortly after Mr. Rich's death.  *Id.*  Butowsky offered

4

to Mr. Rich's family that he would pay for a former detective (*i.e.*, Wheeler) to investigate Mr. Rich's death and Butowsky reassured the family that Wheeler would not disclose information from the investigation to Butowsky without the family's permission.  *Id.*  Mr. Rich's family agreed.  *Id.*

It was also revealed that Butowsky and Wheeler approached outgoing White House Communications Director Sean Spicer and various media outlets about the conspiracy theory. Brian Decl., ¶ 7.  Fox News reporter, Zimmerman, pressured Wheeler to go on the record as the source substantiating the conspiracy theory.  *Id.*  At some point shortly thereafter, Fox News reported that Wheeler had substantiated the conspiracy theory.  *Id.*

After the Fox News's report, Wheeler went on Cable News Network (CNN) to dispute that he had substantiated the conspiracy theory to Butowsky or Zimmerman.  Brian Decl., ¶ 8. When Mr. Rich's family sent a cease-and-desist letter to Fox News and various law enforcement and intelligence agencies that had apparently debunked the conspiracy theory, Fox News issued a retraction.  *Id.*  Despite the retraction, Sean Hannity (a preeminent Fox News personality) refused to issue a retraction, but did agree to no longer discuss the conspiracy theory.  *Id.*

Numerous lawsuits ensued over the creation and propagation of the conspiracy theory regarding Mr. Rich's death, including the present lawsuit.  Brian Decl., ¶ 9.  Wheeler sued Fox News, Zimmerman and Butowsky for reporting that he had substantiated the conspiracy theory. On August 2, 2018, the district court dismissed the lawsuit, finding that Fox News' reporting, that Wheeler had confirmed the conspiracy theory, was substantially true.  *See Wheeler v. Twenty-First Century Fox*, 322 F.Supp.3d 445, 454-456 (S.D.N.Y. 2018).   Mr. Rich's parents also sued Fox News, Zimmerman and Butowsky over the conspiracy theories.  *See Rich v. Fox News Network, LLC*, 939 F.3d 112, 117 (2d Cir. 2019).  While the district court dismissed the

complaint, the Court of Appeals for the Second Circuit reversed the dismissal and held that Mr.

Rich's parents set forth viable claims in their complaint.  *Id.*  Even the spokesperson for Mr.

Rich's family sued Butowsky and Fox News for their statements about the spokesperson. That

lawsuit was dismissed on the basis that the statements were protected opinion and did not contain

a defamatory meaning.[3]  *See Bauman v. Butowsky*, 377 F.Supp.3d 1, 10-16 (D.D.C. 2019).  The

lawsuits brought by the Rich family, including the present lawsuit, have been the subject of

intense and pervasive media scrutiny and analysis.  Brian Decl., ¶¶ 4 & 9, Ex. K-R.

The events surrounding and following the death of Mr. Rich illustrate how

misinformation is created and disseminated in the modern era.  Brian Decl., ¶ 10.  In light of the

various conspiracy theories that were prevalent regarding the results of the 2020 presidential

election that may have played a role in the January 6, 2021, incursion into the United States

Capitol, there is intense public interest in how conspiracy theories are created and propagated.

*Id.*  Additionally, there is a direct link between the conspiracy theories regarding the results of

the 2020 presidential election and the conspiracy theory surrounding the death of Mr. Rich

because both were propagated by similar media outlets.  *Id.*  Such misinformation presents

serious issues concerning the boundaries of the First Amendment and the role and impact the

judicial process has in addressing alleged misinformation and conspiracy theories.  *Id.*

The Documentary intends to explore the aforementioned topics and use the conspiracy

---

[3] There were even lawsuits brought by Butowsky for statements made by the media and
Plaintiff's attorneys about these various lawsuits.  *See Butowsky v. Folkenflik*, Case No. 4:18-cv-
442, 2019 WL 3712026, at *15-16 (E.D. Tex. Aug. 7, 2019) (Butowsky's lawsuit against
National Public Radio regarding its reporting of the Wheeler lawsuit); *Rich v. Butowsky*, Case
No. CV 18-681 (RJL), 2020 WL 7016436, at *1 (D.D.C. Mar. 31, 2020) (discussing *Butowsky v.
Gottlieb, et al.* (Case No. 4:19-cv-00180 (E.D. Tex. 2019 where Butowsky sued Plaintiff's
attorneys for statements made about the present lawsuit).  There was even a lawsuit (that was
eventually dismissed) by an internet user against a media watchdog group for banning the user
because he spread conspiracy theories about Mr. Rich on the media watchdog's website. *See
Quigley v. Yelp, Inc.*, No. 17-cv-03771-RS, 2018 WL 7204066, at *1 (N.D. Cal. Jan. 22, 2018).

theory of Mr. Rich's death as a case study.  Brian Decl., ¶ 11.  The Documentary also intends to explore the role (and consequences) of having the judicial system hold the media accountable for disseminating alleged misinformation and conspiracy theories.  *Id.*  To accomplish these objectives, information regarding the roles played by Butowsky, Couch and Wheeler in spreading the conspiracy theory relating to Mr. Rich's death is critical to the Documentary.  *Id.*  The Certified Transcripts would be extremely helpful to achieve this purpose because they consist of telephonic communications between Butowsky and Wheeler and Butowsky and Couch regarding the creation and propagation of the conspiracy theory surrounding Mr. Rich's death.  *Id.*

 **C.**  <u>**Procedural History of the Certified Transcripts**</u>[4]

  On March 26, 2018, Plaintiff filed the present suit for defamation and other related claims against Butowsky, Couch, American First Media and *The Washington Times* for their roles in the creation and propagation of the conspiracy theory regarding Mr. Rich's murder, which included false claims that Plaintiff and Mr. Rich were involved in the 2016 leak of DNC emails.  Bandlow Decl, ¶ 3; Dkt. No. 3.

   On August 26, 2020, Plaintiff filed a motion to de-designate certain audio recordings of phone calls between Butowsky and Couch and Butowsky and Wheeler (the "8/26/20 Motion").  Bandlow Decl., ¶ 4; Dkt. No. 233.  Couch had designated these five audio recordings, bates stamped MC001047-1049 and MC000635-636, as "Highly Confidential Information – Attorneys' Eyes Only."  Bandlow Decl., ¶ 4; Dkt. No. 233, p. 1.  The 8/26/20 Motion sought to remove any confidentiality designation for the five audio recordings.  *Id.*  In support of the

---

[4] Due to this matter (including the majority of its filings) being under seal, it is impossible for Luminant to provide a comprehensive discussion of the procedural history relevant to this Motion and the Certified Transcripts.  Declaration of Lincoln Bandlow ("Bandlow Decl."), ¶ 2. Luminant shall attempt, to the best of its ability, to discuss the procedural history relevant to the Motion and Certified Transcripts and note when it is unable to do so.  *Id.*

8/26/20 Motion, Plaintiff's counsel submitted, under seal, a declaration that included five certified transcripts of the aforementioned audio recordings (the "8/26/20 Certified Transcripts"), which were also quoted (albeit redacted) in the 8/26/20 Motion itself.  Bandlow Decl., ¶ 4; Dkt. Nos. 233, 233(1), ¶¶ 5-9, 234(2-6).

On September 2, 2020, Plaintiff filed a motion that was nearly identical to the 8/26/20 Motion (the "9/2/20 Motion").  Bandlow Decl., ¶ 5, Dkt. No. 240.  The 9/2/20 Motion sought to de-designate a sixth audio recording of a phone call between Butowsky and Couch, bates stamped MC001046, that Couch designated as "Highly Confidential Information – Attorneys' Eyes Only."  Bandlow Decl., ¶ 5; Dkt. No. 240, p. 1.  In support of the 9/2/20 Motion, Plaintiff's counsel submitted, under seal, a declaration that included a certified transcript of the aforementioned audio recording (the "9/2/20 Certified Transcript") that was quoted (albeit redacted) in the 9/2/20 Motion itself.  Bandlow Decl., ¶ 5, Dkt. No. 240; 241(2).  Unlike the 8/26/20 Motion, the 9/2/20 Motion did not seek to de-designate the sixth audio recording *in toto* because it contained non-public email addresses and phone numbers that were subject to the protective order in the case.[5]  Bandlow Decl., ¶ 5; Dkt. No. 240, pp. 1-2 (citing Dkt. No. 241(2) pp. 60:19-21 and 61:13-15).

It appears that on September 9, 2020, Couch filed an opposition to both the 8/26/20 Motion and 9/2/20 Motion (the "9/9/20 Opposition").  Bandlow Decl., ¶ 6; Dkt. No. 244.  The 9/9/20 Opposition was filed entirely under seal and, consequently, Luminant does not know whether it is an opposition to the 8/26/20 Motions and 9/2/20 Motion (or both) and, if so, the

---

[5] The 9/2/20 Motion also noted that there may be "additional discrete factual representations that Defendants may seek to properly redact, such as information about Defendant Couch's [REDACTED]."  Bandlow Decl., ¶ 5, fn. 1; Dkt. No. 240, p. 2 (citing Dkt. No. 241(2), p. 66:7-15).  As of the filing of this Motion, Luminant does not know the subject matter of the "discrete factual representations" referenced in the 9/2/20 Motion, let alone whether they contain information that should not be disclosed.  Bandlow Decl., ¶ 5, fn. 1.

arguments contained in the 9/9/20 Opposition.  *Id.*  From the 8/26/20 Motion, it appears that

Couch would argue: (1) the audio recordings were subject to the reporter's privilege;[6]

(2) Couch's lack of trust with Plaintiff; and (3) to protect Butowsky and Wheeler.  Bandlow

Decl., ¶ 6; Dkt. No. 233, pp. 11-15.

On September 23, 2020, this Court issued a minute order granting the 8/26/20 Motion

(*i.e.*, the 9/23/20 Order).[7]  Bandlow Decl., ¶ 7, Ex. S.  Specifically, the 9/23/20 Order stated:

> Upon consideration of 233 Plaintiff's Motion to De-Designate Certain Audio
> Recordings Produced by Defendant Matthew Couch, it is hereby ORDERED that
> the motion is GRANTED.  The audio recordings bearing Bates number
> MC001047, MC001048, MC001049, MC000635, and MC000636 are hereby de-
> designated and may be publicly filed.  SO ORDERED.

*Id.* (original emphasis).

From the docket for this case, it does not appear that this Court ever ruled on the 9/2/20

Motion.  Bandlow Decl., ¶¶ 7-8, Ex. S.  Additionally, from the docket for this case, it does not

appear that any of the audio recordings themselves (versus the transcripts of those recordings)

that were the subject of the 8/26/20 Motion and 9/23/20 Order were subsequently filed in this

case.  *Id.*

Plaintiff ultimately resolved the present lawsuit with all of the defendants.  Bandlow

Decl., ¶ 9.  On October 2, 2018, Plaintiff and Defendant *The Washington Times* filed a joint

motion to dismiss *The Washington Times* from the lawsuit, which was granted on October 11,

2018.  *Id.*; Dkt. Nos. 38 & 40.  On January 19, 2021 and March 22, 2021, Plaintiff moved to

dismiss the remaining defendants, which this Court granted on March 29, 2021.  Bandlow Decl.,

---

[6] The 8/26/20 Motion argued that it was the law of the case that the reporter's privilege did not
apply to Butowsky or Couch.  Bandlow Decl., ¶ 6 fn. 2; Dkt. No. 233, pp. 11-12 (citing Dkt.
Nos. 133, 151 and 177).

[7] The 9/23/20 Order does not have a docket entry, but its text appears in the docket for this
matter.  Bandlow Decl., ¶ 7 fn. 3, Ex. S.

¶ 9; Dkt. No. 286-289.

### D.     Meet and Confer Efforts

On May 10, 2021, pursuant to Local Rule 7(m) of this Court, Luminant's counsel sent a meet and confer letter regarding this Motion to counsel for: (1) Plaintiff; (2) Defendants Butowsky, Couch and American First Media and interested party Larry Johnson; (3) Defendant *The Washington Times*; (4) non-party petitioner Zimmerman; (5) non-party petitioner Fox News; and (6) non-party petitioner Ellen F. Ratner ("Ratner").  Bandlow Decl., ¶ 10, Exs. T-X. Luminant asked that counsel respond by May 17, 2021 regarding whether their respective clients would oppose Luminant's Motion and, if so, to set up a time by May 24, 2021 to meet and confer telephonically to narrow the issues in dispute for the Motion.  *Id.*  Finally, the letters also emphasized that, if Luminant did not hear from counsel by May 17, 2021, Luminant would assume that party consented to Luminant stating that the party did not oppose the Motion.  *Id.*

On May 14, 2021, counsel for the Opposing Defendants emailed Luminant's counsel to inform Luminant his clients would oppose the Motion.[8]  Bandlow Decl., ¶ 11, Ex. Y.  That same date, counsel for Luminant and the Opposing Defendants conducted a telephonic meet and confer to narrow the issues in dispute.  Bandlow Decl., ¶ 11.  Counsel for Opposing Defendants gave four reasons why his clients would oppose the Motion: (1) the Certified Transcripts are not judicial records but exclusively discovery materials; (2) the protective order in this case governs discovery materials and, but for a preservation order from a pending related lawsuit, the Certified Transcripts would be destroyed; (3) public policy in finality for disputes; and (4) Luminant might

---

[8] For the record, on May 11, 2021, Ratner's counsel informed Luminant that Ratner did not have any position on the Motion.  Bandlow Decl., ¶ 11 fn. 4, Ex. Z.  On May 17, 2021, counsel for *The Washington Times* took no position on the Motion but reserved the right to respond. Bandlow Decl., ¶ 11 fn.4, Ex. AA.  On May 21, 2021, Plaintiff's counsel informed Luminant that Plaintiff would not oppose the Motion.  Bandlow Decl., ¶ 11 fn. 4, Ex. BB.

cherry-pick excerpts from the Certified Transcripts in a manner that would be prejudicial to Opposing Defendants.  *Id.*  Counsel for Opposing Defendants did concede, however, that had this matter gone to trial Plaintiff would have, likely, used the Certified Transcripts and the six underlying audio recordings at trial.  *Id.*

### III.   ARGUMENT

#### A.   This Court Should Allow Luminant to Intervene

"Pursuant to Federal Rule of Civil Procedure 24(b) and the common-law right of access, third parties may intervene in cases for 'the limited purpose of seeking access to materials that have been shielded from public view either by seal or by a protective order." *League of Women Voters*, 963 F.3d at 132 (quoting *EEOC v. National Children's Center, Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998)).  To satisfy the requirements of intervention, the third party must "seek disclosure only of 'public records,' which, in the context of court proceedings, are called 'judicial records.'" *League of Women Voters*, 963 F.3d at 132 (quoting *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978)).  "If the goal in filing a document is to influence a judge's decisionmaking, the document is a judicial record." *Cable News Network*, 984 F.3d at 118.  A document "can affect a court's decisionmaking process even if the court's opinion never quotes or cites it." *League of Women Voters*, 963 F.3d at 403 (quoting *Metlife, Inc. v. Financial Stability Oversight Council*, 865 F.3d 661, 667 (D.C. Cir. 2017)).

Here, Luminant seeks to intervene in this lawsuit for the sole and limited purpose of unsealing the Certified Transcripts.  Bandlow Decl., ¶ 12.  The Certified Transcripts are "judicial records" because they were filed in support of Plaintiff's 8/26/20 Motion and 9/2/20 Motion.  *See* Bandlow Decl., ¶¶ 4-5; Dkt. Nos. 233, 233(1), ¶¶ 5-9, 234(2-6), 240 and 241(2).  Those motions, including the Certified Transcripts, were filed to influence this Court's decision to de-designate

11

six audio recordings.  *See Id.*  Additionally, the Certified Transcripts were quoted and cited in the

8/26/20 Motion and 9/2/20 Motion themselves, which further emphasizes how the Certified

Transcripts were intended to influence this court's decision to de-designate the six audio

recordings.  *See* Bandlow Decl., ¶¶ 4-5; Dkt. Nos. 233 and 240.

Therefore, it is beyond dispute that the Certified Transcripts were submitted to influence

this Court's decision on the 8/26/20 Motion and 9/2/20 Motion and, therefore, they constitute

judicial records.  As such, Luminant's Motion seeking to intervene in this case for the limited

purpose of unsealing the Certified Transcripts is proper and should be granted.

### B.   This Court Should Order the Certified Transcripts Unsealed

#### 1.   The Law Governing Unsealing Judicial Records

Under the First Amendment and common law, there is "a general right to inspect and

copy public records and documents, including judicial records and documents."  *John Doe*

*Company No. 1 v. Consumer Financial Protection Bureau*, 194 F.Supp.3d 9, 17 (D.D.C. 2016)

(quoting *Nixon*, 435 U.S. at 597 (1978); citing *Doe v. Public Citizen*, 749 F.3d 246, 265 (4th Cir.

2014); *Richmond Newspapers, Inc. v. Virginia*, 488 U.S. 555, 592-93 (1980); *Ex parte*

*Drawbaugh*, 2 App.D.C. 404, 404-09 (D.C. Cir. 1894)).

This right of access creates a "strong presumption in favor of public access to judicial

proceedings."  *Metlife*, 865 F.3d at 665 (quoting *United States v. Hubbard*, 650 F.2d 293, 317

(D.C. Cir. 1980); citing *Hardaway v. D.C. Housing Authority*, 843 F.3d 973, 980 (D.C. Cir.

2016)).  This "strong presumption" applies to "judicial records" because "[a]cessing judicial

records is 'fundamental' to 'the rule of law' and 'important to maintaining the integrity and

legitimacy of an independent Judicial Branch.'"  *Cable News Network*, 984 F.3d at 118 (quoting

*In re Leopold to Unseal Certain Electronic Surveillance Applications and Orders ("In re*

*Leopold*"), 964 F.3d 1121, 1127 (D.C. Cir. 2020); *Metlife*, 865 F.3d at 663). The public's right to access judicial record "reflects the antipathy of a democratic country to the notion of 'secret law,' inaccessible to those who are governed by that law." *In re Leopold*, 964 F.3d at 1127. This is because "the courts are not intended to be, nor should they be, secretive places for the resolution of secret disputes." *United States v. Bank Julius, Baer & Company, Ltd.*, 149 F.Supp.3d 69, 70 (D.D.C. 2015) (citing *Nixon*, 435 U.S. at 597). The right to access judicial records applies with equal force to civil cases because the "public's access to civil cases involving private disputes is intended to serve as a check on the judiciary". *Guttenberg v. Emery*, 26 F.Supp.3d 88, 92 (D.D.C. 2014).

The "burden to rebut the presumption of disclosure rests with the objecting party" who must "come forward with specific reasons why the record, or any part thereof, should remain under seal." *In re McCormick & Company, Inc., Pepper Products Marketing and Sales Practices Litigation* ("*In re McCormick*"), 316 F.Supp.3d 455, 464 (D.D.C. 2018) (quoting *Friedman v. Sebelius*, 672 F.Supp.2d 54, 58 (D.D.C. 2009); *Johnson v. Greater Southeast Community Hospital Corp*, 941 F.2d 1268, 1278 (D.C. Cir. 1991); citing *Grynberg v. BP P.L.C.*, 205 F.Supp.3d 1, 3 (D.D.C. 2016)).

Courts weigh six factors (also known as the "*Hubbard* Factors") to determine whether the party resisting disclosure has satisfied its burden:

> (1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of the person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings.

*Metlife*, 865 F.3d at 665 (quoting *EEOC*, 98 F.3d at 1409; citing *Hubbard*, 650 F.2d at 317-22).

13

A district court can "only" maintain the seal when, "considering the relevant facts and circumstances of a particular case, and after weighing the interests advanced by the parties in light of the public interest and the duty of the courts, concludes that justice so requires." *Metlife*, 865 F.3d at 665-666 (quoting *In re National Broadcasting Company*, 653 F.2d 609, 613 (D.C. Cir. 1981)).

> **2.      The Opposing Defendants Cannot Satisfy Their Burden Under the *Hubbard* Factors to Defeat the Strong Presumption for Unsealing of the Certified Transcripts**

As the parties opposing unsealing the Certified Transcripts, it is the burden of Opposing Defendants to make a factual showing as to why the Certified Transcripts should remain under seal under the *Hubbard* Factors.  They simply cannot meet this burden.

> **a.      The Need for Public Access to the Certified Transcripts Favors Unsealing Them**

There has always been intense public interest in how the conspiracy theory about Mr. Rich's alleged politically-motivated murder was created and propagated.  *See* Knappenberger Decl., ¶¶ 4, 10-11, Exs. A-J.  There is also intense public interest in this lawsuit because it would shed light on the details of how this conspiracy theory was created and propagated.  *See* Brian Decl., ¶¶ 4 & 6, 9 Ex. K-R; *see also* Section II.A, *supra* (citing cases involving the creation and propagation of the conspiracy theory about Mr. Rich's death).  The Certified Transcripts are of six phone calls between the individuals responsible for creating and propagating the conspiracy theory about Mr. Rich's death (*i.e.*, Butowsky, Couch and Wheeler).  *See* Brian Decl., ¶ 11, Bandlow Decl., ¶¶ 4-5; Dkt. Nos. 233, 233(1), 234(2-6), 240, 241(2).  Therefore, there is a great public need to access, examine and analyze the Certified Transcripts to gain further insight on

how the conspiracy theory about Mr. Rich's murder was created and propagated.  *See* Brian Decl., ¶¶ 4, 10-11.

Further demonstrating the public's need to access the Certified Transcripts are the recent events regarding conspiracy theories that led to the January 6, 2021, incursion into the United States Capitol.  *See* Brian Decl., ¶ 10.  The conspiracy theory about Mr. Rich's death were propagated by the same media outlets that propagated the conspiracy theories that the 2020 presidential election was rigged or stolen.  *Id.*  By being able to access and analyze the Certified Transcripts, the public can gain greater insight into how conspiracy theories are created and propagated in general and how they led to riots in the United States Capitol.  *Id.*, ¶¶ 10-11.

Therefore, this *Hubbard* Factor weighs heavily in favor of unsealing the Certified Transcripts.

### b.   The Reason for the Public's Lack of Prior Access to the Certified Transcripts Favors Unsealing Them

The sole reasons why the public cannot access to the Certified Transcripts is because they remain under seal.  *See* Bandlow Decl., ¶¶ 4-5; Dkt. Nos. 233, 233(1), 234(2-6), 240, 241(2). The Certified Transcripts remain under seal because Couch improperly designated the underlying six audio recordings as "Highly Confidential – Attorneys' Eyes Only" under the protective order in this case.  *Id.*; 9/23/20 Order (Bandlow Decl., ¶ 7, Ex. S).

The "mere fact that a case was, at one time, placed under seal is not a reason, in and of itself, to indefinitely maintain that seal and thus negate the public's access to judicial records, which the D.C. Circuit has described as 'fundamental to a democratic state.'"  *In re McCormick*, 316 F.Supp.3d at 464 (internal brackets omitted) (quoting *United States v. ISS Marine Services, Inc.*, 905 F.Supp.2d 121, 141 (D.D.C. 2012); *Hubbard*, 650 F.2d at 315 fn. 79).  Further, a

district court "cannot abdicate its responsibility to determine whether filings should be made available to the public by allowing the parties to control public access pursuant to a protective order." *In re McCormick*, 316 F.Supp.3d at 464 (internal quotes, brackets and ellipses omitted) (quoting *Aristotle International, Inc. v. NGP Software, Inc.*, 714 F.Supp.2d 1, 20 (D.D.C. 2010); *Proctor & Gable v. Bankers Trust*, 78 F.3d 219, 227 (6th Cir. 1996)).

Here, the sole reason why the public cannot access the Certified Transcripts is because Couch improperly designated the underlying audio recordings as subject to the protective order in this case.[9]  *See* Bandlow Decl., ¶¶ 4-5, 7, Ex. S; Dkt. Nos. 233, 233(1), 234(2-6), 240, 241(2). As such, the protective order should not justify keeping the Certified Transcripts under seal.

Therefore, this *Hubbard* Factor weighs in favor of unsealing the Certified Transcripts.

### c.    There does not Appear to be any Proprietary or Privacy Interest at Issue, which Favors Disclosure

To satisfy this factor, the Opposing Defendants must demonstrate that public access should be denied to: (1) "protect trade secrets"; (2) to protect "the privacy and reputation of victims of crimes"; (3) "to guard against risks to national security interests"; or (4) to "minimize the danger of an unfair trial by adverse publicity." *United States ex rel. Grover v. Related Companies, LP*, 4 F.Supp.3d 21, 25 (D.D.C. 2013) (quoting *Hubbard*, 650 F.2d at 315-316).

Here, Opposing Party did not and cannot identify any of the aforementioned interests to defeat the strong presumption in favor of unsealing the Certified Transcripts.[10]  The only

---

[9] In the 9/23/20 Order, this Court granted Plaintiff's 8/26/20 Motion and de-designated five of the six underlying audio recordings (*i.e.*, that Couch improperly designated the five audio recordings as subject to the protective order).  *See* Bandlow Decl., ¶ 7, Ex. S.  While this Court did not address the 9/2/20 Motion, it appears that the 9/23/20 Order would with equal force to that motion.  Couch's 9/9/20 Opposition appears to be directed at both the 8/26/20 Motion and 9/2/20 Motion.  *See* Dkt. No. 244.

[10] In the 8/26/20 Motion (which was incorporated by reference in the 9/2/20 Motion), Plaintiff addressed Couch's potential reassertion of a previously made argument that the reporter's privilege applied to the six audio recordings and how this Court previously held it did not apply.

potential privacy interest at issue is the non-public email addresses and telephone numbers contained in Docket No. 241(2) at pages 60:19-21 and 61:13-15 that were subject to the protective order. *See* Dkt. No. 240, p. 2. To resolve this potential issue, Luminant proposes that the publicly available version of Docket No. 241(2) redact the email addresses and phone numbers appearing at pages 60:19-21 and 61:13-15 to eliminate any potential invasion of the privacy interests of third parties.[11]

Therefore, this *Hubbard* Factor weighs heavily in favor of unsealing the Certified Transcripts.

### d.   The Lack of Prejudice Favors Unsealing the Certified Transcripts

There is no risk of prejudice from unsealing the Certified Transcripts because this case has been dismissed as to each and every defendant. *See* Dkt. Nos. 40, 288-289. Even assuming the lawsuit was ongoing (which it clearly is not), this Court's 9/23/20 Order de-designating five of the six underlying audio recordings and authorizing them to be publicly filed further emphasizes that unsealing the Certified Transcripts will not result in prejudice to any party.[12]

---

*See* Dkt. No. 233, pp. 11-15. Due to the 9/9/20 Opposition being completely under seal, Luminant does not know if Couch reasserted the reporter's privilege. *See* Dkt. No. 244. Regardless, this Court has previously held the reporter's privilege is inapplicable to the underlying audio recordings of the Certified Transcripts. *See* Dkt. No. 233, pp. 11-12 (citing Dkt. Nos. 133, 151 and 177); Bandlow Decl., ¶ 7, Ex. S.

[11] In the 9/2/20 Motion, Plaintiff stated that there may be other information subject to the protective order that could be designated as confidential. *See* Dkt. No. 240, p. 2 (citing Dkt. No. 241(2), p. 66:7-15). The only example Plaintiff provided concerned some unknown information about Couch. *Id.* Luminant seeks disclosure of this information because Couch was not the victim of a crime and the information does not appear to relate to trade secrets or national security interests. *See Related Companies*, 4 F.Supp.3d at 25. Further, since the case is dismissed, there is absolutely no risk of an unfair trial by adverse publicity. *Id.*; Dkt. Nos. 38, 40, 286-289.

[12] The fact that this Court never ruled on the 9/2/20 Motion does not mean any prejudice will result from disclosure of the 9/2/20 Certified Transcript. As previously discussed, Couch's 9/9/20 Opposition appears to address both the 8/26/20 Motion and 9/2/20 Motion. *See* Dkt. No. 244. Since the 9/23/20 Order did not find any of the arguments in Couch's 9/9/20 Opposition

*See* Bandlow Decl., ¶ 7, Ex. S.

Therefore, this *Hubbard* Factor weighs heavily in favor of unsealing the Certified

Transcripts.

### e.      Plaintiff's Purpose in Submitting the Certified Transcripts Favors Disclosure

Plaintiff submitted the Certified Transcripts for the express purpose of de-designating the

underlying audio recordings and publicly filing those recordings.  *See* Dkt. Nos. 233, 233(1),

234(2-6), 240, 241(2).  In other words, Plaintiff's purpose in filing the Certified Transcripts was

to make their contents public.[13]

Therefore, this *Hubbard* Factor weighs heavily in favor of unsealing the Certified

Transcripts.

### f.      Opposing Defendants' Justifications for their Objection to Unsealing are Meritless and Favor Unsealing

The Opposing Defendants set forth four justifications for keeping the Certified

Transcripts under seal.  Bandlow Decl., ¶ 11.  None have merit.  First, the Opposing Defendants

intend to argue that the Certified Transcripts are not judicial records but exclusively discovery

materials.  *Id.*  As discussed in Section III.A., this is false.  The Certified Transcripts are judicial

records because they were filed to influence this Court's decision-making process regarding the

8/26/20 Motion and 9/2/20 Motion.

Second, the Opposing Defendants intend to argue that the protective order governs the

---

sufficient to defeat de-designation of the five audio recordings subject to the 8/26/20 Motion
(and, *a fortiori*, the 8/26/20 Transcripts) , it would naturally follow that Couch's arguments are
insufficient to defeat de-designation of the audio recording subject to the 9/2/20 Motion (and, *a
fortiori*, the 9/2/20 Transcript).

[13] Ultimately, Plaintiff never publicly filed the audio recordings, but the Certified Transcripts of
those audio recordings remain under seal.

treatment of discovery materials and, but for the order to preserve discovery materials, the Certified Transcripts would be inaccessible because they would be destroyed.  Bandlow Decl., ¶ 11.  As discussed in Section III.B.2.b., the existence of a protective order does not determine whether documents filed with the Court remain under seal.  Indeed, Opposing Defendants' argument stands in shocking contract with the "antipathy of a democratic country to the notion of 'secret law,' inaccessible to those who are governed by that law." *In re Leopold*, 964 F.3d at 1127.  It seems Opposing Defendants would prefer courts remain "secretive places for the resolution of secret disputes."  *Bank Julius, Baer & Company, Ltd.*, 149 F.Supp.3d at 70.  Further, the 9/23/20 Order's de-designation of five of the six underlying audio recordings further emphasizes that the audio recordings (and, *a fortiori*, the Certified Transcripts) are not subject to the protective order.  Taken to its logical conclusion, the Opposing Defendants' argument would lead to all sealed evidence filed with a court remain forever sealed or, pursuant to the protective order, destroyed and purged from the docket.  This is not only nonsensical, it is not the law.

Third, the Opposing Defendants intend to argue that there is a public policy in the finality for disputes.  Bandlow Decl., ¶ 11.  The public policy in finality applies to lawsuits implicating *res judicata* and relitigating arbitration awards.[14]  This case: (1) was not decided on the merits to implicate *res judicata* and Luminant was not a party; and (2) did not involve an arbitration or arbitration award.  Further, this argument commits violence against the First Amendment because it would, effectively, cut off the public's First Amendment and common law rights to access, examine and discuss legal disputes after cases end.

---

[14] *See Brown v. Felsen*, 422 U.S. 127, 131 (1979) ("Res judicata ensures the finality of decision [and] thus encourages reliance on judicial decisions, bars vexatious litigation, and frees the courts to resolve other disputes."); *Union Employee Division of Printing Industry of Washington, D.C., Inc. v. Columbia Typographical Union No. 101*, 353 F.Supp. 1348, 1349 (D.D.C. 1973) ("arbitration would be undermined if courts had the final say on the merits of awards.") (citing *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 596 (1960)).

Finally, the Opposing Defendants intend to argue that there is a danger that Luminant will cherry-pick from the Certified Transcripts in a manner unfavorable to the Opposing Defendants.  This argument is absurdly ironic because, in essence, Opposing Defendants are trying to cherry-pick how Luminant exercises its First Amendment rights by preventing it from lawfully accessing judicial records and making a documentary about matters of intense public interest.  In other words, Opposing Defendants want to prevent Luminant from exercising its right under the First Amendment to hide Opposing Defendants' abuse of the First Amendment when they created and propagated false information.  Of course, if Luminant cherry-picks information in a way that gives rise to any viable claim, Opposing Defendants would have legal options to explore.  Luminant has no such concerns because Luminant's entire purpose in getting this information is to provide the public with a broad and complete picture of what happened surrounding the alleged conspiracy theory, not to "cherry-pick" information (which, ironically, is required now because incomplete information about the conspiracy theory is available to the public without the transcripts being made available to them).

Therefore, this *Hubbard* Factor weighs heavily in favor of unsealing the Certified Transcripts.

In sum, the application of the *Hubbard* Factors demonstrate that the Opposing Defendants cannot defeat the strong presumption favoring unsealing the Certified Transcripts.  Therefore, this Court should grant the Motion and unseal the Certified Transcripts.

## IV.   <u>CONCLUSION</u>

The public has a right to know how the conspiracy theory about Mr. Rich's death – a theory that implicates public officials at the highest levels – was created, propagated and litigated.  Mr. Rich's death, and the facts and circumstances surrounding the creation,

propagation and litigation of the conspiracy theory about that death being a politically motivated murder, are matters of intense public interest.  In an era where misinformation and conspiracy theories have led to lethal results, the public needs to understand how misinformation and conspiracy theories are created, propagated and litigated.  The Certified Transcripts provide unique insight into these matters of public interest and Luminant's sole objective with this Motion is to unseal the Certified Transcripts so that the public may access, examine and analyze them to fully understand what transpired in the creation of a widely disseminated theory.

The intent of Opposing Defendants is transparent: they wish this Court to deny Luminant's First Amendment rights to access and report on judicial records in a case of immense public interest to hide Opposing Defendant's conduct in creating and propagating a conspiracy theory of intense public interest and importance.  These arguments are repugnant to the First Amendment and the Constitution.

Therefore, Luminant respectfully requests that this Court grant its Motion allowing Luminant to intervene in this case and to unseal the Certified Transcripts.

DATED:  June 29, 2021                                Respectfully submitted,
                                                                 */s/ Lincoln D. Bandlow*

                                             LINCOLN D. BANDLOW (BAR ID: CA00099)
                                             ROM BAR-NISSIM (admission application pending)
                                             LAW OFFICES OF LINCOLN BANDLOW, P.C.

                                             **Attorneys for Third-Party Luminant Media, Inc.**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned counsel certifies that on June 29, 2021, the foregoing document was filed through the CM/ECF system and thereby served electronically on counsel for Plaintiff Aaron Rich, Defendants Edward Butowsky, Matthew Couch, American First Media and *The Washington Times*, third-party petitioners, Fox News Network, LLC, Malia Zimmerman and Ellen Ratner and interested person Larry Johnson.  Courtesy copies of the foregoing document was also emailed to counsel as follows:

1.    Martin J. Weinstein, Michael Gottlieb and Meryl Conant Governski (Counsel for Plaintiff Aaron Rich) at mweinstein@willkie.com; mgottlieb@willkie.com; mgovernski@willkie.com;

2.    Eden Quainton (Counsel for Defendants Butowsky, Couch and American First Media and interested person Larry Johnson) at equainton@gmail.com;

3.    Allen Vern Farber (Counsel for Defendant *The Washington Times*) at allen.farber@faegredrinker.com;

4.    Joseph Marshall Terry Jr., Stephen J. Fuzesi and Katherine A Petti (Counsel for third-party petitioner Fox News Network, LLC) at jterry@wc.com; sfuzesi@wc.com; kpetti@wc.com;

1

5.      Vincent H. Cohen, Jr., David Stern and Nicolle L. Jacoby (Counsel for third-party

petitioner Malia Zimmerman) at Vincent.cohen@dechert.com;

dstern@bakerlaw.com; nicolle.jacoby@dechert.com; and


6.      Charna Eve Sherman (Counsel for third-party petitioner Ellen F. Ratner) at

csherman@charnalaw.com.


DATED:  June 29, 2021                              Respectfully submitted,
                                                   */s/ Lincoln D. Bandlow*

                              LINCOLN D. BANDLOW (admission application pending)
                              ROM BAR-NISSIM (*pro hac vice* application pending)
                              LAW OFFICES OF LINCOLN BANDLOW, P.C.
                              1801 Century Park East, Suite 2400
                              Los Angeles, CA 90067
                              Tel: (310) 556-9680
                              Fax: (310) 861-5550
                              Email: Lincoln@BandlowLaw.com; Rom@BandlowLaw.com