# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| **AARON RICH,** | **Case No. 1:18-cv-00681-RJL** |
| Plaintiff, | **Honorable Richard J. Leon** |
| **v.** | |
| **EDWARD BUTOWSKY,** **MATTHEW COUCH,** **AMERICA FIRST MEDIA** | |
| Defendants. | |

## OPPOSITION TO THIRD PARTY LUMINANT MEDIA, INC.'S MOTION TO INTERVENE AND UNSEAL DOCKET NUMBER 234(2-6) AND 241(2)

EDEN P. QUAINTON, ESQ. (D.C. Bar No. NY0318)
DUNNINGTON, BARTHOLOW & MILLER, LLP
230 Park Ave, 21st Floor
New York, New York 10169
Tel: (212) 682-8811
Email: equainton@dunnington.com
*Attorneys for Defendants Edward Butowsky and Matthew Couch*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT………………………………………………………………..1

FACTUAL AND PROCEDURAL BACKGROUND……………………………………………3

LEGAL ARGUMENT………………………………………………………………………5

I.      LUMINANT HAS FAILED TO SATISFY THE REQUIREMENTS UNDER RULE 24(b)
FOR PERMISSIVE INTERVENTION…………………………………………………...5

     A. Luminant's Motion is Not Timely………………………………………………6

     B. Luminant Cannot Make the Requisite Showing of Commodity………………………7

         1. Some Showing of Commonality is Required…………………………………..7

         2. Federal Case Law Does Not Support Luminant's Position……………………7

         3. There Are No "Special Circumstances" that Support Luminant's Position........9

     C. Defendants Would be Severely Prejudiced by the Disclosure of the Audio Transcripts
to Luminant…..…………………………………………………………………..10

         1. Butowsky …………………………………………………..……………..10

         2. Couch…………………………………...…………………………………14

II.     THE AUDIO TRANSCRIPTS ARE NOT "JUDICIAL RECORDS"…………………..16

III.    THE HUBBARD FACTORS OVERWHELMINGLY SUPPORT THE MAINTENANCE
OF THE AUDIO TRANSCRIPTS UNDER SEAL…….…………………………………21

     A. There Has Been No Previous Public Access to the Documents………………….21

     B. Defendants, Including the Owner of the Audio Recordings, Strenuously Object to
Disclosure of the Sealed Materials……………………………...…………………...22

     C. In Objecting to the Disclosure of the Audio Transcripts, Defendants Have Set Forth
Weighty Privacy and Proprietary Interests…………………………………………..23

     D. Disclosure of the Audio Transcripts to Luminant Creates a Serious Risk or
Prejudice………………………………………………………………………………..26

E.   The Audio Transcripts Were Submitted As Part of a Non-Dispositive Discovery Dispute, Which Weighs Heavily Against Unsealing…………………………………...27

F.   The "Intense Public Interest" in the Seth Rich Affair Does Not Constitute the Kind of "Need" Cognizable in Motions to Unseal……………………………………………28

IV.   LUMINANT RESPONSES TO DEFENDANTS' MEET AND CONFER ARGUMENTS ARE UNPERSUASIVE……………………………………………………………………32

CONCLUSION……………………………………………………………………..…33

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## FEDERAL CASES

*Action for Children's Television v. F.C.C.*
   *58 F.3d 654* (D.C. Cir.) (1995) ...............................................................................1

*Beckman Industries, Inc. v. International Ins. Co.,*
   966 F.2d 470, 473 (9th Cir. 1992) .............................................................................8

*\*Bond v. Utreras,*
   585 F.3d 1061 (7th Cir. 2009) ..................................................................... 1, 7, 8, 9

*Center for Biological Diversity v. U.S. E.P.A.,*
   274 F.R.D. 305 (D.D.C. 2011)....................................................................................6

*Center for Nat. Sec. Studies v. U.S. Department of Justice,*
   331 F.3d 918 (D.C. Cir. 2003) .................................................................................29

*Chicago Tribune Co. v. Bridgestone/Firestone, Inc.,*
   263 F.3d 1304 (11th Cir. 2001) .................................................................................6

*Citizens First Nat. Bank of Princeton v. Cincinnati Ins. Co.,*
   178 F.3d 943 (7th Cir. 1999) .............................................................................. 16, 20

*Citizens United v. Federal Election Com'n,*
   558 U.S. 310 (2010)..................................................................................................31

*Couch v. Verizon Commc'ns, et al.,*
   20-cv-2151……………………………………………………… ....................................14

*Eisai Inc. v. Sanofi-Aventis U.S., LLC,*
   No. CIV.A. 08-4168 MLC, 2012 WL 1299701 (D.N.J. Apr. 16, 2012) ...............................27

*\*E.E.O.C. v. National Children's Center, Inc.,*
   146 F.3d 1042 (D.C. Cir. 1998) ......................................................................... 7, 9, 10

*E.E.O.C. v. National Children's Center, Inc.,*
   98 F.3d 1406 (D.C. Cir. 1996) .................................................................................21

*Farah v. Esquire Magazine,*
   736 F.3d 528 (D.C. Cir. 2013)  *aff'd sub nom. Farah v. Esquire Mag., Inc.,*
   863 F. Supp. 2d 29 (D.D.C. 2012) ...........................................................................25

*F.D.I.C. v. Ernst & Ernst,*
   677 F.2d 230 (2d Cir.1982)…………………………….............................................8

*Glen v. Commissioner of Internal Revenue*,
  79 T.C. 208 (1982).............................................................................................15

*Grove Fresh Distributors, Inc. v. Everfresh Juice Co.*,
  24 F.3d 893 (7th Cir. 1994)...................................................................................8

*Hudson v. Am. Fed'n of Gov't Emps.*,
  No. CV 17-2094 (JEB), 2019 WL 2476610 (D.D.C. June 13, 2019) ...................27

*In re Beef Industry Antitrust Litigation*,
  589 F.2d 786 (5th Cir. 1979)..................................................................................8

*In re Franklin National Bank Securities Litigation*,
  92 F.R.D. 468 (E.D.N.Y.1981)…………………… .............................................8

*In re ULLICO Inc. Litigation*,
  237 F.R.D. 314 (D.D.C. 2006).............................................................................27

*Indus. Tech. Researh Inst. v. LG Corp.*,
  No. CV 12-949 (ES) (JAD), 2014 WL 12621188 (D.N.J. Oct. 9, 2014) .............27

*Komatsu v. City of New York*,
  No. 18-CIV-3698 (LGS)(GWG),  2021  WL 220163  (S.D.N.Y. Jan. 15 2021),
  *appeal dismissed* (Apr. 22, 2021), *reconsideration denied*, No. 18 CIV. 3698
  (LGS), 2021 WL 1163970 (S.D.N.Y. Mar. 26, 2021) .........................................27

*League of Women Voters of United States v. Newby*,
  838 F.3d 1 (D.C. Cir. 2016)…………………….. ...............................................8

*Leucadia, Inc. v. Applied Extrusion Technologies., Inc.*,
  998 F.2d 157 (3d Cir.1993) ...................................................................................17

*Lujan v. Defenders. of Wildlife*,
  504 U.S. 555 (1992)................................................................................................7

*Martindell v. International Tel. & Tel. Corp.*,
  594 F.2d 291 (2d Cir. 1979)…………………….....…..........................................8

*McCarthy v. Barnett Bank of Polk County*,
  876 F.2d 89 (11th Cir. 1989) ...............................................................................16

*Metlife, Inc. v. Financial Stability Oversight Council*,
  865 F.3d 661 (D.C. Cir. 2017)…………………….. ............................................8

*Meyer Goldberg, Inc., of Lorain v. Fisher Foods, Inc.*,
  823 F.2d 159 (6th Cir. 1987)..............................................................................8

*Nixon v. Warner Communications, Inc.*,
  435 U.S. 589 (1978)...........................................................................11, 29, 33

*N.L.R.B. v. Baby Watson Cheesecake, Inc.*,
  No. 93-4023,1995  WL 164758  (2d Cir. Feb. 1995)...........................................27

*North Jersey Media Group Inc v. United States*,
  836 F.3d 421 (3d Cir. 2016) ............................................................................16

*Ohralik v. Ohio State Bar Ass'n*,
  436 U.S. 447 (1978)........................................................................................23

*Pansy v. Borough of Stroudsburg*,
  23 F.3d 772, (3rd Cir. 1994).............................................................................8

*Phillips ex rel. Estates of Byrd v. General Motors Corp.*,
  307 F.3d 1206 (9th Cir. 2002) .................................................................17,18, 28

*Public Citizen v. Liggett Group, Inc.*,
  858 F.2d 775 (1st Cir. 1988)…………………………… .......................…………………..8

*Richmond Newspapers, Inc. v. Virginia*,
  448 U.S. 555 (1980) .......................................................................................29

*Seattle Times Co. v. Rhinehart*,
  467 U.S. 20 .............................................................................................16, 28

*S.E.C. v. American Intern. Group*,
  712 F.3d 1 (D.C. Cir. 2013).............................................................................29

*S.E.C v. TheStreet.Com*,
  273 F.3d 222 (2d Cir.2001)..............................................................................16

*United Nuclear Corp. v. Cranford Ins. Co.*,
  905 F.2d 1424 (10th Cir. 1990)..........................................................................8

*United States v. Bank Julius, Baer & Company, Ltd.*,
  149 F.Supp.3d 69 (D.D.C. 2015) .....................................................................29

*United States v. El-Sayegh*,
  131 F.3d 158 (D.C. Cir. 1997) ..........................................................2, 28, 29, 30, 32

*United States v. Hubbard*,
  650 F.2d 293 (D.C.Cir.1980)..........................................................2, 21, 22, 32

*United States v. Knohl,*
    379 F.2d 427 (2d Cir. 1967) ........................................................................... 23

*United States v. Michael T. Flynn,*
    411 F. Supp. 3d 15 (D.D.C 2019) .................................................................. 31

*United States v. Smith,*
    985 F. Supp. 2d 506 (S.D.N.Y. 2013) ...................................................... 16, 27

*United States v. Stagliano,*
    693 F. Supp. 2d 25 (D.D.C. 2010) ................................................................ 31

*United States v. Starks,*
    515 F.2d 112 (3d Cir. 1975) ........................................................................... 23

*United States v. Swartz,*
    945 F. Supp. 2d 216 (D. Mass. 2013) ........................................................... 16

*United States v. Wecht,*
    484 F.3d 194 (3d Cir. 2007) ........................................................................... 17

*United States v. Wolfson,*
    55 F.3d 58 (2d Cir. 1995) ............................................................................... 17

*Whitman-Walker Clinic, Inc. v. U.S. Department of Health & Human Services,*
    485 F.Supp.3d 1 (D.D.C. 2020) .................................................................... 31

## STATUTES AND RULES

Federal Rule of Civil Procedure 24(b) ............................................... 1, 5, 7, 8, 10, 32

Federal Rule of Civil Procedure 24(b)(1)(B) ............................................................. 5

Federal Rule of Civil Procedure 24(b)(3) ............................................................. 5, 10

## CONSTITUTIONAL PROVISIONS

First Amendment.............................................................................. 2, 27, 28, 29, 32

## OTHER AUTHORITIES

9 Am. Jur. Legal Forms 2d § 130:46 .........................................................................15

Arthur R. Miller,  *Confidentiality, Protective Orders, and Public Access to the
    Courts*, 105 Harv. L.Rev. 427 (1991).............................................................20

Michael Scott Henderson, *Applying Tort Law to Fabricated Digital Content*, 2018
    Utah L. Rev. 1145 (2018).................................................................................24

## PRELIMINARY STATEMENT

Luminant Media, Inc. ("Luminant"), a for-profit film and television production company, seeks access as a third-party intervenor to certain discovery materials that remain under seal pursuant to court order in a now dismissed case based on the "intense public interest" in the materials. This rationale has never served as a valid basis for third-party intervention by media companies to unseal discovery materials in the D.C. Circuit The Court should not make new law, which would not only be wrong as applied to this case, but would open the floodgates to third-party intervention from media organizations claiming "intense public interest" in countless cases before this Court.

Rather the Court should apply Rule 24(b) faithfully and fairly. Under Rule 24(b), the burden is on the third-party seeking permission to intervene to show that its motion was timely, raised common "claims and defenses" with the underlying action and does not unduly prejudice the original parties' rights. Luminant not only fails to meet its burden, but also makes no serious effort to satisfy it. Luminant knew this matter had been referred to mediation, knew motions for dismissal with prejudice against both Defendant Edward Butowsky ("Butowsky") and Defendant Matthew Couch ("Couch") had been filed, and knew the Court had entered an order dismissing the case with prejudice. Yet at no time until months after the dismissal of the case did Luminant contact Defendants to inform them it was producing a commercial movie in which Defendants would be cast as the villains and in which sealed discovery materials would be used in furtherance of its narrative. Had Defendants known of Luminant's plans they may well have made different decisions about the litigation and the protection of their rights. For this reason, as at least one Court of Appeals has stated, post-judgment intervention "necessarily disturbs the final adjudication of the parties' rights." *Bond v. Utreras*, 585 F.3d 1061, 1071 (7th Cir. 2009).

1

The Court should also reject Luminant's extravagant claim that any material, of any kind, that "influences" a judge's decision on any matter, whether or not dispositive, should be fair game for third-party intervenors. Luminant no doubt knows that its position is unsupported by the weight of precedent in Federal courts around the country and that the D.C. Circuit Court has itself cautioned, in *United States v. El-Sayegh*, 131 F.3d 158, 160 (D.C. Cir. 1997), that the mere fact a Court has considered a document in deciding whether to unseal it does ___*not*___ make the document a "judicial record" subject to a common-law right of access. The D.C. Circuit expressly warned against such "bootstrapping." *Id*. at 162. This Court should heed the D.C. Circuit's admonishment.

Finally, Luminant acts as though the factors identified in *United States v. Hubbard*, 650 F.2d 293, 317-322 (D.C.Cir.1980) help its cause when they all cut against Luminant and overwhelmingly support the conclusion that the material at issue should remain under seal. The discovery materials, transcripts prepared by Plaintiff of certain audio recordings submitted in his response to a demand for production, have never been made public; both Defendants vigorously oppose the unsealing of the materials; both Defendants have suffered insults, harassment and even death threats and would be gravely prejudiced by the selective use of unauthenticated recordings in which Couch has property rights; the discovery material was not submitted in connection with a criminal proceeding, where there is a First Amendment right of access, nor in connection with a dispositive motion, but to assist the Court in addressing a discovery dispute over the designation of material under the Protective Order; and finally, Luminant utterly fails to show a cognizable need for the material. Manifestly, Luminant does not need the material to help the public understand the judge's designation decision. If that were Luminant's goal, it would have sought to unseal all the materials submitted in connection with decision, including the

redacted documents filed by Plaintiff and the sealed Opposition and Cross-Motion filed by Couch.

Rather, Luminant relies on the "intense public interest" in the litigation, which proves both nothing and too much. Public interest alone has never been found to be a sufficient or necessary condition for unsealing decisions. If public interest, however intense, could serve as a basis for unsealing, this Court, which routinely faces national security, political, economic and cultural issues that arouse intense public interest, would face a tsunami of motions untethered from the law and swept forward by nothing more substantial than the toxic intensity of partisan passion. The Court should not embark on such treacherous seas and should stick to the firm ground of established law.

## FACTUAL AND PROCEDURAL BACKGROUND

The action in which Luminant seeks to intervene has been dismissed. On March 29, 2021, the Court entered orders dismissing the action with prejudice against Couch and America First Media, Dkt. 286, and against Butowsky. Dkt. 287. Although the action has been dismissed, Luminant is seeking selective access to discovery material that was never used in the case, has never been authenticated and remains under seal.

On August 26, 2020, Plaintiff Aaron Rich ("Plaintiff" or "Rich") filed a Motion to De-Designate Certain Audio Recordings (the "Mot. to De-Designate"). Dkt. 233. In connection with the Mot. to De-Designate, Plaintiff filed certified transcripts (the "Audio Transcripts") of certain audio recordings produced by Couch in discovery that had been labelled as "Attorneys' Eyes Only" by Couch (the "Audio Recordings"). Dkt. 233 at 2. Couch had previously uploaded the Audio Recordings to the discovery platform maintained by Plaintiff's counsel. Dkt. 233-3. According to Plaintiff, Couch's designation was improper because it would prevent counsel from

discussing certain aspects of the case with his client, Dkt. 233 at 16. In addition, Plaintiff argued that he should be entitled, in the future, to place the materials on the public docket in connection with future motions without having to maintain the documents under seal. Dkt. 233 at 15. The Mot. to De-Designate did not claim that the Audio Recordings had been authenticated or that the individuals whose conversations had allegedly been recorded had conceded that the recordings were free of distortion, editing or manipulation. Indeed, Butowsky's deposition had not taken place at the time the case was dismissed. Declaration of Eden P. Quainton, dated July 30, 2021 (the "Quainton Decl.") at ¶ 2. Plaintiff's deposition had also not occurred at the time of dismissal. *Id.*

On September 2, 2020, Plaintiff filed a Motion to Modify Designations of an Audio Recording Produced by Defendant Couch (the "Mot. to Modify"). Dkt. 240. In connection with the Mot. to Modify, Plaintiff also filed a certified transcript (the "Additional Audio Transcript") of the audio recording (the "Additional Audio Recording"). According to Plaintiff, this recording contained references that should remain confidential, but not be designated "Attorneys' Eyes Only." Dkt 240 at 2. Plaintiff provided no additional argument but contended that the recording in question contained "private, proprietary or sensitive" information. *Id.*

On September 9, 2020 Defendant Matthew Couch filed a sealed Opposition to the Motion to De-Designate (the "Opp.") and Cross-Motion for Leave to File an Answer, Affirmative Defenses and Counterclaim (the "Cross-Mot."). Dkt. 244. Plaintiff then filed a reply to a portion of Couch's papers, urging the Court to disregard the Cross-Mot., Dkt. 249 at 1, and alleging, without basis, that Couch had "conceded" the recordings were "relevant" to Defendants' state of mind and had already published "sources and content of information." Dkt. 249 at 2. Luminant

is not seeking to unseal either Dkt. 244 or Dkt 249, both of which necessarily influenced the Court's decision.

On September 30, 2020, Plaintiff filed a Sealed Reply to Opposition, replying belatedly to the Cross-Mot. (the "Sealed Reply"). Dkt. 266. Luminant is not seeking to unseal the Sealed Reply.

On September 23, 2020 in a Minute Order, the Court granted the Mot. to De-Designate, ruling that the audio recordings at issue "may be publicly filed." At the time the case was dismissed, the Court had not ruled on the Mot. to Modify or the Cross-Mot.

On May 10, 2021, counsel for Luminant contacted counsel for Defendants and notified counsel that Luminant intended to file a motion to unseal the audio recordings. Quainton Decl. at ¶ 4. Defendants notified Luminant's counsel that they would oppose the motion. *Id.* at ¶ 6. Counsel met and conferred and continued to disagree on the merits of the motion, which Luminant proceeded to file on June 29, 2021 (the "Mot."). Dkt. 291.

## LEGAL ARGUMENT

I.  LUMINANT HAS FAILED TO SATSIFY THE REQUIREMENTS UNDER RULE 24(b) FOR PERMISSIVE INTERVENTION.

Luminant does not claim it has standing to intervene "as of right" to seek the unsealing of the discovery material at issue in its motion. As a result, the threshold question is whether Luminant has met the requirements for permissive intervention under FRCP Rule 24(b), which provides that "[o]n timely motion, the court may permit anyone to intervene who. . .has a claim or defense that shares with the main action a common question of law or fact." FRCP Rule 24(b)(1)(B). In ruling on a motion to intervene, the court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." FRCP Rule 24(b)(3). There are three components to a proper Rule 24(b) motion: (1) timeliness, (2)

commonality and (3) absence of prejudice. *Ctr. for Biological Diversity v. U.S. E.P.A.*, 274 F.R.D. 305, 312–13 (D.D.C. 2011).

      A.    <u>Luminant's Motion is Not Timely</u>.

Luminant knew of the existence of the Audio Transcripts and the Additional Audio Transcript for at least eight months before notifying counsel that it intended to seek access to the transcripts. More importantly, Luminant knew that the matter had been referred to mediation and that, therefore, the parties were discussing a resolution of the case. Dkts. 284 and 285. Luminant had a duty to consult the docket and should have known that Butowsky had suffered cardiac arrest and required thirteen minutes of defibrillation to save his life. Dkt. 228. This near death (or actual clinical death) experience came after years of serious medical issues, aggravated by the relentless pressure of Plaintiff's lawsuit, led by two prominent D.C. law firms and their armies of associates and paralegals. Declaration of Edward Butowsky, dated July 30, 2021 (the "Butowsky Decl.") at ¶ 8. Luminant is advised by able counsel and knew or should have known that one of the issues that would be negotiated during mediation leading up to Plaintiff's decision to voluntarily dismiss the litigation was a desire for finality. The audio recordings at issue had never been authenticated by Butowsky and he had never been able to determine whether they were doctored, edited or manipulated. Butowsky Decl. at ¶ 10. That Plaintiff submitted certified copies of unauthenticated audio recordings is irrelevant. If Defendant Butowsky had been told that the media were seeking access to unauthenticated recordings, whether in their original or transcribed form, without giving him any opportunity to listen to the recordings at his deposition, respond to questions of opposing counsel and, to the extent necessary, provide context and explanation, the decisions made during mediation may have been materially different. The media should not be permitted to sandbag a Defendant who has already been harassed through years of

litigation, wait until the case is dismissed, and then seek access to discovery materials without providing any due process protections for the Defendant. As the Seventh Circuit has stated, "intervention post-judgment. . . necessarily disturbs the final adjudication of the parties' rights [and] should generally be disfavored." *Bond*, 585 F.3d at 1071. Luminant's motion is untimely and must be dismissed for this reason.

      B.  <u>Luminant Cannot Make the Requisite Showing of Commonality</u>.

      1.  <u>Some Showing of Commonality is Required</u>. Rule 24(b) requires the movant to establish some common questions of law and fact with the underlying litigation. Courts have noted that Rule 24(b) is an awkward vehicle for third-party motions to intervene by the press since, technically, in most cases they do not have any "claims or defenses" at issue in the litigation. The D.C. Circuit has recognized that press motions to intervene "lack [ ] a clear fit with the literal terms of Rule 24(b)." *E.E.O.C. v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1045 (D.C. Cir. 1998). In addition, under a strict application of constitutional and prudential standards, third-party press intervenors could find it difficult to satisfy "the irreducible constitutional minimum" of standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). This concern is heightened when that case has been dismissed and there is no live "case or controversy" with anyone.

      2.  <u>Federal Case Law Does Not Support Luminant's Position</u>. The cases canvassed by the court in *Nat'l Children's Ctr.*, 146 F.3d at 1045 do not help Luminant. These cases, with one outlying exception, fall into recognized categories, none of which applies to Luminant. One line of cases is the public interest line of cases in which a public interest litigation or narrowly focused advocacy group that may not be actively involved in litigation seeks to intervene in

litigation and gain access to judicial records involving its core concerns.[1] *Pub. Citizen v. Liggett Grp., Inc.*, 858 F.2d 775, 784 (1st Cir. 1988); *Metlife, Inc. v. Financial Stability Oversight Council*, 865 F.3d 661 (D.C. Cir. 2017); *League of Women Voters of United States v. Newby, 838 F.3d 1 (D.C. Cir. 2016);* and, *In re Franklin National Bank Securities Litigation*, 92 F.R.D. 468 (E.D.N.Y.1981), *aff'd, F.D.I.C. v. Ernst & Ernst*, 677 F.2d 230 (2d Cir.1982). Another line of cases is the regulatory intervention line of cases, in which a government body is conducting an investigation and seeks information germane to its investigation from pending litigation involving the target or subject matter of its investigation. *See Martindell v. Int'l Tel. & Tel. Corp.*, 594 F.2d 291 (2d Cir. 1979); *In re Beef Indus. Antitrust Litig.*, 589 F.2d 786, 788 (5th Cir. 1979). The third line of cases is the collateral litigation line of cases, in which a litigant in one case seeks to intervene in another case with common facts, issues or parties. *United Nuclear Corp. v. Cranford Ins. Co.,* 905 F.2d 1424 (10th Cir. 1990); *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 473 (9th Cir. 1992); *Meyer Goldberg, Inc., of Lorain v. Fisher Foods, Inc.*, 823 F.2d 159 (6th Cir. 1987). Obviously, none of these apply to the situation here.

The other cases reviewed by the Court also do not help Luminant establish commonality. *Grove Fresh Distributors, Inc. v. Everfresh Juice Co.*, 24 F.3d 893, 896 (7th Cir. 1994) is no longer good law in the Seventh Circuit and has been superseded by *Bond v. Utreras*. With respect to litigation surrounding the modification of confidentiality orders, the D.C. Circuit expressed doubt as to the validity of *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 778 (3rd Cir. 1994), which perhaps represents the outer-bounds of judicial relaxation of Rule 24(b)'s commonality requirements, observing that in the case before it, there was collateral litigation, the intervenor was pursuing the same entity and the same employees of the entity in the collateral

---

[1] Defendants do not concede that the Audio Transcripts are judicial records. *See infra* at 16-21.

litigation, and the two lawsuits were focused on sexual misconduct by these employees occurring at the same time. *Nat'l Children's Ctr., Inc*., 146 F.3d at 1047. As discussed below, there is another line of cases, the "anti-secrecy" line, in which the interest advanced in civil cases is the interest in illuminating the workings of judicial, administrative or governmental bodies. Because Luminant does not seek to unseal the bulk of the materials submitted to the Court in connection with the Mot. to De-Designate, but only seeks access to what it believes will "sell" in the marketplace, its "sunlight" argument is weak and unpersuasive. *See infra* at 20-21, 29.

3.   There Are No "Special Circumstances" that Support Luminant's Position.  The D.C. Circuit has been willing "to adopt flexible interpretations of Rule 24 in "***special circumstances***." *Id*. at 1045–46 (emphasis added). Luminant does not even attempt to argue that a media group's post-judgment desire for access to sealed discovery materials submitted in connection with a discovery dispute constitutes "special circumstances." Some Federal courts have flatly refused to permit media intervention in dismissed cases. *See Bond,* 585 F.3d at 1072. Yet even assuming intervention after voluntary dismissal with prejudice is appropriate in cases with "special circumstances," no such circumstances are present here. The only possible consideration warranting a "flexible" approach would be the presumed public interest in access to the workings of the judicial system or the basis for judicial decision-making. But selective cherry-picking of portions of a sealed record does not advance this interest. In ruling on the Mot. to De-Designate, the Court also had before it a range of other sealed materials beyond the Audio Transcripts. The Court also necessarily took into account Plaintiff's motion in support, which was redacted on the public docket. Dkt. 233. Plaintiff's redactions do more than simply redact the Audio Transcripts. The redactions reflect additional argument that was made to the Court and that would also have to be unsealed to understand what "influenced" the Court. For example, the

9

redactions refer to actions taken by Couch with respect to interrogatories, Dkt 233 at 6 and Note 5; Couch's confidential deposition testimony, *id*. at 13 and Note 10 and at 7 and Note 8; and "additional discovery" obtained from Couch. *Id*. at 9. All these items, in addition to the Audio Transcripts, were before the Court for its decision. Moreover, Couch filed the Opp. and Cross-Mot., which included a counter-claim against Plaintiff. Dkt. 244. As noted, *supra* at 4, Plaintiff filed a reply urging the court not to consider the proposed counter-claim. Dkt. 249. This reply was itself heavily redacted and blacked out sections that articulated what the Opp. attempted to do, Dkt 249 at 3 and Note 1; what the Opp. claimed about Plaintiff that he believed was relevant for the Court to consider, Dkt 249 at 4-5; and what Plaintiff disparagingly labels as Couch's "inverted worldview," Dkt. 249 at 6. All this material, together with the Opp. and the Cross-Mot., which had to be reviewed to assess whether Plaintiff's arguments were valid, was before the Court and would have to be unsealed to shed light on the Court's decision-making process.

An "intense" desire to gain access to limited portion of a sealed record in a bitterly contested lawsuit to develop a partisan media narrative does not suffice to make the required showing under Rule 24(b).

C. <u>Defendants Would be Severely Prejudiced By the Disclosure of the Audio Transcripts to Luminant.</u>

In exercising its discretion with respect to a motion to intervene, the Court "shall consider" whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties. *Nat'l Children's Ctr, Inc.*, 146 F.3d at 1045; Rule 24(b)(3). Here, both Defendants would suffer severe prejudice if the Audio Recordings were released to Luminant.

1. <u>Butowsky</u>. The prejudice Butowsky would suffer has already been alluded to above. The Audio Recordings have not been authenticated and have not been shown to be free

from editing, doctoring or manipulation. Butowsky Decl. at ¶ 10.[2] The recordings were produced in discovery and, although, following the Court's ruling, Plaintiff would have been free to use the recordings in motions filed with the Court, it is doubtful that Plaintiff would have acted so irresponsibly. Premature disclosure could have tainted the jury pool or exposed Plaintiff to embarrassment if portions of the audio were determined to be inaccurate, doctored or misleading—which could have undermined Plaintiff's credibility at trial. Most likely, Plaintiff would have used transcripts of the recordings in support of a summary judgment motion after playing the actual recordings for Butowsky at his deposition. The deposition would have had due process safeguards to prevent sandbagging and permit the lodging of necessary objections. Disclosing the "raw" unauthenticated audio through transcripts thereof to the partisan press without any of the safeguards that attend the use of discovery material in litigation generally would amount to sever prejudice. In addition, as the Supreme Court has noted, the use of audio by the press can lead to phrases being taken out of context or edited in such a way as to be extremely unfair to the defendant. As the Supreme Court stated in connection with media efforts to drag former President Nixon further through the mud, in words that resonate here:

> If made available for commercial recordings or broadcast by the electronic media, only fractions of the tapes, necessarily taken out of context, could or would be presented. Nor would there be any safeguard, other than the taste of the marketing medium, against distortion through cutting, erasing, and splicing of tapes. There would be strong motivation to titillate as well as to educate listeners. Petitioner insists that this use would infringe his privacy, resulting in embarrassment and anguish to himself and the other persons who participated in private conversations that they had every reason to believe would remain confidential.

*Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 601 (1978).

---

[2] The points made here about the Audio Recordings and the Audio Transcript also apply to the Additional Audio Recording and the Additional Audio Transcript.

Here, while the transcripts may be certified, the underlying audio has never been authenticated or confirmed by Butowsky or even shown to be free of editing or manipulation. The Supreme Court's concern that the media could further "cut" and "take out of context" without "safeguards" applies as much to faithful transcriptions of unreliable recordings as it does to the direct use of the recordings themselves. In addition, audio transcripts can be rendered misleading by the use of dramatic, sinister or evil-sounding voices. Moreover, Butowsky had no idea he was being recorded at any time during any conversations with Couch. Butowsky Decl. at ¶ 10. Disclosure of the recordings, even if they accurately reflect his words, which Butowsky does not concede, would invade his privacy, and possibly result in embarrassment and anguish. Such unfair embarrassment and anguish may have been a part of litigation but it is exactly what Butowsky reasonably believed he would avoid when the case was dismissed with prejudice.

To the extent Luminant acts as the Supreme Court observed the media are known to do, or worse, in a defamatory manner, Butowsky would have no choice but initiate yet more litigation to vindicate his name. Such litigation would also renew conflict and potentially spawn yet another cycle of pain for all involved. Luminant dismisses Butowsky's interest in finality as "nonsensical." Mot. at 19. But this cavalierly disparaging attitude towards a Defendant who has been put through intense physical and mental suffering for nearly four years (and nearly died), and would be subjected to further pain by a media hit job he could only respond to–if at all–in a way that might cause yet more pain, highlights the improper purpose underlying Luminant's motion and the prejudice to Butowsky.

The additional publicity that would come from public disclosure of discovery material after the case has been dismissed creates unacceptable risks to the health and even the lives of Butowsky and his family. It is an understatement to say that we live in polarizing times. The

subject matter of the litigation previously before this Court has served as a lightning rod for a display of some of the vilest, most irresponsible behavior by people on both sides of the current political divide. Butowsky and his family have been the targets of death threats, threats of physical violence and even actual physical violence. Butowsky Decl. at ¶ 2. His children have been attacked on Twitter and elsewhere. *Id.* at ¶ 3. His son was "doxxed," the name of his university was revealed, his car was vandalized and there was even a call for his murder. *Id.* His daughter recently began a new job and on her first day at work received a threatening call insulting both her and Butowsky. *Id.* Butowksy has received threats at home and at his office. *Id.* at ¶ 4. Butowsky has received voicemail messages from deranged individuals stating they wanted Butowsky to be maimed so badly he could not be recognized, wished him dead and hoped he would lose all his clients and face bankruptcy. *Id.* at ¶ 5-7. At one point, a threatening call was made to Butowsky's office that so frightened his assistants they were obligated to lock all the doors to the office and hire a security guard to stand guard and protect them. *Id.* at ¶ 9. As the Court knows, the stress of the relentless attacks on Butowsky were contributing factors to a sharp deterioration in his health, resulting in an incident in which he went into cardiac arrest and organ failure and was clinically dead. *Id.* at ¶ 8.

        In today's polarized society, some degree of unhinged attacks on perceived political "enemies" is, unfortunately, inevitable. But the Court should not add to the clear risks to Butowsky, his wife and two children, by permitting the exploitation of discovery material that was never substantively used by Plaintiff, has not been authenticated and verified, and will be doubtlessly amplified by a sensationalizing documentary whose professed goal is to highlight what it claims, without any evidence whatsoever, is "a direct link between the conspiracy theories regarding the results of the 2020 presidential election and the conspiracy theory

surrounding the death of Mr. Rich," Mot. at 6, shining a spotlight on what it claims are the "critical" "roles played by Butowsky, Couch and Mr. Rod Wheeler, Mot. at 7. The animus against Defendants fairly oozes from the lines of Luminant's brief, leaving no doubt about the narrative they intend to develop and who their chosen villains are destined to be. Of course, Luminant has every right to make nasty documentaries–within the bounds of defamation law– about Seth Rich or anything else they desire. But they should not be given selective access to discovery materials in a matter virtually certain to create serious risks to the lives of Butowsky and his family.

    2.   <u>Couch</u>. As the Court knows, Defendant Couch is also the plaintiff in pending litigation against Verizon, Yahoo! News and Michael Isikoff, among others, who were responsible for a series of podcasts called *Conspiracyland* that aired in the summer of 2019. *Couch v. Verizon Commc'ns, et al.*, 20-cv-2151. This litigation illustrates the serious dangers of defamation in media efforts to cast Defendants as villains in their narratives. Couch has detailed in his complaint how wildly improbable statements were falsely attributed to him. Notably, he was said to be the author of a claim that bartender Joe Capone was conspiring with Hilary Clinton to murder Seth Rich, a ludicrous falsehood that unfortunately is presented entirely seriously, or that Couch was responsible for vile attempts to connect serial killer Jeffrey Dahmer with a witness in the Rich murder, Mark Mueller. *Couch*, 20-cv-2151, Dkt. 1 ¶¶ 106, 107, 114-117. As Couch stated in his complaint, these "baseless accusations have caused Couch to receive death threats, compromised his health, ruined his ability to fundraise, damaged his business and deprived him of any opportunity of returning to the corporate world, where his reputation has been tarnished beyond expression by[these] knowing lies." *Id.* ¶118. Couch and his children continue to be targets of a vile hate campaign and Couch has received obscene insults, harassing

messages and even death threats. Declaration of Matthew Couch, dated July 30, 2021 (the "Couch Decl.") at ¶ 4-5.

In addition, the discovery materials to which Luminant seeks access are based on proprietary audio recordings taken by Couch in his capacity as an investigative journalist. Couch Decl. at ¶ 6. He has a clear property interest in these recordings, as they belong to him. *Id*. The owner of an audio recording also has a property interest in transcripts of the audio, which a third-party should not be free to use commercially without his consent. *See Glen v. Comm'r of Internal Revenue*, 79 T.C. 208, 214 (1982) (holding that property includes "such property as a draft of a speech, a manuscript, a research paper, an oral recording of any type, a transcript of an oral recording, a transcript of an oral interview or of dictation"; *see also* 9 Am. Jur. Legal Forms 2d § 130:46 (providing language for the devise of property rights in recordings and associated transcripts). To the extent recordings were deemed germane to ongoing litigation, Couch disclosed them to Plaintiff. He did not thereby waive any property rights or give the media permission to dramatize the transcripts in any way they chose. His reasons for seeking to maintain the designations of these audios are set forth in Dkt. 244 and the exhibits thereto, which remain under seal, and to which Luminant has not sought access, as it does not want the public to hear Couch's side of the story. If Luminant believes the recordings or transcripts thereof would be useful in its documentary, the correct approach is not to waste the Court's time, but to engage in direct negotiations with Couch. Yet Luminant made no effort to negotiate with Couch. Now that the litigation has been dismissed, uncompensated disclosure to a competing media organization of audio transcripts in which Couch has a property interest violates his rights in the recordings and unjustly enriches Luminant.

## II.     THE AUDIO TRANSCRIPTS ARE NOT "JUDICIAL RECORDS"

The Audio Recordings were produced by Couch in response to discovery demands propounded by Plaintiff. Couch Decl. at ¶ 6. Plaintiff details the discovery dispute surrounding the audio in his Mot. to Designate. Dkt. 233-1 and 233-3. As the Court knows, parties routinely make transcripts of recordings as part of the discovery process. As courts around the country have recognized, discovery materials are not "judicial records," *Chicago Trib. Co. v. Bridgestone/Firestone, Inc.,* 263 F.3d 1304, 1311 (11th Cir. 2001); *McCarthy v. Barnett Bank of Polk Cty.,* 876 F.2d 89, 91 (11th Cir. 1989) (individual has no common law right to discovery material because those materials are not judicial records or public documents); *United States v. Smith,* 985 F.Supp.2d 506, 519 (S.D.N.Y. 2013) (no right of access to discovery materials because courts generally view the documents or materials shared between the parties as outside the judicial function); *United States v. Swartz,* 945 F.Supp.2d 216, 221 (D. Mass. 2013) (***unlike discovery materials***, motions to suppress and dismiss are "judicial records") (emphasis added); *Citizens First Nat. Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 944 (7th Cir. 1999) (pretrial discovery, unlike the trial itself, is usually conducted in private); *accord Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 ("[R]estraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information.").

If discovery materials are filed with the court in connection with discovery-related disputes, they do not become thereby "judicial records" subject to a right of access. *See S.E.C v. TheStreet.Com*, 273 F.3d 222, 233 (2d Cir.2001) (rejecting claim that deposition testimony became a "judicial document" "because the Court reviewed it in order to decide whether or not to enter [a] protective order"); *N. Jersey Media Grp. Inc v. United States*, 836 F.3d 421, 435 (3d Cir. 2016) (discovery materials that are part of judicial filings are generally not "judicial records"

and do not fall within the common law right of access); *United States v. Wolfson*, 55 F.3d 58, 61 (2d Cir. 1995) ("We are not aware . . . of any common-law principle that documents submitted to a court in camera for the sole purpose of confirming that the refusal to disclose them to another party was proper, are to be deemed judicial records open to the public."); *United States v. Wecht*, 484 F.3d 194, 209 (3d Cir. 2007) (noting that "documents filed with the court are generally subject to the common law right of access, ***unless*** attached to a discovery motion") (emphasis added); *Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 998 F.2d 157, 165 (3d Cir.1993) ("there is a presumptive [common law] right to public access to all material filed in connection with ***nondiscovery*** pretrial motions. . .but ***no such right as to discovery motions and their supporting documents***") (emphasis added).

Some courts apply a dispositive/non-dispositive distinction to material filed with the court. Discovery materials filed with the court in connection with dispositive motions are subject to a common law right of access, whereas discovery materials filed in connection with non-dispositive motions are not. *Phillips ex rel. Ests. of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1213 (9th Cir. 2002) ("when a party attaches a sealed discovery document to a nondispositive motion, the usual presumption of the public's right of access is rebutted, so that the party seeking disclosure must present sufficiently compelling reasons why the sealed discovery document should be released"). Obviously the Mot. to De-Designate was non-dispositive as it did not definitively adjudicate any claim or counterclaim. The motion was likely filed to enable the use of the discovery material in a ***subsequent*** summary judgment motion. But as long as the discovery materials remained under seal, they are just that—discovery materials. Luminant has not attempted to make any "compelling" showing and has, in fact, wrongly claimed that it is ***Defendant's*** burden to demonstrate why the discovery materials should remain under seal. Mot.

at 14. This gets the law in cases such as *Phillips* exactly backwards. But the D.C. Circuit has never gone as far the *Phillips* court and this Court should align itself with the majority position of courts around the country, namely, that materials submitted in connection with a discovery dispute are not "judicial records."

Luminant's reasoning is excessively simplistic. According to Luminant, the discovery materials were filed with the court in connection with a motion, therefore they are subject to the common law right of access. Mot. at 11-12. Luminant provides no support for this sweeping syllogism, because there is none. As discussed above, the mere filing of a discovery document in connection with a discovery dispute does *_not_* transform the filed document into a judicial record. *See supra* at 16-17. At best, the filing of a discovery document in connection with a non-dispositive motion, such as the one at issue here, could create a right of access if the movant were to present "compelling reasons." Luminant does not even attempt to make such a showing. It makes a half-hearted argument that the discovery materials "influenced" a decision about the discovery materials, but even leaving aside this circular bootstrapping, it ignores most of the documents submitted in connection with the Mot. to De-Designate, and Luminant cannot have any genuine interest in understanding what influenced the Court, given the paucity of the materials sought. Its sole consistent argument is that there is "intense interest" in the Seth Rich case and "conspiracy theories." Mot. 4, 14. Incredibly, Luminant even claims that public interest in the events of January 6, completely unrelated to the Seth Rich murder except in Luminant's slightly unhinged worldview, create a cognizable interest before this Court sufficient to warrant unsealing of discovery materials. Mot. at 15. But the general public interest in a particular topic is not the issue. If that were the test, sealing orders could be routinely lifted because, almost by definition, sealed information is of great public interest. Luminant is no doubt aware that there is

tremendous public interest in all discovery materials produced in the *Rich v. Butowsky* litigation and filed in connection with numerous motions.

Indeed, Defendants have been contacted by Kristina Borjesson, an award-winning journalist who became aware of Luminant's motion, and has expressed interest in filing a motion to unseal discovery materials that were considered by the Court in rendering its decisions because of her audience's intense interest in the Seth Rich case. Declaration of Kristina Borjesson ("Borjesson"), dated July 30, 2021 (the "Borjesson Decl.") at ¶¶ 1, 5, 6, 7.

Borjesson is the host of The Whistleblower Newsroom, a show that covers what it views as heavily censored stories, many of which it believes are covered up by official narratives and disinformation. Borjesson Decl. at ¶ 2. The Whistleblower Newsroom has extensively covered the Seth Rich story and the alleged Russian hacking of the DNC. Borjesson Decl. at ¶ 3. Borjesson has interviewed various individuals connected professionally or otherwise with Seth Rich story, including counsel to Defendants, former CIA analyst Ray McGovern, former NSA Technical Director Bill Binney and investigative journalist Seymour Hersh. Borjesson Decl. at ¶ 4. Borjesson has stated that, if the Court appears amenable to unsealing records, she intends to seek permission to intervene and unseal or lift the confidentiality restrictions on records in which her audience is intensely interested. Borjesson Decl. at ¶¶ 6, 7. These include the full record filed under seal in connection with the Mot. to De-Designate; the depositions of Seymour Hersh and Ellen Ratner and materials submitted under seal in connection therewith; the documents submitted under seal in connection with Defendants' Motion to Extend Discovery, Dkts. 103, 117 and 129; Plaintiff's Sealed Reply to Defendants' Opposition to Motion for Sanctions, Dkt. 119; Defendant Couch's Sealed Filing of Supplemental Authority for Permission to Take Five Depositions, Dkt. 141; Plaintiff's Sealed Motion to Compel, Dkt. 172; Defendants' Sealed

Motion for Leave to File Documents under Seal and the exhibits thereto in connection with outstanding discovery requests responding to the Court's March 23, 2020 order, Dkt. 174; Plaintiff's Sealed Motion dated June 3, 2020, Defendant's Sealed Opposition thereto, dated June 17, 2020, and Plaintiff's Sealed Reply, dated June 24, 2020, Dkts. 211, 216, 217; Plaintiff's Sealed Motion entered September 27, 2020, Defendant's Sealed Opposition, entered September 27, 2020, and Plaintiff's Sealed Reply entered September 27, 2020, Dkts. 281, 282, and 283; Defendants' Sealed Motion for Reconsideration and Permission to Take Additional Depositions and the Exhibits thereto, dated September 25, 2020, Dkt. 258; and Plaintiff's Sealed Response dated October 9, 2020 Dkt. 274.[3]  Borjesson Decl. at ¶ 7.

To the extent Luminant is serious in citing, as the primary support for its motion, cases underscoring the aversion to "secret trials" and "secret proceedings," it should also have sought the unsealing of **_all_** the materials submitted in connection with the Mot. to De-Designate, as well as the vast amount of **_additional_** material, discovery and otherwise, submitted under seal by both sides, that influenced numerous decisions of the Court. If the litigation is of such "intense interest" to Luminant's audience, it should have sought access to everything under seal, which taken together would provide a fairer view for the public of the import of the litigation than the Audio Recordings and Transcripts.

---

[3] It appears that no decision was ever rendered as to the definitive sealing of Dkts. 258 and 271. The parties are not free to seal documents filed on the public docket absent court intervention and the Court has a duty to rule on documents submitted provisionally under seal. *See generally*, *Citizens First Nat. Bank of Princeton*, 178 F.3d at 945 (7th Cir. 1999) ("the judge is the primary representative of the public interest in the judicial process and is duty-bound therefore to review any request to seal the record (or part of it)" (citing Arthur R. Miller, *Confidentiality, Protective Orders, and Public Access to the Courts*, 105 *Harv. L.Rev.* 427, at 492 (1991)). Unless and until the Court rules on the Motion, Luminant's motion is premature and lacks even the beginning of a hint of a rationale to support its position with respect to Dkt. 241-2. Insofar as it concerns Dkt. 241(2), Luminant's motion must plainly be denied.

That Luminant has not sought such disclosure and has sought to cherry-pick a few discovery items out of the dozens and dozens of documents held under seal demonstrates that even its professed "interest" in preparing a "documentary" on the Seth Rich story is insincere. What it really seeks is any salacious material it can use to titillate its audience, embarrass and harm Defendants, and further a false narrative to which it believes Defendants, as a result of the dismissal of the lawsuit, will be unable to respond. Such an approach should not be permitted.

III.   THE HUBBARD FACTORS OVERWHELMINGLY SUPPORT THE MAINTENANCE OF THE AUDIO TRANSCRIPTS UNDER SEAL

Even if, against the weight of the law, Luminant is given permission to intervene, and even if, again against the weight of the law, the Court finds that the Audio Transcripts are "judicial records," it remains overwhelmingly clear that the recordings should remain under seal based on the factors identified in *Hubbard*, 650 F.2d at 317-322 (D.C. Cir. 1980). In *Hubbard*, the D.C. Circuit identified six factors to consider in determining whether to grant a motion to unseal: (1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings. *See E.E.O.C.. v. Nat'l Children's Ctr, Inc.*, 98 F.3d 1406, 1409 (D.C. Cir. 1996). Applying these factors to the instant motion, it is evident that Luminant's motion must be denied.

A.   There Has Been No Previous Public Access to the Documents.

As discussed above, the recordings are private recordings made by Matthew Couch in connection with his investigation into the Seth Rich murder. Couch Decl. at ¶ 6. There has been no public access to the Audio Recordings or the Transcripts at any time. Couch applied an

"Attorneys' Eyes Only" designation to the recordings for reasons set forth in detail in his sealed Opp. and Cross-Motion. Couch Decl. at ¶ 8. The Court considered Couch's arguments and determined that the documents "may be filed on the public docket." Minute Order, dated September 23, 2020. But the fact that a party *could have* filed a document publicly is of no moment. The fact is the Audio Recordings and the Transcripts were *never* made public. The *Hubbard* court meant what it said. This factor asks only whether there has been previous public disclosure of the documents in question. Since there has been *none*, this factor plainly cuts in favor of Defendants.

Luminant cites no support for its argument that because the Court ruled in Plaintiff's favor in a discovery dispute over document designation this somehow bears on the extent of prior public disclosure, a manifest non sequitur. Moreover, even if the material had been entirely undesignated, it is highly unlikely Plaintiff would have made any use of the material until after Butowsky's deposition, so that his position as to its authenticity and accuracy could be assessed. The flaws in Luminant's argument can also be seen by considering that Defendants remain in possession of undesignated discovery material (because of a preservation notice served on Defendants' counsel) that could have placed on the public docket during the litigation. Quainton Decl. at ¶ 3. A ruling in Luminant's favor would open the door to any third-party with an "intense public" interest in the materials to argue that because Defendants *could have used* the documents and *could have filed them* on the public docket, such materials must now be publicly disclosed. It seems doubtful the Court would want to encourage such a result.

B. Defendants, Including the Owner of the Audio Recordings, Strenuously Object to Their Disclosure.

Both Butowsky and Couch strenuously object to the disclosure of the Audio Recordings and the Audio Transcripts. Butowsky Decl. at ¶ 13; Couch Decl. at ¶ 7. Butowsky has set forth in

detail the physical, emotional and financial risks he and his family face from further efforts to sensationalize the Seth Rich story and profit from the tragedy. *See supra* at 12-13. Couch has also detailed the prejudice he would suffer as a result of the disclosure of the Audio Recordings, as well as his proprietary interest in the materials. *See supra* at 14-15. Couch also would be gravely prejudiced if a commercial film production company, whose animus against him can easily be gleaned from Luminant's framing of its "interest" in the materials, were able to use and profit from his own property while seeking to damage his reputation, whether through misleading cuts and edits, portentous dramatic reading of the transcripts, or otherwise.

C.   In Objecting to the Disclosure of the Audio Transcripts Defendants Have Set Forth Weighty Privacy and Proprietary Interests.

Butowsky at no point ever knew that he was being recorded. Butowsky Decl. at ¶ 10. Even in a different, less toxic environment, his privacy interests would be weighty. *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 469 (1978) (recording made without consent or knowledge constituted "gross disregard" for privacy). The potential violation of Butowsky's privacy is heightened when no showing whatsoever has been made as to the authenticity of the Audio Recordings, a burden Plaintiff would have had to carry by "clear and convincing" evidence. *See United States v. Starks*, 515 F.2d 112, 121 (3d Cir. 1975) (following and citing the Second Circuit in *United States v. Knohl*, 379 F.2d 427, 440 (2d Cir. 1967), *cert. denied*, 389 U.S. 973 (1967) for the proposition that the burden is on the government "to produce clear and convincing evidence of authenticity and accuracy as a foundation for the admission of such recordings"). The fact that the Audio Transcripts of unauthenticated recordings have been "certified" is irrelevant to the privacy interest at issue.

The knowing dissemination of transcripts of unauthenticated, possibly doctored, recordings could place Butowsky in a false light, a stark species of invasion of privacy. *See*

Michael Scott Henderson, *Applying Tort Law to Fabricated Digital Content*, 2018 Utah L. Rev. 1145, 1167–68 (2018) (under responsible publishers standard, plaintiff should be able to recover against a publisher for disseminating fabricated media, which is defamatory or places the plaintiff in a false light, by providing "clear and convincing evidence" that the publisher failed to authenticate the material prior to publication).

In addition, the case has been dismissed with prejudice. Butowsky reasonably believed that with the dismissal of the case with prejudice, he would be able to put Plaintiff's litigation behind him. Luminant knew that the matter had been referred to mediation and nonetheless failed to inform Defendants that it intended to seek the unsealing of discovery material until after the case had been dismissed, when Butowsky could not factor Luminant's intentions into his mediation posture. Butowsky had a reasonable expectation that the disclosure materials would remain private when he was not informed of any motions to unseal until well after the dismissal of the case with prejudice.

But the privacy interest in this case goes beyond the mere content of unauthenticated audio recordings. Butowsky and his family have faced insults, harassment and even death threats by media publicity surrounding the Seth Rich story. *See supra* at 13. The distribution of selectively edited portions of an unauthenticated audio will necessarily create an impression almost certain to lead to further acts of harassment and violence against the Butowsky family and further acts invading their privacy, whether in the form of public "doxxing" of their locations, threatening phone calls, stalking at the workplace, demeaning and frightening public statements on social media or attacks on their property, as shown in the vandalism of Butowsky's son's automobile. Why would any defamation defendant ever agree to mediate a dispute if media

outlets were free to use sealed materials to further a damaging and false narrative at the

conclusion of the mediation and the dismissal of the case?[4]

Couch has also been the target of violent and vicious attacks triggered by media

distortions and misrepresentations of things he has said. *See supra* at 14-15. There is no reason to

believe that any of his words will not also be selectively quoted to put him in the worst possible

light. The irresponsible attempt to disparage and demean Couch by distorting his words and

fabricating accusations against him, even by seasoned reporters such as Michael Isikoff,

highlights the real risks that Couch's privacy will be invaded by further distortions and

misrepresentations. Luminant will almost certainly cherry-pick portions of the Audio

Transcripts, as the media has done with the Sy Hersh audio.[5] But where this type of selective,

---

[4] The fact that Couch could theoretically bring a motion to modify the Confidentiality Order and permit him to disclose the Audio Recordings themselves would be of little comfort to Butowsky after he and his family have been threatened, attacked and perhaps even physically harmed in the wake of Luminant's "documentary." Because of the preservation notice served on all parties, it appears Couch would not be free to use the Audio Recordings without Court approval.

[5] A transcript of the Sy Hersh audio was filed at Dkt. 95-9. The transcript is a recording of a conversation between Butowsky and journalist Seymour Hersh, in which Mr. Hersh states, referring to the "kid": "All I know is he offered a sample, extensive sample, you, I'm sure dozens of emails, and said, I want money." 95-9 at 7:10-14. Mr. Hersh also states: "He also – and this is also in the FBI report – he also let people know with whom he was dealing. And I don't know how he dealt – I'll tell you about Wikileaks in a second. I don't know how he dealt with the Wikileaks and the mechanism, but he also – the word was passed according to the FBI report. I also shared this box with a couple of friends. So if anything happens to me, you're not – it's not gonna solve your problem." 95-9 at 12:1-14. Mr. Hersh also responded to a question from Mr. Butowsky: "But what you're saying is that he uploaded stuff into the Wikileaks Dropbox and they pulled it down, and that's where the Podesta and DNC e-mails came from." A: "Yes." Dkt. 95-9 at 18:17-22. However at the end of the conversation, Mr. Hersh states, twice, although the antecedent is unclear, "It doesn't make it true." Dkt 95-9 at 39:13-16. Michael Isikoff, in his *Conspiracyland* podcast, ignores Mr. Hersh's statement about the kid uploading documents to a Dropbox for Wikileaks and asking for payment in exchange, and focusses on the last part, in which Mr. Hersh states, "doesn't make it true." *See Conspiracyland*, Ep. 4 at approximately the 5:42 mark, a recording of which the Court can take judicial notice. *Farah v. Esquire Mag., Inc.*, 863 F.Supp.2d 29, 35 (D.D.C. 2012), *aff'd sub nom. Farah v. Esquire Mag.*, 736 F.3d 528 (D.C. Cir. 2013) (taking judicial notice of Internet postings).

partisan reporting has been directed at Couch, the result has been attacks on him and his children, including obscene physical abuse, vulgar menaces and even death threats. Couch Decl. at ¶¶ 3-5.

In addition, Couch is the owner of the Audio Recordings with a property interest in the transcripts. Couch Decl. at ¶ 6. Couch earns his living running a website, the DC Patriot, and engaging in investigations of controversial topics the corporate media has ignored or badly covered. Couch Decl. at ¶ 1. Couch has devoted many years of his life and substantial personal resources to the investigation into the Seth Rich murder. Couch Decl. at ¶ 2. It would be unseemly for the Court not only to facilitate the commercialization of discovery materials and help advance one narrative over another, but also to favor one media outlet over another, essentially to pick sides in a media battle.

D. Disclosure of the Audio Transcripts to Luminant Creates a Serious Risk or Prejudice.

The prejudice to Butowsky and Couch has been amply demonstrated and need not be repeated. *See supra* at 10-15, 24-25. However, a word about prejudice to others is also warranted. If Luminant is granted access to the Audio Transcripts, there will likely be a great many additional motions to intervene from media outlets on the left and the right, given the intense interest in the matter from all sides of the political spectrum, with many motions to unseal or lift confidentiality restrictions by a number of interested parties. *See supra* at 19-20. This is not to say that a meritorious media intervention is inconceivable, only to underscore that the potential prejudice in opening the floodgates concerns all interested parties. All interested parties to the litigation presumably believed that the dismissal of the lawsuit with prejudice would bring this chapter in their lives to a close. All interested parties would ultimately suffer from further stoking the flames of controversy, which the partisan, selective use of the sealed

materials will inevitably promote. Moreover, as noted, the unsealing would itself carry a great risk of spawning further litigation, further pain, and further burden for the Court.

    E.   <u>The Audio Transcripts Were Submitted As Part of a Non-Dispositive Discovery Dispute, Which Weighs Heavily Against Unsealing.</u>

The Audio Transcripts were submitted to the Court as part of a discovery dispute. Couch sought to designate the Audio Recordings, which had been produced in discovery following a dispute as to their status under the First Amendment, as "Attorneys' Eyes Only." Couch Decl. at ¶ 8. The reasons for this designation were set forth in the sealed Opp. and Cross-Mot. filed in response to the Initial Mot. to Designate. *Id*. Disputes over designation of documents produced in discovery are routine, if often fraught. *See, e.g. Hudson v. Am. Fed'n of Gov't Emps.*, No. CV 17-2094 (JEB), 2019 WL 2476610, at *1 (D.D.C. June 13, 2019); *In re ULLICO INC. LITIGATION*, 237 F.R.D. 314, 315–16 (D.D.C. 2006). Discovery disputes over designations are frequently referred to a discovery master in complex litigation in Federal Court. *Eisai Inc. v. Sanofi-Aventis U.S., LLC*, No. CIV.A. 08-4168 MLC, 2012 WL 1299701, at *11 (D.N.J. Apr. 16, 2012); *Indus. Tech. Research Inst. v. LG Corp.*, No. CV 12-949 (ES) (JAD), 2014 WL 12621188, at *1 (D.N.J. Oct. 9, 2014); *N.L.R.B. v. Baby Watson Cheesecake, Inc.*, No. 93-4023, 1995 WL 164758, at *3 (2d Cir. Feb. 1, 1995).

The right of access does not apply to disputes over discovery material. *See, e.g.*, *United States v. Smith,* 985 F. Supp. 2d 506, 519 (S.D.N.Y. 2013) ("there is no right of access to discovery materials"). Nor does it apply to disputes over confidentiality designations to discovery materials. *Komatsu v. City of New York*, No. 18CIV3698LGSGWG, 2021 WL 220163, at *1 (S.D.N.Y. Jan. 15, 2021), *appeal dismissed* (Apr. 22, 2021), *reconsideration denied*, No. 18 CIV. 3698 (LGS), 2021 WL 1163970 (S.D.N.Y. Mar. 26, 2021).

Some courts have drawn a distinction between dispositive and non-dispositive motions and have held that discovery material submitted in connection with a dispositive motion is subject to the public right of access. *See Phillips v. Gen. Motors Corp.*, 307 F.3d at 1213. But despite Luminant's interest in the discovery material in question, there can be no serious suggestion that the Mot. to De-Designate was "dispositive" as it merely resolved a discovery dispute over the designation of the Audio Recordings, but left open questions as to the relevance, authenticity and admissibility of the recordings, all of which would have been the subject of further briefing and disagreement between the parties. More importantly, no Court in the D.C. Circuit–or to counsel's knowledge anywhere in the United States–has ever held that discovery materials submitted under seal in connection with a non-dispositive discovery dispute are subject to a common law right of access after dismissal of a case with prejudice. This is not a good occasion for the Court to make new law.

F.   The "Intense Public Interest" in the Seth Rich Affair Does Not Constitute the Kind of "Need" Cognizable in Motions to Unseal.

The underlying rationale for Luminant's Motions is fundamentally flawed. Luminant repeatedly invokes the First Amendment but fails to consider the law carefully. *See* Mot. at 1, 6, 12, 19, 20. The First Amendment right of access is rooted in deep-seated concerns about the fairness and impartiality of ***criminal*** trials. The First Amendment guarantees the press and the public access to aspects of court proceedings, including documents, "if such access has historically been available, and serves an important function of monitoring prosecutorial or judicial misconduct." *El-Sayegh*, 131 F.3d at160 (D.C. Cir. 1997). There is no historic common-law tradition of access to discovery and discovery is today intended to be largely a private matter, to be resolved between the parties. *See Seattle Times Co.* 467 U.S. at 33, 104 ("[discovery] proceedings were not open to the public at common law, and, in general, they are

conducted in private as a matter of modern practice."). Moreover, Luminant does not make any suggestion that it needs the discovery materials to monitor judicial misconduct in this case. Indeed, the D.C. Circuit has expressed doubt about __*any*__ application of First Amendment principles to the right of access outside of the criminal context. *S.E.C. v. Am. Int'l Grp.*, 712 F.3d 1, 5 (D.C. Cir. 2013). The First Amendment right of access is rooted in ancient traditions of openness in criminal proceedings and "may be seen as assured by the amalgam of the First Amendment guarantees of speech and press." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 577 (1980). But, "neither the Supreme Court nor [the D.C. Circuit] has applied the *Richmond Newspapers* test outside the context of criminal judicial proceedings or the transcripts of such proceedings." *Ctr for Nat. Sec. Stud. v. U.S. Dep't. of Just.*, 331 F.3d 918, 935 (D.C. Cir. 2003). Much of Luminant's soaring First Amendment rhetoric flies well wide of the mark.

The common law right of access, which has been recognized in the civil context, has a similar but not co-extensive rationale. The concept is grounded in "the public's interest in keeping a watchful eye on the workings of public agencies." *El-Sayegh*, 131 F.3d at 161 (internal quotation omitted). The concern here is not so much with "misconduct" but to ensure that decisions are not made in secret. Luminant concedes, as it must, that courts "are not intended to be, nor should they be, secretive places for the resolution of secret disputes." *United States v. Bank Julius, Baer & Company, Ltd.*, 149 F.Supp.3d 69, 70 (D.D.C. 2015) (citing *Nixon*, 435 U.S. at 597). But Luminant does not sincerely advance this rationale as it does not seek to unseal either the other sealed portions of Plaintiff's submission or Defendants' sealed Opp. and Cross-Mot., which of course it would if were truly interested in understanding everything that went into the Court's decision. Moreover, non-dispositive discovery disputes, for all their drama to counsel, simply do not implicate the need for public scrutiny the way matters affecting the

parties' substantive rights do. Indeed, the Court did not address the parties' briefing with a written opinion, but simply with a Minute Order. *See supra* at 5.

Instead, the rationale that Luminant pounds away at is the "intense public interest" in the Seth Rich affair. Mot. at 2, 3, 4, 6, 14, 20, 21. However, public interest in an issue, however "intense" is not, by itself, a reason to unseal discovery or any materials submitted to the Court. Luminant likely knows this, because the D.C. Circuit has already addressed the narrow issue before the Court and concluded a claim such as Luminant's would be rejected. As the D.C. Circuit has stated:

> Even had the court ruled on the motion to seal proper, ***we do not think that the public would acquire a right of access to a plea agreement simply because a court examined it*** to determine whether, if it were eventually filed, it might be filed under seal. Allowing a court to decide whether information may be withheld from the public, without simultaneously disclosing it to the public, obviously limits the role of public scrutiny as a constraint on judicial error. But that particular constraint cannot flourish in full in this context; affording public scrutiny is logically incompatible with the nature of the proceedings. The Robinson procedures are a reaction to— and hence an implicit acknowledgment of—just that impossibility. Similarly, the fact that the document is now the subject of this judicial proceeding—which is being held to determine if a right exists—does not create the very right in question; ***that is just bootstrapping***.

*El-Sayegh*, 131 F.3d at 162 (D.C. Cir. 1997) (emphasis added).

This is exactly the issue before this Court. Here, the Court was asked to examine discovery material to determine whether, if this material were eventually filed, it would be need to be filed under seal or could be placed on the public docket. Simply because the court examined the material did not, *ipso facto*, make the material, which had never been publicly available, somehow subject to a right of access. As the D.C. Circuit rightly concluded, "that is just bootstrapping." *Id.*

Most of Luminant's brief, when seen in this light, is an elaborate exercise in futility. Other than as an indication of the prejudice Defendants could face from a partisan organization

interested in lurid tales of suicide, murder and sexual abuse, Mot. at 3 (highlighting suicide of Aaron Swartz, murder of 8 year-old Pearl child, and sexual abuse in the Boy Scouts), the long disquisition on the public interest in Seth Rich and January 6 is beside the point. Countless parties, from every corner of the political spectrum, could come before this Court and claim they were defending the "intense public interest" in the subject matter of the litigation. This would lead to a proliferation of lawsuits that would further inundate Federal Courts, particularly courts such as the D.C. District Court, which, because of its location in the nation's capital, addresses a disproportionately large number of cases with sensitive matters that must be filed, and often kept, under seal to protect a host of privacy, proprietary and security interests. The public is doubtless "intensely interested" in the national security cases that come before this Court, or cases involving political intrigue,[6] or those addressing obscenity or indecency,[7] or those relating to campaign finance,[8] or those relating to LGBTQ rights.[9] The intense public interest in these matters, if anything, is likely to be a reason to strike the balance in favor of confidentiality so as to avoid subjecting plaintiffs or defendants, in a system that resolutely refuses to assign blame or render judgment until all the evidence is presented to the trier of fact, to undue publicity, invasion of privacy and submission to often unhinged attacks from individuals on both the left and the right.

In sum, Luminant has not seriously attempted to establish the type of "need" that could dislodge the firm weight of precedent around the country holding that discovery materials

---

[6] See *U.S. v. Michael T. Flynn*, 411 F. Supp. 3d 15 (D.D.C 2019).
[7] *See Action for Children's Television v. F.C.C., 58 F.3d 654* (D.C. Cir.) (1995); *United States v. Stagliano*, 693 F.Supp.2d 25, 27 (D.D.C. 2010).
[8] *See Citizens United v. Federal Election Com'n*, 558 U.S. 310 (2010).
[9] *See Whitman-Walker Clinic, Inc. v. U.S. Dep't of Health & Hum Servs.*, 485 F.Supp.3d 1, 10 (D.D.C. 2020).

submitted under seal as part of a non-dispositive motion are not subject to the common law right of access. "Intense public interest" does not cut it.

## IV.  LUMINANT RESPONSES TO DEFENDANTS' MEET AND CONFER ARGUMENTS ARE UNPERSUASIVE.

Counsel for Luminant and counsel for Defendants met and conferred on or about May 14, 2021 (the "Meet and Confer"). Quainton Decl. at ¶ 5. Counsel for Luminant did not provide convincing analysis of the *Hubbard* factors, the requirements of Rule 24(b) or why it considered discovery material submitted in connection with a non-dispositive motion to constitute "judicial records." *Id*. at ¶ 5. Accordingly, Luminant's snide dismissal of Defendants' earlier expressed views are irrelevant and should be ignored.

But to the extent the Court does consider these arguments, of which no contemporaneous documentary record was made, Luminant's account deliberately distorts the position of Defendants' counsel or is clearly wrong. Luminant contends that discovery materials submitted in connection with a non-dispositive motion are judicial records subject to the First Amendment and common law right of access. Mot. at 18. This position is as wrong now as it was during the Meet and Confer, as amply demonstrated above. The existence of the Protective Order is obviously germane, notwithstanding Luminant's misstatements. Mot. at 19. The Protective Order set forth the framework for discovery disputes relating to designation issues and documents submitted in the context of designation disputes are not thereby "bootstrapped" into judicial records. The D.C. Circuit has expressly concluded that submitting a document to the court for its review in connection with an unsealing decision does not subject the document to a common law right of access. *See El-Sayegh*, 131 F.3d at 162. It is true that Defendants' counsel advanced the policy interest in finality as a reason Luminant's motion was unwise and would be prejudicial. This position remains correct. As noted, Luminant's failure to apprise Defendants' of its

intention at a time when Defendants could have factored this position into their mediation posture was highly prejudicial. In addition, after the case was dismissed and without any opportunity to authenticate the records at issue, it would of course be highly prejudicial to release the transcripts to Luminant, for the reasons stated at length above. Finally, as to the risk of cherry-picking, this is not "absurdly ironic" as Luminant claims. Mot. at 20. Rather, it is one of the central rationales the U.S. Supreme Court relied on in refusing public access to audio recordings even when transcripts were fully available. *Nixon,* 435 U.S. at 601. This concern is even weightier when there is ***nothing*** in the public record to act as a check on selective use, or outright misuse, of sealed materials, and the theoretical *ex post* right of Defendants to bring actions for defamation or invasion of privacy would provide cold comfort after they and their families have been harassed, threatened and attacked. Luminant simply ignores applicable law and Defendants' legitimate concerns. This is an unpersuasive approach and should be rejected by the Court.

## CONCLUSION

For the reasons set forth above, the Court should deny Luminant's Motion to Intervene and unseal the Audio Transcripts and the Additional Audio Transcript.

Dated: July 30, 2021

*/s/ Eden Quainton*_____
EDEN P. QUAINTON, ESQ. (D.C. Bar No. NY0318)
DUNNINGTON, BARTHOLOW & MILLER, LLP
230 Park Ave., 21st Floor, New York, NY 10169
New York, New York 10169
Telephone: (212) 682-8811
E-mail: equainton@dunnington.com
*Attorneys for Defendants Edward Butowsky and Matthew
Couch*

## **CERTIFICATE OF SERVICE**

The undersigned counsel certifies that on July 30, 2021 the foregoing document was filed through the CM/ECF system and thereby served electronically on counsel for Luminant Media, Inc.

DUNNINGTON, BARTHOLOW & MILLER, LLP

*/s/ Eden Quainton*_____
EDEN P. QUAINTON, ESQ.
230 Park Ave, 21st Floor
New York, New York 10018
Telephone: (212) 682-8811
E-mail: equainton@dunnington.com
*Attorneys for Defendants Edward Butowsky and*
*Matthew Couch*